December 12th, 2019

**VIA ECF**

Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *Kumaran vs. Northland Energy Trading et al  1:19-Cv-08345* (LGS-DCM)

Dear Judge Schofield,

    *Pro se* Plaintiffs Samantha Siva Kumaran ("Kumaran") and The A Star Group, Inc., d/b/a Timetrics ("Timetrics," together with Kumaran, "Plaintiffs") and Defendants Northland Energy Trading, LLC ("Northland"); Hedge Solutions, Inc. ("Hedge"); and Richard Larkin ("Larkin, collectively with Northland and Hedge, "Defendants") respectfully submit this joint status letter in accordance with the Court's September 20, 2019 Order [ECF No. 3].

## I – Brief Statement of Case

    <u>Plaintiffs' position</u>: Defendants engaged in a fraudulent scheme to steal Plaintiffs valuable trade secrets, IP and to cut Plaintiffs out of their fair share of IP, Software License Fees and of Trading Royalties. From March 2011 to March 2015, Defendants approached retained Plaintiffs to provide confidential and trade secret risk management programs and hedging strategies to improve revenues at Defendant's business, with the promise of substantial upside compensation. Under the express restrictions of a Timetrics NDA ("Timetrics NDA)", several engagement letters, and a Timetrics End User License Agreement ("EULA"), Plaintiffs provided limited license use of proprietary hedging strategies and risk techniques.

    Defendant Larkin with two employees Daniel Lothrop ("Lothrop") and Domenic Bramante ("Bramante") at Northland and Hedge, schemed to create a clone copy of Plaintiff's software and IP, supplement missing risk management infrastructure, models and capabilities, to illicitly transfer onsite to Defendant's businesses in breach of express IP restrictions under the Timetrics NDA, EULA and other agreements, and cut Plaintiffs out of their fair share of royalties and license fees. The plan was simple: first, approach Plaintiffs under false pretense that Defendants were interested in purchasing lucrative long term licenses to use the Plaintiff's IP and Software under the EULA ("License Fees") and offer substantial royalties and profit incentives ("Profit Sharing"); second, gain access to the inner workings and strategies Plaintiffs' IP and Software including multiple improvements to their business operations; and last, create a copycat product for use, called the "OBT Book", which was fraudulently concealed from Plaintiffs.

    After a long pattern of chronic late payments, Defendants then failed to pay numerous invoices to Plaintiffs in 2015. This resulted in a state court action and a final settlement in 2016 where the invoices were paid in full including legal fees. ("Settlement Agreement"). Unknown to Plaintiffs, however, in 2015 Defendants had already launched its copycat OBT Book System for use in a production trading environment. Larkin having infringed the IP protection provisions of the EULA, and Timetrics NDA, made fraudulent representation and warranties to induce Plaintiffs settle and terminate the prior engagements.

In September 2016 after the Settlement Agreement, once again, Larkin in his individual capacity, re-established business relations with Kumaran, and negotiated with Kumaran, to provide him several missing pieces of the program, in exchange for both (a) substantial financial contributions in his personal capacity to launch various hedge funds, as yet unformed, and (b) promises and assurances that Plaintiffs would receiving ongoing License Fees effective April 2017 and revert back to the Profit Sharing previously agreed upon. Confidential Information of hedge fund was protected under the Timetrics NDA. Reliant on these representations, and renewed business relations, from September 2016 until March 2017, Kumaran invested hundreds of hours of work for Defendants, provided software, IP and services, disclosed trade secrets, for which compensation has not been received and Defendants have profited. Larkin then made several last minute unreasonable commercial demands, withheld the capital funding upon which Kumaran had relied -- then he resigned. Instead Defendants continued to profit without compensating Plaintiffs.

Over the exhaustive span of over two (2) years, Defendants' prior counsel Bracewell sought to resolve these problems with Kumaran, trying to get Larkin to abide by the terms upon which he had agreed, and his resolution as a fiduciary and principal for participation in the hedge-fund. Plaintiffs made a "final" settlement offer dated June 5th, 2019 sent to Bracewell, which contained the exact terms Larkin wanted for participation of the hedge fund, which previously he had accepted. Bracewell at the last minute sought to change the terms, again with commercially unreasonable terms, demanding, among other things, Plaintiffs waive all their rights to their IP, software and license fees, and to claim unjust enrichment and profits, while Larkin continued to improperly profit.

On September 4th, 2019, Plaintiffs brought action under CPR Institute, to resolve Defendant's breaches of his Timetrics affiliates confidential information and breaches of fiduciary for the hedge funds. On September 6th 2019, as Defendants have also breached the Settlement Agreement, Plaintiffs filed action here in this Court, in accordance with the jurisdiction and venue for breach of the Settlement Agreement. On September 24th 2019 Defendants challenged the jurisdiction of the CPR, stating they preferred the matter be resolved in SDNY. Timetrics NDA permits resolution in the courts of SDNY which Plaintiffs have also filed to preserve its statutory rights. Plaintiffs served their complaint within the timeframes permitted under Fed. Civ Rule 4.

<u>Plaintiffs Issues:</u> Larkin to not publish or use Confidential Information as leverage to obstruct and willfully harm hedge funds in breach of Timetrics NDA; Larkin resign, or accept his membership in hedge fund and sign NDA, cooperate with management, including immediate compliance with all forms for registration with SEC;  Preliminary Injunction to preserve status quo to (i) prevent further harm and delays to Timetrics affiliates and Kumaran; (ii) prevent on ongoing use of IP or reasonable royalty as agreed for ongoing use; (iii) payment in quantum meruit for services and software provided September 2016 – March 2017 (iv) Payment in quantum meruit for license and use of Plaintiff's IP and OBT Book, and risk monitoring spreadsheets, wrongfully cloned since August 2014

<u>Legal Issues:</u> Plaintiff is likely to succeed on merits under Defend Trade Secrets Act; and on their breach of fiduciary duty and harm to the hedge funds; Plaintiff is being caused irreparable harm and ongoing damage by Larkin's obstructions to hedge fund registration and threats to publish confidential; Defendants seek to cause delays and unwarranted extensions, or file frivolous counterclaims, while they continue to profit from unjust enrichment and taking property they do not own and obstructing hedge fund, formed under Delaware LLC Act from operating. Under Delaware LLC Act, oral, draft and written agreements are binding; (*See* 6 DE Code § 18-101). Defendant Larkin is in breach of fiduciary to participate and execute documents;.

Page 3

<u>No Extensions:</u> Contrary to Defendants' counsels' arguments, Bracewell have been fully up-to-speed on this matter and actively involved in settlement discussions with Plaintiffs for an exhaustive two (2) years dating back to September 2017. Defendants have deliberately sought to obstruct cooperation with the Kumaran's businesses, unless Plaintiffs "waive their rights" to their IP and absolve Larkin's breaches of the Settlements, and failure to pay royalties and license fees. Plaintiffs therefore object to any further extensions of time. Defendants' have had full copies of this action since September 13th 2019.  Plaintiffs also object to any further extensions of time and as they are ongoing requests for extensions as Defendants' seek to obstruct, stall, delay and obstruct payments to Plaintiff, and not to not maintain the "status quo" and to impede registrations of the  hedge funds.  Plaintiffs continue to accumulate harm and damages from the delays. Defendants seek to deliberately extend and stall this case.

<u>Defendants' Position:</u>  In or around March 21, 2011, Plaintiff Timetrics and Defendants Northland and Hedge entered into a non-disclosure agreement to discuss a possible business relationship in which Timetrics would provide certain services to Defendants' energy trading business.  While the parties ultimately did business together, the relationship ended in litigation, which settled pursuant to a written Mutual Release and Settlement Agreement, dated May 9, 2016. Thereafter, Larkin and Kumaran discussed the possibility of once again doing business together. Specifically, Kumaran solicited participation from Larkin in a hedge fund that Kumaran was starting.  During those discussions, Larkin contributed money in exchange for a promise that, in the event that no final agreement regarding his participation was reached, he would receive an equity interest in the hedge fund.  Years later, Plaintiffs have disputed Larkin's rights in the hedge fund and now appear to allege that Defendants retained and used certain of Plaintiffs' confidential information in breach of the non-disclosure agreement and the Mutual Release and Settlement Agreement, and procured and used other of Plaintiffs' confidential information through fraudulent statements and in breach of an implied contract arising out of the parties' post-settlement discussions.

Defendants' position is that Plaintiffs' claims have no merit for at least the following reasons (among others):

- The non-disclosure agreement was superseded by the express terms of the Mutual Release and Settlement Agreement;
- The Mutual Release and Settlement Agreement bars Plaintiffs' claims;
- No facts give rise to an implied non-disclosure agreement;
- Plaintiffs' have failed to state a viable cause of action;
- Plaintiffs' have failed to plead fraud with the requisite specificity;
- The facts do not support Plaintiffs' allegations because Defendants were not and are not in the possession of any of Plaintiffs' confidential information and did not otherwise do or say anything that support Plaintiffs' allegations; and
- Larkin is an improper party.

Defendants' analysis of the complaint is ongoing and Defendants are likely to assert additional defenses. Defendants will likely assert counterclaims and/or cross-claims.  Among other things, because Plaintiffs' allegations implicate Kumaran's hedge fund, Nefertiti Asset Management, LLC, Defendants will need to assess whether that entity and other affiliates are necessary parties and/or subject to compulsory counterclaims or a separate, related action. Defendants note that Plaintiffs also filed a Demand for Arbitration, dated September 4, 2019, with the International Institute for Conflict Prevention & Resolution based on a purportedly valid arbitration clause contained in the 2011 non-disclosure agreement.  Plaintiffs' arbitration demand

Page 4

includes many of the same allegations and causes of action asserted in the complaint before this Court, and Defendants have lodged an objection to Plaintiffs' right to proceed in arbitration. No further action has occurred in the arbitration.

## II JURISDICTION AND VENUE

<u>Plaintiffs' position:</u> Venue is proper in this District under 28 U.S.C. 1391(b) in that a substantial part of the events or omissions giving rise to the claims occurred in this District, and in addition by way of Section 16 of the Settlement. This Court has jurisdiction pursuant to 28 USC 1332 based upon diversity. Plaintiffs are citizens of the State of New York. Defendants are citizens of the State of New Hampshire. The amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs. This Court also has jurisdiction under (i) the provision under the Timetrics NDA Para 7 which identifies SDNY as Choice of Law and Venue (ii) the provision under the **EULA** in Para. 25 also identified SDNY. Larkin, individually, is a party to the Settlement Agreement, and his actions in the Complaint were made in his individual and personal capacity, including capital contributions to the Kumaran's hedge funds, in payments from his personal bank account for acquisition of trade secrets, and personal representations of compensation on behalf of Northland and Hedge. Defendants' have had full copies of this action since September 13th 2019 and have asserted and consented to jurisdiction at SDNY to remove the proceeding from CPR

<u>Defendants' Position:</u> Due to the fact that Plaintiffs only served their complaint on December 4, 2019, Defendants are still assessing jurisdictional and venue issues.

## III MOTIONS AND APPLICATIONS

<u>Plaintiffs' position</u>
Fed. Civ. Rule 15(c)(1)(C)       – Relate back Amendments to Defendants Lothrop, Bramante
Fed. Civ. Rule 5.2(e)(1) and 26(c)     – Sealing Trade Secrets in Protective Order /Redactions
Fed. Civ. Rule 65                       – Preliminary Injunction, trade secrets and fiduciary duty

<u>Defendants' Position:</u>   Because Plaintiffs only served their complaint on December 4, 2019, Plaintiffs intend to file an amended complaint later this month, Defendants are still assessing these issues. Defendants have agreed to negotiate a protective order, and expect to submit a joint application for entry of an agreed-upon protective order. Defendants intend to request an adjournment of time to respond to the original complaint, in light of the first amended complaint. Defendants also are likely to seek an adjournment of time to respond to the first amended complaint in light of the holidays, the addition of further defendants, and the detailed and varied nature of the claims. Defendants may file a motion to dismiss the first amended complaint and may also file a motion to stay discovery pending resolution of any motion to dismiss. Depending upon Plaintiffs' actions with respect to their parallel Demand for Arbitration, Defendants may seek relief from the Court in connection with that proceeding.

## IV – EARLY DISCOVERY

<u>Plaintiffs' position:</u> Plaintiff will seek early depositions from employees Lothrop and Bramante pursuant to Fed Civ Rule 30 (a). Plaintiff will send its first round of discovery no later than **January 15th 2019**. Plaintiff anticipates requesting among other things; the following (a) trading statements (b) emails and communications between Defendants and their key employees (c) electronic copies of the OBT Book and (d) employment contracts of Defendants, officers directors, employees and managers showing terms of reference.

<u>Defendants' Position:</u> The parties have filed a proposed case management plan, which contains proposed discovery dates. In light of the fact that Plaintiffs only served their complaint on December 4, 2019, and intend to file a first amended complaint, Defendants are still assessing the need for and scope of discovery in this case.

## V – DAMAGES

<u>Plaintiffs' position:</u> Plaintiff has categories of damages in 5 sections (i) Quantum Meruit (ii) Unjust Enrichment (iii) Theory of Reasonable Royalty/Misappropriation of Trade Secrets (iv) Disgorgement of Profits and (v) Special Damages. Plaintiffs shall also be entitled to all damages available to it in equity and law, and as contractually agreed, consequential, special, indirect, incidental, contingent, punitive or exemplary damages, costs, expenses, or losses. Plaintiff also seeks recovery of its costs and expenses. Quantum Meruit damages for Larkin's breach of his fiduciary duties, obstructions to restrict Kumaran's business; operational delays, increased costs and expenses, and bad faith conduct to drive up Plaintiff's costs in launching its business.

<u>Defendants' Position:</u> Defendants dispute that they caused Plaintiffs any damage. Defendants are assessing whether any of them have claims against Plaintiffs or their affiliates.

## VI - SETTLEMENT DISCUSSIONS

<u>Plaintiffs' position:</u> After an exhaustive two (2) year period of negotiations with Bracewell which commenced in or around September 2017, Plaintiffs made a "final" settlement offer dated June 5th, 2019 sent to Bracewell, which contained the exact terms Larkin wanted for participation of the hedge fund, which previously he had accepted. Bracewell did not return any good faith offers to enter into settlement discussions, regarding IP and software prior to the filing of this Complaint. Plaintiffs offered Settlement and Mediation to Defendants, again on September 19th 2019 and such efforts have been unsuccessful. Defendants have not provided a settlement offer to date. Plaintiff is willing to enter into Settlement or Mediation under any program, at any time, and without any preconditions of a settlement demand or offer.

<u>Defendants' Position:</u> Defendants have asked Plaintiffs to provide a settlement demand to assess whether further settlement discussions could prove fruitful, but Plaintiffs have not been willing to provide a demand to date.

## VII – OTHER INFORMATION

Plaintiffs' position:     To be discussed at conference.
Defendants' position:    None at this time.

SAMANTHA S. KUMARAN
THE A STAR GROUP, INC.
119 West 72 Street, #204
New York, New York 10023
646 221 4363
samantha@timetricsrisk.com

*Plaintiffs pro se*

WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP
1201 RXR Plaza
Uniondale, New York 11556
Ellen Tobin
Tel: (516) 622-9200/ Fax: (516) 622-9212
etobin@westermanllp.com
*Attorneys for Defendants*