**VIA ECF**
Honorable Mary Kay Vyscokil
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *Kumaran vs. Northland Energy Trading et al 1:19-Cv-08345* (MKV-DCM)
**PLAINTIFF RESPONSE TO PRE-MOTION LETTER UNDER RULE 4(A)(i)**

Dear Honorable Judge Vyskocil:

This letter respectfully responds to Pre-Motion Letter under Rule 4(a)(i). Plaintiff objects to the many new facts and factual misstatements contained in Defendants' pre-motion letter. There are so many new facts that this motion is disguised as an attempt to file for Summary Judgment under Rule 56. The standard for a Court's review of a MTD are that all facts stated by Plaintiff are accepted as true. Defendants attempt to interject unsupported and conclusory facts that directly contradict those pled in the FAC. If these new facts are to be accepted by this Court, respectfully Plaintiff is entitled to early discovery. Further Honorable Judge Freeman's rules make clear that inclusion of new facts, requires notice to Pro-Se Plaintiff that the Defendants are moving for Summary Judgement. Plaintiff has also notified Defendants that they have included disputed confidential information that the parties agreed to protect. Defendants failed to wait for a Meet and Confer to discuss in good faith the disputed confidential non-public financial information. Plaintiff will be moving to strike shortly. Of further concern, Plaintiff respectfully notifies the Court, that Defendant's letter contains numerous false accusations that have no evidentiary support and are untrue. For example, (as a transparent attempt to impugn Plaintiff's character) Defendants begin their letter with unsupported and conclusory allegations that "Plaintiff promised millions of dollars' and "Plaintiff caused losses of millions of dollars". If these statements were true, the words "promised" millions of dollars are material legal terms, that sophisticated parties would need to include in the underlying contracts. One need only look at the underlying contracts to see they are clearly false and directly contradicted by the underlying agreements.

Plaintiff did not "promise" millions of dollars: Defendants' statements are provably false and contradicted by the agreements signed by the parties and are threfore improperly pled. Plaintiff operated as an independent contractor under a primary set of Terms and Conditions, ("T&C", *See* Exh_2) and also licensed software under an End User License Agreement ("EULA" *See* Exh_3). Those contracts clearly identify the roles, responsibilities and division of duties between the parties. They also contain clear representations and warranties by Plaintiff. Notably the EULA and T&C have clear disclaimers that contradict any "promises". (*See* T&C Para 11, 12, *See* EULA Para 11, 12) Any review of the underlying engagements demonstrates that Defendants statements are false. Further there is an Entire Agreement provision which disclaims all other statements.[1] Therefore the contracts contradict these false accusations. Defendants statements to the Court have no evidentiary support and are a violation of Rule 11. If Defendants are contradicting their own agreements, this Honorable Court should be aware of the many false accusations and attempts to include new facts.

Plaintiff did not cause millions of dollars of losses: Defendants continue unsupported, conclusory and false allegations and introduce new irrelevant facts without converting to a Motion for Summary Judgment. These are improperly pled for the sole purpose of harassing Plaintiff. Further if the Court should review that these statements are also in express contradiction of the strict sharing of roles, risks, liabilities in the underlying agreements. (*See* T&C Para 3a, 3b, 12, *See* EULA 12). Defendants also contradict their own certification and warranty in the contracts whereby they failed to complete a Factory Acceptance Test and accepted all liabilities therein. In more unsupported arguments, Ms. Tobin's also fails to admit to this Court that Plaintiff had no access to any of Defendant's trading accounts, no access to Defendant's computer systems or operations, and no liability thereunder. All losses were solely caused by Northland's own employees Daniel Lothrop (Defendant to this proceeding) and also due to the gross

[1] (*See* T&C Para 25, See EULA Para 23)


negligence and mismanagement and failure to supervise by Larkin. If this Court is to accept these unsupported conclusory allegations, Plaintiff is entitled to discovery. Further these allegations contradict the facts in the FAC.

Northland Operated Trading Floor with Negligence and Mismanagement: The FAC states that in 2014 Larkin's primary trader Aviral Chopra abruptly resigned in an ongoing exodus of Northland employees resigning. Negligently, Larkin hired a recent college graduate, Daniel Lothrop, with absolutely no trading experience, no qualifications or licenses to trade, to manage millions of dollars of trading floor for Northland. The FAC states that not only did Lothrop fraudulently conceal dozens of unauthorized contracts into an FCM Account, his conduct was replete with errors and omissions, (calculating "zero margin" on the unauthorized transactions), and he frequently wondered off the desk leaving the trading floor unsupervised. Despite numerous documented warnings, Larkin failed to rectify the problem he was leaving the trading floor unmanned and unsupervised. Lothrop lost significant amounts of money during a Thanksgiving OPEC meeting, when he left the trading desk unmanned to attend a Webinar during extreme market volatility. Simultaneously Larkin was out shopping for a turkey (during business hours) the desk was completely vacant - in breach of contract. It is inconsequential and disprovable that Kumaran caused such losses. Notably Northland, Larkin and Lothrop have simultaneously been subject to multiple regulatory investigations, from the Massachusetts State Department, CFTC, and NYMEX, which stemmed from customer complaints that Larkin was leaving the trading floor unsupervised. Further documented evidence (*See* Exh_1) shows regulatory compliance violations against Larkin with fines in excess of $300,000 and "bans on trading" citing compliance violations for (amongst other things) "failure to supervise the trading floor." Further facts that would need to be discovered would also show that Larkin is frequently out of the office, on golfing vacations or at Florida home. Plaintiff did not even have access to any of Northland's trading accounts or FCM Statements. The FAC states Defendants further committed fraud by concealing numerous unauthorized transactions from Plaintiff. Lastly, Defendants notably Lothrop and Bramante also committed fraud to the FCM and violated the Commodities Exchange Act, by conducting speculative trading in an account that was regulated as a hedging account in attempts to recover Lothrop's Webinar's losses. Notwithstanding any of the foregoing facts, the express contracts agreed Northland and not Plaintiff was responsible for decisions and liability thereunder. Therefore it is not even plausible that Plaintiff "caused" these losses.[2]

No Evidentiary Support: Continuing the false statements, Plaintiff respectfully directs the Court to Ms. Tobin's statement "*Plaintiffs merely placed trades for Northland and Hedge*". The factual evidence shows the complete opposite, and this statement is a direct misrepresentation to this Court. Plaintiff never placed one single trade for Defendants, Plaintiff never had the authorization on any FCM account. Plaintiff never had a "Power of Attorney" now, or ever, in any FCM. Plaintiff did not even have computer access to Northland to "place trades" and had no authorization from the FCM. Ms. Tobin is expressly aware the contracts state the opposite. Even an elemental review of the agreements can disprove these false statements. Therefore these unsupportable and factually inaccurate statements, are a violation of Rule 11(b). Given that one need only look clearly at the underlying contracts and documents, to see that new counsel have no evidentiary support for their false accusations, one can only conclude that these statements are being made for improper purpose – at a minimum to seek delays and to harass. Either Defendant's new counsel have failed to review even the basic facts and underlying contracts, emails and evidence or Ms. Tobin filed this document without conducting a reasonable investigation into the facts which have no evidentiary support. Further Plaintiff has to spend additional time correcting and contradicting these new facts – which do not belong in a Motion to Dismiss. Notably Larkin's former counsel Bracewell refused to make an appearance, and abruptly resigned or were terminated, the night before they had to put their name on pleadings to this Court. Perhaps they were not so willing to make dishonest statements before this Court.

Defendants Mis-summarize Complaint: Defendant's misrepresent to the Court that this case is about "reverse-engineering" Timetrics Software. The FAC does not plead reverse-engineering of software.(*See* FAC 228-237). By obscuring the word Plaintiff's IP- which is clearly defined to include hedging and trading strategies, and copying, mimicking and creating replication or Derivative Works of Plaintiff's IP they wrongfully confuse the Court with red-herring arguments about reverse engineering computer software. Plaintiff's case is simply summarized as misappropriation of trade secrets, unfair competition by Larkin a competitor CTA, unjust enrichment, and also breach

---

[2] *See* T&C P12, EULA P12

of the May9th 2016 Settlement. In order to induce the aforementioned Settlement, *all* Defendants committed fraud. Jurisdiction is proper over Lothrop and Bramante as they have caused tortious injury in this State NY CPLR § 302.The statute of limitations for fraud under NY law is six years, dating back before 2016. The FAC is clear, that Defendants in breach of their express duties under the NDA, EULA and Settlement and other agreements, acquired Plaintiff's trade secrets - replicated and created a copycat system, called the OBT Book, executed a plan to defraud Plaintiff, and have gone on to profit several million dollars a year, to cut Plaintiff out of its License Fees and Trading Royalties. The Court should take note, Defendants letter is vacantly silent on their replications and copycat system called the OBT Book – the primary focus of the complaint. Defendants do not make one attempt to deny or refute the primary allegations – that Defendants not only have acquired the OBT Book by misappropriation of Plaintiff's IP, but are continuing to use, and profit substantially over $1 million dollars a year from their wrongful acquisitions. Defendants do not deny they are being unjustly enriched, and make no statement of denial of their Derivative Works and OBT book. Larkin and Kumaran are direct competitors, both registered CTA's and Defendants' letter remains silent on the claims of unfair competition. Defendants are located in New Hampshire. Misappropriation occurred in interstate commerce.

Plaintiff has complied with all FCRP Rules in scheduling. Plaintiff filed its complaint on September 6th 2019. Plaintiff did not serve the complaint as it was in communications with Bracewell to see if this case could be settled prior to service, and gave fair notice it was amending the complaint. In compliance with FRCP 4 on order for the Court (Dkt 8), Plaintiff served its complaint on December 4th 2019. The Court order Amended Complaint by December 26th 2019 and Joint Statement due on December 12th 2019. Defendants suddenly changed counsel the night before a Joint Statement was due. Defendant's new counsel, Ms. Tobin, requested numerous extensions to the schedule. On January 15th 2020 the parties appeared at Preliminary Conference. During this hearing Magistrate Judge Freeman generously gave Defendants until March 6th 2020 to file their response. This would amount to 71 days extension from the contemplated rules. Waiting till the last minute, four days before their pleading is due on March 2nd 2020 they contacted Plaintiff with another request for an extension of time. Plaintiff generously agreed to extend until March 13th 2020 or March 20th 2020. The Defendants agreed to the March 13th 2020 deadline. (78 days from FAC). The parties agreed on a briefing schedule below. Plaintiff has not requested any extensions. Plaintiff sent Defendants a Stipulated Protective Order in December 2019. Bracewell and Plaintiff had a meet and confer and agreed on large portions of the template. Plaintiffs sent new counsel the same working template, Defendants did not respond for 80 days. Defendants now appear unwilling to cooperate with the prior draft.

Plaintiff at the Pre-Hearing Conference stated it would remove the corporate Plaintiff from the proceeding. Magistrate Judge Freeman stated that only Judge Schofield would make that decision (A transcript is being order). Judge Freeman still clearly ordered Defendant's response on March 6th 2020. Plaintiff generously consented to yet another extension until March 13th 2020. Given the multiple new facts being presented, Defendants are attempting to convert this Motion to Summary Judgment. The standard of conduct for a MTD is to assume all facts as true. Plaintiff is concerned by the multiple baseless accusations in Defendant's letter that are unsupported and have no evidentiary support. On top of going beyond the facts in the pleadings – these false statements violate Rule 11(B) and support a Motion for Sanctions for frivolous conduct and improper pleadings and the burden of unnecessary time to respond. Plaintiff requests a Motion to Strike all the false allegations, factual misstatements as well as confidential information.

Defendants have already changed counsel once. They have requested four extensions. They have been given 78 days to respond to the FAC. The parties have agreed on a revised schedule for Defendants Motion to Dismiss of **March 13th 2020,** with Plaintiff's response due on **May 13th 2020** and Defendant's reply due on **June 15th 2020**. Plaintiff objects to any further extensions or conferences and views them as frivolous attempts to drive up costs and delays. Plaintiff will be filing a Preliminary Injunction and TRO to protect confidential information and other relief shortly. Plaintiff thanks the Court for its attention to this.

Respectfully submitted,
//SSK//
Samantha S. Kumaran./ (cc. Ellen Tobin via email)