**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMANTHA SIVA KUMARAN, | ) |
| *Plaintiff,* | ) Case No: 1:19-CV-08345–MKV-DCF |
| | ) Judge: Hon Mary Kay Vyskocil |
| | ) Magistrate Judge: Debra C. Freeman |
| -against- | ) |
| | ) |
| NORTHLAND ENERGY TRADING, LLC | ) **PLAINTIFF'S MEMORANDUM** |
| HEDGE SOLUTIONS, INC., | ) **OF LAW IN SUPPORT OF** |
| RICHARD M. LARKIN | ) **MOTION TO STRIKE** |
| DANIEL LOTHROP | ) **AGAINST ALL DEFENDANTS** |
| DOMENIC BRAMANTE | ) |
| *Defendants,* | ) |

## PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE

Pursuant to Federal Civil Rule 12.(f), (g), Rule 56, and Local Rule 6.1 Plaintiff Samantha Siva Kumaran (herein called Plaintiff"), in support of its Motion to Strike or in the alternative Motion to Convert for Summary Judgment, states as follows.

## TABLE OF AUTHORITIES

*Albright v. Upjohn Co., 788 F.2d 1217, 1221 (6th Cir. 1986);*

*Am. Roller Co. v. Foster Adams Leasing, LLP, 421 F. Supp. 2d 1109, 1116 (N.D. Ill. 2006) (quoting Teamsters Local No. 579 v. B&M Transit, Inc., 882 F.2d 274, 280 (7th Cir. 1989)*

*Amorosa v. Ernst & Young LLP, No. 03 Civ. 3902(CM), 2010WL245553, at \*4 (S.D.N.Y. Jan 20, 2010).*

*Antonious, 275 F.3d at 1074*

*Banco de Ponce v. Buxbaum, No. 90 Civ. 6344, 1992 U.S. Dist. LEXIS 15730 (S.D.N.Y. Oct. 14, 1992)*

*Battles v. City of Ft. Myers, 127 F.3d 1298, 1300 (11th Cir. 1997)*

*Bay State Towing Co. v. Barge Am. 21, 899 F.2d 129, 132 (1st Cir. 1990)*

*Bernal v. All American Investment Realty, Inc., 479 F. Supp. 2d 1291, 1326-27 (S.D. Fla. 2007)*

*Boyce v. Microsoft Corp., No. 92 C 7075, 1994 U.S. Dist. LEXIS 629, at \*12 (N.D. Ill. Jan. 25, 1994)*

*Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir.2008)*

*Brubaker Kitchens, Inc. v. Brown, Civ. No.05-6756, 2006 U.S.Dist.LEXIS 89622, (E.D.Pa. Dec11, 2006)*

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 111 S.Ct. (U.S.Cal.,1991) .*

*Byrd v. Dunn Towers I, Apt's, 2017 WL 5484162, at *1 (W.D.N.Y., 2017)*

*Calloway v. Marvel Ent. Grp., 854 F.2d 1452, 1474 (2d Cir.1988), rev'd in part on other grounds, Pavelic & LeFlore v. Marvel Ent. Grp., 493 U.S. 120 (1989),*

*Centauri Shipping Ltd, v. Western Bulk Carriers KS, 528 F.Supp.2d 197, 201–03 (S.D.N.Y. 2007)*

*Cf. Four Star Financial Serv., LLC v. Commonwealth Man. Assoc.,166 F. Supp. 2d 805, 809 (S.D.N.Y. 2001)*

*Chapman & Cole v. Itel Container Int'l, 865 F.2d 676, 684 n.11 (5th Cir. 1989)*

*Chum Ltd. v. Lisowski (S.D.N.Y. Mar. 12, 2001) No. 98 Civ. 5060(KMW), 2001 WL 243541*

*Cohen v. Kurtzman, 45 F. Supp. 2d 423, 436-38 (D.N.J. 1999)*

*Coonts v. Potts, 316 F.3d 745, 753 (8th Cir. 2003)*

*Edwards v. Fiddes & Son, Ltd., 227 F.R.D. 19, 23-24 (D. Me. 2005)*

*Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988).*

*Amaker v. Weiner, 179 F.3d 48, 50 (C.A.2 (N.Y.),1999)*

*Green v. Doukas, 205 F.3d 1322, 2000 WL 236471, at *2 (2d Cir. 2000) (unpublished opn.)*

*Henderson v. Department of Pub. Safety & Corrections, 901 F.2d 1288, 1296-97 (5th Cir. 1990);*

*Holgate v. Baldwin, 425 F.3d 671, 675-77 (9th Cir. 2005)*

*In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985)*

*In re Ginther, 791 F.2d at 1155;*

*In re TCI, Ltd., 769 F.2d 441, 446 (7th Cir. 1985).*

*In re Yagman, 796 F.2d 1165, 1182 (9th Cir. 1986);*

*Insurance Benefit Adm'rs, Inc. v. Martin, 871 F.2d 1354 (7th Cir. 1989);*

*Jones v. International Riding Helmets, Ltd., 145 F.R.D. 120 (N.D. Ga. 1992) aff'd, 49 F.3d 692 (11th Cir. 1995).*

*Kopec v. Coughlin, 922 F.2d 152, 154–55 (2d Cir.1991)*

*Levy v. Aaron Faber, Inc., 148 F.R.D. 114 (S.D.N.Y. 1993)*

*Mancheski v Gabelli Group Capital Partners, No. 18762/03, 2006-05512, 835 N.Y.S.2d 595, 598, 2007 N.Y. Slip Op. 02904, 2007 WL 1017749 (N.Y.A.D. 2 Dept., Apr. 03, 2007)*

*Matthews v. Malkus, 352 F.Supp.2d 398, 402 (S.D.N.Y.,2004)*

*McGhee v. Sanilac County, 934 F.2d 89, 93 (6th Cir. 1991)*

*Medical Emergency Serv. Assocs. v. Foulke, 844 F.2d 391, 400 (7th Cir. 1988);*

*New V & J Produce Corp. v. NYCCaterers Inc., No. 13 Civ. 4861 (ER), 2014 WL 5026157  (S.D.N.Y. Sept. 29, 2014).*

*O'Brien v. Alexander (2d Cir.1996) 101 F.3d 1479, 1489.*

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc., No. 99 Civ.10175 (JSM),2002 U.S. Dist.LEXIS 491 (S.D.N.Y. Jan. 16, 2002)*

*Pellegrini v. Analog Devices, Inc., No.02-11562-RWZ,2006 U.S. Dist.LEXIS 726(D. Mass.Jan. 11, 2006)*

*Quiros v. Hernandez Colon, 800 F.2d 1, 3 (1st Cir. 1986)*

*R & A Small Engine, Inc. v. Midwest Stihl, Inc., 471 F. Supp. 2d 977, 978-79 (D. Minn. 2007)*

*Ruotolo v. I.R.S., 28 F.3d 6, 8 (2d Cir.1994)).*

*Ryan v. Clemente, 901 F.2d 177, 179-80 (1st Cir. 1990); Skycom Corp  v. Telstar Corp., 813 F.2d 810, 819 (7th Cir. 1987)*

*Salovaara v. Eckert, 222 F.3d 19, 33 (2d Cir.2000) (citing Calloway for the same).*

*See Hartz v. Friedman, 919 F.2d 469, 475 (7th Cir. 1990)*

*Sichel v. UNUM Provident Corp. (S.D.N.Y.2002) 230 F.Supp.2d 325, 332;*

*Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1077 (7th Cir. 1987)*

*Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474–75 (2d Cir.2006)*

*U.S. Bank Nat. Ass'n, N.D. v. Sullivan- Moore, 406 F.3d 465, 470 (7th Cir. 2005)*

*View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 985-86 (Fed. Cir. 2000);*

*Weinstein v. Barnett,* N.Y.L.J., Mar. 24, 1995

*Wigod v. Chicago Mercantile Exch., 981 F.2d 1510, 1523 (7th Cir. 1992)*

*Williams v. Balcor Pension Investors, 150 F.R.D. 109 (N.D. Ill. 1993)*

*Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 51 (2d Cir.2008).*

*Willis v. City of Oakland, 231 F.R.D. 597, 598 (N.D. Cal. 2005)*

*Westmoreland v. CBS, Inc., 770 F.2d 1168, 1180 (D.C. Cir. 1985);*

Plaintiff Memorandum of Law, Page 1

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SAMANTHA SIVA KUMARAN, | ) | |
| *Plaintiff,* | ) | Case No: 1:19-CV-08345–MKV-DCF |
| | ) | Judge: Hon Mary Kay Vyskocil |
| | ) | Magistrate Judge: Debra C. Freeman |
| -against- | ) | |
| | ) | |
| NORTHLAND ENERGY TRADING, LLC | ) | **PLAINTIFF'S MEMORANDUM** |
| HEDGE SOLUTIONS, INC., | ) | **OF LAW IN SUPPORT OF** |
| RICHARD M. LARKIN | ) | **MOTION TO STRIKE** |
| DANIEL LOTHROP | ) | **AGAINST ALL DEFENDANTS** |
| DOMENIC BRAMANTE | ) | |
| *Defendants,* | ) | |

## PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF  MOTION TO STRIKE OR IN THE ALTERNATIVE MOTION TO CONVERT TO SUMMARY JUDGEMENT

### MEMORANDUM OF LAW

### A. FACTS

The following facts, applicable to the analysis herein, are established through the attached Motion, First Amended Complaint ("FAC") ECF 26 and the Affidavit of Samantha Kumaran (Exhibit A)

### B. INTRODUCTION AND BACKGROUND

Defendant's new counsel Westerman Ball Ederer Miller Zucker and Sharfstein LLP, ("Westerman") were retained almost three(3) months ago, with ample lead time to familiarize themselves with pertinent facts. Plaintiff respectfully moves this Court to strike numerous conclusory and  unsupported statements contained in Defendant Pre-Motion Letter (*See ECF 32*)  which are to form the basis of their Motion to Dismiss and pre-motion conference. In the alternative Plaintiff respectfully moves the Court to convert Defendants Pre-Motion Letter as filing for Motion for Summary Judgment. As demonstrated herein, the letter contains at least a dozen false accusations and improper statements were pled in their proposed Motion to Dismiss in ECF 32. This in turn is creating benefit in delays to Defendants in resolution on the merits of this case. First, material misstatements that directly contradict the legal agreements between the parties were included that can readily be disproved by documentary evidence. These factually baseless statements have been included to prejudice Plaintiff in this proceeding. Second, frequent errors were made to intentionally "mix up" corporate entities, and to include accusations again non-parties, Delaware LLC's so as to bias this Court. (*See* below #1,#2,#6,#9,#11,#12). Further, Defendants' include

a dozen or more false accusations and factual misstatements that are not permitted under a Rule 12(b) motion. If the Court is to accept any of the misstatements that go beyond the pleadings, the Court is respectfully required to convert Defendants' Letter to a Motion to Summary Judgement. Furthermore Westerman's signature on pleadings and papers to this Court, without any evidentiary support constitutes a frivolous filing in violation of Rule 11, that is intended to bias this Court and intended to cause delays to their benefit. As documented herein, the clear misrepresentations show that Defendants' new counsel Westerman, either failed to conduct any reasonable inquiry into the facts, or intentionally included multiple factually erroneous statements in their filings. These improper statement are inappropriate, extrinsic, and under Rule 12(f) need to be struck.

### C ARGUMENT
*WESTERMAN ARE UNABLE TO INCLUDE NEW FACTS IN THEIR MOTION*

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See*, *e.g., Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018); *see also Tellabs*, 551 U.S. at 322, 127 S.Ct. 2499. Defendants repeated misstatements and factual errors attempt to sway this Court with conclusory allegations that do not belong in the Motion to Dismiss and their extra pleadings must be struck. A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp,* 521 F.3d 202, 214 (2d Cir.2008) (internal quotation marks omitted). Accordingly the Court construes plaintiff's Complaint with "special solicitude" and interprets it to raise the strongest arguments it suggests. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006) (quoting *Ruotolo v. I.R.S.,* 28 F.3d 6, 8 (2d Cir.1994)).

*WESTERMAN REQUIRED TO MOTION COURT FOR SUMMARY JUDGEMENT FACTS*

In the alternative, if the Court is to permit Defendants to include these extra-pleading facts, Plaintiff respectfully moves the Court must convert Defendants Rule 12(b)(6) motion to dismiss into a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. See In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985) (noting that Rule 12(b)(6) "permits the district court to consider matters outside the pleadings and to treat a motion for dismissal as one for summary judgment provided 'all parties shall be given reasonable opportunity to present all material made pertinent to such

a motion by Rule 56' "). In accordance with principles of fundamental fairness and by analogy to Rule 56(e) and (f), it is also improper for a district court, in ruling on the 12(b)(1) motion, to consider conclusory and hearsay statements contained in pleadings submitted by defendants, and then to deny plaintiff limited discovery Kamen v. American Tel. & Tel. Co., 791F.2d 1006, 1011 (C.A.2 (N.Y.),1986)

## *WESTERMAN TO NOTIFY PRO-SE PLAINTIFF PRIOR TO INCLUDING NEW FACTS*

By introducing new factual allegations, Defendants are required to give notice to a Pro-Se Litigant that they intend to convert to a Motion for Summary Judgment. The Second Circuit has explained, "a district court should give parties specific notice of its intent to convert a motion to dismiss into a motion for summary judgment." Green v. Doukas, 205 F.3d 1322, 2000 WL 236471, at *2 (2d Cir. 2000) (unpublished opn.) (citing In re G. & A. Books, Inc., 770 F.2d at 294-95). Courts have recognized that, in certain circumstances, explicit notice is necessary before conversion of a Rule 12(b)(6) motion, Green, 2000 WL 236471, at * 2 (citation omitted), such as so the parties "should reasonably have recognized the possibility that the motion might be converted to one for summary judgment" and were not "taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleading." In re G & A Books, Inc., 770 F.2d at 294–95. In light of Plaintiff's pro se status, and in accordance with Judge Freeman's rules Defendants are required explicitly to notify Plaintiff of their intention to convert their Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. Byrd v. Dunn Towers I, Apt's, 2017 WL 5484162, at *1 (W.D.N.Y., 2017). However their Pre-Motion Letter (ECF 32) makes clear their intention to avoid this rule, and is replete with multiple false allegations and new facts that are improper in this proceeding.

## WESTERMAN HAS COMMINGLED LEGAL ENTITIES TO CONFUSE THE COURT

Defendants have also wrongfully imputed allegations against non-party-corporate entities to this proceeding. In several improperly included statements, Westerman knowingly commingle legal entities, between Timetrics and other legal entities that are non-parties to this action. The numerous false statements documented herein, refer to rights, obligations and claims that belong to a separate corporate Delaware LLC, Nefertiti Asset Management, LLC ("NAM"). NAM is a distinct corporate entity, and is not a party to these proceedings. NAM has not brought any claims in this district. NAM is bound by the laws under the Delaware LLC Act. Further, under the Delaware LLC Act, Larkin has no recourse against

individual members, Kumaran, (in her individual capacity) and other members in their individual capacity in the LLC. *See* Del § 18-303. Therefore allegations and false statements about non-parties to this proceeding are improper, inappropriate and should be struck. Defendants are not permitted to include numerous extrinsic facts in their proposed Motion to Dismiss and if their references to unsupported extrinsic facts are not struck, this Motion must be converted to Summary Judgment to Plaintiff can defend the false allegations that have no legal or factual support.

### *WESTERMAN MUST HAVE EVIDENTIARY SUPPORT IN PLEADING FACTS IN COMPLIANCE WITH FRCP 11/ FAILED TO PERFORM REASONABLE INQUIRY*

Furthermore, Defendant's pleading in Pre-Motion Letter ECF 32 misstatements (#1-#12) contains multiple false allegations that have <u>no evidentiary support</u> and are improper in their proposed Motion to Dismiss.  Rule 11 provides that an attorney's or a party's signature on a pleading, motion, or other paper constitutes a certificate that (1) it is not "presented for any improper purpose," such as harassment, delay, or an unnecessary increase in cost; (2) it is "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law"; (3) the factual contentions "<u>have evidentiary support</u> or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or *Rule 11(b)* discovery"; and (4) any factual denials "are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief." Rule 11(b). Rule 11 applies to written documents, whether containing statements made under oath or not, that a party or its attorneys submit to a federal court.

The Pre-Motion Letter ECF 32 is improper as it hopes to wrongly dismiss the case without proper discovery. These statements, with even a elemental review of the facts, would show Westerman have knowingly pled false representations, that have <u>*no evidentiary support*</u> and are in fact contradicted by the agreements or documents, correspondence and emails.  "The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed <u>after reasonable inquiry</u> it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

The Court confirmed that Rule 11's central purpose is to deter baseless filings. The Court of Appeals states unambiguously that any signer must conduct a "<u>reasonable inquiry</u>" or face sanctions. *See* Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 111 S.Ct. 922, 931–32, 498 U.S. 533, 548 (U.S.Cal.,1991)  As expanded below, numerous false statements were included to detract from the merits. Clearly no reasonable inquiry was conducted and the factual misstatements #1-#12 document the improper statements, extrinsic to the Complaint are intended to cause further delays in adjudication and should be struck.

### *MULTIPLE FALSE ACCUSATIONS ARE IMPROPERLY INCLUDED THE PLEADING*
### *False Accusation 1 –"Despite numerous demands, [Kumaran] still refuses to account for or return Larkin 's money".*

This allegation is not only false, but it is improper as it is extrinsic to the Complaint and contains allegations that should in fact be directed to a third party Delaware LLC which is not a party to this proceeding, Nefertiti Asset Management, LLC ("NAM").NAM was formed in May 2018 in Delaware. Larkin's business agreements with NAM fall under the Delaware LLC Act. NAM is not a party and has brought no claims in this action. Further, under the Delaware LLC Act, only NAM (and <u>not its individual members</u> or managers in their personally capacity <u>or Kumaran</u>) are liable for Capital Contributions.

> *Del § 18-303 states (a) Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, **<u>shall be solely the debts, obligations and liabilities of the limited liability company,</u>** and **<u>no member or manager</u>** of a limited liability company **<u>shall be obligated personally for any such debt, obligation or liability of the limited liability company</u>** solely by reason of being a member or acting as a manager of the limited liability company.*

Therefore Kumaran is not the proper party against these allegations are asserted. Any claims Larkin has against *NAM* for capital and interests in the hedge fund, are misplaced in this proceeding and Larkin's claims against Kumaran are not supported by law and are frivolous. the statements are unsupported in law, as in accordance with the Delaware LLC Act.

Therefore as a matter of law, Defendants allegations have no basis or grounding to be presented. Courts have found attorney's to have violated standards of signing pleadings if they have no basis in law. See Hartz v. Friedman, 919 F.2d 469, 475 (7th Cir. 1990) (affirming sanction against counsel for failing to make reasonable inquiry into applicable law before filing); See also , Levy v. Aaron Faber, Inc., 148 F.R.D. 114 (S.D.N.Y. 1993) (attorneys' failure to cite any relevant case law and claims could

be supported by conclusory pleading demonstrated that counsel "failed to conduct the requisite inquiry into the facts and the law"). Westerman have intentionally wrongfully assigned the legal entity to these extra-pleading facts. As stated above, neither Plaintiff Kumaran in its individual capacity, nor Plaintiff Timetrics accepted monies in their individual or corporate capacity.

Not only does the Delaware LLC Act shield individual members and partners, including Kumaran and other members, partners and attorneys who are involved, from liability for the debts of NAM. as a matter of law, under Delaware LLC Act 18-502, NAM is entitled to reduce Larkin's Membership Interests to zero, as Larkin breached his Capital Contributions. Finally Larkin agreed that any claims against NAM are to be resolved under binding Commercial Rules of Arbitration under AAA. The claims between Larkin's claims for Membership Interests and claims for refunds from NAM, are not the subject matter of this dispute. Westerman has therefore included improper and immaterial statements, wrongfully directed against non-parties which are irrelevant to the Complaint before this Court. Therefore Plaintiff respectfully moves these statements are struck.

In addition, the conclusory accusations are not supported by evidence. Any reasonable inquiry into the facts and correspondence between Bracewell and NAM (a  Delaware LLC non-party) shows that Larkin (through Bracewell) has not made <u>even one demand for capital to be returned for a period of over two years</u>. Bracewell were retained in or around October 2017.  In extensive communications with Bracewell, spanning almost two years, Bracewell acknowledged oral, implied and draft agreements the Delaware LLC Act and agreement between the parties, that Larkin was entitled to <u>Membership Interests and equity in NAM</u>. Under the Delaware LLC act, Bracewell <u>made no "demand"</u> that Larkin receive <u>his money back, ahead of other investors</u>. This is directly contradicted by Westerman's statements. The documentary evidence shows the direct opposite in facts. Therefore Westerman have failed to make any reasonable inquiry into the facts or properly transfer the files from Bracewell which would show that Bracewell has instead demanded "<u>Membership Interests</u>". These erroneous and improper statements are inappropriate in the response and need to be struck.

In signing this pleading Westerman has conducted no reasonable inquiry and made false statements to the Court The facts and evidence show Larkin's former counsel, Bracewell fully

acknowledged the Agreement in Principle for the Delaware LLC, Nefertiti Asset Management, LLC ("NAM") and Larkin is not only entitled to his capital returned at-will. Contradictory evidence in email on February 9th 2018 Bracewell stated to the contrary, acknowledging Larkin's ongoing and contradictory demands for Membership interests in NAM and not a refund.   The repeated email evidence shows to the contrary. For example, documentary evidence shows that on the dates May 14th, 2018 Bracewell communications requested Membership Interests in NAM and not "a refund". Again on May 22nd, 2019, NAM, (a separate Delaware LLC) accounted to Larkin the full treated of Larkin's debt in Capital. Therefore these statements are not just again the wrong legal entity they are provably false and new counsel have failed to undertake review of the history of the case A reasonable inquiry requires that counsel interview the available witnesses and prior legal representatives. See Wigod v. Chicago Mercantile Exch., 981 F.2d 1510, 1523 (7th Cir. 1992) (upholding sanctions award against plaintiff's attorney who failed to interview attorneys who represented plaintiff in related proceedings and other available witnesses); Plaintiff respectfully requests these extra-pleading materials are struck, as they are improper, immaterial and documentary evidence again do not belong in a Motion to Dismiss.

*False Accusation 2 — [Kumaran] never confirmed Larkin's interest in the hedge fund.*

For the same reasons *supra*, Westerman's allegations are improperly pled against the wrong corporate entity Nefertiti Asset Management, LLC "NAM" which is a non-party. NAM has brought no actions in this district and is not a properly plead "party" to these proceedings. Further, any claims Larkin has against NAM for capital and interests in the hedge fund are improperly misplaced in this proceeding. As stated supra, Kumaran, in its individual capacity is not personally liable for the debts and obligations of NAM (See Del § 18-303) therefore this allegation is improper and irrelevant. Westerman have knowingly imputed the wrong corporate entity to mislead the Court, without supporting law and facts. Neither are these facts relevant to the Motion to the Dismiss, that is proposed in Defendants Pre-Motion Letter ECF 32, and need to be struck.

Further this statement is provably false as the emails and evidence directly contradict Westerman's allegations. A reasonable inquiry as shown above, would show documents that *NAM* engaged in an extensive two years of communications with Bracewell to directly confirm Larkin's interests in the LLC. Emails on numerous other dates also show for example on May 22nd 2019, contradicting these

allegations. **NAM** which is a non-party to this proceeding, sent Bracewell a final letter of intent, clearly documenting how his capital would be accounted for at **NAM** and correspondence to Larkin to finalize his interests, that culminated on June 5th 2019. Larkin apparently agreed in principle with the treatment, but through then refused to cooperate with the signing of the NDA and Operating Agreements, for the Delaware LLC, unless Plaintiff acquiesced new and commercially unreasonable terms, including waiving its IP rights. For failure to sign the prerequisite NDA, **NAM,** and its legal counsel were rightfully unwilling to disclose further confidential information related to affiliate companies and are under no obligation to do so, unless Larkin upheld the bargained for contractual provisions under the Delaware LLC Act to sign an NDA and cooperate with management directives.

Larkin remained insubordinate, subsequently held his competitors' commercially sensitive information as "leverage", and threatened to "publish" confidential information and obstruct regulatory compliance. Further Larkin is using his competitors confidential and competitive trade secret in direct competition and obstructing his participation and holding out repeated obstructions. Under the Delaware LLC Act, his refusal to be comply with management and breach of his capital contributions are also grounds for termination. Nonetheless, NAM, sent written notification to Bracewell of Larkin's obligations and accounting thereunder. The plain reading of the emails between NAM and Bracewell, contradict these statements.

Westerman's statements therefore demonstrate that they failed to conduct any evidentiary review of the facts with prior correspondence. Westerman have therefore failed to properly review the underlying correspondence, with Bracewell, as the communications and facts shows also the direct opposite. Westerman's statements, are not only are unsupported and contradicted by the evidence they also plead new facts that violate the standards for a pleading under Rule 12(b), and Rule 11. These statements are therefore inappropriate, improper and need to be struck. Further these extrinsic pleadings are irrelevant to the claims before the Court.

*False Accusation 3 –"* **Plaintiff did not "promise" millions of dollars:".**

Recognizing that Plaintiff is Pro-Se, Defendants have again deliberately included bald, conclusory misstatements and false representations to the Court, that have no supporting evidence. A plain and simple reading of the underlying contractual agreements between the parties contradict these

terms. The material legal terms, between sophisticated parties, _disclaimed_ any such "promises" and the statements are knowingly false. These allegations are therefore improperly pled. The A Star Group, Inc (which Plaintiff Kumaran is the rightful successor and assignee of these contracts, as legally permitted under the Agreements and sole owner of all IP) operated as an independent contractor under a primary set of Terms and Conditions, ("T&C") and also licensed software under an End User License Agreement ("EULA"). Both contracts were filed under ECF 33. The foregoing contracts clearly identify the roles, responsibilities and division of duties between the parties. They also contain clear representations and warranties by Kumaran or AStar. Notably the EULA and T&C have clear disclaimers that contradict any "promises".[1] Any review of the underlying engagements demonstrates that Defendants are provably false and contradicted by the agreements signed by the parties Further there is an Entire Agreement provision which disclaims all other statements.[2] Therefore the material terms of the contracts contradict these false accusations. Defendants are contradicting their own agreements.

Westerman's are not permitted to include false under a FCRP Rule 11. A party or an attorney violates Rule 11(b)(3) when he falsely represents to the Court that the allegations and other factual contentions he made have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Boyce v. Microsoft Corp., No. 92 C 7075, 1994 U.S. Dist. LEXIS 629, at *12 (N.D. Ill. Jan. 25, 1994) (attorney sanctioned for failing to inquire as to whether client signed a nondisclosure agreement and for failing to provide sufficient legal authority for claim). Courts have upheld that dishonest statements that utterly lack support warrant sanctions. Under Rule 11(b)(3), "sanctions may not be obtained unless a particular allegation is utterly lacking in support." _O'Brien v. Alexander_ (2d Cir.1996) 101 F.3d 1479, 1489.

As demonstrated in this motion, Defendants in repeated instances, have improperly included statements that utterly lack evidentiary support. They are inappropriate and have been improperly included for the purpose to prejudice this Honorable Court against  Pro-Se litigant, who may not be able to defend the misstatements. Courts typically condemn statements which rise to the level of direct

---

[1] _See_ T&C Para 11, 12, _See_ EULA Para 11, 12
[2] _See_ T&C Para 25, See EULA Para 23

falsehoods when sanctions are warranted pursuant to Rule 11(b)(3). *See Sichel,* 230 F.Supp.2d at 332; [3]

*see also Antonious,* 275 F.3d at 1074 ("[A]n attorney violates Rule 11(b)(3) when an objectively

reasonable attorney would not believe, based on some actual evidence uncovered during the prefiling

investigation, that each claim limitation reads on the accused device either literally or under the doctrine

of equivalents) Further Defendants have wrongfully included extrinsic facts that cannot be considered

in a Motion to Dismiss and are purposely intended to create bias. These misstatements are not permitted

in a Motion to Dismiss and also are expressly disclaimed in the underlying agreements, and respectfully

requested to be struck.

*False Accusation 4 –"Timetrics did not cause millions of dollars of losses"*

Defendants continue their unsupported and conclusory allegations by wrongly assigning blame

for internal mismanagement and Northland's losses. Further, if the Court is to consider or include these

allegations, Plaintiff is entitled to discovery and the Court is respectfully requested to convert their letter

in ECF 32 for a Motion for Summary Judgment. These false allegations, are expressly not permitted  in

this stage of a proceeding or to be considered in a Motion to Dismiss. Not only are these statements false,

but are irrelevant and immaterial facts that go beyond the pleadings. Defendants improperly attempt to

introduce new and disputed facts without converting to a Motion for Summary Judgment to prejudice

Plaintiff (without permitting discovery), which plaintiff respectfully moves to strike. Further Westerman

are not permitted to include accusations based on "hearsay". Chapman & Cole v. Itel Container Int'l,

865 F.2d 676, 684 n.11 (5th Cir. 1989) (counsel's reliance on "unverified hearsay" without questioning

witness about underlying facts and circumstances did not constitute a reasonable factual inquiry).

*Rule 56 entitles Plaintiff to discovery to include these misstatements*

FRCP Rule 56 is clear, that Defendants need to provide notice to a Plaintiff of their intention to

include "new" facts that go beyond the pleadings. Under the Individual Practices of Magistrate Judge

Debra Freeman, Rule II.(F) also states as follows: "Where a counseled party files a dispositive motion with

respect to any claim asserted by a *pro se* litigant, counsel must comply with the notice requirements set out

in the Local Civil Rules of this Court, including Rules 12.1 and 56.2, where applicable. Where, in a motion

---

[3] See also *Chum Ltd. v. Lisowski* (S.D.N.Y. Mar. 12, 2001) No. 98 Civ. 5060(KMW), 2001 WL 243541, at *14. *See Sichel v. UNUM Provident Corp.* (S.D.N.Y.2002) 230 F.Supp.2d 325, 332;

to dismiss a *pro se* complaint, ***a counseled party refers to matters outside the pleadings, that party is strongly encouraged to move, in the alternative, for summary judgment,*** so that, if the Court decides to resolve the motion under Rule 56 of the Federal Rules of Civil Procedure, the *pro se* litigant will understand, based on the moving party's Local Civil Rule 56.1 statement, exactly what facts are relevant to the motion." (*Emphasis added*). Therefore Defendants have improperly added extraneous facts to muddle the Motion, without filing to a Pro-Se litigant the appropriate Motion for Summary Judgement. These numerous matters outside of the pleading, also entitle Plaintiff to discovery. As entitled to under Rule 56, if Defendant's are permitted to include extrinsic facts, Plaintiff must by law be able to conduct discovery. Because Defendants moved for summary judgement prior to discovery but have offered evidence in support of that motion plaintiff is entitled to discovery prior to answering the defendants' Rule 56 summary judgment motion. *See* Fed.R.Civ.P. 56(f) Matthews v. Malkus, 352 F.Supp.2d 398, 402 (S.D.N.Y.,2004)

Further the allegations are unsupported and false and contradict the facts in the FAC. The FAC states that in 2014 Larkin's primary trader Aviral Chopra abruptly resigned in an ongoing exodus of Northland employees resigning.  Negligently, Larkin hired a recent college graduate, Daniel Lothrop, with absolutely no trading experience, no qualifications or licenses to trade, to manage millions of dollars of trading floor for Northland. The FAC states that not only did Lothrop fraudulently conceal dozens of unauthorized contracts into an FCM Account, his conduct was replete with errors and omissions, (calculating "zero margin" on the unauthorized transactions), and he frequently wondered off the desk leaving the trading floor unsupervised. Despite numerous documented warnings, Larkin failed to rectify the problem he was leaving the trading floor unmanned and unsupervised.  Employee Lothrop lost significant amounts of money during a Thanksgiving OPEC meeting, when he left the trading desk unmanned to attend a Webinar during extreme market volatility.  It was not until the Lothrop Webinar Loss, causing several hundreds of thousands of dollars of losses, did the relationship between Plaintiff and Northland breakdown. (*See* FAC P ¶84-96)

### Northland Operated Trading Floor with Negligence and Mismanagement

Careful examination of the facts and permission to conduct discovery would also enable Plaintiff to disprove these false assertions.  Facts and discovery would also show that Plaintiff did not even have access to any of Northland's trading accounts or FCM Statements. Discovery would also show that

Northland, Larkin and Lothrop have simultaneously been subject to multiple regulatory investigations, from the Massachusetts State Department, CFTC, and NYMEX, which stemmed from customer complaints that Larkin was leaving the trading floor unsupervised. Further documented evidence (*See ECF 33, Exh 1*) shows regulatory compliance violations against Larkin with fines in excess of $300,000 and "bans on trading" citing compliance violations for (amongst other things) "failure to supervise the trading floor." Discovery would also prove that simultaneously Larkin was out shopping (during business hours) the desk was completely vacant, while Lothrop's losses were occurring - in breach of contract. It is inconsequential and disprovable that Kumaran caused such losses. Further facts discovered would also show that Larkin, the CEO who is actually registered and solely responsible for the activities on his trading floor, is frequently out of the office, on vacations or golfing, consistent with the regulatory compliance violations for "unsupervised trading operations"

 <u>Facts in the Pleadings to be taken as true</u>: Further these allegations contradict the facts in the FAC. All losses were <u>solely</u> caused by Northland's own employees Daniel Lothrop (Defendant to this proceeding) the only trader, with such responsibilities, and also due to the gross negligence and mismanagement and failure to supervise by Larkin. The FAC states Defendants further committed <u>fraud</u> by concealing numerous unauthorized transactions placed by Lothrop from Plaintiff. Lastly, *<u>all</u>* Defendants also committed <u>fraud</u> to the FCM and violated the Commodities Exchange Act, by conducting speculative trading in an account that was regulated as a hedging account in attempts to recover Lothrop's Webinar's losses. Other facts show that Lothrop admitting the FCM's platforms were replete with errors and omissions which frequently had material deficiencies in CME compliance computations and deal entry. Westerman's unsupported statements, also fail to mention Lothrop's unauthorized transactions, as well as evidence showing Northland's regulatory compliance violations for repeatedly leaving the trading floor unsupervised.

 Notwithstanding any of the foregoing facts, the express contracts agreed ***Northland*** and ***Hedge*** and **<u>not Plaintiff</u>** were responsible for decisions and liability thereunder. (*See* T&C 3.b, EULA 12) Defendants furthermore contradict their own certification and warranty in the contracts whereby they failed to complete a Factory Acceptance Test and accepted all liabilities therein. Eng. Ltr 5, expressly

included language as follows Section 17 states which waived certification and accepted all responsibility and liability. [4] Therefore these improper statements are contradicted by facts. Westerman also fails to admit to this Court that Plaintiff <u>had no access to any</u> of Defendant's trading accounts, <u>no access to Defendant's computer systems or operations</u>, and no liability thereunder. A careful review of these statements are also unsupported and in express contradiction of the strict sharing of roles, risks, liabilities in the underlying agreements.[5] Therefore, these conclusory and unsupported facts are pled improperly. It is not even plausible that Plaintiff "caused" these losses.[6]

In the alternative, if this Court is to accept these unsupported conclusory allegations, Plaintiff is entitled to discovery. Plaintiff respectfully moves the Court to strike the improperly statements or in the alternative convert the letter for Motion for Summary Judgment so the misstatements under Rule 56. These are improperly pled to improperly pled prior to adjudication on the merits. Furthermore, inclusion of these unsupported facts without discovery at a Motion to Dismiss Stage is improper.

### *False Accusation 5 –"Plaintiffs merely placed trades for Northland and Hedge"*

Again, this statement is a direct misrepresentation to this Court of the facts and Plaintiff respectfully moves to be struck. These statements are also unsupported by evidence. The factual evidence shows the complete opposite. Plaintiff <u>never</u> placed one single trade for Defendants, Plaintiff <u>never</u> had the authorization on any FCM account. Plaintiff <u>never</u> had a "Power of Attorney" now, or ever, in any FCM. Plaintiff did not even have computer access to Northland to "place trades" and had no authorization from the FCM. Westerman are expressly aware the contracts state the opposite. Even an elemental review of the agreements can disprove these false statements. Given that one need only look clearly at the underlying contracts and documents, to see that new counsel have no evidentiary support for their false accusations, one can only conclude these statements are being made for improper purpose.

Therefore Westerman have failed to review even the basic facts and underlying contracts, emails and evidence and filed this document without conducting a reasonable investigation into the facts which

---

[4] Eng Ltr 5, Para 17 Northland agrees to waive the certification of the FAT Test (Factory Acceptance Test) as contemplated in Section 9.6 of the EULA prior to the initial go-live trading for any of the foregoing incomplete items and **hereby accepts all responsibility and liability for the production use** prior to the Northland's final certification of the FAT Test.
[5] *See* T&C Para 3a, 3b, 12, *See* EULA 12
[6] *See* T&C P12, EULA P12

have no evidentiary support. Battles v. City of Ft. Myers, 127 F.3d 1298, 1300 (11th Cir. 1997) (attorney sanctioned for failing to conduct reasonable factual investigation). Relying on hearsay is also not permitted or blindly relying on client's version.  Westerman's defense appears to have performed no factual review and blind reliance on her client's defenses. ("Blind reliance on the client is seldom a sufficient inquiry" under Rule 11.; Banco de Ponce v. Buxbaum, No. 90 Civ. 6344, 1992 U.S. Dist. LEXIS 15730, at *66 (S.D.N.Y. Oct. 14, 1992) (attorney sanctioned where "he took at face value the version of the facts without any reasonable inquiry),[7] The failure to investigate also shows Defendants' and their counsel also violate Rule 11. See Holgate v. Baldwin, 425 F.3d 671, 675-77 (9th Cir. 2005) (an attorney must conduct an objectively reasonable inquiry into the facts and law to make sure the pleadings are well founded); U.S. Bank Nat. Ass'n, N.D. v. Sullivan- Moore, 406 F.3d 465, 470 (7th Cir. 2005) (Rule 11 requires counsel to read and consider relevant court documents before litigating);. Therefore these unsupportable, factually inaccurate statements are required to be struck.

Plaintiffs responsibilities were also not to "direct" trading and assume a management responsibility for Client. Those responsibilities were clearly delineated in the contracts where Northland and not Plaintiff were responsible for management decisions (*See* T&C 3.b) Defendants are not permitted to include new facts and misstatements, in a MTD, that are false and go outside the pleadings in the FAC. Further Plaintiff has to spend additional time correcting and contradicting these new facts – which do not belong in a Motion to Dismiss and Defendants attempt to improperly attempt to convert to a Motion for Summary Judgment violating Rule 56. Plaintiff therefore respectfully moves to strike the improper and immaterial statements, as they seek to prejudice the Court and are improper.

*False Accusation 6 – At a subsequent meeting.. "Timetrics" would instruct Northland and Hedge on a to-be-agreed-upon volume of trades.*

In an ongoing pattern of misrepresentation to the Court, Defendants have again incorrectly comingled legal entities in order to confuse the Court on the proper legal entity. This statement is demonstrably false. The facts show that on September 28th 2016 Larkin stated he had spoken to an FCM  about opening a Managed Account, for Plaintiff (in its individual capacity) – and expressly not Timetrics - to  have

---

[7] aff'd without op., 43 F.3d 1458 (2d Cir. 1994). Brubaker Kitchens, Inc. v. Brown, Civ. No. 05-6756, 2006 U.S. Dist. LEXIS 89622, at *10 (E.D. Pa. Dec. 11, 2006) (holding that.. counsel should have interviewed employee to verify client's speculative statements about a defendant's involvement);

direct trading authorization on a Northland account. Further, Plaintiff registration as a CTA and subsequent trading was to be done through a separate legal entity Nefertiti Risk Capital Management, LLC ("NRCM"). NRCM is not a party to this proceeding. NRCM has not brought any claims in this district. The authorization was not for the corporate entity "Timetrics" and the facts demonstrably show that it was not "Timetrics". "Timetrics" never agreed to trade a Northland account, neither did "*Timetrics*" as a corporate entity agree to "instruct" anyone on trading. This pleading is improper as it is intended to prejudice the Court on Plaintiff's Pro-Se status and the agreement was in Kumaran's name individually. Further these statements are irrelevant to the Claims before this Court in the FAC.

On or around October 3rd 2016, further supporting documentary evidence contradict Westermans' frivolous misrepresentations, and show that Larkin sent Plaintiff trading applications (in its individual capacity) (not Timetrics) to be signed at an FCM on behalf of Northland. Those forms involved direct authorization on the account, and under no circumstance would "Timetrics" or anyone be "instructing" on trades. A true and exact copy of the forms he wanted to be signed as trading authorization for Northland are hereto attached as Exhibits 1 and 2. Therefore Westerman have made direct misrepresentations and failed to conduct reasonable inquiry into the pleadings. Such conduct also violates Rule 11.  See also R & A Small Engine, Inc. v. Midwest Stihl, Inc., 471 F. Supp. 2d 977, 978-79 (D. Minn. 2007) (to satisfy the requirements of Rule 11, an attorney is obligated to conduct a reasonable inquiry into the factual and legal basis for a claim); Williams v. Balcor Pension Investors, 150 F.R.D. 109 (N.D. Ill. 1993) (sanctions awarded where attorneys "failed to make reasonable inquiry to determine whether the crux of plaintiffs' claim was factually and legally tenable"). [8] *See* Bernal v. All American Investment Realty, Inc.,479F. Supp. 2d 1291,1326-27(S.D.Fla.2007) (attorney has affirmative duty under federal rules to conduct reasonable inquiry into validity of pleading before it is signed);

Discovery would also show that the terms of that arrangement were that Kumaran individually, (not Timetrics) would have direct trading authorization, and under regulatory compliance, this would involve a Commodities Trading Advisory ("CTA") disclosure agreement and registration of compensation with

---

[8] Cf. Four Star Financial Serv., LLC v. Commonwealth Man. Assoc.,166 F. Supp. 2d 805, 809 (S.D.N.Y. 2001) ("the requirement that the facts alleged have evidentiary support requires, at a minimum, that there is reason to believe that, when all the facts are known, the Court will find they support the relief requested").

the FCM. This agreement was never consummated, because Larkin did not want to comply with the regulatory requirements. These pleadings are improper and are respectfully requested to be struck and attempts to  implead the wrong corporate entity with incorrect pleadings. Further for the reasons stated supra, these extrinsic statements are not permitted in a MTD and inclusion of unsupported facts, requires a Motion for Summary Judgement with discovery on the facts.

*False Statement 7 –  Kumaran never provided the promised trades"*

This statement is false and contradicted by the evidence. Westerman again make direct misrepresentations of the parties involved and the terms of any engagement. Documentary evidence and agreements, sent from Larkin himself, demonstrate the parties agreement directly to the contradictory. The following emails exchanged and draft agreements between the parties, provide evidence that <u>Larkin agreed in writing on December 9th 2016</u> as follows  "*There is no obligation..to disclose the trades or detailed workings of the Trading Programs to you. If the parties mutually decide later to disclosure of the trades, ..we agree that you will sign a Non-Compete Agreement.. and to terms to protect the intellectual property, proprietary nature and confidentiality of the Trading Programs."* Therefore Westerman's statements are utterly unsupported and improper. There was no agreement for Kumaran, to provide "promised" trades.

Westerman's pleadings are not only factually implausible, they clearly fail to have reviewed the evidence. An attorney's failure to verify with the client the accuracy of all factual allegations made in a complaint constitutes a basis for sanctions under Rule 11. The attorney should confer directly with the client to verify the accuracy of the claims. See McGhee v. Sanilac County, 934 F.2d 89, 93 (6th Cir. 1991) (appellate court reversed decision not to sanction where attorney neglected to ask client whether alleged statements were actually false). *See* e.g., Patsy's Brand, Inc. v. I.O.B. Realty, Inc., No. 99 Civ. 10175 (JSM), 2002 U.S. Dist. LEXIS 491 at (S.D.N.Y. Jan. 16, 2002) (sanctioning attorneys who "simply closed their eyes to the overwhelming evidence that statements in [their] client's [affidavits]were not true"). While Plaintiff is Pro-Se, Plaintiff is entitled to equitable treatment. Defendants cannot take advantage of that fact, and argue "fiction" to prejudice the outcome before the Court. Counsel are obligated in pleadings to have read these emails, originating in agreement from Larkin. Counsel must explore readily available avenues of factual inquiry. Coonts v. Potts, 316 F.3d 745,

753 (8th Cir. 2003) ("To constitute a reasonable inquiry, the prefiling investigation must uncover a factual basis for the allegations, as well as a legal basis."). The inclusion of these unsupported and conclusory false allegations is improper, irrelevant and should be struck.

*False Accusation 8 - When they met, Kumaran proposed that "Timetrics" resume trading for Northland and Hedge – initially gratis- so she could demonstrate that Timetrics' program worked.*

In another misrepresentation to the Court, Westerman continues to purposefully assign the incorrect corporate entity "Timetrics" to their pleadings. (*See* Supra #6).  As stated above, the legal entity on the Managed Account forms, as sent in email by Larkin on October 6th 2016 was for Kumaran in her individual capacity and subsequently another entity Nefertiti Risk Capital Management, LLC ("NRCM") which is not a party to this litigation. (*See* Exh 1 and 2). These accusation are also not relevant to the claims before this Court. Further they contain numerous errors or law and fact alerting the Court that Westerman failed to conduct even the slightest review of the legal entities.  The Court of Appeals has stated unambiguously that any signer must conduct a "reasonable inquiry" or face sanctions. See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 111 S.Ct. 922, 931–32, 498 U.S. 533, 548 (U.S.Cal.,1991) . Westerman fails to even review Exhibit 1, where the correct legal entity is mentioned on the documents. Jones v. International Riding Helmets, Ltd., 145 F.R.D. 120 (N.D. Ga. 1992) (sanctions imposed where even "[t]he most minimal investigation" would have revealed company's incorporation date and, thus, that company was not a proper party to the suit), aff'd, 49 F.3d 692 (11th Cir. 1995). These improper pleadings are again to prejudice Plaintiff. The false representations are materially and directly contradicted by the evidence.

Further, the plain and clear read of the documentary evidence clearly indicates that Plaintiff never agreed to work "gratis" and this allegation is false. The unsupported statements are directly contradicted by evidence. The Agreement in Principle dated September 2016, shows that Larkin committed to funding a significant amount of Capital, that would cover Two Years of Operating Capital including Kumaran's salary to launch a hedge fund. While under that salary, as is customary in hedge funds, the parties negotiated Larkin would receive preferential rates, for incentive accounts and managed accounts, so that Larkin could recover his proposed investment of Capital. The basic terms of Larkin's commitment to a *Two Year Capital*, and various "salary bonuses', and License Fees and Trading Royalties, upon which

Plaintiff relied, as documented in the Agreement in Principle show clearly that "Timetrics" did not agree to work "gratis". All proposals were conditioned on the full *Two Year Capital* that Larkin breached. These statements by Westerman are therefore materially false and fail to have evidentiary support. Also they are improper at this state in a Motion to Dismiss, seeking to divert the Court and influence Plaintiff's rights to a fair Motion to Dismiss, presenting to the Court, with unnecessary add-on and contradictory fact. Defendants improper pleading willfully conceals from the Court, the fact that any exchange or agreement was also conditioned on sizable Two Year Operating Capital contributions from Larkin (certainly not gratis) that he, as documented in email on November 29th 2016, proposed on his own volition to contribute.

In the alternative if this Court is to consider these pleadings replete with "nouveaux" and disputed facts, Plaintiff further respectfully moves the Court to convert the Defendant's motion for summary judgement. Courts strictly enforce the conversion requirement of Rule 12(b) where there is a legitimate possibility that the district court could refer to inappropriate material in granting the motion. *See Kopec v. Coughlin,* 922 F.2d 152, 154–55 (2d Cir.1991) (reversing a Rule 12(b)(6) dismissal where district court had not converted motion to one for summary judgment but nonetheless had relied in part on information contained only in the extrinsic materials attached to the motion.

*False Statement 9 .. –"Timetrics' would instruct trading on a "to-be-agreed-upon" volume of trades.*

Defendant pleadings are again factually unsupported. Not only do they implead the wrong corporate entity, further Defendants rely on extrinsic facts that go beyond the pleadings and are disputed. The FAC states, that Defendants made commercially unreasonable terms, to alter the terms of an agreement - after-the-fact – and after procuring benefit from services, software and IP for which they have not been compensated. Defendants attempts to include false accusations beyond the pleadings is improper in a Motion to Dismiss, and again supported Plaintiff's motion to convert to Summary Judgement. There was no agreement for Larkin to keep changing his mind and modifying terms in a commercially unreasonable manner, while in breach of his Capital Contributions after the services were performed. The facts associated for those allegations are improperly disputed in this pleading before the Court. See also *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988) (reversing where district court's opinion referred to factual matter contained only in movant's

memorandum of law, which raised "possibility that [the court] improperly relied on matters outside the pleading"). Such vigorous enforcement of the conversion requirement helps ensure that courts will refrain from engaging in fact-finding when considering a motion to dismiss, and also that plaintiffs are given a fair chance to contest defendants' evidentiary assertions where a court nonetheless does consider evidence extrinsic to the complaint in that context. Amaker v.Weiner,179F.3d48, 50 (C.A.2 (N.Y.),1999)

*False Accusation 10 - Defendants never saw or had access to the "Timetrics Software" or its components, including underlying programs or algorithms.*

Westerman again have made further false statements to the Court that are contradicted by the terms of the EULA, and other Agreements. An elemental read of the EULA defines Timetrics software as includes without limitation reports, output, design, functionality with definitions included therein (*See* EULA ¶1.3). Larkin, Lothrop, Bramante and all Defendants have retained copies of all such output of software, and received these on a daily basis, and as part of the roles and responsibilities, had to certify and accept their accuracy, and from these replicated those reports and functionality therein. Therefore these statements are not true, and can be readily contradicted as fact.  In presenting these unsupported statements, it is apparent that Westerman have therefore not conducted a reasonable inquiry into the facts. Willis v. City of Oakland, 231 F.R.D. 597, 598 (N.D. Cal. 2005) (attorney did not conduct an adequate investigation before filing complaint and was liable for Rule 11 sanctions); Edwards v. Fiddes & Son, Ltd., 227 F.R.D. 19, 23-24 (D. Me. 2005) (an attorney has an affirmative duty to inquire into the facts and law before filing a pleading; the inquiry must be reasonable under the circumstances);

Further these statements go beyond the facts in the pleadings, directly contradicting them and are inappropriate. The FAC clearly states, that Defendant were given line-by-line access to coding and formulae during a Factory Acceptance Test ("FAT") Test. (*See* FAC ¶87-90) Defendants then mis-used that information as the basis to create their replications in the OBT Book. (*See* FAC ¶9, 95). Other documentary evidence contradicts these statements and shows that on numerous dates, between 2011-2015, including those at several NYC locations where Larkin frequently stayed, he and other Northland employees met with Plaintiff and received detailed demonstrations and inner workings of the Software (as defined in the EULA). Based on these detailed "demos" they agreed to over five extensions and renewals. (*See* FAC ¶72,80,). Also the FAC alleges that during the period Sep 2016 – Nov 2016 Plaintiff

gave Larkin  detailed access to reports, strategies and methods and functional design, and output of software as well as features of its design, which he then included, replicated and copied into their OBT Book. (*See* FAC ¶172-178) At a Motion to Dismiss stage, the Court must assume all facts as true. Introducing contradictory facts, also improperly pled and seek to incorporate new facts in violation of Rule 56. The Court is therefore respectfully requested strike the extrinsic facts, or in the alternative, convert their proposed motion to Summary Judgement.

*False Accusation 11 - Larkin invested [] in the fledgling hedge fund.*

Of greater concern, Westerman has deliberately made material false financial statements to this Court. Clear documented and evidentiary support after review of (a) personal checks signed by Larkin (b) correspondence by Bracewell and NAM on multiple dates confirming the amounts directly contradict these facts. The conduct of misrepresenting facts to the Court is also prohibited under FCRP 11.  Courts look to, among other factors, whether the party acted in bad faith; whether they relied on a direct falsehood; and whether the claim was "utterly lacking in support." *New V & J Produce Corp. v. NYCCaterers Inc.*, No. 13 Civ. 4861 (ER), 2014 WL 5026157, at *7 (S.D.N.Y. Sept. 29, 2014).  Counsel are required to review all the relevant documents that are available to his or her client, see Insurance Benefit Adm'rs, Inc. v. Martin, 871 F.2d 1354 (7th Cir. 1989).[9] ("Rule 11 requires at a minimum that a party read the document whose terms it is contesting"); or that are otherwise accessible [10]. At a minimum, some affirmative investigation on the part of the attorney is required. Westerman has knowingly included in their pleading numbers inaccurate financial statements and deliberately misquoted financial Capital Contribution amount. Cohen v Kurtzman, 45 F. Supp.2d 423,436-38 (D.N.J.1999) (sanctions appropriate where attorney failed to conduct even a cursory legal or factual investigation of limited partnership).

Second, for the reasons stated supra, Larkin's contentions against a non-party corporate entity hedge funds, are not the subject matter of this Complaint and are improperly placed as NAM, has not made claims in this district. Third, Westerman has rushed to publish *inaccurate* confidential non-public financial information, about a non-party to this proceeding, without even a Meet and Confer, that was

---

[9] In re Ginther, 791 F.2d at 1155; Am. Roller Co. v. Foster Adams Leasing, LLP, 421 F. Supp. 2d 1109, 1116 (N.D. Ill. 2006) (quoting Teamsters Local No. 579 v. B&M Transit, Inc., 882 F.2d 274, 280 (7th Cir. 1989)
[10] *See Medical Emergency Serv.Assocs. v. Foulke, 844 F.2d 391, 400 (7th Cir. 1988); Albright v. Upjohn Co., 788 F.2d 1217, 1221 (6th Cir. 1986)*

scheduled for March 3rd, 2020. Plaintiff has disputed that the financial information related to non-parties, and Delaware LLC's that not party to this action are protected as non-public financial information related to privately held corporations. Courts have routinely protected that information, including the ownership stakes and membership interests.[11] Without waiting to resolve the Protective Order or airing on the side of caution to plead "new facts" Defendants have dishonored the good faith requirement to meet and confer, as including disputed financial confidential information, which they knew Plaintiff had requested protected.  Such conduct is consistent with the conduct alleged in the complaint of bad faith, and willful intention to publish another company's confidential information (*See*FAC¶196). has included inaccurate and false confidential financial statements. Finally, inaccurate statements were made without Counsel's review of the actual receipts or dollar amounts of contributions and the direct correspondence..

*False Accusation 12 - At a subsequent meeting, Kumaran solicited Larkin to invest.[].in a hedge fund*

Westerman has again deliberately misrepresented to this Court, both the existence and substance of a subsequent meeting, and the dollar amounts of financial capital. A plain reading of the agreement(s), would show that the amounts quoted are patently false, and materially misstate the confidential amount of <u>Two Years Capital</u> that Larkin agreed to contribute. Thus the actual amount is multiple times greater and factually contradicted the dollar amount printed in a pleading before this Court in ECF 32. Furthermore Westerman  knowingly contradict the facts in the pleadings which is improper. The FAC states that Larkin agreed to make a Capital Contribution of a <u>Full Two Years' Capital</u> to a new hedge fund. (*See* FAC ¶141-142). Therefore the financial amounts were also willfully misstated. Hallmark Ins. Adm'rs, Inc. v. Colonial Penn Life Ins. Co., No. 87 C 1770, 1994 U.S. Dist. LEXIS 2516, at *5 (N.D. Ill. Mar. 2, 1994) (court sanctioned defense counsel for making false statement in motion in the amount of bond, where a reasonable inquiry would have revealed a different financial amount). An attorney's failure to verify with the client the accuracy of all factual allegations made in a complaint constitutes a basis for sanctions under Rule 11. In the absence of investigation, counsel cannot carelessly or deliberately represent inferences as facts. Ryan v. Clemente, 901 F.2d 177, 179-80 (1st Cir. 1990);

---

[11] *See, e.g., Fox News Network v. U.S. Dep't of Treas.,* 739 F.Supp.2d 515, 571 (S.D.N.Y.2010) (withholding draft containing proposed financial and risk reporting strategy); *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 415–416 (M.D.N.C.1991) ("Such commercial information, which encompasses strategies, techniques, goals and plans, can be the lifeblood of a business [and] may also be particularly deserving of protection if the disclosing corporation is vulnerable to competitors.")

Skycom Corp   v. Telstar Corp., 813 F.2d 810, 819 (7th Cir. 1987) ("Either the lawyers did no investigation or they decided to misstate facts readily knowable.").

A further misrepresentation of the facts, is related to a subsequent meeting. The facts documented in emails and written correspondence show contrary evidence. At the subsequent in-person meeting on or around December 14th 2016 in New York City,  Larkin discussed, his own  proposal of terms _documented email on November 29th 2016_ made on his own volition, to contribute capital contributions again of <u>Two Years Capital</u> to a non-party to this proceeding Nefertiti Asset Management, LLC. This is completely inconsistent with the misrepresented financial amounts or circumstances in Westerman's letter ECF 32 before the Court. Rule 11 applies to all pleadings and letters to the Court. The factually contradicted amounts, are clearly stated in the written communications and Agreements between the parties that Westerman intentionally misstated. The inaccurate allegations against a non-party Delaware LLC, NAM, are also improper, and inappropriate in this district and should be struck.(_See_ Supra).

While Plaintiff is Pro-Se, this does not permit Westerman to clutter this Honorable Court with unfounded false accusations with the hope Plaintiff cannot correct the record. Plaintiff respectfully requests the Court strike and remove Defendant's counsel multitude of false statements and factual mis-representations which in turn cause delays to this action. Rule 11(c) allows the court to take remedial actions and sanctions (including ordering removal), if it determines that Rule 11(b) has been violated through "false, misleading, improper, or frivolous representations to the court." _Williamson v. Recovery Ltd. P'ship,_ 542 F.3d 43, 51 (2d Cir.2008). [12] Both a represented party and his attorney can be sanctioned under Rule 11(b)(3) for the factual insufficiency." [13] And as the Second Circuit stated in Calloway, [14] Rule 11 sanctions may be imposed upon a represented party when the party "had actual knowledge that filing the paper constituted wrongful conduct, _e.g._ the paper made false statements or was filed for an improper purpose." _See also Salovaara v. Eckert,_ 222 F.3d 19, 33 (2d Cir.2000)[15]

---

[12] New V & J Produce Corp. v. NYC Caterers Inc., 2014 WL 5026157, at *5 (S.D.N.Y,2014).

[13] _Amorosa v. Ernst & Young LLP,_ No. 03 Civ. 3902(CM), 2010 WL 245553, at *4 (S.D.N.Y. Jan. 20, 2010).

[14] _Calloway v. Marvel Ent. Grp.,_ 854 F.2d 1452, 1474 (2d Cir.1988), _rev'd in part on other grounds, Pavelic & LeFlore v. Marvel Ent. Grp.,_ 493 U.S. 120 (1989),

[15] (citing _Calloway_ for the same).

Plaintiff has not made a motion for sanctions. Plaintiff even though Pro-Se understands that such motions are a last resort. However, Plaintiff does assert its rights, that frivolous filings in the Court -that are irrelevant and inappropriate rightfully should be removed. Further Defendants should not be permitted to take procedural advantage, by diverting this proceeding with improper "false" and unsupported statements to disadvantage Plaintiff, in order to secure an unfair outcome or try to seek an early dismissal of Plaintiffs well-grounded in law and fact claims.   Plaintiff therefore requests the multiple statements that  are false be corrected and seeks to strike the wholly unsupported statements that are not permitted under the Court Rules. *See Centauri Shipping Ltd, v. Western Bulk Carriers KS,* 528 F.Supp.2d 197, 201–03 (S.D.N.Y. 2007) (declining to impose sanctions but <u>noting disapproval of lawyer's failure to correct false statements</u> in affirmation because "the purported harmlessness of Counsel's error is not a determination that [Counsel] is entitled to make" (quotation marks omitted)).

Further Westerman have published disputed confidential financial information, without abiding by a Meet and Confer or ability to have Court review. District Courts have routinely held that confidential and non-public financial information related to privately held corporations are redacted, including in Model Orders. The information about Nefertiti Asset Management, LLC, ("NAM") which is non-party affiliate, is commercially sensitive since the Operating Budgets and financial statements of a third party entity, including its Annual Operating Budget is commercially sensitive. Courts have sealed the third party financial information since disclosure could impinge on the privacy rights of third parties who clearly are not litigants herein.[16]

 Therefore Westerman, have overstepped their good faith requirement, to wait for Meet and Confer, enacted bad faith conduct alleged in the Complaint to use confidential information as "leverage" in a showing of bad faith pattern to dishonor confidences under which company information was shared. At a minimum, disputed confidential information is required to be presented to the Court, under Local Rules. Plaintiff therefore requests are struck as it contains improper materials that are disputed as confidential and required to be resolve by the Court before including in a pleading. The facts are

---

[16] *cf. Weinstein v. Barnett,* N.Y.L.J., Mar. 24, 1995, at 29,  Mancheski v Gabelli Group Capital Partners, No. 18762/03, 2006-05512, 835 N.Y.S.2d 595, 598, 2007 N.Y. Slip Op. 02904, 2007 WL 1017749 (N.Y.A.D. 2 Dept., Apr. 03, 2007)

demonstrably false and contradict those in the pleadings. *ECF 32* is also subject to the standards contemplated by Rule 11.  Similarly Westerman have knowingly presented to the Court disputed and extrinsic facts that are irrelevant to the FAC and a Motion to Dismiss at this stage. Plaintiff also respectfully requests that if Westerman are permitted to present to this Court and add numerous "alternate" and "unsupported" facts, Plaintiff is entitled to discovery and Defendants are required to move for Summary Judgement.   These factual misstatements are also improperly included and inappropriate under the requirements for consideration in a Rule 12(b) Motion to Dismiss. Plaintiff therefore respectfully moves the Court in the alternative to convert to a Motion for Summary Judgment.

## Conclusion

For the reasons above, Plaintiff respectfully moves the Court to strike the unsupported and extrinsic facts that are improper at this stage in a proceeding, or in the alternative convert Defendants pre-motion letter for a Motion to Dismiss to a Motion for Summary Judgment. If the Court is to consider these extrinsic allegations (which are contradicted by the clear evidence of the agreements and communication) Plaintiff, at a minimum is entitled to discovery to dispute this. Plaintiff is cognizant of the nascent benefit Defendants obtain by including their frivolous pleadings. First they prejudice Court against Plaintiff by including conclusory statements with unsupported facts and second they procure delays in disputing these facts.  Courts frequently infer the purpose of a filing from the consequences of the pleading or motion. For example, an improper purpose may be inferred when the effect of a pleading or motion is to delay the proceedings. Bay State Towing Co. v. Barge Am. 21, 899 F.2d 129, 132 (1st Cir. 1990) (record supported district court's conclusion that frivolous opposition to summary judgment motion was filed for purposes of delay); [17] Rule 11 prohibits filing a paper for the purpose of delay. Rule 11(b)(1). Case law under the 1983 rule suggests that a court will find an improper purpose. Rule 11 reaches pleadings, motions, and papers prompted by any improper purpose, which includes but is not limited to harassment, delay, and unnecessary increases in cost.

The primary purpose of Rule 11 is to deter unnecessary complaints and other filings. Successful deterrence works for the benefit of the judicial system. Further Plaintiff argues that these numerous

---

[17] See also Henderson v. Department of Pub. Safety & Corrections, 901 F.2d 1288, 1296-97 (5th Cir. 1990);

extrinsic facts, disputed by evidence are  improper, and inappropriate. Westerman are aware that they are not permitted to file pleadings (including in Pre-Motion Letters) that include unsupported facts, and erroneous statements which have no evidentiary support. Any excuse that Westerman relied on the statements of their client or carried out his client's instructions does not shelter him from sanctions. See In re TCI, Ltd., 769 F.2d 441, 446 (7th Cir. 1985) ("When lawyers yield to the temptation to file baseless pleadings to appease clients, . . they must understand that their adversary's fees become a cost of their business."). The Federal Circuit has held that a parties' attorney must perform an independent claim construction analysis and infringement analysis, and may not merely rely on his or her client's review of the technology. View Eng'g, Inc. v. Robotic Vision Sys.,Inc., 208 F.3d 981, 985-86 (Fed.Cir.2000) [18]

Plaintiffs request to strike and/or in the alternative is to streamline this procedure to prevent unnecessary judicial time in the multiple erroneous facts. See Szabo Food Serv., Inc. v. Canteen Corp., 823 F.2d 1073, 1077 (7th Cir. 1987) ("Unnecessary [complaints] sap the time of judges, forcing parties with substantial disputes to wait in a longer queue and condemning them *Sanctions under Rule 11* to receive less judicial attention when their cases finally are heard.") [19]. This diversion is therefore improper in procuring delays. in filing.  Further Defendant's should not obtain procedural advantage and prejudice Plaintiff by being granted delays in propagating these unsupported statements, and ongoing requests for extensions.

---

[18]  Pellegrini v. Analog Devices, Inc., No. 02-11562-RWZ, 2006 U.S. Dist. LEXIS 726, at *7-11 (D. Mass. Jan. 11, 2006) (dismissing a  claim as a Rule 11 sanction, where plaintiff's pre-filing investigation relied primarily on a picture of the accused product, taken from an advertisement).
[19] see also In re Yagman, 796 F.2d 1165, 1182 (9th Cir. 1986); Westmoreland v. CBS, Inc., 770 F.2d 1168, 1180 (D.C. Cir. 1985); Quiros v. Hernandez Colon, 800 F.2d 1, 3 (1st Cir. 1986) (Rule 11 deters filing of meritless claims and compensates those forced to respond).