**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMANTHA SIVA KUMARAN,           )<br>    *Plaintiff,*           )<br>                                           )<br>                                           )<br>   -against-           )<br>                                           )<br>NORTHLAND ENERGY TRADING, LLC )<br>HEDGE SOLUTIONS, INC.,           )<br>RICHARD M. LARKIN           )<br>DANIEL LOTHROP           )<br>DOMENIC BRAMANTE           )<br>    *Defendants,*           ) | Case No: 1:19-CV-08345–MKV-DCF<br>Judge: Hon Mary Kay Vyskocil<br>Magistrate Judge: Debra C. Freeman<br><br><br>**PLAINTIFF'S INITIAL DISCLOSURES** |

**PLAINTIFF KUMARAN'S INITIAL DISCLOSURES PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 26 (a) (1)**

  Pursuant to Federal Rule of Civil Procedure 26(a)(1) and the pursuant to schedule set at the Preliminary Conference on January 15th 2020 before Magistrate Judge Debra Freeman (*See* transcript) that set forth a deadline of March 20th, 2020 for Initial Disclosures, Plaintiff Kumaran. ("Plaintiff") makes the following initial disclosures to the Defendants in the above-referenced action. These disclosures are based on information presently known and reasonably available to Plaintiff and which Plaintiff reasonably believes it may use in support of its claims. Continuing investigation and discovery may cause Plaintiff to amend these initial disclosures, including by identifying other potential witnesses, documents and by disclosing other pertinent information. Plaintiff therefore reserves the right to supplement these initial disclosures.

  By providing these initial disclosures, Plaintiff does not represent that it is identifying every document, tangible thing or witness possibly relevant to this action. In addition, these disclosures are made without Plaintiff in any way waiving its right to object to any discovery request or proceeding involving or relating to the subject matter of these disclosures on any grounds, including competency, privilege, relevancy and materiality, hearsay, undue burden, confidentiality, or any other appropriate grounds. Furthermore, these disclosures are not an admission by Plaintiff regarding any matter. Plaintiff's disclosures are made expressly without waiving the right to object to the use of any such

information for any purpose, in whole or in part, at any subsequent stage or proceeding in this or any other action. Each and every disclosure set forth below is subject to the above qualifications and limitations.

1. **Individuals Likely To Have Discoverable Information**

Individuals likely to have discoverable factual information that Plaintiff may use to support its claims in the above-referenced lawsuits are identified in Attachment A, which by this reference is incorporated herein.

2. **Description of Documents**

The following enumerates documents, data compilations, and other tangible things in the possession, control or custody of Defendants that Plaintiff will require to support its claims:

1. Documents related to all communications, including via email, instant messenger, text messenger, and other media between Defendants and its employees and contractors, related to the Plaintiffs engagements, IP, software.

2. Documents related to all communications, including via email, instant messenger, text messenger, and other media between Defendants and its employees and contractors, related to OBT Book.

3. Documents related to all communications between Defendants and the FCM's during the period June 2014 – June 2015. Include specifically those related to any FCM who's positions were involved in the PILOT test  Plaintiff's IP, and the unauthorized transactions.

4. All account opening documentation at all FCM's related to Defendant's trading activities, including their terms of reference, commissions and fees, powers of attorney and compliance disclosures.

5. All financial statements of Defendants, including internal reconciliations showing the profit and loss of Defendants' trading operations and hedging operations of the OBT Book and Avi's Spreadsheets.

6. Output of all position and transaction records from Traderbase from the period 2013 – until present date

7. All Documents Correspondence, Communications, FTP Logs, Emails and Meta Data, describing or relating to the concept and implementation, benefits of the OBT Book, including system documentation.

8. All Documents Correspondence, Communications, FTP Logs, Emails and Meta Data, related to the employment contracts of all Defendants (and former traders), as well as their terms of reference, scope of duties, and performance bonus, incentive compensations.

9. All Documents Correspondence, Communications, FTP Logs, Emails and Meta Data, regarding civil lawsuits, arbitrations, claims, complaints and investigations from any regulatory body, customer or third party including the Mass. State Department, CFTC, NFA, Nymex, NFA Arbitration, CFTC Civil Reparations, Regulatory Actions or Other Arbitrations since Plaintiff's engagements commenced, in anyway related to Defendants operations, including but not limited to those resulting in regulatory violations for unsupervised trading floor. Include all Documents related to the foregoing actions to which you have ever been a party either as a plaintiff or a defendant. Include in your answer (a) you role in the case, (b) the style of the case; (c) the case number; and (d) the Court/Arbitration in which the suit was filed, over the last 10 years, and as relates to the commodities futures trading business.

10. All Documents Correspondence, Communications, FTP Logs, Emails and Meta Data, describing or documenting the OBT Book, OBT System including the different versions from inception until present date.

11. A complete record of transactions (both physical Customer gallons, customer premium and Financial) that were transacted using the OBT Book since inception until the present date, including an itemization of the Profit and Loss therein, by month including revenue per gallon.

12. All Communications (in all forms) between Defendants and third parties related to the OBT Book

13. A complete record of all FCM daily trading statements that reflect trading activity of Defendants since Plaintiff was engaged until present date. The foregoing should include all financial trading statement, including daily statements, since Plaintiff's hiring – until present date held by Defendants at any FCM.

14. A complete record of all Customer transactions that Defendants have and are hedging since 2013 until present date, including their offsetting FCM Statements, including confirmations and input into Traderbase.

15. All electronic copies of the OBT Book from inception until present date, including all versions therefrom.

16. All electronic copies of Avi's Spreadsheets, from the date Plaintiff was engaged until present date.

17. All electronic copies of the Traderbase program, including all changes made to the program since Plaintiff was first engaged until present date.

18. All electronic copies of backup-servers and webmail servers during the period Plaintiff was retained.

19. All electronic copies of the pricing tools used to price options and gallons sold to customers since the date Plaintiff was retained until present date.

20. All Documents, Correspondence, Communications, FTP Logs, Emails and Meta Data relating to compliance and CTA disclosure documents, including marketing documents used by Defendants in marketing, soliciting customers on hedging and risk management, Include disclosures made to customers and clients related to their trading activities.

21. All payments made out of Northland and/Hedge for bonuses and compensation related in anyway to trading related to the activities in the OBT Book and/or Plaintiffs work.

22. All Documents, Correspondence, Communications, FTP Logs, Emails and Meta Data, that relate to the access and sharing/distribution/dissemination of Plaintiffs Trade Secrets, IP, Software and OBT Book. (Include FTP logs, Server logs, Computer logs, Distribution Lists, Administrator Logs)

23. All Documents, Correspondence, Communications, Emails and MetaData related to or concerning (i) the ownership of, or property rights in, the Plaintiff's Trade Secrets, IP and Software, OBT Book (ii) any agreement relating to the Plaintiffs Trade Secrets, , IP and Software, OBT Book. (iii) any rule, law, policy, practice or procedure, regulation, including from Federal Law, State Law, NFA, CFTC, CME and privacy laws, relating to the confidentiality or secrecy, or lack of confidentiality or secrecy of Plaintiff's Trade Secrets, IP and Software, OBT Book and their use and (iv) related to and concerning concealment from Plaintiff about use of Plaintiff's Trade Secrets, IP, Software, or OBT Book .

24. All Documents, Correspondence, Communications, Emails and MetaData related to all risk management software programs, systems, tools and technologies used by Defendants since Plaintiff was retained until present date.

25. All Documents, Correspondence, Communications, Emails and MetaData related to each computer network, upon which Plaintiffs Trade Secrets, IP, Software and OBT Book were stored and accessed, that was in use since Plaintiff was first retained until present date, by all **Trade Secret Persons** (defined in Appendix A). Your description should include, but is not limited to: the brand and version number of the network operating system currently or previously in use including the dates of all upgrades; the quantity and configuration of all network servers and workstations currently or previously in use; and the brand name and version number of all applications and other software residing on each network in use, including but not limited to electronic mail and applications.; desktop computers, servers, personal digital assistants (PDAs), portable computers, laptop computers, and other electronic devices. Include descriptions of equipment and any peripheral technology attached to the computer system. ("**Trade Secret Computers**")

Plaintiff reserve the right to supplement these initial disclosures pursuant to Federal Rule of Civil Procedure 26(e).

### 3. Computation of Damages

Plaintiff has identified damages in its FAC. Damages include unpaid License Fees for the period August 2014 until present date for the agreed upon on-site license fees. The annual amount increases annually with agreed upon inflation increase. Damages includes disgorgement of all trading profits obtained by use of the OBT Book. Damages also include unpaid services, skills, labor during the period September 2016 – March 2017. Damages also include unpaid trading royalties at the agreed upon royalty share. Plaintiff also seeks reparation for damages in lost opportunities and business interference and costs of obstruction, delays and interruption since April 2017, its registration as a CTA and the direct competition and ongoing use of Plaintiff Property in unfair competition as Larkin and Northland are also competitors as CTA's.

Plaintiff will also include as damages its Court Costs, Filing Fees, Process Service Fees and Legal Database Research Fees. Damages will also likely include Expert Fees, and other costs incurred through this action, including the costs of Discovery. Plaintiff will seek reimbursement of Attorney's Fees for counsel that may make and appearance of otherwise advise or assist, as permitted under the 18 USC 1836 or other statute.

Plaintiff will also seek damages of Interest for pre and post judgment at New York State prevailing rates or as otherwise permitted. Plaintiff has also identified and the parties agreed that as permitted under contract (ECF 29), Plaintiff is entitled to damages for breach of the duties thereunder as follows: - Recipient acknowledges and agrees that ff there is any breach of its confidentiality obligations, It shall be liable.. for any and all damages provided under equity or law including but not limited to all special, indirect, consequential or other damages and recovery of its reasonable legal fees associated with such breach, Such rights or remedies shall be cumulative and in addition to any other rights or remedies to which Plaintiff may be entitled in law or equity. Notwithstanding the provisions above, Plaintiff shall be authorized and entitled to seek from any court of competent jurisdiction (1) a temporary restraining order, (ii) preliminary and permanent injunctive relief; and (iii) an equitable accounting for all profits or benefits arising out of such breach (iv) recovery of any of its legal fees and court costs. ..

Plaintiff will seek punitive damages for public dissemination or wrongful disclosures of trade secrets and as permitted under law for acts of malice and willful obstruction, delays and interference in Plaintiff's rights, and as otherwise permitted for an award of punitive damages.

4. **Insurance**

Plaintiff has not identified any insurance policy that is relevant to claims in this action as there are no claims against Plaintiff.

Respectfully submitted, this 20th day of March, 2020

_/s/ Samantha S. Kumaran_

SAMANTHA S. KUMARAN

## **CERTIFICATE OF SERVICE**

This is to certify that the foregoing Plaintiff's INITIAL DISCLOSURES were electronically filed with the Clerk of Court using the CM/ECF system that will automatically send email notification of such filing to the following attorney(s) of record:

Ellen Tobin

Westerman, Ball, Ederer, Miller & Sharfstein, L.L.P.

1201 RXR Plaza

Uniondale, NY 11556

516-622-9200

Fax: 516-622-9212

Email: etobin@westermanllp.com

**Appendix A**

Current and Former Employees of Northland and Hedge Solutions, all located at the Defendant's primary work address or subsequent place of business address.

1. Richard Larkin (Defendant / CEO)
2. Adam Larkin (Employee and recipient of trade secrets during PILOT)
3. Katie Larkin (Employee and recipient of trade secrets during PILOT)
4. Kirt Blanchard (CFO, responsible for financials at Defendant)
5. Daniel Lothrop (Defendant)
6. Domenic Bramante (Defendant)
7. William Hudson (Managing Partner named in Operating Agreement)
8. Taylor Hudson (Former Trader)
9. Mark Stillman (COO responsible for hiring Plaintiff)
10. Aviral Chopra (Trader responsible for Avi's Spreadsheets)
11. Kalpesh Kalpari – third party programmer involved in programming with Plaintiff
12. IT and External Contractors responsible for IT or other services related to the Claims.
13. Other employees (former or current) as names to be identified during discovery
14. Individuals responsible for maintaining the Northland email and computer servers, webservers and backup servers (both onsite and offsite), including those responsible for email servers being "down" during alleged losses at Northland.
15. Personnel involved in any way for Northland's Trading Accounts at the following FCM's including but not limited those at (i) ADM Investor Services (ii) FC Stone (iii) Jefferies (iv) Advantage Futures, Tim Toohey. All such accounts are directly related to trading activity in the subject matter of FAC.
16. Personnel involved as external auditors, CPAs and compliance consultants, including (i) CPA and any accountants/book-keepers of Defendants (ii) persons signing the financial statements or CPA of Defendants, especially related to Northland Trading Activity (iii)

compliance and auditors of Defendants, as related to Northland's regulatory violations for trading misconduct.

17. All risk management and software vendors Northland has solicited for five years prior to retaining Plaintiff until present dates. (as alleged in FAC)

18. All other individual and entities that had access to or you are aware of had access to, (including but not limited to network or computer access) Plaintiff's confidential and proprietary IP and Software ("**Plaintiff's Trade Secrets**"), in whole or in part. Include system administrators, network administrators, employees, secretaries, administrative assistants, spouses, employees, owners, family members, programmers, developers, technological teams, service providers, IT personnel, accountants, lawyers, consultants, third party consultants, back-up or cross trained personnel. ("**Trade Secret Persons**")