## MUTUAL RELEASE AND SETTLEMENT AGREEMENT

This Mutual Release and Settlement Agreement (the "Agreement") is entered into on May 9, 2016 between The A Star Group, Inc. d/b/a Timetrics ("A Star Group"), Samantha Siva Kumaran ("Ms. Kumaran"), Northland Energy Trading LLC ("Northland Energy"), and Hedge Solutions, Inc. ("Hedge"). A Star Group, Ms. Kumaran, Northland Energy Trading and Hedge Solutions shall be known collectively as the "Parties." A Star Group and Ms. Kumaran shall be known collectively as the "A Star Parties."  Northland Energy Trading and Hedge Solutions shall be known collectively as "Defendant."

WHEREAS, throughout the time period between October 2011 through February 2015, A Star Parties, Northland Energy Trading, and Hedge entered into a number of contracts (the "Engagement Contracts") for trading floor risk audit and assessment of Northland's heating oil trading portfolio, the validity of which contracts Defendant disputes;

WHEREAS, on May 12, 2015, A Star Group filed suit against Northland Energy Trading and Hedge in New York State Supreme Court, County of New York, designated case number 651629/2015 and thereafter, on June 16, 2015, the New York State court action was removed by Defendant to United States District Court for the Southern District of New York, designated as case number 15-cv-04660 (the "Lawsuit");

WHEREAS, A Star Group asserted claims of nonpayment and breach of contract against Defendant in the Lawsuit;

WHEREAS, On June 22, 2015, Defendant answered and also asserted counterclaims against A Star Parties for fraudulent inducement, fraud, negligent misrepresentation, promissory estoppel, negligence, breach of contract, unjust enrichment, and breach of covenant of good faith and fair dealing; and

WHEREAS, the Parties have agreed to settle this dispute and all rights, whether under the Engagement Contracts or in any other respect or otherwise related to the Lawsuit.

NOW, THEREFORE, in consideration of the mutual promises and benefits in this Agreement, the Parties agree as follows:

1.    <u>Payment</u>: Northland Energy Trading and Hedge Solutions shall pay A Star Group the sum total of NINETY THOUSAND DOLLARS (\$ 90,000.00). Northland Energy Trading and Hedge shall make payment by wire transfer to Conway & Conway as attorneys for A Star Parties at the banking institution listed below:



2.    <u>Schedule of Payment</u>: Northland Energy Trading and Hedge shall make the Payment to A Star Group shall be paid in accordance with the following:

(i)    Thirty Thousand Dollars (\$30,000.00) ~~upon~~ 7 days after execution of this Agreement. (JK)

(ii)    Fifteen Thousand Dollars (\$15,000.00) to paid on or before July 15, 2016.

(iii)    Fifteen Thousand Dollars (\$15,000.00) to be paid on or before October 15, 2016 (JK)

(iv)    Fifteen Thousand Dollars (\$15,000.00) to be paid on or before ~~January~~ March 15, 2017. (JK)

(v)    Fifteen Thousand Dollars (\$15,000.00) to be paid on or before ~~March~~ June 15, 2017. (JK)

3.    <u>Payment of Funds to the Law Offices of James G. McCarney</u>: In consideration of the amounts to be paid pursuant to this Agreement, the Parties acknowledge and agree that James G. McCarney Esq. ("Mr. McCarney"), A Star Group Parties' former attorney, has filed an attorney's lien for unpaid legal fees with the court on November 30, 2015. The Parties and Mr. McCarney agree that Ms. Kumaran shall pay the total amount of ████████████

2



4.   <u>Mutual Release of Parties</u>:  The Parties hereby release, discharge and acquit each of the other Parties, and their predecessors, successors, legal representatives, employees, directors, officers, agents, attorneys, and their successors and assigns (including Richard Larkin, individually and in all other capacities), and each of them, of and from any and all claims, causes of action, claims for benefits, refunds of premiums, demands, losses, judgments, sums of money, rights, damages, liabilities, obligations, expenses, fees, and costs of any kind or nature whatsoever, whether known or unknown, which the Parties may have, or claims they may have had, or now has or claims to have, from the beginning of the world to the date of this Agreement, including but not limited to any claims resulting from, arising out of, or connected, directly or indirectly, with all allegations and claims, express or implied, that the Parties asserted or could have asserted in the Lawsuit. The Parties agree that the Engagement Contracts are hereby terminated and of no further force and effect.  The Parties agree, however, to the intellectual property and related provisions set forth on Exhibit A attached hereto and made a part hereof, which provisions shall survive.  Despite such termination, Northland and Hedge represent *and warrant* that neither of them has in their possession any Timetrics software that was involved in the Lawsuit (the "Timetrics Software"); they each agree that A Star Group owns the Timetrics Software, and



hereby disclaim and shall not retain or assert any right, title and/or interest in and to the Timetrics Software and they each agree not to use, duplicate, reverse engineer or otherwise misappropriate any Timetrics Software and that they are not using and will not utilize in the future any strategies learned from the trading recommendations from the Timetrics Software to improve NT Parties trading or hedging revenues and/or any other consulting recommendations provided by Timetrics under the Engagement Contracts to improve NT Parties' trading or hedging revenues.

5.    Dismissal of the Parties' Claims and Counterclaims:  Contemporaneously with the execution of this Agreement, counsel for each of the Parties will execute and deliver to counsel for the other Parties in the form attached hereto as Exhibit B, a stipulation dismissing claims against other Parties in the Lawsuit with prejudice and without costs.

6.    Default by Northland Energy Trading and Hedge Solutions: In the event that Defendant shall default in any payment as proscribed for hereinabove, and such default is not cured within ten (10) days of written notice to counsel for the defaulting party, then A Star Group shall be entitled to enter the executed Confession of Judgment in the form attached hereto as Exhibit C, with the Judgment Clerk of the Court, against Northland Energy Trading and Hedge Solutions for the unpaid amount together with interest at the statutory rate of 9% per annum and the taxable costs, disbursements, and reasonable attorneys fees in this action. Any payment made by Northland Energy Trading and Hedge Solutions will be credited to them.

*that collection in Supreme Court.*



7.    Not an Admission: The Parties to this Agreement recognize that any payments or agreements made pursuant to this Agreement are not an admission by any party of any liability or responsibility for, or of the correctness of any of the claims or counterclaims which were or could have been asserted by any party, which liability, responsibility and correctness is hereby

expressly denied by each of the Parties, but are made for purposes of avoiding the costs of litigation.

8.      Confidentiality of this Agreement:  The Parties expressly agree that they or their agents will not, at any time, directly or indirectly, except as expressly authorized in writing by the other Parties, publicize, divulge or disclose to any person, entity, or media representative, the terms of this Agreement (other than the fact of settlement), except that the Parties may disclose this Agreement to their legal advisor, financial advisor, and accountant to the extent necessary to receive professional advice, and in response to any confidential RFP that requires disclosure of past litigations may also disclose this Agreement to investors and potential investors insurance providers and potential business partners, but only if such persons are expressly made aware of this confidentiality provision and agree to be bound hereby, in addition to being obligated by law or professional ethical standards to maintain the confidentiality of such information or as required by law, regulation or legal process.  Should any party, including the Parties, be required to release this Agreement or the information contained herein in response to a subpoena or order of a court of competent jurisdiction, it shall give the other Parties reasonable advance written notice of any such proposed release. Any breach by any party of this covenant of confidentiality shall be a material breach of this Agreement, entitling the non-breaching party to recover damages.

9.      Careful Review of Agreement and Understanding of Release: The Parties represent that they have carefully read this Agreement, and understand its terms and conditions without reservation.  The Parties acknowledge that they have had ample opportunity to consult with legal counsel of their choice regarding this Agreement, they have not relied on any other representations or statements of the Parties or their legal counsel with respect to the subject matter of this Agreement, and understand that this is a FULL, COMPLETE and FINAL release

5

relinquishing and releasing all claims the Parties have or may have against one another as described in this this Agreement. The Parties further acknowledge that no party is warranting or representing any tax consequences of this Agreement, and that all Parties are relying on their own legal and/or tax advisors and not the other Parties in that regard.

10. <u>Entire Agreement</u>: Each of the undersigned Parties acknowledges and agrees that except as specifically set forth in this Agreement no representations have been made or relied upon and no other promises or agreements have been made by any of them or by any person acting for or on their behalf in connection with the subject matter of this Agreement.

11. <u>Binding Effect</u>: This Agreement shall be binding upon and shall insure to the benefit of the Parties, their respective heirs, beneficiaries, personal representatives, successors, and assigns.

12. <u>No Oral Modification</u>: This Agreement cannot be modified, amended, supplemented, or otherwise changed except by a writing signed by the Parties hereto. The Parties expressly intend and agree that there shall be no exceptions to this "oral modification" clause, including, but not limited to, any present or future claims of partial performance or equitable estoppel.

13. <u>Further Assurances</u>: Each party agrees to take such further action and to execute such further and additional documents, instruments and writings as may be reasonably necessary or required by law for the purpose of fully effectuating the terms and provisions of this Agreement including the execution and filing of the Stipulation of Dismissal with prejudice.

14. <u>Signature Binding</u>: The execution of this Agreement and the transmission thereof by facsimile or electronic mail shall be binding on the party signing and transmitting same by facsimile or electronic mail fully and to the same extent as if a counterpart of this Agreement bearing such party's original signature has been delivered.

6

15.     Governing Law: This Agreement shall be governed by the laws of the State of New York. Any dispute arising out of this Agreement shall also be governed by the laws of the State of New York.

16.     Choice of Forum: In the event of a breach of this Agreement or any other dispute arising out of this Agreement, the Parties agree that such dispute shall be resolved through a court of competent jurisdiction in the state of New York.

THE A STAR GROUP, INC.
By:

_____          5-12 - 2016
Samantha Siva Kumaran                        Date

_____          5 - 12 - 2016
Samantha Siva Kumaran, Individually          Date


NORTHLAND ENERGY TRADING, LLC
By:

_____ - Manager-Member   5-9-2016
                                        Date


HEDGE SOLUTIONS, INC.
By:

_____ President          5-9-2016
                                      Date

AGREED TO AND ACCEPTED BY:

_____          5-12-16
James G. McCarney, Esq.                      Date

_____
Kevin Conway

7



EXHIBIT A

**Intellectual Property Provisions**

## 1. POSSESSION AND OWNERSHIP OF RESPECTIVE INTELLECTUAL PROPERTY RIGHTS.

**1.1 Possession and Ownership of Timetrics Software.** Northland and Hedge (sometimes hereinafter collectively called the "NT Parties") represent that neither of them has possession of any "Timetrics Software." "Timetrics Software" means all Timetrics (i) computer software, (including web-enabled versions), firmware, hardware, technology, systems, programs, source code, object code, visual basic code, sql code, C++ code, parallelization, data reception, information feeds, models, analytical tools, processes, and trading models and Related Works (ii) any trading or hedging results from Timetrics computer software, in whole or in part, or trading or hedging recommendations from Timetrics computer software, in whole or in part, hedging and procurement recommendations, from Timetrics computer software, in whole or in part, and all software recommendations from Timetrics computer software, in whole or in part, for the improvement of portfolio returns, (iii) arbitrage models, alerts, triggers, directives, visual displays, forecasts, signals, messages, databases, methods, applications, API's, software, methodologies, metrics, measures, media, files, information, worksheets, instructions, manuals, demonstration materials, reports and documentation, lists of modules, technical manuals, training materials, specifications, marketed, developed or indevelopment by Timetrics including but not limited to the Timetrics' software's functional attributes, updates, results from the Timetrics' software, Timetrics' procedures, Timetrics' routines, Timetrics' related developments, Timetrics' software, in whole or in part, design, input screens, output screens, algorithms, reports, graphs, decision support methods, capabilities, visual expressions, Timetrics' ideas, Timetrics' pricing modules, features, parameterization, design, user-interfaces, database structure and format, data formats, computer code, data manipulation and analysis, reporting outputs, dashboards, pricing, Timetrics' approaches, Timetrics' methodologies, Timetrics' formulae, mathematics, techniques, text, graphics, analytical processes and methods, intellectual property, trademarks, trade secrets, Timetrics' knowledge, Timetrics' know-how, application, technology, graphical user interfaces (GUI's), schematics, techniques, development tools, design, reports formats, procedures for the valuation of financial and physical instruments, deals and products, not limited to energy deals, methodology and techniques for the computation and mitigation of risks, including but not limited to business risks, market, volumetric, credit risks, liquidity risks, strategic risks, supply chain risks, option portfolio risks, procurement risks, commodity chain risks and operational risks and other risk management strategies, output of software, descriptions, lists of components and modules, and any other associated material, information or documentation, in whatever form, (including backup copies of any of the foregoing, all of which may include the proprietary and trade secret application and use of public domain information.

1



"Related Works" shall mean any updates, enhancements, adaptations, components, parts, upgrades, improvements, modifications, revisions, copies, and changes made to the Timetrics Software, including without limitation (i) any copies (in whole or in part) or adaptations made by Northland, Hedge, Timetrics or any third party and; (ii) any translation, copy, abridgment, revision or other form in which an existing work may be recast, transformed or adapted, (iii) duplications, excerpts, critiques, sub-reports, and copies (in whole or in part) made (including those made by Northland or Hedge or third party) which may be incorporated into internal correspondence, documents, property, software, spreadsheets, models, systems, (and/or a third party's systems), models, databases, reports, or other property, and; (iv) all forms of changes or revisions made to the Timetrics Software, including without limitation changes to the object code, source code, algorithms, reports and output, of any modifications, customizations, updates, error corrections, enhancements, patches, changes, revisions, additional features, new reports, design changes, bug fixes, new releases, or other updates of or to the Timetrics Software; and (v) new material derived from the Timetrics Software, or modifications made for the application and use with other products, deals and commodities.

**1.2 Ownership.** The NT Parties agree that Timetrics and/or its licensors, vendors, affiliates, or suppliers shall own and retain all the sole and exclusive right, (including copyright), title and interest in and to all Timetrics Software, throughout the world and in perpetuity. The NT Parties acknowledge and agree that at no time did Timetrics grant or imply a transfer of rights, ownership, title or interest in any manner whatsoever, to the Timetrics Software to the NT Parties. All inventions (including discoveries, ideas, or improvements, whether patentable or not), which are conceived or made and are derived or result from or in any way utilize any Timetrics Software, shall belong to Timetrics. Timetrics shall have the sole and exclusive right to use, alter, maintain, enhance or otherwise modify the Timetrics Software.  All rights, title and interest in and to the Timetrics Software are hereby expressly reserved.  Nothing contained herein or in any prior agreement shall be construed as (a) granting or implying any transfer of rights, title or interest to Northland or Hedge in the Timetrics Software or (b) precluding or limiting in any way the right of Timetrics to provide services or goods (including Timetrics Software) of any kind or nature whatsoever to any person or entity as Timetrics in its sole discretion deems appropriate. Timetrics shall retain the right  and be entitled to market, use, sell, assign, transfer, and/or otherwise provide rights relating to the Timetrics Software (whether in whole or in part) to any third party for any purpose free from any claim of the NT Parties and without any obligation to NT Parties whatsoever.  The NT Parties each will not act or fail to act in any manner inconsistent with such rights, title and ownership.

**1.3 Confidential and Proprietary.** The NT Parties acknowledge and agree that Timetrics Software constitutes trade secrets and/or copyrighted material and shall be considered without exception confidential and/or proprietary Information of Timetrics

2



and/or its licensors. The NT Parties acknowledge and agree that any tangible or intangible embodiments of Timetrics Software and/or Timetrics' Confidential Information that may be generated or created by Northland or Hedge or any third party, or that is derived or result from or in any way utilizes the Timetrics Software, whether or not acquired or created by Northland or Hedge or any third party, either pursuant to or in violation of this release, shall be and/or become the sole and exclusive property of Timetrics, and fully subject to the obligation of confidence and other restrictions set forth hereunder, and the NT Parties hereby irrevocably assign to Timetrics in perpetuity all rights of all kind and character in or arising out of the foregoing, to the extent where Timetrics does not already own such rights.

### 1.4 Northland and Hedge's Pre-existing Intellectual Property and Customer Lists

Timetrics acknowledges that prior to any relationship between Northland, Hedge and Timetrics, Northland and Hedge had developed their own hedging process for customer sales, business methods and customer lists ("Pre-Existing Northland and Hedge Property"). Northland and Hedge shall retain the right to use or market any of its Pre-Existing Northland and Hedge Property for any purpose, without obligation of any kind to Timetrics.

### 1.5 General Restrictions: The NT Parties agree that, their license, use and access to the Timetrics Software shall be expressly subject to the following restrictions and the NT Parties agree that they shall not directly or indirectly (and will not permit any third party to): (i) post, distribute, resell, license, publish, broadcast, display, time-share, rent, lease, sublicense, lend, commercially exploit, or otherwise transfer the Timetrics Software or information related to the Timetrics Software (including but not limited to posting in any public forum such print, the internet, any form of newsletter, radio or television or via a third person), or any copy thereof, in whole or in party to any third party; (ii) integrate or incorporate Timetrics Software into any third party's system or; use Timetrics Software as a basis of design to make recommendations to any third party's system to modify or enhance a third party's products; (iii) shall not copy or disclose or reveal the intellectual property including but not limited to the features, functionality, methodologies, design and architecture of the Timetrics Software, to any third party and/or competitor of Timetrics (such as for integration into any third party's system or as the basis of any recommendation to any third party to modify or enhance its products or services); (iv) take any action that would cause the Timetrics Software, to be placed in the public domain; or take any action that would otherwise encumber the Timetrics Software; (v) access, use, broadcast, commercially exploit, sell or distribute the Timetrics Software (or any portion thereof) or any rights, for any services or third party services beyond the scope specified in this Agreement, including without limitation providing such access or use on a service bureau basis, facilities management, third party testing facility, outsourcing or any other operation of similar purposes as the above; (vi) they may not, translate, rent, lease, sell, sublicense, loan, resell for profit, distribute, time-share or create any the Timetrics Software or any portion thereof; (vii) shall not interfere in Timetrics provision of services; (viii) shall not publish or disclose any trading results or trading improvements from the Timetrics Software.

**2.1 Internal Restrictions**: The NT Parties agree that, they shall not directly or indirectly (and will not permit any third party to): (i) use Timetrics Software with any other equipment, firmware or hardware other than that provided by Timetrics; (ii) use Timetrics Software as a basis of design to internally develop (or have a third party develop), duplicate, improve or create similar models, systems, spreadsheets or databases (including developing, modifying, improving or enhancing the NT Parties' Systems); (iii) copy, modify, adapt, improve, enhance, translate, mimic, create Related Works, create or develop duplicate models or applications based on the Timetrics Software (or any portion thereof), or create, enhance, make improvements to or otherwise modify any part of the models, systems, spreadsheets, databases, or the NT Parties' Systems to be similar to the expression (in whole or in part) of the Timetrics Software; (iv) make error corrections to or otherwise modify, adapt the screens, reports, calculations or any other part of the Timetrics Software (in whole or in part) and/or create alternative or abridged versions of the Timetrics Software that would be considered Related Works of the Timetrics Software; and (v) refer to, obtain guidance from or otherwise use any of the Timetrics Software as part of an effort to develop a model, spreadsheet, or program having any functional attributes, visual expressions, analytic components or other features similar to those of the Timetrics Software.

**2.2 No Reverse Engineering:** The NT Parties agree that, they shall not directly or indirectly (and will not permit any third party to): (i) modify, reverse engineer, re-create, back-into, disassemble, decrypt or decompile the Timetrics Software, including without limitation from the results, output and reports or any portion thereof and shall not otherwise attempt to discover the source code, formulae, algorithms, trading "processes", methodologies, or techniques or reduce to human perceivable or re-usable form, or otherwise reduce to human-readable form, the underlying ideas, mathematics, formulae, expressions, database structure, and codes, user interface techniques or algorithms of the Timetrics Software by any means whatsoever, directly or indirectly, or disclose any of the foregoing; (ii) create or re-create, any part of the mechanics of the source program for the Timetrics Software (including in spreadsheet or access format) from the information made available hereunder to the NT Parties, by reverse compiling or duplicating the reporting and analysis formats, disassembling or otherwise, attempting to work backwards to arrive at a similar solution; (iii) attempt to validate the results of the Timetrics Software by re-creating the calculations, formulae, trading techniques, algorithms, expressly without Timetrics' consent or independently from using the Timetrics Software (iv) utilize the Timetrics Software for other applications within the company or copy or mimic the software (in functionality, design, reporting and layout, database architecture or spreadsheet templates) for any other uses or applications within the company.

MUTUAL CONFIDENTIAL RELEASE

**3.1 Confidential Information:** Each Party (each a "Discloser") agrees that prior to, during and after the Engagement Contracts for the limited purpose of their business

4

relationship they have given, discussed or disclosed to the other Party (each a "Recipient") direct or indirect access to certain Confidential Information (defined below) and each Party desires to assure the continued confidentiality of its Confidential Information made available to the other Party. "Confidential Information" means all information and any idea in whatever form, including without limitation tangible or intangible, oral, visually, written, electronic, graphic, machine recognizable, and/or sample form, whether disclosed to or learned by Recipient pertaining in any manner to the business of Discloser or to Discloser's clients, affiliates, licensors suppliers, consultants, or business associates, unless it is proven by written evidence that (i) the information is or becomes publicly known through lawful means and through no wrongful act or omission of Recipient or its representatives or employees; (ii) the information was rightfully in Recipient's possession or part of Recipient's general knowledge prior to exploring the possibility of a business transaction of mutual interest; or (iii) the information is disclosed to Recipient without confidential or proprietary restriction by a third party who rightfully possesses the information (without confidential or proprietary restriction) and did not learn of it, directly or indirectly, from Licensee.

Confidential Information includes without limitation (i) Timetrics Software, Northland and Hedge Pre-Existing Property, all trades, trading recommendations, trading results, IM's and emails, broker statements, presentations, reports, analysis, results, recommendations, all work product generated by Timetrics and any information during the course of the Engagement Contracts that were transmitted from one party to the other; (ii) information, ideas and materials about the terms and conditions of all engagement letters, including all statements of work, pricing, license fees, discounts, incentive compensations, trading royalties, baselines, payments, terms and conditions of the software license agreements, and any other items defined as confidential, or supplied as information by Discloser to Recipient; (iii) information, ideas and materials of a business nature including but not limited to all financial information, revenues, profits, losses, costs, expenses, products, discounts, suppliers, pricing, rates, purchasing, marketing, sales, operations, forecasts, accounting data, financial statements, broker statements, financial analysis, assets, liabilities, customers, customer lists, clients, employees and salaries, incentive fees, trading royalties, investor relations, investor returns, partnership agreements, corporate structures, subcontractors, contracts, contract terms, product lists, product placements, business methods, consulting businesses, consulting plans, consulting business models, marketing plans and ideas, marketing literature, consultant rates, business plans and drafts, affiliated companies, strategies, markets, proposals, case studies, research, plans, marketing and sales plans and forecasts, business and financial plans and forecasts; (iv) information, ideas or materials of a technical or creative nature, all general risk advisory, energy risk management methods or other energy advisory generally used in their respective consulting businesses, business models and trading strategies; (v) information, ideas and materials of a prospective nature including but not limited to plans for future development and new product concepts, designs and specifications, proposals, release schedules, software plans, software plans, product development plans, prospective or unannounced products, prospective customers, draft customer lists, research and development, research and development results, research notes, product plans, prospective patent or trademark applications, product pricing

5



structure, prospective customers, RFP responses; (vi) all documents, materials, emails, correspondence, instant messages, books, papers, drawings, models, plans, contracts, maps, lists, manuals, records, workplans, schematics, specifications, literature, blueprints, reports, research, notes, hand-written examples, spreadsheet examples, presentations, sketches and other data or information of any kind and description, including electronic data recorded or retrieved by any means (including copies thereof, in whole or in part).

**3.2 Non-Disclosure and Limited Use:** Recipient shall hold all Confidential Information in strict confidence and shall not disclose any Confidential Information to any third party. Recipient shall take all reasonable measures (and no less than the same as used to protect its own confidential and proprietary information, and in no event less than reasonable care) to protect the confidentiality and avoid the unauthorized use, disclosure, publication, or dissemination of Confidential Information. Recipient agrees that it shall not use the Confidential Information for its own benefit or for any purpose. No copies of Confidential Information may be made unless approved in writing by Disclosing Party. Recipient agrees that it shall not, either directly or indirectly, verbally or otherwise, disclose or make available in any form, to any third party any Confidential Information without the advance written consent of the Disclosing Party. Recipient shall disclose Confidential Information only to employees who need to know such information and who have signed agreements that obligate them to refrain from disclosing that Confidential Information. This confidentiality obligation shall continue in perpetuity (or until such date as the Disclosing Party releases Recipient of said obligations in writing). Recipient shall assume liability for any use or disclosure of Confidential Information by its employees, servants, or any other party that obtains access to such Confidential Information by or through Disclosing Party.

**3.3 Forced Disclosure:** If Recipient is ordered by a court or another governmental body of competent jurisdiction to disclose Confidential Information ("Forced Disclosure"), then Recipient shall be permitted to disclose the portion of Confidential Information if ordered or required under law, solely and expressly provided that Recipient complies with the following requirements: (i) Recipient shall promptly notify Discloser of the order or request by the most expeditious possible means, (and at least ten (10) business days before such disclosure) and forward to Discloser exact copies of the questions and requests for information being asked; (ii) Recipient shall use all its best efforts (and no less than the same effort used to protect its own Confidential Information) to obtain a sealing order or protective order around the Confidential Information (iii) Recipient shall join or agree (or at a minimum shall not oppose) any further motions or similar request by Discloser for an order protecting the confidentiality of the Confidential Information, including joining or agreeing to (or not opposing to) a motion for leave to intervene by Discloser; (iv) Recipient shall at its own cost, identify and mark any Confidential Information disclosed as Trade Secrets, Proprietary and Confidential of Discloser and pursue all available means of maintaining the Confidentiality of this material as governed by law, including but not limited to securing a protective order around the materials; and (vi) without relieving Recipient of any of its obligations hereunder, Recipient shall not

6



interfere or prohibit Discloser from seeking a protective order (and/or temporary restraining order) regarding the disclosure of Confidential Information and other relief in any disclosure of its Confidential Information as outlined in the confidentiality provisions included herein or as permitted by law. In any case, Recipient will (a) disclose only that portion of the Confidential Information which Recipient's legal counsel advises is required to be disclosed, (b) use all necessary and best efforts to ensure that such Confidential Information is treated confidentially, and use all best efforts to require the receiving party sign a Non-Disclosure Agreement directly with Discloser (with copies of NDA's being supplied promptly from Recipient) and (c) notify Discloser promptly of the items of Confidential Information to be disclosed, and (d) comply with all other disclosure restrictions within this Agreement. Further Recipient shall assume liability for any unauthorized disclosure or misuse of any Confidential Information disclosed under this paragraph, which is not in compliance with the provisions hereunder.

## 4. NO OTHER TITLE

The NT Parties acknowledge and agree that they, the NT Parties, do not have title to or ownership of the Timetrics Software (or any part thereof), or rights to use Timetrics Software (or any part thereof). Timetrics acknowledges that it does not have title to or ownership of Northland and Hedge's Pre-Existing Property.

## 5. BRANDING AND PROPRIETARY NOTICES

The NT Parties agree to respect and not to remove, delete, obliterate, obstruct, conceal, manipulate, modify, hide, move, alter, remove, destroy or cancel from view any (i) icon, image or text that represents the company name of Timetrics, any derivation thereof, or any icon, image, or text that is likely to be confused with the same or; (ii) any copyright, trademark, logos, confidentiality or other proprietary notice, legends or markings of Timetrics appearing on any of the reports, Timetrics Software, accompanying written materials and documentations, and to reproduce and include same on each copy of the above. The NT Parties agree not to remove the Timetrics logos and proprietary name headings and confidentiality notice on reports (and all copies thereof, whether in whole or in part). The NT Parties further agree to reproduce all such notices on copies or portions or modified versions thereof and any derivative copies of reports. All representations to the company name Timetrics must remain as originally distributed, regardless of the presence or absence of a trademark, copyright, or other intellectual property symbol or notice requirement.

### 6.1 TRADEMARKS

The NT Parties acknowledge that Timetrics is the exclusive owner of all right, title and interest to Timetrics' trademarks, service marks, logos and/or trade names. NT Parties shall at any time thereafter challenge or cause to be challenged that validity of Timetrics' trademarks service marks and logos and/or trade names. The NT Parties shall not at anytime and in perpetuity file an application to register any name, mark or domain name that is confusingly similar to Timetrics' trademarks, service marks, logos or tradenames.

7

The NT Parties agree that this release does not confer any right of ownership to NT Parties in Timetrics trademarks, service marks or logos or trade names.

The NT Parties shall not adversely affect Timetrics intellectual property rights and use of Timetrics trademarks.

**7.1 PATENTS**  NT Parties agree that they shall not interfere with or prohibit Timetrics from pursuing patents in or to its Timetrics Software. NT Parties understands that Timetrics Software, may be subject to patent protection in the future and/or shall be covered under patent law under Patent Act, Title 35 U.S.C.  The NT Parties further agree that Timetrics may elect at its sole option to file patents on any of its Timetrics Software, including but not limited to any trade secrets, ideas, trading strategies, metrics, triggers, risk modules, techniques, reports, GUIs, designs, algorithms, strategies, approaches, processes, formulae or methodologies. The rights granted to the NT Parties under this Agreement do not construe or imply, in any part, or in any manner any interference of joint claim in the patents (and ideas conceived hereunder by Timetrics) and all intellectual property, including without limitation, designs, algorithms, metrics, ideas, triggers, risk modules, formulae, reports, GUI's, techniques, processes, formulae, approaches and/or methodologies which are patentable are the sole ownership of Timetrics and/or its owners.

## 8. INDEMNIFICATION
**8.1** NT Parties shall indemnify, defend and hold harmless Timetrics and/or its owners, employees, representatives, officers, directors, agents, affiliates, licensors, contractors, distributors, consultants, associated corporations, programmers, associated and affiliated entities, software providers, vendors, suppliers and any other Resource and collectively their respective owners, directors, officers, partners, agents, representatives, contractors, personnel and employees of each of the foregoing (collectively, the "Indemnified Parties") from and against any third party claims, demands, causes of action, Losses, and any liabilities, damages or expenses whatsoever, arising out of, or relating to in any manner from (i) the NT Parties' use of Timetrics Software hereunder, the services or any work product of Timetrics, in whole or in part, (including without limitation its use with its retail customers, risk oversight, external regulators or any investigation or proceeding arising therefrom); (ii) the NT Parties' failure to comply with any rule, law or regulation and under the Laws and/or any investigation or hearing thereof; (iii) any misuse or adaptation of the Timetrics Software (not performed by Timetrics) that infringes upon any third party intellectual property rights; (iv) any unlawful use to which NT Parties puts the Timetrics Software; or (v) any business transaction or trade contemplated by NT Parties related to the use of or results from the Timetrics Software, Timetrics' services or engagements, or any regulatory investigation or proceeding arising therefrom.

The foregoing indemnifications shall apply to and against any losses, claims, demands, suits, damages, costs, fees and expenses, including but not limited to Timetrics' then-current hourly fees for time incurred, current software License Fees, government investigations, regulatory requirements, liabilities (or actions in respect thereof), joint or

8



several, and all other related costs including reasonable attorneys fees (collectively "Losses") relating to, arising in any manner from, or based upon, the foregoing claims.

**8.2** The Indemnified Parties will have the sole right to conduct the defense of any such claim or action referred to in Section 8.1 and all negotiations for its settlement or compromise unless otherwise agreed to in writing, as provided herein. NT Parties, shall after receiving notice of any such proceeding, immediately provide notice to the Indemnified Parties, so that the Indemnified Parties may (without further notice to the NT Parties) retain counsel and undertake the defense, compromise, or settlement of such claim or action at the expense of the NT Parties.

**8.3** NT Parties will also promptly reimburse any Indemnified Party for all Losses and expenses (including without limitation Timetrics' hourly fees, SaaS License Fees, disbursements, travel expenses and charges of legal counsel) as incurred, in connection with the investigation of, preparation for or defense of any pending or threatened claim relating to, arising in any manner from, or based upon the aforementioned causes in Section 8.1. The Indemnified Parties shall have the right to retain its own counsel to assist in the defense of such claims, losses, suits, liabilities, investigations, actions (pending, threatened or otherwise) and NT Parties agrees to give Timetrics' legal counsel full access to any and all information pertaining to the Timetrics in the aforementioned claims and actions and the right to participate in the defense of any such claims or investigations.

## 9 REGULATORY OVERSIGHT.

**9.1** NT Parties agrees to notify Timetrics promptly of any request received by NT Parties from any court, government entity or applicable regulatory authority or third party action with respect to the services, work product or license of Timetrics Software hereunder and/or any other Timetrics' advice, work product, trading strategies, risk reports, financial statements, or any related document.

**9.2** If Timetrics is required by law, pursuant to government regulation, subpoena, or other legal process, governmental order pursuant to any statutory authority, or a public oversight board in respect of reporting issuers pursuant to any contractual or statutory authority, or is requested by NT Parties to participate in any of the foregoing collectively ("Regulatory/Third Party Process") or is requested or required to produce documents or personnel as witnesses arising out of the services, work product or license of Timetrics Software and Timetrics is not a party to such proceedings, NT Parties shall indemnify Timetrics for its involvement in any such proceedings and reimburse Timetrics for all Losses, including without limitation reimbursement of its time spent at hourly fees at standard billing rates for professional time and expenses, current software License Fees, reasonable legal fees, incurred in responding to any such proceedings or requests, as an express condition of Timetrics being able to participate in any such proceeding. For purposes of this Section it is expressly agreed that the term "Timetrics" shall include its Indemnified Parties.

9



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE A STAR GROUP, INC. d/b/a
TIMETRICS,

      Plaintiff and Counterclaim Defendant,

-against-

NORTHLAND ENERGY TRADING, LLC
and HEDGE SOLUTIONS, INC.,

      Defendants and Counterclaim Plaintiffs

-against-

SAMANTHA SIVA KUMARAN,

      Counterclaim Defendant

Civil Action No. 1:15-cv-04660

**STIPULATION OF DISMISSAL WITH**
**PREJUDICE AND WITHOUT COSTS**

      Plaintiff and Counterclaim Defendant The A Star Group, Inc. d/b/a Timetrics, Defendants and Counterclaim Plaintiffs Northland Energy Trading, LLC and Hedge Solutions, Inc., and Counterclaim Defendant Samantha Siva Kumaran, by and through their respective counsel, hereby dismiss this action, including all claims and counterclaims, with prejudice and without costs.

Dated:                       Respectfully Submitted,

                            /s/Kevin P. Conway
                            Kevin P. Conway, Esq.
                            Conway & Conway
                            122 East 42nd Street, Suite 1612
                            New York, NY 10168
                            (212) 938-1080
                            kpc@conway-conway.com

                            Attorneys for Plaintiff The A Star Group, Inc.
                            d/b/a/ Timetrics

EXHIBIT B

/s/ George F. Burns
George F. Burns, Esq.
Meredith C. Eilers, Esq.
Bernstein Shur Sawyer & Nelson
100 Middle St./P.O. Box 9729
Portland, ME  041054-5029
(207) 228-7108/(207) 774-1127 (fax)
gburns@bernsteinshur.com
meilers@bernsteinshur.com

Attorneys for Defendant Northland Energy Trading,
LLC and Hedge Solutions, Inc.

Date:_____



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
                                                                   :

THE A STAR GROUP, INC.
d/b/a TIMETRICS, and SAMANTHA KUMAŅAŅ,          :
                                                                   :

                                                                   :      **AFFIDAVIT OF**
                                                                   :      **CONFESSION OF**
                                                                   :      **JUDGMENT**
                                                                   :

                                Plaintiffs,                            :

                       -against-                                :

NORTHLAND ENERGY TRADING, LLC              :
and HEDGE SOLUTIONS, INC.,                 :

                                                               :
                                  Defendants.                        :
------------------------------------------------------------------------X

STATE OF NEW YORK    )
                        :SS
NEW YORK COUNTY     )

      The Defendants Northland Energy Trading, LLC and Hedge Solutions, Inc., hereby confess judgment herein, and authorize entry there of in the sum of Ninety Thousand Dollars ($90,000.00), less any payments made pursuant to the Mutual Release and Settlement Agreement, executed by both parties with an effective date of May 9, 2016 ("Agreement"), in the event that they default on timely payments required in the Agreement, and such default is not cured within ten (10) business days written notice.

      This Confession of Judgment is for a debt justly due to Plaintiff A Star Group, Inc. arising from the settlement of a litigation before the United States District Court for the Southern

EXHIBIT C

District of New York captioned, The A Star Group, Inc. v. Northland Energy Trading, LLC et al,

Case No. 15-cv-04660.

WARNING—BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL.  IF YOU DO NOT PAY ON TIME, A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE OF HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CLAUSE.

NORTHLAND ENERGY TRADING, LLC

By:

Richard Larkin

HEDGE SOLUTIONS, INC.

By:

Richard Larkin

Sworn to before me this 9th
day of MAY , 2016 .

Notary Public  GEORGE F. BURNS
MAINE   ATTORNEY

2