UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SAMANTHA SIVA KUMARAN and THE A STAR
GROUP, INC. d/b/a TIMETRICS,

                                                      Plaintiffs,

Case No.  1:19-cv-08345-MKV-DCF

       -against-

NORTHLAND ENERGY TRADING, LLC,
HEDGE SOLUTIONS, INC. RICHARD M. LARKIN,
DANIEL LOTHROP, and DOMENIC BRAMANTE,

                                 Defendants.
-------------------------------------------------------------------X


## DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER


WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP
Ellen Tobin, Esq.
1201 RXR Plaza
Uniondale, New York 11556
Telephone:  (516) 622-9200
Facsimile:  (516) 622-9212
*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND AND HISTORY .........................................................................................4

    A.  The Court Directs The Parties To S.D.N.Y. Model Orders ...........................................4

    B.  Plaintiffs Refuse To Use A Model Order And
       The Court Declines To Adopt Plaintiffs' Proposed Order.............................................4

    C.  The Parties Meet and Confer Regarding The Proposed Order......................................6

    D.  Plaintiff Refuses To Provide The Updated Version Of The Proposed Order ...............6

LEGAL STANDARD.............................................................................................................10

ARGUMENT .........................................................................................................................10

    I.    PLAINTIFFS' PROPOSED ORDER VIOLATES THE STRONG
           PRESUMPTION OF PUBLIC ACCESS UNDER FEDERAL LAW ....................10

    II.   A CONTRACTUAL DESIGNATION OF CONFIDENTIALITY
           DOES NOT SUPERSEDE THE PUBLIC'S RIGHT OF ACCESS
           TO JUDICIAL DOCUMENTS ...............................................................................13

    III.  DEFENDANTS SUBMIT A PROPOSED ORDER WITH A
           COMPARISON AGAINST PLAINTIFFS' PROPOSED ORDER ........................15

CONCLUSION......................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                                        <u>**Page**</u>

*Aioi Nissay Dowa Insurance Co. Ltd. v. ProSight Specialty Management Co., Inc.*,
    12 Civ. 3274, 2012 WL 3583176, (S.D.N.Y. Aug. 21, 2012) .................................... 10, 13

*Elsevier Inc. v. Doctor Evidence*,
    No. 17-cv-5540, 2018 WL 557906, (S.D.N.Y. Jan. 23, 2018) ........................................ 14

*In re New York Times Co.*,
    828 F.2d 110 (2d Cir. 1987) ........................................................................................... 10

*See Lugosch v. Pyramid Co. of Onandaga*,
    435 F.3d 110 (2d Cir. 2006) ........................................................................................... 10

*Under Seal v. Under Seal*,
    273 F. Supp. 3d 460 (S.D.N.Y. 2017) ...................................................... 10, 11, 13, 14, 15

*Wells Fargo Bank, N.A. v. Wales LLC*,
    993 F. Supp. 2d 409 (S.D.N.Y. 2014) ............................................................................ 14

Defendants Northland Energy Trading, LLC ("Northland"), Hedge Solutions, Inc. ("Hedge"), Richard M. Larkin ("Larkin"), Daniel Lothrop ("Lothrop") and Domenic Bramante ("Bramante") (collectively, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' motion for a protective order [ECF No. 54].

## PRELIMINARY STATEMENT

Defendants agree that entry of a protective order is necessary and appropriate in this case. Genuine trade secrets and confidential information – as defined by federal law – should be kept confidential and non-public, subject to the Court's approval (which is required). The model *Stipulated Confidentiality and Protective Order* adopted by Judge Gardephe (or another model order adopted by another S.D.N.Y. Judge) (the "Model Order") is perfectly suited for this task. This case does not present special circumstances that require deviation from the Model Order.

Plaintiffs propose designating broad categories of information as "confidential" (*i.e.*, to be redacted or filed under seal if filed with the Court (among other things)) at the outset of the case, before discovery has taken place. Respectfully, this is prohibited by federal law, which requires the presumption of public access to judicial documents and proceedings under the First Amendment and federal common law. It is also prohibited by Judge Vyskocil's *Individual Rules of Practice in Civil Cases* (the "Individual Rules"):

> [A]ll redactions or sealing of public court filings require Court approval. To be approved, any redaction or sealing of a court filing must be narrowly tailored to serve whatever purpose justifies the redaction or sealing and must be otherwise consistent with the presumption in favor of public access to judicial documents …. In general, the parties' consent or the fact that information is subject to a confidentiality agreement between litigants is not, by itself, a valid basis to overcome the presumption in favor of public access to judicial documents.

Judge Vyskocil's *Individual Rules*, Rule 9(b) (emphasis added; citations omitted). The parties cannot *unilaterally* agree *in advance* to file documents under seal.

Plaintiffs' proposal is also impracticable and unworkable. Plaintiffs propose designating *in advance* as "confidential" five very broad categories of documents, regarding which Plaintiffs provide only ambiguous and vague descriptions. <u>Defendants are not mind readers.</u> Among other things, Defendants cannot agree in advance that documents in Plaintiffs' possession are "confidential" without seeing the documents. Likewise, Defendants cannot agree to designate their own documents as "confidential" if they cannot even discern what the order covers. Most importantly, the parties cannot unilaterally "agree" that broad categories of documents are confidential. The Court's approval is required.

The well-trodden path of the discovery process, the Model Order, the Individual Rules adopted by Judge Vyskocil and Judge Freeman, and Section 6 of the S.D.N.Y.'s ECF Case Filing Rules & Instructions provide ample protection and instruction here. Both sides will produce documents during the normal course of discovery, and both sides will have the opportunity to designate documents (or portions thereof) as "confidential," regardless of who produced the documents. For example, if Plaintiffs believe a document produced by Defendants should be designated as "confidential," Plaintiffs can so designate the document (provided they have a good-faith basis to do so). Both sides will also have the opportunity to challenge confidentiality designations made by the other side (provided there is a good-faith basis to do so). <u>These steps are properly taken *during* discovery and with regard to *specific* documents.</u> Respectfully, Plaintiffs' concern about the public filing of information Plaintiffs believe should be confidential is premature and baseless. The Court already directed Defendants to file under seal (initially) their upcoming motion to dismiss the amended complaint. *See* ECF No. 55. It is unclear which other "pleadings" or motions Plaintiffs are concerned about being "published" at this stage of the case

(*i.e.*, before the parties have exchanged documents).   <u>Defendants have no intention of</u> <u>indiscriminately filing documents with the Court for the purpose of harming Plaintiffs.</u>[1]

As discussed, Defendants believe Judge Gardephe's Model Order is appropriate here. Defendants explained this to Plaintiffs numerous times, including during the June 4, 2020 meet and confer and in the many related emails before and after that call.  Plaintiffs, however, insist on using their own version, which varies substantially from the Model Order.  Plaintiffs' version is confusing in structure and content and would impose restrictions that do not apply here. Nevertheless, in the interest of compromise, Defendants agreed to use the "format" of the proposed order filed by Plaintiffs on March 6, 2020 (*see* ECF No. 36) (the "March 2020 version"), believing the parties could then reach agreement on most (if not all) of the substantive issues.  Unfortunately, that is not what happened.

Defendants respectfully ask the Court to adopt the proposed order submitted by Defendants herewith.  *See* Declaration of Ellen Tobin, Esq., in Support of Defendants' Response to Plaintiffs' Motion for a Protective Order ("Tobin Decl."), Ex. "A."  For ease of reference, Defendants also submit a blackline/comparison version of Defendants' proposed order (*see id.* Ex. "B"), compared against the version filed by Plaintiffs with their motion (*see* ECF No. 54-2).

---

[1] Contrary to Plaintiffs' allegations, Defendants have never threatened to use as leverage or disseminate "non-public information about Plaintiff's affiliates."  *See, e.g.*, Pltfs.' Mot. for Leave to File Mem. of Law Exceeding Page Limit (ECF No. 53), ¶ 4.  Unfortunately, that appears to be a page from Plaintiffs' playbook.  For example, in early March, when Defendants declined to "strike" their letter to the Court requesting a pre-motion conference, Plaintiffs responded with a scathing letter personally attacking defendants Larkin and Lothrop.  Plaintiffs inappropriately raised the fact that defendants have been subject to regulatory investigations and attached a copy of a NYMEX order from 2016.  *See* ECF 33, 33-1.  While this information is publicly available, it was inappropriate to attach to that letter because it has nothing to do with this case or the grounds for Defendants' anticipated motion to dismiss.

## Background and History

### A.    The Court Directs The Parties To S.D.N.Y. Model Orders

At the initial conference on January 15, 2020, the Court raised the issue of a protective

order, which both sides agreed was needed.  The Court strongly suggested the parties use a

model order adopted by an S.D.N.Y. Judge, and directed the parties' attention to a few particular

model orders, explaining that the closer the parties' proposed order hewed to a model order, the

more likely the Court was to approve it.

On February 28, 2020, Plaintiff sent an email to Defendants' counsel requesting a meet

and confer to discuss a proposed protective order.  *See* Tobin Decl. Ex. "C."  Defendants' counsel

responded, suggesting they use one of the model orders the Court pointed to at the Initial

Conference.  Specifically, Defendants' counsel wrote:

> To make this simpler and more efficient and comply with
> applicable law, I respectfully suggest that we should use one of the
> Model Protective Orders that Judge Freeman pointed us to at the
> Initial Conference.  Two examples are attached (from Judge Moses
> and Judge Gardephe).  I am comfortable with both agreements as
> they are.  If you would like to propose changes to either document,
> you could use track changes to do that and I will review.  That
> said, Federal Courts typically limit the documents and information
> that is permitted to be filed under seal, as Judge Freeman discussed
> at the Initial Conference….

*See* Tobin Decl. Ex. "C."

### B.    Plaintiffs Refuse To Use A Model Order And
The Court Declines To Adopt Plaintiffs' Proposed Order

Over the next several days, Defendants' counsel repeatedly asked Plaintiff to agree to use

one of the S.D.N.Y. model orders, as suggested by the Court at the Initial Conference.  *See, e.g.*,

Tobin Decl. Exs. "C," "D."  Defendants' counsel explained the rationale, including that Plaintiff's

proposal was confusing and unclear in structure and content.  It was a bewildering mash-up of

provisions, which appeared to have been copied from unrelated sources, and which would propose onerous restrictions that were inapplicable here (because, for example, this is not a patent case in the Northern District of California). *See id.*, Ex. "D." Defendants' counsel also explained it would be unduly burdensome and inefficient for Defendants to provide a "redline" (*i.e.*, a comparison version) at that time. *See id.*

In the midst of (but unrelated to) the discussions about the protective order, by letter dated March 2, 2020, Defendants requested a pre-motion conference for Defendants' anticipated motion to dismiss. *See* ECF No. 32. On March 5, 2020, Plaintiffs submitted a response letter, incorrectly and improperly accusing Defendants of including in the pre-motion conference letter "disputed confidential information that the parties agreed to protect." *See* ECF No. 33. By Order dated March 6, 2020, the Court directed the parties to appear for a pre-motion conference on March 26, 2020. *See* ECF No. 34.

Also on March 6, 2020, Plaintiffs filed a motion, seeking the Court's approval of a proposed protective order (*i.e.*, the same order that was the subject of the parties' discussions described above). *See* ECF No. 36. By Order on the same day, the Court deferred ruling on Plaintiffs' motion for a protective order and directed the parties to confer in good faith and inform this Court whether they are prepared to stipulate to a proposed confidentiality order and, if so, to submit the proposed order for the Court's consideration.[2] The parties were directed "to review Judge Vyskocil's Individual Practices regarding the redaction and sealing of confidential information." *See* ECF No. 37 (emphasis added).

---

[2] At the June 18, 2020 conference, the Court denied Plaintiffs' March 2020 protective order motion. *See* ECF No. 55.

Around the same time, the COVID-19 pandemic was shutting down New York.  The pre-motion conference for Defendants' anticipated motion to dismiss was twice adjourned (*see* ECF Nos. 41, 48) and was recently held on June 18, 2020.  *See* ECF No. 55.

**C.**      **The Parties Meet And Confer Regarding The Proposed Order**

In early June, the parties resumed discussions about the proposed protective order.  As mentioned above, on June 4, 2020, Plaintiff and Defendants' counsel participated in a lengthy telephonic meet and confer.  Plaintiff continued to insist on using their alternative format for the proposed confidentiality order, and refused to use one of the model orders.  During the meet and confer, Defendants agreed to use the "format" of the March 2020 version of Plaintiff's proposed order.  While this was not Defendants' preference, Defendants agreed to promote compromise and efficiency, as it appeared to be the only way to make progress in the negotiations with Plaintiff.

The March 2020 version was loosely based on Judge Gardephe's Model Order, however there were substantial additions and variations and the provisions appeared in a different (and jumbled) sequence.  During the June 4 meet-and-confer call, the parties focused on the two "big ticket" items Plaintiff was most concerned with:  (1) the categories of documents to be designated as "trade secrets" and/or "confidential information," and (2) a "vetting" process for the other side's proposed expert witnesses, to avoid retention of "competitors."  Plaintiff also expressed the desire for a process for designating confidential testimony and exhibits during and after depositions.  Defendants made clear there were other provisions – and certain language within several provisions – that Defendants did not agree with.

**D.**      **Plaintiff Refuses To Provide The Updated Version Of The Proposed Order**

During the June 4 call, Plaintiff explained she had already made changes to the March 2020 version.  Yet Plaintiff failed to provide the "updated" version prior to the meet and confer – despite

the fact that, prior to the call, Defendants' counsel specifically asked Plaintiff to identify the version of the proposed order she wanted to use for call.  *See* Tobin Decl. Ex. "F" at p. 3.

During the June 4 call and on numerous occasions thereafter, Defendants suggested that Plaintiff send the updated version of the proposed order, and Defendants would send back comments to specific provisions in writing – instead of discussing generally and conceptually what the order could or should say.  Then, if the parties could not agree on certain provisions, they could submit to the Court a single, unified, proposed order identifying where they did not agree and the language proposed by each side.   Defendants made this suggestion during the call and in countless emails after the call.  *See, e.g.*, Tobin Decl. Exs. "G," H," "I," "J," "K," and "L."

Inexplicably, Plaintiff refused to send Defendants the "updated" version of the proposed order.  Plaintiff also refused Defendants' offer to turn the next draft. When Defendants offered to do so (based on the discussions during the June 4 meet and confer), Plaintiffs responded sharply: "I am not agreeing for you to take over the drafting on a motion I already filed."  *See* Tobin Decl. Ex. "N at p. 2."[3]

In the meantime, the parties turned to discussing the joint status letter and proposed revised case management schedule that were due on June 11.  Specifically, Plaintiff requested they pause discussions about the proposed protective order until after they filed the other documents. Defendants agreed and immediately informed Plaintiff that counsel would be out of the office on Friday, June 12, and would be available to resume discussions about the protective order on Monday, June 15.  *See* Tobin Decl. Ex. "M" at p. 1; Ex. "N" at pp. 1-2.

---

[3] Plaintiff's refusal to timely send the updated draft forced Defendants to incur substantial and unnecessary time and expense, including numerous emails reiterating the request and responding to substantive issues, revising an old version of the order and responding to this motion.  All of this could have been avoided had Plaintiffs provided Defendants with a copy of the updated proposed order on or shortly after June 4.  The end result might have been similar to the proposed order Defendants are submitting now (showing where the parties disagree and each side's proposed language) – but the parties would have reached that point far sooner and more efficiently.

On Friday June 12, despite knowing Defendants' counsel was out of the office for the day, Plaintiff sent an email complaining that Defendants had not sent a "redline" with edits to the proposed protective order.  *See* Tobin Decl. Ex. "O" at pp. 8-9.  Defendants counsel responded:

> During the meet and confer on June 4, you said you had already made changes to the draft confidentiality order you were proposing - as compared to the version you filed on ECF on March 6 (which was the version I was working from).  You mentioned that a few times on the call and said you were going to update the proposed stipulation further based on our discussion and send to me.  (Otherwise I would be making changes to a version you were no longer working off.)  A few days later, when I again offered to turn the next draft, you responded that you did not agree for me to "take over the drafting" and you would send me the updated document by Friday or Monday – after we filed the revised case management plan and joint status letter.  (I immediately told you I was out of the office on Friday and back on Monday.)
>
> That is why I did not send you further changes in writing (including a blackline version).
>
> It seems that if you already made changes, you should send me that and then I will insert my proposed changes.  As I have suggested several times, I think doing it in writing – in the context of the entire agreement (not piece-by-piece) – will be most efficient here.  If, however, you would like me to send you my proposed changes compared to the March 6 version, and then you would like to insert your proposals into that version – that is fine by me.  (Again I did not do that previously because you asked me not to.)
>
> I would like to move forward with this as efficiently as possible.

*See* Tobin Decl. ¶ "O" at pp. 4-5 (emphasis in original).  Plaintiff continued to make unhelpful and untrue accusations against Defendants' counsel, but refused to provide the updated version of the proposed order.  Plaintiff even refused to send the Microsoft Word version of the proposed order she filed with the Court on March 6, 2020 (*i.e.*, the March 2020 version).  *See* Tobin Decl. Ex. "O" at pp. 1-2.

With the Court conference coming up and Plaintiff still refusing to send the updated version of the proposed order, Defendants turned their own draft based on the March 6 version (even though it was already "outdated").  On June 16, 2020, Defendants' counsel sent Plaintiff revisions to the March 6 version, in clean and blackline formats.  *See* Tobin Decl. Ex. "P."  Plaintiff responded she did not have time to review and comment on the updated version prior to the conference.  *See* Tobin Decl. Ex. "Q."[4]  *The next day*, Plaintiffs filed a motion for a protective order, attaching an *updated version* of Plaintiff's proposed protective order.[5]  See ECF No. 54.

Thus, Plaintiff refused to provide the updated version to Defendants, causing Defendants to make comments to an old and already out-of-date version.  Plaintiff stated she did not have time to review Defendants' proposed order before the conference.  But then, the next day (*i.e.*, the day before the conference), Plaintiff filed her own updated proposed order with the Court.  These events unfolded against the backdrop of Defendants' *repeated* requests for the parties to exchange drafts *in writing* and submit to the Court for consideration a single, unified proposed order, with competing versions of provisions where needed.  *See* Tobin Decl. Exs. "G," H," "I," "J," "K," and "L."[6]  Thus, Defendants submit herewith clean and blackline versions of Defendants' proposed order, compared against the proposal filed by Plaintiffs.  *See* Tobin Decl. Exs. "A" and "B."[7]

---

[4] In this email, as in several others, Plaintiff made inflammatory comments about Defendants' supposed motives, for example accusing Defendants' counsel of acting in bad faith.  *See* Tobin Decl. Ex. "Q."  Over the past several months, Defendants have repeatedly asked Plaintiffs to stop making these types of allegation, which were unproductive and untrue.

[5] Plaintiffs also filed a motion for a preliminary injunction, which was denied, in part, and deferred, in part.  *See* ECF Nos. 52, 55.

[6] Defendants describe these events to explain the context of this motion and to refute Plaintiff's false accusation that Defendants waited until "the last minute" to send the blackline in order to prejudice Plaintiffs.  Defendants flatly deny those allegations.

[7] Plaintiffs finally sent the Microsoft Word version of her proposed order on June 22, 2020 – several days *after* she filed the motion for a protective order.  *See* Tobin Decl. Ex. "R."  In that email it appears Plaintiff has adapted what has been Defendants' position all along – the parties should submit a combined proposal indicating each side's proposal where they do not agree.  *See id.* at pp. 1-2.

## **LEGAL STANDARD**

The public has both a common law right and a First Amendment right of access to judicial documents and judicial proceedings.  *See Lugosch v. Pyramid Co. of Onandaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).  There is a *presumption of access* – which "is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice."  *Id.* at 119 (citation omitted).

"A proponent of sealing may overcome the presumption of access only by demonstrating a substantial probability of harm to a *compelling interest*."  *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 469 (S.D.N.Y. 2017) (emphasis added; citation omitted).  Documents may be sealed only "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.  Broad and general findings" and "conclusory assertion[s]" are insufficient to justify deprivation of public access to the record.  *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987).  "The party seeking the sealing of judicial documents bears the burden of showing that higher values overcome the presumption of public access."  *Aioi Nissay Dowa Ins. Co. Ltd. v. ProSight Spec. Mgmt. Co., Inc.*, 12 Civ. 3274, 2012 WL 3583176, at \*5 (S.D.N.Y. Aug. 21, 2012) (citations omitted).

Applying these standards here and for the reasons set forth below, Defendants' proposed confidentiality order be adopted and entered in this case.

## **ARGUMENT**

## **I.      PLAINTIFFS' PROPOSED ORDER VIOLATES THE STRONG PRESUMPTION OF PUBLIC ACCESS UNDER FEDERAL LAW**

Plaintiffs' proposed order violates the strong presumption in favor of public access to judicial documents and proceedings that is mandatory under the First Amendment and federal common law.

Plaintiffs' proposed order would designate as "Confidential" – in advance of any exchange of documents in discovery – five very broad and ambiguous categories of documents, which Plaintiffs describe as:  (a) "trade secrets agreed upon by contract;" (b) "trade secrets / highly commercially sensitive trading data of CTAs [*sic*] and CPOs [*sic*], and new business of Plaintiff Kumaran since May 2016 – which is split into 2 subcategories:  (i) "CPO/CTA trade secrets protected under the Commodities Exchange Act;" and (ii) "non-public highly sensitive commercial costs, pricing, profits and royalties of a CTA and CPO; and (c) "highly sensitive commercial information of Plaintiff's Affiliates protected under SDNY Model Orders 2.1(a)-(c)."  *See* ECF No. 54-2, ¶ 2.2, A.1, B.1, B.2, C.1 (pp. 3-5).  These categories are so broad and amorphous that Plaintiffs could compel the sealing of every document that contains facts related to or references in any way Plaintiffs' various businesses, the businesses of Plaintiffs' "CTAs," "CPOs" and "Affiliates," and the businesses of various non-parties.  Plaintiffs cannot unilaterally decide that such a broad and vaguely defined swath of information must be filed under seal.

The decision in *Under Seal v. Under Seal*, 273 F. Supp. 3d 460 (S.D.N.Y. 2017) is instructive.  Plaintiff, a writer, asserted claims for breach of contract and copyright infringement against defendant, who was a television journalist who hired plaintiff to "ghost write" her book. The parties' agreement had an extremely broad confidentiality clause, which prohibited defendant from "discuss[ing] or mention[ing] his involvement in the work in any venue without prior approval, in writing, from [Defendant]."  *Id.* at 464-65.

Plaintiff initially filed the case under seal "out of an abundance of caution" in light of the confidentiality clause, but later argued the seal should be lifted.  *Id*. at 464.  Defendant sought a preliminary injunction prohibiting plaintiff from violating the confidentiality provision of the parties' agreement "during the pendency of any sealing order in the case." *Id.* at 465.  Defendant argued that disclosure of her confidential information – *i.e.*, that plaintiff "ghost wrote" her book – would irreparably harm her business – *i.e.*, her career and her reputation as a journalist.

The court denied the application, finding that the information defendant sought to keep sealed – "the details of the working relationship and arrangement between the parties" – "lie[d] at the very heart of the litigation."  Access to these judicial documents would be "essential" "if the public is to understand the nature of the dispute and the reasons for the court's rulings[.]" *Id.* at 472.  The court found that "continued sealing of the entire case is overly broad and contrary to the general requirement of narrow tailoring," particularly because defendant failed to "proffer[] any specific facts to support" her allegations of irreparable harm.  *Id*. at 472-73.  The Court concluded that, in light of "the nature of the dispute and defendant's failure to demonstrate specific instances of particular harm … the public's right of access has not been overcome." *Id.* at 472.

Similarly, here, Plaintiffs seek to preemptively keep under seal broad swaths of information about their business, which "lie at the very heart of the litigation," without demonstrating any specific instances of particular harm they would suffer without sealing.  Plaintiffs allege they *would* be harmed, but they do not provide any details or specific information in that regard.  For example, Plaintiffs allege:

> [Defendants] are using and profiting from the OBT Book, which infringes the property rights of Plaintiff. This motion is critical, as allowing the Defendant's unfettered dissemination of IP in his possession, (including by reference in pleadings, and the upcoming Motion to Dismiss) specifically of the OBT Book, its comparison to

> STORM, would result in irreparable harm, wrongful use and
> publication.

*See* Pltfs.' Mem. of Law (ECF No. 54-1), p. 10 (emphasis omitted).[8] Plaintiffs do not explain how

or why dissemination of the information at issue would harm them and/or what type of harm they

would suffer (*i.e.*, whether it is compensable by money damages if appropriate).[9]  Plaintiffs' broad

categories of "confidentiality," if accepted, could result in the "continued sealing of the entire

case," which would be antithetical to the presumption of public access and contrary to the general

requirement of narrow tailoring for sealing information.[10]  Here, as in *Under Seal,* Plaintiffs fail

to establish a substantial probability of harm to a compelling interest that overcomes the strong

presumption in favor of public access.

Accordingly, Defendants respectfully request that their counter-proposed order be

approved, rather than Plaintiffs' overly broad and restrictive order.

## II.   A CONTRACTUAL DESIGNATION OF CONFIDENTIALITY DOES NOT SUPERSEDE THE PUBLIC'S RIGHT OF ACCESS TO JUDICIAL DOCUMENTS

Plaintiffs also cannot overcome the presumption of public access by asserting the

information they seek to keep under seal is contractually designated in the parties' agreements at

issue in this action, such as the Timetrics NDA or the Settlement Agreement.  It is well established

that "the mere existence of a confidentiality agreement covering judicial documents is insufficient

to overcome the First Amendment presumption of access."  *Aloi Nissay Dowa Ins. Co. Ltd. v.*

---

[8]  For Defendants, a key issue in the case is showing that the OBT book *has no relationship* to Plaintiff's intellectual property and software (including STORM).  In any event and as discussed below, Defendants do not believe they have any of Plaintiff's "confidential" information.

[9]  Also noteworthy is that *Plaintiffs* commenced this action in federal court – on the public docket – pursuant to the venue provisions in her own contracts.

[10]  Although Plaintiffs are not moving for a preliminary injunction here, they are still required to show why their proposed sealing supports a compelling interest that overcomes the presumption of public access.

*ProSight Spec. Mgmt. Co., Inc.*, No. 12 Civ. 3274, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012) (emphasis added).  "[W]hile enforcement of contracts is undeniably an important role for a court, it does not constitute a 'higher value' that would outweigh the presumption of public access to judicial documents."  *Id*.  <u>A contractual confidentiality provision is not binding on a federal court in determining whether to seal a document due to "the public's right of access to judicial documents</u>."  *Wells Fargo Bank, N.A. v. Wales LLC*, 993 F. Supp. 2d 409, 414 (S.D.N.Y. 2014) (emphasis added); *Under Seal*, 273 F. Supp. at 471 ("[C]ourts in this district have repeatedly found that the preservation of such bargained-for confidentiality does not overcome the presumption of access to judicial documents.").

Nor can Plaintiffs rely on their own confidentiality agreements to claim that broad categories of information are "trade secrets" that must be shielded from public access. "[C]onfidential information is not the same as a trade secret.  Taking steps to protect information through a confidentiality agreement does not, on its own, suggest the existence of [] bona fide trade secrets."  *Elsevier Inc. v. Doctor Evidence*, No. 17-cv-5540, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (dismissing claims for misappropriation of trade secrets and rejecting plaintiff's claim it would not have disclosed information absent a confidentiality agreement).  As such, a confidentiality agreement – standing alone – does not accord "trade secret" status to information.

Here, Plaintiffs cannot rely on their own confidentiality agreements to preemptively claim that broad categories information must be kept confidential and filed under seal.  While providing extremely broad, ambiguous and amorphous descriptions of information they seek to keep confidential, Plaintiff tellingly fails to point to *specific* documents covered in those confidentiality agreements that would be harmful to disclose or that would otherwise constitute a "higher value"

that would outweigh the presumption of public access to judicial documents.[11]   Accordingly, the fact that Plaintiffs contracted to keep certain information confidential does not justify the extremely restrictive protective order they propose.  *See Under Seal*, 273 F. Supp. at 471-72, 472 ("[C]ourts in this district have repeatedly held that the preservation of such bargained-for confidentiality does not overcome the presumption of access to judicial documents.").

## III.   DEFENDANTS SUBMIT A PROPOSED ORDER WITH A COMPARISON AGAINST PLAINTIFFS' PROPOSED ORDER

As explained, Defendants are submitting their version of the proposed protective order, with a "blackline" (comparison version) against the proposed order filed by Plaintiffs on June 17, 2020.  Defendants' proposed order is based on Judge Gardephe's Model Order, with variations to address certain concerns raised by Plaintiffs.  Overall, Defendant's proposed revisions are an effort to strike an appropriate balance between the parties' positions, the presumption in favor of public access for judicial documents and judicial proceedings, and the restrictions set forth by federal law and the Court's rules.[12]   The following is a summary of Defendants' proposal (as compared to the proposed order submitted by Plaintiffs):

### Pages 1-2:

Defendants propose revising the case caption and the title of the document (from a "motion" to a "proposed order").  Defendants also propose adding the "Whereas" clauses to conform with the format of a proposed order and the Model Order.

---

[11] As explained below, Defendants were able to identify a limited number of documents from Plaintiffs' overly broad descriptions, which Defendants incorporated in the list of information to be designated as confidential in the proposed order, subject to the Court's approval.  This addresses repeated inquiries by Plaintiff regarding what information Plaintiffs regard as confidential.

[12] To simplify matters, Defendants kept the paragraph numbers and section titles used by Plaintiffs.

**Paragraph 1 ("General"):**

Defendants propose clarifying the definition of what is being protected (*i.e.*, "Discovery Material") and making this revision throughout the document.  Defendants propose revising paragraph 1 to conform with paragraph 1 of the Model Order.

**Paragraph 2 ("Confidential Material"):**

Subparagraphs (a) through (d) and (h) conform with the Model Order.  Subparagraphs (e), (f) and (g) list specific documents that Defendants propose be designated as Confidential (if they are produced during discovery), subject to the Court's approval.

**Paragraph 2(e)** incorporates documents Defendants identified from Plaintiffs' descriptions, which Plaintiffs contend should be treated as trade secrets:  "Timetrics Software," "Related Works," "STORM" and the "OBT Book." *See* Defs.' Proposed Order (Tobin Decl. Ex. "A") ¶ 2(e); Pltfs.' Proposed Order (ECF No. 54-2) ¶ 2.2, Category A.1.[13]  Defendants' proposed Paragraph 2(e) also includes "Defendants' baseline P&L," and the Parties' "book management models and pricing models."  These documents are referred to throughout the Complaint and Plaintiffs' Proposed Order, and are included here to address concerns raised by Plaintiffs during the parties' discussions and in their motion.  Defendants agree with Plaintiffs' proposal to treat such documents as Confidential subject to the Court's approval.[14]

---

[13] To clarify, Defendants do not believe they have "Timetrics Software," "Related Works" or "STORM."  These are Plaintiffs' documents and programs, which Plaintiffs incorrectly contend Defendants copied from them.  Defendants deny all such allegations.  In any event, Plaintiffs can designate their own information as "confidential" if and when they produce it during discovery (provided Plaintiffs have a good-faith basis to do so).  The "OBT Book" is Defendants' document and contains Defendants' information.  Contrary to Plaintiffs' assertion, it is not copied from, reverse engineered or in any way related to Plaintiffs' information or Timetrics Software.  These issues are at the heart of Plaintiffs' claims in this case.

[14] Contrary to Plaintiffs' allegations, <u>Defendants did not tell Plaintiffs they did not intend to protect trade secrets.</u>  As explained above, Defendants repeatedly explained the parties could not "agree" (on their own without Court approval) that information constituted trade secrets, and Defendants were unable to assess Plaintiffs' argument in favor of designating broad and ambiguous categories of information as trade secrets in advance of discovery.  Plaintiffs attach to their motion an email from Defendants' counsel dated June 3, 2020 (*the day before the parties' meet and confer*), which stated (in response to Plaintiffs' repeated questioning):  "<u>*At this point* there is no information [Defendants]</u>

**Paragraphs 2(f) and 2(g)** incorporate additional documents Defendants identified from Plaintiffs' description:  Names and identifying information of and agreements with the Parties' respective brokers, vendors, suppliers, customers, clients and future commission merchants ("FCMs"), and trades and trading statements and other documents that disclose actual trading or hedging positions (including volumes, strikes, prices, types of instrument) in the respective trading accounts from the FCMs.  *See* Defs.' Proposed Order (Tobin Decl. Ex. "A") ¶¶ 2(f), 2(g); Pltfs.' Proposed Order (ECF No. 54-2) ¶ 2.2, Categories B.1, B.2.   If and when such documents are produced during discovery, Defendants agree they should be designated as Confidential, subject to Court approval, including to protect identifying and confidential information belonging to non-parties (*i.e.*, the Parties' respective brokers, vendors, suppliers, customers, clients and FCMs). Respectfully, Defendants believe their proposal strikes an appropriate balance between the parties' positions, the presumption of public access to judicial documents and judicial proceedings, and the restrictions set forth by federal law and the Court's rules.

**Paragraph 3 ("Scope")**:

Defendants propose revising Paragraph 3 to clarify the term "Confidential Discovery Material."  Defendants also propose omitting language that is overly broad and restrictive and/or is repeated elsewhere in the proposed order.

**Paragraph 4 ("Purpose")**:

Defendants propose revisions to clarify the language and more closely conform with paragraph 14 of the Model Order.

---

believe should be confidential or redacted.  We can discuss the proposed order and the rest on the call tomorrow." *See* Tobin Decl. Ex. "E" (emphasis added).  Inexplicably, Plaintiffs attached to their motion counsel's June 3, 2020 email (*see* ECF No. 54-6), but not the chain of emails it was part of, including previous and subsequent emails.  Plaintiffs omit that the parties continued to discuss this issue and Defendants included certain categories of documents in the proposed order sent to Plaintiff on June 16, 2020 (as discussed below). *See* Tobin Decl. Ex. "P."  Despite Defendants' inquiries, Plaintiffs have never explained why they believe it  is so important to preemptively identify this information.

**Paragraph 5 ("Restrictions and Basis Principles")**:

Defendants propose revisions to clarify the language and conform the first sentence with paragraph 16 of the Model Order.

**Paragraph 6 ("Designating Confidential Discovery Materials")**:

Defendants propose omitting Paragraphs 6.1, 6.2, 6.4, 6.6 and 6.7 because the language is overly broad and restrictive and/or is repeated elsewhere in the proposed order.

**Paragraph 6.2**:  Defendants propose revisions to clarify the language and conform with paragraph 3 of the Model Order.

**Paragraph 6.5**:  Defendants propose revisions to clarify the language.  Defendants also propose omitting the reference to "the level of protection being asserted."  This reflects the later omission of an "attorneys' eyes only" designation, which is inapplicable here because Plaintiffs are *pro se*.

**Paragraph 6.8**:  Defendants propose revisions to clarify the language.

**Paragraph 7 ("Challenging Confidentiality Designations")**:   Defendants propose omitting Paragraph 7 in its entirety because the topics, including the process for challenging another party's confidentiality designations, are set forth elsewhere in the proposed order, including Paragraph 14, and are governed by federal law, the Individual Rules adopted by Judge Vyskocil and Section 6 of the S.D.N.Y.'s ECF Case Filing Rules & Instructions.

**Paragraph 8 ("Inadvertent Failure to Disclose")**:   Defendants propose revising Paragraphs 8.1 and 8.2 to clarify the language and, with respect to Paragraph 8.1, to conform with paragraph 5 of the Model Order.  Defendants also propose omitting language that is overly broad and restrictive and/or is repeated elsewhere in the proposed order.

18

**Paragraph 9 ("No Waiver")**:  Defendants propose revising Paragraph 9 to clarify the language and conform with paragraph 6 of the Model Order.  Defendants also propose omitting language that is overly broad and restrictive and/or is repeated elsewhere in the proposed order.

**Paragraph 10 ("Authorized Persons")**:  Defendants propose revising Paragraph 10 to clarify the language and conform with paragraph 7 of the Model Order.  Defendants also propose revisions to conform with other sections of the proposed order, including paragraph 12 regarding expert witnesses.

**Paragraph 11 ("Procedures for Disclosure")**:  Paragraph 11 is based on paragraph 8 of the Model Order.  Defendants propose revising Paragraph 11 to clarify the language and to be consistent with proposed revisions to Paragraph 10.

**Paragraph 12 ("Experts")**:  Defendants do not believe special expert "vetting" procedures are necessary here.  Nonetheless, Defendants agreed to the concept to accommodate concerns raised by Plaintiffs during the June 4 meet and confer and related discussions.  Defendants propose revising Paragraph 12 to clarify the language and simplify and expedite the procedures to be used to "vet" proposed experts and to clarify treatment of confidential documents while the vetting process is underway.

**Paragraph 13 ("Filing Under Seal")**:  Defendants propose revising Paragraph 13 to clarify the language and conform with paragraph 11 of the Model Order.

**Paragraph 14 ("Objections to Confidentiality")**:  Defendants propose revising Paragraph 13 to clarify the language, conform with paragraph 12 of the Model Order and reflect that such objections to confidentiality designations are governed by federal law, the Individual Rules adopted by Judge Vyskocil and Section 6 of the S.D.N.Y.'s ECF Case Filing Rules & Instructions.

**Paragraph 15 ("Attorney's Eyes Only")**:  Defendants propose omitting paragraph 15 in its entirety because an "attorneys' eyes only" designation is inapplicable where, as here, one side is *pro se*.  Otherwise, the designation is available only to Plaintiffs and would be unduly prejudicial to Defendants.  In the event Plaintiffs retain counsel and either side believes an "Attorneys' Eyes Only" designation is appropriate, this can be revisited later.

**Paragraph 16 ("Court's Discretion For Trial")**:  Defendants propose revising Paragraph 16 to clarify the language and conform with paragraph 16 of the Model Order.  Defendants propose omitting language that is repeated elsewhere in the order, including Paragraph 9 ("No Waiver").

**Paragraph 17 ("Forced Disclosure")**:  Defendants propose revising Paragraph 17 to clarify the language, conform with paragraph 15 of the Model Order and omit provisions that are overly broad, restrictive and/or that would impose on a party unreasonable obligations.

**Paragraph 18 ("Inadvertent Disclosure")**:  Defendants propose revising Paragraph 18 to clarify the language and the procedures and to conform with other sections of the order.

**Paragraph 19 ("Duration")**:  Defendants propose omitting Paragraph 19 in its entirety because it is unnecessary in light of various other provisions, including Paragraphs 20, 21 and 22.  Likewise, Paragraph 4 ("Purpose") prohibits *any* use of Discovery Material (regardless of whether it was designated as "Confidential") outside of this action.

**Paragraph 20 ("Post Termination")**:  Defendants propose revising Paragraph 20 to clarify the language and conform with paragraph 17 of the Model Order.

**Paragraph 21 ("Survival")**:  Defendants propose revising Paragraph 21 to clarify the language and conform with paragraph 18 of the Model Order.

**Paragraph 22 ("Court's [*sic*] Jurisdiction")**:  Defendants propose revising Paragraph 22 to conform with paragraph 19 of the Model Order.  Defendants propose omitting the second sentence of Plaintiffs' proposal to avoid imposing undue and unfair restrictions non-parties.

**Paragraph 23 ("Definitions")**:  Defendants do not believe Paragraph 23 is necessary because the definitions are repeated elsewhere in the proposed order.  At the same time, Defendants do not have an issue with the section generally and, thus, propose revisions to certain definitions to clarify the language and conform with the specified sections of the Model Order.  Defendants propose omitting certain definitions to reflect proposed revisions elsewhere in the order.

**Exhibit A (Non-Disclosure Agreement)**:  Defendants propose revising Exhibit A, the model for the Non-Disclosure Agreement the parties will use, to clarify the language and conform with the Exhibit A to the Model Order.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court approve and "so order" the proposed confidentiality stipulation submitted by Defendants herewith.


Dated: Uniondale, New York
       July 1, 2020

WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP

By:  */s/ Ellen Tobin*
     Ellen Tobin, Esq.
     1201 RXR Plaza
     Uniondale, New York 11566
     (516) 622-9200
     *Attorneys for Defendants*


02226899

21