UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SAMANTHA SIVA KUMARAN and THE A STAR
GROUP, INC. d/b/a TIMETRICS,

                                            Case No.  1:19-cv-08345-MKV-DCF

                Plaintiffs,

    -against-

NORTHLAND ENERGY TRADING, LLC,
HEDGE SOLUTIONS, INC. RICHARD M. LARKIN,
DANIEL LOTHROP, and DOMENIC BRAMANTE,

                    Defendants.
-------------------------------------------------------------------X


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP
Ellen B. Tobin, Esq.
Michael Kwon, Esq.
1201 RXR Plaza
Uniondale, New York 11556
Telephone:  (516) 622-9200
Facsimile:  (516) 622-9212
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................1

THE ALLEGATIONS IN THE COMPLAINT ........................................................3

    A.  Northland and Hedge Enter Agreements To License
        Plaintiffs' "Trade Secrets" .......................................................................3

    B.  Defendants Allegedly Copy Plaintiffs' "IP" ...........................................4

    C.  The Prior Action, Settlement Agreement and the Parties'
        Broad Mutual Releases .............................................................................5

    D.  Plaintiffs Discover Defendants Were Using Plaintiffs' "IP"
        In Violation Of The Settlement Agreement *Before* The
        The Agreement In Principle .....................................................................6

    E.  The "Agreement In Principle" ..................................................................7

    F.  Larkin Conceals The Alleged AIP From Lothrop And Bramante ................8

    G.  Timetrics Allegedly Assigned Its IP To Kumaran ......................................8

LEGAL STANDARD ...............................................................................................8

ARGUMENT .............................................................................................................9

    I.  PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF
      THE SETTLEMENT AGREEMENT ....................................................9

        A.  Plaintiffs Waived All Claims Related To The Settlement Agreement ..............9

        B.  Plaintiffs Fail To Plead The Required Element Of Recoverable Damages .....10

        C.  Larkin Is Not A Party To The Settlement Agreement ....................................11

    II.  THE PURPORTED "AGREEMENT IN PRINCIPLE"
       IS UNENFORCEABLE UNDER THE STATUTE OF FRAUDS ............................11

    III. THE COMPLAINT FAILS TO STATE ANY FRAUD CLAIMS ............................12

        A.  Fraud Claims Pre-Dating The Settlement Agreement
            Are Released ........................................................................................13

        B.  The Fraud Claims Related To The Settlement Agreement
            Are Duplicative Of The Claim For Breach Of The
            Settlement Agreement ..........................................................................13

C.     The Complaint Fails To State A Claim For

              Fraudulent Inducement Of The "Agreement In Principle"............................15

        D.  The Complaint Fails To State A Claim For Aiding And
            Abetting Fraud Against Lothrop and Bramante...............................15

   IV.  THE COMPLAINT FAILS TO STATE CLAIMS FOR
        MISAPPROPRIATION OF TRADE SECRETS.......................................17

        A.  Plaintiffs Released Any Claims For Misappropriation
            Of Trade Secrets ..................................................17

        B.  The Alleged Acts Of Misappropriation Pre-Date The
            Enactment of the DTSA............................................17

        C.  The Complaint Fails To Adequately Allege Any Trade Secrets ....................18

   V.   THE COMPLAINT FAILS TO STATE A CLAIM FOR
        BREACH OF FIDUCIARY DUTY ...........................................19

   VI.  THE REMAINDER OF THE CLAIMS ARE BARRED BY THE
        SETTLEMENT AGREEMENT OR DUPLICATIVE OF THE
        BREACH OF CONTRACT CLAIMS ........................................21

        A.  Claims Released By The Settlement Agreement ...........................21

        B.  Claims Duplicative Of The Breach Of Contract Claims..............................22

           1.  Misappropriation Of Confidential Information.........................22

           2.  Unjust Enrichment, Promissory Estoppel And The
               So-Called "Misappropriation Of Skill And Labor" ................23

           3.  Implied Covenant Of Good Faith And Fair Dealing..............................24

   VIII. THE CLAIMS BELONGING TO OR ASSERTED BY
         TIME METRICS *PRO SE* MUST BE DISMISSED...............................24

   CONCLUSION.....................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                   **Page**

*2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital L.L.C.*,
    No. 00 Civ. 5773, 2001 WL 410074 (S.D.N.Y. Apr. 23, 2001) .................................. 9, 13

*A Star Group, Inc. v. Manitoba Hydro*,
    No. 13 Civ. 4501, 2014 WL 2933155 (S.D.N.Y. June 30, 2014) .............................. 22, 23

*Alexander Interactive, Inc. v. Leisure Pro Ltd.*,
    No. 14-cv-2796, 2014 WL 4651942 (S.D.N.Y. Sept. 16, 2014) ...................................... 18

*Am.-European Art Assocs., Inc. v. Trend Galleries, Inc.*,
    227 A.D.2d 170 (1st Dep't 1996) ...................................................................................... 24

*Ambac Assur. Corp. v. DLJ Mortg. Capital, Inc.*,
    No. 600070/2010, 2011 WL 1348375 (N.Y. Sup. Ct. N.Y. County, Apr. 7, 2011) ......... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) .............................................................................................. 8, 17

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*,
    361 F.Supp.2d 283 (S.D.N.Y. 2005) ................................................................................. 24

*Bonsey v. Kates*,
    2013 WL 4494678 (S.D.N.Y. Aug. 21, 2013) .................................................................. 24

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir. 1993) .............................................................................................. 5

*Brown v. Brown*,
    12 A.D.3d 176 (1st Dep't 2004) ....................................................................................... 23

*Capstone Enters. of Port Chester, Inc. v. County of Westchester*,
    262 A.D.2d 343 (2d Dep't 1999) ...................................................................................... 10

*Cereus Prod. Dev., Inc. v. Boom LLC*,
    No. 14 CIV. 4292, 2015 WL 3540827 (S.D.N.Y. June 5, 2015) ...................................... 22

*Champions League, Inc. v. Woodard*,
    224 F. Supp. 3d 317 (S.D.N.Y. 2016) .............................................................................. 18

*Companies, L.P. v. Ruthling*,
    No. 17-CV-4175, 2017 WL 6507759 (S.D.N.Y. Dec. 18, 2017) ..................................... 20

*Computech Int'l, Inc. v. Compaq Computer Corp.*, No. 02 CIV. 2628, 2002 WL 31398933
    (S.D.N.Y. Oct. 24, 2002) .................................................................................................. 24

*Debussy LLC v. Deutsche Bank AG*,
    242 F. App'x. 735 (2d Cir. 2007) ................................................................. 21

*Democratic Nat'l Comm. v. Russian Fed'n*,
    392 F. Supp. 3d 410 (S.D.N.Y. 2019) ......................................................... 19

*Edwards v. Sequoia Fund, Inc.*,
    938 F.3d 8 (2d Cir. 2019) ............................................................................. 9

*Elsevier Inc. v. Doctor Evidence, LLC*,
    No. 17-cv-5540, 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ........................ 19

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009) ........................................................................ 18

*Habberstad v. Revere Secs.*,
    183 A.D.3d 532 (1st Dep't 2020) ................................................................ 16

*Helmsley-Spear, Inc. v. Westdeutsche Landesbank Girozentrale*,
    692 F. Supp. 194 (S.D.N.Y. 1988) ............................................................. 10

*Hoeffner v. Orrick, Herrington & Sutcliffe LLP*,
    61 A.D.3d 614 (1st Dep't 2009) ................................................................. 24

*In re Stillwater Capital Partners Inc. Litig.*,
    853 F. Supp. 2d 441 (S.D.N.Y. 2012) ........................................................ 21

*Jones v. Niagara Frontier Transp. Auth.*,
    722 F.2d 20 (2d Cir. 1983) ......................................................................... 25

*Kastner v. Gover*,
    19 A.D.2d 480 (1st Dep't 1963) ................................................................. 12

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014) ........................................................................ 16

*Kuroda v. SPJS Holdings, L.L.C.*,
    No. 4030-CC, 2010 WL 925853 (Del.Ch. Mar. 16, 2010) ............................ 20

*Marcus v. C.I.F. Inc.*,
    26 A.D.2d 923 (1st Dep't 1966) ................................................................. 12

*Martin Greenfield Clothiers, Ltd. v. Brooks Brothers Group, Inc.*,
    175 A.D.3d 636 (2d Dep't 2019) ................................................................ 24

*MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*,
    32 Misc.3d 758 (N.Y. Sup. Ct. N.Y. County 2011) ..................................... 14

*Nat'l Westminster Bank, U.S.A. v. Ross*,
    130 B.R. 656 (S.D.N.Y. 1991) ..................................................................... 9

*Phoenix Ancient Art, S.A. v. J. Paul Getty Trust*,
    No. 17 Civ. 241, 2018 WL 1605985 (S.D.N.Y. Mar. 29, 2018) ..................................... 18

*Pot Luck, LLC v. Freeman*,
    No. 06 Civ. 10195, 2010 WL 908475 (S.D.N.Y. Mar. 8, 2010) ..................................... 11

*Productivity Software Int'l, Inc. v. Healthcare Techs.*,
    No. 93 Civ 6949, 1995 WL 437526 (S.D.N.Y. July 25, 1995) ....................................... 22

*Project Cricket Acquisition, Inc. v. FCP Investors VI, L.P.*,
    159 A.D.3d 600 (1st Dep't 2018) ................................................................................... 14

*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*,
    No. 14CV6294, 2015 WL 5008762 (S.D.N.Y. Aug. 24, 2015) ..................................... 24

*Rosner v. Bank of China*,
    No. 06 CV 13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008) .................................. 16

*Ryan v. Volpone Stamp Co.*,
    107 F. Supp. 2d 369 (S.D.N.Y. 2000) ............................................................................ 11

*Sanchez v. Walentin*,
    526 F. App'x 49 (2d Cir. 2013) ...................................................................................... 25

*Simon v. FrancInvest, S.A.*,
    178 A.D.3d 436 (1st Dep't 2019) ................................................................................... 16

*Smart Egg Pictures, S.A. v. New Line Cinema Corp.*,
    213 A.D.2d 302 (1st Dep't 1995) ................................................................................... 15

*Smith v. Lightning Bolt Prods., Inc.*,
    861 F.2d 363 (2d Cir. 1988) ........................................................................................... 11

*The Hawthorne Grp., LLC v. RRE Ventures*,
    7 A.D.3d 320 (1st Dep't 2004) ....................................................................................... 15

*Thiam v. Am. Talent Agency, Inc.*,
    No. 11 Civ. 1465, 2012 WL 1034901 (S.D.N.Y. Mar. 27, 2012) ................................. 12

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031, (Del. 2004) ............................................................................................ 21

*Topps Co. v. Cadbury Stani S.A.I.C.*,
    380 F. Supp. 2d 250 (S.D.N.Y. 2005) ............................................................................ 11

*Walton v. Morgan Stanley & Co., Inc.*,
    623 F.2d 796 (2d Cir. 1980) ........................................................................................... 20

*Whitman Heffernan Rhein & Co., Inc. v. Griffin Co.*,
　163 A.D.2d 86 (1st Dep't 1990) ...................................................................... 12

*Young Adult Inst. v. Corp. Source*,
　No. 654923/2016, 2018 WL 1745153 (N.Y. Sup. Ct. N.Y. County Apr. 11, 2018) ........ 23

*Zirvi v. Flatley*,
　No. 18-CV-7003, 2020 WL 208820 (S.D.N.Y. Jan. 14, 2020) ...................................... 19

**Statutes**
N.Y. G.O.L. § 5-701(a)(1) ........................................................................................ 11

Defendants Northland Energy Trading, LLC ("Northland"), Hedge Solutions, Inc. ("Hedge"), Richard M. Larkin ("Larkin"), Daniel Lothrop ("Lothrop") and Domenic Bramante ("Bramante") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the first amended complaint [ECF No. 26] (the "Complaint" or "Compl.") filed by Plaintiffs Samantha Siva Kumaran ("Kumaran") and The A Star Group, Inc. d/b/a Timetrics ("Timetrics") (together "Plaintiffs"), in its entirety, with prejudice.

## PRELIMINARY STATEMENT

Plaintiffs commenced this action on September 6, 2019, and served the complaint on December 4, 2019.  On December 26, 2019, Plaintiffs filed the first amended complaint, adding two defendants (Lothrop and Bramante) and several new claims.  The primary contentions in the 69-page, 320-paragraph complaint are that: (1) Defendants breached the *Mutual Release and Settlement Agreement* dated May 9, 2016 (the "Settlement Agreement") by "retaining, using modifying, adapting, reverse engineering and .... misappropriating Plaintiffs' IP and Software;" (2) Defendants breached the supposed oral "Agreement In Principle" ("AIP") by failing to make certain payments; and (3) Defendants fraudulently induced Plaintiffs to enter each of the Settlement Agreement and the AIP by falsely representing they would perform under and comply with the respective agreements.

In Plaintiffs' own telling, after entering into the Settlement Agreement in May 2016 and then learning (in September 2016) that Northland and Hedge made *false representations in the Settlement Agreement*,  Plaintiffs nevertheless decided to resume doing business with Hedge's CEO (Larkin), pursuant to an **unwritten** contract that Larkin allegedly **concealed from his own employees** (namely, Lothrop and Bramante).  Larkin then allegedly failed to keep his unwritten and unsigned promises to pay Plaintiffs unspecified amounts for unidentified "trade secrets" and "services," in violation of the AIP.  Despite the harm supposedly suffered by Plaintiffs, they waited three years after discovering that Defendants copied their "trade secrets" to bring this

action.  Plaintiffs seek, among other things, "disgorgement" of Northland's and Hedge's profits, punitive damages, and rescission of the releases under the Settlement Agreement.

Accepting as true the well-pleaded factual allegations, drawing all reasonable inferences favorable to Plaintiffs and considering the documents attached to the Complaint and/or incorporated by reference, the Complaint fails to state claims upon which relief can be granted. Among other things:

- The claims against the individual defendants – Larkin, Lothrop and Bramante – relate to conduct on behalf of Northland and Hedge, for which they cannot be sued individually.

- The "newly added" defendants – Lothrop and Bramante – had virtually no involvement in the dispute.  For the period after the Settlement Agreement, they are not alleged to have made any misrepresentations, not alleged to have had actual knowledge of fraud and are not parties to any agreements between the parties. Indeed, <u>Plaintiffs repeatedly allege that Larkin *hid* the post-Settlement Agreement transactions, including the AIP, from Lothrop and Bramante.</u>  *See, e.g.*, Compl. ¶¶ 156, 158, 163, 169, 180, 185.

- All allegations prior to May 9, 2016 (*e.g.*, Compl. ¶¶ 67-111), and all causes of action to the extent they are based on events that took place before May 9, 2016, are barred by the Settlement Agreement.  The parties agreed to broad, mutual releases including all claims connected, directly or indirectly, with all allegations and claims, express or implied, that the parties *asserted or could have asserted* in the prior lawsuit.

- The allegations that Plaintiffs agreed to the AIP and provided proprietary services and revealed additional trade secrets to Defendants *after discovering* and *despite knowing* Defendants had previously "copied" Plaintiffs' IP (and created the "copycat product") *defies any definition of plausibility*.

- By waiting to bring this action more than three years after allegedly discovering that Defendants possessed and/or had copied Plaintiffs' "trade secrets" in violation of the Settlement Agreement, Plaintiffs waived all claims in that regard.

- The contract and quasi-contract claims arising from the AIP are barred by the statute of limitations.  According to Plaintiffs' allegations, the AIP could not have been performed within one year.

- The fraud-based claims are based on the same conduct as and are duplicative of the breach of contract claims.  Alleged misrepresentations regarding a party's intent to perform under a contract are not actionable as fraud claims.

- The claims for misappropriation of trade secrets under federal and state law fail to adequately plead the existence of "trade secrets."  Additionally, the claim fails under

federal law because the alleged misappropriation took place *before* the enactment of the Defend Trade Secrets Act.

- The vast majority of the sixteen claims are, in one form or another, impermissibly duplicative of the breach of contract claims.

- Timetrics, a corporate entity, cannot prosecute its claims *pro se*, nor can Kumaran circumvent that well-established rule by alleging that Timetrics "assigned" all of its trade secrets and other IP to her individually.  All claims by Timetrics should be dismissed.[1]

At bottom, Plaintiffs seek to revive the claims they ***expressly released*** under the Settlement Agreement and manufacture a litany of new claims based on the oral AIP which, in any event, is void under the Statue of Frauds.  The allegations in the Complaint are completely divorced from reality and Defendants vigorously dispute them.  But even when the allegations are assumed to be true for purposes of this motion (as they must be), Plaintiffs fail to state a single cognizable claim against any of the Defendants.  Respectfully, Plaintiffs' strike suit should be dismissed with prejudice.

## THE ALLEGATIONS IN THE COMPLAINT

### A.    Northland And Hedge Enter Agreements To License Plaintiffs' "Trade Secrets"

Kumaran is Timetrics' "Chief Executive Office[r]."  *See* ECF No. 29 (AStar/Timetrics NDA dated March 21, 2011, "Exhibit to Pleading").  Plaintiffs "develop[] computer software used by commodities traders to increase profits and reduce hedging risks by using advanced mathematical tools and procedures."  Compl. ¶ 2.  Plaintiffs entered into agreements with defendants Northland, "an over the counter options trading company," and Hedge, "a software company that also licenses risk management software to its retail heating oil clients[.]"  *Id*. ¶ 54.

Starting in or around 2011, Defendants licensed Plaintiffs' "proprietary hedging strategies, software and techniques" pursuant to the following agreements (collectively, the "Pre-Release Agreements"):

---

[1] Pursuant to the Court's Order dated June 18, 2020, Timetrics has until July 18, 2020 to appear through counsel, or its claims will be dismissed.  *See* ECF No. 55.

- AStar/Timetrics NDA dated March 21, 2011 between Timetrics, Kumaran, Hedge and Northland ("NDA") [ECF No. 29];

- Terms and Conditions for Timetrics Consulting Services dated as of November 1, 2011 between Northland and Timetrics ("Terms & Conditions") [ECF No. 33-2];

- Timetrics End User License Agreement ("EULA") dated February 28, 2013 between Northland and Timetrics [ECF No. 33-3]; and

- "numerous other engagement letters" between Northland and Timetrics, including dated October 28, 2011 and March 1, 2014 ("Engagement Letters").

Compl. ¶¶ 4, 67-70, 72, 85.  The Complaint describes the "Timetrics Software" as:

> a proprietary suite of various enterprise risk management and analytic technologies, *the* underlying quantitative processes and analytical engines, methods, techniques, for hedging and managing risk, and mathematical algorithms developed by Kumaran for use in creating new hedging strategies for exchange traded commodity derivatives, primarily in markets for oil and gas futures, electricity transmission contracts, and other energy futures.

*Id*. ¶ 48.   The Pre-Release Agreements prohibited Northland and Hedge from creating "Derivative Works" from Plaintiffs' "IP."  *Id.* ¶ 71.

Under the Pre-Release Agreements, Northland and Hedge allegedly promised Plaintiffs "large profits [sic] sharing, and lucrative incentives and license fees … in exchange for the use and disclosure of Plaintiffs' IP, software and strategies."  Compl. ¶¶ 5, 72.

**B.**     **Defendants Allegedly Copy Plaintiffs' "IP"**

In 2014 (more than *five years* before this action commenced), Defendants allegedly breached the Pre-Release Agreements by using Plaintiffs' "programs and IP" "to create a copycat product" called the "OBT Book," which Defendants allegedly "fraudulently concealed from Plaintiffs."  Compl. ¶¶ 8-10, 86-91, 112-13.  The Complaint alleges the OBT Book was "operational" in August 2014 and "became [] a full production system in 2015."  *Id*. ¶ 95.

Defendants allegedly used their copycat OBT Book in parallel with Plaintiffs' hedging strategy (referred to by Plaintiffs as the "Pilot"), but intentionally "sabotaged" the performance

of Plaintiffs' Pilot while secretly using Plaintiffs' trade secrets in the OBT Book with the intent "to not pay the Licensee Fees or onsite use for the Derivative Works."  Compl. ¶¶ 94-98.

The Complaint alleges that, despite Defendants' "sabotage" of Plaintiffs' Pilot, the Pilot's performance was still superior to Northland's prior hedging strategy.   Compl. ¶¶ 100-05. Defendants, however, allegedly "failed to pay the royalties and profit sharing that were due" to Plaintiffs by February 2015 under the Pre-Release Agreements.  *Id.* ¶ 106.

## C.   <u>The Prior Action, Settlement Agreement And The Parties' Broad Mutual Releases</u>

In 2015, Timetrics brought an action against Northland and Hedge to recover the amounts allegedly due under the Pre-Release Agreements (the "Prior Action").   Compl. ¶¶ 12, 111. During settlement negotiations, Defendants allegedly continued to conceal their copying of Plaintiffs' trade secrets and misrepresented that "Defendants reverted back to their old" hedging strategy.  *Id.* ¶¶ 115-18.

On May 9, 2016, Plaintiffs settled the Prior Action pursuant to the Settlement Agreement. Compl. ¶¶ 15-16, 120-21.   The parties to the Settlement Agreement are Timetrics, Kumaran, Northland and Hedge.  *See* Tobin Decl. Ex. "1."[2]   Northland and Hedge agreed to pay Plaintiffs $90,000 in five installments that would be completed on June 15, 2017.   *See* Settlement Agreement (Ex. "1") §§ 1-2.   The parties agreed that their prior agreements, namely the Terms & Conditions, EULA and Engagement Letters, were "terminated and of no further force and effect."  *Id.* (Ex. "1") p. 1 and § 4.

<u>**The parties agreed to broad, mutual releases that covered all claims the parties**</u> <u>***asserted or could have asserted*** **in the Prior Action**</u>.   Specifically, <u>the parties released each</u> <u>other and their "employees, directors, officers [and] agents"</u> from:

> any and all claims . . . whether known or unknown, which the
> Parties may have, or claims they may have had, or now has or

---

[2] The Settlement Agreement is explicitly referenced and incorporated in the Complaint and is properly considered here. *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ("the complaint is deemed to include any written instrument attached to it or as an exhibit or any statements or documents incorporated in it by reference").

claims to have, <u>from the beginning of the world to the date of this Agreement, including but not limited to any claims resulting from, arising out of, or connected, directly or indirectly, with all allegations and claims, express or implied, that the Parties asserted or could have asserted in the Lawsuit.</u>  *Id.* § 4 (emphasis added).

The Settlement Agreement provides that "Northland and Hedge represent and warrant that neither of them has in their possession any Timetrics software that was involved in the Lawsuit." *Id.* § 4.  Northland and Hedge further acknowledged that:

> [Timetrics] owns the Timetrics Software, and thereby disclaim and shall not retain or assert any right, title and/or interest in and to the Timetrics Software and they each agree not to use, duplicate, reverse engineer or otherwise misappropriate any Timetrics Software and that they are not using and will not utilize in the future any strategies learned from the trading recommendations from the Timetrics Software to improve NT Parties trading or hedging revenues and/or any other consulting recommendations provided by Timetrics under the Engagement Contracts to improve NT Parties' trading or hedging revenues.

*Id.*; *see also* Compl. ¶¶ 122-25.

Under the Settlement Agreement, Plaintiffs expressly acknowledged "<u>this is a FULL, COMPLETE and FINAL release relinquishing and releasing all claims the Parties have or may have against one another.</u>"  Settlement Agreement § 9 (emphasis added).

**D.    Plaintiffs Discover Defendants Were Using Plaintiffs' "IP" In Violation Of The Settlement Agreement *Before* The Agreement In Principle**

The Complaint alleges that <u>on or around September 8, 2016</u> (4 months after the Settlement Agreement), they learned Defendants were in possession of Plaintiffs' IP in violation of the Settlement Agreement.  Compl. ¶¶ 143-49.  Plaintiffs allege they discovered this by way of unspecified telephone communications and an unidentified email dated September 8, 2016. *Id*. ¶ 143.  Plaintiffs allege that <u>as of September 8, 2016, they were aware that Defendants had supposedly copied Plaintiffs' IP and created "derivative works," and had "fraudulently concealed their improper retention," and use of Plaintiffs' IP supposedly in violation of the Settlement Agreement</u>. *Id*. ¶ 149 (emphasis added).

As described below, Plaintiffs allege that despite this discovery on September 8, 2016, Plaintiffs then entered into the AIP *and* on multiple dates between September 27, and October 8, 2016 (just weeks after discovering the breach), Plaintiffs revealed "numerous trade secrets features … and updated design features, to Larkin." *Id*. ¶ 172.

Plaintiffs then waited a full ***three years*** after discovering Defendants had allegedly copied their trade secrets in breach of the Settlement Agreement to bring this action.

E.    **The "Agreement In Principle"**

The Complaint alleges that Kumaran and Larkin "etched out an Agreement in Principle during the months of August 2016 – September 2016" and the AIP was "effective immediately from September 2016."  Compl. ¶¶141-42.

Specifically, the Complaint alleges that just a few months after the Settlement Agreement, Larkin supposedly recognized that Defendants' OBT Book was "inferior to the Plaintiffs' IP" (even though it was allegedly a "copycat" of Plaintiffs' IP), and "re-established business relations with Kumaran" pursuant to a so-called "Agreement in Principle."  Compl. ¶¶ 17-18, 128-30.  To induce Plaintiffs to enter into the AIP, the Complaint alleges that Larkin – "acting in his capacity as CEO of Northland and President of Hedge" – made unspecified false representations and concealed that "Northland and Hedge … had no intention of paying Plaintiffs for their work" or otherwise complying with their alleged obligations under the AIP. Compl. ¶¶ 157-59, 169, 174.

The alleged "material components" of the AIP were that Larkin would (i) contribute an unspecified amount of capital to start a hedge fund under the name Nefertiti Asset Management LLC ("Nefertiti"), with "no ability to terminate his capital contribution for ***two years***;" (ii) become a "principle and fiduciary" of "these entities;" and (iii) sign NDAs with the new entities. Compl. ¶ 141 (emphasis added).  "In consideration of Larkin's substantial full non-terminable capital contribution for two years to launch the hedge fund" and additional, unspecified

renumeration, "Plaintiffs would provide services for Northland and Hedge," including "disclos[ing] further IP and trade secrets" – none of which are described in the Complaint. *Id.* ¶¶ 142, 152, 155. The Complaint alleges the AIP is not "memorialized in a written form" and the "parties had not signed a finished agreement." *Id.* ¶ 282.

From September 2016 to March 2017, Plaintiffs allegedly provided services and disclosed unspecified "IP, Confidential Information and Trade Secrets" to Larkin pursuant to the AIP. Compl. ¶¶ 21, 150, 162-63, 172-74. Larkin, however, allegedly "never fulfilled his commitments of providing the capital" to form Plaintiffs' hedge funds, "failed to make the compensations that were assured in royalties, profit sharing and license fees," and committed other breaches of the AIP. *Id.* ¶¶ 22, 163, 179-98.

**F.**    <u>Larkin Conceals The Alleged AIP From Lothrop And Bramante</u>

Plaintiffs repeatedly allege that Larkin *concealed* from his own employees – including Defendants Lothrop and Bramante – the re-established business relations with Plaintiffs pursuant to the AIP. Compl. ¶¶ 19, 22, 156, 158, 169. <u>According, to the Complaint, Lothrop and Bramante had *no knowledge* of the events alleged to have occurred after the Settlement Agreement. They were not aware of and played no role in any of the communications or transactions between Larkin and Kumaran. *Id.*</u>

**G.**    <u>Timetrics Allegedly Assigned Its IP To Kumaran</u>

The Complaint alleges that pursuant to an "IP Assignment Agreement" dated September 29, 2016, Timetrics assigned to Kumaran "all intellectual property and trade secrets rights for the IP and trade secrets," making Kumaran the "sole owner." Compl. ¶¶ 59-66. To date, Plaintiffs have not provided a copy of the supposed assignment agreement.

<u>**LEGAL STANDARD**</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (internal quotation marks omitted).  The Court, however, is "not required to credit conclusory allegations or legal conclusions." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019).  "Accordingly, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (internal quotations omitted).

## ARGUMENT

### I.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE SETTLEMENT AGREEMENT

All of Plaintiffs' claims related to the Settlement Agreement (Counts 1, 2, 3 and 13) should be dismissed because Plaintiffs waived the claims.[3]  The claims for breach and fraudulent inducement of the Settlement Agreement (Counts 1 and 2) should also be dismissed because the Complaint fails to plead the requisite element of recoverable damages.  The breach of the Settlement Agreement should be dismissed as against Larkin because he is not a party to it.

### A.   Plaintiffs Waived All Claims Related To The Settlement Agreement

Plaintiffs waived all claims related to the Settlement Agreement (Counts 1, 2, 3 and 13) by waiting more than three years after supposedly discovering the breach (*i.e.*, that Defendants supposedly retained and were using Plaintiffs' IP) to bring this action.  "It is well-established that where a party to an agreement has ***actual knowledge*** of another party's breach and continues to perform under and ***accepts the benefits of the contract***, such continuing performance constitutes a waiver of the breach."  *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 675 (S.D.N.Y. 1991) (emphasis added).  Similarly, "it is generally the rule under New York Law that where a party ***receives good consideration for executing a release***, and ***accepts the benefits of the release*** before commencing suit to challenge it, that party is held to have ratified the release."  *2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital L.L.C.*, No. 00 Civ. 5773, 2001 WL 410074, at *12 (S.D.N.Y. Apr. 23, 2001).

---

[3] Count 13, for "recission or invalidity of provision 4 of Settlement, Reinstatement of EULA" (against Northland, Hedge and Larkin), should be dismissed because it fails to state a cause of action; it states only a purported remedy.

Here, Plaintiffs allege that on September 8, 2016 – just 4 months after they executed the Settlement Agreement – Plaintiffs discovered Northland's and Hedge's representations in the Settlement Agreement (that Northland and Hedge did not possess and were not using Plaintiffs' IP) were false.  Compl. ¶ 143.  Yet Plaintiffs continued to accept the benefits of the Settlement Agreement, including the installment payments totaling $90,000, which were not completed until June 15, 2017 – **9 months** after Plaintiffs discovered the alleged falsity of Defendants' representations.  *Id.*; Settlement Agreement (Ex. "1") § 2.  Plaintiffs then waited a full **3 years** to bring this action alleging, for the first time, that Defendants' representations in the Settlement Agreement were false when executed.  In these circumstances and accepting Plaintiffs' allegations as true, Plaintiffs waived their claim for breach of the Settlement Agreement.

For the same reasons, Plaintiffs' claims for fraudulent inducement, fraud and "recission or invalidity of provision 4 of Settlement Agreement" (*i.e.*, the termination of the prior agreements and broad mutual releases) (Counts 2, 3 and 13) should also be dismissed.  *See Helmsley-Spear, Inc. v. Westdeutsche Landesbank Girozentrale*, 692 F. Supp. 194, 204 (S.D.N.Y. 1988); *Capstone Enters. of Port Chester, Inc. v. County of Westchester*, 262 A.D.2d 343, 344 (2d Dep't 1999).

### B.    Plaintiffs Fail To Plead The Required Element Of Recoverable Damages

The claims for breach of the Settlement Agreement and fraudulent inducement (Counts 1 and 2) should be dismissed because they fail to plead a required element, namely recoverable damages.  Plaintiffs seek disgorgement of profits supposedly earned by Defendants as a result of their alleged use of Plaintiffs' IP and Software.  Compl. ¶¶ 207-09, 215-16.  Plaintiffs fail to allege their own loss as result of the supposed breach and fraudulent inducement.  Plaintiffs also improperly seek punitive damages "jointly and severally" against Defendants.  *Id*. ¶¶ 210, 217.

Disgorgement of profits and punitive damages are not available for breach of contract or fraudulent inducement.  *See Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 262-

65269 (S.D.N.Y. 2005); *Pot Luck, LLC v. Freeman*, No. 06 Civ. 10195, 2010 WL 908475, at *2

(S.D.N.Y. Mar. 8, 2010); *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 371 (2d Cir. 1988).[4]

### C.    Larkin Is Not a Party To The Settlement Agreement

Finally, the claim for breach of the Settlement Agreement (Count 1) must be dismissed as

against Larkin because he is not a party to it.  The parties are Timetrics, Kumaran, Northland and

Hedge.  *See* Settlement Agreement (Ex. "1").  Larkin cannot be sued in his individual capacity

because he signed the agreement on behalf of Northland and Hedge.  *See Ryan v. Volpone Stamp

Co.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) ("Where a defendant has executed a document in

his corporate capacity, he cannot be held personally liable.").

## II.    THE PURPORTED "AGREEMENT IN PRINCIPLE"
##         IS UNENFORCEABLE UNDER THE STATUTE OF FRAUDS

The Complaint fails to state a claim for breach of the so-called "Agreement in Principle"

(Count 10) because it is an impermissible oral agreement in violation of the Statute of Frauds.[5]

Under the Statute of Frauds, "[e]very agreement, promise or undertaking is void, unless it

or some note or memorandum thereof be in writing, and subscribed by the party to be charged

therewith, or by his lawful agent, if such agreement, promise or undertaking . . . [b]y its terms is

not to be performed within one year from the making thereof …." N.Y. G.O.L. § 5-701(a)(1).

Here, Plaintiffs expressly allege the AIP obligated Larkin to contribute capital to form

hedge funds with "no ability to terminate his capital contribution for ***two years***."  Compl. ¶ 141,

142 (emphasis added).  By definition, the AIP was incapable of being performed within one year.

It is therefore subject to the Statute of Frauds.  Plaintiffs admit that the "parties had not signed"

---

[4] Insofar as they seek disgorgement or punitive damages, Plaintiffs' claims for unjust enrichment (Count 7), promissory estoppel (Count 8), breach of the implied covenant of good faith and fair dealing (Count 9), breach of the AIP (Count 10) and breach of the Timetrics NDA (Count 11) should also be dismissed for the same reasons.

[5] Unlike the other claims, Count 10 does not specify the defendant(s) against whom it is asserted.  To the extent this claim is asserted against any defendant other than Larkin, the claim must be dismissed because Plaintiffs allege that Larkin is the *only* defendant who allegedly agreed to the AIP.  *See, e.g.*, Compl. ¶¶ 130, 141, 282.  Indeed, Plaintiffs allege that Larkin *hid* the AIP and all post-Settlement Agreement transactions from Larkin and Bramante.  *See, e.g.*, Compl. ¶¶ 156, 158, 163, 169, 180, 185.

the purported AIP.  Compl. ¶ 282.  As such, it is not "subscribed by the party to be charged."

Thus the AIP is "void" under the Statute of Frauds.  *See, e.g.*, *Marcus v. C.I.F. Inc.*, 26 A.D.2d

923, 924 (1st Dep't 1966) (holding that statute of frauds is an "absolute defense" to claim for

breach of an oral agreement to extend credit for two years); *Kastner v. Gover*, 19 A.D.2d 480,

482 (1st Dep't 1963) (affirming dismissal under Statute of Frauds because the alleged

"continuing obligation to make payments," "over the twenty-eight year term of the copyright,"

"makes this alleged agreement incapable of performance within one year").

Larkin's alleged obligation to contribute capital for a minimum of two years cannot be

severed from the purported AIP to "save" it from the Statute of Frauds.  "Under New York law,

an oral agreement that is void under the Statute of Frauds may not be severed to save an

otherwise enforceable agreement."  *Thiam v. Am. Talent Agency, Inc.*, No. 11 Civ. 1465, 2012

WL 1034901, at *4 (S.D.N.Y. Mar. 27, 2012).  Here, Plaintiffs allege the two-year requirement

was among the "material provisions" of the purported AIP, and it is inextricably intertwined with

the other alleged provisions.  Compl. ¶¶ 141-42.  As a matter of law, the two-year requirement

cannot be severed to save Plaintiffs' claim for breach of the AIP.  *Whitman Heffernan Rhein &*

*Co., Inc. v. Griffin Co.*, 163 A.D.2d 86, 87 (1st Dep't 1990) (the alleged contract was subject to

statute of frauds and not severable because the "extent to which these provisions are intertwined

renders them inappropriate for division without doing violence to the terms of the contract").

III.    **THE COMPLAINT FAILS TO STATE FRAUD CLAIMS**

All of Plaintiffs' fraud claims must be dismissed because they are/were (i) released

pursuant to the Settlement Agreement (Counts 2, 3, 13, 16); (ii) duplicative of the claim for

breach of the Settlement Agreement (Counts 2, 3 and 13); (iii) based on alleged

misrepresentations to comply with the terms of the AIP (Count 11); and/or (iv) fail to adequately

allege aiding and abetting fraud (Count 16).

A.  **All Fraud Claims That Pre-Date The Settlement Agreement Were Released**

All of the fraud claims based on alleged misrepresentations and omissions that occurred on or before the date of the Settlement Agreement, May 9, 2016 (Counts 2, 3, 13, 16) are barred by the parties' broad, mutual releases under the Settlement Agreement.[6]

"It is well established under New York law that a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties." *2 Broadway L.L.C.*, 2001 WL 410074, at *6 (citation omitted).  Here, the Settlement Agreement expressly provides that Plaintiffs "hereby release, discharge and acquit" Northland and Hedge – as well as their "employees, directors, officers, agents" – "from any and all claims" of "any kind or nature whatsoever, whether known *or unknown*, which the Parties may have, or claims they may have had, *or now has* or claims to have, from the beginning of the world to the date of this Agreement."  Settlement Agreement (Ex. 1) § 4 (emphasis added); *see also id.* § 9.

Plaintiffs' fraud claims in Counts 2, 3, 13, 16 allege that from "August 2014 until March 2015" – before the Settlement Agreement was executed on May 9, 2016 – Defendants allegedly "concealed by omission" that they had allegedly copied Plaintiffs' trade secrets and allegedly made certain misrepresentations.[7]  Compl. ¶¶ 212, 220-21, 305, 318.  Plaintiffs, however, expressly released all such claims pre-dating May 9, 2016.  Accordingly, Counts 2, 3, 13, 16 must be dismissed to the extent that they are based on alleged omissions or misrepresentations that occurred before May 9, 2016.

---

[6] Similarly, the Settlement Agreement bars all allegations regarding events that took place prior to May 9, 2016. *See, e.g.*, Compl. ¶¶ 67-111.

[7] Notably, the Complaint does not allege that Lothrop or Bramante made any fraudulent misrepresentations.

**B.      The Fraud Claims Related To The Settlement Agreement Are
          Duplicative Of The Claim For Breach Of The Settlement Agreement**

The claims alleging fraudulent inducement of the Settlement Agreement (Counts 2, 3 and

13) should be dismissed for the additional reason that they are duplicative of Plaintiffs' claim for

breach of the Settlement Agreement.

"To sustain a claim for fraudulently inducing a party to contract, the plaintiff must allege

a representation that is collateral to the contract, ***not simply a breach of a contractual warranty***

. . . ." *Ambac Assur. Corp. v. DLJ Mortg. Capital, Inc.*, No. 600070/2010, 2011 WL 1348375, at

\*9 (N.Y. Sup. Ct. N.Y. County, Apr. 7, 2011) (emphasis added).  Where, as here, a fraudulent

inducement claim is premised on the alleged falsity of an express representation in the agreement

itself, the fraudulent inducement claim must be dismissed as duplicative.  *See, e.g.*, *Project*

*Cricket Acquisition, Inc. v. FCP Investors VI, L.P.*, 159 A.D.3d 600, 600-01 (1st Dep't  2018)

("The fraudulent inducement claim against Johnson and Wong is dismissed as duplicative of the

breach of contract claims to the extent it is based on the ***falsity of the representations and***

***warranties made in the SPA***.") (emphasis added); *MBIA Ins. Corp. v. Credit Suisse Sec. (USA)*

*LLC*, 32 Misc.3d 758, 774 (N.Y. Sup. Ct. N.Y. County 2011) ("[T]o the extent that MBIA

alleges that it relied on ***contractual representations and warranties in the Insurance Agreement***

***and PSA***, the fraud claim duplicates the breach of contract claims and must be dismissed.")

(emphasis added); *Ambac Assur.*, 2011 WL 1348375, at \*9.

Here, Plaintiffs' fraudulent inducement claims relating to the Settlement Agreement

(Counts 2, 3, 13) are based entirely on the alleged falsity of the representations – expressly set

forth in the Settlement Agreement itself – that (i) neither Northland or Hedge "has in their

possession any Timetrics software;" (ii) they "agree not to use, duplicate, reverse engineer or

otherwise misappropriate any Timetrics Software;" and (iii) "they are not using and will not

utilize in the future any strategies learned from the trading recommendations from the Timetrics

Software."[8]   Settlement Agreement § 4.  Accordingly, Counts 2, 3, and 13 are duplicative of the claim for breach of the Settlement Agreement and must be dismissed.[9]

### C.   The Complaint Fails To State A Claim For Fraudulent Inducement Of The "Agreement In Principle"

Plaintiffs' claim that they were fraudulently induced into the purported Agreement in Principle (Count 11) should be dismissed because it is premised entirely on the allegation that Defendants misrepresented that they would comply with its terms.

"In a fraudulent inducement claim, the alleged misrepresentation should … involve a duty separate from or in addition to that imposed by the contract, and **not merely a misrepresented intent to perform**."  *Hawthorne Grp., LLC v. RRE Ventures*, 7 A.D.3d 320, 323-34 (1st Dep't 2004) (emphasis added, citation omitted); *see also Smart Egg Pictures, S.A. v. New Line Cinema Corp.*, 213 A.D.2d 302, 303 (1st Dep't 1995) ("A contract claim cannot be converted into a fraud claim merely by the expedient of alleging that a contracting party never intended to perform its promise.").

Here, the Complaint alleges that Plaintiffs were fraudulently induced into the Agreement in Principle by Larkin's allegedly false promises to comply with its terms.  Compl. ¶¶ 155-57, 290, 294.  Thus the fraudulent inducement claim is duplicative of the breach of the AIP claim.

Moreover, to the extent this claim is asserted against Lothrop and Bramante, it must be dismissed because the Complaint repeatedly alleges that Larkin concealed from them the existence of the AIP.  Compl. ¶¶ 156, 158, 163, 169, 180, 185.  Thus neither Lothrop nor Bramante could plausibly have the requisite scienter to fraudulently induce Plaintiffs into the AIP.  Accordingly, Count 11 should be dismissed.

---

[8] As discussed, none of the individual defendants are parties to the Settlement Agreement, and Lothrop and Bramante are not alleged to have made any misrepresentations in this (or any other) regard.

[9] The rescission claim asserted against Larkin personally (Count 13) should be dismissed for the additional reason that he is not a party to the Settlement Agreement.

**D.    The Complaint Fails To State A Claim For Aiding And
        Abetting Fraud Against Lothrop And Bramante**

The Complaint's final fraud-related claim (Count 16) – for aiding and abetting fraud

against Lothrop and Bramante (both of whom are alleged to have no involvement) – should be

dismissed for failure to state a claim.  "To establish liability for aiding and abetting fraud under

New York law, the plaintiffs must show (1) the existence of a fraud; (2) [the] defendant's

knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the

fraud's commission."  *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (quotations omitted).

First, as established above, the Complaint fails to state any underlying fraud claim.

Accordingly, the aiding and abetting claim should be dismissed on this ground alone.  *See*

*Habberstad v. Revere Secs.*, 183 A.D.3d 532, 532 (1st Dep't 2020) ("Since there is no

underlying fraud claim, the aiding and abetting claim must also be dismissed."); *Simon v.*

*FrancInvest, S.A.*, 178 A.D.3d 436, 437 (1st Dep't 2019) (same).

Second, the Complaint fails to adequately allege that Lothrop and Bramante had actual

knowledge of the alleged fraud.  "*[A]ctual knowledge* is required to impose liability on an aider

and abettor under New York law."  *Krys*, 749 F.3d at 127 (emphasis added; internal quotations

omitted).  To allege actual knowledge, "[t]he plaintiff must allege facts that give rise to a '***strong***

***inference***' of fraudulent intent," which can be alleged in two ways – (i) alleging "a motive for

committing fraud"; or (ii) "by identifying circumstances indicating conscious behavior by the

defendant, but the strength of circumstantial allegations must be correspondingly greater."

*Rosner v. Bank of China*, No. No. 06 CV 13562, 2008 WL 5416380, at *4 (S.D.N.Y. Dec. 18,

2008) (emphasis added, citations and internal quotation marks omitted).

Here, Plaintiffs the exact opposite – that Larkin and Bramante had _no_ knowledge of the

supposed fraud.  Indeed, the Complaint repeatedly alleges that after the Settlement Agreement,

Larkin **concealed** from Lothrop and Bramante that he had re-established business relations with

Plaintiffs.  Compl. ¶¶ 19, 22, 140, 156, 158, 169.  Thus, to the extent that the aiding and abetting

claim is based on alleged fraud that occurred after the Settlement Agreement, it must be dismissed.

Regarding any alleged fraud based on allegations that pre-date the Settlement Agreement, the Complaint fails to allege that Lothrop or Bramante had any *motive* for aiding and abetting any purported fraud.

Finally, while the Complaint alleges that Lothrop and Bramante participated in copying Plaintiffs' purported trade secrets, those allegations are wholly conclusory and do not specify Lothrop and Bramante's *actions*, if any.   With such vague and conclusory allegations, the Complaint fails to create a "strong inference" of actual knowledge.  *See* Iqbal, 556 U.S. at 678-79.  Accordingly, the aiding and abetting claim against Lothrop and Bramante (Count 16) should be dismissed.

## IV.   THE COMPLAINT FAILS TO STATE CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS

The Complaint also fails to state claims for misappropriation of trade secrets under federal law (Count 4) and New York law (Count 5).

### A.   Plaintiffs Released Any Claims For Misappropriation Of Trade Secrets

Under the Settlement Agreement, Plaintiffs expressly released all claims against Defendants – "whether known or unknown" – pre-dating May 9, 2016.  Settlement Agreement (Ex. "1") § 4.  That includes Plaintiffs' claims here for misappropriation of trade secrets based on events that took place prior to May 9, 2016.

The alleged "misappropriation" occurred from 2014 to 2015 when Defendants allegedly copied Plaintiffs' alleged trade secrets to create the "OBT Book."  Compl. ¶¶ 8-10, 86-91, 95, 112-13.  Accordingly, regardless of when Plaintiffs discovered this alleged misappropriation, they released such claims (Counts 4 and 5) under the Settlement Agreement.

**B.      The Alleged Acts of Misappropriation Pre-Date The Enactment Of the DTSA**

The claim for misappropriation of trade secrets under the *Defend Trade Secrets Act*, 18

U.S.C. § 1836, et seq. ("DTSA") (Count 4), must be dismissed because the alleged

misappropriation pre-date the enactment of the DTSA.  "[T]he DTSA applies only to acts of

misappropriation that occur on or after the date of the enactment of th[e] Act, May 11, 2016."

*Champions League, Inc. v. Woodard*, 224 F. Supp. 3d 317, 326 (S.D.N.Y. 2016) (emphasis

added; internal quotations omitted) (denying leave to amend because alleged act of

misappropriation occurred before enactment of DTSA); *Phoenix Ancient Art, S.A. v. J. Paul

Getty Trust*, No. 17 Civ. 241, 2018 WL 1605985, at *9 (S.D.N.Y. Mar. 29, 2018) (same).

Here, again, the alleged misappropriation occurred from 2014 to 2015, well before the

enactment of the DTSA on May 11, 2016.  Compl. ¶¶ 8-10, 86-91, 95, 112-13.  Accordingly,

Count 4 must be dismissed for this reason.

**C.      The Complaint Fails To Adequately Allege Any Trade Secrets**

Both the federal and state claims for misappropriation of trade secrets (Counts 4 and 5)

must be dismissed because the Complaint fails to sufficiently plead the existence of trade secrets.

A "trade secret" is defined as "any formula, pattern, device or compilation of information which

is used in one's business, and which gives the owner an opportunity to obtain an advantage over

competitors who do not know or use it."  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d

110, 117 (2d Cir. 2009) (citation and internal quotation marks omitted).  "To state a claim for

misappropriation of trade secrets, a plaintiff must plead facts with sufficient particularity to

provide defendants fair notice of what the claim is and the grounds upon which it rests. This

requires, at minimum, that the plaintiff generally ***identify the trade secrets*** at issue."  *Alexander

Interactive, Inc. v. Leisure Pro Ltd.*, No. 14-cv-2796, 2014 WL 4651942, at *5 (S.D.N.Y. Sept.

16, 2014) (emphasis added, internal quotation marks and citation omitted).  "[T]o survive a

motion to dismiss, a party alleging that it owns a trade secret must put forth ***specific allegations***

as to the information owned and its value." *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 447 (S.D.N.Y. 2019) (emphasis added).

For instance, in *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-cv-5540 (KBF), 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018), the complaint's allegations of trade secrets were not sufficiently particularized to survive a motion to dismiss where:

> DRE refers to its "clinical methods," "process to assess the quality of evidence and how to execute it," and "interpretation of data," but does not elucidate how those "methods," "processes," and "interpretations" function. The same goes for its general assertions regarding "analytics, analytics tools, and analytics programming" and "data configuration protocols and methods." Even DRE's most specific assertion – its "ontology process and tools, including DRE's unique and proprietary process for 'binding' collecting original terms in a publication and then binding the like terms and synonyms to that original term" – does not plausibly support the existence of a <u>true</u> trade secret.

*Id.* at \*6 (citation omitted).  The court found this description of trade secrets insufficient because the complaint "must do more than simply list ***general categories of information***" and "[g]eneral allegations regarding 'confidential information' and 'processes' simply do not give rise to a plausible trade secrets claim."  *Id.* (emphasis added); *see also Zirvi v. Flatley*, No. 18-CV-7003, 2020 WL 208820, at \*11 (S.D.N.Y. Jan. 14, 2020) (holding that complaint's description of alleged trade secrets merely "'resemble . . . broad categories of information' and are 'vague,' which, by itself, constitutes a reason to dismiss the claims").  Similarly, here, the Complaint strings together a long list of "buzz words" and "general categories of information" without coming close to describing the existence of a "true" trade secret.  Accordingly, Counts 4 and 5 must be dismissed for failure to adequately allege the existence of any trade secrets.

## V.     THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF <u>FIDUCIARY DUTY</u>

The claim for breach of fiduciary duty (Count 15) must be dismissed because Plaintiffs fail to plead the requisite element of the existence of a fiduciary duty, and it is improperly

pleaded as a direct (not derivative) claim.  Plaintiffs claim is based on an alleged fiduciary duty owed by Larkin as a minority member of company that is not a party here.

The Complaint alleges that pursuant to the AIP, Larkin agreed to become a minority member of Timetrics' "affiliate" Nefertiti and that "Larkin therefore owes Kumaran a fiduciary duty of good faith."  Compl. ¶ 312.  The Complaint further alleges that Larkin breached this purported fiduciary duty by allegedly refusing to sign "NDAs directly with the new entity" and "the hedge funds operating agreements," attempting to disclose unidentified "confidential information" and failing to "register" unidentified "funds."  Compl. ¶¶ 141, 313-15.  This claim fails for several reasons.

First, the only basis for Plaintiffs' allegation that Larkin is a "member" of Nefertiti is that he allegedly agreed to be one pursuant to the purported AIP.  Compl. ¶ 312.  However, as established *supra* Point II, the AIP (even if it were otherwise sufficiently pleaded) is void and unenforceable.  Accordingly, the Complaint fails to allege that Larkin is a member of Nefertiti.

Second, Plaintiffs' allege that Nefertiti is a "Delaware LLC" (Compl. ¶ 141), but under Delaware law, "minority members of the LLC ***do not owe fiduciary duties***."  *Related Companies, L.P. v. Ruthling*, No. 17-CV-4175, 2017 WL 6507759, at *23 (S.D.N.Y. Dec. 18, 2017) (emphasis added); *see also Kuroda v. SPJS Holdings, L.L.C.,* No. 4030-CC, 2010 WL 925853, at *7 (Del. Ch. Mar. 16, 2010) (holding that party "was neither a manager of SPJS Holdings nor a controlling member, and he thus ***has no fiduciary duties***") (emphasis added).[10] Here, the Complaint alleges that Kumaran is the "majority member," which would make Larkins a minority member who does owe fiduciary duties.

Third, Plaintiffs lack standing to assert this breach of fiduciary duty claim because (even if valid) it is a derivative claim that belongs to the entity.  Plaintiff cannot assert the claim

---

[10] Delaware law applies because the choice-of-law rules of New York dictate "that the law of the state of incorporation governs an allegation of breach of fiduciary duty owed to a corporation."  *Walton v. Morgan Stanley & Co., Inc.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980).

directly. *In re Stillwater Capital Partners Inc. Litig.*, 853 F. Supp. 2d 441, 461 (S.D.N.Y. 2012) (holding that fiduciary duty claim "is derivative and therefore plaintiffs lack standing to bring it directly"). Under Delaware law, whether a claim is direct or derivative is determined by "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Debussy LLC v. Deutsche Bank AG*, 242 F. App'x. 735 (2d Cir. 2007) (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)).

Here, Nefertiti is not a party to this action. The Complaint alleges that Larkin – in his capacity as an alleged member of Nefertiti – somehow owes a fiduciary duty to its majority member, Kumaran. However, the Complaint alleges that Larkin breached his fiduciary duty by refusing to sign "NDAs directly with **the new entit**y" and "the **hedge funds** operating agreements," attempting to disclose unidentified "confidential information" and failing to "register **funds**." Compl. ¶¶ 141, 313-15 (emphasis added). All of these alleged breaches are harms to Nefertiti (and not to Kumaran directly). Moreover, Nefertiti (and not Kumaran) would receive the benefit of any remedy. Accordingly, the breach of fiduciary duty claim must be dismissed as derivative because Kumaran lacks standing to assert it directly.

## VI.   THE REMAINDER OF THE CLAIMS ARE BARRED BY THE SETTLEMENT AGREEMENT OR DUPLICATIVE OF THE BREACH OF CONTRACT CLAIMS

The remainder of Plaintiffs' claims not otherwise addressed above are merely a repackaging of their breach of contract claims into various tort or quasi-contract claims or an attempt to revive claims that were released under the Settlement Agreement.

### A.   Claims Released By The Settlement Agreement

To the extent Plaintiffs' claims are based on allegations occurring before the Settlement Agreement was executed on May 9, 2016, Plaintiffs have released those claims. Settlement Agreement (Ex. 1) § 4.

Here, the claims for misappropriation of confidential information (Count 6), unjust enrichment (Count 7), breach of the covenant of good faith and fair dealing (Count 9), and breach of the Timetrics NDA (Count 12), and misappropriation of skills and labor (Count 14) – are all based on the allegation that in 2014 and 2015 – before the Settlement Agreement was executed – Defendants allegedly copied and otherwise misused Plaintiffs' trade secrets, confidential information and/or IP.[11]   Compl. ¶¶ 250-53, 259, 273, 276, 300.   Accordingly, Counts 6, 7, 9, and 12 were released under the Settlement Agreement and must be dismissed (for the same reasons as described above).

### B.   Claims Duplicative Of The Breach of Contract Claims

The following claims should be dismissed as duplicative of the breach of contract claims.

### 1.   Misappropriation of Confidential Information

Plaintiffs' claim for misappropriation of confidential information (Count 6) is duplicative of the breach of contract claims because it is based on the allegations that Defendants breached the confidentiality provisions under the Timetrics NDA and representations in the Settlement Agreement (Compl. ¶ 250).   *See Productivity Software Int'l, Inc. v. Healthcare Techs.*, No. 93 Civ 6949 (RPP), 1995 WL 437526, at *8 (S.D.N.Y. July 25, 1995) ("A charge of misappropriation of confidential information, as a tort claim, must spring from circumstances extraneous to, and not constituting elements of, the contract . . . .") (internal quotation marks omitted); *Cereus Prod. Dev., Inc. v. Boom LLC*, No. 14 CIV. 4292 PAC, 2015 WL 3540827, at *7 (S.D.N.Y. June 5, 2015) ("[M]isappropriation claims cannot lie where they are simply a restatement of a breach of contract claim."; *A Star Group, Inc. v. Manitoba Hydro*, No. 13 Civ. 4501(PAC), 2014 WL 2933155, at * 7 (S.D.N.Y. June 30, 2014) (dismissing claim for misappropriation of confidential information because it is "duplicative of **AStar's** breach of

---

[11] Plaintiffs' claim for breach of the Timetrics NDA asserted against the individual defendants must be dismissed for the additional reason that none of them is a party thereto.  While the employees and principals of Northland and Hedge may be bound by the Timetrics NDA in their ***corporate*** capacities, as non-parties to that agreement, they cannot be held personally liable for any alleged breaches thereto.

contract claims and do[es] not support an independent claim")[12] (emphasis added).  In any event,

as established *supra* Point IV.C, the Complaint fails to allege the existence of any "trade

secrets," and there is no claim for "[t]he misappropriation of information that does not qualify for

trade secret protection."   *Young Adult Inst. v. Corp. Source*, No. 654923/2016, 2018 WL

1745153, at *9 (N.Y. Sup. Ct. N.Y. County Apr. 11, 2018).   Accordingly, Count 6 should be

dismissed.

### 2.      Unjust Enrichment, Promissory Estoppel and the So-Called "Misappropriation of Skill and Labor" Claims

Plaintiffs' claims for unjust enrichment (Count 7), promissory estoppel (Count 8) and the

so-called "misappropriation of skill and labor" (whether construed as a claim for unfair

competition or quantum meruit) (Count 14) are duplicative of the claim for breach of the AIP.

They merely allege that Defendants failed to comply with their alleged promises to compensate

Plaintiffs in accordance with the AIP.  Compl. ¶¶ 259, 265-67, 308-09.  The Complaint fails to

allege any duty outside of the purported AIP.[13]   *See Brown v. Brown*, 12 A.D.3d 176, 176 (1st

Dep't 2004) (holding that "claims for promissory estoppel, unjust enrichment and fraud are

precluded by the fact that a simple breach of contract claim may not be considered a tort unless a

legal duty independent of the contract – *i.e.*, one arising out of circumstances extraneous to, and

not constituting elements of, the contract itself – has been violated"); *Hoeffner v. Orrick,*

---

[12] The plaintiff in *A Star Group, Inc. v. Manitoba Hydro*, No. 13 Civ. 4501(PAC), 2014 WL 2933155 (S.D.N.Y. June 30, 2014) is the *same* plaintiff as in this action – **Timetrics** – which is described as a "risk consulting and software firm founded by **Samantha Kumaran**, who is its principal and apparently only officer."  *Id.* at *1 n.1.  In *Manitoba Hydro*, Timetrics alleged (as it does in this action) that defendant Manitoba Hydro breached its confidentiality agreements when it, among other things, "reversed engineered [Timetrics'] 'proprietary information' and used [Timetrics'] methodologies to either compete with [Timetrics], or to build [copycat] computer software and metrics."  *Id.* at *3.  Similarly, just like it does in this action, Timetrics asserted claims against Manitoba Hydro for, among other things, breach of the covenant of good faith and fair dealing, misappropriation of trade secrets, unfair competition and misappropriation of confidential information.  The court dismissed the Complaint in its entirety *with prejudice* and found that Timetrics' claims for "breach of good faith and fair dealings (Count IV), misappropriation of trade secrets (Count V), misappropriation of confidential information and unfair competition (Count VI), and unjust enrichment (Count VII)" were all "***duplicative of Timetrics' breach of contract claims and do not support an independent claim***."  *Id.* at *7 (emphasis added).  As such, this action is not the first time Plaintiffs have asserted a laundry list of meritless claims that are duplicative of breach of contract claims.

[13] The unjust enrichment claim asserted against Lothrop (Count 7) should be dismissed for the additional reason that the Complaint fails to allege the Lothrop personally was unjustly enriched.

23

*Herrington & Sutcliffe LLP*, 61 A.D.3d 614, 615 (1st Dep't 2009) ("Plaintiff's promissory estoppel and unjust enrichment claims are duplicative of his breach of contract claim, since he alleges no duty owed him by defendants independent of the contract"); *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.,* No. 14-cv-6294, 2015 WL 5008762, at *6 (S.D.N.Y. Aug. 24, 2015) (dismissing unfair competition claim as duplicative of contract claim where the only basis for claim is contractual relationship).

Moreover, as established *supra* Point II, the Agreement in Principle is unenforceable under the Statute of Frauds, and it is well established that quasi-contractual claims such as unjust enrichment, promissory estoppel and quantum meruit cannot circumvent the statute of frauds. *See, e.g.*, *Bonsey v. Kates*, 2013 WL 4494678 (S.D.N.Y. Aug. 21, 2013) (unjust enrichment and quantum meruit); *Martin Greenfield Clothiers, Ltd. v. Brooks Brothers Group, Inc.,* 175 A.D.3d 636 (2d Dep't 2019) (promissory estoppel); *Am.-European Art Assocs., Inc. v. Trend Galleries, Inc.*, 227 A.D.2d 170 (1st Dep't 1996) (quantum meruit).

### 3.       Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count 9) should be dismissed because it is based on the same allegations as the breach of contract claims, making it redundant (Compl ¶¶ 272-73, 275-76).[14]  *See Computech Int'l, Inc. v. Compaq Computer Corp.*, No. 02 CIV. 2628 (RWS), 2002 WL 31398933, at *4 (S.D.N.Y. Oct. 24, 2002) ("Since a claim for breach of the implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim, it must be dismissed as a matter of law as redundant."); *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F.Supp.2d 283, 299 (S.D.N.Y. 2005) ("[A] breach of the implied covenant of good faith and fair

---

[14] The claim for breach of the implied covenant of good faith and fair dealing asserted against Larkin should be dismissed to the extent that Larkin is not a party to the Settlement Agreement and therefore he, personally, is not subject to any covenant implied therein.

dealing is redundant where the conduct allegedly violating the implied covenant is also the predicate for a claim of breach of an express provision of the underlying contract.").

## VII.   THE CLAIMS BELONGING TO OR ASSERTED BY TIMETRICS *PRO SE* MUST BE DISMISSED

It is well settled that "a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*."  *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983).   As of the filing of this motion, no attorney has appeared in this action on behalf of Timetrics.  Accordingly, all claims asserted on behalf of Timetrics must be dismissed.

Moreover, this rule against *pro se* corporations cannot be circumvented by alleging that the corporation "assigned" its claims to an individual.  *Id.* at 23; *see also Sanchez v. Walentin*, 526 F. App'x 49, 51 (2d Cir. 2013) ("Although Appellant's complaint alleged that a corporation . . . had assigned its claims to him, we have specifically barred the assignment of claims by a corporation to a layperson so as to permit the layperson to proceed *pro se*.").

Here, the Complaint alleges that pursuant to an "IP Assignment Agreement" dated September 29, 2016, Timetrics allegedly assigned to Kumaran "all intellectual property and trade secrets" and therefore "Plaintiff's IP, and Trade Secrets are solely and exclusively owned by Kumaran."  Compl. ¶¶ 62-63.  Under well settled Second Circuit law, this alleged "assignment" cannot circumvent the rule against corporations appearing *pro se*.  Accordingly, Kumaran, in her individual capacity, cannot assert claims relating to the alleged "misappropriation" of, or failure to pay compensation for, Timetrics' purported "trade secrets" and "confidential information" – specifically, misappropriation of trade secrets under federal and state law (Counts 4 and 5), misappropriation of confidential information (Count 6), unjust enrichment (Count 7), promissory estoppel (Count 8), breach of the Agreement in Principle and covenant of good faith and fair dealing implied therein (Counts 9 and 10), fraudulent inducement of the Agreement in Principle (Count 11), and breach of fiduciary duty (Count 13).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the First Amended Complaint be dismissed in its entirety with prejudice.

Dated: Uniondale, New York
      July 9, 2020

                         WESTERMAN BALL EDERER MILLER
                         ZUCKER & SHARFSTEIN, LLP

                         By:  */s/ Ellen Tobin*
                              Ellen Tobin, Esq.
                              Michael Kwon, Esq.
                              1201 RXR Plaza
                              Uniondale, New York 11566
                              (516) 622-9200
                              *Attorneys for Defendants*