**IN THE UNITED STATES DISTRICT COURT
SOUTHTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMANTHA SIVA KUMARAN,          ) | |
| Et al                                   ) | Case No: 1:19-CV-08345–MKV-DCF |
| *Plaintiffs,*          ) | Judge: Hon Mary Kay Vyskocil |
|                                         ) | Magistrate Judge: Debra C. Freeman |
| -against-                        ) | |
|                                         ) | **ORAL ARGUMENT REQUESTED** |
| NORTHLAND ENERGY TRADING, LLC ) | **ON SECTIONS 1, 2, 6, 7, 10, 12, 23** |
| Et al.,                        ) | **AND EXHIBIT A.** |
| *Defendants,*          ) | |

## <u>PLAINTIFFS REPLY MEMORANDUM TO MOTION FOR PROTECTIVE ORDER</u>

Pursuant to Local Rule 6.1.(b)(3) Plaintiff files its reply memorandum for a Motion for Protective Order which incorporates by reference a motion for Preliminary Injunction (ECF52). The primary issue before this Court is the good cause, competitive harm and direct substantial injury (ECF 54.1 Pg10-13,16-20, ECF 52.1). Defendants fail to counter argue any of these items, fail to address the competitive harm and economic injury and therefore fail to meet the burden of proof to show why disclosure is relevant. Plaintiff has also filed concurrently and referenced there in a Preliminary Injunction (ECF52.1) which itemizes in detail the standards met of trade secrets under New York Law and the irreparable harm of publication (ECF52.1 Pg.4-7, Pg.10-13) noting again that Defendants do not counter argue the six factors relevant for trade secrets nor the argument of direct competitive injury and irreparable harm. Substantial time and effort went to meet the standards of good cause that are required under FRCP 26(c)(7). Therefore Plaintiff respectfully requests the Court accept its version in **<u>Exhibit 1</u>** for entering a Protective Order that protects narrowly-defined commercially sensitive and trade secret information specifically including in the alternative the main **Sections  1 and 2, 2.1(ii) and 2.2.A1, B1, B2, C and Exhibit A**

A second important issue is *how* the Protected Material is distributed and the standards of care used (consistent with the Restatement of Torts). The purpose of entering a Protective Order, isn't to protect "agreements" as the Defendants argue (citing wholly irrelevant case law on "ghost writing") but to narrowly protect from disclosure technical information, trade secrets and commercially sensitive information that would cause competitive harm to competitors in accordance with FRCP 26(c.)(7).. Plaintiff has explained clearly the information either rises to the level of trade secrets under the Restatement of Torts or is commercially sensitive, why the information would cause harm, why it gives it a competitive advantage and how it could destroy its livelihood and business. If Defendants are permitted

to include this information in either Court filings (e.g exhibits, affidavits) or disclose it to third parties irreparable harm would be caused. Therefore Plaintiff also respectfully requests this Court adopt Plaintiff's version on *how* and *to whom* the materials are disseminated to, and the procedures governing that disclosure which Plaintiff has separated as key sections in **Section 6, Section 7, Section 10, Section 12** and **Section 23** which are also of primary consideration of irreparable harm. Plaintiff also requests oral arguments on those narrow select sections, should it facilitate resolution and to ease the Court.

### ***Defendants fail to proffer a Comparative Document as requested by the Court***

In a preliminary telephonic conference on June 18, 2020, Hon Judge Mary Kay Vysocil directed the parties to forward a comparative document that clearly delineates [Plaintiffs' Version] and [Defendants' Version], so as to more easily understand and compare the differences and to reduce burden on the Court. Plaintiff's had already incurred the time, money, cost and expense to put forward a good faith showing of good cause justifying its version, the initial motion remained. Defendants' instead willfully ignored that directive, and put forward a completely separate version - without a direct comparison of each party's position – thereby encumbering both Plaintiff and ultimately this Court from resolving the differences in positions. Plaintiff objects to this conduct as it is unnecessarily driving up costs, to what should have been a simple compromise document and showing of good cause. In compliance with Hon. Judge Vyskocils' instructions  Plaintiff has complied with this Honorable Court's directives and put forward a Comparative Documents that clearly itemizes [Plaintiff's Version] and [Defendant's Version] in Exhibits 2-10. Plaintiff would like to facilitate ease of resolution and requests oral argument on the primary sections so the Court is not further encumbered with understanding the issues, if this Court feels it more efficient to do so. Plaintiff has attached in Exhibit 1 the final  proposed Protective Order.

### ***Key Issues Before the Court***

(i)   *Defendant's Fail to Meet the Burden of Proof that Disclosure is Relevant and Necessary*

Defendant's arguments fail to meet the burden of proof that disclosure of Plaintiff's IP and other commercially sensitive information, such as license fees, costs and royalties, is relevant and necessary. Courts have determined that once the good cause showing is met, the burden shifts to the party seeking discovery to establish that disclosure of the confidential information is relevant and necessary. Defendants fail to offer one counter argument on the (i) economic injury to the Plaintiff if the information was disclosed to competitors (ii) the foreseeability of the injury and (iii) irreparable harm (ECF54.1 Pg16-20, ECF52.1)  Further they offer no dispute to the arguments of good cause and harm.  Defendants stay openly silent to this Court, that Plaintiff and Defendants ***are competitors***. Nor do they deny the competitive benefit Defendants

would gain by harming Plaintiff's business. The FAC ¶199-202 has made clear an intent to harm. In other words Defendants sole purpose in not cooperating with this motion, is to find a loophole to harm Plaintiff with a willful intention to publish and destroy Plaintiff's business. There is no hardship to Defendants' to protect this information now and let the case be heard on the merits at trial. Plaintiff has made the requisite showing of good cause and direct competitive injury and so the burden of proof lies with Defendants. Since Defendants' have failed to meet the burden of proof to show why disclosure is relevant or necessary (*See FourStar*) Plaintiff's narrowly tailored protected material in A1, B1, B2, and C1, for the good cause and economic injury reasons shown in express detail should be granted without modification.

### (ii) Defendants use of an SDNY Model Order doesn't address the issues

Defendants main argument seeks to persuade this Court to inflexibly adopt an SDNY Model Order – which by design – is not intended to protect trade secrets, because under New York law, trade secrets, and other commercially sensitive and financial information cannot be protected under a SDNY Model Order without a showing of good cause. (FRCP26(c)(1)(g) ECF54.1 Pg13-14). That is the reason that under 2(e) of that same model order (ECF54.2) – allows for litigants to seek protection for trade secrets and highly sensitive information upon showing of good cause and competitive harm. Defendants' response is not substantive in law and makes no attempt even superficially to rebut the deep and rigorous legal analysis provided in its motion of good cause or competitive harm, and therefore their opposition fails to meet the standards required. Defendants attempt to sweep away in Pg11-12 in one broad statement that Plaintiff did not show irreparable harm. This is factually incorrect. Plaintiff filed its PO on June 17, 2020 (ECF52.1) in advance of a conference a significant showing of the necessary legal arguments to show good cause and direct competitive injury. (ECF 54.1, Section A,B and D).

Therefore Plaintiff's motion is standard under what is contemplated by 2(e.) and the case law included (ECF 54.1). Plaintiff has in fact used a version that is largely adaptive of the SDNY Model Order and includes all its provisions (ECF54.1 Pg2.) Defendants however attempt to sway the Court to use an SDNY Model Order "as-is", does not address the key issues raised in this motion which specifically carve out for protections of trade secrets and other narrowly defined technical or sensitive information at issue in this action under a motion of FRCP 26(c)(7) and the associated changes to Sections 2, 6, 7, 10,12, 23. Defendant's robotic references to use a Model Order "as-is" is a willful attempt to deny Plaintiff the rights to the protections to its technical and sensitive information that is has shown good cause to redact including under FRCP5(e)(2)(1) Therefore Plaintiff respectfully requests the Court disregard the Defendants' rote

references to use a Model Order "as-is". There is no question that many of the provisions were adopted. The motion before this Court, is to meet the standards of protection for technology, IP, source code, software and trade secrets disputes, where Court's acknowledge the difference in cases where these issues are prevalent and one party would suffer significant economic injury (ECF 54.1 and FRCP26(c)(1)(g))

*(iii) Defendants Version Ignores the "Elephant in the Room"- Pre-Discovery Material*

More importantly as stated above, Defendant's version does not address the real issue – the elephant in the room – which are all the documents, emails and IM's and other commercially sensitive information of Plaintiffs' technical and commercially sensitive information ("***Pre-Discovery Materials***") already in their possession. This ***Pre-Discovery Material*** is the information that Defendants have overtly stated, they wish to include (by summaries, compilations) to make public in this action. (FAC¶ 199-202).

The foremost issue is an unworkable definition to of "***Discovery Material***" which does not address the "***Pre-Discovery Material***" which is already in their possession that is <u>not</u> exchanged in "Discovery" but they already have possession of. By excluding this from the definition, they provide a loophole which they intend to use to not just distribute to competitors, but to include by reference, exhibits, affidavits in upcoming motion practices, exhibits and affidavits. By overtly failing to include the definitions to include Pre-Discovery Material in the Protective Order, their proposed draft is unworkable and fails to achieve the purpose of filing a motion under FRCP5.(2).(e).(1). The real concern, absent drafting issues – is the protection of the information already in the Defendants' possession. Therefore, explained simply to the Court, the key issue in this motion for this Protective Order and associated Preliminary Injunction is protectability of these "***<u>Pre-Discovery Items</u>***" that already exist in their location in New Hampshire that contain and refer to all Plaintiffs intellectual property and could cause significant economic injury if divulged. This Protective Order can't have a loophole, that Defendants can run into Court - while we have a pending motion for a Preliminary Injunction and attach these items, or provide tell-all descriptions of the software and risk management strategies to competitors that are the "crux" of economic value to Plaintiff. Therefore Defendants' proposed draft is unworkable and a red-herring that willfully obfuscates protection on the ***Pre-Discovery Materials*** they have in their possession, so they can find a way to put the information into the public records and destroy Plaintiff's business – and further cause competitive injury to Plaintiff's information.  Defendants' version attempts to bypass this issues and consists of loop-holes in all of the edits that go to the heart of protection of the ***Pre-Discovery*** material and is universally unworkable. Defendant's version also manifestly fails to address the good cause and irreparable showing

for a motion under Rule 5(e)(2)(1) and materially fails to provide remotely adequate protections to the "**Pre-Discovery Materials**". The Court is also redirected that the FAC pled malice, where Larkin wants to use this Protective Order to use this Pre-Discovery information as "leverage" with intent to harm Plaintiff.[1]

The issue of **Pre-Discovery** information is the real issue that motivated this motion practice, and is consistent with Defendant's theme to disenfranchise and adopt as their own Plaintiffs property. This Protective Order can't serve as "Go-signal" to carte blanche bypass their obligations to protect trade secrets.  Plaintiff asserts that the real intention here is once it is in the public domain, causing irreparable harm, Defendants will  call it public information and acquire it. It also significantly will increase motion practice and burden on this Court not addressing now in this Motion how the "**Pre-Discovery Materials**" in their possession will be treated.

### *(iv) Defendants' version also fails as the financial information of competitor affiliates is not protected*

Plaintiff notes that another key theme of Defendants is to directly harm Plaintiff's affiliates and beneficiaries (*ECF*54.1 Pg29-32 ) that are direct competitors, by divulging those affiliates commercially sensitive financial information. Defendants do not deny they are Competitors of Plaintiffs (CTA) and (CTA/CPO). *Defendants do not even try to refuse that Plaintiffs affiliates are direct competitors.* Tellingly, Defendants motion is vacuous and devoid of legal argument to defend that protections are related to highly competitive information and used against direct competitors (See ECF54.1 Pg.16-21) Defendant's motion is also devoid of mention competitive harm. This intention is clear in their deletion of PO 23¶(g) and ¶12.(1) which are material protections from Competitors. Their failure to even acknowledge competitive harm, is  a material admission that not only do they not *deny the parties are Competitors*, but they willfully delete material provisions assisting the Court in definitions of Competitors' ¶23(g), and material procedures restricting disclosure to Competitors ¶12.(1), support the assertion of a willful desire to cause competitive harm, with malice, ill-will and bad faith.

 By wantonly excluding protections to Plaintiff's affiliates, Defendants' version again seeks to achieve in drafting loopholes a subliminal motivation to cause harm to make public sensitive financial information of its direct competitor Nefertiti entities, a competing CTA and CPO. It should be noted, that Defendants do not even brief the Court or argue against the express provisions they agreed to in the Settlement that the protections inure to the benefit of Kumaran's affiliates. Therefore Defendants' version fails as it does not make explicit it also applies to affiliates (as was intended in the SA) and directly

---

[1] *See* FAC199-202, *ECF*54.1 Section C.

competing commercially sensitive information. draft and oral agreements of equity and membership stakes of Nefertiti. Their proposed Protective Order is again a red-herring. What is at stake and what Defendants' real motivation is make public those Nefertiti's operating budgets that reveal equity stakes, and membership information, as well as ownership and control of Plaintiff's affiliates to harm Plaintiff. (PO C.2, *ECF*54.1 Pg.29-32). Plaintiff has also made showing of harm and the necessary harm to secure protection. Further, as extensively pled in the brief, Plaintiff has shown direct competitive interest an argument that Defendants are baldly vacant in countering. Defendants' proposed version therefore fails in the outset. In the alternative, Nefertiti entities should be granted leave to intervene to protect their information. However since the protection of affiliates and beneficiaries is expressly agreed to and contemplated by the parties (*ECF*54.1, *ECF*52.3) this should be unnecessary and would increase cost, burden and time to the proceeding, as direct affiliates interests are already intended beneficiaries under protection under the Settlement and NDA, and Kumaran shared the information about affiliates.

**(v) Another Significant Loophole - Non-Disclosed mean Non-Public** The other white-wash that Defendants intend to use, is to create ambiguities in the meaning and definitions upheld by standards in this Court for the meaning of non-disclosed in the Model Order. SDNY case law has made clear that previously non-disclosed means previously non-public (ECF54.1 Pg4, Pg9-10, NY v Activas) Plaintiff's clarification language in 2.1.(ii) is material. Defendants' have already stated they mis-interpret previously non-disclosed means previously non-public which again would create a loophole to implement a futile Protective Order for them to consider "***Pre-Discovery Material***" un-protected and make it public. This would cause irreparable harm as this ambiguity would then wrongfully release the commercially sensitive and technical information, ***already in Defendants' possession*** for them to claim it was already "disclosed" to them and therefore is now without protection (They also argue that this Protective Order relieves them of all their obligations under the Settlement and NDA.) This then would give them the authorization to publish. This ambiguity is material, and needs to be addressed. Defendants make no counterargument to this point. This provision under 2.1(i) is materials.

## B - Defendants' Case Law is Irrelevant to this Motion

Defendants rest their motion on a handful of cases, none of which are relevant to the good cause and economic injury at hand and fail to meet the burden of proof that to show why disclosing their competitors information is relevant and necessary (*See Id Four Star* ECF54.1 Pg.15). Plaintiff also has not responded to over 9 pages of discussion and unnecessary discussion of frivolous filings of emails

which are wholly irrelevant to the Court's analysis of the good cause and irreparable harm that are being presented.[2]

*(i)      Defendant's Case Law on Ghost Writing in Under Seal is Wholly Irrelevant*

Defendants primarily rest their legal argument on a single case law related to "ghost writing". (*ECF*58, Pg.11-12). The case law on "ghost writing" is wholly irrelevant to a case on protecting trading strategies and technical computer information. Defendants are vacant in their response in providing any *relevant* cases related to protecting software, computer source code, trading strategies and technical information. Unlike this "ghost writing" case Plaintiff has made a specific showing of particular harm, itemizing in great deal, how the trade secrets meet the standards governed by the six factor test under the Restatement of Torts (*ECF*52.1) and itemizing in detail the direct competitive and economic injury. This case has no parallel to technical computer software (with a showing of good cause and irreparable harm) and a person who hid that she was a ghost-writer. The facts in the "ghost writing" case also are not comparable as the Courts decision was because of a ***failure to make an on the record showing of competitive harm and economic injury***. Court stated " Defendants' specific failure to show specific instances of harm". These facts are overcome here, as Plaintiff ***did*** make extensive and specific showing of instances of harm. (ECF 54.1 *Pg.*13-21. ECF 52.1 *Pg.*10-13).

*(ii)     Defendants' use of Lugosch and In re NY Times do not Apply to the Motion at Hand*

The case law used by Defendants in both *Lugosch* and *New York times* are broadly due to the First Amendment and rights of public interest in cases related to newspapers – which in general largely relates to freedom of speech in public newspapers[3]  and is of no direct relevance to the matters before this Court, in the sealing of sensitive financial documents, technical computer reports and trading strategies that are routinely held trade secret by private litigants engaged in highly competitive businesses, such as trading and software licenses, and higher order values of direct competitor access. (*See* ECF54.1 Pg.18-19)  *See e.g. Fieldturf, Doskocil Cos.,*).As indicated in Plaintiff's memo  Courts have routinely distinguish those sorts of cases where competitive harm can accrue and also permitted restriction of commercially sensitive information. (ECF 54.1 Pg19) Once again Defendants do not contradict any of the Plaintiff's key facts on

---

[2] They were included to continue for what appears to be another chance of  ad-hominem attacks on Plaintiff's character for no reason- and an ongoing mis-categorization of one-sided dialog and one-sided hearsay. Therefore the disproportionate filings of extraneous, emails in Exh 3-14, over 100 pages are unnecessary and burdensome and fail to assist the Court in the relevant analysis of good cause and economic harm. The main pertinent fact is Defendants only provided a redline on June 16, 2020 after stalling for six months to cooperate.

[3] Notwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if "countervailing factors" in the common law framework or "higher values" in the First Amendment framework so demand. Since we have concluded that the more stringent First Amendment framework applies, continued sealing of the documents may be justified only with specific, on- record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim. *In re New York Times Co., 828 125 F.2d*

(a) the economic injury and  (b) the competitive and market place harm that makes a specific showing of harm that justifies protection under FRCP 26(c)(7). Therefore since Plaintiff has met its burden to show good cause and specific economic injury the burden of proof falls on Defendants (See Id *Fourstar*) citing case law that is irrelevant to the showing of competitive harm for technical software does not meet that burden, This Court should also note the inconsistencies in Defendant's own arguments for version of a PO. Defendants have attempted to strike reference to *Lugosh*  in  PO ¶13  and ¶6.1 thereby setting a double standard for their own mass designations. When it comes it the protections of their own information (*See* Def. PO ¶ (2(f), ¶2(g)) they fail to make one showing of good cause or competitive value and yet they attempt to create for themselves, no standards of protections and delete *Lugosh* so that they can make mass indiscriminate redactions. (*See* Exh1, ¶13)  Plaintiff therefore objects to Defendants additions which have no showing of good case at the end of ¶2(f) or ¶2(g).

**(iii)** **_Defendants use of Aioi Insurance Does not Apply to the Motion at Hand_**  Again, Defendants use of *Aioi*  is also not relevant to the protecting of trade secrets, or technical information, nor the commercially sensitive information, or related to license fees, non-public equity and ownership stakes of CTA/CPO, and royalties. Plaintiff is also not trying to protect generic terms in "agreements". This is also exemplified with the fact that Plaintiff already filed on the docket the NDA,  EULA and the Settlement.[4] Plaintiff is narrowly requesting the ownership and control stakes of non-public financial information, license fees, trading royalties, operating budgets and costs of developments to be redacted. (*See* PO ¶2.2 C1) Therefore Defendants' use incorrect terminology in this case law related to "agreements". Specifically Plaintiff seeks to protect commercially sensitive documents that would disclose control and equity information of its affiliates (a competitor CTA/CPO), the operating budgets, ownership and control, equity stakes, license fees, costs of development and trading royalty information.[5]

Defendants misconstrue Plaintiff's argument. Plaintiff is not arguing that "the mere existence of a confidentiality agreement" merits sealing. To the contrary, Plaintiff has made specific showings of harm on narrow pieces of information on both (a) the competitive injury that would be harmed (b) the nature of competitive value and how Plaintiff derives independent economic value from each of the information and (c) the irreparable harm (*See* ECF52.1, ECF 54.1). Further, Plaintiff, took the extra measures, to also plead how the information is covered under NY Law, Restatement of Torts, and in the case of trading

---

[4] See *ECF* 52.2, 52.3, 52.4).
[5] *See* ECF54.1, Pg28-32

information, how the information is not only protected under the CEA (*ECF*52.1 Pg.7-9). It also applied the necessary standards to justify the protection of non-public financial information, equity stakes, and ownership and control of the affiliates. (ECF54.1 Pg28-32) Since Plaintiff has made on the record specific showing, the burden of proof moves to Defendants. Defendants have failed to meet the burden to persuade this Court, why publishing Nefertiti's (its competitors) confidential financial information, ownership and control and equity information, would serve a higher value – other than serve their own willful intention to destroy and harm their competitor's business. Therefore Plaintiff's categories A1, B1, B2 and C1 should remain. *Aioi* in fact supports that once Plaintiff has made a showing of good cause and higher value interest to prevent direct competitive injury and irreparable harm protection is granted.[6].

**(iv ) Defendants' *reliance on Elsevier is misplaced.*** Defendants use of *Elsevier* also does not apply to the facts and factors pled by Plaintiff in this action. Plaintiff has fully recognized and met the New York standards and Restatement of Torts related to protections of trade secrets and has met each and every one of those six factors. The clear distinction between DRE case (Elsevier) and Plaintiff's motion, is that DRE's motion failed because the Court stated " *The **only factor** under New York law that DRE does address is the third—the extent of measures taken to safeguard the information."* (**Emphasis added**). Therefore Defendants include only one of the six factor test used by Second Circuit to determine the validity of the trade secrets. This is distinct from Plaintiff's motion, because Plaintiff has pled all six factors and furthermore Defendants do not raise any objection to the validity of those six factors. Plaintiff's motions carefully addresses (a) the extent to which the information is known outside of [the] business; (b) the extent to which it is known by employees and others involved in [the] business; (c) the extent to which it is known by those within and outside the business (d) the value of the information to [the business] and [its] competitors and (e.) the amount of effort or money expended by [the business] in developing the information; (f) the ease or difficulty with which the information could be properly acquired or duplicated by other. [7]

The FAC expressly states Larkin knew the value of the information, as he retained Plaintiff as he could not build it himself (FAC¶6-9, ECF54.1,Pg11-12 and ECF52.1Pg6-9) and he had reviewed dozens of other vendors and the program was unique FAC¶75. Therefore in direct contradiction of *Elsevier*, Plaintiff has expressly included definition of the "*contours*" of a trade secret: the information's value, the extent to which it is known by those within and outside the business, the amount of effort or money spent to develop

---

[6] See *ECF*54.1Pg16-19. ,*ECF*52.1,Pg.10-12 (See Caselaw Pg18-19 limiting disclosure due to competitive advantage.
[7] *See* FAC¶4-17, ¶42-58, ¶128, ¶229-232, ECF52.1Pg.6-7, Pg8-9 ECF54.1 Pg.16-19)

the information, and the ease with which the information could be acquired or developed by outsiders. The Court should take note, that Defendants' fail to make any rebuttal, and do not deny the Plaintiff met the comprehensive pleading *of all six factors*, (a)-(f). Defendants case law therefore does not meet the burden of proof now on them, to show why publication of its competitors' Plaintiff's trade secrets that give it substantial competitive advantage in the industry is relevant and necessary (*See* FourStar Id). Their response supports their ongoing theme to disenfranchise Plaintiff's valuable trade secrets items that have allowed them to be unjustly enriched millions of dollars. At the heart of this litigation, Plaintiff disclosed risk management, trading and hedging strategies which Defendants' admitted they could not develop themselves –  knew they were valuable – were borne from significant cost and investment -  have always been protected under NDA's and measures that gave Plaintiff an extremely competitive advantage – enough so that Larkin himself was willing to invest Two Years capital to launch a hedge fund because the programs and risk managements and trading techniques derived substantial value – and now seeks to destroy as revenge.

> **(v) Defendants' use of Wells Fargo Bank does not apply to the Motion at Hand** Defendants rely upon Wells Fargo underlined text to try to persuade this Court that the existence of a confidentiality agreement does not deny presumptive public access, again fails, as in this case Battenkill failed to show competitive harm.  These facts to not apply to Plaintiff's motion as Plaintiff did show good cause and direct competitive injury which Defendants failed to counter. (*See* ECF54.1  Further the Wells Fargo case, supports the need to show competitive harm by stating  _"*This submission provides no insight into, inter alia, how disclosure of the reinsurance agreement would cause competitive harm to Battenkill or its corporate affiliates, or how disclosure would prejudice Battenkill and its corporate affiliates in "pending litigation."(See Wells Fargo ID)* Plaintiff on the other hand did extensively plead competitive harm, direct injury especially in the CTA, CPO and hedge fund industry. Therefore Plaintiff's motion directly contradicts the arguments in Wells Fargo.  The Court should duly note Defendants' motion is devoid of one counter argument about competitive harm and is vacantly silent on the fact the parties are competitors. This case law fails in its entirety because Plaintiff did make the requisite very clear showing of "competitive harm".

*(vi) Defendants own last-minute additions to add new categories of their own commercially sensitive protections failed to meet their own standard of showing of good cause,*

Plaintiff objects that in Defendants proposed version, without any showing of good cause and irreparable injury, Defendants try to slip in one-sided language that "name and agreements with their broadly defined vendors, brokerages, FCM's, customers" are to held to the high standards of commercially sensitive. Respectfully the Court should not permit differential standards of inconsistencies of law where by (a)

Defendants argue in Wells Fargo that "*agreements*" are not confidential without good cause, and then they seek to make agreements themselves protected and (b) Defendants failed themselves to make a showing of good cause.[8] A1, B1, B2, C1 have met the requisite standards. Defendants 2(f) last sentence and 2(g) last sentence has not.

For the foregoing reasons Plaintiff's Motion and language for Protective Order should be granted.

Respectfully submitted,


//SSK//

Samantha Siva Kumaran

---

[8] Defendants again are Judicially Estopped from arguing Wells Fargo case law against something in Plaintiff's motion and then – quickly trying to slip past the Court – without justification their own agreements