UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SAMANTHA SIVA KUMARAN and THE A STAR
GROUP, INC. d/b/a TIMETRICS,

                                      Case No.  1:19-cv-08345-MKV-DCF

                Plaintiffs,

    -against-

NORTHLAND ENERGY TRADING, LLC,
HEDGE SOLUTIONS, INC., RICHARD M. LARKIN,
DANIEL LOTHROP and DOMENIC BRAMANTE,

                Defendants.
-------------------------------------------------------------------X

 

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
<u>SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP
Ellen Tobin, Esq.
Michael Kwon, Esq.
1201 RXR Plaza
Uniondale, New York 11556
Telephone:  (516) 622-9200
Facsimile:  (516) 622-9212
*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .......................................................................................................................... 3

   I.  PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE
      SETTLEMENT AGREEMENT ........................................................................ 3

     A.  Plaintiffs Waived All Claims Related To The Settlement Agreement ......................... 3

     B.  Plaintiffs Fail To Plead The Required Element Of Recoverable Damages ................. 6

     C.  Larkin Is Not a Party To The Settlement Agreement ................................................... 7

   II. THE PURPORTED "AGREEMENT IN PRINCIPLE" IS UNENFORCEABLE
      UNDER THE STATUTE OF FRAUDS ............................................................ 8

   III.THE COMPLAINT FAILS TO STATE FRAUD CLAIMS .............................................. 10

     A.  All Fraud Claims That Pre-Date The Settlement Agreement Were Released ........... 11

     B.  The Fraud Claims Related To The Settlement Agreement Are  Duplicative
        Of The Claim For Breach Of The Settlement Agreement ......................................... 13

     C.  The Complaint Fails To State A Claim For  Fraudulent Inducement Of The
        "Agreement In Principle" ............................................................................................ 14

     D.  The Complaint Fails To State A Claim For Aiding And  Abetting Fraud Against
        Lothrop And Bramante ................................................................................................ 15

   IV. THE COMPLAINT FAILS TO STATE CLAIMS FOR MISAPPROPRIATION OF
       TRADE SECRETS ........................................................................................... 16

     A.  The Complaint Does Not State a Claim Under the DTSA ......................................... 16

     B.  The Complaint Fails To Adequately Allege Any Trade Secrets ............................... 17

   V. THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY
      DUTY ............................................................................................................... 18

   VI. THE REMAINDER OF THE CLAIMS ARE BARRED BY THE SETTLEMENT
       AGREEMENT OR DUPLICATIVE OF THE BREACH OF CONTRACT CLAIMS ...... 20

     A.  Claims Released By The Settlement Agreement ....................................................... 20

     B.  Claims Duplicative Of The Breach of Contract Claims ............................................ 20

CONCLUSION ....................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

Cases

*A Star Group, Inc. v. Manitoba Hydro*,
   No. 13 Civ. 4501, 2014 WL 2933155 (S.D.N.Y. June 30, 2014) ............................................ 21

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*,
   361 F.Supp.2d 283 (S.D.N.Y. 2005) ...................................................................................... 22

*Brown v. Brown*,
   12 A.D.3d 176 (1st Dep't 2004) ............................................................................................. 21

*CAC Group, Inc. v. Maxim Group, LLC*,
   No. 12 Civ. 5901, 2012 WL 4857518 (S.D.N.Y. Oct. 10, 2012) ............................................. 4

*Capstone Enters. of Port Chester, Inc. v. County of Westchester*,
   262 A.D.2d 343 (2d Dep't 1999) .............................................................................................. 6

*Champions League, Inc. v. Woodard*,
   224 F. Supp. 3d 317 (S.D.N.Y. 2016) ................................................................................... 16

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*,
   4 N.Y.2d 403 (1958) .............................................................................................................. 14

*Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*,
   68 N.Y.2d 954 (1986) ............................................................................................................ 14

*DirecTV Latin America, LLC v. Park 610, LLC*,
   691 F. Supp. 2d 405 (S.D.N.Y. 2010) ................................................................................... 16

*Elsevier Inc. v. Doctor Evidence, LLC*,
   No. 17-cv-5540, 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ................................................ 18

*First Bank of Americas v. Motor Car Funding, Inc.*,
   257 A.D.2d 287, 690 N.Y.S.2d 17 (1st Dep't 1999) .............................................................. 13

*Goel v. Ramachandran*,
   111 A.D.3d 783 (2d Dep't 2013) ............................................................................................ 16

*Hawthorne Grp., LLC v. RRE Ventures*,
   7 A.D.3d 320 (1st Dep't 2004) ........................................................................................ 14, 15

*Helmsley-Spear, Inc. v. Westdeutsche Landesbank Girozentrale*,
   692 F. Supp. 194 (S.D.N.Y. 1988) .......................................................................................... 6

*Human Techs. Corp. v. Tenn. Ala. Mfg., Inc.*,
   147 A.D.3d 1347, 46 N.Y.S.3d 745 (4th Dep't 2017) .............................................................. 9

*iSentium, LLC v. Bloomberg Fin. L.P.*,
   No. 17-cv-7601, 2018 WL 6025864 (S.D.N.Y. Nov. 16, 2018)............................................18

*Kuroda v. SPJS Holdings, L.L.C.*,
   No. 4030-CC, 2010 WL 925853 (Del.Ch. Mar. 16, 2010)......................................................19

*MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*,
   32 Misc.3d 758, (N.Y. Sup. Ct. N.Y. County 2011)...............................................................13

*Miller v. Brunner*,
   164 A.D.3d 1228 (2d Dep't 2018) ..........................................................................................11

*Nat'l Westminster Bank, U.S.A. v. Ross*,
   130 B.R. 656 (S.D.N.Y. 1991)...................................................................................................5

*Paloger v. Cohen*,
   No. 600094-11, 2012 WL 5504014 (Sup. Ct. Nassau County Sept. 7, 2012)...........................9

*Parma Tile Mosaic & Marble Co., Inc., v. Estate of Short*,
   87 N.Y.2d 524 (1996) ................................................................................................................9

*Pot Luck, LLC v. Freeman*,
   No. 06 Civ. 10195, 2010 WL 908475 (S.D.N.Y. Mar. 8, 2010) ...............................................7

*Productivity Software Int'l, Inc. v. Healthcare Techs.*,
   No. 93 Civ 6949, 1995 WL 437526 (S.D.N.Y. July 25, 1995) ...............................................20

*Project Cricket Acquisition, Inc. v. FCP Investors VI, L.P.*,
   159 A.D.3d 600 (1st Dep't  2018) ...........................................................................................13

*Raghavendra v. Trustees of Columbia Univ.*,
   686 F. Supp. 2d 332 (S.D.N.Y. 2010).......................................................................................7

*Related Companies, L.P. v. Ruthling*,
   No. 17-CV-4175, 2017 WL 6507759 (S.D.N.Y. Dec. 18, 2017) ............................................19

*Rosenfeld v. Zerneck*,
   4 Misc.3d 193, 776 N.Y.S.2d 458 (Sup. Ct. Kings County 2004) ...........................................9

*Saul v. Vidokle*,
   151 A.D.3d 780 (2d Dep't 2017) ...............................................................................................9

*Savasta & Co. v. Interactive Planet Software Motion Inc.*,
   No. 0602425/2005, 2008 WL 2563485 (Sup. Ct. N.Y. County June 12, 2008).......................14

*Science Accessories Corp. v. Summagraphics Corp.*,
   425 A.2d 957 (Del 1980) ........................................................................................................19

*Smart Egg Pictures, S.A. v. New Line Cinema Corp.*,
  213 A.D.2d 302 (1st Dep't 1995) ................................................................... 15

*Stamina Products, Inc., v. Zintec USA, Inc.*,
  90 A.D.3d 1021 (2d Dep't 2011) .................................................................... 8

*Stern v. H. DiMarzo, Inc.*,
  77 A.D.3d 730 (2d Dep't 2010) ...................................................................... 8

*Thiam v. Am. Talent Agency, Inc.*,
  No. 11 Civ. 1465, 2012 WL 1034901 (S.D.N.Y. Mar. 27, 2012) ........................... 10

*Topps Co. v. Cadbury Stani S.A.I.C.*,
  380 F. Supp. 2d 250 (S.D.N.Y. 2005).............................................................. 7

*Truman v. Brown*,
  434 F. Supp. 3d 100 (S.D.N.Y. 2020)............................................................. 8

Defendants respectfully submit this memorandum of law in further support of their motion to dismiss the first amended complaint [ECF No. 26] (the "Complaint" or "Compl."),[1] in its entirety, with prejudice.

## PRELIMINARY STATEMENT

In response to Defendants' motion to dismiss, Plaintiffs filed three memorandums of law, totaling 120 pages. ECF Nos. 73, 74, 75.[2] But all those pages of briefing cannot avoid the inescapable conclusions that:

- All of Plaintiffs' claims pre-dating the Settlement Agreement were **released** (Counts 3, 4, 5, 6, 7, 12, 16). The clear and unambiguous release in the Settlement Agreement applied to all "*known or unknown*" claims "including *but not limited to*" claims relating to the Prior Action. Plaintiffs broadly released *all* claims *against* Defendants that pre-dated the Settlement Agreement, regardless of whether the claims were known at the time, or whether the claims were or could have been asserted in the Prior Action.

- Plaintiffs **waived** all claims relating to the validity of the Settlement Agreement (Counts 1, 2, 3, 13). The Complaint alleges that *after* discovering the alleged falsity of Northland's and Hedge's representations in the Settlement Agreement, Plaintiffs continued to accept payments under the Settlement Agreement *and then* voluntarily disclosed even more trade secrets under the alleged AIP. By sitting on their hands for three years while accepting payments under the Settlement Agreement, Plaintiffs waived any claim that the Settlement Agreement was breached or is somehow void.

- The purported AIP allegedly formed after the Settlement Agreement violates the statute of frauds (Counts 7, 8, 9, 10, 11). According to the allegations in the Complaint, the AIP could ***not*** have been performed within one year, was ***not*** fully memorialized, was ***not*** signed by the party charged, and does ***not*** set forth all of the essential terms. Accordingly, as a matter of law, all claims – contractual and quasi-contractual – relating to the AIP are barred by the Statute of Frauds.

---

[1] Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in Defendants' *Memorandum of Law in Support of Their Motion to Dismiss the First Amended Complaint* [ECF No. 65]. By letter motion dated September 17, 2020, Defendants requested leave to submit a reply brief that is more than 10 pages [ECF No. 76]. Defendants respectfully reiterate that request here.

[2] ECF No. 73, entitled "*Opposition to Motion to Dismiss Against Northland Energy Trading and Hedge Solutions*" is referred to here as "Corp. Def. Opp." ECF No. 74, entitled "*Opposition to Motion to Dismiss Against Richard M. Larkin,*" is referred to here as "Larkin Opp." ECF No. 75, entitled "*Opposition to Motion to Dismiss Against Daniel Lothrop and Domenic Bramante,*" is referred to here as "Lothrop/Bramante Opp." The arguments raised in each of the briefs do not always coincide with the respective Defendants named in the title. For instance, most of the Lothrop/Bramante Opp. addresses claims against Northland and Hedge.

When stripped of the claims that have been released, waived or that violate the statute of frauds, what is left is a handful of claims that are impermissibly duplicative of Plaintiffs' facially defective breach of contract claims.   As a matter of law, Plaintiffs cannot circumvent pleading requirements by repackaging the claims as duplicative quasi-contract or fraud claims.

Plaintiffs improperly use the Complaint to harass defendants Lothrop and Bramante – two employees who have virtually no connection to the dispute.  Lothrop and Bramante were not parties to *any* of the agreements with Plaintiffs.  All allegations against them relate to conduct on behalf of Northland and Hedge, for which they cannot be sued individually.  The Complaint does not allege that Lothrop or Bramante had knowledge of the events that took place after May 2016 (*i.e.*, related to the alleged AIP).  In fact, the Complaint alleges exactly the opposite – that all of the events that allegedly occurred after the Settlement Agreement were ***concealed*** from Lothrop and Bramante.  Given that all claims pre-dating the Settlement Agreement were released and/or waived, and all events post-dating the Settlement Agreement were ***concealed***, Plaintiffs cannot state viable claims against Lothrop and Bramante.   Accordingly, Plaintiffs' claims against Lothrop and Bramante are particularly unjust, harassing and vexatious and should be dismissed.

Similarly, defendant Larkin also was not a party to the Settlement Agreement or any of the earlier agreements (*i.e.*, the NDA, Engagement Letters, Terms and Conditions and EULA).[3] All pre-May 2016 allegations against Larkin likewise relate to conduct on behalf of Northland and Hedge, for which he cannot be sued individually.  All claims related to the pre-May 2016 Agreements were released and all claims related to the Settlement Agreement were waived (among other things).  All post-May 2016 claims against Larkin (and all Defendants) relate to the alleged AIP, which, as explained, is void under the statute of frauds.  Accordingly, Plaintiffs' claims as against Larkin should also be dismissed

---

[3] The Settlement Agreement and the earlier agreements (the NDA, Engagement Letters, Terms and Conditions and EULA) are attached to, explicitly referenced and/or incorporated in the Complaint (s*ee, e.g.*, ECF Nos. 29, 33-2, 33-3).  *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

Plaintiffs have a history of accusing former business partners of wrongdoing.  In 2013, The A Star Group (*i.e.*, Timetrics – one of the Plaintiffs here) – of which Kumaran is the principal – brought very similar claims against Manitoba Hydro, alleging it breached confidentiality agreements when it, among other things, "reversed engineered [Timetrics'] 'proprietary information' and used [Timetrics'] methodologies to either compete with [Timetrics], or to build [copycat] computer software and metrics."  *A Star Group, Inc. v. Manitoba Hydro*, No. 13 Civ. 4501, 2014 WL 2933155, at *3 (S.D.N.Y. June 30, 2014).  In that action, A Star asserted claims similar to the claims asserted here – for example, breach of contract and redundant claims for breach of the covenant of good faith and fair dealing, misappropriation of trade secrets, unfair competition and misappropriation of confidential information.  The court granted the motions to dismiss brought by Manitoba Hydro and the other defendants, and dismissed the complaint in its entirety with prejudice.  This action is not the first time Plaintiffs have gone after a former business partner based on baseless, facially defective, duplicative claims that, respectfully, cannot and should not survive a motion to dismiss.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE SETTLEMENT AGREEMENT

As set forth in Defendants' opening brief, Plaintiffs' claims related to the Settlement Agreement (Counts 1, 2, 3 and 13) should be dismissed because (i) Plaintiffs waived those claims; (ii) the Complaint improperly seeks punitive damages and disgorgement of profits; and (iii) Larkin, Bramante and Lothrop are not parties to the Settlement Agreement.  All of Plaintiffs' arguments in opposition fail.

### A.    Plaintiffs Waived All Claims Related To The Settlement Agreement

Plaintiffs waived all claims related to the Settlement Agreement (Counts 1, 2, 3 and 13). Accepting the allegations as true, Plaintiffs discovered the alleged falsity of the Settlement Agreement's representations (that Defendants did not have and would not use Plaintiffs' alleged

trade secrets) on **September 8, 2016**.[4]   Despite that discovery, Plaintiffs continued to accept payments from Northland and Hedge under the Settlement Agreement for the better part of the following year.  Plaintiffs then waited **three years** to bring this action.[5]

In opposition, Plaintiffs attempt to obviate their waiver by raising new allegations ***not found in their Complaint***.  For instance, Plaintiffs argue they did not waive the alleged breaches of the Settlement Agreement because when they discovered Defendants' alleged misappropriation of trade secrets, Plaintiffs were "not willing to let the breach slide without compensation;" Plaintiffs allegedly gave Defendants "notice" of the alleged breaches of the Settlement Agreement; and Plaintiffs allegedly "tried to negotiate terms that involved Larkin curing the breach" for "an exhaustive period of two years to enter into settlement negotiations, including with their counsel Bracewell between 2017-2019 attempting to resolve the issue without Court action."  Corp. Def. Opp. at 3-4, 7-8 (citing Compl. ¶¶ 144-55, 199-204).

However, ***these allegations are not asserted in the Complaint***.  Allegations raised for the first time in opposition papers do not suffice to "buttress" the Complaint.  *See CAC Group, Inc. v. Maxim Group, LLC*, No. 12 Civ. 5901, 2012 WL 4857518, at *1 n.1 (S.D.N.Y. Oct. 10, 2012) ("Plaintiff sets forth a host of additional details to buttress the Amended Complaint's allegations in his opposition to the motions to dismiss.  It is axiomatic, however, that ***a plaintiff cannot amend a complaint with new allegations contained in an opposition to a motion to dismiss***.") (emphasis added).  In any event, these new allegations are legally irrelevant to the issue of waiver and do not somehow counteract Plaintiffs' decision to continue to receive the payments under the Settlement Agreement, allegedly despite knowing about the breach.

---

[4] Despite that alleged discovery on September 8, 2016, Plaintiffs then proceeded to enter into the AIP and voluntarily disclosed even more trade secrets to Defendants.  *See* Compl. ¶¶ 141-54.

[5] Contrary to Plaintiffs' argument, the cited cases do ***not*** stand for the proposition that "a Plaintiff objects within a reasonable time" by bringing suit within the applicable statute of limitations."  Corp. Def. Opp. at 6, 9.  The cases Plaintiffs cite do not even address that issue.  Here, Plaintiffs waived claims relating to the Settlement Agreement *regardless* of whether the claims were brought within the applicable limitations period.

4

The allegations raised for the first time in the Opposition papers are ***exactly the opposite*** of the allegations in the Complaint.  For example, the Complaint alleges that Plaintiffs did let the alleged breach to "slide" by willingly disclosing ***more*** alleged trade secrets to Defendants based on the alleged implied, partially oral and unsigned "AIP."  *See* Compl. ¶¶ 142, 154.  Moreover, the Complaint does ***not*** allege any "settlement" negotiations for alleged breaches of the Settlement Agreement.  Rather, the Complaint alleges that Plaintiffs were negotiating with Larkin for him to "participate in hedge funds" pursuant to the alleged AIP, and that Plaintiffs overlooked the alleged breach of the Settlement Agreement in favor of pursing this new business opportunity with Larkin.  *See* Compl. ¶¶ 141-54.  <u>The Complaint does not allege "settlement" of an alleged breach of the Settlement Agreement.  It alleges the definition of an affirmative waiver.</u>

In opposition, Plaintiffs argue their acceptance of payments under the Settlement Agreement does not constitute a waiver because Defendants "voluntarily" made those payments.  Corp. Def. Opp. at 5.  This argument makes no sense.  Northland and Hedge made the payments pursuant to and in reliance the Settlement Agreement, which is a valid and binding contract.  As a matter of law, Plaintiffs' acceptance of those payments while knowing about the alleged breach constitutes a waiver.  See *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 675 (S.D.N.Y. 1991) ("It is well-established that where a party to an agreement has ***actual knowledge*** of another party's breach and continues to perform under and ***accepts the benefits of the contract***, such continuing performance constitutes a waiver of the breach.") (emphasis added).

Finally, Plaintiffs argue they did not waive their claim they were fraudulently induced into the Settlement Agreement insofar as they purportedly plead all the elements of a fraudulent inducement claim.  Corp. Def. Opp. at 11.  This argument misses the point.  Even if the Complaint sufficiently alleged the elements of a fraudulent inducement claim (it does not), it is irrelevant to the issue of waiver.  Because Plaintiffs ***admittedly*** waited three years after discovering the alleged fraud to bring the claims and, in the meantime, accepted the benefits of

the Settlement Agreement, Plaintiffs decidedly waived their fraudulent inducement claim.  *See Helmsley-Spear, Inc. v. Westdeutsche Landesbank Girozentrale*, 692 F. Supp. 194, 204 (S.D.N.Y. 1988) (Rejecting claim for fraudulent inducement of an agreement and rescission thereof because plaintiff's "continued performance under the Agreement ***after it knew the truth concerning the alleged misrepresentations*** disproves its claim of reliance and ***establishes its waiver*** with respect to this claim."); *Capstone Enters. of Port Chester, Inc. v. County of Westchester*, 262 A.D.2d 343, 344 (2d Dep't 1999) ("The plaintiff has waived its right to claim that the release was the product of economic duress by ***its inaction in asserting this claim***, and by ***retaining the benefits of the $390,194 payment*** for one year and nine months prior to commencing this action.") (emphasis added).

Similar to the plaintiffs in *Helmsley-Spear* and *Capstone*, here, even after learning that Defendants had allegedly "fraudulently induced" them to enter the Settlement Agreement (to resolve the Prior Action), Plaintiffs continued to accept payments under the Settlement Agreement and waited ***3 years*** to finally bring this action.  Accordingly, Plaintiffs waived their claim that they were fraudulently induced into the Settlement Agreement.

**B.**     **Plaintiffs Fail To Plead The Required Element Of Recoverable Damages**

As established in Defendants' opening papers, the claims for breach of the Settlement Agreement and fraudulent inducement (Counts 1 and 2) should be dismissed because Plaintiffs fail to plead recoverable damages, which is a critical element of both claims.  Disgorgement of profits and punitive damages are not recoverable for either cause of action.

In opposition, Plaintiffs argue that New York law allows recovery of "lost profits" for breach of contract.  Corp. Def. Opp. at 9.  However, the Complaint does not seek to recover *Plaintiffs'* lost profits.  Rather, the Complaint seeks to have *Defendants* disgorge their profits.  *See* Compl. ¶ 209 ("Plaintiff is entitled to disgorgement of any and all profits, improperly derived from Defendants' breach of contract…..").  Under New York law, disgorgement of

Defendants' profits is **not** recoverable for breach of contract.  *Pot Luck, LLC v. Freeman*, No. 06 Civ. 10195, 2010 WL 908475, at *2 (S.D.N.Y. Mar. 8, 2010); *Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 268 (S.D.N.Y. 2005).

Plaintiffs also argue that disgorgement of profits is available for *other* causes of action, such as misappropriation, violations of the Commodities Exchange Act and fraud.  Corp. Def. Opp. at 11.  However, that is irrelevant to whether Plaintiffs pleaded a breach of contract claim here.  That disgorgement may be a remedy for *other claims* does not erase the well-established rule that such remedy is not available for *breach of contract claims*.

The cases cited by Plaintiffs in support of their argument regarding punitive damages for alleged breaches of contract (Corp. Def. Opp. at 10), are easily distinguishable.  Unlike those cases, here none of the Complaint's allegations concerning Defendants' alleged breach of contract is so egregious or tortious as to warrant the imposition of punitive damages.

C.      **Larkin Is Not a Party To The Settlement Agreement**

As established in Defendants' opening papers, the claim for breach of the Settlement Agreement (Count 1) must be dismissed as against Larkin because he is not a party to it.  In opposition, Plaintiffs argue that Larkin can be liable because the Settlement Agreement includes a release of claims against "Larkin, individually and in all other capacities," which is purportedly "specific language that attempts to bind and reduce Larkin's liability and . . . he is therefore individually a party to the [Settlement Agreement]."  Larkin Opp. at 2.

To the contrary, the fact that the Settlement Agreement releases claims against Larkin does not magically make Larkin a party to it.  Releases routinely include individuals who are not parties to the agreement – that does not make them personally liable under those agreemnets.  *See Raghavendra v. Trustees of Columbia Univ.*, 686 F. Supp. 2d 332, 345 (S.D.N.Y. 2010) ("release of a person who is not party to a settlement agreement is not illegal . . . . Moreover,

such provisions in settlement agreements are enforceable where, as here, they are unambiguous"), *vacated on other grounds*, 434 F. App'x 31 (2d Cir. 2011).

In fact, all of the cases cited by Plaintiffs on this issue (Larkin Opp. at 2 n.1) **support** the conclusion that Larkin cannot be personally liable for breach of the Settlement Agreement.  *See, e.g., Stamina Products, Inc., v. Zintec USA, Inc.*, 90 A.D.3d 1021, 1022, (2d Dep't 2011) (holding non-party not liable because "he signed the subject agreement . . . solely in his capacity as a corporate officer, and did not purport to bind himself individually under the agreement"); *Stern v. H. DiMarzo, Inc.*, 77 A.D.3d 730, 731 (2d Dep't 2010) ("Officers, directors or employees of a corporation do not become liable to one who has contracted with the corporation for inducing the corporation to breach its contract merely because they have made decisions and taken actions that resulted in the corporation's breaching its contract").

## II.  THE PURPORTED "AGREEMENT IN PRINCIPLE" IS UNENFORCEABLE UNDER THE STATUTE OF FRAUDS

As established in Defendants' opening papers, the Complaint fails to state a claim for breach of the so-called "AIP" (Count 10) because it is an alleged agreement that cannot be performed within one year and it violates the statute of frauds.

In opposition, Plaintiffs argue the AIP satisfies the statute of frauds insofar as it was allegedly "memorialized in emails."  Larkin Opp. at 4.  However, that is a belated allegation that was not made in the Complaint.  It is also irrelevant because the Complaint admits "the parties had not **signed** a finished agreement" (Compl. ¶ 282), and the Complaint does not allege these emails had Larkin's electronic signature or even his name typed out.  As such, it is not "subscribed by the party to be charged," as required by N.Y. G.O.L. § 5-701(a)(1).  *See Truman v. Brown*, 434 F. Supp. 3d 100, 114 (S.D.N.Y. 2020) ("the Complaint here, and its exhibits, do not reveal any document that is signed by Brown at all, as required by the Statute of Frauds. N.Y. Gen. Oblig. § 5-701(a).  Instead, Brown's unsigned emails state only: 'Sent from my iPhone.'");

*Parma Tile Mosaic & Marble Co., Inc., v. Estate of Short*, 87 N.Y.2d 524, 526 (1996); *Paloger v. Cohen*, No. 600094-11, 2012 WL 5504014, at *4 (Sup. Ct. Nassau County Sept. 7, 2012).

Additionally, the Complaint fails to allege that these emails memorialized all of the essential terms of the AIP.  In fact, the Complaint refers to "oral and implied agreements" (Compl. ¶ 312).  Plaintiffs' opposition alleges that "the AIP in part constituted an oral draft" (Larkin Opp. at 5), and that "Plaintiffs have established that the AIP is an oral, draft and implied agreement" (*id.* at 12).  From the Complaint, however, it is impossible to glean which portions of the AIP were "oral," let alone its essential terms.

For instance, the Complaint alleges that the AIP required a two-year capital contribution by Larkin, but fails to allege in what amount.  Compl. ¶¶ 141-42.  The Complaint further alleges that the AIP required "salary bonuses at target milestones" (Compl. ¶ 142), but does not allege the amount of the salary or bonus or what the "target milestones" were.  The Complaint alleges that under the AIP, Plaintiffs would "disclose further IP and trade secrets" without specifying what IP or trade secrets.  *Id.*  Additionally, the Complaint alleges that the AIP required "License Fees and Royalties" and "revenue sharing" – but does not specify in what amounts.  *Id.*

This mishmash of unspecified terms fails to set forth the alleged AIP's essential terms. *See Rosenfeld v. Zerneck*, 4 Misc.3d 193, 196, 776 N.Y.S.2d 458, 461 (Sup. Ct. Kings County 2004) (holding that email did not satisfy Statute of Frauds because "it failed to lay out all of the essential terms of the agreement"); *Saul v. Vidokle*, 151 A.D.3d 780, 781 (2d Dep't 2017); *Human Techs. Corp. v. Tenn. Ala. Mfg., Inc.*, 147 A.D.3d 1347, 1348, 46 N.Y.S.3d 745, 746 (4th Dep't 2017); *Paloger v. Cohen*, No. 600094-11, 2012 WL 5504014, at *4 (Sup. Ct. Nassau County Sept. 7, 2012) ("e-mails relied upon by Defendant in support of his contention that the parties had reached a settlement agreement is barred by the statute of frauds" because the "e-mails did not contain an essential term").  Accordingly, Plaintiffs' claim for breach of the alleged AIP must be dismiss as violative of the statute of frauds.

Plaintiffs also argue that the statute of frauds does not apply because the AIP is purportedly an agreement "governed by [the] Delaware LLC Act" which purportedly "is not subject to the statute of frauds." Larkin Opp. at 5. However, the Complaint *repeatedly* alleges the AIP is subject to New York law, was formed in New York and performed in New York. *See, e.g.*, Compl. ¶¶ 1, 25, 165, 278-87 & n.23-26.

Additionally, Plaintiffs argue that a portion of the alleged AIP is severable from the statute of frauds insofar as some *unidentified* services and *unspecified* licensee fees and royalties could be completed within one year. Larkin Opp. at 9. That argument must be rejected because an alleged agreement that "is void under the Statute of Frauds may not be severed to save an otherwise enforceable agreement." *Thiam v. Am. Talent Agency, Inc.*, No. 11 Civ. 1465, 2012 WL 1034901, at *4 (S.D.N.Y. Mar. 27, 2012).

Finally, Plaintiffs claim that Defendants somehow "admitted" the existence of the AIP in pleadings filed with this Court under ECF Nos. 32, 33 and 40.3. That is incorrect. In ECF No. 32 (letter to the Court requesting a pre-motion to dismiss conference), Defendants expressly *deny* the existence of the AIP, stating: "Breach of the 'agreement in principle' (No. 10) fails to plead the existence of an implied-in-fact contract." ECF No. 33 is a letter *from Plaintiffs* and thus does not contain admissions by Defendants. And ECF No. 40.3 is an email from Larkin to Kumaran (attached as an exhibit to Plaintiff's motion to strike) expressing a willingness to "chat" about "NAM stuff" – there is nothing remotely admitting to the existence of the AIP.[6]

## III.   THE COMPLAINT FAILS TO STATE FRAUD CLAIMS

As established in Defendants' opening papers, all of Plaintiffs' fraud claims must be dismissed because they (i) were released pursuant to the Settlement Agreement (Counts 2, 3, 13, 16); (ii) are duplicative of the claim for breach of the Settlement Agreement (Counts 2, 3 and

---

[6] All claims related to the AIP also should be dismissed as against Lothrop and Bramante because there are **no** allegations against them in that regard. Indeed, Plaintiffs repeatedly allege the AIP and all related discussions were concealed from them.

13); (iii) are based on alleged misrepresentations to comply with the terms of the AIP (Count 11); and/or (iv) fail to adequately allege aiding and abetting fraud (Count 16).

### A.   All Fraud Claims That Pre-Date The Settlement Agreement Were Released

The Settlement Agreement expressly and unambiguously releases all claims – whether "known or unknown" – pre-dating May 9, 2016, including Plaintiffs' fraud claims:

> The Parties hereby release, discharge and acquit each of the other Parties, and their … employees, directors, officers, agents, attorneys, and their successors and assigns (including Richard Larkin, individually and in all other capacities), and each of them, of and from any and all claims, causes of action, claims for benefits, refunds of premiums, demands, losses, judgments, sums of money, rights, damages, liabilities, obligations, expenses, fees, and costs of any kind or nature whatsoever, *whether known or unknown*, which the Parties may have, or claims they may have had, or now has or claims to have, from the beginning of the world to the date of this Agreement, including *but not limited to* any claims, express or implied, that *the Parties asserted or could have asserted in the Lawsuit*.

Settlement Agreement [ECF No. 64-1] § 4 (emphasis added).

In opposition, Plaintiffs attempt to limit the scope of the release by ignoring its plain terms. First, Plaintiffs argue that the phrase "whether known or unknown" only modifies the phrase "costs of any kind or nature whatsoever" and does not release "unknown" claims, including the fraud claims they allegedly discovered after executing the Settlement Agreement. Corp. Def. Opp. at 25-26. Relatedly, Plaintiffs argue that they did not release "future" claims and therefore claims that were *discovered* (and not known until) *after* the Settlement Agreement were not released, even if the claim accrued before the release. Lothrop/Bramante Opp. at 6.

These arguments fail because the term "costs of any kind or nature whatsoever" is at the end of a list of *types of claims*. The fact that the modifier "whether known or unknown" comes immediately after this list makes clear it modified the *entire* list, not just the last item of the list. Indeed, releases routinely include "unknown" claims. *See Miller v. Brunner*, 164 A.D.3d 1228, 1231 (2d Dep't 2018) ("A valid general release will apply not only to known claims, but 'may

11

encompass unknown claims, ***including unknown fraud claims***, if the parties so intend and the agreement is fairly and knowingly made'") (emphasis added).  Accordingly, even if Plaintiffs had not known of the alleged fraud when they signed the Settlement Agreement, Plaintiffs nevertheless released the alleged fraud claims pre-dating the Settlement Agreement.

Next, Plaintiffs argue that the release is limited to claims relating to the Prior Action. Lothrop/Bramante Opp. at 7.   But again, the plain language of the release does not support that argument.  In fact, the release is expressly "***not*** limited to" claims that "the Parties asserted or could have asserted in the [Prior Action]."  Plaintiffs' argument that the fraud claims are not related to the Prior Action is also specious because the Settlement Agreement itself provided that "Northland and Hedge represent and warrant that neither of them has in their possession any Timetrics software that was involved in this Lawsuit" – the alleged falsity of which is the crux of Plaintiffs' fraud claims in this action.

Plaintiffs also argue the alleged breaches of the Timetrics NDA that pre-date the Settlement Agreement were not released because the Timetrics NDA "is a completely and legally independent contract that was expressly not released or terminated during the Settlement Agreement - it was not contemplated or the intent of Plaintiffs to include release or breaches of the NDA."  Corp. Def. Opp. at 14.  But this argument, again, misconstrues the plain language of the release.  The fact that the NDA was not expressly terminated by the Settlement Agreement[7] does not cancel the broad Release in the Settlement Agreement.  That is, under the broad and unambiguous terms of the release, any claim for breach of the NDA that pre-dates the Settlement Agreement was expressly released (regardless of whether the NDA was terminated).

Finally, Plaintiffs argue their fraud claims could not have been released by the Settlement Agreement because they "did not intend to agree to a[n] IP acquisition as part of the purchase

---

[7] The Settlement Agreement (§ 4) expressly terminated the "Engagement Contracts" – defined as the Engagement Letters, the Terms and Conditions and the EULA (*i.e.*, all of the pre-May 2016 agreements except the NDA).

price" and that "the settlement price was narrowly [sic] to the non-payment of $75,000 invoices." Corp. Def. Opp. at 27.  Defendants, however, are not claiming that they "purchased" Plaintiffs' IP pursuant to the Settlement Agreement.  More to the point, Plaintiffs agreed to the broad release in exchange for (among other things) the $75,000 settlement payment.  The fact that the Settlement Agreement did not contemplate a purported "IP acquisition" does not change that Plaintiffs expressly released fraud claims that pre-date the Settlement Agreement.

### B.     The Fraud Claims Related To The Settlement Agreement Are Duplicative Of The Claim For Breach Of The Settlement Agreement

As established in Defendants' opening papers, Plaintiffs' claims alleging fraudulent inducement of the Settlement Agreement (Counts 2, 3 and 13) are duplicative of Plaintiffs' claim for breach thereof because the fraud claims allege that the representations and warranties in the Settlement Agreement itself were false.

Under binding First Department authority, such claims must be dismissed as duplicative of a breach of contract claim.  *See, e.g.*, *Project Cricket Acquisition, Inc. v. FCP Investors VI, L.P.*, 159 A.D.3d 600, 600-01 (1st Dep't 2018) ("The fraudulent inducement claim against Johnson and Wong is dismissed as duplicative of the breach of contract claims to the extent it is based on the ***falsity of the representations and warranties made in the SPA***.") (emphasis added); *accord MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, 32 Misc.3d 758, 774 (N.Y. Sup. Ct. N.Y. County 2011) ("[T]o the extent that MBIA alleges that it relied on ***contractual representations and warranties in the Insurance Agreement and PSA***, the fraud claim duplicates the breach of contract claims and must be dismissed.") (emphasis added).

In the face of this binding authority, Plaintiffs argue that under *First Bank of Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287 (1st Dep't 1999), their fraudulent inducement claim survives because the alleged misrepresentations in the Settlement Agreement relate to "then present facts."  Lothrop/Bramante Opp. at 10.  However, the First Department has made clear that when a fraud claim is based on an allegedly false contractual representation or warranty, it is

13

not enough that the alleged misrepresentation is of "then present facts;" rather, the alleged misrepresentations must also be "*extraneous* to the contract and involve a duty *separate from* or *in addition to* that imposed by the contract." *Hawthorne Group, LLC v. RRE Ventures*, 7 A.D.3d 320, 323-24 (1st Dep't 2004) (emphasis added). *See also Savasta & Co. v. Interactive Planet Software Motion Inc.*, No. 0602425/2005, 2008 WL 2563485, at *1 (Sup. Ct. N.Y. County June 12, 2008) (distinguishing *First Bank* and holding that where alleged "misrepresentations of . . . present fact . . . fall exactly within the warranties," they "are not extraneous to the Agreement" and cannot support a fraud claim.).

Here, there are no alleged misrepresentations "extraneous" to Settlement Agreement and no duties "separate from" it. The Complaint alleges that the representations and warranties *in the Settlement Agreement itself* fraudulently induced Plaintiffs. As a matter of law, the fraud claim is impermissibly duplicative and must be dismissed.

### C.   The Complaint Fails To State A Claim For Fraudulent Inducement Of The "Agreement In Principle"

As established in Defendants' opening papers, Plaintiffs' claim that they were fraudulently induced into the purported AIP (Count 11) should be dismissed because it is premised entirely on the allegation that Defendants never intended to comply with its terms.

In opposition, Plaintiffs rely on *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954 (1986), and *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403 (1958), for the proposition that a promise made with no intent to perform is actionable as fraud. Lothrop/Bramante Opp. at 13. Both of those cases are distinguishable because the allegedly false statements were not memorialized in contracts, making them "collateral or extraneous" to a contract.

By contrast, here, the Complaint alleges that Plaintiffs were fraudulently induced by the very promises *in the AIP*, which Defendants allegedly had no intent to perform. Under binding First Department authority, **a contractual promise made without an intent to perform cannot**

14

**form the basis for a fraud claim.**  *See Hawthorne Grp., LLC*, 7 A.D.3d at 323-34 ; *Smart Egg Pictures, S.A. v. New Line Cinema Corp.*, 213 A.D.2d 302, 303 (1st Dep't 1995) ("A contract claim cannot be converted into a fraud claim merely by the expedient of alleging that a contracting party never intended to perform its promise.").   Accordingly, Count 11 of the Complaint must be dismissed.

### D.   The Complaint Fails To State A Claim For Aiding And Abetting Fraud Against Lothrop And Bramante

As established in Defendants' opening papers, the Complaint fails to state a claim for aiding and abetting fraud against Lothrop and Bramante (Count 16) because the Complaint fails to allege (i) an underlying fraud, and (ii) non-conclusory acts of substantial assistance sufficient to create a "strong inference" of actual knowledge.

In opposition, Plaintiffs argue that paragraphs 90 through 118 of the Complaint sufficiently allege that Lothrop and Bramante had knowledge and provided substantial assistance for the alleged fraud.  Lothrop/Bramante Opp. at 19.  To the contrary, those paragraphs, at best, allege that Lothrop and Bramante assisted in *breaches of contract* – not of any fraudulent activity.  *See* Compl. ¶ 91 ("Larkin[] and Lothrop materially breached the EULA [and] Timetrics NDA"); ¶ 92 ("Acting in concert with Larkin, Lothrop also materially breached the agreements to create a 'shadow system'"); ¶104 ("These willful and malicious actions were orchestrated by Lothrop, Bramante and Larkin, in express breach of Eng Ltr 5").  Moreover, the Complaint repeatedly alleges that Larkin *concealed* from Lothrop and Bramante that he had re-established business relations with Plaintiffs after the Settlement Agreement, thereby negating any inference that Lothrop or Bramante had actual knowledge of Larkin's alleged post-May 2016 fraud. Compl. ¶¶ 19, 22, 140, 156, 158, 169.  The allegations that Lothrop and Bramante "aided and abetted" an alleged fraud are wholly conclusory and do not satisfy the particularity requirement of Rule 9(b).  "Aiding and abetting fraud is not made . . . with conclusory allegations that the aider and abettor had actual knowledge of such fraud." *Goel v. Ramachandran*, 111 A.D.3d 783,

792 (2d Dep't 2013) (internal quotation marks omitted); *DirecTV Latin America, LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 436 (S.D.N.Y. 2010) (holding that conclusory allegations of participation in a scheme to defraud were insufficient to plead aiding and abetting fraud with particularity). [8]

## IV.   THE COMPLAINT FAILS TO STATE CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS

### A.   The Complaint Does Not State a Claim Under the DTSA

As established in Defendants' opening papers, the claim for misappropriation of trade secrets under the DTSA must be dismissed because the alleged misappropriation occurred from 2014 to 2015 – before the enactment of the DTSA.  *See Champions League, Inc. v. Woodard*, 224 F. Supp. 3d 317, 326 (S.D.N.Y. 2016) ("[T]he DTSA applies only to acts of misappropriation that occur on or after the date of the enactment of th[e] Act, May 11, 2016.").

In opposition, Plaintiffs appear to concede this point, but argue that Defendants' alleged "use" of trade secrets after the enactment of the DTSA is actionable.  Northland/Hedge Opp. at 17.  However, the Complaint still fails to state a claim under the DTSA for Defendants' alleged "use" of Plaintiffs' alleged trade secrets after the enactment of the DTSA.

Under the DTSA, "disclosure or *use* of a trade secret of another" is actionable where defendant "used improper means to acquire knowledge of the trade secret."  18 U.S.C. § 1839(5)(B) (emphasis added). [9]   Here, however, for the alleged trade secrets "used" after enactment of the DTSA, the Complaint alleges that Plaintiffs *voluntarily* disclosed their trade

---

[8] To the extent the claim for aiding and abetting fraud applies to pre-Settlement Agreement conduct by Lothrop and Bramante, the claim should also be dismissed for all of the reasons discussed above.  Among other things, Plaintiffs broadly released all pre-May 2016 claims including against *employees* of Northland and Hedge (*i.e.*, Lothrop and Bramante).  Plaintiffs also waived this claim for all of the reasons discussed above.

[9] Under the DTSA, the unauthorized use of a trade secret is also actionable where the user of the alleged trade secret "(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was-- (I) derived from or through a person who had used improper means to acquire the trade secret; (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or (iii) before a material change of the position of the person, knew or had reason to know that--(I) the trade secret was a trade secret; and (II) knowledge of the trade secret had been acquired by accident or mistake." The Complaint does not allege that Defendants' "use" falls under this section.

secrets to Defendants pursuant to the AIP.  As such, the Complaint does **not** allege that Defendants acquired the alleged trade secrets through any "improper means."  *See* Compl. ¶ 172 ("On or around dates including September 27th, September 28th, October 2nd, October 6th, 2016, October 8th, 2016 . . . , *Plaintiffs emailed numerous trade secrets . . . to Larkin, reliant on the promises and commitment in the Agreement in Principle*") (emphasis added); Compl. ¶ 193 ("Emails during this period of time, evidence *Plaintiffs providing proprietary risk mitigations techniques in excess of several hundred thousand dollars of benefit to Northland and Hedge*, reliant on Larkin's promises and representations of payments and licenses") (emphasis added); Compl. ¶ 233 ("During the period September 2016-March 2017 *Kumaran disclosed trade secret and confidential information to Larkin . . . .*") (emphasis added).

### B.     The Complaint Fails To Adequately Allege Any Trade Secrets

As established in Defendants' opening papers, both the federal and state claims for misappropriation of trade secrets (Counts 4 and 5) must be dismissed because the Complaint does not adequately identify the alleged "trade secrets."  Instead, the Complaint uses conclusory and generalized "buzz words" and broad categories of information, which are insufficient to plead the claims.

In opposition, Plaintiffs argue that courts in **other cases** found the alleged trade secrets to "give fair notice to Defendants of the claim."  Corp. Def. Opp. at 20-21 (citing cases).  However, other than *iSentium*, all of the cases cited by Plaintiffs are inapposite because they do not address the sufficiency of allegations to *plead* a trade secret for purposes of a motion to dismiss.  Rather, the cases are decisions after trial or based on documentary evidence submitted at a hearing.

While *iSentium* was decided on a motion to dismiss, the complaint in that case adequately identified a trade secret by alleging **how** it functioned.  *iSentium, LLC v. Bloomberg Fin. L.P.*, No. 17-cv-7601, 2018 WL 6025864, at *3 (S.D.N.Y. Nov. 16, 2018) (decribing the trade secret as "transformation methodologies for graphing and displaying" information, in order to "assist[ ]

17

its users in digesting massive amounts of analyzed data in a way familiar to the finance industry" and "for social sentiment data display and related documents and information"); *cf. Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-cv-5540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (holding that complaint failed to allege trade secret because it "does not elucidate ***how*** those 'methods,' 'processes,' and 'interpretations' function") (emphasis added).

Here, by contrast, the Complaint vaguely alleges that the "Timetrics Software" "refers to a proprietary suite of various enterprise risk management and analytic technologies, the underlying quantitative processes and analytical engines, methods, techniques, for hedging and managing risk, and mathematical algorithms." Compl. ¶ 48. The Complaint also generally describes the alleged trade secrets as "hedging strategies," "know-how," "methods," "processes" and "proprietary information." *Id.* ¶ 50. From these extremely broad and generalized terms, it is impossible to glean what Plaintiffs' alleged trade secrets do, let alone how they function. Unlike the cases cited by Plaintiffs, the Complaint in this action does not give Defendants or the Court notice of what was allegedly "misappropriated." Accordingly, Counts 4 and 5 must be dismissed for failure to adequately allege the existence of trade secrets.

## V.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY

As established in Defendants' opening papers, Plaintiffs' claim for breach of fiduciary duty against Larkin (Count 15) must be dismissed because Plaintiffs fail to plead that Larkin owes a fiduciary duty to either Plaintiff. The claim is also improperly pleaded as a direct (not derivative) claim on behalf of a hedge fund that is not a party to this action.

In opposition, Plaintiffs argue that Larkin owes a fiduciary duty insofar as he is a purported "manager or director" of a Delaware LLC. But the Complaint does ***not*** allege that Larkin is a "manager" or "director" of Kumaran's purported hedge fund. Rather, the Complaint alleges that Larkin is a minority "member" and that "LLC cases have generally, treated LLC ***members*** as owing each other the traditional fiduciary duties that directors owe a corporation."

18

Compl. ¶ 312 (emphasis added).  Under Delaware law, as an alleged minority member, Larkin does not owe a fiduciary duty.  *Related Companies, L.P. v. Ruthling*, No. 17-CV-4175, 2017 WL 6507759, at *23 (S.D.N.Y. Dec. 18, 2017) ("minority members of the LLC ***do not owe fiduciary duties***")  (emphasis added); *Kuroda v. SPJS Holdings, L.L.C.,* No. 4030-CC, 2010 WL 925853, at *7 (Del. Ch. Mar. 16, 2010) (holding that party "was neither a manager of SPJS Holdings nor a controlling member, and he thus ***has no fiduciary duties***") (emphasis added).

Plaintiffs further argue that the Complaint alleges that Larkin "undertook roles as a principal" and therefore owes fiduciary duties.  While, under agency law, an agent may owe fiduciary duties to its principal (*see Science Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957 (Del 1980)), the same is not true for the converse – that a purported "principal" of an LLC owes a fiduciary duty to its members.  That appears to be what Plaintiffs argue here. However, Plaintiffs do not cite to case law in support of their position, and none appears to exist. Accordingly, the Complaint's passing reference to Larkin being an alleged "principal" of an unidentified hedge fund is insufficient to impose a fiduciary duty on him.

In their opposition, Plaintiffs also argue that Larkin owes fiduciary duties under the EULA.  Larkin Opp. at 14.  That argument should be rejected because the allegations regarding the fiduciary duty claim are based solely on Larkin's alleged minority membership in an unidentified hedge fund at some point in or after September 2016.  There are no allegations regarding the EULA.  In any event, the EULA, dated February 23, 2013, was expressly terminated by the May 2016 Settlement Agreement.  It plainly cannot serve as a basis for Plaintiffs' breach of fiduciary duty claim.

Finally, any claim for breach of fiduciary duty against Larkin is necessarily a derivative claim belonging to the subject company (*i.e.*, Kumaran's purported but unidentified hedge fund). Defendants raised this in the moving papers, but Plaintiffs did not address it in their Opposition.

Given that Kumaran's purported hedge funds is not a party to this action and that the Complaint only alleges harm to that fund, Plaintiffs lack standing to assert this derivative claim.

## VI. THE REMAINDER OF THE CLAIMS ARE BARRED BY THE SETTLEMENT AGREEMENT OR DUPLICATIVE OF THE BREACH OF CONTRACT CLAIMS

As established in Defendants' opening papers, the remainder of Plaintiffs' claims not specifically addressed above were either released under the Settlement Agreement or are redundant of the breach of contract claims.

### A. Claims Released By The Settlement Agreement

To the extent Plaintiffs' claims for misappropriation of confidential information (Count 6), unjust enrichment (Count 7), breach of the covenant of good faith and fair dealing (Count 9), breach of the Timetrics NDA (Count 12) and misappropriation of skills and labor (Count 14), are based on allegations of events that occurred before the Settlement Agreement was executed on May 9, 2016, Plaintiffs have released those claims. Settlement Agreement § 4. As established *supra* Point III.A, Plaintiffs' arguments regarding the inapplicability of the release all fail.

### B. Claims Duplicative Of The Breach of Contract Claims

As established in Defendants' opening papers, Plaintiffs' claims for misappropriation of confidential information (Count 6), unjust enrichment (Count 7), promissory estoppel (Count 8) and "misappropriation of skill and labor" (whether construed as a claim for unfair competition or quantum meruit) (Count 14), should be dismissed because they are entirely duplicative of the breach of contract claims. Among other reasons, these claims are based on the allegations that Defendants breached the confidentiality provisions under the Timetrics NDA, representations in the Settlement Agreement, and/or the AIP – which are the exact same allegations on which the breach of contract claims are based. *See Productivity Software Int'l, Inc. v. Healthcare Techs.*, No. 93 Civ 6949, 1995 WL 437526, at *8 (S.D.N.Y. July 25, 1995) ("A charge of misappropriation of confidential information, as a tort claim, must spring from circumstances ***extraneous to, and not constituting elements of, the contract*** . . . .") (internal quotation marks

20

omitted; emphasis added); *Brown v. Brown*, 12 A.D.3d 176, 176 (1st Dep't 2004) (holding that "claims for promissory estoppel, unjust enrichment and fraud are precluded by the fact that a simple breach of contract claim may not be considered a tort unless ***a legal duty independent of the contract*** – *i.e.*, one arising out of circumstances extraneous to, and not constituting elements of, the contract itself – has been violated") (emphasis added).

In opposition, Plaintiffs argue in entirely conclusory fashion that Defendants somehow owed Plaintiffs a duty "extraneous to" or "independent of" the contracts.  Larkin Opp. at 19-21. Plaintiffs, however, fail to identify the source of or any details regarding the alleged extra-contractual duties (because none exist).  In any event, no such duty is alleged in the Complaint.

The court's decision in *A Star Group, Inc. v. Manitoba Hydro*, No. 13 Civ. 4501, 2014 WL 2933155 (S.D.N.Y. June 30, 2014), ***is directly on point***.  That case was brought by the exact same plaintiff – The A Star Group, Inc. (*i.e.*, Timetrics), of which Kumaran is the principal – claiming the defendant Manitoba Hydro (a company A Star previously did business with) "reverse engineered [Timetrics'] 'proprietary information' and used [Timetrics'] methodologies to either compete with [Timetrics], or to build [copycat] computer software and metrics." *A Star Group, Inc.*, 2014 WL 2933155, *3.  In opposition to the motion to dismiss, A Star argued that defendant owed extra-contractual duties sufficient to state claims for misappropriation of confidential information, unfair competition, and unjust enrichment.  The court, however, dismissed those claims as duplicative of their breach of contract claim because "the Complaint relies exclusively on the confidentiality provisions contained in the contracts, not on a separate business relationship." *Id.*, at * 7.  Similarly, here, other than the alleged contracts between the parties, the Complaint fails to allege any "separate business relationship" that would impose a

duty on Defendants that is "extraneous to" or "independent of" the alleged agreements. Accordingly, Counts 6-8 and 14 should be dismissed as duplicative.[10]

Finally, Defendants' opening papers established that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count 9) is redundant because it is based on the same allegations as the breach of contract claims.  In opposition, Plaintiffs argue that they state an independent claim for breach of the implied covenant insofar as the Complaint alleges "bad faith," "malice, ill-will and intention to harm."  Larkin Opp. at 15-16.  Plaintiffs, however, cannot use conclusory buzzwords like "bad faith" and "malice" to state an independent claim for breach of the implied covenant.  The conduct alleged is the *same* for both claims, making the implied covenant claim redundant as a matter of law.  *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 299 (S.D.N.Y. 2005) ("[A] breach of the implied covenant of good faith and fair dealing is redundant *where the conduct allegedly violating the implied covenant is also the predicate for a claim of breach of an express provision of the underlying contract*.") (emphasis added).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the First Amended Complaint be dismissed in its entirety with prejudice.

Dated: Uniondale, New York
　　　 September 29, 2020

WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP

By:  */s/ Ellen Tobin*　　　　　　
　　　 Ellen Tobin, Esq.
　　　 Michael Kwon, Esq.
　　　 1201 RXR Plaza
　　　 Uniondale, New York 11566
　　　 (516) 622-9200
　　　 *Attorneys for Defendants*

---

[10] Additionally, as established in Defendants' opening papers, Plaintiffs' claims for unjust enrichment, promissory estoppel and quantum meruit are barred by the statute of frauds because the purported AIP is an alleged agreement not performable within one year, not fully memorialized, and not signed by the party charged.

22