**WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP**

Ellen Tobin
Extension 343
etobin@westermanllp.com

November 19, 2020

**By ECF**
The Honorable Debra Freeman
United States District Court for the
 Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    <u>Kumaran, et al. v. Northland Energy Trading, LLC</u>, No. 19 Civ. 8345-MKV-DCF

Dear Magistrate Judge Freeman:

      I represent defendants Northland Energy Trading, LLC ("Northland"), Hedge Solutions, Inc. ("Hedge"), Richard Larkin, Daniel Lothrop and Domenic Bramante (collectively, "Defendants") in the above-referenced action. I write in response to the letter filed by plaintiff Samantha Kumaran ("Plaintiff") dated October 30, 2020 (the "Letter") [ECF No. 90], to correct certain misstatements and request that the application for the issuance of subpoenas be denied. I also write regarding Plaintiff's contention that certain claims in the amended complaint were "assigned to her," in light of the rule that such claims cannot be prosecuted *pro se* in federal court.

**<u>Plaintiff's Letter Contains Several Erroneous Statements</u>**

      The section in Plaintiff's Letter entitled "Background of Prior Scheduling Obstruction" contains several erroneous statements. It also selectively and misleadingly quotes from correspondence and mischaracterizes or omits key documents and events. <u>Defendants have never "obstructed" discovery and have, at all times, acted in accordance with their obligations under the Federal Rules and applicable law.</u>

      On July 1, 2020, Plaintiff emailed to the undersigned three "notices of deposition" addressed to **non-parties**.[1] By letter dated July 2, 2020, Defendants set forth, in detail, the reasons the notices were improper and in violation of federal law – including, among other reasons, because discovery from non-parties can be sought only by subpoenas that are properly issued and served pursuant to FRCP 45. A copy the July 2, 2020 letter is attached as Exhibit "A." At the time, Plaintiff did not schedule a meet and confer, serve subpoenas or take other action with respect to the "notices." Several months later, in October 2020, when the parties were discussing the proposed schedule for discovery, Plaintiff included dates for "[p]roduction of [non-parties] Adam Larkin/Katie Larkin 30(b)(6) to schedule Depositions" and to depose non-party Avril

---

[1] These "notices" sought to collect documents from and depose non-parties Adam Larkin, Katie Cronin (née Larkin) and Avril Chopra. Copies of these "notices" are attached to Plaintiff's Letter (*see* ECF No. 90-1, 90-4, 90-5). The "notices" were sent from Plaintiff Ms. Kumaran only – and not from the corporate plaintiff, The A Star Group, Inc. d/b/a Timetrics ("Timetrics"). The same appears to be true for all discovery from Plaintiff to date.

Hon. Debra Freeman
November 19, 2020
Page 2

Chopra. In emails in October 2020 and during a telephonic meet and confer on October 28, 2020, Defendants reiterated the points set forth in the July 2, 2020 letter, including that emailing purported "non-party notices" to opposing counsel does not constitute service of subpoenas pursuant to FRCP 45. By way of example, a copy of emails exchanged between Plaintiff and the undersigned on October 21, and October 22, 2020 is attached as Exhibit "B." Now, in the Letter, Plaintiff improperly characterizes Defendants' July 2, 2020 letter as an "attempt[] to obstruct discovery" and the late October 2020 emails as refusals to cooperate. Both are patently untrue.

Plaintiff also served "notices of deposition" on defendants Lothrop and Bramante on June 11, and June 30, 2020, respectively. Both notices included an "Exhibit A" requesting documents from the individual defendants.[2] In emails and by letter dated July 14, 2020, Defendants notified Plaintiff that, among other things, the document requests failed to provide sufficient time to respond. Defendants also explained that counsel and the individuals were not available for depositions on the dates set forth in the notices,[3] and suggested a call to discuss the timing of discovery, since parties typically serve discovery demands and exchange documents before scheduling depositions, so that they can fully review the other side's documents before starting depositions. Defendants emphasized that, while this is not a requirement, it would be a more efficient way to proceed in this case for many reasons. Copies of the undersigned's June 22, 2020 email and July 14, 2020 letter to Plaintiff on these subjects are attached as Exhibit "C." Defendants have reiterated this reasonable position several times since.

On July 13 and July 31, 2020, Defendants served responses and objections to the Lothrop and Bramante document requests, respectively. Those responses set forth, in detail, the reasons each document request is improper and the reasons defendants are not producing the requested documents. Copies of the Lothrop and Bramante responses are attached as Exhibit "D." At the time, Plaintiff did not schedule a meet and confer or file a motion to compel. Plaintiff recently stated that she intends to send "notices of deficiency" regarding those responses, but never did so. *See, e.g.*, Exhibit "B." In the Letter, Plaintiff now improperly characterizes Defendants' responses as "boiler plate objections" and an attempt to obstruct discovery. Again, that is patently untrue.[4]

On August 12, 2020 (the agreed-upon date for the exchange of discovery requests), Defendants served on Plaintiffs a first request for the production of documents and a first set of interrogatories.

On August 13, 2020, Plaintiff served **14** separate sets of discovery requests:

---

[2] Plaintiff's June 2020 notices to Lothrop and Bramante are attached to the Letter (*see* ECF No. 90-6, 90-7). As discussed below, the document requests in the June 2020 notices (to which Defendants previously responded) are nearly identical to the document requests in the proposed subpoenas to Lothrop and Bramante that are attached to the Letter.

[3] In any event, the deposition dates set forth in the June 2020 notices to Lothrop and Bramante were before the 30-day deadline for producing documents.

[4] This is intended to be only a brief discussion of some of the misstatements in Plaintiff's Letter. It is not an exhaustive list.

Hon. Debra Freeman
November 19, 2020
Page 3

(1) document requests to Northland and Hedge; (2) interrogatories to Northland; (3) interrogatories to Hedge; (4) requests to admit to Northland; (5) requests to admit to Hedge; (6) document requests to Richard Larkin; (7) interrogatories to Richard Larkin; (8) requests to admit to Richard Larkin; (9) document requests to Dan Lothrop; (10) interrogatories to Dan Lothrop; (11) requests to admit to Dan Lothrop; (12) document requests to Domenic Bramante; (13) interrogatories to Domenic Bramante; and (14) requests to admit to Domenic Bramante.  **_In total, Plaintiffs served 393 separate discovery requests – and almost all of the requests contain numerous sub-parts_**.[5]

The parties agreed to exchange written responses and responsive documents on November 6, 2020.[6]  On November 2, 2020, Plaintiff moved for reconsideration of the Protective Order dated October 19, 2020, and filed a related memorandum of law on November 16, 2020 [ECF Nos. 91, 92].  Between November 3, and November 5, 2020, Defendants repeatedly asked Plaintiff to confirm that she still intended to produce discovery responses on November 6, 2020.  Plaintiff evaded the question and then, late in the day on November 5, 2020, Plaintiff indicated that she would not be producing discovery responses the next day.  A copy of the emails exchanged between Plaintiff and the undersigned between November 3 and November 5, 2020 is attached as Exhibit "E."  To date, the parties have not exchanged discovery responses.

Respectfully, Defendants seek a directive requiring the parties to first exchange written responses and responsive documents before they take party depositions.  This will allow the parties sufficient time to fully review the other side's documents and prepare for the depositions.  Ample time will be needed because of the anticipated volume of e-discovery in this case, which is due to, among other things, the voluminous allegations in the amended complaint and the approximately eight-year period covered by those allegations.  Defendants further request that the parties be required to complete party discovery before determining whether non-party discovery is necessary and appropriate here.

**The Requested Subpoenas Are Improper And Harassing**

In the Letter Application, Plaintiff asks the Court to issue eight subpoenas for documents and depositions:

- A deposition subpoena and document requests to non-party Adam Larkin (an employee of Hedge and defendant Richard Larkin's son);

- a deposition subpoena and document requests to non-party Katie Cronin (an employee of Hedge and defendant Richard Larkin's daughter);

---

[5] The requests are grossly overbroad and improper in many respects, which will be addressed in Defendants' responses and objections thereto.

[6] By joint letter to the Court dated October 16, 2020, the parties requested adjournment of, among other things, the deadline to respond to initial discovery requests to November 6, 2020 [ECF No. 84].  On October 30, 2020, Defendants filed a letter in accordance with the Court's directive to further explain the reasons for the requested adjournments [ECF No. 89].

Hon. Debra Freeman
November 19, 2020
Page 4

- deposition subpoena to non-party William (Taylor) Hudson (a *former* employee of Hedge who left the company in June 2010);

- a deposition subpoena and document requests to non-party Mark Stillman (a *former* employee of Northland who left the company in June 2013);

- a deposition subpoena and document requests to non-party Avril Chopra (a *former* employee of Northland who left the company in May 2014);

- a deposition subpoena to non-party Kalpesh Kothari (a vendor who was never employed by Northland or Hedge);

- a deposition subpoena and document requests to *defendant* Daniel Lothrop (which document requests are nearly identical to prior document requests that defendants already responded to); and

- a deposition subpoena and document requests to *defendant* Domenic Bramante (which document requests are nearly identical to prior document requests that defendants already responded to).

The documents sought by Plaintiff's proposed subpoenas are incredibly broad, unduly burdensome and improper. Almost all of the requests seek documents that belong to defendants Northland and Hedge and/or are not relevant to the issues in this action. Many of the document requests are also designed solely to harass and would impose undue burdens on the non-parties.

For instance, there is no basis to believe that non-party William Hudson has personal knowledge of the facts related to this dispute. He left Hedge in *2010* – well before start of Plaintiff's work with the companies, and he is not mentioned in the amended complaint. Similarly, non-parties Stillman and Chopra left Northland in 2013 and 2014, respectively. That was early on in Plaintiff's engagement and neither worked there for most of the relevant period alleged in the amended complaint. There is no basis to seek from them documents that plainly belong to Northland and Hedge, or to depose them without first attempting to obtain the information from Defendants.

The subpoenas directed to Katie Cronin and Adam Larkin – the children of defendant Richard Larkin – are designed solely to harass and place undue and improper burdens on Mr. Larkin and his family members. Katie Cronin and Adam Larkin are not alleged to have played any role in this dispute. Indeed, they are never mentioned in the amended complaint. It is extremely improper to seek documents from and notice depositions of the children of a party, especially when those children have nothing to do with the allegations in the complaint. This is the definition of harassment.

Respectfully, it would be far more efficient and conserve party and judicial resources to complete party discovery before burdening the numerous non-parties with document requests and depositions.

Hon. Debra Freeman
November 19, 2020
Page 5

Finally, the subpoenas directed to defendants Lothrop and Bramante are improper and, respectfully, nonsensical. Plaintiff already served nearly identical document requests on both defendants in June, and defendants responded to those requests in July. *See* Exhibit "D." As discussed above, initially Plaintiff did not contest the Lothrop and Bramante document responses and Plaintiff never filed a motion to compel. Now, Plaintiff is apparently attempting to re-serve almost the exact same requests by way of a subpoena.[7] That is entirely improper. While *pro se* plaintiffs are understandably given leniency in certain respects, they are not entitled to make up their own rules.

**Plaintiff Cannot Prosecute "Assigned Claims" Pro Se**

In May 2020, Plaintiff commenced a trio of related actions in the S.D.N.Y. against the National Futures Association, Vision Financial Markets LLC and ADM Investor Services, Inc., respectively.[8] While these cases are about a different subject than this case, they contain very similar sounding allegations regarding alleged false statements, concealment, unfair competition and theft of Plaintiff's purported intellectual property and trade secrets.

The three cases were recently dismissed, in part, *sua sponte*, for various reasons. In the case captioned *Kumaran v. National Futures Association*, **the Court dismissed all claims that Kumaran alleged had been assigned to her by her entity Nefertiti Risk Capital Management, LLC** ("Nefertiti").[9] The Court stated: "[A] pro se litigant who is not an attorney cannot assert claims in federal court that an artificial entity, such as a corporation or a limited liability company, has assigned to her." *Kumaran v. Nat'l Futures Ass'n*, 1:20-cv-3668, 2020 WL 3630389, at *3 (S.D.N.Y. Jul. 2, 2002) (emphasis added) (citing *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008).[10]

The same rule applies here. The amended complaint includes a section entitled "Assignment." *See* Am. Compl. ¶¶ 59 - 66. This section purports to allege the basis for Plaintiff's standing to assert claims in her individual capacity (notwithstanding that Timetrics – and not Plaintiff – was the party to most of the agreements at issue, and Timetrics provided the services to Northland and Hedge that are the subject of those agreements). For example, Plaintiff alleges that

---

[7] Beside the document requests in the proposed subpoenas attached to the Letter (and their predecessor requests from June), Plaintiff also served other sets of document requests on Lothrop and Bramante – which contain some of the same requests as those in the proposed subpoena. (Plaintiff also served interrogatories and requests for admissions on Lothrop and Bramante). The responses to those document requests were scheduled to be served on November 6, 2020, until Plaintiff called that off. *See* Exhibit "E."

[8] The index numbers for these actions are 1:20-cv-3668-GHW-SDA (National Futures Association), 1:20-cv-3871-GHW-SDA (Vision Financial Markets LLC) and 1:20-cv-3873-GHW-SDA (ADM Investor Services, Inc.).

[9] In this action, Plaintiff alleges that defendant Larkin entered into a so-called "Agreement in Principle" to become a minority owner of Nefertiti.

[10] Notably, Plaintiff filed motions for reconsideration in two of these actions. *See Kumaran v. Nat'l Futures Ass'n*, No. 1:20-cv-3668, ECF No. 17 (granted, in part, on unrelated grounds and granting Plaintiff leave to file an amended complaint); *see Kumaran v. ADM Investor Services, inc.*, No. 1:20-cv-3773, ECF No. 13 (motion for reconsideration denied, without prejudice, and granting Plaintiff leave to file an amended complaint). As such, the feigned confusion regarding the deadline to file the motion for reconsideration of the protective order in this action is not credible.

she is the owner of "all intellectual property and trade secret rights for the IP and trade secrets" by virtue of an assignment by Timetrics to Plaintiff dated September 29, 2016. *See id.* ¶ 62. Plaintiff also alleges that "[a]ll rights, title and interest of all agreements with Defendants, including the Settlement, and to the Plaintiffs IP, trade secrets, are therefore, after September 29th 2016, now solely and exclusively owned by Kumaran in her individual capacity including the rights in and to the contracts that are the subject matter of this action." *See id.* ¶ 64.[11]

The rule in this regard is crystal clear: <u>In federal court, a *pro se* plaintiff cannot prosecute claims that were assigned to him or her by a corporate entity</u>. *See Sanchez v. Walentin*, 526 F. App'x 49, 51 (2d Cir. 2013) ("Although Appellant's complaint alleged that a corporation … had assigned its claims to him, ***we have specifically barred the assignment of claims by a corporation to a layperson so as to permit he layperson to proceed pro se***.") (emphasis added); *see also Jones v. Niagara Frontier Trans. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983); *Mattel, Inc. v. Betterlover*, No. 18-cv-11644, 2020 WL 3050382, at *3 (S.D.N.Y. Jun. 8, 2020). This is a blanket rule. There is no exception for, among other things, a "good-faith assignment" where the plaintiff proves she had a valid reason for the assignment (*i.e.*, a reason other than to evade the prohibition on proceeding *pro se*). *See Lutin v. New Jersey Steel Corp.*, No. 93 CIV. 6612, 1996 WL 636037, at *12-13 (S.D.N.Y. Nov. 1, 1996) (citing and discussing cases in this regard).

Here, the claims brought by Plaintiff individually (all causes of action) should be dismissed for the exact same reason.[12] As discussed in Defendants' motion to dismiss [ECF Nos. 63-65, 77], the amended complaint alleges that Plaintiff's standing to assert claims related to alleged "misappropriation" of, or failure to pay compensation for, Timetrics' purported "trade secrets" and "confidential information" is based on the purported assignment of rights by Timetrics to Plaintiff. Because a *pro se* plaintiff cannot prosecute claims assigned to her by an entity, Plaintiff's claims for misappropriation of trade secrets under federal and state law (Counts 4 and 5), misappropriation of confidential information (Count 6), unjust enrichment (Count 7), promissory estoppel (Count 8), breach of the purported Agreement in Principle and covenant of good faith and fair dealing implied therein (Counts 9 and 10), fraudulent inducement of the Agreement in Principle (Count 11), and breach of fiduciary duty (Count 13) should be dismissed. *See* ECF No. 65 at 25.

---

[11] Plaintiff also alleges she is individually a party to the Timetrics NDA and the Settlement Agreement. *See* Am. Compl. ¶ 64. While Plaintiff is individually a party to the Settlement Agreement (ECF No. 64-1), she is not a party to the Timetrics NDA (ECF No. 52-3). This was addressed by the Court at the Initial Conference on January 15, 2020.

[12] The fact that Plaintiff has been aware of this rule since at least July 2, 2020 and took no action to remedy the situation in this case speaks to the bad faith with which this action was brought and with which it is being pursued.

Hon. Debra Freeman
November 19, 2020
Page 7

      Thank you for the Court's time and attention to this matter.

                                    Respectfully,

                                    *Ellen Tobin*

                                    Ellen Tobin

02292975