Notice of Improper Filing, Page 1

**VIA ECF**
Honorable Judge Debra C. Freeman
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *Kumaran vs. Northland Energy Trading et al  1:19-Cv-08345* (MKV-DCM)

### NOTICE OF IMPROPER FILING / REQUEST TO STRIKE

Dear Hon Magistrate Judge Freeman;

Plaintiff writes to object to the improperly filed submission of an opposition to a 3-page letter motion filed on October 30, 2020 which Defendants filed an opposition *after 20 days* on November 19, 2020 that does not comply with Federal Rules of Civil Procedure ("FRCP"),  Local Rules and Individual Rules and therefore needs to be struck. Your Honor's Individual Rules 1.D specifically and explicitly requires that oppositions to a letter motion need to be filed within three (3) days.

> ***1D; Oppositions to Letter Motions.*** *Unless the Court orders otherwise, opposition to any letter motion shall be filed within three (3) days of the moving letter, and reply, if any, shall be filed within one (1) day of opposition.*

The letter motion was filed by Plaintiff on October 30, 2020, therefore Defendants' opposition was due on November 2, 2020.  Local Rule 6.1 also requires that oppositions to a motion need to be filed within fourteen (14) days. In equity, Plaintiff in compliance with the Individual Rules files its response timely *within 1 day* (See DCF Ind. Rule 1D) and therefore it is inequitable, impermissible and prejudicial for Defendants to file oppositions more than *20 days* after a motion, while Plaintiff only has 1 day to respond. Therefore the filing ECF93 is impermissible under both FRCP,  Individual Rules and Local Rules and needs to be struck. Any inequitable procedures between Defendants and Plaintiff are are prejudicial.

*Second*, the letter does not comply with page limits and exceeds the three (3) page letter limit count in this proceeding. Plaintiff is aware of Honorable Judge Mary Kay Vyskocil's Local Rule 2.B and also procedurally unfair and impermissible as Plaintiff complied with the three(3) page limit. (*ECF89,ECF90*).  Defendants *20-day late* response therefore violates Court rules to send in an excess seven pages (double the size) set of one-sided argument – that creates inequity as there is no rule that permits letters oppositions to be 7 pages. If such lenience to Defendants, Plaintiff seeks equal application of the rules that letters from Plaintiff can be also 7 pages in length.

Plaintiff has always sought leave from the Court to either seek an extension to file something late, and/or file excess pages. None was obtained by Defendants and the response is improperly filed, impermissibly late and needs to be struck. The Court rules are three pages for letters and Defendants have violated those rules to procure unfair advantage and should not be permitted to slip in "new arguments". Therefore Pages 4-7 of the Letter, including its impermissible length should be struck.

Defendants are thereby procuring procedural advantage by not seeking leave from the Court to request to exceed page count and have expressly not sought leave to file late oppositions. This is inequitable. For this reason also the letter needs to be struck. If the page count limit is being removed, it needs to be removed for all parties. Given the unfair procedures being given to Defendants, Plaintiff notes that it has still complied with the 1 day to file a reply (See Rule 1.D).

*Finally*, the opposition filed in ECF93 to a letter motion for discovery schedule is improper in scope, as it also contains impermissible motion to dismiss 12(b)(6) arguments that are improperly and untimely filed, well after the MTD was briefed. They are also wholly inappropriate for the discovery and are specifically designed to not fairly giving Plaintiffs opportunity to respond.

The letter purports to create new arguments, raising new case law and new legal arguments, about irrelevant new matters without proper permitting briefing by Plaintiffs that also violate Federal Rules for events in an unrelated matter occurring in May 2020. Given that Defendants had until July 9, 2020 to file their Motion To Dismiss, the onus was on them to include all their relevant arguments. Further, any arguments for the Motion To Dismiss are properly and completely briefed before the Court by September 29, 2020. As recorded on the docket, Defendants have attempted this impropriety before by trying to include "late filed" and "new arguments" in their reply or after the fact not permitting Plaintiffs full opportunity to respond (*ECF81*, *ECF8*3), The Court has already ruled in ECF83 that "The Court is aware of the law governing arguments raised for the first time in a reply brief. See, e.g., ABN Amro Verzekeringen BV v. Geologistics Americas, Inc., 485 F.3d 85, 100 n.16 (2d Cir. 2007); In re Various Grand Jury Subpoenas, 235 F. Supp. 3d 472, 485 ("The law in the Second Circuit is clear that arguments...raised for the first time in reply briefs need not be considered."). Thus, in ruling on the motion to dismiss, the Court "will not consider" any arguments that the Court concludes Defendants failed to raise in their opening brief. United States v. Yousef, 327 F.3d 56, 115 (2d Cir. 2003)"

It now appears that Defendants are again raising new arguments for lack of standing. Where the defendant fails to affirmatively state the defense of lack of standing in a pre-answer motion to dismiss, the issue is waived (*see e.g. Bank of N.Y. Trust Co., N.A. v. Chiejina,* 142 A.D.3d 570, 572, 36 N.Y.S.3d 512 [citing *Matter of Fossella v. Dinkins*, 66 N.Y.2d 162, 495 N.Y.S.2d 352, 485 N.E.2d 1017 and holding that, despite the answer's specific denial of the allegation in the complaint that plaintiff was the holder of the note, "[s]ince the homeowner did not raise the defense of standing in his answer (*see* CPLR 3018[b] ) US Bank Nat'l Ass'n v. Nelson, 169 A.D.3d 110, 116, 93 N.Y.S.3d 138, 144 (2019)

Since Defendants did not brief the issue in the MTD that Kumaran has no standing, they have waived their rights to raise it now. Therefore all the improper new MTD arguments are impermissible and violate the Court's previous order ECF 83. Further any new arguments and new case law should be struck and are procedurally improperly (filed after *20 days* after a letter motion) and do not afford Plaintiffs the opportunity to respond.  Defendants also include new case law that does not apply to the case at hand, as counsel already appeared in this case, so there were no "claims" assigned to it by AStar. Therefore this issue is moot. Because the letter was untimely filed, and explicit Court Individual Rules of Practice 1.D and Local Rule 6.1 were not followed, the letter must be struck. Plaintiff also documents the objections of inequitable rules and procedures, similar to permitting Defendants' unfettered lenience to not apply Second Circuit law in the application of good cause for a Protective Order. Plaintiff objects to any improper procedures where equal standards of law and procedures apply to all parties.

Notice of Improper Filing, Page 3

Plaintiff documents its objection hereunder, and for the explicit reasons herein moves to strike the improperly filed submission ECF93.

**Defendants Impermissible Late-Filed Letter is Factually Inadequate in the Background**

On June 17, 2020 Plaintiff timely filed a Motion for Protective Order (ECF54) and Motion for Preliminary Injunction. (ECF52) because Defendants have threatened irreparable harm and to use the Court's procedures to publish and disseminate trade secrets in their possession to a wider audience among other relief for the improper use of trade secrets. For large part, due to a delay by the Court issue the PO discovery, Defendants specifically refused to produce anything. To conserve efficiencies and resources, it was futile to move forward with depositions or exchange of documents *without the issuance of the Protective Order*. Plaintiff had initiated deposition and documents requests on Lothrop and Bramante in June 2020, all of which Defendants have not cooperated in scheduling, sending repeated emails in August and September claiming they want to eliminate discovery and depositions on all individuals.[1] (See ECF 90, Addendum A Page 4-5)

The parties did exchange Initial Interrogatory Discovery Requests on or by August 13, 2020. Contrary to Defendants' letter, Plaintiffs complied with FRCP 26, issued no more than 25 interrogatories to each Defendant, approximately 30 document requests to each Defendants and no more than 25 requests for admissions. That amount is permissible within the rules. Conversely Defendant Richard Larkin issued **196 individual document** production requests appeared to be directed to ***Kumaran Pro-Se individually,*** designed to drive up costs and burden Plaintiff individually -disproportionate to this action - with approximately **600 hours of production.** (A detailed timeline of costs to Plaintiff to comply will be submitted in subsequent motion, ***seeking over 1,000 emails of replicate and duplicate work product provided to Defendants from 2011-2016 ("Duplicative Documents")***). These documents were while under full-time contract, which should already be in Defendants possession, or that Defendants may have in fact destroyed the emails and/or certainly would be able to produce themselves. These Duplicative Documents are unreasonable, duplicative, burdensome and should be excluded under FRCP26(b)(1). Defendants have been unwilling to eliminate discovery of the Duplicative Documents, have been unwilling to confirm that have not "destroyed" the emails and work product, claiming Plaintiff has to individual Bate-Stamp and the burden is on Plaintiff, individually, at a significant cost needs to re-produce six years of work product. There is no need for Plaintiff to produce documents already in Defendants possession and is part of Defendant's tactics to drive up litigation costs. On September 8, 2020 Plaintiffs filed their opposition to the MTD and on September 29, 2020.

Because the Protective Order had not been issued, the Parties mutually agreed to extend discovery to February 5, 2020 and also the motion to dismiss had also taken up over 150 hours of time leaving little time for discovery. Plaintiff also incurred one 14 day quarantine for Covid19, which fortunately turned out OK. On October 15, 2020 the parties filed a letter to extend the deadline. On

---

[1] Defendants have further engaged in obstructions using "boilerplate" objections under Fed.R.Civ.Pro. 34 it is patently improper to assert general objections to discovery demands. By incorporating each of its general objections into the response of each of Defendants' specific requests, Plaintiff has violated both Fed.R.Civ.Pro. 34(b)(2)(B) and 34(b)(2)(C). *See Fischer v. Forrest*, No. 14-CV-1304 (PAE) (AJP), 2017 WL 773694, at 3 (S.D.N.Y. Feb. 28, 2017); *see also Carl v. Edwards*, No. 16-CV-3863 (ADS) (AKT), 2017 WL 4271443, at 4 (E.D.N.Y. Sept. 25, 2017). By applying general objections to each of Defendant's specific requests, Defendants have violated Fed.R.Civ.Pro. 24, and its objections may be deemed to be waived. *See Carl v. Edwards*, at 4.

October 19, 2020 the Court belatedly issued a Protective Order which was issued *after the end of fact discovery*. Therefore this alone is prejudicial to the case, and required a reset of discovery deadlines.[2]

On October 19, 2020 after the end of fact discovery the Court required the parties to provide a concrete set of dates. On October 21, 2020 (*ECF87* Exhibit 1) Plaintiff supplied to Defendants a concrete set of dates, however Defendants were unwilling to cooperate and confirm any of the dates. Because Defendants would not confirm the exact schedule that contained the Court required concrete, proposed deadlines, and deposition dates, Plaintiff would not agree to a joint letter, that failed to comply with the Court orders in *ECF86*. Plaintiff also repeatedly objected to the numerous attempts by Westerman to misquote and misrepresent Plaintiff. Plaintiff respectfully suggested to Defendants counsel that the parties have two sections to a Joint Letter that states "Defendants position" and "Plaintiffs position". Defendants would not agree to have separate sections in the letter.

On October 30, 2020 Plaintiff filed an application to the Court by letter motion to issue various subpoenas and in response to this Court's Order *ECF86* to issue a concrete, detailed schedule with proposed dates and deadlines. Plaintiffs' letter complied with this Court's directives to include specific timelines and Defendants' letter motion filed on the same date was deficient as the Court in *ECF86* specifically ordered the Parties "*submit a proposed schedule that contains concrete, proposed deadlines for each type of discovery that is still being contemplated -- including deposition dates, deadlines for the production of expert reports, if any, etc*." Defendants did not comply with that request. Contrary to the Defendants' one-sided monolog of misinformation, after repeated requests, Westerman have to this date been unwilling to schedule a deposition with Defendants Lothrop and Defendants Bramante early. Specifically Plaintiff does not agree to take deposition at the end, and wants to take depositions (that Plaintiff is paying for) early. Plaintiff will demonstrate to this Court in subsequent motions to compel an obstruction to permit Plaintiff to take timely depositions. Further the Court has not ruled on the existing schedule.

Defendants *20-day late* impermissible opposition, after Plaintiff filed its letter motion, is impermissible. Plaintiff continues to assert that Defendants have been avoiding discovery on Lothrop and Bramante. Responses to other impermissible arguments in the letter, such as deposition will be filed in Motions to Compel.

### Defendants Inclusion of New Cases Are Irrelevant, Prior Case History of Larkin's bad faith disputes with his business partners Willian (Taylor) Hudson are Relevant

First Plaintiff is unabashed by any Court's review of a new cases filed in SDNY in May 2020, which are unrelated to the facts in this case and improperly raised in a discovery motion.[3] Plaintiff in equity respectfully requests the Court draw attention to all Defendant Larkin's cases related to his business partners William (Taylor) Hudson are equitably reviewed, which are related to the facts of this

---

[2] Plaintiff also documented that the Protective Order failed to apply Second Circuit law for standards of good cause and overlooked to include any legal analysis or supporting law, unilaterally permitting Defendants to seek redactions on undefined terms, without any showing of economic injury. This has resulted in extra burden on Plaintiff in the filing of a Motion for Reconsideration on November 16, 2020 (ECF 87,91,92)

[3] The improper purpose of Defendants *20-day late filed response* was in bad faith to hastily raise motion to dismiss arguments from unrelated cases and are therefore impermissibly raised and procedurally misfiled and should be struck. The Vision case is completely unrelated set of facts to do with a disbarred FCM and affiliates that have perpetrated a class-action type fraud on dozens of customers to deduct fees and other misconduct. It is also related to an affiliate LLC, that is not party to this case. It has nothing to do with a contractual Settlement Agreement or the extensive facts with Northland from 2011-present date.

case are reviewed. Plaintiff seeks proper subpoena on Defendant Willian (Taylor) Hudson who is **currently a co-owner** and **currently named** on the operating agreements of Defendants Northland and Hedge. His relevance to this case was properly disclosed on the initial disclosures filed on March 20, 2020 (ECF44). Defendants have misrepresented by omission to the Court that William (Taylor) Hudson, is a ***current owner of Northland and Hedge***, and is a **recipient of all profits and dividends from the misappropriated property.** Also, as is relevant to this case, if the Court is to review all parties prior litigations, equitable treatment must be afforded on the review of Defendant Larkin and his affiliates case.

As was stated in letter to the Court (*ECF*80.1) if the Court is to look closely at the record, it is in fact Defendant Richard M. Larkin who has a long history of burning his business partners. Defendants raised these improper allegations about "business partners" in their Reply for first time, and therefore is relevant to this case. The Court need not look too far for cases filed by and against Larkin and Hedge, against his former business partner(s) William (Taylor) Hudson (¶ECF44, Pg.8). (See *Destwin vs. Hedge Insite* 1:12-cv-00329) Plaintiffs properly disclosed this in the Initial Disclosures filed on March 5, 2020 (*ECF44)*. They are recipients to the unjust enrichment herein. As is expressly relevant to the case at hand, it is in fact Larkin's former business partners, that have been called for deposition. William (Taylor) Hudson is currently named on the Northland and Hedge Operating Agreements, and properly disclosed by Plaintiff in the Initial Disclosures (*ECF*44 Pg. 8). As is relevant to this case, Hudson deposition is critical to demonstrate Larkin's past conduct with his own "business partners". Therefore it is in fact Larkin who has a record of an acrimonious history of separations with his so-called business partners including past litigations to claim IP and allegations of false advertising and misrepresentations to induce reliance by others.

Therefore the Court is respectfully requested to look at Larkin's prior cases, there has a pattern of vengeful personal counterclaims, acrimonious and devious conduct, allegations by former business partners to knowingly make false statements, misrepresentations and induce reliance under false pre-texts, and to misappropriate technologies under the guise of being partners, and then cut them out of their share of royalties and profits. The former business partner of Larkin, accused Larkin and Hedge of "trying to call technologies and IP their own" and also making false statements and engaging in deception, unfair competition, as well as false advertising and knowingly making false representations about its patents, to limit competition. In this case Larkin is alleged to have represented to be a busines partner of Kumaran (individually) and have made false representations. There is no allegation that he is alleged to be partner of AStar. In this case Larkin, Northland Hedge (CTA's) are alleged to be direct competitors of Kumaran individually, as a CTA. AStar has no involvement with the CTA. Therefore these attacks on Kumaran, individually, are to deliberately create procedural bias and unfair advantage, including filing the 20-day impermissible opposition which needs to be struck.

### (ii) Newly Filed Cases with Vision Financial Markets LLC are irrelevant to discovery

While Plaintiff has no problem with properly placed arguments, Defendants seek to distract the Court with a separate matter related to a futures clearing house that was disbarred in 2014 called Vision Financial Markets, who has been perpetrating customers' accounts at ADM Investor Securities. This was originally in an Arbitration before the NFA starting in 2018. The Arbitration was stayed on Order of the Arbitration Panel in November 2019 due to conflicts of interest and thus brought into Federal Court.

These cases, which were removed from an Arbitration which was stayed on Order of an Arbitration Panel, because of conflicts of interest with the NFA, are before the Court in part under the

Federal Arbitration Act for ruling of declaratory judgement and removing an arbitration. Recently two arbitrators resigned from the Arbitration and there were issues if impartiality and neutrality all which falls under 9 U.S.C. 1 el seq. It should be noted that <u>Kumaran's individual claims are preserved.</u>  Once again Defendants' facts are untrue, designed to prejudice, completely irrelevant and should be struck. Under the FAA the District Court has jurisdiction over the arbitration. If the Court is to be considering any of these new cases and new case law, then Plaintiffs are entitled to full response and to brief the issues.

In fact, Westerman were alerted to the case (as relates to Plaintiff ) which was previously an ongoing arbitration at the NFA in January 2020 and had full opportunity to raise the issue in the Motion To Dismiss, <u>as Plaintiff voluntarily disclosed information about the ADMIS case</u> to Westerman in January 2020. Since Westerman had knowledge of its existence and had opportunity to seek discovery and raise the issues, it failed to do so timely. In any event as Westerman points out the case is irrelevant to the facts of this case. Since Defendants point to a ruling on July 2, 2020 and Defendants Motion To Dismiss was filed on <u>July 9, 2020</u> the responsibility was on Defendants to raise all permissible issues which they now seem to think they failed to do. In any event, the July 2, 2020 ruling was reconsidered and by Order on October 24, 2020 is reversed and the case has not been terminated, as was wrongfully conveyed to the Court. Since Westerman failed to brief the issue on July 9, 2020 their defenses are waived. If it also wholly improper to raise the issue in discovery.

More importantly, Westerman's facts are completely backwards. In ongoing distortion and misrepresentation to the Court, Defendants wrongfully states the "case was dismissed'. This is not true. The *individual claims have not been dismissed*, and it is in fact the LLC (which was dissolved) who's claims are impacted, pending appointment of counsel. In any event, there has been <u>no impact to Kumaran's individual claims</u> on any of these claims. This impermissible argument that is late filed has no bearing on this case and is backwards. If anything, the corporate claims should be dismissed. Further this new attempt to get claims dismissed in the middle of discovery is entirely inappropriate. It is yet another ad-hominem and lowball attack on Plaintiff on wholly irrelevant matters to this case.

Plaintiff objects to, without limitation and for example, Defendants 20-day late-filed letter which requests motion-to-dismiss relief from the Magistrate Judge that states "*the claims brought by Plaintiff individually (all causes of action) should be dismissed*." Plaintiff therefore objects and documents that this new uncontested "motion to dismiss" seeking to strike claims, without a proper briefing is also impermissible and must be struck.  This is wholly procedurally improper and cannot be raised in these letter motions.

Further to correct the record, this case has no bearing on the Vision case. The cases has different allegations due to an <u>LLC that was dissolved</u>. Westerman's ongoing misrepresentation to the Court is that the dissolved LLC's claims that were removed, but Kumaran's individual clams are preserved. Westerman's belated attempt to get "<u>*all*</u>" individual claims dismissed, is not only unsupported by law, it is impermissible to raise new case law and arguments in the middle of discovery to try to dismiss claims. It is also wholly procedurally improper to move to dismiss claims after the Motion To Dismiss has been filed and raised arguments, for the first time in letters during discovery, which Plaintiff has no opportunity to respond to. The Court therefore is not permitted to consider or entertain any new arguments on a Motion To Dismiss, or new legal case law, or legal references, especially in a 20-day late filed opposition to a discovery motion.

Further this nonsensical argument is completely backwards. The Court in other cases, have ruled in the other proceedings that <u>Kumaran's individual claims are preserved</u>. If anything, it is the corporate claims that were dismissed for not having counsel. It is with irony, that it was actually Kumaran's individual claims, as the owner of the trade secrets that are preserved in all other cases. It is expressly clear that Kumaran is the individual owner of all trade secrets before this Court. Therefore all rights to enforce the trade secrets under the DTSA are rightfully by brought by individual Plaintiff Kumaran as the owner. The FAC is clear that at no time did AStar **_own_** the trade secrets, but were licensed to AStar as Kumaran, the owner of the trade secrets, has the individual rights to bring the trade secrets claims and was also individually a party to the Settlement Agreement. Defendants also agreed to ownership by Kumaran in the Settlement as Kumaran is the licensee. Nonetheless, Kumaran as the owner of the trade secrets, has the right to preserve its claims, and further Kumaran is an individual party to the Settlement. There are no "claims" assigned to Kumaran by AStar. The difference that Westerman has overlooked is that NRCM is a dissolved LLC and was not represented by counsel so the LLC's claims were terminated. The point is moot as AStar made an appearance by counsel. The Court should also note, that the Preliminary Injunction before this Court is made individually by Kumaran, as the claims all related to the CTA/CPO and after September 2016 including misappropriation, unfair competition, and breach of the Settlement are related to *Kumaran individually.* AStar is not a CTA. Kumaran individually is a registered CTA, in direct competition with Larkin as a CTA. Therefore Defendants' impermissible new arguments are improperly filed, cannot be considered in a Motion To Dismiss, and are not relevant to discovery. Therefore they are improperly filed with the Court.

In this case, Plaintiff individually, has pled clearly it is the *sole owner of the trade secrets*, as well as *is party to and a signatory on the Settlement Agreemen*t. Kumaran is also the sole owner, author and inventor of the IP. Further the Complaint is clear that for all business dealings with Larkin starting September 2016, as a so-called business partner, is *with Kumaran individually.* AStar has no involvement with the new businesses or CTA/CPO's.

Plaintiff has not responded to all the other issues, which are false, specious and seek to obstruct and prevent individual Plaintiff obtaining individual discovery. Plaintiff objects to numerous other aspects to the letter, including multiple statements of misrepresentation by omissions to the Court on the role of Larkins' **adult children,** who are "directors" and "employees" of Hedge and by express breach of contract, and improper conduct, expressly received **hundreds of emails of trade secrets of Plaintiffs, in express breach of contracts as direct participants in the scheme**. (*ECF*90.1)

Further Westerman intentionally failed to disclose to the Court, that Plaintiff is aware that Richard M. Larkin has documentary evidence, that he engaged in substantial breaches of Plaintiffs contracts to distribute Plaintiff's proprietary technology to **Adam Larkin and Katie Cronin**. As a material part of this litigation, Westerman have concealed from the Court, and Plaintiff will demonstrate documents (***over 100 emailed documents of Plaintiff's IP and trade secrets to Adam Larkin and Katie Cronin***) that are the exact subject matter of this litigation. These unauthorized disclosures, will prove the allegations in the Complaint that Richard Larkin and Northland, breached their contractual provisions and wantonly disclosed Plaintiffs IP to numerous individuals including his "***adult* children."** Westerman's false narrative to this Court is also sanctionable, because she fails to disclose to the Court, that Adam Larkin actively and currently holds himself out as a ***Director of Hedge Solutions*** (an employee of Hedge) (*See* Exhibit 90.4 and 90.1) and Katie Cronin who also works for Hedge Solutions.

In fact Ms. Katie Cronin, while working at Hedge Solutions, was involved in the fedexing of checks to Plaintiff's residence in New York, in October 2016, while Mr. Larkin was funding capital to Kumaran's hedge fund. Ms. Katie Cronin was also the direct recipient, at the direction of Mr. Richard M. Larkin of over ***100 emailed documents of Plaintiff's IP and trade secrets.*** Katie Cronin (is now listed as a CTA rep, see ECF90.1, ECF90.4), in direct competition with Plaintiff Kumaran (individually) as a CTA and is engaging in direct unfair competition in the use and improper disclosures related to Defendant's misappropriated CTA programs. Corporate Plaintiff AStar is not involved in the CTA programs.

A complete set of issues related to the ongoing failure to coordinate depositions will be filed in subsequent motions to compel with this Court and are not included here, as the filing ECF93 is improperly filed and needs to be struck. Defendants obstructions have been laced with "boiler plate objections" that are a violation of FRCP34.

Further depositions on Aviral Chopra were already agreed to and he has agreed to cooperate. However Defendants have failed to cooperate with scheduling a date, so Plaintiff came to Court to issue the subpoena, He is instrumental to the claims of fraud and misappropriation and was the author of the original Avi's spreadsheets and Avi's hedging strategies that are central to Plaintiff proving its claims that the OBT Book was not used by Avi and was misappropriated during the FAT Test after Aviral Chopra resigned (noting a pattern of numerous other employees of Larkin who have resigned). Chopra also was subject to hours of depositions by the CFTC for violations of compliance laws, that are also central to this Complaint. Kalpesh Kothari is a consultant who worked directly with Plaintiff and Larkin on modifying Defendants systems to incorporate Plaintiffs trade secrets and is also a recipient of hundreds of emails related to Defendants intent and actual modification of computer systems to unlawfully retain, modify and profit from Plaintiffs trading strategies with profits to the tune of over $4.5 million dollars and unpaid license fees of over $800,000 which Defendants are failing to pay.

Plaintiff also objects to the impermissible late filing of objections to subpoenas that Plaintiff timely filed on October 20, 2020. **Any objections were due on November 2, 2020**.

**Conclusions**

In conclusion this impermissible late-filed opposition explicitly violates Individual Rules 1.D, violated Local Rule 6.1 and also violated FRCP 12(b)(6). No leave from the Court was granted for this late reply and given that Plaintiff has complied with all Court deadlines and filed its motions and oppositions timely, as indicated herein. Defendants after-thought opposition on November 19, 2020 must be struck, is procedurally improper and must be disregarded as untimely filed, *over 20-days late* and is procedurally inequitable. Despite economic burden, Plaintiff files this reply timely *within 1 day,* as permitted by Individual Court rules, 1D and again objects to inequitable treatment. Further Plaintiff objects to the unnecessary time cost and burden in responding to this impermissible late-filing in 1day, which is sanctionable and bad faith.

Because Defendants response was filed outside of the three (3) days required by Individual Rules and fourteen (14) days required by Local Rule 6.1 it must be struck.

Respectfully submitted,

//SSK//  Samantha Siva Kumaran