Page 1, 12/15/2020

**VIA ECF**
Honorable Judge Debra C. Freeman
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *Kumaran vs. Northland Energy Trading et al  1:19-Cv-08345* (MKV-DCM)

## RE: DISCOVERY CONFERENCE

Dear Hon. Magistrate Judge Freeman;

Pursuant to the recent Order (*ECF99*-December 7, 2020) for a discovery conference on December 16, 2020 under Local Civil Rule 37.(2) and Your Honor's Individual Rules, Plaintiff is outlining issues that are of concern in relation to the completion of Fact Discovery, and both parties request to extend the time period. Pursuant to Individual Rules 1.G, the parties have attempted to meet and confer and have not been able to resolve the issue. Plaintiff provides these issues in advance of the Court conference for the Court's review and to address outstanding concerns in discovery production.

## Item 1 – Duplicative Documents

(i) **Duplicative Documents**: Plaintiff is seeking relief under FRCP 26(b)(1) for a Protective Order to eliminate unnecessary production of **Duplicative Documents** (information already in Defendants' possession, control or custody) which is unnecessary and is sought to drive up costs for *Pro-Se* Plaintiff when Defendants' already have this information in their possession which under FRCP 26(b)(1). Details supporting the estimated time and costs burden and reasons are provided hereunder under Exhibit A in Section 1A – and estimated to take not less than 600 hours.

In summary, over the extensive period of time between March 2011 – March 2015 on almost a full-time basis Plaintiff disclosed and provided to Defendants hundreds of emails, communications (with attachments of reports and software output) what have been determined to be Trade Secrets. Plaintiffs seeks a Protective Order to eliminate unnecessary and unreasonably repetitious production Duplicate Documents (which eliminates the production of information already in Defendants possession, control and custody).

Pursuant to the Federal Rules of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter ... that is relevant to the claim ... of the party.... " This rule may be limited by a court where "(i) **the discovery sought is unreasonably cumulative or duplicative**, or **is obtainable from some other source that is more convenient, less burdensome, or less expensive**; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) **the burden or expense of the proposed discovery outweighs its likely benefit....**" Fed.R.Civ.P. 26(b)(2).

Plaintiffs seek a protective order from the Court to reduce or restrict discovery to not include items that could more easily or less expensively produced from the Defendants themselves, as it is already in their possession, and is unreasonably duplicative.

"The 'metrics' set forth in Rule 26(b)(2)(C)(iii) provide courts significant flexibility and discretion to assess the circumstances of the case and limit discovery accordingly to ensure that the scope and duration of discovery is reasonably proportional to the value of the requested information, the needs of the case, and the parties' resources." The Sedona Conference, *The Sedona Conference Commentary on Proportionality in Electronic Discovery,* 11 Sedona Conf. J. 289, 294 (2010); accord *Chen–Oster v. Goldman, Sachs & Co.,* 285 F.R.D. 294, 303 (S.D.N.Y.2012); *Tamburo v. Dworkin,* No. 04 C 3317, 2010 WL 4867346, at *3 (N.D.Ill. Nov. 17, 2010).

The request to produce documents **already in Defendants possession, custody and control** violates FRCP 26(b)(1)and(2) – is unreasonably duplicative and the burden or expense does not produce any new information. In other words, no new facts will be discovered by undertaking this extremely burdensome and extremely time consuming exercise.

. For example Document Request 8, involves reproduction of almost 5 years of work product from 2010 – 2015 that seeks to drive up Plaintiffs' litigation costs, and will incur significant cost burden.

> Document Request #8
> *The "IP and Software," strategies, trade secrets and confidential and/or proprietary information that Plaintiffs **disclosed to Defendants**, which Defendants improperly retained, used, copied, modified and/or reverse engineered, **prior to May 9, 2016,** and the basis for Plaintiffs' belief.*

This request requires Plaintiff *Pro-Se* to produce include all work performed for Defendants over a 5 year period. The word "***prior to***" has no time frame and the words ""***disclosed to Defendants***" requires Plaintiff to re-produce unnecessary duplicative information between 2010-2015 which as described in Estimated Cost Burden (1A) will include no less than six(600) hours of work. Under FRCP 26(b)(1) (iii) **the burden or expense of the proposed discovery outweighs its likely benefit....**" and/or the same Discovery can be obtained from Defendants as the Documents and Communications were already "*disclosed*" to Defendants.

Without limitation, for example, the extensive requests required reproduction of thousands of emails and attachments, and communications between Plaintiff and Defendant is redundant, vexatious as Defendants **already have that information and are under the obligation to preserve that information.**

An explanation of cost and burden of Duplicative Documents is provided in Exhibit A, Section 1A. The time to produce this information also outweighs the benefits and will take several months of full-time work.  Plaintiff also objects to the voluminous **Duplicate Document** requests are being propounded for improper purpose to drive up the litigation costs needless for Plaintiff Kumaran *Pro-Se* as it could easily be obtainable from Defendants' servers and computers. The Duplicate Discovery is of significant burden and cost to Plaintiff for five (5) year's work product– and this information should not be required

Page 3, 12/15/2020

to be produced as Defendants already obtained it and under FRCP 26(b) this information is more readily or efficiently obtained by them.

### Time Period 2  May 2015- September 2019 - Second Set of Duplicate Documents

Likewise between May 2015 until 2019 the filing of this case, there is second set of Duplicative Documents that are also in Larkin's possession. Similarly Defendants have requested production of Duplicate Documents during a second time period of May 2015 until Present date.

During the period March 2015 – September 2019 in communications with Defendant Larkin and/or his counsel Bracewell, there are also several hundred emails of production – also containing Trade Secrets and other highly sensitive commercially information that Plaintiff already disclosed to Defendants, notable Richard Larkin.

By way of example, the overly burdensome request for Duplicate Documents is exemplified in Document Request #10

> Document Request #10
> The "IP and Software," strategies, trade secrets and confidential and/or proprietary information that **Plaintiffs disclosed to Defendants**, which Defendants improperly retained, used, copied, modified and/or reverse engineered **on or after May 9, 2016,** and the basis for Plaintiffs' belief.

In addition during the period approximately May 2016 until around June 2019 additional Documents and Communications that were emailed to Defendants are already in Defendant Larkin's possession and can more easily be produced by Larkin himself. By redoing all this work, it is an unnecessary, repetitious and causes overload of work to be done to unreasonably burden *Pro-Se* Plaintiff to spend time on duplicative work.

Producing this information "already disclosed to Defendants" will do nothing to advance this litigation as the information or production sought is already in Defendants possession, control and custody and generates no "new information" to advance Defendants defense of the claims. In fact, Plaintiff argues that Defendants seeks this information as a frivolous and unreasonable exercise to encumber Plaintiff with time consuming and cost prohibitive work.(When they can produce the Documents themselves as they are already in their possession)

For these reasons and since the information is already in Defendants' possession and duplicative, Plaintiff seeks a protective order under FRCP 26(b)(1). Other than emails by and between Plaintiff Kumaran and Defendant Larkin during this period, **there are no other relevant documents or communications** as Kumaran worked alone. Notably Defendants overly burdensome discovery requests repeatedly require Plaintiff to provide documents "already provided and disclosed to Defendants. FRCP 26(b)(1) specifically reduces this burden where "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

As explained in Appendix A, Section 1A – the cost and burden to Plaintiffs to reproduce Duplicate Documents exceeds 150 hours and is needless and a significant burden to Fact Discovery.

Page 4, 12/15/2020

Therefore Plaintiff also seeks relief from the Court for a Protective Order to reduce or eliminate the unnecessary burden on *Pro-Se* Plaintiff to redo **Duplicative Documents for** Time Period 2 – May 2015-June 2019, which will do almost nothing to advance the litigation. This information was already disclosed to Defendants, then Defendants have the information already in their possession, custody and control. This is not required under FRCP 26(b)(1) and (2).

*Item 2 – Deleted Documents*

    **(ii)**     **Deleted Documents and Potential Spoilation:** Plaintiff seeks relief from the Court from not producing Documents that have been subject to Deletion or Spoilation, or that have to retrieve from their Archives. Recent statements made by Defendants in pleadings on November 23, 2020 (*ECF95*) that they do not possess Plaintiff's trade secrets" [1] – can be proven by factual evidence, documents and communications to be false - and directly contradict the allegations in the Complaint. Plaintiffs should be under no obligation to produce "deleted" documents that Defendants failed to retain.

    As can be proven with documentary evidence, Plaintiffs **trade secrets** were provided and disclosed to Defendants over an extensive period of almost full-time work from 2010-2015, and second amount of emails including those with Defendants' counsel spanning the period 2016-2019. These disclosures include but are not limited to, documents, emails, instant messages, and communications all containing, referring to and discussion **trade secrets** that were previously disclosed to. Since Defendants have not confirmed that such documents have been preserved, the requests can only be implied as "spoilation of evidence" by Defendants.

    The logical inferences that can be drawn from these facts are that Defendants have either: (a) intentionally deleted the emails; (b) did not intentionally take any steps to preserve those emails; or (c) still has those emails in his possession but has failed to produce them. Any of these scenarios satisfies the requisite level of intent required by Federal Rule of Civil Procedure 37(e). *See, e.g., Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14-cv-6512, 2016 WL 4991623, at *20 (S.D.N.Y. Sept. 16, 2016) (ordering sanctions in part because defendants failed "to make prompt arrangements to move or copy all of their documents from the ... server'' onto its new cloud-based system, in an attempt to shield assets from plaintiff);

    The Complaint also alleges that the OBT Book (which constitute Plaintiffs' **trade secrets** and are a Related Work) and the trading and hedging strategies of STORM, which are incorporated therein, **are in Defendants' possession**, and that Defendants are using them for profit, in unfair competition and unjust enrichment in the present tense. Plaintiffs trade secrets – are the sole property of Plaintiff and all rights in and to them belong to Plaintiff, and are in Defendants' possession. Plaintiff disputes this assertion that Defendants <u>no longer have Plaintiffs trade secrets in their possession</u> and has documentary

---

[1] The Court should also note that Defendants did not even raised this issue in their Motion to Dismiss (ECF65) or in their Opposition for Protective Order on July 2, 2020 (ECF57) that "<u>they do not possess Plaintiffs trade secrets</u>". This is a new argument raised since discovery, where it is believed Defendants have now engaged in mass destruction and spoilation of documents to be able to assert all Plaintiffs trade secrets are suddenly not in their possession. Defendants can't conveniently claim now that have to engage in production that they destroyed all their documents, so they therefore now suddenly in discovery do not possess Plaintiff's trade secrets in order to transfer 600 hours of production costs to Plaintiff for Time Period 1 and 150 hours for Time Period 2.

evidence to show that Defendants are in receipt of thousands of emails containing trade secrets demonstrating this fact.

Under FRCP 26(b)(1) and (2) seeks an order that Plaintiff the cost and burden of re-producing documents that Defendants had an obligation to preserve and that they have deleted. In light of the admissions in ECF95, Plaintiff has issued a second request seeking confirmation of all Deleted Documents. (See attached **Exhibit 2).** Plaintiff has also itemized the cost and burden to reproduce five years of work product, already performed to the Defendants and this exercise contravenes FRCP 26(b)(1) and (2). (See attached **Exhibit 1**). As indicate in Item 1B below, the cost to do this is burdensome, and under FRCP 26(1)(b) Plaintiff as a *Pro-Se* individual, seeks relief from the Court that time and cost to compensate from Defendants deletion of documents should be borne by Defendants.

Further Plaintiff *Pro-Se* objects to the shift of cost of producing emails that Defendants are required to be maintained on their back-up tapes. See [Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309 (S.D.N.Y.2003)](#) (*"Zubulake I"*) (addressing the legal standard for determining the cost allocation for producing e-mails contained on backup tapes); [Zubulake v. UBS Warburg, LLC, No. 02 Civ. 1243, 2003 WL 21087136 (S.D.N.Y. May 13, 2003)](#) (*"Zubulake II"*) (addressing Zubulake's reporting obligations); [Zubulake v. UBS Warburg LLC, 216 F.R.D. 280 (S.D.N.Y.2003)](#) (*"Zubulake III"*) (allocating backup tape restoration costs between Zubulake and UBS). Defendants had an obligation to preserve them, not only from their 2015 litigation and they cannot now claims "nothing is in their possession" and required Plaintiff to incur the cost and estimated burden of 600 hours work to reproduce and 150 hours of .

The costs for Plaintiff producing the **Duplicative Documents** or **Deleted Documents** are itemized hereto in Appendix A.

### Item 3 – Unreasonable Number of Requests

**(iii)** **Unreasonable Number of Requests:** Plaintiffs also seeks resolution and/or relief by the Court under FRCP 26(II) to reduce the redundant requests by Defendant Larkin (**194 individual document requests** propounded to mostly Kumaran individually as well as 20 separate interrogatories.) Instead of issuing a proportionate number of request to advance the litigation, Defendants are abusing this discovery, to compound an unreasonable burden on Plaintiff –when majority of the information is already in Defendants' possession, that can be viewed as vexatious to drive up costs, and that are disproportionate to the needs of this litigation. (**Exhibit 3** is a copy of the overly burdensome requests)

Plaintiffs complied with the FRCP reasonable and proportionality in requests and issued **25 Interrogatories** to each Defendant. Plaintiffs also issued approximately **30 Document Requests** to *each* Defendant. Plaintiffs complied with the Requests for Admissions and set forward **25 Requests** for Admissions to each Defendant.

Instead Defendants, which appear to be mostly propounded by Defendant Richard M. Larkin, took the opportunity to unreasonably burden Plaintiff *Pro-Se* and propound hundreds of repetitious requests, about **194 Document Requests** which appear targeted solely at Kumaran, and are an abuse of the discovery process, which is expressly prohibited under FRCP 26(II). By way of example, and without

limitation Requests #111-#117 are needlessly repetitive and could easily have been propounded as one request as shown below.

### LARKIN DOCUMENT REQUEST 111 – Breached AIP November 2, 2016
111. All documents and communications that support, rebut, refer or relate to Plaintiffs' allegations that Defendants breached the Agreement in Principle on or around November 2, 2016, as described throughout the Complaint, including in paragraph 187 of the Complaint.

### LARKIN DOCUMENT REQUEST 112 – Breached AIP November 2, 2016
112. All documents and communications that refer or relate to when and how Plaintiffs learned that Defendants breached the Agreement in Principle on or around November 2, 2016, as described throughout the Complaint, including in paragraph 187 of the Complaint.

### LARKIN DOCUMENT REQUEST 113 – Breached AIP November 2, 2016
113. All documents and communications that refer or relate to the actions Plaintiffs took in response to learning that Defendants breached the Agreement in Principle on or around November 2, 2016, as described throughout the Complaint, including in paragraph 187 of the Complaint.

### LARKIN DOCUMENT REQUEST 114 – Breached AIP November 2, 2016
114. All documents and communications that refer or relate to communications or notifications by Plaintiffs to anyone else (including, without limitation, Defendants and third parties) that Defendants breached the Agreement in Principle on or around November 2, 2016, as described in paragraph 187 of the Complaint.

### LARKIN DOCUMENT REQUEST 115 – Breached AIP November 2, 2016
115. All documents and communications that support, rebut, refer or relate to Plaintiffs' allegations that Larkin withheld payments, as described in paragraph 187 of the Complaint.

### LARKIN DOCUMENT REQUEST 116 – Breached AIP November 2, 2016
116. All documents and communications that support, rebut, refer or relate to Plaintiffs' allegations that Larkin's "continued to unilaterally change the terms of compensation" as described in paragraph 187 of the Complaint.

### LARKIN DOCUMENT REQUEST 117 – Breached AIP November 2, 2016
117. All documents and communications that support, rebut, refer or relate to Plaintiffs' allegations that "after services were provided," Defendants "proceeded to use and incorporate and retain the benefits of the services and disclosed IP without compensation to Plaintiffs" as described in paragraph 187 of the Complaint.

Plaintiff asserts the requests are sanctionable under Rule 37 by Westerman and designed for improper purpose – to create undue burden to *Pro-Se* Plaintiff. This could easily have been combined #111- #117

> "All Documents and Communications related to Paragraph 187 and your allegation that Defendants breached the AIP. Include without limitation when and how you learned of the breach, actions you took in response, communications to any third parties."

Further these questions do not advance this litigation as all Document and Communications are already with Larkin. Moreover, the response to nearly each and every single one of these requests is already in Defendants possession, custody and control.

The needless, repetitious nature of propounding multiple requests from <u>Larkin</u> to <u>Kumaran</u> related to the same paragraph, could easily have been condensed down to achieve reasonable and is considered vexatious and harassment. The purpose of the redundant and repetitive requests is to needlessly drive up litigations costs for Plaintiff and reduce their ability to pursue the litigation.

The current requests do not identify the sender, and appear to harassment from Larkin directly solely at *Pro-Se* Kumaran and majority of the requests do not result in production other than <u>what is already in Larkin's possession</u> and will not advance the litigation.

Despite reasonable requests to
(i) *reduce* the number of requests to those permitted within the proportionality needs of this case to thirty (30) requests to Plaintiff AStar and thirty(30) requests to Plaintiff Kumaran;
(ii) to separate the requests as between Plaintiff A Star Group, Inc and Plaintiff Kumaran; and
(iii) to separate the requests from each Defendants so as to identify what requests are legitimate, and from which Defendants.
(iv) To the extent Lothrop and Bramante have no document requests they should be identified
(v) To the extent all 194 requests are solely and vexatiously from Larkin to Kumaran, the Court should be able to separate those and proportionate the requests accordingly;

Defendants have not been willing to cooperate at all in any of the above, or compound to a reasonable number or reduce or separate the requests.

Therefore Plaintiff seeks a Protective Order to reduce the number of requests to a proportional number of <u>thirty requests per Plaintiff</u>. That means 30 Documents requests to Plaintiff Pro-Se, and 30 Documents requests to Plaintiff The A Star Group. Plaintiff seeks resolution at the Conference from the Court to limit or protect the scope of vexatious discovery, as part of the excessive discovery issued on Plaintiffs, of deleted document and duplicative documents, documents already within Defendants' possession, custody and control.

In the alternative if the Court is to permit the excessive requests, Plaintiff has estimated the cost and burden in Appendix A to be about 400 hours which will required approximately four (4) months to complete and seeks sufficient time to perform this excessive, frivolous and redundant work. The cost and time burden to produce the Duplicate Documents and Deleted Documents is also identified in Appendix A Sections 1A and 1B.

The requests propounded appear to be <u>*solely from Richard Larkin*</u> for approximately 1,000 hours of frivolous work, to contemplate his own failure to backup documents, Delete Documents or produce Duplicate Documents and are propounded in a vexatious, repetitive, redundant manner that violate the intent of FRCP 26(b)(1) and (2)– intended to cause harm to *Kumaran* to force Plaintiffs to incur further

financial losses to enforce its rights. Plaintiffs stated *Supra* in Item 1 have already address to Defendants that the majority of which seek reproduction of work product, emails and communication already in Defendants possession, custody and control.

## Item 4 - Reasonable estimate of time to complete fact discovery.

Plaintiff estimates the time to complete Fact Discovery with the full production of Documents going back to 2010-2019 as set forth (for Plaintiff to undertake all production of Duplicate and Deleted Spoiled Documents, as well as Disproportionate Requests) is no less than six months. Exhibit A has laid out a detailed estimated of burden and cost of production of duplicate, deleted and excessive production – all of which Defendants have in their possession.

### **Duplicate Document Production (Duplicative / Deleted Documents)**

Item 1 - A – Deleted and/or Duplicative Documents Estimated Time Period 1

- March 2010 – March 2015  – 600 hours

Item 2 - B - Deleted and/or Duplicative Documents Estimated time Period 2 –

- Mar 2015 – June 2019  – 120 hours

Item 3 - C - Overly Burdensome/ Disproportionate Number of Requests

Time to Respond to 194 Requests (As is)  - 398 hours

Time to Complete A, B and C if Not Reduced by Protective Order by the Court – 6 months.

Further, the Documents in A and B are more easily obtained by Defendants and can be restricted under FRCP 26 (B)(1). Plaintiff seeks a cost award to cover a portion of the production costs of items A, B and C for Duplicative, and/or Deleted Documents.

**If Reduced by the Court to Reasonable Number of Requests

Time to Respond to 60 Requests  - 120 hours

(30 for A Star and 30 for Kumaran)

### **Estimated Production Time = 2 months**

Based on Plaintiff (Solely) and not shared with Defendants, having to incur the time to produce <u>all Deleted Documents and Duplicate Documents as well as 194 Document Requests</u> concur that six (6) months given the extensive years to be covered in production is more reasonable. For such burden to be met, so as not to prejudice Plaintiff with the amount of time to produce the documents, Plaintiff has included a detailed Exhibit A of the estimated burden because of the relevant IP showing the fraud and

infringement being shared back until 2011. Plaintiff seeks transfer of cost and burden to produce the Duplicative and Deleted Documents, in accordance with the cost and burden set forth in Appendix A.

Item 5 – Issuance of Subpoenas

    (i)    **Issuance of Numerous Subpoenas**  Plaintiff also seeks the Court's issuance of the various subpoenas that have been sent to the Court.

Upon completion of the Protective Order, Plaintiff seeks to take the depositions of the Key Personnel that were sent to the Court on October 30, 2020. Since March 2020 Plaintiff has sent many emails to Defendants to schedule depositions of Lothrop and Bramante. First for reasons of Coronavirus, which Plaintiff accommodated Defendants wanted to reschedule and delay the depositions. On or around June 1, 2020 Plaintiff requested again for the depositions of Daniel Lothrop and Domenic Bramante. Again Defendants failed to cooperate in scheduling – citing issues that there was "no protective order". In August and September 2020, Defendants sent multiple emails to obstruct these depositions seeking to eliminate all discovery on Lothrop and Bramante. It was not until October 19, 2020 that the Protective Order was issued. On October 28, 2020 Plaintiff *Pro-Se* had a meet and confer with Ms. Tobin and explained clearly that it sought to take the depositions of Lothrop and Bramante early so that Plaintiff would have sufficient time to issue a second set of discovery requests and interrogatories. Further, Westerman would not agree to schedule any depositions unless Plaintiff obtained a subpoena from the Court. On October 30, 2020 Plaintiff sought subpoenas for all Key Persons in the case. (*ECF90*)

Plaintiff does not seek to wait to the end of Fact Discovery to conduct these depositions. Plaintiff has requested to do the depositions **early** so as to obtain the information in time to issues a Second Set of Discovery Requests. Given the detailed complexity of the trade secrets, trading strategies and IP at question, it is very likely that two rounds of discovery requests.

Defendants seek to delay producing their witnesses for Depositions and impede Plaintiff obtaining the discovery it needs that is critical to proving the misuse, misappropriation of Plaintiffs trade secrets to numerous unauthorized and unnecessary parties that infringe upon Plaintiffs' IP. Upon completion of the Protective Order, Plaintiff is awaiting the subpoenas so it can conduct several depositions and since the Court has not issued any of the subpoenas.

Item 6 -  Motions To Compel

Plaintiff has been seeking Documents from Lothrop and Bramante to conduct depositions since March 2020. For the requests that were already issued in June 11, 2020  and June 30 ,2020, Defendants have again produce "nothing" and violated the intent of FRCP 26 by issuing vexatious numerous Boiler Plate obstructions. These obstructions also sought to delay and push back discovery. "[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "no documents and answer[ing] no interrogatories ... are a paradigm of discovery

abuse." *Jacoby v. Hartford Life & Accident Ins. Co.,* 254 F.R.D. 477, 478 (S.D.N.Y.2009) Pegoraro v. Marrero, 281 F.R.D. 122, 128 (S.D.N.Y. 2012)

This signifies more discovery abuse as Plaintiffs have incurred delays and unnecessary time and expense to prepare Motions to Compel. Plaintiffs have not yet issued the Motions to Compel as the filings on October 30, 2020 were not issued yet.

Each of these objections is improper under Rules 33 and 34. First, the objections on the grounds of overbreadth, undue burden, and relevance do not even attempt to state what part of, or how, any of Plaintiff's Deposition Document Requests are irrelevant, overly broad, or unduly burdensome. See Deakins v. Pack, No. 1:10-1396, 2012 WL 242859, at *12 (S.D. W. Va. Jan. 25, 2012) (The "party objecting to discovery as vague or ambiguous has the burden of showing such vagueness or ambiguity."); Lynn v. Monarch Recovery Mgmt., 285 F.R.D. 350, 360 (D. Md. 2012) ("Merely stating that an interrogatory is 'overbroad' does not suffice to state a proper objection… Instead, the objecting party must specify which part of a request is overbroad, and why.") (internal citations omitted). It is well established that such objections constitute meaningless boilerplate that are improper under the Federal Rules of Civil Procedure. See Silicon Knights, Inc. v. Epic Games, Inc., 917 F. Supp. 2d 503, 533 (E.D.N.C. 2012) ("The use of boilerplate objections stating that an interrogatory is overbroad, unduly burdensome, irrelevant, or the like does not satisfy the specificity requirement."), aff'd, 551 F. App'x 646 (4th Cir. 2014); Fischer v. Forrest, No. 14-cv-1304, 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017) (Objecting that requests are "overly broad and unduly burdensome is meaningless boilerplate even before the December 1, 2015 rules amendments, judicial decisions criticized such boilerplate objections.").

In doing do, Defendant Daniel Lothrop and Defendant Bramante violated the December 1, 2015 amendments to the Federal Rules of Civil Procedure by raising these "boilerplate" objections without producing one document. "Rule 26(g) is intended to deter and curb discovery abuses, including evasive responses, by 'explicitly encouraging the imposition of sanctions.'" Kiobel v. Royal Dutch Petroleum Co., 2009 WL 1810104, at *2 (S.D.N.Y. 2009) (quoting Fed.R.Civ.P. 26 advisory committee's note). The certification requirement of Fed.R.Civ.Pro. "obliges each attorney to stop and think about the legitimacy of the discovery request, a response thereto, or an objection." Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees and Rest, Employees Int'l Union, 212 F.R.D. 178, 218-19 (S.D.N.Y. 2003) (quoting Fed.R.Civ.P. 26(g), advisory committee's note to 1983 Amendment). "[A]ll attorneys conducting discovery owe the court a heightened duty of candor." Kosher Sports, Inc. v. Queens Ballpark Co., LLC, 2011 WL 3471508, at * 7 (E.D.N.Y. 2011)

Rule 37 "provides a spectrum of sanctions" for discovery abuses, "[t]he mildest [of which] is an order to reimburse the opposing party for expenses caused by the failure to cooperate." *Cine Forty– Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979); *see also Aetna Life Ins. Co. v. Licht,* No. 03 Civ. 6764, 2005 WL 180873, at *1 (S.D.N.Y. Jan. 27, 2005). This rule "places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust," and "expenses should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying his point to court."

Therefore Plaintiff will seek recovery of its costs and expenses and time for having to compel Defendant Daniel Lothrop's and Defendant Domenic Bramante's discovery.

### Item 7 – Completion of Protective Order of Trade Secrets and also Pre-Existing Materials

Under FRCP 26(c.)(g) and under 18 USC 1835 (b) Plaintiff has sought protection of Trade Secrets to restrict their inclusion in pleadings and exhibits and motions. This also includes protections on Pre-Existing Materials. Since this is a Trade Secret litigation and under 18 USC 1835 (b) competitive harm and significant economic injury will occur if Plaintiff's trade secrets are improperly disclosed, by ways of exhibits or other summaries contained in the upcoming motion practice, sealing and redacting that information is of foremost importance.

The reconsideration motion is currently before the Court. Plaintiff believes and respectfully requests that the Protective Order needs to be resolved before the parties complete the Depositions and exchange the Documents and/or conduct the depositions on Trade Secrets already in Defendants' possession. or further Trade Secrets are sent to Defendants who have long standing patter

Plaintiff is seeking relief from the Court under 26(c.)(g) to seal all Trade Secrets (including summaries and descriptions thereof) from inclusion in any exhibits, pleadings, motions, affidavits or filings with the Court so that can be filed under seal.

### Conclusion on Duplicative Document and Deleted Document Requests

Because of the extensivity of the production as itemized in Exhibit A, Items 1A-1C the parties can continue their own production (estimated to be not less than 600 hours for 2010-2015, 150 hours for 2015-2019) while waiting for issuance of the Protective Order, so that upon that completion, the schedule for exchange of Fact Discovery can commence. In addition the 398 hours is needed for Larkin's individual requests targeted at Kumaran. Unless reasonably controlled by the Court, the current burden on Plaintiff on repetitious, duplicative discovery and also Deleted Documents is over 1000 hours.

As explained herein, there is <u>nine years of fact discovery</u> in this litigation and in accordance with Appendix A, and the estimated cost and burden, Plaintiffs seek reasonable time to produce the discovery and also eliminate the Duplicate Documents and seeks relief to not incur the cost and burden for Deleted Documents, Duplicate Document and/or a reasonable time period to complete its share of the production. If all Discovery is to fall on Pro-Se Plaintiff the time will take not less than six (6) months of significant cost burden and expense as itemized in Appendix A. Under FRCP 26(b)(1) and (2) Defendants should be required to produce all documents already disclosed to them, Deleted Documents and Duplicative Documents and Plaintiffs seek a Protective Order from unnecessary and burdensome discovery as itemized in Items 1-3 herein.

Respectfully Submitted,

//SSK//

Samantha S. Kumaran