# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SAMANTHA SIVA KUMARAN, | ) | |
| *Et al* | ) | Case No: 1:19-CV-08345–MKV-DCF |
| | ) | Judge: Hon Mary Kay Vyskocil |
| *Plaintiffs,* | ) | Magistrate Judge: Debra C. Freeman |
| -against- | ) | |
| | ) | |
| NORTHLAND ENERGY TRADING, LLC ) | **MOTION TO COMPEL AND** |
| *Et al* | ) | **UPDATE RESPONSES** |
| | ) | **LOTHROP AND BRAMANTE** |
| *Defendants,* | ) | **FIRST DOCUMENTS** |

## MOTION TO COMPEL AND UPDATE RESPONSES
## LOTHROP AND BRAMANTE FIRST DOCUMENTS

Pursuant to Federal Rules of Civil Procedures 37, Plaintiffs provide a Motion to update responses to comply with FRCP 26-27, and to produce documents. Plaintiff seeks relief to eliminate the "boilerplate" deficiencies in Defendant Daniel Lothrop's and Defendant Domenic Bramante's responses that were produced on January 19, 2021 <u>without any documents attached.</u> Pursuant to FRCP 26 have had a Meet and Confer and the parties have again been unsuccessful in resolving any differences. "[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "<u>no documents... are a paradigm of discovery abuse.</u>" *Jacoby v. Hartford Life & Accident Ins. Co.,* 254 F.R.D. 477, 478 (S.D.N.Y.2009). Further Plaintiff is alleging to the Court, that the conduct of Westerman is not good faith.

Plaintiff is seeking relief from the Court that Defendant Lothrop and Bramante remove the "boilerplate" objections and not produce or identify the relevant documents. Further, they have expressly defied the Instructions that were sent to them on August 13, 2020. Accordingly, Plaintiff requests relief from the Court that they supplement these deficiencies timely, as set forth below.

## PRELIMINARY STATEMENT

After seven months of stalling, prevaricating and making excuses, the attached discovery requests have been before the Defendants since June 2020. Plaintiff objects and argue that seven months is unreasonable, bad faith and more than enough time to be withholding documents. As

with the protective order, Defendants position has been obstructive and uncooperative at every stage. After first holding out an excuses that the Protective Order was delaying production – the attached exhibits evidence the clear discovery abuse in this action,

Because Defendants provided their response on January 19, 2021 (again late) Plaintiff provides this Motion before the conference so that each and every response is invalid and had not yet gone through before the conference today.

Plaintiff also expresses concern, that this late filings, are intentionally make it time prohibitive to complete discovery with motions to compel on each and every request. Defendants have repeatedly maintained the obstructive position that (1) "no documents will be produced" for Lothrop and Bramante and (2) instead used "cut and paste" boiler-plate objections. The obstructions are designed to result in hundreds of hours of motion practice in the Court. In short, Plaintiff files this Motion to Update Responses and Motion for Sanctions to eliminate burden on the Court and also Plaintiffs over the long term, and to avoid (reduce) the inevitable long, drawn out and procedural uphill climb on five (5) Defendants, where each and every single documents request will be sent back "blank" – with no documents. Plaintiffs in filing this seek this issue resolved. In the latest round, for which Plaintiff seeks to cure in the Discovery Conference today January 22, 2020, Defendants, continue to violated FRCP37 to evade production and as explained in detail below engaged in the paradigm of "boiler-plate" discovery abuse to withhold productions

## Procedural Background

Plaintiff issued a first deposition notice with documents needed prior to the deposition to Defendant Daniel Lothrop on June 11, 2020. The request included an early document request to Defendant Daniel Lothrop seeking to schedule a deposition for June 30, 2020 and requested documents to be produced for the deposition on June 25, 2020. On or around June 30, 2020 Plaintiff issued a deposition notice request to Defendant Domenic Bramante seeking to schedule a deposition for July 18, 2020  and requested documents to be produced for the deposition on July 11, 2020. On or around July 11, 2020 Defendants again failed to produce one document and obstructed cooperation with Lothrop's deposition and discovery request using impermissible "boiler-plate" objections and producing nothing. The FRCP 26(g) prohibit the use of boiler plate objections.

On or around July 30, 2020 Defendants again obstructed in full to all production of discovery on Defendant Domenic Bramante. Defendants failed to produce one document and obstructed cooperation with Lothrop's deposition and discovery request using impermissible "boiler-plate" objections and producing nothing. The FRCP 26(g) prohibit the use of boiler plate objections. Defendants now cited "absence of a Protective Order" for majority of the requests. To save time and conserve efficiencies, Plaintiffs did not issue any further depositions or deficiency notices due to the absence of a Protective Order. The parties did not schedule any depositions pending the issuance of the Protective Order.

On or around August 13, 2020 the parties issued First Set of Interrogatories and Discovery Requests.  On or around September 8, 2020 Defendants sent again emails to Plaintiff to obstruct discovery on Defendants Lothrop, Bramante and Larkin requesting that "no individual discovery" is produced by Defendants. The request was that Kumaran and AStar produce in full and Defendants individuals Lothrop, Bramante including Larkin produce *nothing*.  On or around September 10, 2020 Plaintiffs again notified Defendants that it was unacceptable three days before a production deadline to <u>obstruct all discovery</u> on Lothrop, Bramante and Larkin and restrict cooperation under FRCP 26.

> *I have received your email on Tuesday September 8, 2020 , to seek to underline{reduce all discovery from the Initial Interrogatory and Discovery Requests that were sent on August 13, 2020 from the individual defendants, including Larkin, Lothrop and Bramante, and also <u>eliminate all</u> discovery before the Settlement date. Neither of those requests are acceptable, as the causes of action for example, include fraudulent inducement of the Settlement and other torts that date back to at least 2014 and have damaged Plaintiffs and therefore we need the production as dating back to the Relevant Period as <u>material parts of our request</u>. In fact contrary to your letter we argue that the most important part of the production covers the period 2014-2016 before the Settlement as we have made clear, that the SA was fraudulently induced. (See Section 3, Opp MTD)*

On or around September 11, 2020 Defendants again requested to <u>obstruct all discovery</u> on Defendants Larkin, Lothrop and Bramante. Plaintiffs again responded with

> *As expressed before, we do not agree to delay the August 13, 2020 Richard Larkin's, Domenic Bramante and Daniel Lothrop's discovery pending outcome of a MTD. This request is not consistent with the Fed Rules of Civil Procedures, and our rights to receive timely production. Further it  is expressly not permitted under the existing Court Orders – which have already ruled that discovery is not stayed.*

> *Your request is unreasonable as it suggests that Plaintiffs produce in full, and Larkin does not.*

The decision was also made in large part due to the fact there was no Protective Order, and Lothrop and Bramante's previous use of the fact there was no Protective Order to so no production could be completed. On or around October 2, 2020 Defendants sought again to obstruct discovery on Defendants Lothrop and Bramante. Plaintiffs again had been requesting depositions and documents for over six months. On October 28, 2020 parties had a meet and confer and Westerman indicated that without subpoenas they would not produce any documents.

On December 29, 2020 the Amended Protective Order was issued. On January 8, 2021 the parties had another Meet and Confer. Defendants Lothrop and Bramante had agreed to produce the documents with the attached requests on January 14, 2021. On January 19, 2021 instead, "boiler-plate" responses with no documents were attached. On January 20, 2021 Plaintiffs sent initial deficiency notices. On January 21, 2021 Plaintiff and Ms. Tobin had another meet and confer with no resolution.

As outlined herein, Defendant Daniel Lothrop's and Domenic Bramante's Responses are woefully deficient and fail to comply with the requirements of the Federal Rules of Civil Procedure in several respects. Plaintiff is also in receipt of numerous email requests to either "stay" Lothrop and Bramante's discovery or to avoid discovery on Daniel Lothrop and Domenic Bramante until **after** the Motion to Dismiss. Each and every email from Defendants related to Lothrop and Bramante has sought to obstruct completion of discovery and all such conduct violated FRCP as outlined herein.

Despite seven (7) months to produce by Lothrop and Bramante and symptomatic of the obstruction and discovery abuse that Westerman have engaged in, including multiple emails that they do not wish to produce documents on individual or to wait till after the Motion to Dismiss, and relying on the fact that Plaintiff is Pro-Se, and so in the best case scenario – they will simply procure benefits from the delays, and never be subject to sanctions, as Plaintiff *Pro-Se*, cannot cover her own time, they continue these frivolous "boilerplate" objections so that it will run past the February 5, 2021 deadline. Plaintiff files this motion timely, so that it is expressly clear that it vehemently objects to this conduct. Plaintiff has identified herein how their responses patently

violate FRCP 26 and FRCP 37 and Plaintiff respectfully seeks relief from the Court as outlined herein for them to comply with the rules and make the changes herein.

### *1 - DEFENDANTS VIOLATED EXPRESS INSTRUCTIONS IN RESPONSES*

At the outset, Defendants responses fail to <u>object</u> to any of Plaintiffs Instructions issued on August 13, 2020 (See Attached Exhibit A). In failing to object to the Instructions themselves that have waived their objections. Defendants have also responded to the June 2020 ("older") version of the documents requests, when Plaintiffs clearly updated the requests and reissued them including reference to the Instructions and Definitions issued on August 13, 2020 on  October 30, 2020. This conduct is bad faith, as the parties already had a meet and confer, made necessary changes, and going back to an older and outdated version, is designed to unnecessarily drive up costs and time for the Court. It is clear that Defendants responded to an outdated version.

Instructions were provided to Defendants on August 13, 2020. A copy of the instructions is attached hereto. The instructions sent to Defendants clearly state the objective of the instructions is to produce as many of the documents they can and if not able to produce identify the documents. The purpose of the Instructions was to reduce motion practices and enforce that <u>some</u> documents are produced and if Defendant still objects to the request Defendant is required to identify each such requested document or thing that exists by date, type of document, the native format it exists in, person(s) who have access, and provide a summary of the pertinent contents. As outlined in detail below Defendants have failed to comply with the requests.

Since Defendants waived their objection to the Instructions, Plaintiffs states their conduct violates FRCP to ignore the instructions and send out "boilerplate objections". Without limitations, the following are many of the pertinent violations of the reasonable instructions that were issued where Lothrop and Bramante defiantly chose to not comply with the instructions and increase time, cost and burden to this proceeding.

(i)     Defendants have violated Instruction #27 (Overly Broad and Burdensome)

Instruction #27 instructs Defendants as follows for any objections of Overly Broad and Burdensome Terms:

27. If Defendant objects to any request because it believes the request is overly broad and burdensome to  this action, Defendant is required to produce the documents or things to comply with the fullest extent possible with the request that they consider *are not overly broad and burdensome*, identifying clearly which documents and things they have not produced and what they consider not to be *overly broad and burdensome In* any event, if Defendant still objects to the request Defendant is required to identify each such requested document or thing that exists by date, type of document, the native format it exists in, person(s) who have access, and provide a summary of the pertinent contents.

<u>Defendants produced no documents.</u> Defendants Lothrop and Bramante have willfully failed to (i) comply fully with the request to identify with what they consider are not overly broad and burdensome; (ii) identify clearly which documents and things they have not produced (#27), (iii) identify each such requested document or thing that exists by date and type of document, the native format it exists in, persons who have access and provide a summary of the pertinent contents (#27). By defying the reasonably instructions for discovery requests, that have increased cost, burden and time to Discovery for Plaintiffs and this Court including the need for the filing of this letter and violated the intent and spirit of the FRCP 26-37 to cooperate in discovery.

(ii)     Defendants have violated Instruction #28

Instructions #28 instructs Defendants as follows for any objections of Unreasonable Expense:

28. If Defendant objects to any request because it believes the request *requires unreasonable efforts of expense*, for example because of the use of the word "*ALL*", Defendant is required to produce the documents or things to comply with the request to the fullest extent possible, and to produce what the documents and things that *do not require unreasonable efforts of expense*, identifying clearly which documents and things they have not produced and what documents and things they consider *require unreasonable efforts of expense. In* any event, if Defendant still objects to the request Defendant is required to identify each such requested document or thing that exists by date, type of document, the native format it exists in, person(s) who have access, and provide a summary of the pertinent contents.

<u>Defendants produced no documents.</u> Defendants Lothrop and Bramante have willfully failed to (i) comply fully with the request to produce the items that they do not consider requires unreasonable efforts (#28); (ii) identify clearly which documents and things they have not produced (#28); (iii) identify each such requested document or thing that exists by date and type of document, the native format it exists in, persons who have access and provide a summary of the

pertinent contents (#28). By defying the reasonably instructions for discovery requests, that have increased cost, burden and time to Discovery for Plaintiffs and this Court including the need for the filing of this letter and violated the intent and spirit of the FRCP 26-37 to cooperate in discovery.

### (iii) Defendants have violated #30 and #31(Vague and Undefined Terms)

Instructions #30 and #31 instruct Defendants as follows for any objections of Vague and Undefined Terms:

30  If Defendant objects to any request because it believes the request contains *vague and undefined terms*, Defendant is required to notify Plaintiff **promptly in writing, and no later than within seven(7) days** of receipt of the vague or undefined so that Plaintiff can provide a definition or clarification in the term. Any failure to make a reasonable attempt to notify Plaintiff timely with the objection of a vague and undefined term and to seek a prompt clarification will be considered an attempt to delay and obstruct timely production

31  In any event, **Defendant shall produce the documents or things to comply with the fullest extent possible with the request, and to produce what the documents and things, in a manner that a reasonable person would interpret the *vague or undefined term*, (including their interpretation of the vague or undefined term)** and identify clearly which documents and things they have not produced. In any event, if Defendant still objects to the request Defendant is required to identify each such requested document or thing that exists by date, type of document, the native format it exists in, person(s) who have access, and provide a summary of the pertinent contents.

<u>Defendants produced no documents.</u> Defendants Lothrop and Bramante have willfully failed to (i) include their own definition of the vague and undefined term (See #31); (ii) identify clearly which documents and things they have not produced (#31), (iii) identify each such requested document or thing that exists by date and type of document, the native format it exists in, persons who have access and provide a summary of the pertinent contents (#31); and (iv) promptly and in writing, and no later than within seven (7) days of receipt of the vague and undefined terms, notify Plaintiff so that Plaintiff can clarify the term (#30). Defendants, by not making any reasonable attempt to notify Plaintiffs and seek prompt clarification is an clear attempt to delays and obstruct timely production. (#30) By defying the reasonably instructions for discovery requests, that have increased cost, burden and time to Discovery for Plaintiffs and this Court including the need for the filing of this letter and violated the intent and spirit of the FRCP 26-37 to cooperate in discovery.

### (iv) Defendants have violated #23 (Not in Format)

Instructions #23 instruct Defendants as follows for any objections of Not in Format

> 23. If Defendant objects to any request because it believes the request calls for documents or things to be produced in a manner other than the manner in which they are kept in the ordinary course of business, Defendant is required to produce the documents or things in the native format or in which they are kept in the ordinary course of business. In any event, if Defendant still objects to the request Defendant is required to identify each such requested document that exists,  by date, type of document, the native format it exists in, person(s) who have access to the documents, and provide a summary of the pertinent contents.

<u>Defendants produced no documents.</u> Defendants Lothrop and Bramante have willfully failed to (i) comply fully with the request to produce the items in their native format or the manner it is normally kept in the course of business  (#23); and (ii) identify each such requested document or thing that exists by date and type of document, the native format it exists in, persons who have access and provide a summary of the pertinent contents (#23). By defying the reasonably instructions for discovery requests, that have increased cost, burden and time to Discovery for Plaintiffs and this Court including the need for the filing of this letter and violated the intent and spirit of the FRCP 26-37 to cooperate in discovery.

### (v) Defendants have violated #26 (Not Relevant)

> 26. If Defendant objects to any request because it believes the request is not relevant to  this action, Defendant is required to produce the documents or things to comply with the fullest extent possible with the request that they consider *are relevant to this action*, identifying clearly which documents and things they have not produced and what they consider not to be relevant . In any event, if Defendant still objects to the request Defendant is required to identify each such requested document n or thing that exists by date, type of document, the native format it exists in, person(s) who have access, and provide a summary of the pertinent contents.

<u>Defendants produced no documents.</u> Defendants Lothrop and Bramante have willfully failed to (i) comply fully with the request to produce the items in their native format or the manner it is normally kept in the course of business  (#23); and (ii) identify each such requested document or

thing that exists by date and type of document, the native format it exists in, persons who have access and provide a summary of the pertinent contents (#23). By defying the reasonably instructions for discovery requests, that have increased cost, burden and time to Discovery for Plaintiffs and this Court including the need for the filing of this letter and violated the intent and spirit of the FRCP 26-37 to cooperate in discovery.

**In other words Defendants have maintained the obtuse position NOTHING IS RELEVANT.** This is precisely the discovery abuse FRCP 37 seeks to prevent.

### *2. Improper Objections*

Lothrop and Bramante's response, in substance, are further obstruction to discovery to not produce one single document laced with "boiler plate objections". Defendants responses rely on improper objections under Fed. R. Civ. P. 33 and 34, which prohibit the use of boilerplate objections. Rule 33 requires that any objection to an interrogatory state the grounds for objection "with specificity," Fed. R. Civ. P. 33(b)(4), including particularized facts justifying the objection. See Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 358-59 (D. Md. 2008). To the extent a specific objection is not raised, each interrogatory must "be answered separately and fully in writing." Fed. R. Civ. P. 33(b)(3)-(4).

Rule 34 similarly prohibits boilerplate objections and requires a party objecting to a request for production to: (1) state grounds for the objection with specificity, including the reasons; (2) specify the part of the request that is being objected to, and respond to the rest; and (3) state whether any responsive materials are being withheld on the basis of the objection. Fed. R. Civ. P. 34(b)(2)(B)-(C). Thus, if an objection is raised as overbroad, the objection must "state the scope that is not overbroad and alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection." Sprint Communs. Co. L.P. v Crow Cr. Sioux Tribal Ct., 316 F.R.D. 254, 263 (D.S.D. 2016) (citing Advisory Committee Notes (2015 Amendment)).

Nonetheless, Lothrop's Responses *continuously* rely on the same phrases, Defendant objects to Requests 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12 *(all* requests) and Bramante's Requests 1 – 20  on the same boilerplate objection that Plaintiff's Requests are: (1) overly broad, unduly burdensome and not proportional to the needs of this case; (2) because it calls for documents and

information that are not relevant to the parties' claims or defenses; (3) because it calls for documents and information that are not in Defendant's possession, custody or control; (4) because it requires unreasonable efforts or expense on behalf of Defendant disproportionate to the needs of the Action; (5) because it contains vague and undefined capitalized terms; (6) because it is not limited by any reasonable time period; (7) The repetitious, un-thought-out responses are clear evidence of abuse and obstruction of the discovery process that the FRCP 34 seeks to avoid.

As Defendants are no doubt aware, under Fed.R.Civ.Pro. 34 it is patently improper to assert general objections to discovery demands. By incorporating each of its general objections into the response of each of Defendants' specific requests, Defendants Lothrop, Bramante and Westerman have violated both Fed.R.Civ.Pro. 34(b)(2)(B) and 34(b)(2)(C). *See Fischer v. Forrest*, No. 14-CV-1304 (PAE) (AJP), 2017 WL 773694, at 3 (S.D.N.Y. Feb. 28, 2017); *see also Carl v. Edwards*, No. 16-CV-3863 (ADS) (AKT), 2017 WL 4271443, at 4 (E.D.N.Y. Sept. 25, 2017). By applying general objections to each of Defendant's specific requests, Defendants have violated Fed.R.Civ.Pro. 24, and its objections may be deemed to be waived. *See Carl v. Edwards*, at 4.

## 2.A Defendant Lothrop's Boiler-Plate Objections as to Overbreadth and Undue Burden

Defendants Daniel Lothrop and Domenic Bramante's general objection on the basis that Plaintiffs' request is overbroad or presents an undue burden is therefore patently improper. Courts have already determined that the objection that the phrase "relating to ..." is "vague, ambiguous and overbroad," is vacuous boilerplate. *Fischer v. Forrest*, No. 14-CV-1304, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("[T]he responses to requests stating that the requests are 'overly broad and unduly burdensome' is meaningless boilerplate. Why is it burdensome? How is it overly broad? This language tells the Court nothing."); *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008)

("[B]oilerplate objections that a request for discovery is overboard and unduly burdensome ... persist despite a litany of decisions from courts, including this one, that such objections are improper unless based on particularized facts.") (quotations omitted) (collecting cases). It neither helps the Court understand what about the request is vague or ambiguous or overbroad, particularly with respect to the oft-used and well-understood phrase "relating to."

CapRate Events, LLC v. Knobloch, No. 17-CV-5907-NGG-SJB, 2018 WL 4378167, at *2 (E.D.N.Y. Apr. 18, 2018)

In doing so, Defendant Daniel Lothrop and Domenic Bramante violated the December 1, 2015 amendments to the Federal Rules of Civil Procedure by raising these objections without identifying any particularized fact as to why such objections are made. Each of these objections is improper under Rules 33 and 34. First, the objections on the grounds of overbreadth, undue burden, and relevance do not even attempt to state what part of, or how, any of Plaintiff's Deposition Document Requests are irrelevant, overly broad, or unduly burdensome.

"Merely stating that an interrogatory is 'overbroad' does not suffice to state a proper objection… Instead, the objecting party must specify which part of a request is overbroad, and why.") (internal citations omitted).  It is well established that such objections constitute meaningless boilerplate that are improper under the Federal Rules of Civil Procedure. See Silicon Knights, Inc. v. Epic Games, Inc., 917 F. Supp. 2d 503, 533 (E.D.N.C. 2012) ("The use of boilerplate objections stating that an interrogatory is overbroad, unduly burdensome, irrelevant, or the like does not satisfy the specificity requirement."), aff'd, 551 F. App'x 646 (4th Cir. 2014); Fischer v. Forrest, No. 14-cv-1304, 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017) (Objecting that requests are "overly broad and unduly burdensome is meaningless boilerplate even before the December 1, 2015 rules amendments, judicial decisions criticized such boilerplate objections.").

"[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "no documents and answering no interrogatories…are a paradigm of discovery abuse." *Id*. In order to effectively resist providing a response to a request, a party must show "specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive,…by submitting affidavits or offering evidence revealing the nature of the burden. *Id*.  Any objections must state with specificity: (1) the grounds and reasons for the objection; (2) the specific part of the request that is being objected to (with response provided to the remainder of the request); and (3) whether any responsive materials or information are being withheld on the basis of the objection. Failure to comply with this request will result in the filing of a motion to compel pursuant to Fed. R. Civ. P. 37. II.

Defendants have therefore violated FRCP 37 (II) and not submitted any affidavits or offered any evidence of the nature of the burden.

## 2.B. Vague Ambiguous

Defendants refusal to comply with Instructions and provide notice in any dispute of definitions violates FRCP 37. ("[B]oilerplate objections that a request for discovery is overboard and unduly burdensome ... persist despite a litany of decisions from courts, including this one, that such objections are improper unless based on particularized facts.") *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008) (quotations omitted) (collecting cases). It neither helps the Court understand what about the request is vague or ambiguous or overbroad, particularly with respect to the oft-used and well-understood phrase "relating to." CapRate Events, LLC v. Knobloch, No. 17-CV-5907-NGG-SJB, 2018 WL 4378167, at *2 (E.D.N.Y. Apr. 18, 2018)

See Deakins v. Pack, No. 1:10-1396, 2012 WL 242859, at *12 (S.D. W. Va. Jan. 25, 2012) (The "party objecting to discovery as vague or ambiguous has the burden of showing such vagueness or ambiguity."); Lynn v. Monarch Recovery Mgmt., 285 F.R.D. 350, 360 (D. Md. 2012) With respect to Lothrop and Bramante's refusal to produce documents in response to document requests objections are improper. The Court should finds it dubious for a Defendant to claim that the phrase "OBT Book" is vague and ambiguous; if Defendants themselves used it in their own motion for Protective Order without attaching any definition. Courts do not permit Defendants to make "frivolous" objections to definitions that they have used in their own motions, and the should not be allowed to continue with this objection.

Further since Lothrop and Bramante violated the Instructions they have acted in bad faith and have waived this defense. (*See* Section 2, supra)

## 2.C Defendant Daniel Lothrop's Objections to Relevant Time Period Are Improper

Your objections related to the Relevant Time Period are also not supported by law. Plaintiffs have asserted claims that the fraud and misappropriation upon Plaintiff dated back to the signing of the Timetrics NDA in March 2011 when Plaintiffs started to disclose its IP and software to Defendants. (FAC¶68). The FAC alleges that in October 2011 that Defendants executed contracts with Plaintiffs promising to pay substantial royalties and license fees for all use of Plaintiffs property dated October 28, 2011. The NDA before the Court is dated March 21, 2011.

### (i) Court looks to the Substantive Allegations of the Complaint

Second Circuit law is clear that "the Court looks to the substantive allegations in the Amended Complaint to determine the relevant time period for permissible discovery" See  New York v. Mountain Tobacco Co., No. 12-CV-6276 JS SIL, 2015 WL 3455080, at *1 (E.D.N.Y. May 29, 2015) granting time period to 2010 to match the allegations in the Complaint. Rule 26 of the Federal Rules of Civil Procedure provides for the discovery of relevant information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Chang v. Cavalry Portfolio Servs., LLC, No. CV 11-1153 JS GRB, 2011 WL 6101952, at *1 (E.D.N.Y. Dec. 1, 2011)  As a result, the Court looks to the substantive allegations in the Amended Complaint to determine the relevant time period for permissible discovery. In this regard, the Complaint  alleges actionable conduct by Defendants starting in March 2011 when Plaintiff first disclosed trade secrets and other materials under the Timetrics NDA. On or around October 28, 2011 Defendants explicitly signed contracts with Plaintiff stating that they would honor payment compensations, in perpetuity. The allegations in the Complaint cite fraudulent inducement and recission of the agreements.

Courts determining relevant time period from when outer boundaries of the conduct and contracts were in effect. For example in New York v. Mountain Tobacco Co., the State alleges actionable conduct by Defendants occurring "[s]ince New York's amended tax laws took effect [i.e., September 1, 2010], and continuing through to the present.". Thus, although the parties disagree as to the outer boundary of this time period, which also is discussed more fully below, the Court construes the State's discovery requests as seeking documents for the years 2010 through the present. New York v. Mountain Tobacco Co., No. 12-CV-6276 JS SIL, 2015 WL 3455080, at *1 (E.D.N.Y. May 29, 2015). Therefore there are allegations of well-plead scienter and intent to defraud Plaintiff dating back to 2011 when Defendants attempted to cut Plaintiffs out of their fair share of royalties and license fees. The Complaint also alleges the causes of action continue to the present date as the Complaint also alleges that the Defendants continue to profit from and use the OBT Book to present date and unjust enrichment is continuing to the present date. Plaintiff is entitled to discovery to all allegations contemplated in the Complaint.

(iii)    Contractual Documents

As stated supra a key contract that has been breached is the Timetrics NDA dates March 21, 2011. Defendants signed additional agreements with effective date October 28, 2011 and an End User License Agreement and Terms and Conditions  all of which expressly prohibited Defendants  The Engagement Letter dated October 28, 2011 represented that Plaintiffs were entitled to compensation including 50% of the upside revenue of profit sharing of Defendants. This Engagement Letter shall become a part of the Contract Documents and shall be merged herein with the Terms and Conditions dated October 28, 2011 with effective date November 1, 2011 states

> As such, as part of the fees for services under the Engagement, Northland has also agreed to pay [Plaintiff] **considerable Incentive Compensations hereunder** (as identified in Paragraph 17 below) which shall tie [Plaintiff]  compensation to the revenue increases of Northland. In summary, Northland will compensate [Plaintiff] a percentage of the financial upside and improvements made to Northland's **Monthly Baseline P&L measured for each Nymex Delivery Month in the Fiscal Year 2011**, which will then be adjusted relative to the contribution of increasing or decreasing sales volumes, and then measured against the Monthly Improved P&L for the corresponding Delivery Month in future years and this difference shall be quantified as a Monthly Trading Improvement (defined below). **This Monthly Trading Improvement shall be converted to a Monthly Trading Royalty due to [Plaintiff] at the percentage rates described herein**. A detailed breakdown of the steps of calculation of is provided for in Paragraphs 10 and 11 below.

These facts are also supported by the Complaint that the actions to misappropriate and replicate technologies occurred to "induce" Plaintiffs has far back as 2011 and 2012 and then cut them out of their fair share of royalties. (*See* FAC ¶3- ¶24)

Therefore the Complaint alleges fraud, misappropriation and other breaches dating back to the execution of the Timetrics NDA on March 21, 2011. Plaintiffs have reviewed their emails and documents and communication started in 2010. Defendants by their Initial Disclosures also intend to use Plaintiffs "presentations" to Defendants in or around 2010. Therefore the Relevant Time Period of this litigation is from March 2011 until present date.

**The Relevant Time Period is therefore March 2011 – Present Date, and some emails dating back to 2010.** In light of the extensivity of the time period, Plaintiffs also argue the time period to conduct discovery is too short and needs to be adjusted accordingly.

Page 15

## 2.D – Possession, Custody and Control

Defendants' boiler plate objections repeatedly state that **none of the documents** are within Lothrop or Bramante's possession, custody and control. Under Rule 34(a), parties may request from their adversaries documents (including ESI) "which are in the possession, custody or control of the party upon whom the request is served." Fed.R.Civ.P. 34(a). "The concept of 'control' has been construed broadly." *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 236 F.R.D. 177, 180 (S.D.N.Y.2006) " 'The test for the production of documents is control, not location.' " *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 236 F.R.D. at 180 (quoting *Marc Rich & Co. v. United States,* 707 F.2d 663, 667 (2d Cir.), *cert denied,* 463 U.S. 1215, 103 S.Ct. 3555, 77 L.Ed.2d 1400 (1983))

I – Key Person and Party

Lothrop and Bramante are key players and parties to this action.  The key players doctrine is intended to define which corporate employees' discoverable material must be preserved. That duty applies to all individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." *Id.* at 218 (quoting Fed.R.Civ.P. 26(a)(1)(A)). The duty also extends to information that is "relevant to the claims or defenses of *any* party...." *Id.* (emphasis in original). An employer defendant like Daniel Lothrop retains custody of material has "discoverable information" that Plaintiff "may use to support its ... defenses," and that the Plaintiff[s] may find useful in supporting their claims.. By definition, all parties are by definition "key players."   Therefore the "boilerplate" objection that Lothrop and Bramante have no discoverable information, will produce no documents, and none of his information is relevant to the case is patently inappropriate and violates. There is no dispute that Daniel Lothrop and Domenic Bramante are both parties to this case and a key persons.

For example, without limitation Lothrop and Bramante were "designated" as an individual who possesses suitable skill, knowledge and experience and to make all management and management decisions. Claims of both misappropriation, fraud, and aiding and abetting fraud (against Lothrop and Bramante) and the significant losses they caused to sabotage the PILOT are germane the fraudulent representations Defendants made in their agreements.

Especially relevant to Lothrop and Bramante's involvement in the misappropriation and fraud the FAC clearly alleges that his involvement began when Aviral Chopra resigned and

Lothrop took over the trading activities.(FAC¶86). His role prior to Aviral Chopra's resignation is also relevant. The FAC makes clear that Lothrop had no prior trading experience and his inexperience led to significant losses (FAC¶96). The FAC also makes clear that Defendants started replicating the system during a FAT Test in 2014 for which Lothrop and Bramante could use as a shadow system. The FAC is clear that Lothrop took material actions to "conceal" and make other fraudulent representations to Plaintiffs (*ECF26*, Exhibit1)

Lothrop was the sole trader on the Northland account and only after his involvement did alleged fraud and misappropriation commence in 2014. Lothrop is also alleged to have taken material actions to "sabotage the PILOT" for his own benefit, as well as failed to disclose his use of the OBT System (FAC¶86-111). The parties executed contracts that specifically show that Lothrop's involvement in this case is relevant to Plaintiffs claims. The FAC states that in 2014 Larkin's primary trader Aviral Chopra abruptly resigned in an ongoing exodus of Northland employees resigning. Negligently, Larkin hired a recent college graduate, Daniel Lothrop, with absolutely no trading experience, no qualifications or licenses to trade, to manage millions of dollars of trading floor for Northland. The FAC states that not only did Lothrop fraudulently conceal dozens of unauthorized contracts into an FCM Account, his conduct was replete with errors and omissions, (calculating "zero margin" on the unauthorized transactions), and he frequently wondered off the desk leaving the trading floor unsupervised. Despite numerous documented warnings, Larkin failed to rectify the problem he was leaving the trading floor unmanned and unsupervised. Employee Lothrop lost significant amounts of money during a Thanksgiving OPEC meeting, when he left the trading desk unmanned to attend a Webinar during extreme market volatility. It was not until the Lothrop Webinar Loss, causing several hundreds of thousands of dollars of losses, did the relationship between Plaintiff and Northland breakdown. (*See* FAC ¶¶84-96)

Moreover the contracts required that "a person with suitable skills" manage and take responsibility for the actions and losses. Lothrop and Bramante is the person most knowledgeable about trading and hedging decisions and he was the "sole trader" on the account. Documents from this Defendants is highly relevant to this litigation and Plaintiffs are entitled to all such documents.

Without limitations, to induce Plaintiffs into disclosing trade secrets, those false representations included in the Terms and Conditions, Section 3(b) language that states:

> *T&C Section 3(b)*
> *Timetrics only functions shall be those set forth in the scope of work in the Proposal and/or Engagement Letter. Without limitation of Client's responsibilities,* **_Client agrees that Client,_** *and not Timetrics, shall perform the following functions: (i) make all management decisions and perform all management functions; (ii)* **_designate an individual who possesses suitable skill, knowledge and experience, preferably within senior management, to liaise with and oversee the performance of Timetrics services under the Engagement, and to evaluate the adequacy and results of such services_***; (iii) accept responsibility for the results of such services and the decisions made and actions taken by Client thereupon; and (iv)* **_in the case of risk management advisory and consulting services provided by Timetrics,_** _Client is responsible to establish and maintain internal controls over the processes with which such services are concerned, including, without limitation establish and maintain ongoing risk policies and procedures, risk measures, risk limits and controls, Middle Office setup and controls, internal limits, trading and hedging activities,_ *all the foregoing subject to the terms and conditions, restrictions of use, royalty payments, SaaS fees and other payment obligations to Timetrics specified in the Engagement Letter or other Contract Documents for continuing use.*

Specifically during the PILOT 2014-2015 the FAC alleges that Lothrop and Bramante together with other Defendants, were the "key persons" who actively engaged in fraud, misappropriation and breaches of multiple agreements that he was bound to abide by. This is laid out in detail in the Affidavit ECF26.1 All information about Lothrop and Bramante's conduct during Engagement Letter 5 therefore is likely to yield information relevant for Plaintiffs claims of fraud, misappropriation, fraudulent inducement of the Settlement and breach of contract.  All information during the PILOT and under Engagement Letter 5 is material to Lothrop and Bramante's conduct and liability in this Complaint.

Daniel Lothrop and Domenic Bramante are also alleged to have committed fraud. Therefore all information related to Lothrop and Bramante (i) concealment from Plaintiffs (ii) replications of shadow systems (iii) and various unauthorized deals transferred that caused Losses. The FAC is even specific that Lothrop and Bramante are admissible evidence in this action .

### II – Lothrop and Bramante have the practical ability to obtain the documents

Under Rule 34, " 'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or <u>practical ability</u> to obtain the documents from a non-party to the action." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.,* 171

F.R.D. 135, 146–47 (S.D.N.Y.1997); *see also, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 236 F.R.D. at 180; *Exp.-Imp. Bank of the United States v. Asia Pulp & Paper Co.,* 233 F.R.D. 338, 341 (S.D.N.Y.2005); *Dietrich v. Bauer,* 2000 WL 1171132 at *3 (" 'Control' has been construed broadly by the courts as the legal right, authority or *practical ability to obtain the materials* sought upon demand.") (emphasis added); *In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 530 (S.D.N.Y.1996); *Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 525 (S.D.N.Y.1992) (The courts have "interpreted Rule 34 to require production if the party has the *practical ability to obtain the documents from another,* irrespective of his legal entitlement to the documents.") (emphasis added). In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 195 (S.D.N.Y. 2007), aff'd sub nom. Gordon Partners v. Blumenthal, No. 02 CIV 7377 LAK, 2007 WL 1518632 (S.D.N.Y. May 17, 2007)

Therefore Plaintiff is requesting work product and documents that are well within the practical ability and are work product and analysis performed by a party and Defendant Lothrop and Bramante to produce and have the practical ability to obtain. Defendants objections are impermissible.

III – Lothrop and Bramante had a duty to preserve his emails and work product

Defendant Daniel Lothrop and Domenic Bramante also had a duty to preserve all their emails, communications and work product. Their response that none of his emails are in their possession are deliberate obstruction. "A party or anticipated party must retain all relevant documents (but not multiple *194 identical copies) in existence at the time the duty to preserve attaches, and any relevant documents created thereafter." *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218 (S.D.N.Y.2003); *see also, e.g., Quinby v. WestLB AG,* 245 F.R.D. 94, 103–04, 2006 WL 2597900 at *9 (S.D.N.Y.2006), *amended on other grounds,* 2007 WL 38230 (S.D.N.Y. Jan.4, 2007). The duty to preserve extends "to any documents or tangible things (as defined by Rule 34(a) [including email] ) made by individuals 'likely to have discoverable information that the disclosing party may use to support its claims or defenses.' " *Zubulake v. UBS Warburg LLC,* 220 F.R.D. at 217–18 (fn.omitted); *see also, e.g., Quinby v. WestLB AG,* 245 F.R.D. at 103–04, 2006 WL 2597900 at *9. Additionally, the duty also includes documents prepared *for* those individuals, to the extent those documents can be readily identified (*e.g.,* from the 'to' field in e-

mails). The duty also extends to information that is relevant to the <u>claims or defenses of *any* party,</u> <u>or which is 'relevant to the subject matter involved in the action.' Thus, the duty to preserve</u> <u>extends to those employees likely to have relevant information—the 'key players' in the case.</u> *Zubulake v. UBS Warburg LLC,* 220 F.R.D. at 218 (fns.omitted). Defendants excuse that absolutely nothing is in Defendant Lothrop and Bramante's control is nonsensical, is obstruction and they must produce the documents.

### IV – Lothrop and Bramante also has the Legal Right To Obtain the Documents

Under Federal Rules of Civil Procedure 34, ESI is within a party's custody or control not only when the party has actual possession or ownership of the information, but also when the party has the legal right to obtain the documents on demand. *In re Bankers Trust*, 61 F.3d 465, 469 (6th Cir. 1995), *cert. dismissed*, 517 US 1205 (1996). Jurisdictions applying this "legal right test" have found possession, custody or control where a contract grants a right of access to documents or when a party has a legal right to obtain the information upon demand by virtue of a principal-agent relationship, such as employer and employee, client and attorney, or a corporation and officer or director. Defendant Daniel Lothrop and Domenic Bramante, clearly has the legal right to obtain all the work product, emails and documents he performed. For example, it is typical for third-party technology service providers or cloud-based software services to host their customers' data. They have also been determined to have the legal right to obtain documents. Therefore a party, and employee, has Plaintiffs data in his possession has the legal right to obtain the documents. The case law indicates that data a company can obtain on demand from a third party is data within the company's "control," see *Flagg v. City of Detroit*, 252 F.R.D. at 352 (court held that defendant was obligated to produce text messages stored with its third-party service provider because messages were within the defendant's control); *Tomlinson v. El Paso*, 245 F.R.D. at 477 (Court held company had control of certain electronic ERISA records maintained for the company by a third-party service provider and, therefore, had to produce them).

### 2E - SANCTIONS

Defendant Lothrop and Bramante's pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of

Civil Procedure. An objection to a document request must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded. *Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 292 (E.D.Pa.1980). The burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the discovery rules found in the Federal Rules of Civil Procedure. A party opposing a discovery request cannot make conclusory allegations that a request is irrelevant, immaterial, unduly burdensome or overly broad. Instead the party resisting discovery must show specifically how each discovery request is irrelevant, immaterial, unduly burdensome or overly broad. *Gheesling v. Chater,* 162 F.R.D. 649, 650 (D.Kan.1995). Obiajulu v. City of Rochester, Dep't of Law, 166 F.R.D. 293, 295 (W.D.N.Y. 1996). The obstruction to production warrants an award of sanctions for Plaintiff.

Rule 37 "provides a spectrum of sanctions" for discovery abuses, "[t]he mildest [of which] is an order to reimburse the opposing party for expenses caused by the failure to cooperate." *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979); *see also Aetna Life Ins. Co. v. Licht,* No. 03 Civ. 6764, 2005 WL 180873, at *1 (S.D.N.Y. Jan. 27, 2005). This rule "places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust," and "expenses should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying his point to court." 1970 Advisory Committee Notes. Numerous district court opinions make clear that the losing party on a motion to compel generally "must pay reasonable expenses, barring extenuating circumstances." *Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc.,* 212 F.R.D. 94, 103 (E.D.N.Y.2002) (emphasis in original). *see also, In re Omeprazole Patent Litig.,* No. M–21–81, No. MDL 1291, 2005 WL 818821 at * 15 (S.D.N.Y. Feb. 18, 2005); *Envirosource, Inc. v. Horsehead Res. Dev. Co.,* 981 F.Supp. 876, 880 (S.D.N.Y.1998); *Fund Comm'n Serv., II, Inc. v. Westpac Banking Co.,* No. 93 Civ. 8298, 1996 WL 469660, at *5 (S.D.N.Y. Aug. 16, 1996). Mugavero v. Arms Acres, Inc., 680 F. Supp. 2d 544, 574 (S.D.N.Y. 2010).

(i)     Court can impose for bad faith

This Court may also impose discovery sanctions "under its inherent power to manage its own affairs," and where the "breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction." *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 106–07 (2d Cir.2002). Unlike Rule 37, which does not require bad faith for the imposition of sanctions, *575 when a court acts under its inherent powers a showing of bad faith is required. There must be "clear evidence" that the challenged actions "are entirely without color" and that they were taken for "reasons of harassment or delay or for other improper purposes." *United States v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir.1991); *see also DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 136 (2d Cir.1998). When Plaintiff's counsel deliberately failed to produce one document that was responsive to Defendants' discovery requests amounts to a finding of bad faith, and thus this Court can impose sanctions according to both its inherent powers and Rule 37. The Court has broad discretion in determining whether and in what manner to impose sanctions. *See Aetna Life Ins. Co.,* 2005 WL 180873, at *1; *Ashkinazi v. Sapir,* 02 Civ. 002, 2005 WL 937597, at *4 (S.D.N.Y. Apr. 20, 2005). Plaintiff is entitled to sanctions in the form of *reasonable*, time,  fees and costs associated with (1) this sanctions motion; (2) certain correspondence with this Court concerning this issue; and, (3) the costs of taking deposition of Daniel Lothrop and Domenic Bramante. The amount of  fees and costs will be addressed in a separate Motion on costs and fees as a whole.

Plaintiff respectfully seeks sanctions against Westerman and Defendants Lothrop and Bramante. "Sanctions imposed pursuant to ... Rule 37(a) may be imposed upon either the attorney or the party or both...." *Imperial Chems. Indus., PLC v. Barr Labs., Inc.,* 126 F.R.D. 467, 473 (S.D.N.Y.1989); *see also* 7 *Moore's Federal Practice* § 37.23[4][a]. Given that the relative culpability of [Defendant] and its counsel in perpetrating these discovery abuses is not clear, Defendant and Defendants' counsel will be held equally liable for the attorneys' fee award ultimately imposed. Mugavero v. Arms Acres, Inc., 680 F. Supp. 2d 544, 574–75 (S.D.N.Y. 2010).

"Rule 26(g) is intended to deter and curb discovery abuses, including evasive responses, by 'explicitly encouraging the imposition of sanctions.'" Kiobel v. Royal Dutch Petroleum Co., 2009 WL 1810104, at *2 (S.D.N.Y. 2009) (quoting Fed.R.Civ.P. 26 advisory committee's note).

The certification requirement of Fed.R.Civ.Pro. "obliges each attorney to stop and think about the legitimacy of the discovery request, a response thereto, or an objection." Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees and Rest, Employees Int'l Union, 212 F.R.D. 178, 218-19 (S.D.N.Y. 2003) (quoting Fed.R.Civ.P. 26(g), advisory committee's note to 1983 Amendment). "[A]ll attorneys conducting discovery owe the court a heightened duty of candor." Kosher Sports, Inc. v. Queens Ballpark Co., LLC, 2011 WL 3471508, at * 7 (E.D.N.Y. 2011).

Therefore Plaintiff will seek recovery of its costs and expenses and time for having to compel Defendant Daniel Lothrop's and Domenic Bramante's discovery. Defendants cannot be permitted to exploit the fact that Plaintiff is *Pro-Se* and run a mock of the FRCP 37, assuming that Plaintiff can never be granted sanctions as a *Pro-Se* litigant. Plaintiff is also seeking relief from the Court on equivalent deterrent, as Plaintiff cannot claim attorney's fees as a *Pro-Se* litigant, which has set an inequitable stage for Ms. Tobin and Defendants to intentionally engage in discovery abuse as documented above, knowing there can be no attorney's fees award for Plaintiffs. They seek to intentional cause operating losses, and drive up litigation costs, to run the clock on discovery, to prejudice Plaintiff's rights to obtain documents, procuring delays and advantage at every turn.

Sanctions can be awarded in other fashion – including but not limited to Defendants Lothrop and Bramante having to pay for the costs of their depositions and transcripts which they have willfully delayed for seven months. Or other amenable forms of sanctions such as punitive costs for intentionally causing Plaintiff to spend time correcting these responses.

If the Court determines that Plaintiff *Pro-Se* cannot recover a reasonable value of its time in costs and time for sanctions motions, Plaintiff respectfully requests sanctions be calculated in equivalent costs of discovery for Plaintiff and/or in punitive awards for instance in a fixed amount of $5,000 or $10,000 for each motion for sanctions that is unnecessary, bad faith and fails to comply with FRC 37 as documented herein.  In addition, Plaintiff seeks relief, that since these obstructions have continued for seven months, that Defendants Lothrop and Bramante are required to cover the cost of their depositions and transcripts, so as to deter this type of activity going forward.

Plaintiff has not responded to each and every document request in this motion. As an initial step,  Plaintiff respectfully seeks the relief herein and that the boilerplate responses be removed first and updated responses and documents are provided to cure the deficiencies of the substantive issues raised herein. Plaintiffs also respectfully requests any costs and expenses of this motion under FRCP 37.

Thank you for your consideration.

Respectfully submitted
//SSK//
Samantha S. Kumaran