**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SAMANTHA SIVA KUMARAN, )
       Et al )    Case No: 1:19-CV-08345–MKV-DCF
     *Plaintiffs* )    Judge: Hon Mary Kay Vyskocil
        )    Magistrate Judge: Debra C. Freeman
   -against- )
        )
NORTHLAND ENERGY TRADING, LLC )  **PLAINTIFF'S REPLY**
     Et al ., )  **IN SUPPORT OF**
        )  **PRELIMINARY INJUNCTION**
        )
     *Defendants,* )

---

**PLAINTIFFS REPLY IN SUPPORT OF**
**PRELIMINARY INJUNCTION**

     Pursuant to Federal Civil Rule of Procedure ("FRCP") 65, and Local Rule 6.1, and incorporating by reference all exhibits and filings already on the Docket in this action, and publicly available Exhibits 1-3 attached,  Plaintiff Samantha Siva Kumaran (herein called "Kumaran" or "Plaintiff"), in reply to Defendants opposition to  its Motion for Preliminary Injunction for unfair competition, misappropriation of trade secrets and confidential information, breach of contract states as follows:

Respectfully submitted,

//SSK//

Samantha S. Kumaran

February 3, 2021

## TABLE OF AUTHORITIES

*11 Williston, Contracts, § 32:9 (4th ed. 2009);*

*725 Eatery Corp. v. City of New York, 408 F. Supp. 3d 424, 456 (S.D.N.Y. 2019)*

*Abe's Rooms, Inc. v. Space Hunters, Inc., 38 A.D.3d N.Y.S.2d 138, 140 (App. Div. 2d Dep't 2007);*

*Able v. United States, 44 F.3d 128, 130 (2d Cir. 1995)*

*Accord Christian Fellowship Ctrs. of N.Y., Inc. v. Vill. of Canton, 377 F. Supp. 3d (N.D.N.Y. 2019);*

*Accord Flores v. Town of Islip, 2019 WL 1515291, at *2 (E.D.N. Y. Apr. 8, 2019)*

*Airbnb, Inc. v. City of New York, 373 F. Supp. 3d 467, 480 (S.D.N.Y. 2019)*

*Airbnb, Inc., 373 F. Supp. 3d at 480 (alteration in original)*

*Alexander Interactive, Inc. v. Leisure Pro Ltd., No. 14-CV-2796 2014WL4651942, (S.D.N.Y. Sept. 16, 2014)*

*Am. Can Co. v. A.B. Dick Co., No. 83 CIV. 5435-CLB, 1983 WL 2198, at *6 (S.D.N.Y. Nov. 23, 1983)*

*American Dirigold Corp. v. Dirigold Metals Corp., 104 F.2d 863 (6th Cir. 1939);*

*Amodeo, 71 F.3d at 1049; In re N.Y. Times Co., 577 F.3d 401, 410 n.4 (2d Cir. 2009)*

*Archbrook Laguna LLC, 2008 WL 2987164,*

*Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc., 792 F. Supp. 969, 971 (S.D.N.Y.),*

*AUA Private Equity Partners, LLC v. Soto, No. 17 Civ. 8035, 2018 WL 1684339 (S.D.N.Y. Apr. 5, 2018)*

*Baltimore & O. S. W. Ry. Co. v. Voigt, 176 U.S. 498, 505, 20 S.Ct. 385, 44 L.Ed. 560 (1900)*

*Bancorp, 2016 WL 4916969 at *11 *270*

*Bank of Am., N.A. v. Won Sam Yi, 294 F. Supp. 3d 62, 81–82 (W.D.N.Y. 2018),*

*Barrientos v. 1801 1825 Morton LLC, 583 F.3d 1197, 1215 (9th Cir. 2009)*

*BigStar Entm't, Inc. v. Next Big Star, Inc., 105 F.Supp .2d 185, 191 (S.D.N.Y.2000)).*

*Boone v. Jackson, 206 Fed. Appx. 30, 31 (2d Cir.2006);*

*Brastex Corp. v. Allen Int'l, Inc., 702 F.2d 326 (2d Cir.1983).*

*Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir.1999)).*

*Broker Genius, Inc. v. Zalta, 280 F. Supp. 3d 495, 511 (S.D.N.Y. 2017).*

*Burgess v. Friedmann, No. 9:05 CV0379(NAM)(DRH), 2005 WL 3531459, at *1 (N.D.N.Y. Dec. 22, 2005).*

*Callman, Unfair Competition, Trademarks and Monopolies P 87.3(b)(2) (3 ed. 1970).*

*Castle Creek Tech. Partners, LLC v. CellPoint Inc.*, No. 02 CIV. 6662 (S.D.N.Y. Dec. 9, 2002)

*Cf. VoiceStream Wireless Corp. v. All U.S. Commc'ns*, 149 F.Supp.2d 29, 38 (S.D.N.Y. 2001)

*CJ Prods. LLC v. Snuggly Plushez LLC*, No. 11 Civ. 715  U.S. Dist LEXIS 94811 (S.D.N.Y. Aug. 22, 2011)

*Coto v. New York City Bd. of Elections*, 101 F.3d 803, 805 (2d Cir. 1996)

*Crowley v. VisionMaker, LLC*, 512 F. Supp. 2d 144, 151 (S.D.N.Y. 2007).

*Devos, Ltd. v. Record*, No. 15-CV-6916, 2015 WL 9593616, at *9 (E.D.N.Y. Dec. 24, 2015)

*Drennen*, 235 F. Supp. at 565.

*Duberry v. CNM Analytics, Inc*, 180 A.D.3d 118 N.Y.S.3d 651, 654)

*E. I. Du Pont DeNemours Powder Co. v. Masland*, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016 (1917)

*Empower Energies, Inc. v. SolarBlue, LLC*, No. 16-cv-3220, 2016 WL 5338555 (S.D.N.Y. Sept. 23, 2016);

*Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988)).

*ExpertConnect, L.L.C. v. Fowler*, No. 18 CIV. 4828 (LGS), 2019 WL 3004161 (S.D.N.Y. July 10, 2019)

*ExpertConnect, LLC v. Parmar*, 773 F. App'x 651, 653 (2d Cir. 2019)

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)

*Farrand Optical Co. v. United States*, 175 F.Supp. 230 (S.D.N.Y.1959).

*Feit & Drexler, Inc. v. Drexler*, 760 F.2d 406, 416 (2d Cir.1985).

*Fowle v. Park*, 131 U.S. 88, 9 S.Ct. 658, 33 L.Ed. 67 (1889);

*GE Transp. (Shenyang) Co. v. A–Power Energy Gen Sys., Ltd.*, No. 15 Civ. 6194, 2016 WL 3525358, (S.D.N.Y. June 22, 2016)

*Gelb*, 813 F. Supp. at 1035

*Gelfand v. Stone*, 727 F. Supp. 98, 100 (S.D.N.Y. 1989).

*Gen. Mills, Inc. v. Champion Petfoods USA, Inc.*, No. 20-CV-181,2020 WL 915824 (S.D.N.Y. Feb. 26, 2020)

*Golden Krust Patties, Inc. v. Bullock*, 957 F.Supp.2d 186, 200 (E.D.N.Y. 2013)

*Greenlight Capital, L.P. v. Apple, Inc.*, No. 13–976, 2013 WL 646547, at *4 (S.D.N.Y. Feb. 22, 2013)

*Harlequin Enterprises, Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 949 (2d Cir.1981).

*HBE Leasing Corp. et al. v. Frank*, 837 F.Supp. 57, 59 (S.D.N.Y.1993), aff'd, 22 F.3d 41 (2d Cir.1994),

*Hermes Int'l*, 219 F.3d at 107

*HRB Res. LLC v. Schon, No. 619CV0339MADTWD, 2019 WL 4015256, at \*2 (N.D.N.Y. Apr. 25, 2019)*

*In re Feit & Drexler, Inc. v. Drexler, 760 F.2d 406, 416 (2d Cir.1985).*

*In re Parmalat Sec. Litig., 258 F.R.D. at 245; see also Archbrook Laguna LLC, 2008 WL 2987164,*

*Interphoto Corp. v. Minolta Corp., 417 F.2d 621, 622 (2d Cir.1969)*

*Jacobson & Co. v. Armstrong Cork Co., 548 F.2d 438, 445 (2d Cir.1977)*

*Jinno Int'l Co. v. Premier Fabrics, Inc., 12-cv-07820, 2013 WL 4780049, at \*4 (S.D.N.Y. May 24, 2013)*

*John B. Hull, Inc. v. Waterbury Petroleum Products, Inc. 588 F. 2d 24 (2d Cir. 1978);*

*John T. Lloyd Laboratories, Inc. v. Lloyd Brothers Pharmacists, Inc., 131 F.2d 703 (6th Cir. 1942);*

*King v. Innovation Books, a Div. of Innovative Corp., 976 F.2d 824, 833 (2d Cir.1992)*

*L.V.M. v. Lloyd, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018)*

*LaRouche v. Kezer, 20 F.3d 68, 74 n.7 (2d Cir. 1994).*

*Marcy Playground, Inc. v. Capitol Records, Inc., 6 F.Supp.2d 277, 282 (S.D.N.Y.1998)*

*Marks Org., Inc. v. Joles, 784 F. Supp. 2d 322, 333–34 (S.D.N.Y. 2011)*

*Mastercraft Decorators, Inc. v. Orlando, 356 F. Supp. 3d 259, 269–70 (W.D.N.Y. 2018)*

*Mastrio v. Sebelius, 768 F.3d 116, 121 (2d Cir. 2014)*

*Medtech Products Inc. v. Ranir, LLC, 596 F.Supp.2d 778, 789 (S.D.N.Y. 2008)*

*Mullins v. City of New York, 626 F.3d 47, 52 (2d Cir. 2010) (collecting cases);*

*Mullins, 626 F.3d at 55*

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc., 883 F.3d 32, 37 (2d Cir. 2018)*

*N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43-44 (2d Cir. 1999)).*

*National Starch Products, Inc. v. Polymer Industries, Inc., 273 App.Div. 732, 79 N.Y.S.2d 357 (1948).*

*New Horizons Educ. Corp. v. Krolak Tech. Mgmt. of Syracuse, LLC, No. 18-CV-1223, 2018 WL 5253070,*
*(N.D.N.Y. Oct. 22, 2018)*

*NML Capital, Ltd. v. Rep of Arg, No. 08 Civ. 6978 (TPG), 2012 WL 5895784, (S.D.N.Y. Nov. 21, 2012)*

*O. Smith Corp. v. Petroleum Iron Works Co., 73 F.2d 531 (6th Cir. 1934);*

*O.D.F. Optronics Ltd. v. Remington Arms Co., 2008 WL 4410130 (S.D.N.Y. Sept. 26, 2008)*

*Orthovita, Inc. v. Erbe, No. Civ. A. 07–2395, 2008 WL 423446 at \*9 (E.D.Pa. Feb. 14, 2008),*

*Park Irmat Drug Corp. v. Optumrx, Inc., 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016)*

*ProFitness Physical Therapy Ctr. v. Pro–Fit Orthop and Sports Phys Ther, P.C., 314 F.3d (2d Cir.2002).*

*Ramirez v. Temin & Co., Inc., No. 20 CIV. 6258 (ER), 2020 WL 6781222, at \*6 (S.D.N.Y. Nov. 18, 2020).*

*Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004);*

*Republic of the Philippines v. Marcos, 806 F.2d 344, 356 (2d Cir.1986);*

*Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 908–09 (2d Cir.1990),*

*Rex Medical L.P. v. Angiotech Pharms. (US), Inc., 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010)*

*Roso–Lino Beverage Distribs., Inc. v. Coca–Cola Bottling Co., 749 F.2d 124, 125–26 (2d Cir.1984)*

*Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980).*

*Schroeder v. Pinterest Inc., 17 N.Y.S.3d 678, 690 (1st Dep't 2015)*

*Semmes Motor Inc. v. Ford Motor Co. 429 F. 2d 1197 (2d Cir. 1970).*

*Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir.1970) Id. at 1205;*

*Silver v. Lavandeira, No. 08CIV.6522JSRDF, 2009 WL 513031, at \*4 (S.D.N.Y. Feb. 26, 2009)*

*Societe Generale Alsacienne De Banque, Zurich v. Flemingdon Dev. Corp.,.N.Y.S.2d 278 (2d Dep't 1986).*

*Speedry Chemical Products, Inc. v. Carter's Ink Co., 306 F.2d 328 (2d Cir. 1962);*

*Standard Brands, Inc. v. Zumpe, 264 F.Supp. 254 (E.D.La.1967);*

*Sterling v. Deutsche Bank Nat'l Tr. Co. as Trustees for Femit Tr. 2006-FF6 F. Supp. 3d  (S.D.N.Y. 2019)*

*Tom Doherty Assocs., Inc. v. Saban Entm't Inc., 60 F.3d 27, 37 (2d Cir. 1995);*

*Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964, 968 (2d Cir.1995).*

*Tri–Star Pictures, Inc. v. Unger, 14 F.Supp.2d 339, 362 (S.D.N.Y.1998)*

*U.S. S.E.C. v. Citigroup Glob. Mkts. Inc., 673 F.3d 158, 163 n.1 (2d Cir. 2012) ).*

*UBS Securities LLC v. Red Zone LLC, 77 A.D.3d 575, 578, 910 N.Y.S.2d 55 (2010).*

*United States v. Int'l Bus. Machines Corp., 67 F.R.D. 40, 45 (S.D.N.Y. 1975)*

*Univ. of Tex. v. Camenisch, 451 U.S. 68 L.Ed.2d 175 (1981)).*

*Wheelabrator Corp. v. Fogle, 317 F.Supp. 633 (W.D.La.1970);*

*Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).*

*WIT Holding Corp. v. Klein, 282 A.D.2d 527, 528, 724 N.Y.S.2d 66 (N.Y.App.Div.2001)*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT        …………………………………………………Pg. 1

A.  PLAINTIFFS DID PROVIDE AFFIDAVITS AND EVIDENTIARY ………….Pg. 2
    SUPPORT

B.  DEFENDANTS CASE LAW ON LIKELIHOOD OF SUCCESS…………...…..Pg. 8
     IS INAPPLICABLE

C.  PLAINTIFF SHOWED LIKELIHOOD OF SUCCESS ON ITS CAUSES……..Pg. 14

D.  PLAINTIFF SHOWED IRREPARABLE HARM………………………………Pg. 18

E.  DISPUTED FACTS – CONTRADICTED BY CONTRACTUAL………………Pg. 28
    PROVISIONS

F.  BALANCE OF EQUITIES IS SERVED BY ENFORCMENT………...…………Pg.33

G.  PUBLIC INTEREST IS SERVED…………………………………...…………Pg.36

H.  CONCLUSION…………………………………………………………………Pg.38

Page 1

## *PRELIMINARY STATEMENT*

Defendants opposition - after seven (7) months of preparation and obtaining the benefit of their own obstructions to put in place a protective order (ECF98) - fails to offer case law relevant to the causes of action in this matter and their defense rests on three red herring arguments. Their three superfluous arguments are (1) that Plaintiff's record does not contain evidentiary support or meet the standards of likelihood of success. Their response is false as they exclude Plaintiffs affidavits and declaration already on the record (See *ECF*26.1, *ECF*40.4, *ECF*98.1, noting three (3) affidavits, four (4) contracts, and fifty seven (57) exhibits (*See also* Section A). They also apply the wrong standards of case law using prisoner or criminal cases which apply an incorrect standard of likelihood of success and omit any arguments related to breach of contract, unfair competition and misappropriation (*See* Section B and C); (2) that Plaintiffs claims are barred by laches – which they are not – as Plaintiffs CTA registration for the fund was started on June 22, 2020 and the causes of action accrued timely, and laches is not applicable when a delay was justified due to settlement negotiations as well as their own bad faith, willful intent and unclean hands (Section D.7) A defendant is foreclosed from asserting laches as a defense when it was found to have acted in bad faith or to have willfully infringed a plaintiff's property. *See Hermes Int'l,* 219 F.3d at 107 (holding that "laches is not a defense against injunctive relief when the defendant intended the infringement") (quoting *Harlequin Enters. Ltd. v. Gulf & W. Corp.,* 644 F.2d 946, 950 (2d Cir.1981)); *Tri–Star Pictures, Inc. v. Unger,* 14 F.Supp.2d 339, 362 (S.D.N.Y.1998) (holding that "it is well known that a laches defense is unavailable where a defendant intentionally infringes on a plaintiff's rights"). Laches is also barred, as Defendants, willfully stalled settlement negotiations; (3) that Plaintiff claims can be compensated by monetary damages. This is also incorrect, as they ignore all the prohibitory relief sought and none of the causes sought monetary damages. Defendants ignore and misquote much of the relief sought in this injunction, such as to prevent irreparable harm to good will, customers as well as unfair competition use, the status quo to cease and desist unfair competition and their fraudulent intent to make a judgement uncollectable (*See* Section E, F, G).  As shown herein all three (3) of these straw-man arguments fail out of the gate.

With some irony, Defendants fully represented by counsel fail to proffer **one affidavit or declarations of their own**, and contain factual inconsistencies which were clearly refuted by Plaintiffs affidavits ECF26.1, ECF40.4 and ECF98.1 The Court respectfully is asked to take judicial notice that Defendants papers, remain <u>completely silent</u> on the word "OBT Book", remain <u>completely silent</u> on "CTA's  and they do not offer one defense, or refute or defend the unfair competition and breach of

Page 2

competition claims, therefore rendering these causes of action **_unopposed_**. Despite many cases that appear to target filings by *Pro-Se's (*instead of applying the relevant law*)*, Defendants distract the court with cases on prisoner abuse, (See Section B) and fail to find one relevant case law on misappropriation of trade secrets, breach of contract and unfair competition fail to proffer one affidavit, or declaration of of their own, leaving Plaintiffs declarations unopposed. Despite substantial advantage in lead time to prepare, Defendants were unable to oppose or render any applicable law to oppose Plaintiffs merits on the claims. Multiple sections of legal argument were **_unopposed_**. For these reasons Plaintiffs relief should be granted in full and Defendants inapposite argument rejected outright as outlined herein.

## A - Plaintiffs Did Provide Affidavits and Evidentiary Support

Defendants are factually incorrect that the record does not include affidavits and evidence in support of the Preliminary Injunction as well as contracts as exhibits attached. It is well settled that "In deciding a motion for preliminary injunction, a court may consider the **entire record including affidavits and other hearsay evidence**." *Sterling v. Deutsche Bank Nat'l Tr. Co. as Trustees for Femit Tr. 2006-FF6*, 368 F. Supp. 3d 723, 725 n.2 (S.D.N.Y. 2019) (internal quotations omitted). In the Second Circuit, courts "routinely consider hearsay evidence in determining whether to grant preliminary injunctive relief," including affidavits, depositions, and sworn testimony. Mullins v. City of New York, 626 F.3d 47, 52 (2d Cir. 2010) (collecting cases); accord Park Irmat Drug Corp. v. Optumrx, Inc., 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016) (citation omitted) (explaining that in deciding a motion for a preliminary injunction, a "**court may consider the entire record including affidavits and other hearsay evidence").** As the Supreme Court has observed, "the decision of whether to award preliminary injunctive relief is often based on 'procedures that are less formal and evidence that is less complete than in a trial on the merits.' " Mullins, 626 F.3d at 51-52 (quoting Univ. of Tex. v. Camenisch, 451 U.S. 68 L.Ed.2d 175 (1981)).

Plaintiff has thus far filed  and based on the foregoing principles, the Court is respectfully requested to take judicial notice and permit inclusion in this motion review of the **_three (3) affidavits_** (*ECF*26.1, *ECF*40.4, *ECF*98.1) and **_four (4) executed contracts_** (ECF40.2("T&C"), ECF40.3, ECF52.3 ("EULA"), *ECF*29, ECF52.2("NDA"), ECF52.1 ("Settlement")), and **_fifty seven (57)_** documentary exhibits, which include **_one_** exhibit (*ECF33.1*, *ECF40.1)* of a publicly available judicial notice of disciplinary actions and compliance violations, **_two_** exhibits filed ECF40.2 and *ECF40.3* providing evidence of the OBT Book, Larkins request that Kumaran (individually) trade a managed account,  **_six_** exhibits filed ECF92.2-ECF92.7) as well as **_forty eight (48) exhibits_** *ECF*98.2-*ECF*98.49 on the record thus far, as well as the four included signed contracts attached as exhibits. (*See* 725 Eatery Corp. v. City of New York, 408 F.

Supp. 3d 424, 456 (S.D.N.Y. 2019) Court granting Preliminary Injunction and agreeing to judicial notice of over *eighty documentary exhibits* on the record). In addition, Plaintiff provides the Court judicial notice of three (3) additional public documents (**Exhibits 1, 2 and 3**) which are in the public domain are admissible under Rule 201 of the Federal Rules of Evidence.[1] Further given Defendants are represented by qualified counsel, no lenience should be granted or ignorance of the well-established fact to include existing affidavits and documents on the record that are permitted in this motion.

(I)    Evidentiary Record and Affidavits are Sufficient to Show Likelihood of Success

**Affidavit #1 – ECF26.1**  The *first* affidavit filed December 26, 2019 (*ECF26.1*) includes sworn declarations and material statements by Plaintiff that include that "I am the sole owner of the trade secrets the IP, that IP was licensed under express duties of secrecy and non-use under the license agreements and disclosed under obligations of secrecy." It also provides declarations .. "that Defendants modified and created an internal clone called the OBT Book, and misuse[d] my technologies for their internal use, all of which were fraudulently concealed .. ..and were scalping the value of the PILOT to build and modify and adapt the programs and models..for [their] own personal use and gain, and advancement at Northland, in order to stop paying the license fees to me…and transfer the technologies onsite, in express breach of the agreements." (*See ECF*26.1 ¶1-38) Other factual evidence supporting this motion include, without limitation the express breaches of contracts and unauthorized replication for use and profit.

**Affidavit #2 – ECF40.4**    The *second* affidavit filed March 22, 2020 (*ECF*40.4) includes sworn declarations from Plaintiff that without limitation Larkin is a competitor as a CTA, and the Larkin demanded Plaintiff engage in unlawful activity, to take credit for his competitors performance record without compensation – supporting the irreparable harm in good will and reputation. It also states clearly that new entities Nefertiti Asset Management, LLC were intended to be competitors as CTA's with Larkin as a "fiduciary". The Court is specifically directed to take judicial notice in the sworn declarations ¶32-42, that Larkin see. E.g.¶35 "In June and July 2014, I gave Larkin, Northland and Hedge line-by-line access to coding and formulae during a Factory Acceptance Test ("FAT") Test. Defendants then mis-used that information as the basis to create their replications in the OBT Book."

In addition the Court may reference the TRO and initial motions for Protective Order filed on this docket on March 6, 2020. (*ECF*35, *ECF*36), demonstrating bad faith and intention to publish.

---

[1] Rule 201 of the Federal Rules of Evidence authorizes courts to, at any stage of the proceeding, "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), (d). While a court has discretion to take judicial notice of a fact, it "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

Page 4

**Affidavit #3 – ECF98.1** The *third* affidavit filed in connection with the Protective Order, on December 1, 2020 and also part of this Preliminary Injunction, includes further sworn declarations by Plaintiff together with forty eight exhibits, demonstrating Defendants long standing obstructions to make public Plaintiffs confidential and trade secrets, misrepresentations and enacting their bad faith to use "confidential information as leverage". *ECF*98.1 also demonstrates the overt actions to deny confidentiality and trade secrets, they already agreed to protect in the Settlement and such conduct is willful. The affidavit in consideration of this injunction and the Protective Order show that Defendants made false statements to the Court and Plaintiff, including in their briefings "*nothing is confidential or trade secrets*" (*ECF*90.2) and despite contractual obligations agreeing to what Plaintiffs trade secrets are, their overt and repeated attempts to disenfranchise Plaintiffs rights to its property. A party who has acted in bad faith or with unclean hands cannot seek benefit in equity in opposing an injunction.

In addition the contracts filed with the pleadings are sufficient record for the Court to ascertain the contractual breaches and sufficient likelihood of success on this motion. These contracts, affidavits include sworn statements and declarations, as well as evidentiary support, as well as the substantial likelihood of success on the merits filed in *ECF*52, are sufficient to make an initial showing, for additional evidence to be brought into an evidentiary hearing, that the Court must take judicial notice of. See also 725 Eatery Corp. v. City of New York, 408 F. Supp. 3d 424, 456 (S.D.N.Y. 2019) As discussed above, the entire record of affidavits and evidence, in this proceeding is to be considered, courts may consider even inadmissible evidence in assessing the propriety of preliminary injunctive relief, be it in the form of affidavits or documentary evidence. Accord Flores v. Town of Islip, 2019 WL 1515291, at *2 (E.D.N. Y. Apr. 8, 2019) (concluding that "at a threshold level, declarations, depositions, and other documentary evidence may be considered at the preliminary injunction stage"). Thus, the documents subject to Plaintiffs' judicial notice request may properly be considered. 725 Eatery Corp. id.

(II) Items to be Filed under Seal or Redacted

Affidavit #4 – (ECF52. Pg 10) Plaintiff also provided notice in the Motion (Page 10) of an Affidavit of Obstruction – documenting the settlement negotiations and failure to protect IP, and the extensive negotiations that contributed to this motion. Because Plaintiff also filed for the ability to redact and file such an affidavit in redacted form, as it would disclose non-public financial information under seal – Plaintiff respectfully requests **Affidavit #4** – to be filed under seal (Or in redacted form) as part of the evidentiary hearing. Plaintiff also respected that the Court deferred the Protective Order to Magistrate Freeman and until ruling on that did not file any additional affidavits for guidance on redactions. This

would have encumbered the proceedings. This affidavit also includes details of settlement negotiations which spanned January 2017 – June 2019 and ongoing attempts to resolve these publications. The facts were in part sworn in **Affidavit 3** (ECF98.1 which also is part of the evidentiary record).

(III) Trade Secrets Do Not Need to be Published in the Pleadings or Made Public. Plaintiff has moved to file under seal

Since this is a trade secret case, filed under the Defend Trade Secrets Act, Plaintiff need not publicly file its trade secrets at the unsealed pleading stage. Defendants are again incorrect that the record was not adequately laid.  It is well-settled law that for a Trade Secret, Plaintiffs need not make their elements of trade secrets in their pleadings. (See  citing *Orthovita, Inc. v. Erbe,* No. Civ. A. 07–2395, 2008 WL 423446 at *9 (E.D.Pa. Feb. 14, 2008), for the proposition that "[A] plaintiff pleading misappropriation of a trade secret need not plead the details of its trade secrets in a publicly filed complaint, inasmuch as such disclosure would destroy the essential 'secrecy' of the claimed trade secret".  At the pleadings stage, the plaintiff must 'generally identify the trade secrets at issue,' but need not plead the trade secret with specificity in the complaint." *Bancorp*, 2016 WL 4916969 at *11 *270 (quoting *Alexander Interactive, Inc. v. Leisure Pro Ltd.*, No. 14-CV-2796(PKC), 2014 WL 4651942, at *5 (S.D.N.Y. Sept. 16, 2014) ); *see also Medtech Products Inc. v. Ranir, LLC*, 596 F.Supp.2d 778, 789 (S.D.N.Y. 2008) (specificity as to the precise trade secrets is not required); *Jinno Int'l Co. v. Premier Fabrics, Inc.,* 12-cv-07820, 2013 WL 4780049, at *4 (S.D.N.Y. May 24, 2013) ("Detailed allegations concerning the nature of the alleged trade secrets are not necessary at the pleading stage."). Mastercraft Decorators, Inc. v. Orlando, 356 F. Supp. 3d 259, 269–70 (W.D.N.Y. 2018)

What Defendants are faulting is that Plaintiff *Pro-Se*, without sealing order from the Court, did not publish its trade secrets in its motion and memorandum of law. The Court is respectfully requested to take notice of Plaintiffs frequent notice to file its trade secrets and supporting documents under seal dating back to March 6, 2020 (ECF35, ECF36). Plaintiff also incorporates by reference herein *ECF98,* and includes all arguments therein supporting Defendants willful attempts to publish trade secrets, and Plaintiff requests to file under seal.  Plaintiff respectfully requests the Court take judicial notice and incorporate herein legal arguments associated with this motion for Preliminary Injunction and Protective Order filed in ECF54, ECF60, ECF70, ECF87, ECF91, ECF92, ECF96, ECF98 and ECF111. [2]

---

[2] Full record of argument for this Preliminary Injunction for protection of trade secrets and confidential information referenced in this motion includes June 17, 2020 (ECF54), July 7, 2020 (ECF60) with timely filed extension request, July 17, 2020 (ECF70), October 28, 2020(ECF87) timely filed notice of motion for reconsideration, November 2, 2020 (ECF91) timely filed motion for reconsideration, November 16, 2020 (ECF92), timely filed motion for reconsideration, November 26, 2020 (ECF96) in consideration of Thanksgiving timely filed motion for extension which was not ruled upon and December 1, 2020, having to meet deadlines over the holidays (ECF98) and letter to vary deadlines January 20, 2020 (ECF111)

Page 6

### (IV) Plaintiff filed timely motion to seal exhibits and evidence related to Trade Secrets

Further Plaintiff has filed a motion to seal the trade secrets, so that it can file the Exhibits and Affidavits containing the evidence of trade secrets under seal to the Court. That motion is included in the relief sought, so that the evidence can be presented in accordance with the Defend Trade Secrets Act. Plaintiff filed an application for relief under 18 USC 1835 (b) and in this application is the relief that Plaintiff may file additional evidence under seal. Further, to the extent additional evidence is needed, under FRCP 65(b). Plaintiff has made an initial showing of evidence to show likelihood of success to warrant an evidentiary hearing. Plaintiff had met the pleading standards for each cause of action.

Plaintiff has also requested to file under seal the items identified in ECF54, and a identified in its protective order motion is to prevent economic injury. Plaintiff also made the requisite showing of significant economic injury and competitive harm. (*ECF52* and *ECF54*). The Supreme Court in E. I. Du Pont DeNemours Powder Co. v. Masland, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016 (1917) recognized that where a secret process is alleged, an *in camera* treatment of the evidence supporting the allegation is appropriate until it is either proved not to be a secret process or the court determines that it should be revealed. This protection is accorded because the existence and ownership of a trade secret is said to give rise to a property right which runs from the valuable competitive advantage the secret's owner has created in the form of the trade secret. Fowle v. Park, 131 U.S. 88, 9 S.Ct. 658, 33 L.Ed. 67 (1889);[3] Courts choose to protect this property right and its attendant competitive advantage with *in camera* proceedings because to disclose the trade secret publicly is said to dedicate it to the world and to destroy the owner's proprietary control and the secret's property value. [4] These cited cases employing *in camera* proceedings, however, have mainly involved secret processes, secret formulae, or secret designs. United States v. Int'l Bus. Machines Corp., 67 F.R.D. 40, 45 (S.D.N.Y. 1975)

Defendants argument that the trade secrets weren't included publicly in the motion are also unsupported by law, as Plaintiff has also sought relief, permitting the filing of trade secrets and commercially sensitive information under seal. Recent cases in this District in November 2020, have also ruled precisely on this point - See Ramirez v. Temin & Co., Inc., No. 20 CIV. 6258 (ER), 2020 WL 6781222, at *6 (S.D.N.Y. Nov. 18, 2020). Here Judge Ramos, ruled that the Court has established that business information constitutes confidential information or trade secrets when it is "sufficiently

---

[3] Speedy Chemical Products, Inc. v. Carter's Ink Co., 306 F.2d 328 (2d Cir. 1962); Farrand Optical Co. v. United States, 175 F.Supp. 230 (S.D.N.Y.1959).

[4] John T. Lloyd Laboratories, Inc. v. Lloyd Brothers Pharmacists, Inc., 131 F.2d 703 (6th Cir. 1942); American Dirigold Corp. v. Dirigold Metals Corp., 104 F.2d 863 (6th Cir. 1939); A. O. Smith Corp. v. Petroleum Iron Works Co., 73 F.2d 531 (6th Cir. 1934); Wheelabrator Corp. v. Fogle, 317 F.Supp. 633 (W.D.La.1970); Standard Brands, Inc. v. Zumpe, 264 F.Supp. 254 (E.D.La.1967); National Starch Products, Inc. v. Polymer Industries, Inc., 273 App.Div. 732, 79 N.Y.S.2d 357 (1948).

valuable and secret to afford an actual or potential economic advantage over others." *In re Parmalat Sec. Litig.*, 258 F.R.D. at 245; *see also Archbrook Laguna LLC*, 2008 WL 2987164, at *3. Here Judge Ramos ruled that Courts have regularly sealed procedural documents. *See, e.g., Archbrook Laguna LLC*, 2008 WL 2987164, at *1. Trade secrets are important assets to a firm, and their disclosure places the firm at serious risk of injury. *Amodeo*, 71 F.3d at 1049; *In re N.Y. Times Co.*, 577 F.3d 401, 410 n.4 (2d Cir. 2009) ("When litigation requires disclosure of trade secrets, the court may disclose certain materials only to the attorneys involved."). As such, public access to this information could alter the Firm's competitive position in the consulting market. *See, e.g., Gelb*, 813 F. Supp. at 1035 (holding that compilation of calling cards is information that is sufficiently valuable and could alter a firm's competitive position). Defendants have demonstrated that the business information in the Document constitutes confidential trade secrets, which if exposed any longer could cause injury to the Firm. *See Sit-Up Ltd.,* 2008 WL 463884, at *3. As a result, the business information will be sealed.  *See* Ramirez v. Temin Id

The Court is respectfully requested to take note of Defendants obstructions and clear and manifest breaches of the Settlement Agreement to this Court, where, even though prohibited by contract, Defendants willfully and intended to publish Plaintiffs trade secrets and made statement on the record of the intent to harm stating "they <u>do not believe they need to redact trade secrets and confidential information in pleadings, exhibits and affidavits *See ECF50 Page 1 -</u>  *Defendants believe it is impracticable to identify the documents and information to be designated as "confidential trade secrets*. By their own bad faith and obstructions they procured the benefit of substantial delays in achieving ongoing use and profit from their misappropriation and unfair competition, with an intention to harm Plaintiff.

(V) Defendants failed to put in any Affidavits or Declarations, Plaintiffs statements unopposed

Despite having seven months to prepare with some irony, Defendants who are represented by Counsel, failed to oppose any of the Affidavits above, or submit declarations of their own. This error is fatal. Plaintiffs affidavits and evidence are thus ***unopposed***, and Plaintiffs motion should be granted as unopposed. For the same reasons argued by Defendants since they put forward no contradictory declarations, their own statements in their pleadings cannot be taken as facts, and therefore, with full opportunity (as professional attorneys) to submit sworn declarations, Plaintiffs declarations are undisputed facts. The Court is respectfully requested to take note that the affidavit and declaration ECF26.1 has been on the docket since December 26, 2020 and was unopposed in in the Motion to Dismiss or opposition to this Preliminary Injunction with no other declaration. Defendants have had more than 12 months to oppose this affidavit for the Preliminary Injunction.

Page 8

The Court is respectfully requested to take note the affidavit and declaration ECF40.4 has been on the docket since March 22, 2020.  Defendants paraphrase the same contested facts, as allegations in their response, but despite being represented by Counsel, do not submit any declaration or affidavits to counter Plaintiffs sworn declaration. Each of their false statements, has already been contradicted and placed on the record in ECF40.4 (See False statements).

Finally, ECF98, filed on December 1, 2020, is another sworn affidavit and declaration in conjunction with the Protective Order, clearly lays out a timeline of persistent action by Plaintiff

The Court should also respectfully take note, that Defendants response makes no mention or denial of the OBT Book – clearly avoiding the issue. Neither do they even attempt to defend the Unfair Competition claims, making no mention of the CTA businesses started. They make no mention of Plaintiffs registration in June 22, 2020 and the timeliness to thwart any unfair competition.  Defendants failure to defend the breach of contract claims, or the unfair competition claims are also fatal. Their defenses are therefore waived.

(VI) Verification statements of Amended Complaint

Plaintiff also is willing to add verification to the Amended Complaint and its Motion for PI for purpose of the evidentiary hearing. Under FRCP (65) Plaintiff has met the standards to show >50% likelihood of success as relevant to the causes and with the exhibits, contract and declaration thus far. In addition for the avoidance of any doubt, Plaintiff will provide verifications of both the Amended Complaint and Preliminary Injunction. The  Defendants are incorrect that sufficient record was laid to show substantial likelihood of success for each of the three causes. Further to the extent additional facts and evidence are needed Plaintiff filed the necessary motion to file additional documents under seal.

## B -  Westermans' Case Law on Likelihood of Success is Inapposite and Fails

Aside from the fatal deficiency that Defendants ignored the record of Plaintiffs affidavits, declarations and exhibits already on the Record (3 affidavits, 4 contracts, and 57 exhibits, *See* A supra), their further deficiency is that Defendants fail to counter any of the statements with their own declaration or affidavits and their brief relies only on "allegations" and a pocket of wholly irrelevant case law. What appears to be the real theme in their brief is instead to attack a *Pro-Se* litigants, being denied an evidentiary hearing instead of focusing on the actual pleadings standards required for (a) Unfair Competition (b) Breach of Contract and (c) Misappropriation of Trade Secrets.  Defendants use cases which were carefully selected to be *Pro-Se* cases, such as prisoner abuse cases - a prisoner who cannot get access to a library, and another prisoner who is upset about being denied kosher food, or a prisoner

Page 9

sex offender who filed for a writ of habeas corpus. These wholly irrelevant cases try to distract the Court, without once applying the correct standards for preliminary injunction for the types of factual disputes and **commercial litigations** before the Court in this preliminary injunction. Quite surprising from professional counsel,  many cases, in fact wholly misquote from and distort the actual opinion from the Court. In ***Point I*** (Def. Opp. Pg5-6) each case, as stated herein is denounced as irrelevant.[5]

### I - Serrano v. Lopez is misquoted and inapplicable. (Def.Opp.Pg 4)

Defendants in this case law misquotes the actual order. There was no exception for Plaintiff because she was *Pro-Se.* Serrano, a backup singer in a musician band, was claiming among other things defamation and slander, and did not show the **probability of success is greater than 50% due to deficiencies in not showing substantial likelihood**. Instead, Defendants distorts the Court order that ruled, "To make a showing of a "likelihood of success" a plaintiff must convince the Court that it is more likely than not—or "the probability of prevailing is 'better than fifty percent' "—that it will succeed on its claims. *Greenlight Capital, L.P. v. Apple, Inc.,* No. 13–976, 2013 WL 646547, at *4 (S.D.N.Y. Feb. 22, 2013) (quoting *BigStar Entm't, Inc. v. Next Big Star, Inc.,* 105 F.Supp .2d 185, 191 (S.D.N.Y.2000)). Therefore this case law fails – as in this case Plaintiff did make the necessary showing of that it has more than 50% "likelihood" of success – it is inapposite to Plaintiff who did make the showing or the cause of actions alleged here in unfair competition, breach of contract or trade secrets.  (*Mem_PI Pg.2-10*)

### II – Coto v. NYC Brd of Elections Def.Opp.Pg.5 uses inapplicable standard for likelihood of success for election fraud.

On Pg. 5, Defendants rely on another questionable case-law which is not applicable to a trade secret litigation. Defendants use an election fraud claim, based on §1983, where injunctive relief was sought for depriving people from the right to vote, brough by state senators in New York, on the basis that voting machines were not delivered on time. The standards for that injunction under an election fraud § 1983 case for likelihood of success on the merits, include "intentional or willful conduct by state officials". But the case at hand, is not an election fraud and for trade secrets is not appropriate to use of this precedent to the facts at hand. The inapposite standards and inapplicable. The Court ruled specifically under an election fraud standard  § 1983, that there is no evidence here of intentional or willful conduct by state officials necessary to state a cognizable § 1983 claim for deprivation of the right to vote, and therefore the plaintiffs are unable to establish a likelihood of success on the merits or a sufficiently serious question going to the merits of the appeal. Coto v. New York City Bd. of Elections, 101 F.3d 803, 805 (2d Cir. 1996) This case law is therefore <u>not applicable – fails to refute</u> the facts and

---

[5] Defendants appear to have made a typo and skip from Point 1 (Pg.5) to Point III (Pg.7) and omit any Point II.

affidavits and strong likelihood of success pled in Plaintiffs motion and memorandum. The case is inapposite this standard does not apply to the three causes of action cited by Plaintiffs (1) misappropriation of trade secrets (2) breach of contract and (3) unfair competition. Plaintiffs have shown a likelihood of success as is required under the law in those statutes. This case is inappropriate.

III -  Simmons vs. Cranston is an inapposite prisoner case (Pg. 5).

On Pg.5 Defendants continue to cobble together unrelated prisoner incarceration and prisoner rehabilitation cases that have absolutely nothing to do with a civil and commercial Federal trade secret litigation involving commercial trade secrets and intellectual property laws. Going further Westerman actually contorts the case facts, to stitch together a completely untrue narrative on the Court ruling. For instance in Simmons vs. Cranston - a case about a prisoner who couldn't get access to a library -  the Court didn't deny him but ruled in fact that it "*deferred its ruling*" .. in fact going ahead to the injunction to proceed permit deposition and access to an evidentiary record. Despite  their ad-hominem attacks on Pro-Se,  and their representation by counsel and their seven month lead time to prepare, they also cite to the wrong year of the case (Simmons case cited was from 2007 [sic]2008).  The case cited in Simmons, again takes out of subtext, mis-paraphrases the Court order who was ruling on evidence of whether prisoner had evidence to infer that the charges were retaliatory in nature – and  whether he is being subjected to disciplinary hearings and sanctions that violate his First Amendment or due process rights – are sufficient to grant an injunction to the prisoner abuse. The standards for the likelihood of success of prisoner retaliation suits are wholly incomparable, and do not address the criteria on showing the likelihood of success for trade secret and unfair competition. The standard to show likelihood of success on a preliminary injunction set forth in the memorandum Pg5-7 setting forth clearly, the counter of trade secrets the six factors, and more than fifty percent change of success. They are inconsistent with Courts ruling on a prisoners need to show whether his access to prisoner library and disciplinary hearings violate his due process rights. The only evidence in that case that was need to be shown was one of "retaliation". The case is inapposite.

IV - City of Peekskill  vs. Rehabilitation Support Services fails in standard (Pg. 5).

The next far-reaching un-useful case, is related to "homeless people" claiming that residences at HUD did not meet various live-in standards. (*City of Peekskill*.) Again this has no relevance to the facts and law relevant to this case. Westerman mis-cites the Order which states "Plaintiff having offered no evidence that the RSS units shall house more than three live-in residents has not met its burden of demonstrating a likelihood of success on the merits of this issue." (*See* Opp. Pg. 5). Defendants again

Page 11

intentionally misquote the actual Order, to paint a false narrative of not meeting an evidentiary burden. Further  the standards for burden of proof to do with a housing violation, are to show the housing units did not comply with coding regulations. These are <u>totally irrelevant</u> in the pleading standards for (a) unfair competition (b)breach of contract or (c) misappropriation of trade secrets.  (*See* Mem-PI Pg.2-10) where Plaintiff did meet the standards to show greater than 50% likelihood of success on the merits.

### V -  Burgess v. Friedmann is inapplicable prisoner law

On Pg. 5 Defendants continue their prisoner cases § 1983 - apparently the only cases they could find where *Pro-Se* injunctions were denied. In this totally irrelevant case, Burgess, an inmate in the custody of the NYS Dpt. of Correctional Services ("DOCS"), filed civil rights action pursuant to 42 U.S.C. § 1983 to challenge his removal from the kosher diet. Plaintiff claimed the decision to withhold the kosher diet violated his free exercise rights under the First Amendment, for which he sought an injunction.  <u>Burgess v. Friedmann</u>, No. 9:05 CV0379(NAM)(DRH), 2005 WL 3531459, at *1 (N.D.N.Y. Dec. 22, 2005). Using this prisoner "kosher diet" case as a template Westerman extrapolates that for complex trade secret litigation, the pleading standards used for this prisoner who was denied kosher food somehow apply to the Restatement of Torts for pleading of trade secrets and unfair competition cases. Neither is the case applicable because the movant in this case did not file sophisticated movant papers. The Court should note Defendants wholly ignore the issue and fail to discuss once that Kumaran and Larkin are competitors, the launch of the hedge funds the new CTA business and use of the trade secrets.

### VI -  Davila v. YS Board of Parole  is inapplicable prisoner law

Using this as their lead of case on Pg. 4 they present another inapposite case - this time relying upon Davila vs. NYS Board of Parole (Def. Opp Pg. 4) about an incarcerated prisoner accused of sexual abuse, who's injunction for a writ of habeas corpus - for the violation of his due process and equal protection rights under the United States Constitution - was denied. This has no relevance whatsoever to the facts or pleading standards for "showing of likelihood of success" under the civil and commercial disputes of  trade secret misappropriation, infringement of intellectual property rights and unfair competition for ongoing use and profit in a commodities futures trading floor. The Court ruled under a completely invalid standards of law to the case at hand – on whether prisoner appeals could remedy the harm -  various appeals could remedy his concerns and the prisoner petition was denied.

### VII – Silver vs Lavandeira

In the final case, for Point I, showing substantial likelihood on the merits, Defendants  use another improper copyright case, where a Pro-Se Plaintiff stated that the ***publicly available copy*** from a website

blog, infringed a copyright. This case is also wholly irrelevant to a trade secret case, because the infringing arts and website content are *public*. By the very nature of being a copyright infringement on a *public* internet blog, in this case copying the elements of a blog of an internet website, the website are ***public documents.*** In Silver vs. Lavandeira, the standards to establish a likelihood of success on a copyright infringement claim, are totally different from those to establish a likelihood of success on the merits for a trade secret, unfair competition and breach of contract claims. In a copyright case, a plaintiff must not only demonstrate a validly held copyright, but must also demonstrate that the defendant has copied the constituent elements of the work that are original. *Feist Publ'ns, Inc.,* 499 U.S. at 345-50. This requires proof both of (1) actual copying, which a plaintiff may establish by demonstrating "probative similarity" combined with "access," and of (2) illegal copying, which requires "substantial similarity" between protectible elements of the plaintiff's work and the defendant's. *See Boone v. Jackson,* 206 Fed. Appx. 30, 31 (2d Cir.2006); Silver v. Lavandeira, No. 08CIV.6522JSRDF, 2009 WL 513031, at *4 (S.D.N.Y. Feb. 26, 2009) The difference in this case and the case at hand, is that, copyrights on "website" are inherently public documents, the Court was able to rule on the standards of substantial likelihood of success. This is again a different standard for misappropriation, breach of contract and unfair competition cases.

## VII -  Use of No Applicable Standards is a Waiver of Defense

On Pg 6. Westerman cites to a final case *Welch vs. Tyco* – again an unrelated case. Defendants in the *Welch* case is not relevant because in this instant Defendant put forward several declaration and exhibits. However contradicting their own arguments, Defendants in this case, have shown up with no facts, no declarations and no affidavits and put forth no opposition to Plaintiffs pleading. Defendants not once contradict the unfair competition, not once deny the use of the OBT Book.

The Court should also note, that Defendants opposition fails to document once any mention of the word "OBT Book" and remains vacuous on the publicly available facts that Plaintiff is now registered and effective June 22, 2020 is to enter direct competition with the infringing property the CTA business. (*See* Exhibit 1, 2 and 3). The papers are devoid of rebuttal on any of the unfair competition claims or use of the OBT Book.  Their failure to offer even a slither of defense and mere silence is sufficient to grant the Preliminary Injunction outright. Defendants in essence have had the opportunity to speak, submit declarations and have not spoken. The prisoner cases do not solve their initial burden of showing the Court the allegations are without merit. By their own standards, they rely upon allegations. They leave uncontested 3 affidavits, 4 contracts, and 57 exhibits.

Page 13

Defendants finally admit on Pg. 6, Preliminary Injunction motion requires only an **initial** showing that Plaintiff can satisfy the elements of misappropriation and the causes of action in order to have an evidentiary hearing.  Plaintiff Kumaran in the three (3) causes of action *Mem PI Pg.2-10*, has satisfied all the elements to show substantial likelihood of success on the merits. Therefore Plaintiff is entitled to an evidentiary hearing. Defendants opposition cites **to not one case with relevant standards** to the three aforementioned and well-pled causes of action. Their focus appears to be to intentionally deny Plaintiff an evidentiary hearing. Meanwhile, it is Defendants papers that are wholly deficient, do not supply any declarations or affidavits of their own, and rely upon irrelevant cases. The **applicable standards** of showing likelihood of success must be considered in each case to the relevant cause of actions.

### IX – Conclusion of Irrelevant Case Law

In their opposition, it is evident that Defendants could not find any comparable case law in trade secrets, breach of contract or unfair competition. Instead, Defendants rely upon a mishegoss of *irrelevant* case law -  from the prisoner who can't eat kosher food, to homeless people not getting proper accommodation, whether voting machines were delivered on time to justify election fraud, to the backup singers in a  music business disputer,  a public website internet-blog where the material was also public, more prisoner abuse who could not get library access and the main case, the denial of a writ of habeas corpeas by a prisoner, sex offender who sought to protect his due process and constitutional rights were violated  - all of which are wholly inapposite and cannot refute the carefully pled merits and substantial likelihood of success in Plaintiff's motion papers. These cases are all not appropriate for the complex civil litigation and standards of misappropriation of trade secrets, unfair competition, and breach of contract. Defendants also mislead the Court by deleting and editing material quotes from the Court citations, to apply the incorrect standards of proof and transparently apply an incorrect standard of law. For the foregoing reasons, the standards of law, for prisoner cases, election board fraud, housing code violations, copyright infringement none of the appropriate standards of law are applicable, do not come near to the requirements to rebut the presumption of likelihood of success, that Plaintiffs carefully pled in their PI, including Pg. 2-10

Instead Westerman's theme appears to be wholesale attack on *Pro-Se* litigants and a transparent attempt to dig into the record to find cases targeted against  Pro-Se injunctions (regardless of whether they are  inapposite prisoner abuse cases) **as they cannot argue on relevant case law on unfair competition, breach of contract, and misappropriation of trade secrets not on the merits of the**

Page 14

case.  What appears to be Westerman's focus is to use irrelevant *Pro-Se* prisoner case law, many of which may have been handwritten to appear to focused on denying a *Pro-Se* litigant an evidentiary hearing rather than go to substance and facts of the causes of action of (a) unfair competition (b) breach of contract or (c) misappropriation of trade secrets. The Court is respectfully asked to look past the ad hominem attacks on a *Pro-Se*'s, and apply the ***correct standards of law*** for substantial likelihood of success on the merits. Instead the cases cited by Westerman are angst on making sure that Plaintiff is denied an evidentiary hearing so that Defendants can continue to unlawful use, profit from and continue their OBT Book in CTA competition without remedy from the Court – **which they are silent upon**. Since Defendants cannot (and have not) defended the issues – there last minute hope, is to misquote Pro-Se Prisoner cases, to deny Plaintiff the right to an evidentiary hearing. The Court is respectfully respected to take judicial notice that since Defendants could not find one unfair competition or misappropriation of trade secrets or breach of contract case to apply the appropriate standard of law, to the three causes of action pled. **Their opposition should be denied.**

### C- GENERAL STANDARDS OF PRELIMINARY INJUNCTION

Plaintiff has met the standards for injunctive relief. A party seeking a preliminary injunction must typically establish (1) the likelihood of irreparable harm in the absence of injunctive relief; (2) either a likelihood of success on the merits, or sufficiently serious questions going to the merits of its claims to make them fair ground for litigation; (3) that the balance of hardships tips in the movant's favor; and (4) that a preliminary injunction is in the public interest. N.Y. *ex rel.* Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015); see also Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010).

I – Plaintiff has shown likelihood of success on all three (3) causes of action

To establish a likelihood of success on the merits, Plaintiffs "need not show that success is an absolute certainty," but only that "**the probability of [their] prevailing is better than fifty percent**." Airbnb, Inc., 373 F. Supp. 3d at 480 (alteration in original) (quoting Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988)). Further, Plaintiffs need not demonstrate a likelihood of success on the merits of every claim—rather, they need only "**show a likelihood of success on the merits of at least one of [their] claims.**" L.V.M. v. Lloyd, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018) (citations omitted). Two of Plaintiffs' claims, the Breach of Contract claims and Unfair Competition claims are wholly unopposed in Defendants brief. Because Defendants failed to respond (despite seven months), their defenses are waived. These two causes alone, grant Plaintiff rights to the immediate relief requested. Plaintiff also

had demonstrated, including by Defendants signature on acknowledging what Plaintiffs trade secrets, substantial likelihood of success on the trade secret claims.

## 1 – Defendants do not dispute Likelihood of Success on Breach of Contract (Mem Pg.3-4)

"To state a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract; (2) that the plaintiff has performed his or her obligations under the contract; (3) that the defendant failed to perform his or her obligations thereunder; and (4) that plaintiff was thereby damaged."[2] *Crowley v. VisionMaker, LLC*, 512 F. Supp. 2d 144, 151 (S.D.N.Y. 2007). Plaintiff adequately alleged together with affidavits, declarations and exhibits of contracts on the record that meet the initial burden to show substantial likelihood of success on the merits of this claim. Defendants have failed to dispute the existence of the contracts, that Plaintiff performed her obligations under the contract. Defendants, also in their opposition, fail to provide legal argument or affidavits to defend that they have not breached the agreements. Nor do they dispute that Plaintiff has been damaged. (*See e.g* Aff.ECF40.4 ¶34-42, ECF98, Aff. ECF26.1 e.g. ¶10 stating Defendants had become operational with a risk management clone and Derivative Work, expressly forbidden under the contracts, for their internal use, profit and gain, and to cut Plaintiffs/me out of their license fees and profits sharing.) Defendants proffer no contradictory declarations and fail to brief this claim in their response – their failure to oppose the likelihood of success on this claim is fatal and this claim is unopposed. The Preliminary Injunction to enforce Defendants abiding by the contracts in the Settlement Agreement and  NDA and unlawful use of the OBT Book, (despite seven months to produce their own declarations), to cease and desist all use of Plaintiffs IP and Timetrics Software and Related Works (*as defined in the Settlement) and relief in Items (2), (3) (4) and (5)[6] in the Preliminary Injunction is unopposed, as plaintiff has unequivocally met the standards relevant to show likelihood on a breach of contract claim. Courts have held that once a Defendant (non-movant) fails to oppose parts of the motion, and no appeal lies from a portion of an order which was entered upon the default of the non-moving party (*see* CPLR 5511). Duberry v. CNM Analytics, Inc, 180 A.D.3d 118 N.Y.S.3d 651, 654)

## 2 – Defendants do not dispute Likelihood of Success on Unfair Competition (Mem Pg.4)

To state a claim for unfair competition under New York law, Plaintiff must show that the defendant: (1) "misappropriated the plaintiff[ ]'s labors, skills, expenditures, or good will"; and (2) "displayed some element of bad faith in doing so." S*ee* Abe's Rooms, Inc. v. Space Hunters, Inc., 38 A.D.3d 690, 692,

---

[6] To the extent Plaintiff Pro-Se, cannot enforce the Timetrics NDA as successor-in-interest and owner of the IP, The A Star Group, Inc , represented in this action by Counsel, has moved to join in this relief. Plaintiff *Pro-Se* is individually a party to the Settlement Agreement. Plaintiff has Article III standing to enforce its IP rights. Defendants in their opposition raise no argument on Plaintiffs standing to enforce the IP in this motion.

833 N.Y.S.2d 138, 140 (App. Div. 2d Dep't 2007); see also Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980).  Plaintiff has also provided declarations and shown substantial likelihood that Larkin has obstructed STORM Fund, and are marketing and selling, in direct competition, Plaintiff's risk management solution and hedging solutions to their customers, vastly different from Prior Art, represented and warranted as Avi's Spreadsheet and Avi's Hedging strategies, with significant increased revenue to their business and  profits. Plaintiff has also included declarations that Larkin has obstructed and acted in bad faith as a competitor (See e.g. Affidavits ECF98.1¶2-4, ¶24-25, ¶73-80, ¶35, *ECF*40.4¶17-21 ECF26.1¶1-¶38)) *See* also unopposed Affidavit ECF40.4 ¶40,  "I provided all Defendants, detailed copies of the inner coding, this became the basis from which Larkin started to create a duplicate clone, without consent or license, which later they called the OBT Book." Courts in this circuit have held that the unauthorized exploitation of information for use in a competitor's business constitutes unfair competition, and should be enjoined. *See* also Continental Dynamics Corp. v. Kanter, 64 A.D.2d 975, 408 N.Y.S.2d 801, 802 (2d Dep't 1978)  Since Defendants have failed to dispute and stayed silent on the OBT Book, and the CTA's competing businesses, they have left the cause of action of Unfair Competition <u>unopposed</u>. Courts have held that once a Defendant (non-movant) fails to oppose parts of the motion, and no appeal lies from a portion of an order which was entered upon the default of the non-moving party (*see* CPLR 5511).

### 3 -  Plaintiffs has met Likelihood of Success on Trade Secret claims

Defendants fail to meet the burden to relinquish of likelihood of success on the merits for the trade secret claims. To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret. 18 U.S.C. § 1836(b)(1).  Under the DTSA, a complaint must plead that the defendant misappropriated a trade secret (1) by acquiring a trade secret by improper means, or (2) disclosing or using the trade secret without consent. *AUA Private Equity Partners, LLC v. Soto*, No. 17 Civ. 8035, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018) (citing 18 U.S.C. § 1839(5)). "Improper means" can involve "theft, fraud and misrepresentation ... [or] breach or inducement of a breach of a duty to maintain secrecy," 18 U.S.C. § 1839(6)(A), including contractual agreements not to disclose or disseminate information, *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 511 (S.D.N.Y. 2017). To state a claim for misappropriation of trade secrets under New York law, the Complaint must plausibly allege "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 690

Page 17

(1st Dep't 2015) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999)). The requirements are similar for showing a misappropriation of a trade secret under the DTSA and misappropriation under New York common law. *See, e.g., Drennen*, 235 F. Supp. at 565. For substantially the same reasons that the Complaint sufficiently pleads a DTSA claim, the Complaint also states a claim for misappropriation of trade secrets under New York law. <u>ExpertConnect, L.L.C. v. Fowler</u>, No. 18 CIV. 4828 (LGS), 2019 WL 3004161, at *6–7 (S.D.N.Y. July 10, 2019)

Plaintiffs has carefully met all contours on its trade secret claims consistent with the standards in this circuit. (See Mem PI Pg2-10). First, as part of the evidentiary record, the Court reviews clear and unequivocal contracts and agreements and acknowledgements of what Plaintiffs trade secrets are – signed and executed before this Court. (ECF52.1,52.2,52.3). Plaintiff would not have executed a settlement without Defendants agreement to what its trade secrets are. Defendants carefully chose to **<u>ignore all case law related to trade secret misappropriation,</u>** including granting of preliminary injunctions for trade secrets claims in this circuit. Also included by reference are Affidavits (ECF98.1, ECF26.1, and ECF40.4¶32-44, with sworn declarations that Larkin and Defendants used Plaintiffs trade secrets to create an OBT clone. (See e.g.ECF40.4 ¶40-41 .. I provided all Defendants, detailed copies of the inner coding, this became the basis from which Larkin started to create a duplicate clone, without consent or license, which later they called the OBT Book.. ..during the period Sep 2016 – Nov 2016 I gave Larkin detailed access to reports, strategies and methods and functional design, and "output of software" as well as features of its design, which he then included, replicated and copied into their OBT Book.)   Defendants fails to supply their own contradictory affidavits and declarations. Therefore Plaintiff has demonstrated substantial likelihood of success on its misappropriation of trade secret claims.

On Pg. 6 Defendants incorporate by reference their Motion to Dismiss . Plaintiff also incorporates by reference its Oppositions to the MTD and surreply (*ECF*73-75, *ECF*80-81) for any new arguments that were raised in reply. Therefore Plaintiff has shown substantial likelihood of success on all of its claims, (a) unfair competition (b) breach of contract  and (c) misappropriation of trade secrets.

4 -  Plaintiff has met pleading standards for sealing trade secrets in this proceeding 18 USC 1835(b)

Under 18 USC 1835 "(b) Rights of Trade Secret Owners.— The court <u>may not authorize or direct the disclosure of any information the owner asserts to be a trade secret unless the court allows the owner the opportunity to file a submission under seal</u> that describes the interest of the owner in keeping the information confidential." Plaintiff met the pleading standards (Mem_PI, ECF52,Pg.2-10), and as discussed above shown likelihood of success in all three (3) of its causes, including the misappropriation of trade secrets. Plaintiff plead all six factors for the restatement of torts (*See* Mem_PI, Pg.5-10). Plaintiff

has met this pleading standards, and incorporates by reference any counterarguments from its Opposition to the Motion To Dismiss (*ECF* 73-75) Plaintiff has extensively briefed the need to seal its competitive trade secrets, and made the good cause showing of narrowly tailored and economic injury. (*See* ECF54, ECF60, ECF70, ECF87, ECF91, ECF92, ECF96, ECF98 and ECF111.). Therefore consistent with DTSA and other Preliminary Injunctions related to trade secret cases, further evidence is filed under seal. Defendants arguments that Plaintiff needed to file trade secrets publicly in its pleading is unsupported by law, as the record shows, that Plaintiff may seal those documents for a misappropriation of trade secrets claim.  *See* Ramirez id. ("sealing trade secrets in procedural documents")

Understanding full well that Plaintiff is not obliged to publish its trade secrets without grant of an order to file the exhibits under seal, Defendants opposition is inconsistent with this circuit for permission to file under seal and there was a ruling on the PO only on December 29, 2020. Therefore as requested for evidentiary hearing and for further the trade secrets and commercially sensitive information (as identified in ECF54) having already made a good cause showing and economic injury, Plaintiff respectfully requests relief under 18 USC 1835(b) for its trade secrets and commercially sensitive data be filed under seal in procedures, briefings, pleadings, exhibits and affidavits. Defendants do not dispute that dissemination to a wider audience would cause irreparable harm and this relief under Relief #3  and information **(Pre-Discovery** materials, which includes already in Defendants possession) not covered by the PO, should be filed under seal under 18 USC 1835 (b) to afford redactions.

### D– Plaintiff has met the standards for Irreparable Harm

Plaintiff identified <u>eight (8) key areas of irreparable harm</u>. *See* Mem PI (Pg. (11-20) Defendants only responded to <u>three issues</u> (3), (7) and (8) and materially failed to address <u>five of the eight</u> well pled irreparable harm and therefore **<u>those arguments are unopposed.</u>**  The <u>eight areas</u> of irreparable harm include **(1)** Defendants failure to sign an NDA and bad faith threats to intentionally harm Plaintiff and disseminate trade secrets (Mem. Pg10-12); **(2)** Defendants unfettered use and exploitation of Plaintiff's trade secrets in direct competition – Unfair Competition (Mem. *Pg* 13); **(3)** Defendants agreed contractually to irreparable harm (*Pg.* 13);  **(4)** Defendants agreement to no posting of a bond (Pg. 14); **(5)** Defendants continued use in unfair competition (Mem. *Pg* 15-16); **(6)** In the loss of good will, prospective customers in the unfair competition claim (Mem *Pg.* 17); **(7)** in the inability to collect, and Defendants claims of insolvency and credit issues (Mem. *Pg* 18); and **(8)** if Defendants are not enjoined in depleting assets or selling its business (Mem *Pg.* 19)

Their failure to respond to the Unfair Competition, good will and reputation, and further publication and dissemination claims (2), (5) and (6) is <u>fatal</u> to Defendants defense, and their defenses to irreparable harm in Unfair Competition are waived. Defendants failure to raise any opposition on intentional and ongoing threats to publish trade secrets and Nefertiti's confidential information Issue (1) is also fatal in their opposition to the imminent and ongoing threats to Plaintiffs confidential and trade secrets information, that are not subject to the discovery order. Barrientos v. 1801 1825 Morton LLC, 583 F.3d 1197, 1215 (9th Cir. 2009) ("[Defendant] did not object to the scope of the injunction before the district court and, therefore, has waived the objection.") While irreparable harm is the single most  important issue for an injunction, (citing Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) a plaintiff "need only show a 'threat of irreparable harm, not that irreparable harm already [has] occurred.' " Airbnb, Inc. v. City of New York, 373 F. Supp. 3d 467, 480 (S.D.N.Y. 2019) (alterations in original) (quoting Mullins, 626 F.3d at 55

(1)  - Unopposed Issues #5 and #6 - Loss of Good Will and Customers, And Issue #2 Use in Unfair competition  (Mem. *Pg.*15-17), and Competitive Harm, Economic Injury (ECF54)

Defendants also misquote the Complaint that Plaintiff argued its good will or ongoing reputation or loss of customers could be remedied by monetary damages. (*See* Mem Pg11 – Plaintiff defers monetary damages till trial) Second circuit has also ruled that in trade secret and unfair competitions See ExpertConnect, LLC v. Parmar, 773 F. App'x 651, 653 (2d Cir. 2019) stating  The preliminary injunction is warranted     "because ExpertConnect established that Defendants' actions would impair ExpertConnect's good will and reputation") See Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004); Based on that showing, Defendants' use and disclosure of trade secrets would have serious reputational harm for ExpertConnect absent an injunction, and that it would be exceedingly hard to calculate the loss of good will and reputation at trial. *See* Tom Doherty Assocs., Inc. v. Saban Entm't Inc., 60 F.3d 27, 37 (2d Cir. 1995); Defendants also misquote the relief by ignoring and omitting Issues (2), (5) and (6) of the memorandum.

Defendant fail to offer one counterargument on the Unfair Competition and leave the motion undefended. Defendants opposition stays silent on the entire OBT Book. They do not deny or contradict that Plaintiff's directly competing businesses registered on June 22, 2020 and became registered in September 2020. They do not, and cannot defend any of the likelihood of success on the Unfair Competition and use of confidential information to directly compete. Their opposition is vacant on the fact Kumaran, individually, is a CTA and is in direct competition. Defendants opposition and Motion To Dismiss are silent on the Unfair Competition claims – thereby waiving their defense. They do not

even deny that Larkin is using the OBT Book in direct competition. Since the CTA businesses and activities that commenced and registered in September 2020, and Larkin's involvement was after September 2016, these facts and causes have nothing to do with the Settlement. Plaintiff Kumaran could not possibly have settled any claims related to the direct CTA competition. - Defendants leave unopposed Pg15-17 loss of goodwill, customers and reputations

   Defendants also leave unopposed any defense to Plaintiffs arguments in MemPI Pg15-17, see e.g Plaintiffs will suffer loss of its prospective customers, business and good will. The right to continue a business "is not measurable entirely in monetary terms." _Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir.1970) Id._ at 1205; _see also Roso–Lino Beverage Distribs., Inc. v. Coca–Cola Bottling Co.,_ 749 F.2d 124, 125–26 (2d Cir.1984) (per curiam) (finding irreparable harm from loss of "ongoing business representing many years of effort and the livelihood of its []owners"). Courts have also found irreparable harm in the loss of a relatively unique product. In _Reuters Ltd. v. United Press Int'l, Inc.,_ 903 F.2d 904, 908–09 (2d Cir.1990), ["Irreparable harm is found where, 'but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.' " _O.D.F. Optronics Ltd. v. Remington Arms Co.,_ 2008 WL 4410130 (S.D.N.Y. Sept. 26, 2008) [7] Plaintiff in its CTA business and its new STORM Fund, cannot be returned to its original place if Larkin is permitted to continue use in direct competition, and does not grant back the appropriate credit for the ownership of the book and strategies. _See also - Interphoto Corp. v. Minolta Corp.,_ 417 F.2d 621, 622 (2d Cir.1969) (per curiam) (affirming finding of irreparable harm because plaintiff "would be unable to calculate its damages since it would suffer not merely loss of profits with respect to [defendant's] goods but loss of good will from the lack of a 'full line'"). There is further authority that the loss or destruction of an ongoing business causes that business irreparable injury, and, if unjustified, is cognizable in equity. _John B. Hull, Inc. v. Waterbury Petroleum Products, Inc._ 588 F. 2d 24 (2d Cir. 1978); _Semmes Motor Inc. v. Ford Motor Co._ 429 F. 2d 1197 (2d Cir. 1970). [8] Courts have stated "the governing principle is as follows. Where the availability of a product is essential to the life of the business _or_ increases business of the plaintiff beyond sales of that product—for example, by attracting customers who make purchases of other goods while buying the product in question—the damages caused by loss of the product will be far more difficult to quantify than where sales of one of many products is the sole loss.  This rule is necessary to avoid the unfairness of denying an injunction

---

[7] (quoting _Brenntag Int'l Chems., Inc. v. Bank of India,_ 175 F.3d 245, 249 (2d Cir.1999)). Rex Med. L.P. v. Angiotech Pharm. (US), Inc., 754 F. Supp. 2d 616, 623 (S.D.N.Y. 2010)].
[8] quoting Am. Can Co. v. A.B. Dick Co., No. 83 CIV. 5435-CLB, 1983 WL 2198, at *6 (S.D.N.Y. Nov. 23, 1983)

to a plaintiff on the ground that money damages are available, only to confront the plaintiff at a trial on the merits with the rule that damages must be based on more than speculation. Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 38 (2d Cir. 1995)

The right to continue a business "is not measurable entirely in monetary terms." *Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir.1970) Id.* at 1205; *see also Roso–Lino Beverage Distribs., Inc. v. Coca–Cola Bottling Co.,* 749 F.2d 124, 125–26 (2d Cir.1984) (per curiam) (finding irreparable harm from loss of "ongoing business representing many years of effort and the livelihood of its []owners"). We have also found irreparable harm in the loss of a relatively unique product. In *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 908–09 (2d Cir.1990). Courts overturned a finding of no irreparable injury because [Plaintiff] had demonstrated that some customers would cease dealing with it if it was not a **unique supplier**. *Id.; see also Jacobson & Co. v. Armstrong Cork Co.,* 548 F.2d 438, 445 (2d Cir.1977) (affirming finding of irreparable harm by showing a threatened loss of good will and customers, both present and potential, neither of which could be rectified by monetary damages"); *Interphoto Corp. v. Minolta Corp.,* 417 F.2d 621, 622 (2d Cir.1969) (per curiam) (affirming finding of irreparable harm because plaintiff "would be unable to calculate its damages since it would suffer not merely loss of profits with respect to [defendant's] goods but loss of good will from the lack of a 'full line' "). Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 37 (2d Cir. 1995)

Here Plaintiff owns and has developed a unique product in the commodities trading and hedging arena. Substantial investment of money, time, capital and expense has gone into the launch of a hedge fund and G.P. Plaintiff **exclusively** owns the rights to use, sell, profit from and license and as its new businesses registered on or around June 2020 and became fully registered on September 2020,the status quo (the terms that Plaintiff and Larkin agreed to in the Settlement that Plaintiff, and only Plaintiff, had the right to use, and exploit its IP. Defendants must therefore cease and desist. Their failure to counter any of the arguments in MemPI-Pg.15-17 renders them unopposed for which relief should be granted.

(2)   – Unopposed Issues #1, #2 and #3 (Mem Pg1-2) Publication and harm of its Competitors data

Plaintiff has pled extensively in its briefings Motion for Protective Order (*See* ECF54 and related filings)[9] for relief under the DTSA 18 USC 1835 (b) that materials already in Defendants' possession ("Pre-Discovery") that are trade secret, and highly sensitive materials are filed under seal. All arguments for why there is substantial economic injury and direct competitive harm are incorporated by reference herein ECF54. Defendants fail to proffer any contradictory law, fail to proffer any opposing declarations

---

[9] ECF54, ECF60, ECF70, ECF87, ECF91, ECF92, ECF96, ECF98 and ECF111

or affidavits, and fail to defend Irreparable Harm Issues #1 and #2. Therefore Plaintiffs motion should be granted. Under 18 USC 1835 Plaintiff has sought an order that covers **Pre-Discovery Material** and to restrict all forms of further dissemination, including in procedural documents (*See* Farrand Optical Co. supra for procedural and hearings protecting trade secrets, and various portions in camera). Since Defendants in their opposition also have not opposed this relief, **Plaintiffs motion for is unopposed.**

(4) – Unopposed Issue #4 - No Damage to Defendants in Posting of Bond (Mem PI, Pg.14)

Plaintiffs have sought a narrowly tailored injunction to enforce the **cease-and-desist** and to stop further use of the OBT Book and Related Works, which are being used in direct competition. Plaintiff has made clear that such relief must be granted without the need to post bond. (*See* Mem*Pg*.14). In their opposition, Defends fail to object or counter in the opposition any 'costs or damages' they might incur by ceasing the infringing activity or wrongfully enjoined. Further the parties agreed contractually to no posting of a bond. Since Defendants are silent upon they specifically waive their defense to the posting of a bond, in their opposition papers, Courts under Rule 65 (c) have ruled if Defendants do not identify any 'costs or damages" to posting a bond, they have thus waived their right to oppose the posting of a bond, (See 725 Eatery Corp. v. City of New York, 408 F. Supp. 3d 424, 470 (S.D.N.Y. 2019), See also, "Defendants do not identify any "costs or damages" they may incur if wrongfully enjoined, [thus] this Court waives the Rule 65(c) bond requirement in its discretion." Accord Christian Fellowship Ctrs. of N.Y., Inc. v. Vill. of Canton, 377 F. Supp. 3d 146, 167 n.16 (N.D.N.Y. 2019); see Rex Medical L.P. v. Angiotech Pharms. (US), Inc., 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010) ("It is well-settled that a district court has 'wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm [to the non-movant].' " (citations omitted)).

(5) -Parties Agreeing to Injunctive Relief Should be Weighed In Consideration

On Def.Pg.8 they omit key facts of the case law Ticor. Defendants agreement to injunctive relief in a breach of contract *is viewed as an admission* of irreparable harm. The *Ticor* court noted that the contract provision allowing for an injunction in the event that the defendant breached the non-compete "might arguably be viewed as an admission by [the defendant] that plaintiff will suffer irreparable harm were he to breach the contract's non-compete provision." *Ticor,* 173 F.3d at 69. Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 426 (2d Cir. 2004). The Second Circuit has suggested that a provision in a contract which concedes that in the event of breach, the non-breaching party will be irreparably harmed, might constitute an admission that the plaintiff has suffered irreparable harm. *Id.* Such a provision exists here. Because Plaintiff stands to lose clients to Defendant if she is not enjoined and the degree to which Plaintiff will be harmed is not readily determinable, the Court agrees that Plaintiff will suffer irreparable

harm. <u>HRB Res. LLC v. Schon</u>, No. 619CV0339MADTWD, 2019 WL 4015256, at *2 (N.D.N.Y. Apr. 25, 2019)These provisions and admissions by Defendants should be used in consideration of entire relief.

(6)      Opposed Issue #7 and #8 Plaintiff has argued irreparable harm in Defendants attempts to frustrate judgement and seek the monetary judgement which is not insubstantial be placed in escrow and take actions not to sell the business (Issue #8)

The only two issues that were countered in Irreparable Harm were Plt.Mem.PI Pg.18-19 (Issues (7) and (8)). Defendants do not respond to these issue under Point III (Irreparable Harm). They instead respond to them in Balance of Equities (Section F below) and Public Interest (Section G). Plaintiff has provided its response in Sections F and G below in its arguments for irreparable harm.

(7) – Defendants arguments on Laches also Fail

Defendants final main argument is on Laches. This argument fails because it was justified by settlement negotiations, attempts to mediate and arbitrate and does not apply to the unfair competition claims. It is also barred by Defendants own unclean hands and bad faith. First, Defendants misstate the facts of the timeline, and also the date on which causes of action accrue to wrongly impute laches, as a defense for irreparable harm. Their argument also fails, because *first*, Plaintiffs delays were justified and excusable during the extensive settlement negotiations between January 2017 – June 6, 2019 (See Aff ECF98.1), and *second*, most importantly, the cause of action related to unfair competition, and the launch of the CTA and CPO only commenced on June 22, 2020. (See Exhibit 1, 2, 3).  The Court should take note, Defendants are moot and stay completely silent on the hedge funds, CTA, and directly competing businesses that were launched on June 22, 2020 and make no reference to the CTA and CPO that was mentioned throughout the Preliminary Injunction.  The injunction was filed on June 17, 2020. Therefore was no delay in this cause of action,  *Third*, the Defendants defense of laches is barred by the doctrine of their own unclean hands, band faith as well as fraud and intentional competition.  This argument fails as Plaintiffs delays were justifiable and additionally the unfair competition causes only accrued effective June 22, 2020. As an initial matter, Courts have not taken the position delay alone requires denial of a preliminary injunction. *See Marcy Playground, Inc. v. Capitol Records, Inc.,* 6 F.Supp.2d 277, 282 (S.D.N.Y.1998) ("[T]he Court of Appeals has not yet held that unexcused delay alone necessarily defeats a preliminary injunction motion.") (citing *Tough Traveler, Ltd.,* 60 F.3d at 969 (Jacobs, J., concurring) ("[The rule] does not preclude preliminary relief even if the district court finds unexcused delay. Delay is just one of several factors to consider.")) *ProFitness Physical Therapy Ctr. v. Pro–Fit Orthopedic and Sports Physical Therapy, P.C.,* 314 F.3d 62, 68 (2d Cir.2002). *See also id.*

Page 24

*(i)     Laches do not include time due to Settlement Negotiations*

Plaintiffs time period during settlement negotiations does not preclude laches as it was excused and justified. Plaintiffs settlement negotiations were also justified as Larkin was threatening "irreparable harm" and to publish trade secrets and confidential information. (See Aff ECF98.1). Therefore Plaintiffs attempts to resolve the matter through mediation, arbitration and settlement were justified and excusable. Westerman distort the timeline and completely missing from timeline on Pg.3, are any inclusion of the declarations of facts of extensive settlement negotiations and discussions of mediation, arbitration and other resolution with Bracewell – to avoid having to engage in legal process. In this instance, Plaintiff's delay was justified. First, Plaintiff was engaged in diligent pursuit of settlement negotiation between January 2017 until June 2019 to prevent further irreparable harm. Settlement negotiations broke down after the final offer was rejected on or around June 6, 2019. Court's in this district have also acknowledged that diligent pursuit of settlement negotiations can justify delay . *See Marcy Playground, Inc. v. Capitol Records, Inc.,* 6 F.Supp.2d. 277, 281 (S.D.N.Y.1998) (assuming "that the diligent pursuit of settlement negotiations is a legally sufficient excuse for delay"); *see also CJ Prods. LLC v. Snuggly Plushez LLC,* No. 11 Civ. 715, 2011 U.S. Dist. LEXIS 94811, at *68 (S.D.N.Y. Aug. 22, 2011) ("[D]elay due to a good faith investigation ... does not defeat equitable relief."). Plaintiff has also noted to file under seal an Affidavit of Obstruction, whereby Larkin chose to frustrate the settlement, and then reneg on terms, after stringing along false offer. (See Mot PI Pg 8).

Plaintiff then diligently researched the law and brought suit and Arbitration by September 4, 2019 (and filed in Court on September 6, 2019), as a *Pro-Se* litigant, from the date negotiations broke down which was June 6, 2019 until September 4, 2019 in a period of *three months.* Plaintiff *Pro-Se* had to research extensively the law, make good faith efforts to investigate its causes, assimilate the information, and to file two comprehensive complaints both in CPR Arbitration and in SDNY (this action).  (See Aff 98.1), negotiation broke down on June 6, 2019) (Courts have also ruled that excusable or justifiable delay includes time spend when " the plaintiff's making good faith efforts to investigate the alleged infringement." *Tough Traveler, Ltd. v. Outbound Products,* 60 F.3d 964, 968 (2d Cir.1995). Courts have held that delays of up to *four months* are not considered a material delay between the end of settlement negotiations and filing of a Complaint, to be considered justifiable delay even with an attorney preparing the Complaint. ("His lawyer, however, spent almost *four months* researching the facts and law before filing suit".. holding that this was not considered a delay). See Marks Org., Inc. v. Joles, 784 F. Supp. 2d 322, 333–34 (S.D.N.Y. 2011)

Page 25

Once Bracewell appeared for Larkin in the CPR Arbitration on September 5, 2019 - between September 2019 – December 2019 - Plaintiff again quickly moved to continue settlement negotiations with Bracewell, prior to service in this District. (*See Aff* ECF98.1). As is also documented in the fact pattern of this case, Plaintiff immediately broached the threats of irreparable harm, and Larkin's ongoing threats to publish information and requested a confidentiality agreement and protective order with Larkin starting in November 17, 2020 (*See* ECF98¶). This is again documented in the record of this action. "In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." *Sterling v. Deutsche Bank Nat'l Tr. Co. 2006-FF6*, 368 F. Supp. 3d 723, 725 n.2 (S.D.N.Y. 2019) (internal quotations omitted).

Already documented in the fact pattern to this Court, Defendants by their own unclean hands and obstructions, intentionally caused delays to Plaintiffs both pursuing a protective order, when Bracewell appeared willing to reach a compromise they were terminated from the action. (*Aff.* ECF98.1). Waiting for resolution on the threats from Larkin, to damage its new businesses, similarly, Plaintiff had still not registered the hedge fund, substantially due to Larkin's own threats, to disseminate information.. After the termination of Bracewell, once it became apparent  that Defendants new counsel would obstruct at every turn, in March 6, 2019 filed an initial notice of motion – initially notifying the Court of significant issue of harm both to the hedge fund. On March 22, 2019 Plaintiff also notified the Court of attempts to disclose confidential information (Aff. ECF40) and on March 5, 2020, notified of its intention to filed for Preliminary Injunction for other relief in this Court.

Shortly after, for no fault of Plaintiffs there was approximately a three month gap in the proceedings due to the Covid-19 outbreak in NYC. Once business started to reopen, and now that the Preliminary Injunction was almost ready, on June 22, 2020 Plaintiff registered NAM and STORM at the NFA, to commence operations. (as CTA's). On June 17, 2020 –five (5) days ***prior to the registration*** - Plaintiff promptly filed the Preliminary Injunction to cease and desist all further use of the OBT Book in direct competition with Plaintiff, to prevent further dissemination of trade secrets and harm Plaintiffs competitive businesses, as the threat of unfair competition and direct irreparable harm was now directly in competition with Plaintiff (individually) and its new hedge funds STORM and NAM. (See Exh1,2,3)

*(ii) Courts have held the cause of action accrues from the date*

The Court should note that Defendants are wholly silent on the well-pled facts of the registration of the CTA and CPO, and the use in direct competition with the Nefertiti STORM Fund, LP (Mot_PI Pg.2-10).  The funds became fully registered on September 22, 2020, while the Preliminary Injunction

is pending. Therefore for the claims in unfair competition and unauthorized use as CTA's there is no delay. Plaintiff Kumaran *filed timely upon registration* of the CTA business. There was no delay related to the CTA and CPO. As soon as the funds commenced registration, Plaintiff Kumaran individually moved for injunction to cease and desist its competitors use. The funds began registration on June 22, 2020 and the injunction was filed on June 17, 2020.

Since the hedge fund was a new business, Plaintiff had not registered the fund yet, which was in part being delayed because of the hostile and belligerent actions of Larkin, to threaten Plaintiffs. (See also Affidavits ECF40.4, ECF98.1) Since Plaintiff registered NAM And STORM on June 22, 2020 and became accepted as members for operation in September 22, 2020 (see public records on the NFA website) Plaintiff as related to the unfair competition in fact incurred no delay in filing. As soon as the hedge fund and commodities applied for registration – Plaintiff filed for the Injunction for Unfair Competition and acted immediately. The Court should note, that Defendants opposition has remained completely silent on any aspect of Unfair Competition, NAM and STORM and the use of Plaintiffs IP in directly competing CTA's Larkin and Hedge. Their failure to raise one defense and opposition for the use in direct unfair competition, failure to mention the CTA"s in their opposition is a fatal flaw that the Court must note.  Defendants fail to defend this cause of action renders it ***unopposed***.

Therefore Plaintiff has demonstrated that the clock started ticking on the Preliminary Injunction for Unfair Competition on June 22, 2020 the date it registered the funds to stat transacting and has been acting diligently to exit Larkin from the businesses since then.  In other words, the cause of action for Plaintiffs' unfair competition and misuse of confidential information in direct competition, only started to accrues on June 22, 2020 (the date NAM and STORM applied for Membership at the NFA) and began registration of the funds. Concurrently, on June 17, 2020, Plaintiffs filed its Preliminary Injunction as well as its Protective Order.  *See* Castle Creek Tech. Partners, LLC v. CellPoint Inc., No. 02 CIV. 6662 (GEL), 2002 WL 31958696, at *7–9 (S.D.N.Y. Dec. 9, 2002)(Castle Creek's cause of action did not actually accrue until June 2002, when CellPoint wrongly refused to convert portions of the debt into shares.)  Since Defendants opposition is intentionally silent on the CTA aspect and the unfair competition – Plaintiff asserts that the cause of action of unfair competition accrued on the date the filing was made June 22, 2020 and the PI was filed just 5 days earlier. **Therefore, in the cause of action of Unfair Competition there is no delay**. Defendants do not oppose this and the cause of action is unopposed.

*(iii) Laches are Not Applicable when Defendants has operated with unclean hands, bad faith and wilful intention to infringe*

Plaintiff has also documented the extraordinary positions taken by Defendants in the Court to obstruct confidentiality and incorporates by reference ECF98 including all its Exhibits and Affidavits (ECF26.1, ECF40.4 and ECF98.1) where by Defendants intentionally sought to mislead and not protect Plaintiffs' trade secrets – going as far as to claim in pleadings to the Court ('nothing is trade secret and confidential' ECF90.2 and ECF40.4 threats to use confidential information, to harm his competitor to deter filing suit. Courts do not permit the benefit of the defense of laches, when one party, Defendants have operated with bad faith and willful intention to harm. (See Affidavit *ECF*40.4 *ECF*98.1) The Second Circuit found in *King v. Innovation Books, a Div. of Innovative Corp.,* 976 F.2d 824, 833 (2d Cir.1992) that defendants had made statements evincing both a deliberate intent to infringe plaintiff's statutory rights and an intent to delay plaintiff's discovery of the infringement and denied any argument of laches.

Further Larkin was himself operating with unclean hands. Larkin's unlawful threats to hold another companies confidential information and trade secrets as "leverage" as a deterrent to filing suit – which required further due diligence to ensure that irreparable wasn't done upon the filing. Larkin's actions were also to avoid Plaintiff registering the funds – with him holding himself as a non-cooperative partner he was himself, a reason for the delay. Courts also hold that willful intention to engage in unfair competition bars defense of laches. Laches is not a defense against injunctive relief when the defendant acted willfully and intended the conduct 4 R. Callman, Unfair Competition, Trademarks and Monopolies P 87.3(b)(2) (3 ed. 1970). Harlequin Enterprises Ltd. v. Gulf & W. Corp., 644 F.2d 946, 950 (2d Cir. 1981). In this case at bar, Larkin, threatened willful dissemination of its competitors confidential information, holding Plaintiffs' proprietary information as "leverage", to deter Plaintiff filing suit, and after 2016, with full knowledge Plaintiff was registering as a CTA to run a competing hedge fund, took over actions to harm its competitors business, obstruct its registrations and cause willful and intentional harm. (*See* Aff. ECF98.1)

Courts have ruled that a party cannot use the defense of laches, when they come to the table with unclean hands or bad faith. A finding of willfulness in unfair competition prevents the application of laches. *Harlequin Enterprises, Ltd. v. Gulf & Western Corp.,* 644 F.2d 946, 949 (2d Cir.1981). Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc., 792 F. Supp. 969, 971 (S.D.N.Y.), Larkin's conduct – including conduct that may be illegal under 18 USC 1831 el seq – which is to threaten irreparable harm on a competitors' confidential and trade secret information - was taken to intentionally frustrate and deter

Plaintiff brining suit – and therefore Defendants cannot sustain an excuse of laches.  Further support of overt attempts to harm, in the ECF98.1 and failure to implement As a result the Protective Order, which only covers information exchanged in discovery. Courts have also ruled that Defendants own misconduct and delays to enforce rights (*See* Marks Org., Inc. v. Joles, 784 F. Supp. 2d 322, 333–34 (S.D.N.Y. 2011), holding that Defendants own procedural delays and obstructions were intended to cause delays to Plaintiffs in enforcing a Preliminary Injunction) (Court's ruling "delay alone does not require denial of its motion,  Marks Org., Inc. v. Joles, 784 F. Supp. 2d 322 (S.D.N.Y. 2011))

E – DISPUTED FACTS AND LAW, CONTRADICTED IN CONTRACTUAL PROVISIONS

1 – Settlement Agreement

Defendants round out their opposition numerous unsupported allegations, that are contradicted by both the contractual provisions between the parties and their own actions. They also leave unopposed Plaintiffs affidavits and declarations, and fail to submit any declarations of their own.  Defendants on Pg. 3 again rely upon the Settlement Agreement to absolve their wrongdoing. The Settlement does not absolve breaches of the Settlement itself. Plaintiff has pled causes for breach of the Settlement as well as ***fraudulent inducement*** of the Settlement. A Settlement may be set aside on the traditional basis of fraudulent inducement, misrepresentation, mutual mistake or duress."[10] Plaintiffs incorporates by reference its opposition in the motion to dismiss (*ECF*73-75, *ECF* 80-81) why the Settlement agreement does not permit Defendants ongoing use of Plaintiff IP and property into their OBT Book. Plaintiff did not settle any claims of infringement or use of the OBT Book or STORM, and has made clear that the Settlement was ***fraudulently induced*** and is entitled to recission of Section 4, and to reinstate the EULA. Defendants arguments also fail, because the CTA activities and new businesses which started in September 2016 were ***after*** the Settlement. Plaintiff has also in affidavit stated clearly misappropriation and acquisition September 2016 – November 2016 (See e.g. Affidavit ECF40.4 ¶32-40)  Plaintiff Kumaran did not release any such claims. Further the causes of action of unfair competition of the CTA businesses were not contemplated and did not even exist at the time of the old settlement. Further, with some irony, Plaintiff Kumaran relief is to underline enforce the Settlement Agreement (See Relief #3). In other words, Defendants want the benefit of breaching the Settlement, throughout this proceeding, but yet continue to engage in ongoing misappropriation and use of Plaintiffs property, a benefit that in unlawful

---

[10] *C'3 Media & Mktg. Group, LLC v. Firstgage Internet, Inc.,* 419 F.Supp.2d 419, 429 (S.D.N.Y.2005) (citing *Allen v. WestPointPepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991));

conferred upon them, and make no defenses whatsoever on their breach of the Settlement. Once a party breaches a contract, it is not entitled to relief. Defendants do not get to "procure the benefits of certain parts of the contracts" – and wholesale breach the remainder of the provisions. New York specifically recognizes causes of action for fraud in the inducement when the misrepresentation is collateral to the contract it induced. *See WIT Holding Corp. v. Klein,* 282 A.D.2d 527, 528, 724 N.Y.S.2d 66 (N.Y.App.Div.2001) ("[A] misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud."). Recission is an appropriate remedy for fraudulent inducement.

Defendants stay silent on the entire concept of breach of the Settlement, the OBT Book, only calling on provision that they believe benefit them. Their motion papers do not even mention the "OBT Book" – and that failure to dispute the allegation, by evidence, affidavit, declarations or otherwise, leave the facts unopposed and entitles Plaintiff to immediate relief – to enforce the Settlement.  Under New York (and every other state's) law, parties are not free to interpret a contract in a way that frustrates the purpose of that contract or that makes any provision of the contract meaningless. *See, e.g.,* 11 Williston, Contracts, § 32:9 (4th ed. 2009); *UBS Securities LLC v. Red Zone LLC,* 77 A.D.3d 575, 578, 910 N.Y.S.2d 55 (2010). [11] Plaintiff seeks to enjoin Larkin from continued breach of the Settlement and NDA.  Defendants cannot continue to sustain a status quo of willful infringement and breach of the Settlement through trial. That is not the status quo that was agreed upon prior to the Settlement.

2 – Defendants String Together Unsupported Facts in their Fictional Background

On *Pg2* Defendants revert back to a string of unsupported facts that were previously disputed by Affidavit (*ECF40.4*). Despite Defendants fail to submit any of their own declarations, affidavits or evidence of their own yet fully acknowledges the Court is to review the entire record in its consideration of the Preliminary Injunction, indeed referring to their own prior pleadings ECF63-65, 67. "In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." *Sterling v. Deutsche Bank Nat'l Tr. Co. as Trustees for Femit Tr. 2006-FF6*, 368 F. Supp. 3d 723, 725 n.2 (S.D.N.Y. 2019) (internal quotations omitted).  Plaintiff equitably, consistent with standards in this circuit, the Court while considering Defendants record, also include Plaintiffs three affidavits, (See *ECF*40.4, *ECF*26.1, and *ECF*98.1) with some irony and adopting a disputed standard, make numerous unsupported statements and fail to proffer any affidavits of their own.

---

[11] <u>Rex Med. L.P. v. Angiotech Pharm. (US), Inc.</u>, 754 F. Supp. 2d 616, 624 (S.D.N.Y. 2010).

(a) Def. Opp. Pg.2 "*Plaintiffs never disclosed their purported hedging strategies*" This is contradicted by Affidavit ECF40.4 Pg 7-8. Plaintiff has also alleged the numerous false statements made that clearly lack evidentiary support warrant sanctions under Rule 11 (*See* ECF40).

(b) Pg.2 " *Plaintiff placed the trades for Defendants or directed Defendants which trades to make*" This is contradicted by Affidavit ECF40.4. Plaintiff never had any access to any trading accounts to place trades. These are also contradicted by the terms in the contracts  T&C ¶3b, EULA ¶4.1)

(c) Pg.2  "*Plaintiff never told Defendants the basis on which they made their decisions*"  This is contradicted by Affidavit ECF40.4 Pg.7-8. Plaintiff has also alleged the numerous false statements made as they lack evidentiary support warrant sanctions under Rule 11 (*See* ECF40).

(d) Pg.2 "*Plaintiff were never let "under the hood"*"  This is contradicted by Affidavit ECF40.4 Pg7-8. Plaintiff has also alleged the numerous false statements made warrant sanctions under Rule 11 (*See* ECF40).

(e)  Pg.2 "*Plaintiff "strategies" resulted in severe losses.* This is contradicted by Affidavits ECF26.1 and ECF 40.4. The Losses were caused by Lothrop's abandonment of the trading floor and several unauthorized transactions which left the book short (*See* Aff ECF26.1, ECF40.4 ¶54.)

### 3 – Defendants fail to dispute Key Facts (Undisputed)

The Court is also requested to note, Defendants do not dispute key facts repeated several times in the Affidavits and Exhibits by Plaintiff, and do not contradict once either in pleading or by submitting their own affidavits that (a) that Larkin and Kumaran are competitors; (b) the existence of the new CTA business and Nefertiti, and use in competition with STORM since June 2020;  (c) that their actions are in breach of NDA and SA; (d) activities occurred after 2016 and the hedge funds are most subject to the Settlement; (e) that Defendants agreed to pay substantial license fees and royalties; (f) that they are engaging in continued use and profit of the OBT Book; (g) that the OBT Book is generating over $1million dollars of profit a year;  (h) that they obtained the line by line examples during the FAT Test; (i) that Larkin agreed to reinstate the licensee fees and royalties in April 2017 and (j) Larkin misrepresented himself as a business partner and fiduciary of Plaintiffs hedge funds to induce further trade secrets. Instead they continue to misquote the Affidavits and use the word "reverse engineering" when Plaintiff never stated those words. Presumably Westerman are aware that "reverse engineering" is not covered under the DTSA so ignore the facts and affidavits pled copying, and misquote the Complaint to inject their own version of words of "reverse engineering" , This is another red herring to the Court.

#### 4 – Defendants allegation of Losses are Unsupported by Action and Contractual Provisions

What appears to be their only defense, is to wrongfully lay blame about Losses that occurred in 2014, when Lothrop left the trading floor.  Defendants also misquote the facts, evidence and affidavits presented to this Court about losses. (*See* Aff ECF26.1). Plaintiff didn't "allude" to Losses, they were supplied in Affidavit and sworn declaration (ECF 26.1, ECF40.4). The Court should also note,  these frivolous allegations about passing the blame for Lothrop's losses were fully settled in the prior action. The Court is also respectfully requested for take judicial notice of the Settlement (*ECF* 52.2) whereby Defendants already brought various vexatious and frivolous litigations against Plaintiffs (including Plaintiff Kumaran individually) purporting to assign liability for Lothrop's losses, even though Plaintiff was never able to access the trading account or place a trade. The SDNY Mediator dismissed and cautioned Defendants that these frivolous claims would never survive, including without limitation consideration the express contractual limitations. Plaintiff's **unopposed affidavits** cannot be countered by disputed *allegations* in Westerman's brief in Page 2. They have already been contradicted **by affidavit**. The Court is also respectfully requested to take judicial notice of the Contracts between Plaintiffs and Defendants. T&C ¶12, and EULA ¶12, expressly limiting Plaintiffs liability for  Clients' losses and under the agreements the consideration of risk was on Northland. There was also <u>no finding of wrongdoing against Plaintiff in the 2015 action</u> which is why the case was settled in full.

The Court is also respectfully requested to examine the illogical sequence of events. Larkin "claims" Plaintiff is to blame for losses, yet, he settled a $75,000 invoice for $90,000 and then, just four months later, **<u>on his own personal account</u>**, agreed to invest several hundred thousand dollars of capital (Two Year Operating Capital) from his personal bank account, (secretively and concealed from his controllers) to fund Plaintiffs personal hedge funds, and become a fiduciary and business partner. These actions are not consistent with a story of Plaintiff causing losses. Then the illogical facts show that Larkin opens more FCM accounts, also fraudulently concealed from Northland and his controller for Plaintiff Kumaran for Northlands account again to transact individually. (See ECF40.2, ECF40.3)

Perhaps a more truthful story of motive, is that Larkin recognized his own management errors in judgement to allow Lothrop (a 22 year old kid with no trading experience) to handle millions of dollars on a trading floor for Northland. (*See* Aff ¶26.1). As was reported, the "kid" frequently wondered off the trading floor with negligence, and was the cause of significant losses to Northland in November 2014. (See Affidavit ¶26.1,40.4) Larkin then turned to Plaintiff to "help him" recover Lothrop's losses, which were out of scope services. Defendants had already behind the scenes, become operational with

the cloned version of the OBT Book, and were already building a shadow system which was being concealed. The PILOT was just a fake exercise to get their own version running. (See Aff 26.1) All Defendants committed fraud to conceal their behind-the-scenes replications. Instead of using the PILOT for its intended purpose, and now realizing **Lothrop had depleted the profits already built up by wondering off the trading floor**, Larkin, at his own direction, instigated speculative trading to try to recover Lothrop's losses. Larkin engaged in conduct that was well outside of the scope of the engagements, violated the Commodities Exchange Act to engage in speculative activities, and tried to "use" Plaintiff to try to recover Lothrop's losses (threatening non-payment unless Plaintiff modified its programs to try to recover his own trader Lothrop's losses). While simultaneously transferring all the value and profits onto his unauthorized OBT cloned system, Lothrop and Larkin made the gravamen error, to miscalculate margin on several unauthorized deals– losing hundreds of thousands of dollars called synthetic futures. This backfired and resulted in a missed margin call and Larkin having to liquidate the account at a loss. (*See* Affidavit ¶26.1, ¶40.4). Larkin wrongfully blamed Plaintiff – with full knowledge of his own misconduct, errors in margin and Lothrop's absence from the trading floor. The real-motivation was for Larkin to "save-face" that the plan back-fired – and as Plaintiff was a consultant, and readily terminable, and he couldn't terminate Lothrop, as an employee that he also needed onsite full-time, and Lothrop was a cheaper resource. Meanwhile recognizing Defendants had already duplicated the OBT Book, and could operate most of it now without paying the share of royalties and profits, they willfully acted to conspire to run their version without compensation. All Defendants fraudulently concealed the OBT Book, both during the PILOT and after.  Larkin used Lothrops' losses, as an excuse, to blame and terminate Plaintiff, and then cut Plaintiff out of the profits – by wrongfully assigning blame for Lothrop's miscalculations.

Defendants knew the OBT Book had generated revenues of over $1 million a year, and calculated that Plaintiffs share would be, with license fees and royalties contractually agreed to be over 40-50%. Larkin in bad faith and intent to harm wrongfully assigned blame to Plaintiffs, and cut Plaintiffs out to use Plaintiffs share to fund Defendants business. Defendants became reliant on using (spending through) Plaintiffs share of the license fees and royalties to pay the salaries of himself, Lothrop and Bramante – such conduct is inequitable. To continue their ill-gotten gains, Defendants knowingly and intentionally committed fraud, to induce the Settlement and concealed the OBT Book what had really happened behind the scenes, and willfully threatened to cause irreparable harm to Plaintiffs if they tried to enforce their rights. Defendants to this date are spending through Plaintiffs share to fund their own livelihoods.

Page 33

### F – BALANCE OF EQUITIES IS SERVED BY ENFORCEMENT

Plaintiff has shown that the balance of equities favors . A preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible. *Republic of the Philippines v. Marcos,* 806 F.2d 344, 356 (2d Cir.1986); *In re Feit & Drexler, Inc. v. Drexler,* 760 F.2d 406, 416 (2d Cir.1985).  Gelfand v. Stone, 727 F. Supp. 98, 100 (S.D.N.Y. 1989). Defendants only again object to any restraints on (a) selling the business and disposing of assets to render an award futile (Relief #6) and (b) placing in escrow the accrued license fees of $800,000 and unpaid royalties on profits of over $4,500,000 (Relief #5) *See Mot PI Pg.9.

(a) Plaintiffs rights to preserve judgment are supported by Larkin's fraudulent intent

Defendants instead of disputing the well-pled arguments of equities on Pg. 20-24 Mem of PI, only appear to object to the restriction of assets and selling of business, to make a judgment futile to Plaintiffs. A preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible. *Republic of the Philippines v. Marcos,* 806 F.2d 344, 356 (2d Cir.1986), *cert. dismissed,* 480 U.S. 942, 107 S.Ct. 1597, 94 L.Ed.2d 784 (1987). Such a demonstration of intent to frustrate a judgment will satisfy the requirement of a showing of irreparable harm. *Feit & Drexler, Inc. v. Drexler,* 760 F.2d 406, 416 (2d Cir.1985). An applicant must also demonstrate an intent to frustrate a judgment that might be rendered in its favor to satisfy the prerequisites for an order of attachment under CPLR § 6201(3). In determining whether an attachment should issue, **intent to defraud is required** and may not be lightly inferred. See *Brastex Corp. v. Allen Int'l, Inc.,* 702 F.2d 326 (2d Cir.1983). [12] Plaintiff has presented three affidavits thus far with sworn declaration of fraudulent conduct, including covert operations to conceal monies and withdrawals from his employees and controller, and conceal activities from the FCM's. (*See* Aff ECF40.4, Aff ECF26.1, ECF98)

Plaintiff also take notice of a sequence of fraudulent behaviors – (i) in concealing accounts from his controller (ECF40.2, ECF40.3, Aff ¶40.4; (ii) in fraudulently conveying promise of substantial monies to be transferred by Northland and Hedge without the signature and knowledge of the company controller (Aff 40.4); (iii) funding of activities in deceit and concealment from his personal bank accounts and (iv) instructed Plaintiff to commit fraud to various FCM's to conceal the payments arrangements which counts as constructive fraud under New York Law (ECF40.4) (v) and  other devious conduct to frustrate

---

[12] See also *Societe Generale Alsacienne De Banque, Zurich v. Flemingdon Dev. Corp.,* 118 A.D.2d 769, 500 N.Y.S.2d 278 (2d Dep't 1986).

Plaintiffs rights to its property (See *ECF*98.1). Courts have taken action to note of past efforts to defraud – (See *HBE Leasing Corp. et al. v. Frank,* 837 F.Supp. 57, 59 (S.D.N.Y.1993), *aff'd,* 22 F.3d 41 (2d Cir.1994), *modified,* 48 F.3d 623 (2d Cir.1995). Noting in this action the danger of this occurring be presumed from past fraudulent conduct to conceal payments.

In an evidentiary hearing Plaintiff will show Defendants have and are spending Plaintiffs share of the money to support and pay for their own business operations, and it is with intent to render a judgment meaningless. Courts have ruled that a Defendants cannot continue to live off and support themselves from monies and debt owed to another party. Courts have held that "Defendants' money troubles .. the fact that they are essentially insolvent has nothing to do with Plaintiff's ability to enforce its security interest [in an injunction]. As such, the fact that Defendants may have to close their business does not tip the balances of hardships in their favor under these circumstances" *Cf. VoiceStream Wireless Corp. v. All U.S. Commc'ns,* 149 F.Supp.2d 29, 38 (S.D.N.Y. 2001) (finding that the balance of hardships favored the defendant because the injunction "if issued, 'would cause [the defendant] to cease operations' "). Bank of Am., N.A. v. Won Sam Yi, 294 F. Supp. 3d 62, 81 (W.D.N.Y. 2018)

(b) Defendants do not oppose the Status Quo Injunction on *Pg.*20-24

Defendants also fail to provide any affidavits or supporting evidence that they are not using the OBT Book, or profiting from, generating substantial amount of revenue. They also leave unopposed that they agreed to compensation of license fees and royalties effective April 2017. (*See* Aff. ECF40,4, ¶32-40 stating that Larkin promised that License Fee and Royalties would revert in April 2017). Their failure to oppose these facts is fatal to a Preliminary Injunction and Plaintiff motion is unopposed and should be granted. In Opposition, they do not dispute this not "equitable" and waived their defense.

On *Pg*20-24 Mem_PI, Plaintiff provides **uncontested** legal argument how equities are not served by permitting Defendants unfettered use of Plaintiffs risk management products and CTA strategies without resuming of the license fees and royalties, CTA track record,  previously agreed to in the last uncontested position between the parties and affording the performance credit. (*See* Pg. 20-21 – citing also footnotes 65-70).  In the alternative to cease and desist all use of the OBT Book. This relief also incorporates full recording of the CTA performance record of the infringing use of Plaintiffs property.

Defendants argument that resuming a status quo constitutes monetary damages is not upheld by case law in this circuit.  Status Quo licensee fees and royalties are not the status quo—*See* Mastrio v. Sebelius, 768 F.3d 116, 121 (2d Cir. 2014)…. "the last peaceable uncontested status preceding the present controversy—was Aetna's payment of benefits to Prendergast." Defendants version of a "status quo" is

that they continue to breach the contracts, suffocate their competition, take unauthorized credit, not pay for technologies to pay *for their own salaries and expenses*, while frustrating the proceeding to obstruct protection of their competitors' confidential information. Plaintiff is enforcing its rights, to the sole and exclusive provider of the IP and trading strategies, is a "status quo" and what was expressly agreed to. This is to prevent ongoing irreparable harm, unfair competition, unauthorized misuse of Plaintiffs risk management technologies and CTA strategies and unfair credit, without right, title and interest to do so,

The Court should note Defendants do not dispute or counter, a balance of equities in this regard and their opposition is void of any response, to the resuming of licensee fees and royalties, and devoid of any contradicting sworn affidavits. Barrientos v. 1801 1825 Morton LLC, 583 F.3d 1197, 1215 (9th Cir. 2009) ("[Defendant] did not object to the scope of the injunction before the district court and, therefore, has waived the objection.") Neither do Defendants refute that the last uncontestable position between the parties was prior to the Settlement, and also in the AIP where Defendants agreed to resume License Fees and Royalties in April 2017. (*See also* Aff40.4). The only case law offered to contest the Status Quo, Defendants cite to *Hoblock vs. Albany County.* (*Def.Pg.11*). This election fraud case law is irrelevant to the facts of this case, where there was no prior licensing agreement and agreed upon premiums are in place. Further the license fees and royalties also includes appropriate to CTA credit and disclosure of the true source of the IP cannot be awarded in monetary damages. Defendants failure to dispute the existence of the **agreed upon License Fees and Royalties is fatal**. (*See* Aff ECF26.1, ECF40.4). Defendants do not even oppose any objection to the resuming of Status Quo, carefully omitting discussion of their commitment to pay for license fees and royalties.

Courts ascertain the proposed injunction's effect on the status quo that drives the standard —that is, "**the last actual, peaceable uncontested status which preceded the pending controversy**." *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) [13]. Instead Defendants ask the Court to permit a Status Quo that permits them to continue infringing and breaching activities, continue to generate unlawful profit, and destroy the goodwill of another CTA in unfair competition. Because Defendants papers are devoid of mention of the OBT Book and CTA business, and they do not deny or defend their unfair competition, and failure to give credit and performance credit which is unquantifiable in monetary damages. Defendants have waived their defenses to a *Status-Quo* injunction and Plaintiffs injunction should be granted. Further they misquote the motion – that resuming a status quo is not an award of prior damages

---

[13] (quoting *LaRouche v. Kezer*, 20 F.3d 68, 74 n.7 (2d Cir. 1994) ). N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc., 883 F.3d 32, 37 (2d Cir. 2018)

(*See* Pg. 2, Pg. 11 – damages for the unauthorized use prior are assessed at trial  – it simply enforces they must cease and desist in unfair competition.)

Since Plaintiff is a CTA, that failure to not give CTA performance track record, is critical in irreparable harm, and is ***not contested*** in their opposition, and also into considered not compensatory by any monetary award and also constitutes irreparable harm. A CTA's performance is the lifeblood of competition which Defendants are also depriving Plaintiff of. Defendants failure to defend or dispute once in affidavits or pleadings, payments they agreed to, or the trading royalties or license fees, *as well as the CTA performance track record*, and consideration due to Plaintiffs under the agreements is material in their opposition as it renders their defense waived Courts have also ruled that damages to good will and reputation constitute irreparable harm (*See* Sec. D). Since these legal arguments are ***unopposed***, Plaintiff relief in Items (1)-(5) (7) as well as the Status Quo on Pg. 20-24 should be granted.

## G – PUBLIC INTEREST IS SERVED

On. *Pg.*10-11 Defendants fail to oppose majority of the relief as not in the public interest (See Mot Pg1-2,Relief #1-#6) and Plaintiffs arguments on Pg10-11 on Relief #1-#6 are unopposed. "[W]hen a court orders injunctive relief, it should ensure that the injunction does not cause harm to the public interest." *Golden Krust Patties, Inc. v. Bullock,* 957 F.Supp.2d 186, 200 (E.D.N.Y. 2013) (quoting *U.S. S.E.C. v. Citigroup Glob. Mkts. Inc.,* 673 F.3d 158, 163 n.1 (2d Cir. 2012) ). "There is a well-recognized public interest in enforcing contracts and upholding the rule of law." *Empower Energies, Inc. v. SolarBlue, LLC,* No. 16-cv-3220 (DLC), 2016 WL 5338555, at *13 (S.D.N.Y. Sept. 23, 2016); *see GE Transp. (Shenyang) Co. v. A–Power Energy Generation Sys., Ltd.,* No. 15 Civ. 6194 (PAE), 2016 WL 3525358, at *9 (S.D.N.Y. June 22, 2016) ("[T]he public interest is served by the enforcement of parties' rights under their contract. ..."); *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG), 2012 WL 5895784, at *2 (S.D.N.Y. Nov. 21, 2012) ("The public interest of enforcing contracts and upholding the rule  of law will be served by the issuance of this Order."). **Since the Relief Sought in Mot Pg1 #1-#6 is <u>unopposed</u> Plaintiffs motion must be granted.**

Plaintiff responds only to Relief #7. On Pg. 11, Defendants only concern is that their own "livelihoods" which is being built on infringing product at Plaintiffs' expense are preserved. However in unfair competition and trade secret cases, the balance of livelihoods must be granted to the owner of the trade secrets and Defendants cannot claim prejudice when they have built their business around a misappropriated and infringing item. (*See* Mem.Pg.22-24, Ftne.72-75) Defendants arguments are again laced with factual errors, and misconstrue the evidentiary and affidavits put forward to this Court,

claiming there are no trade secrets.  Defendants are not permitted to claim "amnesia" from their executed contracts before this Court on what they agreed Plaintiffs' trade secrets are. (ECF52.1 ¶1.3, NDA ¶2b) Aside from the clear breaches of their Settlement, they cannot claim ignorance after executing with counsel that acknowledges their "careful read and understanding". Defendants have had over seven (7) months to offer contradictory affidavits. They did not. *Second* Plaintiff has in its unopposed Affidavits (See *ECF*40.4, ECF26.1 and ECF98.1), carefully met pleading standard of substantial likelihood of success. Yet Defendants, argue to the Court they should be able to maintain their livelihoods at the expense of Plaintiffs' – while ongoing irreparable harm continues to its directly competing business. They now seek to maintain their use in unfair competition now that in September 22, 2020 Plaintiff's STORM fund. Court's have held their judicial power to enforce the contracts. They fail to dispute the "last contested status between the parties" and the directly competing businesses. *See also New Horizons Educ. Corp. v. Krolak Tech. Mgmt. of Syracuse, LLC*, No. 18-CV-1223, 2018 WL 5253070, at *6 (N.D.N.Y. Oct. 22, 2018) (characterizing the plaintiffs' request for an order directing the defendants to stop using plaintiffs' [property] and enforce the parties agreements as a request for traditional, "prohibitory relief"); *Devos, Ltd. v. Record*, No. 15-CV-6916, 2015 WL 9593616, at *9 (E.D.N.Y. Dec. 24, 2015) (granting a preliminary injunction based on the traditional (rather than heightened) standard even though defendants were already competing with, and soliciting business from customers of, the plaintiff). The logic behind this approach is simple: doing otherwise would permit defendants to "seek[ ] **shelter under a current 'status quo' precipitated by their wrongdoing**." *N. Am. Soccer League*, 883 F.3d at 37 n.5. Gen. Mills, Inc. v. Champion Petfoods USA, Inc., No. 20-CV-181, 2020 WL 915824, at *8 (S.D.N.Y. Feb. 26, 2020)

Defendants' admit their only real concern is their "livelihoods" are at stake from having to cease and desist use of the infringing product and place their ill-gotten gains in escrow. They seek to maintain an unreasonable "status-quo" of breach of the Settlement and NDA, in direct unfair competition, funding their own livelihoods at the expense of Plaintiffs. (*See* Mem Pg.2-10) They have demonstrated fraudulent intent, bad faith and motive to frustrate and delay any rights and willfully harm Plaintiff. (See ECF98) The argument that Defendants' livelihoods are at stake fails as a matter of law. Plaintiff has a right to its share of the payments agreed to, and to make sure that judgment is collectible. Courts also have not considered inequitable or against the public interests, when party breaches its side of compensation to another to restrain their assets. See Bank of Am., N.A. v. Won Sam Yi, 294 F. Supp. 3d 62, 81–82 (W.D.N.Y. 2018), holding "Plaintiff was entitled to expect that it could hold Defendants to the terms of

those agreements.... as a result of Defendants' failure to adhere to their obligations, Plaintiff faces the potential loss of millions of dollars." "The public has an interest in seeing that parties oblige by their contractual obligations and are not allowed to skirt such obligations **at another's expense**." *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.,* 754 F.Supp.2d 616, 626 (S.D.N.Y. 2010); *see also Baltimore & O. S. W. Ry. Co. v. Voigt*, 176 U.S. 498, 505, 20 S.Ct. 385, 44 L.Ed. 560 (1900) ("[T]he usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation.").

### H – CONCLUSION

Plaintiff has met all four parameters to secure a preliminary injunction, and has established: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) the public interest is served by an injunction. *See Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Plaintiff has met the standard for all three causes of action (a) Unfair competition (b) Breach of Contract and (c) Misappropriation of Trade secrets. Causes (a) and (b) were ***undefended***. Courts in this Circuit generally permit a movant who has established irreparable harm to demonstrate *either* "a likelihood of success on the merits, or ... sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief." *Able v. United States,* 44 F.3d 128, 130 (2d Cir. 1995) (quotation marks and citation omitted). See Bank of Am., N.A. id.

Despite seven (7) months and fully represented by counsel to prepare an opposition - the Court should also note the vacancies in Defendants' response. Since Plaintiffs affidavits, declarations and exhibits are ***uncontested***, and the relief sought in Relief Items #1-#6 (See Mot Pg. 1-2) across the board are ***uncontested*** in Defendants papers, and the causes of action Unfair Competition and Breach of Contract claims are ***uncontested***, the mention of the OBT Book or directly competing CTA's is ***undefended***, and Defendants fail to offer one affidavit, declaration or exhibit of their own. Defendants have produced the benefit of months of delays by their own obstructions to a protective order (ECF98.1-ECF98.49).  With intention to harm and willful obstruction, continue to damage Plaintiffs' livelihood and suffocate its competing business, and need to cease and desist, breach the agreements, hold their confidential and trade secrets as "leverage" and are required under contract and law, to cease and desist.

**Plaintiff prays for relief, that Plaintiff's motion should be granted without further delay** and justice restored in equity and in kind.

Respectfully submitted,// SSK// Samantha Siva Kumaran