## PRELIMINARY STATEMENT

The A Star Group, Inc is a Corporate Plaintiff and an S-Corporation that is represented by the undersigned counsel since January 22, 2021. The Court in conference on June 18, 2020 gave Plaintiff Kumaran thirty days to appoint counsel which it did through former counsel Esptein Levine on July 17, 2020. However, <u>simultaneously,</u> and prior to the appointment of counsel, the Court ruled that the motion to dismiss should proceed on the *uncounseled Pro-Se* on the First Amended Complaint dated December 26, 2019 while A Star Group made an appearance by counsel. The parties both requested in each of the opposition briefs requested the right to amend. (ECF73-ECF75). As has long been accepted by the Courts, a corporation can not be represented by a *Pro-Se* litigant and therefore consistent with the rules it cannot file combined legal argument (Memorandums) briefs with a *Pro-Se* litigant. Defendants objection that *counseled* corporate plaintiffs are not entitled to file their own briefs, with separate representation, violates constitutional rights of separations of *Pro-Se* and *counselled* Plaintiffs. Defendants in fact attempt to end-around the rules to not permit Corporations (represented by counsel) to asserts its own interests. The history of the need for separate filings from a corporation dates back to the 1700's and the history of why Pro-Se representation must be divorced by counsel . *See* Iannaccone v. L., 142 F.3d 553, 556–57 (2d Cir. 1998). The right to proceed *pro se* in civil actions in federal courts is guaranteed by 28 U.S.C. § 1654, which provides: "In all courts of the United States the parties **<u>may plead and conduct their own cases</u>** personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

A party seeking to assert his statutory right to self-representation **must clearly and unequivocally discharge any lawyer previously retained. A party does not have a right to self-representation and representation by counsel at the same time.** See id.; United States v. Mitchell, 137 F.2d 1006, 1010–11 (2d Cir.1943). This distinction is material. Therefore AStar and Kumaran are entitled to and should in fact file separate pleadings.

Corporate Plaintiff – AStar objects to the allegations by Defendants that AStar is a "*quasi-pro-se*" litigant. (Opp at 22). There is no such thing permitted under Federal Rules of a "quasi-pro-se" litigant and the claim is non-sensical. This statement itself is an admission to the Court that the First Amended Complaint ECF26 was <u>never signed by counsel</u> representing the Corporation and

this was a *Pro-Se* Complaint. Therefore, The A Star Group, Inc by and through its counsel never signed or approved the *Pro-Se* First Amended Complaint and under Rule 15 has never had an amendment of right. Further, the Court ruled on a *Pro-Se* Complaint, which represented the interests of a corporation without granting leave to amend to corporate counsel.

Therefore, *counselled* Corporate Plaintiff has not yet had its amendment of right. Defendants blatantly seek to obtain procedural inequity as A Star by and through its counsel has not yet had the opportunity to file a First Amended Complaint and/or sign and submit a complaint to the Court, and Defendants seek to obtain un unfair advantage on a *Pro-Se* Filed Complaint. Further in accordance with Rule 11, the complaint ruled upon on behalf of corporate Plaintiff A Star (*ECF*26) was not signed by counsel and therefore not filed or represented by Counsel. For this reason alone, The A Star Group, Inc is requesting as it did in ECF73-75 the right to amend freely as no counsel has filed a complaint yet. The First Amended Complaint filed by *Pro-Se* Plaintiff continued without signature for The A Star Group, Inc in July 18, 2020 and there has been no amendment of right since counsel appeared.

I - Rights to separate Motions and Memoranda:

Further, A Star, by right, has a right to file any motions and memorandums of law it deems appropriate and has no obligation to combine its representation or motions and pleadings with a *Pro-Se* litigant or any other Corporate Plaintiffs such as NAM or NRCM. A Star therefore asserts the Court previously abused its discretion to rule on dismissal of A Star's Complaint without signature from counsel in the December 26, 2019 filing, and without a chance to leave to amend. What Defendants intend to do, is blatantly violate Court procedures that deny A Star Group, Inc the right to file *counseled* briefs or a *counseled* Complaint. There was no "end-around" on Court rules. The A Star Group, filed approximately a 26.5 pages Memorandum of Law. Defendants have routinely flouted page counsel limits, and have gone as far as to commit fraud on this Court. (*See* Pg. 6 Footnote – Defendants commit fraud to pretend that ECF78 was filed by Plaintiffs and granted nunc pro-tunc when the correct reference is ECF71 and ECF72 and leave was granted prior. See ECF94 Defendants filed an 11 page letter late violating Court rules. While the page count was 26.5 pages (as opposed to 25 pages). Defendants are using technicalities to objecting to a 2-page limit excess, to avoid ruling on the merits as their evidence on dispository motion. Further,

AStar Reply Page 3

the Court already granted leave for excess pages on the Motion to Dismiss (for all parties) and since this motion re-argues that motion, equitable standards are respectfully requested to apply. This is a critical motion and Plaintiffs seek equity from the Court to allow its arguments to be fully briefed.

## II - Rule 10(c) Permits AStar to Join and Adopt by Reference Motions and Pleadings

Defendants argument that AStar and *Pro-Se* Kumaran cannot join and adopt by reference each others arguments is also incorrect and is well accepted practice under Rule 10(c.) Fed.R.Civ.P. 10(c) ("Rule 10(c)") which provides that "[s]tatements in a pleading may be adopted by reference in a different party of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Rule 10(c), provides no restriction on the ability for one party to adopt by reference the arguments advanced by another party in a motion in which the first party seeks to join. Arguments proffered by the [party] initiating the motion apply equally to all co-parties,. *See Gulf Coast Development Group, LLC v. Lebror,* 2003 WL 22871914, *1 n. 1 (S.D.N.Y.2003) and *Sacay v. Research Foundation of City University of New York,* 44 F.Supp.2d 505, 509 (E.D.N.Y.1999) (granting co-[parties]' motion to join [parties]' motion on the pleadings as the arguments defendants made in support of motion equally applied to co-[parties]). Krause v. Buffalo & Erie Cty. Workforce Dev. Consortium, Inc., 425 F. Supp. 2d 352, 362–63 (W.D.N.Y. 2006)

## III - Separate Briefs of No Prejudice to Defendants

Further, Defendants have not been prejudiced as they have the right to respond to **both** motions (and twice the space and double the opportunity to respond). Under the clear constitutional standards of a *Pro-Se* Plaintiff cannot sign the papers on behalf of a Company and must unequivocally divorce its rights from the corporate Plaintiff, the filing of separate memoranda and is necessary. (*See* United States v. Mitchell *Id*). In fact, defendants now seek to obtain procedural inequity by forcing a *counselled* Plaintiff to share briefs with a *Pro-Se* plaintiff when 10(c) is widely used in multiple party cases to join and incorporate by reference co-parties briefs, while preserving the distinction of *Pro-Se* filings and *counselled* corporate their own filings. As is the right in all proceeding from separately counseled parties (for instance two separate Plaintiffs with difference counsel, for example *Ong and Mark vs. Chipotle* filed separate briefs, hence there is no prejudice in page count to Defendants, as they simply have the same ability to respond twice to

each party. As is consistently the case, in multi-party Defendant cases represented by separate counsel, each party can file a separate response to or initiate a separate motion. Defendants by their own choice, chose to engage in combined representation but instead are trying to prejudice Plaintiffs by limit *Corporate* Plaintiffs' rights to file independent filings which are not represented by a *Pro-Se* litigant.

IV -  AStar's Rights were not adequately represented in a Pro-Se filed Complaint

The A Star Group, Inc is a separate and distinct legal corporate entity. Defendants have admitted that the history of facts dates back to 2010 if not more than a decade. This is a complex case with several distinct time periods. Therefore AStar has rights to enforce going back to being defrauded before and during and after the Settlement. Defendants fraudulent and unauthorized conduct has caused substantial damages to Plaintiffs. While many of the facts that occurred after September 2016 were related to Kumaran (Individual) and Larkin (individual)  dealings and the formation of new hedge funds and Nefertiti. However, as the Court acknowledges Defendants promptly agreed to reinstate payments to The A Star Group. However the earlier business dealings and signer  The A Star Group, Inc was a separate legal party to the Settlement Agreement that was defrauded and the sole party to the Engagement Letters such as the that were terminated. Therefore, AStar's complaint should be signed by counsel and amended.

V - Court's decision to not let A Star amend of right was unjust

As stated clearly in The A Star Group's Motion for Re-argument, A Star is a legally distinct and separate entity who engaged in several years of business with Defendants. Defendants engaged in fraud and deceit to improperly deplete AStar's profits for their own unlawful gain. AStar's inability to amend the Complaint through counsel is manifestly unjust as leave to amend should be granted freely and the Court is aware that not once did Counsel assist on any complaint.  See Rule 15

VI - Defendants have Long History of Bad Faith and Fraudulent Conduct

Plaintiff A Star Group ceased their commercial relationship with Northland and Hedge March 2015 due to mismanagement, negligence and other dishonest conduct on the trading floor. (FAC ¶185, ECF33.1) The Court fails to take judicial notice of the fines asserted against Defendants of bad faith.  Defendants including Larkin in his individual capacity have also a long standing record of being sued for bad faith conduct for misrepresentation. Plaintiffs ceased working for Defendants after the nonpayment and also due to their own negligence to manage

the trading floor including hiring untrained college-level graduates that had caused substantial losses in unauthorized trading and other non-compliance with exchange rules, resulting in regulatory violations, compliance fines and other disciplinary conduct.

https://www.cmegroup.com/notices/disciplinary/2016/06/NYMEX-15-0069-BC-RICHARD-LARKIN.html

Defendants attempted to poison the court against one single case The A Star Group Inc had for a breach of copyright case in 2011 (decade ago). A company that has one case in 25 years of business is not indicative or precedent to rely upon. (If so, for example Courts in cases with Pres. Donald Trump would need to take notice of 3,500 cases). They continue their fraud on the Court to state (Opp. at 21) this was filed by Kumaran but it was not.[1] Each case is different. It was filed by The A Star Group, Inc a decade ago and is irrelevant. The Court on the other hand should take judicial notice of the cases filed by and against Richard Larkin (**by his own current business partners**).  Defendants have a history in other Court actions of stealing IP from business partners, restricting fair market competition, not paying their share of revenues, and making false and fraudulent representations with suits brought against them by their own business partners. *Destwin, LLC v. Hedge Insite, LLC, et al 1:2012-cv-00329*. Larkin made public false statements and misrepresentation on his ownership and rights to other people IP and patents to gain an unfair competitive advantage. The Court should note there have <u>never</u> been any cases filed against Plaintiffs in any manner, or regulatory actions whatsoever on any kind. Larkin on the other hand was suspended and fined for bad faith and unjust principles of fair trade (See supra) for the same dishonest and bad faith conduct in this complaint.

VII Defendants Committed Fraud on the Court to call the AIP "oral" ten times time which was incorrectly adopted by the Court in its Order.

Defendants production of thousands of pages of emails subscribed to by Larkin as CEO of Northland and Hedge are sufficient to prove Defendants committed fraud on the Court to call it Oral. Defendants flagrantly distort facts that an agreement was "oral" over using the word to distract the Court over ten times using false statements.  The 952 Bate-Stamped documents show

---

[1] Defendants commit more fraud on the Court on Page 21 to state "Kumaran" filed prior actions against "business partners". As a first matter the 2011 was corporate action by The A Star Group, Inc and the sole action in 25 years filed. Defendants fraud on the Court continues as this was a copyright case with a Utility (not a business partner). Therefore this case has nothing to do with Kumaran but only to do with corporate Plaintiff The A Star Group, Inc..

clearly that Defendants subscribed in writings they intended to pay plaintiffs, including The A Star Group, Inc profits sharing and revenues from the services, and that Plaintiffs engaged in hundreds of hours services for which no compensation has been made. Under New York law, this conduct, including the receipt of services by Northland constitute an implied in fact contract and manifestation of intent whereby Defendants procured and received the benefit from services and have been unjustly enriched. (See FAC ¶278-287). Under New York law, the "manifestation or expression of assent necessary to form a contract may be by word, act, or *conduct* which evinces the intention of the parties to contract." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009) (citing *Maffea v. Ippolito*, 247 A.D.2d 366, 367 (N.Y. 2d Dep't 1998)). Thus, "[a] party's conduct indicates assent when he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Id.* This conduct is not barred by the Statute of Frauds, as the emails originated by Larkin as CEO of Northland and Hedge authorizing the services and promising the payments on behalf of Northland and Hedge.

### VIII  Defendants Admitted to have Committed Fraud to Retain Possession of Timetrics Software

Defendants have admitted on Pg.6 that they have produced "written responses and document requests and thousands of pages of documents". Those document requests signed by counsel are sufficient to prove fraud to retain possession of Timetrics Software. Plaintiffs have sufficient facts to now move for summary judgement on these new facts and respectfully grant leave to amend. This is consistent with Defendant long history of fraud and bad faith conduct to steal at the expense of business partners and engage in unfair competition (*see* Destwin v. Hedge supra)

### IX - Defendants Narrative of the Timelines is Incorrect

Defendants narrative of the timeline does not adequately allow for the change in Judge in February 2020 nor the extraordinary interruption to New York City during the period March 2020 to June 2020. These facts should not prejudice Plaintiffs located in this jurisdiction. *Corporate* Plaintiff complied with the Court's timeline to make an appearance which was by July 17, 2020 which was *after* the motion to dismiss was filed. Seamlessly and without burden to the Court new counsel (undersigned) appeared in the case on January 22, 2021 as significant discovery was underway. Plaintiff *Pro-Se* had already undertake significant effort in the Protective Order which also adequately identifies trade secrets and properly briefed good cause and commercial harm. Nonetheless as Plaintiffs **have proven that the Settlement was induced by fraud**, by the

production of thousands of documents showing that Defendants willfully and knowingly retained possession of Timetrics Software, the Settlement Agreement must be rescinded.  Plaintiffs are also entitled to Preliminary Injunctive relief to enforce compliance with the Settlement and failure to rule on the Settlement was manifestly unjust and prejudicial to allow parties to knowingly and ongoing breach contracts.

## X - Plaintiffs Not Permitted to Attach Affidavits or Evidence under Local Rule 6.3

The case law used by Defendants (most of which is unpublished) is all inapplicable as they cite in all cases to summary judgment motions or post-trial motions. Since at the pleading stage the Court has no facts on the record, and is not trying the case on a "evidence on the record" applying cases from hearings or where summary judgement has proceeded is also inapplicable. Therefore all cases used by Defendants (Pg.18) are not relevant or applicable to this current motion.

## XI - Notice of Breach Can Be Easily Cured by Amendment.

Defendants are incorrect (Pg. 22) that a minor amendments to the complaint in ¶144, ¶146 and ¶150 could easily rectify any minor pleading deficiencies consistent with the facts in the Complaint. Plaintiffs did give notice of the breach and have not waived their rights for damages. The facts alleged show that Plaintiffs took immediate action to demand compensation for the breach within seven (7)  days. These facts do not constitute conduct  of a waiver – they are facts consistent with an accord and satisfaction to rectify the breach – one that was never satisfied. Since express notice was given of the breach – there was no "conduct' of waiver. Defendants also do not deny or dispute that Plaintiffs brought claims timely within the statute of limitations.

## XII - All AIP related Claims were subscribed in signed emails by Larkin

Plaintiffs do in fact allege that the emails were from Larkin in his capacity as CEO and Northland and Hedge e.g. FAC ¶150-¶158  and the AIP does identify the material terms. The Court also acknowledges the Complaint outlines the material terms. (Order at 6). And the Complaint points to specific emails outlining the material terms. Together with Defendants admissions of 952 pages of bate-stamped documents memorializing the communications is clear, that there were sufficient writings subscribed under the SOF. The Court did make a clear error for the applicable precedent under NY GOL 701(a) The purpose the statute of frauds is to avoid circumstances of perjury or unfounded claims but **once a party admits to the existence of the contract, and provides evidence of its existence, the Statute of Frauds, again is no longer valid**. (See Exhibit B)

### XIII - Defendants have admitted OBT Book is Trade Secret and therefore collateral to the contract

Defendants by their own admission that Trade Secrets include OBT Book (Opp at 15) gives rise for plausible inference of Misappropriation of Trade Secrets. Defendants admission that OBT Book is Trade Secret also constitute ongoing breach of the NDA. The Court's omission of the terms that define Derivative Works or Related Works is also fatal as OBT is collateral to both the NDA and Settlement as a Related Work. This would materially change the outcome as clearly OBT Book is a duplicate, clone, replication that Defendants **do not once deny** was replicated Plaintiffs IP and Timetrics Software. This failure is fatal.

### XIV - Defendants are incorrect - slight modification to "original" IP and "new" IP could easily amend any ambiguities as to which IP is still being used and ¶202 was adequate to state breach of NDA

The Court raised a possible ambiguity in the pleading of use of "original" IP and "new" IP in the breach of the Timetrics NDA. This is a minor amendment that could readily be achieved. Further since OBT Book (as admitted by Defendants) is a derivative work or defined as a trade secret then clearly the Complaint pled ongoing use of the "original" IP which gives cause of action for ongoing breaches of the Timetrics NDA – which is a valid and binding contract under NY Law.

### XV - Defendants do not deny "doctoring evidence" the night before the Settlement

Defendants do not dispute scienter to commit fraud the night before the settlement and more evidence of doctored events created on May 8, 2016. Under Rule 60(b)(2) and 59(e) these new documents could not have bene obtained – including screenshots of their hard-drives – containing Timetrics folders and full retention of Timetrics software, folders, graphs, reports, and IP. These documents materially change the fraud and fraudulent and misappropriation claims.

### XVI - Defendant do not dispute Unfair Competition

Among the many material facts overlooked, the Order is devoid of the word Commodities Trading Advisors ("CTA's") – a significant fact and allegation related to the taking of ones property for use in unfair competition. The Court's failure to mention the words "competitors" or "competition" is a significant error of law. Therefore the Court ignores the material allegations of bad faith and dishonesty, and the well established laws in New York and legal precedent that prohibit the taking of someone's property for use in direct competition. Clearly this Complaint is distinct as Kumaran and Larkin are now direct competition and the FAC has allegations of the independent torts of

taking a persons' property for use in direct competition. This gives rise to the independent duty extraneous to the contracts – and the Court's omission of the word "competitors" is an error.

### XVII - Defendants do not deny *Pro-Se* Complaint was Used and Order is silent on this

A material oversight on behalf of the company is that the Order is also silent on the word *Pro-Se*. That is a material failing. The Court clearly created procedural inequity to rule an order on a first time Pro-Se Complaint that was clearly uncounseled and received no benefit of guidance and not use the word Pro-Se once in its order or apply any such standards. That is an abuse of discretion. While the Complaint highlights a detailed outline of the key transgression of events, The A Star Group, Inc has not yet had leave to amend with counsel and given that counsel appeared after the briefing schedule, both Plaintiffs expressly requested leave to amend in their oppositions ECF73-ECF75. These amendment is not unreasonable. Courts frequently grant up to five of six amendments and that is even through counseled complaints. As the Court notes since this complaint has allegation of fraud under 9(b) it is then non-standard to not grant leave to amend. *see also Luce v. Edelstein,* 802 F.2d 49, 56 (2 Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend.").

### XVIII Defendants production of signed checks (with handwritten signatures) of Larkin satisfy his membership under of the Delaware LLC Act and as a manager and principal

Defendants production of checks (with Larkin's signature) – which Defendants do not deny his manifestation of intent to become a Manager and Principal of a Delaware LLC hedge fund are material as, they invoke Delaware LLC Act 18-101(9)(a) and (b) where Larkin manifested his intent to membership in his personal signatures and making capital contributions to Nefertiti. Larkin owed fiduciary duties as a Manager and Principal, and the statute of frauds does not apply under the DLLC 18-101(9)(A)

### XIX Defendants Rule 26(g) signed document responses demonstrate admissible evidence

Defendants befuddle the use of the word signed written document responses and interrogatories. Plaintiff made a innocuous typo to use interrogatory instead of signed written document responses since they were written responses admissible as evidence and signed by Defendants counsel Defendants have admitted to the existence of thousands of pages of signed document responses on Page 6. Under Rule 26(g) these documents are admissible and provide "new evidence" of complete and flagrant non-compliance with the Timetrics Software and fraud in the Settlement.

## XX Defendants argument of Fiduciary Duty are Impermissible

Defendants also violate procedures that raise either "arguments raised in reply" in their MTD, or "new arguments" never raised in their Motion to Dismiss. For example they now backtrack on Pg. 13 stating that the that "the Court was not required to blindly accept Plaintiff allegation that Larkin owed fiduciary duties as an alleged "principal" as a conclusory allegation citing to *Edwards* id. But the Court never ruled that Larkin as a principal was a conclusory allegation and in fact ruled the opposite that he agreed to "fund" and "manage" and LLC. Therefore, not only was this argument not raised in the original MTD, it imputes an incorrect position to the Court. Therefore Defendants again engaged in procedural impropriety. Larkin did owe fiduciary duties, as a Manager and Principal which is well accepted under the default LLC provisions.

## XXI Court Adopted Incorrect Legal Precedent on the Several Causes of Action

Defendants statements that the Court did not overlook legal precedent is also false and not supported by the record. Summarized from the motions in **Exhibit B** incorporated by reference is a table of the controlling precedent under New York law that was incorrectly used that would have changed the outcome.

## XXII Court Adopted Incorrect Facts on the Several Causes of Action

Defendants statements that the Court did not overlook material facts is also false and not supported by the record. Summarized from the motions in **Exhibit A** incorporated by reference is a table of the controlling precedent under New York law that was incorrectly used that would have changed the outcome.

## XXIII Courts' Inclusions of "Reply" Arguments for pleading of Fraud is impermissible

Defendants fail to dispute that Court adopted inequitable procedures to their benefit, to improperly accept arguments in reply that fraud was not pled with particularity (Order at 20). Defendants failure to respond to the issue. Therefore Plaintiffs argument is unopposed in the errors made by the Court. Further, under Rule 9(b) the court is not permitted to dismiss the fraud claims, on arguments never even raised in the motion to dismiss by Defendants and then not afford either Plaintiffs a chance to respond in *Sur-Reply* or a change to amend.

## XXIV- Notice was Given for the breach

Defendants argument that an amendment would be futile were not raised by the Court. In particular, since notice of the breach was given in September 2016 which led Defendants to attempt to rectify the breach, this deficiency would change the outcome, as Plaintiffs did not waive any

breach as is consistent with the actions of Plaintiffs to demand payments resume almost immediately. Further the inclusion of the thousands of documents proving fraudulent inducement of the Settlement would render the entire Settlement void under law.

## XV - Fundamental Rights

Defendants admission that the FAC was filed by a *Pro-Se* litigant on behalf of corporate Plaintiff The A Star Group, Inc without signature not consistent with Rule 11. Under Rule 11, the Complaint must be signed by counsel on behalf of counsel for The A Star Group, Inc. The Court permitted counsel for The A Star Group, Inc to appear on July 17, 2020 without amending the Complaint and while the motion to dismiss a Pro-Se Complaint had already been filed on July 8, 2020. The Court was procedurally incorrect to not have corporate counsel sign the First Amended Complaint on behalf of corporate Plaintiff The A Star Group, Inc and then move to dismiss the complaint without AStar's rights to amend through counsel. Instead, the District Court, used a Pro-Se Complaint, filed. Knowing this was a Pro-Se Complaint, the Court failed to once mention that the complaint was filed as a Pro-Se litigant and that Corporate Plaintiff never signed the Complaint. Therefore procedurally the motion to dismiss did not use the correct pleading standards and is manifestly unjust.

## XVI - Any Other Issues

To the extent not raised herein, as permitted under Rule 10(c) Plaintiffs joins any arguments raised by Kumaran as applies to corporate Plaintiff.

Respectfully submitted.

//BMA/

Brian August, Esq
AugustLawNYC
100 Willoughby Street 9E
Brooklyn, NY 11201
(917) 664-4465
bmaugust61@gmail.com
www.augustlawnyc.com
*Attorney for The A Star Group, Inc*