UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMANTHA SIVA KUMARAN, and
THE A STAR GROUP, INC. *d/b/a*
TIMETRICS,

          Plaintiffs,

-against-

NORTHLAND ENERGY TRADING, LLC, et al.,

          Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/9/2022

1:19-cv-8345 (MKV-DCF)

OPINION & ORDER
DENYING MOTION
FOR
RECONSIDERATION

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiffs Samantha Siva Kumaran, proceeding *pro se*, and her company the A Star Group, doing business as Timetrics, seek reconsideration of the Court's Opinion & Order dismissing the First Amended Complaint for failure to state a claim. Kumaran is a sophisticated repeat-plaintiff who has used her *pro se* status as a sword to abuse the judicial process.[1] She has accused several former business partners of stealing her intellectual property, breaching agreements, engaging in fraud, and dealing with her in bad faith. Kumaran and Timetrics previously sued, settled with, and executed a broad release of claims against the defendants in this case. Plaintiffs now accuse the Court of harboring bias against *pro se* litigants and failing to afford Kumaran adequate solicitude, "deliberately" misrepresenting agreements and allegations to defeat their claims, and committing reversible error by denying their request to file a third complaint in this case.

---

[1] *See, e.g.*, *Kumaran v. Nat'l Futures Ass'n, LLC,* No. 20-cv-3668 (GHW), 2022 WL 428263, at *2 (S.D.N.Y. Feb. 10, 2022) (striking reply briefs because "Plaintiffs violated the Court's clear orders"); *Kumaran et al v. Vision Financial Markets, LLC et al.*, 20-cv-3871 (GHW) [ECF No. 146 (explaining that "Plaintiffs should not expect to be able to violate the Court's rules and then ask for leave to [to do so] after the fact")]; *cf. The A Star Group, Inc. v. Manitoba Hydro et al.*, No. 12-cv-8198 (PAC) [ECF No. 9 (explaining that the court dismissed the complaint in that case *sua sponte* for failure to comply with Rule 8 of the Federal Rules of Civil Procedure because the complaint was "more than 300 pages with 1400 paragraphs" and, therefore, "the polar opposite of the 'short and plain statement'" required by the Rule)].

The Court has granted Plaintiffs every latitude over the course of this case. Plaintiffs had the opportunity to amend their pleading once, and the Court carefully reviewed the 320-paragraph amended pleading. The Court gave Kumaran the opportunity to explain at a conference the nature of her claims and amendments before the Court granted Defendants leave to file their motion to dismiss. The Court also allowed Plaintiffs to file three, overlength joint briefs in opposition to the motion to dismiss, even though Timetrics was represented by counsel. In three separate briefs, counsel for Timetrics expressly affirmed that the First Amended Complaint was adequate as written. The Court disagreed, and Plaintiffs now demand another bite at the apple.

The Court has carefully reviewed all seven of the briefs Plaintiffs have filed quarrelling with the Court's earlier Opinion [ECF Nos. 127, 128, 129, 130, 135, 136, 137]. In addition, the Court has, again, reviewed the First Amended Complaint, construing it *liberally*. The Court's conclusions have not changed. Plaintiffs' own factual allegations preclude most of their claims, Plaintiffs fall far short of alleging others, and the Court was within its discretion to deny leave to amend further. Plaintiffs' motions for reconsideration are DENIED, and Plaintiffs are instructed not to file further submissions in this closed case.

### I. BACKGROUND

The Court assumes familiarity with the background facts and procedural history of this case and, therefore, summarizes only the details relevant to this opinion. Plaintiff Samantha Siva Kumaran is the principal of Plaintiff the A Star Group, doing business as Timetrics [ECF No. 29; *see* ECF No. 26 ("FAC") ¶¶ 47–51]. "Plaintiffs are in the business of consulting and developing computer software used by commodities traders to increase profits and reduce hedging risks." FAC ¶ 2. Defendant Northland Energy Trading, LLC ("Northland") is "an over the counter options trading company," and Defendant Hedge Solutions, Inc. ("Hedge") is "a software company that

also licenses risk management software products" and "prices options for hedging price risk to customers." *Id*. ¶ 54. Defendant Richard Larkin is the CEO of Northland and President of Hedge. *Id*. ¶ 34. Defendants Daniel Lothrop and Domenic Bramante are "employees" who work for Larkin at Northland and Hedge. *Id*. ¶ 7, 19, 22; *accord id.* ¶¶ 35, 37.

Beginning in 2011, Plaintiffs licensed their "proprietary hedging strategies, software and techniques" to Northland and Hedge. *Id*. ¶ 4. The relationship was governed by a number of agreements, several of which contained promises not to copy or otherwise misuse Plaintiffs' software and strategies ("Pre-Release Agreements"). *See id.* ¶¶ 4, 68, 69, 72; [ECF No. 29 ("Timetrics NDA")]. The relationship soured. In 2015, Timetrics sued Northland and Hedge, and Northland and Hedge asserted a number of counterclaims against Kumaran. FAC ¶ 12; *The A Star Group, Inc. v. Northland Energy Trading, LLC et al*., 15-cv-4660.

On May 9, 2016, Kumaran, Timetrics, Northland, and Hedge executed a "Mutual Release and Settlement Agreement." FAC ¶ 14; [ECF #52-2 ("Settlement Agreement")]. The Settlement Agreement contains a broad release of claims "whether known or unknown" that "could have [been] asserted" at the time of the 2015 lawsuit. Settlement Agreement at 3. The Settlement Agreement releases "any and all claims" Plaintiffs "may have, or claims they have had," against not only Northland and Hedge, but also "their employees, directors, officers [and] agents . . . including Richard Larkin, individually." *Id*. The Settlement Agreement also expressly "terminate[s]" the Pre-Release Agreements, except the Timetrics NDA, which it does not mention. *Id*. The Settlement Agreement further provides:

> Despite such termination, Northland and Hedge represent and warrant that neither of them has in their possession any Timetrics software that was involved in the Lawsuit . . . and they each agree not to use, duplicate, reverse engineer or otherwise misappropriate any Timetrics Software and that they are not using and will not utilize in the future any strategies learned from the trading recommendations from the Timetrics Software to improve . . . trading or hedging revenues.

*Id.*; *see also* FAC ¶ 124.

Northland and Hedge agreed to pay $90,000 in five installments, with the last payment to be made on June 15, 2017. Settlement Agreement at 2. Plaintiffs collected all such payments [ECF No. 73 at 15].

Plaintiffs allege that, starting in 2014, before Plaintiffs released all claims known and unknown, Defendants copied and misused Plaintiffs' software and strategies in breach of the Pre-Release Agreements. FAC ¶¶ 9; 113. Plaintiffs also allege that "on September 8th, 2016," four months after they entered into the Settlement Agreement and three years before they initiated this case, "Plaintiffs first uncovered or learned" that Defendants breached the Settlement Agreement by retaining and continuing to misuse Timetrics software and strategies. *Id.* ¶ 25; *see id.* ¶¶ 120, 143, 144, 145, 148.

The First Amended Complaint does not allege that Plaintiffs notified Defendants that Defendants were in breach of the Settlement Agreement while Plaintiffs collected settlement payments. In contrast, the First Amended Complaint carefully contends that Defendants knew they were in breach based on Defendants' "full knowledge" of their obligations under the Settlement Agreement. FAC ¶ 148; *see id.* ¶ 147 (alleging that Defendants' breach was "knowing" because the Settlement Agreement contains an "acknowledgment of careful reading and full understanding of the terms"). In opposing Defendants' motion to dismiss, Plaintiffs asserted for the first time that "Plaintiffs gave explicit notice to Defendants of the breach" [ECF No. 73 ("Pl. Opp. to Northland and Hedge") at 2].

Meanwhile, beginning shortly after the May 2016 settlement and proceeding through the September 2016 discovery of Defendants' alleged misdeeds, Kumaran and Larkin negotiated a new agreement. They "etched out an Agreement in Principle during the months of August 2016 –

4

September 2016." FAC ¶ 141; *see id.* ¶ 130. Kumaran would provide Larkin with "further proprietary information" related to "Plaintiffs' unique updates and strategies," and, in exchange, "Larkin would contribute . . . significant financial capital contribution[s]" for Kumaran "to start a hedge fund," named Nefertiti Asset Management, LLC, with "no ability to terminate his capital contribution[s] for two years." FAC ¶¶ 129, 141, 142, 282. Moreover, Larkin promised that Northland and Hedge would compensate Kumaran and Timetrics in a variety of ways. *Id.* ¶ 142; *see also id.* ¶¶ 152, 155, 281.

Plaintiffs allege that Kumaran and Larkin never "signed a finished agreement" reflecting the alleged Agreement in Principle. FAC ¶ 282; *accord id.* ¶ 284 ("There was no express contract"); *see also id.* ¶¶ 197 (alleging that Plaintiffs performed services "without . . . signed agreements"), 280 (asserting that an agreement "need not be memorialized in a written form"). Nevertheless, Plaintiffs allege, from September 2016 to March 2017, Plaintiffs provided "services" and disclosed unspecified "IP, Confidential Information and Trade Secrets" to Larkin. *Id.* ¶¶ 21, 150, 162–63, 172–74. Kumaran and Larkin exchanged emails about the alleged Agreement in Principle, and Larkin personally made at least some payments. *Id.* ¶ 279; *see id.* ¶ 165, 195.

However, Larkin kept the Agreement in Principle a secret "from his own employees . . . at Northland and Hedge," including Lothrop and Bramante. FAC ¶ 19; *see id.* ¶ 22, 156, 158, 169. Larkin "never fulfilled his [personal] commitments of providing the capital" for Kumaran's new hedge fund and committed other alleged breaches of the Agreement in Principle. *Id.* ¶ 22; *see id.* ¶¶ 163, 186, 189, 194. And Northland and Hedge never paid the "compensations" Larkin had promised. *See id.* ¶¶ 22, 163, 197, 198.

On September 6, 2019, Kumaran, proceeding *pro se*, filed a 174-paragraph complaint in this Court, asserting eleven claims on behalf of herself and Timetrics [ECF No. 1]. She quickly

5

began what later became a pattern of filing serial letters on the docket that reflect both her sophisticated understanding of the judicial process and her vituperative litigation position. On November 26, 2019, Kumaran filed a letter informing the Court of her intention to serve Defendants by December 4, 2019 and to amend the complaint "as a matter of right" within 21 days of service, "in compliance with Federal Civil Rule 15(a)(1)" [ECF No. 7]. One week after effectuating service, Kumaran filed a letter accusing defense counsel of causing delays and other misconduct [ECF 13].

In an Order dated December 20, 2019, the Court explained that "a corporation may not proceed in this Court without an attorney and, thus," Timetrics "will need to obtain representation" to "proceed as a plaintiff in this case" [ECF No. 23]. In defiance of this Order, Kumaran proceeded to file more than a dozen submissions on behalf of both plaintiffs before any counsel appeared for Timetrics. In particular, Kumaran filed the First Amended Complaint, which spans 69 pages and more than 320 paragraphs, asserts 16 claims, and attaches a further 10-page "fraud affidavit" [ECF No. 26 ("FAC"), 26-1].

On June 18, 2020, the Court held a conference to address Defendants' request for leave to file a motion to dismiss and Kumaran's mounting requests for relief, including, for example, a motion to strike Defendants' pre-motion letter. On the record at the conference, the Court explained that it was affording Kumaran "every latitude" as a *pro se* Plaintiff, even though she was "obviously . . . quite sophisticated" in her "understanding of the legal process" [ECF No. 106 ("Tr.") at 9–10]. The Court explained that it was "drawing that conclusion by virtue of the detailed papers [Kumaran had] filed citing to the relevant codes and procedures." Tr. at 10.

The Court then explained that the "corporate claims should have been dismissed already," since Kumaran ignored several warnings that Timetrics needed to obtain counsel. Tr. at 9.

Although Kumaran protested that she did not "wholly ignore the warning," she acknowledged that she "filed the amended complaint before addressing it." *Id*. at 10. She requested another 30 days to obtain counsel for Timetrics, and the Court granted that request, noting that it was "making allowances" because Kumaran was *pro se*. *Id*.

The Court also engaged Kumaran in an extended colloquy about the nature of her claims and, specifically, what she "change[d] when [she] amended the complaint." Tr. at 3–4. For example, the Court sought clarification about which claims belonged to Kumaran, rather than Timetrics. Kumaran represented that "the corporate claims, if any exist, are separate from my own individual claims as the sole owner of the . . . intellectual property at issue here." *Id.* at 7.

The Court granted Defendants leave to file a motion to dismiss. Tr. at 18, 21–22. The Court also granted Kumaran several requests for relief, including temporarily sealing certain documents based on Kumaran's representation that her trade secrets might be revealed. *Id.* at 20–23. Finally, after denying Kumaran's motion to strike Defendant's pre-motion letter and explaining why that request was inappropriate, the Court warned Kumaran about the filings that she kept "proliferating." *Id.* at 15.

In July 2020, counsel appeared on behalf of Timetrics [ECF Nos. 68, 69]. If, at that time, Plaintiffs had requested leave to file a second amended complaint, the Court would have granted that request. Instead, as explained below, counsel for Timetrics explicitly endorsed the First Amended Complaint as written.

After Defendants filed their motion to dismiss [ECF No. 65], Kumaran filed a letter requesting leave for Plaintiffs "to exceed the page limit in its [sic] upcoming opposition to the Motion to Dismiss," citing Kumaran's *pro se* status [ECF No. 71]. The letter stressed that Plaintiffs were facing "a ***dispositive*** motion" and wanted to provide thorough briefing so that the Court could

7

"rule[] on the merits fairly," especially "since this is the 2nd time these Defendants have been brought before this Honorable Court" [ECF No. 71 at 2–3 (emphasis in original)]. The Court granted the request [ECF No. 72]. Plaintiffs then abused the Court's latitude by filing three separate opposition briefs, each of which exceeded the 25-page limit [ECF Nos. 73, 74, 75].

Counsel for Timetrics signed all three briefs. Plaintiffs drew no discernable line between the claims asserted by Kumaran, personally, and those asserted by Timetrics. They did nothing to advise the Court that certain portions of the briefs were written by Kumaran alone, without the assistance of counsel for Timetics. Most importantly, counsel represented that Timetrics fully endorsed the First Amended Complaint as written by signing each brief just below a statement affirming that "Plaintiffs respectfully believe, for all the reasons stated herein, that they have articulated properly in the FAC each of the necessary elements for each cause of action" [ECF No. 73 at 10; 74 at 13; 75 at 10].

In an Opinion & Order dated February 26, 2021, the Court dismissed the First Amended Complaint for failure to state a claim on which relief may be granted [ECF No. 124 ("Op.")]. The Court explained that it carefully reviewed all of the allegations in the First Amended Complaint, as well as the contracts that, while not attached to the pleading, were incorporated by reference and filed at various docket entries. Op. at 9, 12–13. The Court denied Plaintiffs' other pending requests, including a motion for a preliminary injunction, as moot.

On March 26, 2021, Plaintiffs filed four repetitive motions for reconsideration: one ten-page joint motion, signed by both Kumaran and counsel for Timetrics [ECF No. 127]; one 31-page motion filed by Kumaran only [ECF No. 128]; and two identical 27-page motions ostensibly submitted by counsel for Timetrics only, although the formatting and writing style precisely match Kumaran's countless prior submissions [ECF No. 129, 130]. Having filed 95 pages of briefing in

support of a request for reconsideration—or 68 pages, assuming she filed a second copy of Timetrics' brief in error, Kumaran filed a letter belatedly requesting permission for "the extra 6 pages" in her already-filed 31-page brief, citing her *pro se* status [ECF No. 133]. Defendants filed a brief in opposition to Plaintiffs' request for reconsideration [ECF No. 134]. Plaintiffs then filed three reply briefs in further support of their request [ECF Nos. 135, 136, 137], as well as a belated request for "*two* extra pages" of the already-filed, overlength reply [ECF No. 138 (emphasis in original)]. Finally, Plaintiffs filed a letter accusing Defendants of violating court rules by citing unpublished cases and exceeding page limits [ECF No. 139]. Plaintiffs have also appealed the Court's decision to dismiss this case [ECF Nos. 131, 132].

The Court has read and considered all of Plaintiffs' arguments in support of their request for reconsideration, even though Plaintiffs did not seek permission to exceed the page limit until after they filed their briefs, and the Court denies their belated motions for permission *nunc pro tunc*. Aside from rehashing arguments the Court already rejected when it ruled on the motion to dismiss, Plaintiffs principally argue that the Court failed to afford Kumaran the latitude due a *pro se* plaintiff. They assert that, instead of drawing inferences in Plaintiffs' favor, the Court "deliberately" misrepresented the terms of the parties' agreements and ignored allegations in the First Amended Complaint to defeat Plaintiffs' claims. Plaintiffs also argue that the Court erred by failing to grant Plaintiffs leave to file a third complaint in this case.

## II. LEGAL STANDARD

### A. Reconsideration

Reconsideration of a court's decision is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Buffalo Laborers Sec. Fund v. J.P Jeanneret Assocs., Inc.* (*In re Beacon Assocs. Litig.*), 818 F. Supp. 2d 697, 701

9

(S.D.N.Y. 2011) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). A motion for reconsideration should be denied unless the moving party "point[s] to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). Courts consider only compelling reasons for reconsidering a prior decision, including "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted) (citation omitted).

### B. *Pro Se* Plaintiffs

The "submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). However, a court cannot rewrite *pro se* pleadings to assert "claims that are not 'consistent' with the *pro se* litigant's allegations." *Id.* at 477 (quoting *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005). Moreover, *pro se* status does not "excuse frivolous or vexatious filings," nor does it "exempt a party from compliance with relevant rules of procedural and substantive law." *Id.* (citations omitted).

10

### III.    DISCUSSION

The Court will first address Plaintiffs' argument that it failed to afford Kumaran the latitude due a *pro se* plaintiff.  This could not be further from the truth.  The Court has afforded Plaintiffs every latitude, even though Timetrics was represented by counsel when Plaintiffs submitted joint—triplicate and overlength—briefing in opposition to the motion to dismiss, and counsel argued that the First Amended Complaint was adequate as written.

As an initial matter, the Court could have dismissed the First Amended Complaint for its patent failure to comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a "short and plain" statement of a claim for relief.  Fed. R. Civ. P. 8(a); *see also Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972).  Indeed, Plaintiffs have experience with Rule 8.  *The A Star Group, Inc. v. Manitoba Hydro et al.*, No. 12-cv-8198 (PAC) [ECF No. 9 (dismissing *sua sponte* because the complaint was "the polar opposite of the 'short and plain statement'" required by the Rule)].  Instead, the Court carefully reviewed the prolix, jargon-laden, and vituperative 320-paragraph pleading.  The Court also combed the docket for, and carefully reviewed, the contracts incorporated into the pleading by reference, which Plaintiffs filed at disparate docket entries, rather than attaching them as exhibits to the First Amended Complaint.[2]  Moreover, the Court gave Kumaran the opportunity at a conference to explain her claims and the changes she made when she amended the original complaint.  Tr. at 3–4.

When Kumaran requested permission to exceed the Court's 25-page limit in Plaintiffs' joint opposition to the motion to dismiss, citing her *pro se* status, the Court immediately granted that request, even though Timetrics was separately represented by counsel [ECF No. 72].  Plaintiffs

---

[2] Plaintiffs did not attach the relevant contracts to their brief in opposition to the motion to dismiss, nor file them all together in any one place.  Rather, the Court pulled the different contracts cited in the complaint from various, unrelated docket entries [ECF Nos. 29 (NDA); 33-2 (Terms and Conditions for Consulting Services); 33-3 (EULA); 52-2 (Settlement Agreement)].

then abused the Court's leniency by filing three briefs, each of which exceeded 25 pages [ECF #73, 74, 75]. Kumaran has made a habit of this abusive practice. *See Kumaran v. Nat'l Futures Ass'n, LLC,* No. 20-cv-3668 (GHW), 2022 WL 428263, at *2 (S.D.N.Y. Feb. 10, 2022); *Kumaran et al v. Vision Financial Markets, LLC et al.*, 20-cv-3871 (GHW) [ECF No. 146]. The Court would have been within its discretion to disregard two of Plaintiffs' opposition briefs. *See Celli v. New York City Dep't of Educ.*, 2017 WL 5479653, at *1 (E.D.N.Y. Jan. 9, 2017). Instead, the Court carefully reviewed all of Plaintiffs' arguments.

Continuing their pattern of abuse, Plaintiffs have filed seven briefs in support of their motion for reconsideration. Plaintiffs contend that the Court not only failed to construe the First Amended Complaint liberally, but also "deliberately" misrepresented the parties' agreements and Plaintiffs' allegations to defeat their claims. That contention is simply wrong.

It is true that the Court did not discuss the liberal standard for *pro se* pleadings in its previous Opinion. This is not a case in which an unsophisticated plaintiff alleges a cognizable harm but does not know what to call it. Kumaran is a highly sophisticated, experienced litigant, and the First Amended Complaint invokes every conceivable cause of action. *See Durant v. Traditional Invs., Ltd.*, 135 F.R.D. 42, 49 (S.D.N.Y. 1991) (explaining that a "sophisticated" and "experienced" *pro se* litigant "has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets"). As the Court explained in its previous Opinion, the facts alleged do not support the claims asserted. A court cannot rewrite a pleading to assert "claims that are not 'consistent' with the *pro se* litigant's allegations." *Triestman*, 470 F.3d at 477 (quoting *Phillips*, 408 F.3d at 127)). Nevertheless, in response to Plaintiffs' motion for reconsideration, the Court has again reviewed the First Amended Complaint to determine

12

whether a more "lenient eye" can save Plaintiffs' claims. *Phillips*, 408 F.3d at 127. The Court's conclusions have not changed.

Turning to some of Plaintiffs' specific arguments, Plaintiffs insist that the Court erred when it concluded that Plaintiffs failed to state a claim for breach of the Settlement Agreement. In particular, Plaintiffs accuse the Court of "misquoting" the portion of the Settlement Agreement in which Northland and Hedge represent that "they are not using and will not utilize in the future" Timetrics software and strategies [ECF 130 at 10]. After quoting that language verbatim in context, Op. at 4 (the block quote is reproduced above, *supra* at 3), the Court later referred to it as a representation that Northland and Hedge "did not and would not," among other things, misappropriate the software and strategies, Op. at 18. Plaintiffs object that the Settlement Agreement does not contain the words "did not and would not," which is true, and the Court did not place those words in quotation marks.

All of this is beside the point. As the Court explained in its previous Opinion, Plaintiffs waived any claim for breach of the Settlement Agreement. Their own allegations and representations to the Court establish that Plaintiffs learned of the alleged breach, did not notify Defendants, and continued to collect settlement payments. Op. at 11–12; *see VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 342 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 507 (2d Cir. 2009), *and aff'd*, 355 F. App'x 507 (2d Cir. 2009).

Plaintiffs now argue that, because Kumaran is *pro se*, the Court should have credited the assertion that Plaintiffs made for the first time in their joint opposition briefs that Plaintiffs gave Defendants explicit notice of the breach [ECF No. 128 at 24 (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (stating that a district court "may consider factual allegations made by a *pro se* party in his papers opposing" a motion to dismiss)]. The Court disagrees. Since counsel signed

13

those briefs, and Plaintiffs gave the Court no indication which portions of the briefing were prepared *pro se* and which portions were prepared by counsel, the Court had no way of knowing whether it was Kumaran or counsel who added the contention that Plaintiffs gave notice of the breach. Moreover, the contention that Plaintiffs gave Defendants "explicit" notice is not consistent with the allegations in the First Amended Complaint, which specified that Defendants knew they breached *because* Defendants had "full knowledge" of their obligations of under the Settlement Agreement. *See* FAC ¶¶ 147 ("Given Defendants' . . . full understanding of the terms of the Settlement," Defendants' breach was "knowing"), 148. The Court remains convinced that Plaintiffs failed to state a claim for breach of the Settlement Agreement.

Similarly, Plaintiffs insist that the Court misrepresented Kumaran's "Agreement in Principle" with Larkin when the Court described it as an "oral" agreement, which, therefore, violated the statute of frauds [ECF No. 128 at 16]. The First Amended Complaint alleges that Kumaran and Larkin never "signed a finished agreement" reflecting the alleged Agreement in Principle. FAC ¶ 282; *accord id.* ¶ 284 ("There was no express contract"); *see also id.* ¶¶ 197 (alleging that Plaintiffs performed services "without . . . signed agreements"), 280 (asserting that an agreement "need not be memorialized in a written form"). The Court cannot construe these allegations away. *See Triestman*, 470 F.3d at 477.

Plaintiffs also argue that the Court overlooked or ignored detailed allegations in the First Amended Complaint when the Court ruled that Plaintiffs failed to state claims for misappropriation of trade secrets [ECF Nos. 127 at 2–3; 128 at 9–15; 130 at 8–9]. This argument is based on the observation that the Court's Opinion quoted from paragraphs 15 and 48 of the First Amended Complaint, which Plaintiffs did not highlight in their opposition briefs, and did not quote from certain other paragraphs. As the Court stated in its previous Opinion, the Court carefully reviewed

all of the allegations in the First Amended Complaint. Op. at 12. Based on that careful review, the Court concluded that Plaintiffs' "[g]eneral allegations" about their risk management tools "simply do not give rise to a plausible trade secrets claim." *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018); *see also*, *e.g.*, *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y. 2020); *ExpertConnect, L.L.C. v. Fowler*, 2019 WL 3004161, at *4 (S.D.N.Y. July 10, 2019).

In support of their motion for reconsideration, Plaintiffs quote from paragraphs in the First Amended Complaint that describe Timetrics software as "unique" and "revolutionary" and cite cases involving "unique" technology [ECF No 28 at 11 (citing *Next Commc'ns, Inc. v. Viber Media, Inc.*, 2016 WL 1275659, at *1 (S.D.N.Y. Mar. 30, 2016))]. But Plaintiffs are simply "relitigating" an issue the court already decided. *Analytical Surveys, Inc.*, 684 F.3d at 52. They have not pointed to any allegations the Court has not already seen, nor any controlling precedent the Court overlooked. *Shrader*, 70 F.3d at 257. Moreover, reviewing the First Amended Complaint with a more liberal eye does not change the Court's analysis because Plaintiffs' vague assertions do not "suggest" any stronger allegations. *Triestman*, 470 F.3d at 477. The Court remains convinced that Plaintiffs failed to state trade secrets claims.

Finally, the Court will briefly address Plaintiffs' argument that the Court committed reversible error by denying Plaintiffs an opportunity to file a third complaint in this case. In their briefs in opposition to the motion to dismiss, Plaintiffs requested leave to amend "in the event the Court finds there is a deficiency in any of the allegations or feels that allegations could be stated more particularly." Pl. Opp. to Northland and Hedge at x. But Plaintiffs have not identified any new allegations that would change the Court's conclusions. *See Rishar v. United States*, 632 F. App'x 50, 51 (2d Cir. 2016). Rather, Plaintiffs have had ample opportunity to press claims against

Defendants through two lawsuits and the two complaints in this case. Indeed, in support of their request to file excess pages in opposition to the motion to dismiss, Plaintiffs argued that the Court should adjudicate the "***dispositive*** motion" based on thorough briefing "since this is the 2nd time these Defendants have been brought before this Honorable Court" [ECF No. 71 at 2–3 (emphasis in original)]. The Court was within its discretion to deny leave to amend further.

The Court has considered all of Plaintiffs' other arguments in support of their motion for reconsideration. None of them has merit. For substantially the reasons stated in the Court's previous Opinion, as well as arguments raised in Defendants' brief in opposition to the motion for reconsideration, the Court remains convinced that Plaintiffs failed to state any claims on which relief can be granted.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motions for reconsideration and for permission *nunc pro tunc* to file excess pages are DENIED, although, as noted above, the Court read and considered the excess pages that Plaintiffs filed without leave. Moreover, in the light of the pending appeal and the history of abusive filings in this Court, Plaintiffs are instructed not to file any further requests for relief in this case unless and until the Second Circuit issues a mandate to the contrary. The Clerk of Court is respectfully requested to terminate the motions at docket entries 127, 128, 129, 130. 133, and 138.

**SO ORDERED.**

**Date: March 9, 2022**  
**New York, NY**

*/s/ Mary Kay Vyskocil*  
**MARY KAY VYSKOCIL**  
**United States District Judge**