IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMANTHA SIVA KUMARAN | |
| , et al | Case No:1:19:CV:08345-MKV-RWL |
| *Plaintiffs,* | |
| | |
| -against- | |
| | **PLAINTIFF KUMARAN'S** |
| NORTHLAND ENERGY TRADING, LLC | **MOTION TO STRIKE** |
| et al | **MOTION TO REINSTATE AIP** |
| *Defendants.* | |

### PLAINTIFF KUMARAN'S MOTION AND MEMORANDUM OF LAW TO STRIKE DKT 177 AND IN THE ALTERNATIVE TO REINSTATE THE AIP

July 29, 2024

Respectfully submitted,

/Samantha S. Kumaran
Samantha S. Kumaran
Individual Pro-Se Plaintiff
samantha@timetricsrisk.com
212-431-5098

# TABLE OF CONTENTS

**MOTION TO STRIKE**

A – INTRODUCTION……………….....………………………………………………Pg. 1

B - LEGAL STANDARD – MOTION TO STRIKE…………………………………….Pg. 1

C - Following Statements Are Immaterial,

Redundant. Impertinent and Have No Evidence…………………………………………..Pg.2

D - All Claims under the AIP must be struck under the doctrine of Judicial Estoppel…………Pg. 6

**MOTION TO REINSTATE AIP**

MOTION TO REINSTATE ALL CLAIMS
 UNDER THE AGREEMENT IN PRINCINPLE ("AIP")…………………………………...Pg.7

A - The Agreement in Principle……………………………………………...…………Pg.8

B - Defendants Conceded to The Existence of the AIP
 and that they Relied Upon It……………………………………….………………Pg.10

C – Larkin Admits The Emails Are Signed Writings,
 Memorializing Terms, and Subscribed to By the Parties……………..……………………..Pg.18

D - The AIP Is not Severable /
The Court Can't Enforce "Half a Contract"………………………………………………..Pg. 20

CONCLUSION……………………………………………………………………Pg. 24

## MOTION AND MEMORANDUM TO STRIKE /
## OR IN THE ALTENRATIVE MOTION TO REINSTATE THE AIP

### A – INTRODUCTION

Pursuant to Rule 11, a motion for sanctions must be filed separately from any other motion. Rule 11 provides, in pertinent part: "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,* 682 F.3d 170, 175 (2d Cir. 2012) Accordingly, in conjunction with the separately filed motion for sanctions, Plaintiff Kumaran also respectfully moves to strike the counterclaims and several of the allegations supporting them as redundant, immaterial, impertinent, scandalous, frivolous, bad faith and unsupported in law. Pursuant to Fed.R.Civ.P. 12(f), the court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.." As included in the motion for sanctions, the frivolous, tardy set of counterclaims filed solely against Kumaran that should have been filed against Nefertiti entities, The issues related to Nefertiti and Kumaran should not include matters that are outside of this AStar/Northland dispute, at this juncture, and the 2016-2017 transaction which involved a Delaware LLC hedge fund involve claims that are knowingly time-barred by eight years. Plaintiff Kumaran seeks to strike all 94 Infringing Statements, and all three counterclaims, for the reasons outlined in the motion for sanctions, and accompanying Exhibit 2 attached thereto which also in detail outlined material defects in the pleadings and because they are barred by judicial estoppel as the AIP is void under the Statute of Frauds. In the alternative, as set forth in the second part of the motion, if any one of the counterclaims is not struck, Plaintiff then moves to reinstate the AIP.

### B - LEGAL STANDARD – MOTION TO STRIKE

Pursuant to Fed.R.Civ.P. 12(f), a court "may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." However, whether to grant such a motion is within the district court's discretion. *See E.E.O.C. v. Bay Ridge Toyota, Inc.,* 327 F.Supp.2d 167, 170 (E.D.N.Y.2004). " 'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,* 402 F.Supp.2d 434, 437 (S.D.N.Y.2005) (citing *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th

Page 2

Cir.1993)). "A scandalous allegation is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court." *Cabble v. Rollieson,* No. 04–CV–9413, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006). *Lynch v. Southampton Animal Shelter Found. Inc.,* 278 F.R.D. 55, 63 (E.D.N.Y. 2011)

### C - Following Statements Are Immaterial, Redundant. Impertinent and Have No Evidence

A Rule 12(f) motion to strike matter as impertinent or immaterial, "will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976). Thus, to prevail on a Rule 12(f) motion to strike, the movant must show "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Roe v. City of New York,* 151 F.Supp.2d 495, 510 (S.D.N.Y.2001). *Lynch v. Southampton Animal Shelter Found. Inc.,* 278 F.R.D. 55, 63 (E.D.N.Y. 2011)

### (I) No Pre-Filing Inquiry – No Reasonable Factual Basis Whatsoever For the Allegations

For the reasons set forth in the motion for sanctions Section C.1, the allegations lack any evidentiary support, and there is no evidence in support that would be admissible, and the allegations were made up to harass and defame, and permitting these allegations would prejudice Kumaran, not just in time, but also in defamation and slander Kumaran's reputation with dozens of former clients. Further the allegations date back to 1993, are more than 30 years old, and are not relevant to these claims. The claims are also redundant, because (a) Larkin released all claims and allegations which pre-date the Settlement and the archives of allegations to 1996 has no bearing on this current case and (b) the claims are frivolous because he also argued the AIP and the new transactions are void under the Statute of Frauds. For each of the reasons, set forth in the motion for sanctions, and also in Exhibit 2 attached, each of the infringing statements must be struck.

### A - All Allegations Regarding Kumaran's Education and Cambridge Must Be Struck.

Plaintiff moves to strike Infringing Statements #36, #37, #11 regarding Plaintiff education, University of Cambridge degrees and education. Given the Court has copies of certificates from Cambridge filed with Affidavits on the docket filed at Dkt.180-1-180-4, there is no evidence in support of these

allegations, and they were inserted to defame and prejudice Kumaran. Allowing Larkin to pursue these also constitutes harrassment. The allegations are also scandalous.

### B - All Allegations Regarding Timetrics Former Clients Must Be Struck.

Plaintiff moves to strike Infringing Statements #4, #5, and #33, #34 regarding Timetrics former clients. For the same reasons stated under Section C.1.B in the motion for sanctions, and since these 1993-2010 allegations were released by the Settlement and solely related to the corporate plaintiff, they are immaterial, redundant, and impertinent and seek to harass Kumaran. Allowing Larkin to pursue these also constitutes harrassment, would prejudice and was filed to slander, defame and harass Kumaran's reputation, interfere with former clients, damage her reputation and pry into confidential business dealings that must under law be directed to the corporate entity, and that are now 25 years old and bear no relevant on these current counterclaims regarding a hedge fund.

### C - All Allegations Regarding Timetrics Goods and Services being Fiction Must Be Struck.

Plaintiff moves to strike Infringing Statements #6, #7, #9, #5, and #23-#25 regarding statements that Timetrics is a sham, the allegations that all its good and service are "figments of imagination" and are "fabrications" are also redundant, immaterial, impertinent scandalous, and were inserted to defame and slander. For the same reasons under Section C.1.C in the motion for sanctions, since these allegations are against a corporate Plaintiff, Timetrics, have no evidentiary support, since Timetrics worked for Northland for four years without issue. These allegations must be struck, since these 1993-2010 allegations were released by the Settlement and solely related to the corporate plaintiff. Allowing Larkin to pursue these also constitutes harrassment, would prejudice and was filed to slander, defame and harass Kumaran reputation, damage her moral character and pry into confidential business dealings that must under law be directed to the corporate entity, and are now 25 years old and bear no relevant on these current counterclaims regarding a hedge fund.

### D - All Allegations Regarding Timetrics Marketing Literature and Contracts with Northland Must  Be Struck

Plaintiff moves to strike Infringing Statements #23 and #8. As outlined in Section C.1.D of the motion for sanctions, and Exhibit 2 for Infringing Statements, and these allegations are against solely a corporate Plaintiff Timetrics and are disputed by contractual and factual evidence, such as the EULA, T&C, and such as express contractual terms disprove the accuracy of the statements.  There is no

evidentiary support for them. Further the allegations involving contracts between AStar and Northland that pre-date the Settlement, were supposedly released by the Settlement. Therefore, they are a waiver of the Settlement. They are thus immaterial, redundant, frivolous and directed at the wrong party and intended to prejudice and harass Kumaran to make false allegations on matters supposedly released, that involved AStar/Timetrics.

### E - All Allegations Regarding Manitoba Hydro Must Be Struck

Plaintiff moves to strike Infringing Statements #16-#22 regarding a Canadian Utility that had contracts with AStar dating back to 2004 and are now 20 years dated and have nothing to do with Larkin's investment in a hedge fund. Plaintiff incorporates the arguments in Section C.1.E and Exhibit 2 'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 402 F.Supp.2d 434, 437 (S.D.N.Y.2005)  Allowing Larkin to pursue these also constitutes harrassment, would prejudice and was filed to slander, defame and harass Kumaran reputation, pry into confidential business dealings that must under law be directed to the corporate entity, and are now 20 years old and bear no relevant on these current counterclaims regarding a hedge fund. These allegations also pre-date the Settlement.

### F -  All Allegations Regarding Work Under Engagement Letter 5 Must Be Struck

Plaintiff moves to strike Infringing Statements #26-#28 regarding work that was done, and services provided under the contracts between AStar/Timetrics and Northland under Engagement Letter 5 during the period August 2014 – March 2015. These allegations must be directed against the corporate Plaintiff and are improperly placed.. These contracts were previously released by the Settlement and supposedly terminated. Larkin's hashing of the identical claims that were released and assertions that the Counterclaims are void. Further these allegations are irrelevant to the new business in 2016. Since AStar was not served, and is not a party to these claims, they must be denied as frivolous, immaterial, impertinent and intended to prejudice and slander Kumaran individually, such as to make false allegations (such as that she lost $740,000) on matters supposedly released, that involved AStar/Timetrics. Larkin is not permitted to re-raise these allegations pursuant to the Settlement.

Page 5

### G – All Allegations Regarding The August 4, 2016 Powerpoint from NRCM Must Be Struck

Plaintiff moves to strike Infringing Statements #42-#57 regarding a non-party to this proceeding NRCM, and draft and unsigned documents, dated August 4, 2016, that Larkin previously argued to this Court was void under the Statute of Frauds. Plaintiff incorporates the arguments in Section C.1.G in the motion for sanctions and Exhibit 2. The powerpoint, was more than three years before the date of filing of this action in September 6, 2019 and therefore any claims under the Securities Act are time barred. Allowing Larkin to pursue time-barred claims, against non-parties, that he previously argued were void under the Statute of Frauds would be prejudicial to Kumaran and are also inequitable as the AIP had bilateral terms of Larkin's commitments to pay salary. Allegations that NRCM is a sham are also scandalous and have no evidentiary support given the filings on the docket 20-CV-3871 ¶89.

### H – All Allegations Regarding NAM, NHC and NRCM Must Be Struck

Plaintiff moves to strike Infringing Statements #89-#92, #93-#94, including for failure to join a necessary party. Plaintiff incorporates the arguments in Section C.1.H in the motion for sanctions and Exhibit 2. Given the extensive <u>verified pleadings</u> on the public dockets, in case numbers 20-CV-3873, 20-CV-3668 (FAC - Dkt. 57), 20-CV-3871 (Second Amended Complaint, ECF89), there is no evidentiary support that NAM, NHC and NRCM are not legitimate entities. Further the material is scandalous because statements that NRCM is a sham are designed prejudice, slander and defame Kumaran. There is no evidentiary support, given the extensive facts on multiple SDNY cases, with NRCM actively in Court regarding trading accounts it opened at ADMIS. No other party or Defendant has made that claim which supports that there is no evidentiary basis for the statement.

### I – All Allegations Regarding Numerous Emails Barred under the Statute of Frauds Must Be Struck

Plaintiff moves to strike Infringing Statements #58-#88, as Larkin argued that all emails and oral communications between the parties in 2016, are barred under the Statute of Frauds. Plaintiff incorporates the arguments in Section C.1.I in the motion for sanctions and Exhibit 2. For the reasons of judicial estoppel, and res judicata, and what amounts to fraud-on-the-Court to argue the AIP was "oral", Plaintiffs seeks equitable remedies that all allegations around the same emails pertaining to the AIP are struck. Not striking them is also prejudicial, because, Kumaran already engaged in extensive

Page 6

briefing, and the Court ruled the AIP is void. Hence Kumaran also is unable to pursue her own claims under the AIP.

## D - All Claims under the AIP must be struck under the doctrine of Judicial Estoppel

The claims under the AIP, including all Larkin's counterclaims must be struck under the doctrine of Judicial Estoppel. The Supreme Court has held that "'[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *New Hampshire v. Maine,* 532 U.S.742,749, 121.S.Ct.1808,149 L.Ed.2d.968(2001). Here the facts are clear. Larkin vociferously argued to the Court in its Motion to Dismiss, (Dkt. No. 165) that the AIP was unenforceable in its entirety and was void under the statute of frauds. "Judicial estoppel is designed to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions in successive suits". *Bates v. Long Island R.R.*, 997 F.2d 1028, 1037-38 (2d Cir. 1993)." *Wight v. Bankamerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000)

The Court cannot therefore should not allow this gamesmanship to continue, where Larkin now proffers that the $29,100 he paid for both services from Kumaran/AStar under the AIP as well as contributions to become a "member of a hedge fund" called Nefertiti and then, concurrently, in a totally inconsistent position to this Court, in his motion to dismiss (*ECF*65), vociferously argue that the AIP is void under the statute of frauds. Larkin, and his law firm Westerman, also repeatedly argued in inconsistent position to this Court that the AIP is "oral" – repeating the word "oral" six times in several briefings to this Court. The Court in its Order ECF124 adopted Larkin and Westerman's version of the facts (which were hotly disputed by Plaintiffs) and in its own order, included that the AIP is void under the Statute of Frauds. The Court should thus strike all the claims under the AIP under the notion of res judicata. Once a Court has already ruled on an issue, it is improper to repoen the same issues at a subsequent stage,

To the extent that Kumaran has had to expend time and effort on this motion to strike, after having endured the costs of appeal, as well as a three-year delay in appeal, Larkin cannot now obtain

the benefit of playing fast and loose with the Courts to try to now argue a different story at a later stage in the litigation. Hence all the claims are barred by the concept of Res Judicata. The doctrine of res judicata, or claim preclusion, holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (citing *Cromwell v. County of Sac.,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876)). Courts give res judicata effect to final judgments to "relieve parties of the cost and vexation of multiple lawsuits, [to] conserve judicial resources, and, by preventing inconsistent decisions, [to] encourage reliance on adjudication." *Id.* (citing *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). *Mahmood v. Rsch. in Motion Ltd.,* 905 F. Supp. 2d 498, 501 (S.D.N.Y. 2012), aff'd, 515 F. App'x 891 (Fed. Cir. 2013) In addition, the pleading must be struck in it entirety because none of the claims are plausible on their face, they are an attempt to end-around the corporate plaintiffs, and the Defendant failed to comply with Rule 19, to join and serve necessary parties NRCM and NAM. Further the pleading is frivolous and scandalous and has no chance of survival because NAM and NRCM are not parties, and their claims are time-barred.

## MOTION TO REINSTATE ALL CLAIMS UNDER THE AGREEMENT IN PRINCINPLE ("AIP")

In the alternative, if the Court allows the counterclaims to continue, Plaintiffs respectfully moves to reinstate all claims related to the Agreement in Principle ("AIP"), including the quasi-contract claims that rise and fall with them, and also the Breach of Fiduciary Duty claims, that also govern Larkin's duties under the AIP. Reinstatement of the AIP claims is warranted due to fraud-on-the-Court in the earlier filings and MTD in 2020 whereby Westerman misled the Court the AIP was "oral" and there was no signed email writings. Rule 60(b)(3) also permits the Court to reconsider the relief from final Order and judgement dismissing the AIP claims, due to fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party. Reinstating all the AIP claims is now permitted, as once a party has admitted to the existence of the agreements, by way of signed email writings, and representations, and intends to uphold one half of the contract, the Statute of Frauds is no longer valid.

Page 8

## A - The Agreement in Principle

The Agreement in Principle ("AIP") is a separate *new* transaction between the parties, from September 2016 – March 2017 which this Court previously opined upon in its dismissal in 2020 and held that the AIP was void under the statute of frauds. (See Order EC124 at 6-7). At the essence of this Agreement, is that under in the AIP, Larkin would fund two-years of capital to a separate business called Nefertiti. (See ¶141-¶142 – two years of capital – on a non-terminable basis to a hedge fund under the Delaware LLC Act). Therefore, the material terms, that Kumaran even agreed to do business (again), was that this two year of capital (valued at approximately $350,000) was "non-terminable" – meaning Larkin could not pull out. Further the hedge funds wer formed under the Delaware LLC Act, which has specific law regarding the default terms of members of a Delaware LLC. Larkin also agreed to be a manager and fiduciary of the funds. None of these Nefertiti entities were served or are parties to this proceeding. Larkin is well aware that the checks were written to a business called Nefertiti Risk Capital Management LLC ("NRCM")

The AIP however was a bilateral set of agreements between Kumaran, (individually), Larkin (individually), and various Nefertiti entities, as well as AStar, Northland and Hedge that are parties to this proceeding. The first outline of the AIP was governed in the FAC ¶141-¶142 itemizing the main outline of the material terms of the new business transaction. In addition, The A Star Group, Inc was an intended beneficiary of the AIP, as the FAC ¶52 states that as other material terms of the AIP, Northland and Hedge agreed to reinstate the engagement contracts (with AStar), and that previous commercial terms and rates, which includes license fees and trading royalties, would be reinstated in April 2017. In addition Northland and Hedge would pay Ms. Kumaran various salary and bonuses. (See FAC¶152, ¶141-142, ¶194-¶195)

Accordingly, the AIP could not be severed, and the Court conceded in its ECF124 Order, that the material components of the AIP were that Kumaran would resume services for Larkin, Northland and Hedge. Also, in inconsistent argument to the counterclaims, Larkin and Westerman *also* argued to this Court that the AIP could not be severed, and that the parts of the AIP that required Larkin to fund the hedge fund for two years, could not be separate from the portions of the AIP that Kumaran would provide services for Larkin/Northland. (See e.g ECF65 at 11-12)

Page 9

Larkin also argued in 2020 the entire AIP and 2016 transactions were "oral" and thus void under the Statute of Frauds, because his commitments to fund a hedge fund for two years were not memorialized in signed writings. Plaintiffs brought several claims which rise and fall with the validity of the AIP. Plaintiffs brought similar claims for fraudulent inducement of the AIP and post-settlement fraud. Those AIP-related claims included quasi-contract claims, such as Promissory Estoppel (whereby Larkin promised salary, bonuses and incentive compensations as well as other renumeration under the AIP), Unjust Enrichment, as Larkin profited from the work done and failed to pay Plaintiffs for their contributions and Misappropriation of Skills and Labor, outlining several hundred hours of work done for Larkin as part of the bilateral terms. Other claims that rise and fall with the AIP include breach of the covenant of good faith and fair dealing, and also claims for Breach of Fiduciary duty, owed by Larkin to Kumaran as a Principle owning 10% of the hedge fund, to act in good faith.

Plaintiffs' reconsiderations motions to the Court in March 2021 argued that Larkin and Westerman had lied to the Court, that the AIP was not oral, and sufficient signed writings existed to prove the existence of binding terms. (see e.g ECF128 and ECF129, reconsideration motions). The Court still upheld the AIP as void under the Statute of Frauds.

Now, however, in another completely inconsistent position, Larkin wants to claims he wants to get his money back under the AIP, for salary he paid to Kumaran and capital as debt, and now admits to several binding emails, that contained "representations" that he wants the Court to believe he relied on. Plaintiff objects. The Court cannot enforce "half-a-contract". Either the entire AIP is invalid under the Statute of Frauds, or, Larkin's admission warrant reinstatement of all claims related to the AIP because once a party admits to the existence of the agreement, the Statute of Frauds is no longer applicable. *See Boscov's Dep't Stores, LLC v. AKS INternational AA Corp.,* No. 01 CIV.105880 GWG, 2003 WL 21576405, at *5 (S.D.N.Y. July 11, 2003), holding that the Statute of Frauds provides an exception to this rule as follows: "[t]here is sufficient evidence that a contract has been made if … [t]he party against whom enforcement is sought admits in its pleading, testimony, or otherwise in court that a contract was made." N.Y. Gen. Oblig. L § 5–701(b)(3)(c). Thus, if a party admits in its Answer or other pleading the existence of a contract otherwise unenforceable under the Statute of Frauds, the

Page 10

defense has been waived. *accord Rail Europe, Inc. v. Rail Pass Express, Inc.,* 1996 WL 157503, at *4 (S.D.N.Y. Apr.3, 1996) ("Since defendant has admitted [in its answer] to the existence of an agreement between the parties, the Statute of Frauds does not bar enforcement of that agreement."). Based on Larkin's admissions of the representations, and signed email writings and other material terms, therefire all claims associated with the AIP must be reinstated.

### B - Defendants Conceded to The Existence of the AIP and that they Relied Upon It

The motion before this Court shows that the Defendant has admitted to the existence of the AIP, that signed writings existed in emails and that he relied upon it. In addition, his filing directly contradicts the arguments he raised to the District Court in his motion to dismiss, pretending the AIP was "oral" and there were no signed writings. His admissions, directly prevent enforcement of the Statute of Frauds, and warrant reinstatement of all the AIP related claims. The following paragraphs highlight Larkin's admission of the AIP. The following examples are evidence that the party has admitted to the existence of signed email writings and representations related to the AIP and the agreement that the parties transacted upon.

### E.g. 1 - Infringing Statement #33 – Emails in August 2016

Counterclaims¶33 - On August 4, 2016, Kumaran solicited Mr. Larkin for an equity investment in NAM by emailing him a PowerPoint presentation titled "PILOT INVESTMENT OFFERING."

But compare to

FAC¶141 As material considerations of the renewed business, Kumaran and Larkin etched out an Agreement in Principle during the months of August 2016 – September 2016 which had several material components. They included (a) Larkin would contribute on a significant financial capital contribution to start a hedge fund, as yet unformed, under the name Nefertiti Asset Management, LLC ("NAM"), which was finally formed in May 2018. The material provisions were that Larkin had no ability to terminate his capital contribution for two years at-will. (b) Larkin would become a principle and fiduciary of these entities and own more than 10% of the Delaware LLC. (c.) Larkin would sign NDA's directly with the new entity and abide by confidentiality and arbitration provisions with the new entities. The parties expressly agreed to resolve any differences under Arbitration, and the hedge funds operating agreement would have mandatory arbitration.

Plaintiffs ¶142  Further, as part of the bilateral deal, in consideration of Larkin's substantial full non-terminable capital contribution for two years to launch the hedge fund, Plaintiffs would provide services for Northland and Hedge, in exchange for (d) salary bonuses at target milestones of performance, and (e) would disclose further IP and trade secrets (subject to the Timetrics NDA) with the original License Fees and Royalties being reverted to from April

Page 11

2017 from Northland and various profits sharing at original rates, and (f.) the trading programs, would recover the Lothrop 2015 loss, after which further revenue sharing would occur, effective immediately from September 2016.

As a separate matter, Infringing Statement #33 shows that Defendant violated his Rule 11 obligations to not be candid with the Court as Larkin did not give "Kumaran" any checks, the moneys were sent to Nefertiti Risk Capital Management, LLC. Further, the Investment Offering document as discussed infra, had no mention of a corporate entity NAM. (See Infringing Statement #33)

### E.g. 2 -  Infringing #56 and #57 - September 8, 2016 - Refers to NRCM emails that void under the SOF

Counterclaim¶56. On September 8, 2016, relying on Kumaran's misrepresentations in the Pilot Investment Offering and other oral and written communications.

But compare

FAC ¶ ¶151. In <u>In telephonic phone calls and emails that occurred on September 8th 2016, and September 9th, 2016 and numerous other days and times in the month of September and October 2016</u>, Richard M. Larkin phoned Kumaran from either his office or home located at 32 Helen Court, Goffstown, New Hampshire, or his office at 500 North Commercial Street, Manchester, New Hampshire using his cellphone to Ms. Kumaran who received the phone calls on the telephone  number 212 431 5098 who was located at her home and office located at 240 West 74th Street, New York, NY. 10023, <u>Larkin promised and assured the parties would move forward from the past, and that license fees, royalties and profit sharing would be reinstated by Northland</u>.

FAC¶152. <u>As part of the new business arrangements, Larkin agreed and represented and promised that in his personal and individual capacity, that in exchange for Larkin's individual and personal [payments, and] capital contributions, Northland and Hedge would make numerous renumerations of compensation for services, salary bonuses, software, license</u> and Plaintiff's IP, including but not <u>reinstate various engagement contracts effective April 2017 at previously agreed upon commercial terms and rates from Northland and Hedge.</u>

Specifically, Kumaran also referred to these emails in the FAC that stated that emails were exchanged on September 8,2016 that Larkin "promised" and also stated clearly that there were writings in emails. These emails were subscribed to electronically by the parties. Here Larkin admits on the record the existence of the AIP, because he states expressly that he "relied on Kumaran's misrepresentations in the Pilot Investment Offering <u>and other oral and written communications</u>". Therefore he acknowledges that there were representations made that bound the parties, and the AIP exists.

Another example of admitting to the material terms of the AIP, is contained in ¶58 and #59, Defendants now reverse their position and states that there **_were_** signed writings on September 15, 2016 that he relied upon, and that also formed the material terms of the AIP. Larkin now admits to as such in his counterclaims. These are the exact same emails that Plaintiff referred to in ¶141-¶142.

<span style="color:teal">E.g. 3 - Infringing #58 and #59 - September 15 - Refers to NRCM emails that void under the SOF</span>

> Counterclaim ¶58 - On September 15, 2016, Kumaran sent Larkin an email (the "September 15 Email") falsely stating, among other things, that: a. "NRCM is legally ready to move forward"; b. "I seek to launch 'several' commodity funds and pooled asset vehicles for equities to trade derivatives"; c. "I have initially and tentatively offered equity in the G.P. at a rate of 1% for each $30K contribution"; d. "At the advise [sic] of various counsel (and obviously not finalized), it is expected that once N.A.M. has 12 months of track record that achieves a milestone that beats the Barclays CTA Index, and $5mm AUM, comparable Hedge Funds have been able to secure a NAV of 1% equity per $100K contribution"; and e. Mr. Larkin's investment in NAM would be used for "General Third Party expenses, such as legal costs, compliance and other start-up expenses."
> ¶59 - In reality, Kumaran's representations in the September 15 **Email** were false.

But compare again to FAC ¶141-¶142, also referring to the September 15, Email.

> FAC¶141 As material considerations of the renewed business, Kumaran and Larkin etched out an Agreement in Principle during the months of August 2016 – September 2016 which had several material components. They included (a) Larkin would contribute on a significant financial capital contribution to start a hedge fund, as yet unformed, under the name Nefertiti Asset Management, LLC ("NAM"), which was finally formed in May 2018. The material provisions were that Larkin had no ability to terminate his capital contribution for two years at-will. (b) Larkin would become a principle and fiduciary of these entities and own more than 10% of the Delaware LLC. (c.) Larkin would sign NDA's directly with the new entity and abide by confidentiality and arbitration provisions with the new entities. The parties expressly agreed to resolve any differences under Arbitration, and the hedge funds operating agreement would have mandatory arbitration.

> Plaintiffs ¶142 Further, as part of the bilateral deal, in consideration of Larkin's substantial full non-terminable capital contribution for two years to launch the hedge fund, Plaintiffs would provide services for Northland and Hedge, in exchange for (d) salary bonuses at target milestones of performance, and (e) would disclose further IP and trade secrets (subject to the Timetrics NDA) with the original License Fees and Royalties being reverted to from April 2017 from Northland and various profits sharing at original rates, and (f.) the trading programs, would recover the Lothrop 2015 loss, after which further revenue sharing would occur, effective immediately from September 2016.

Larkin has now admitted to material terms of the AIP in ¶58-¶59 and the existence of the same emails, which Plaintiffs also advised the Court in the original motion to dismiss, were "back and forth" with Larkin in signed email writings, which bore the signature of each party.  Here again, Larkin

directly contradicts his own filings to the Court, that show that several emails exist that were subscribed to by the parties, and outlining his version of material terms of the AIP that were contained in the emails. These are the same foundation of allegations that Kumaran also raised in her filings at ¶141 - ¶142 that there were emails, memorializing the material terms of the AIP. Hence, since Larkin has now conceded, that (a) these emails exist and the AIP was not "oral" (b) the material terms of the "AIP" were contained in the emails and (c) the AIP contained representations that he relied upon. Hence the Statute of Frauds is no longer valid as the Defendant has conceded the existence of the Agreement. Other examples of Larkin admitting to signed writings and the existence of representations that the parties relied upon in transacting business under the AIP, also include terms both related to NAM, but also in the same emails on the same dates, related to Kumaran's services for the Northland book.

### E.g. 4 - #Infringing Statement #60 – NAM Budget

> Counterclaim¶60. On September 25, 2016, Kumaran sent Mr. Larkin an email falsely representing that she had created a "Year 1 Budget" for NAM. In this same email, Kumaran asked that Mr. Larkin "send the $3350" for an additional investment in NAM.

But also compare to

> ¶159 - These misrepresentations were made for the purpose of inducing Plaintiffs entering into an Agreement in Principle, that were subsequent to the Settlement, and providing continued services– with compensation being promised directly by Larkin personally in binding of Northland and Hedge, and to continue to disclose more IP, Software, trade secrets, and confidential information and continue providing services, software, design improvements, trades, contributions to Defendants.
> ¶160. Manifestation of Larkin's assent to the Agreement in Principle, includes but not limited to his personal initial payments from his personal bank accounts, and numerous emails and communications between Larkin and Kumaran documenting the extensive services, software, labor, risk management and hedging techniques and improvements of financial value provided to Defendants, from which he gladly retained the benefit and the fruits of the labor and services.

Larkin also admits to several documents and attachments that were exchanged between the parties, but also ignores the emails and documents that Plaintiff Kumaran also alleged were emailed from Larkin regarding Northland and the work on the trading book.

### E.g. 5 and E,g, 6 - ¶63, ¶73 - Infringing Statement #63 –Sep 27 2016, Sep 29, 2016

Counterclaim¶63. On September 27, 2016, Kumaran emailed Mr. Larkin an "Initial Investment Offering Memorandum."

Couterclaim ¶73. On September 29, 2016, Kumaran emailed Mr. Larkin and other potential investors a revised version of the Pilot Investment Offering that Kumaran had sent to Mr. Larkin on September 8, 2016.

But compare to

FAC¶172 On or around dates including September 27th, September 28th, October 2nd, October 6th, 2016, October 8th, 2016 and other dates, via email communications and phone calls, Plaintiffs emailed numerous trade secrets features, advancements, including specific trades and upgraded design features, to Larkin, reliant on the promises and commitment in the Agreement in Principle, and also subject to the Timetrics NDA.

FAC¶176. Larkin then made more fraudulent representations to Kumaran, notably on dates October 4th, October 9th, and October 15th 2016 from via email and telephone communications from his offices in New Hampshire to Kumaran's residences in New York City. Specifically he stated, that Northland would quantify and include as part of the revenue share basis for compensation to Plaintiffs, any financial improvements that both removed stress risk to Northland and reduced the amount of spend at the FCM.

The facts alleged with almost identically overlapping dates, detail substantial amounts of emails, which were signed writings between the parties Larkin and Kumaran, that Kumaran also identified specific "revenue share" and "compensation to Plaintiffs". The counterclaims allegations, therefore admit to the existence of the very same emails, that he concedes were signed email writings, that were between the parties, and made representations that he also relied upon. Therefore, once a party admits to the existence of the Agreements, and the underlying signed emails, and writings, the Statute of Frauds is no longer valid. Other examples of admission to the existence of the signed emails with "representations" continues in the Counterclaims ¶79 which also compares to FAC ¶180-¶188.

And Larkin also admits to the existence of the Agreement for NRCM to manage the Northland account, which is exactly as alleged in the FAC, including providing exhibits of contracts, for Kumaran, to have power of attorney to manage the Northland account. (See also ECF40.1,40.2)

### E,g, 7 – #79 –October 26, 20216 - Infringing Statement #79 –

Counterclaims¶79. In an October 26, 2016 email to Larkin, Kumaran falsely represented that "I spoke to the CTA lawyer and since NRCM is now registered (it was recently filed) the risk disclosure document needs to be filed with the CFTC, so we are subject to regulatory oversight **in terms of NRCM managing the Northland account**." Although Kumaran knew the importance

Page 15

of registering with the CFTC to lawfully operate, she did not attempt to fulfill these registration requirements until June 22, 2020, *nearly four years later*.[1]

But compare to

FAC¶182. One such material regulation requirement was to provide the compensation schedule to the FCM of the CTA's performance, On or around October 26th 2016 and other dates, Northland then refused to comply with the FCM's regulatory requirements to sign the forms related to disclosing compensation of Kumaran as a CTA, which were material obstructions to performance. Instead, Larkin's new scheme was for Kumaran as a CTA, teach him all the trades, so that he could pretend he was sole CTA on the account, and never honor any compensations in an unfair competition scenario so that Larkin and Northland and not Kumaran would gain the performance credit of the activity.

FAC¶ 183. Larkin yet again, in bad faith, then demanded to unilaterally change the terms, upon which Kumaran had relied prior to disclosing IP and providing services, that instead, wished Kumaran not disclose its compensation as a CTA in violation of regulatory statues. Because the conduct was illegal, Kumaran refused to trade an account without the required forms disclosed to the FCM. era

FAC ¶184. This activity would not only violate regulatory compliance laws, to not disclose its activities on a Managed Account as a CTA but further supported that Larkin and Defendants had no intention of compensating Plaintiffs for their services and strategies.

FAC¶187. Larkin,after refusing to comply with regulatory requirements, in or around November 2nd 2016, then breached the Agreement in Principle, enacted its plan to withhold its payments that were past due, in bad faith, and commercially unreasonable, continued to unilaterally change the terms of compensation, after services were provided, and proceeded to use and incorporate and retain the benefits of the services and disclosed IP without compensation to Plaintiffs.

FAC¶188. Such actions were also a breach of Larkin's fiduciary duties to act as a Member and Principle since he was to own 10% of the fund, and was instead self-dealing in the operations of the fund for his own personal gain, and acting in bad faith, to sabotage Kumaran's operations.

Yet the very same emails, and communications regarding the AIP, (including evidence of signed email writings subscribed to by Larkin) were presented to the Court in the FAC (see e.g. ECF1401.1, 140.2 – emails signed by writing on October 6, 2016 opening accounts). And See FAC¶180--¶187 – that Larkin manifested his intent under the AIP to open an FCM account, and specifically in FAC¶181 and FAC ¶182 referring to the same email on October 26, 2016 which Larkin refers to in Counterclaim ¶79. The contents of these emails contain material elements of the AIP, and the Court previously held all the emails were "unsubscribed". Plaintiffs objected to this, as the electronic emails were signed – but the Court upheld a decision that the entire AIP was void under the Statute of Frauds.

---

[1] Larkin's allegations are also frivolous and contradicted by facts on the public record, as NRCM registered in April 2017 only six months later. Therefore again Larkin lies to the Court to bootstrap his filings. The public records of NRCM's registration are available at the NFA Basic website. https://www.nfa.futures.org/basicnet/

Page 16

However, Larkin's same referral in the Counterclaims are to the very same emails, which contained, in his words, signed writings of what was represented, again admit to the existence of the AIP, and the terms and contents, that he claims to have relied on. For instance, see e.g. CC ¶79, versus FAC¶180 - email on October 6, 2016 and FAC ¶182 - emails on October 26, 2016. Therefore, the AIP cannot be void under the Statute of Frauds, if in Counterclaim ¶79 he is admitted to the very same existence of signed email writings. See however the facts alleged in ¶187-¶188 where the FAC alleges that on or around November 2, 2016 Larkin unilaterally tried to change the compensation, and breached the AIP, and refused to comply with the regulatory requirements, and ¶188 – that Larkin had a fiduciary duty as a Member and Principle, to own over 10% of a fund, and was self-dealing. The Court held that all the business arrangement regarding the AIP were void under the Statute of Frauds, due to Larkin's own inconsistent arguments to the Court, that "unequivocally" Larkin's commitments to fund the hedge fund

Moreover, the FAC also referred to the exact set of facts of timeline regarding "*managing the Northland account*" – ((See CC ¶79 – and see FAC¶180-¶188 - ECF40.3 – signed emails dated October 3, 2016, bearing the electronic signature of Larkin regarding the same facts of managing the Northland Account, and ECF40-2, also factual evidence of the Advantage Futures Account that Kumaran was to manage for Northland Energy).

As another example that Larkin admitted to the existence of the AIP, he refers to the same emails and communications where the parties discussed agreements on resolution of his role in the hedge funds. His statements in ¶82 also constitute admissions of the existence of the parties email writings.

### E.g. 8 - Infringing Statement #82 – June 6, 2019

Counterclaim ¶82 - In a June 6, 2019 email, Kumaran purported to unilaterally convert Mr. Larkin's equity investment in NAM into debt stating: "Since Mr. Larkin did not accept the very generous resolution of NAM by June 5th, 2019, his involvement in NAM for Membership Interests is terminated" and that "[t]he default terms of debt to NAM, apply on a pro-rated basis, and on equal terms to all other equity and debt holders. No profit sharing is permitted to non-members."

But compare to

16

Page 17

FAC`¶200. On several dates and times, over the exhaustive span of over two (2) years, including but not limited to in emails both to Defendant Larkin and its former counsel Bracewell, on July 31st, 2017, February 23rd, 2018, August 7th, 2018, October 2nd 2018 and June 5th, 2019, Kumaran sought Larkin's resolution of his resignation, signature on an NDA, as a fiduciary and principal, for participation in the hedge-funds, under terms that he had agreed. Kumaran sent non-disclosure agreements that are required under the Operating Agreements of various hedge funds, which are Timetrics affiliates, compromised, and in good faith met all Larkin's terms for operating participation in hedge funds.

Based on the foregoing it is clear that Larkin has admitted to the existence of both signed email writings, and terms between the parties, that both parties moved forward under an AIP, subscribed to by the parties, that contained representations and agreements that both parties relied upon. First, Larkin has admitted he lied in his motion to dismiss, and that the agreement was not "oral", rendering the Order ECF124 procured by fraud and misconduct of the opposing counsel. Second, Larkin has conceded the existence of dozens of signed and valid emails, by and between the parties, that he himself has admitted originated and were sent between the parties Larkin and Kumaran.

Accordingly, if the Counterclaims are to proceed, regarding the August 2016 – October 2016 signed email writings, the Statute of Frauds is no longer in effect and the AIP claims must be reinstated. The Statute of Frauds provides an exception to this rule as follows: "[t]here is sufficient evidence that a contract has been made if … [t]he party against whom enforcement is sought admits in its pleading, testimony, or otherwise in court that a contract was made." N.Y. Gen. Oblig. L § 5–701(b)(3)(c). Thus, if a party admits in its Answer or other pleading the existence of a contract otherwise unenforceable under the Statute of Frauds, the defense has been waived. d); *accord Rail Europe, Inc. v. Rail Pass Express, Inc.,* 1996 WL 157503, at *4 (S.D.N.Y. Apr.3, 1996) ("Since defendant has admitted [in its answer] to the existence of an agreement between the parties, the Statute of Frauds does not bar enforcement of that agreement."). *Boscov's Dep't Stores, LLC v. AKS INternational AA Corp.,* No. 01 CIV.105880 GWG, 2003 WL 21576405, at *5 (S.D.N.Y. July 11, 2003).

For instance ¶56-¶59 speaks directly to the same material terms of the AIP that Kumaran also relied upon. Here, Larkin has admitted the relevant allegations in at least three distinct way. First, he has admitted to the same material terms of the AIP in the September 15, 2016 emails, that governed also ¶141-¶142 and the agreement to fund a hedge fund for two years.  Second, he has admitted to

numerous signed email writings between August 2016 – October 2016 that the parties relied upon, and he claims Kumaran made "representations" in emails. The existence of those emails, together with the author of the emails, and his reliance on representations (See Counterclaim - ¶33,¶63,¶73,¶79) all mirror the allegations raised by Plaintiffs in their FAC, regarding the same set of emails on identical dates that also outline the arrangements, that also included Larkin's promise to pay Kumaran for salary and services Conspicuously the Statute of Frauds, is not even named as an affirmative defense in the Answer and Counterclaims at Dkt. 177. Statute of Frauds is not mentioned once. *See also* Boscov ID reinstating the statute of frauds, once a party admits to the existence of terms and agreements.

Larkin has also admitted to the existence of the multiple signed emails, including producing the 900+ pages of subscribed emails, and also in pleadings to the Court, (See e.g. ECF40.1) the Statute of Frauds is no longer effective. The Court of Appeals has recognized, "[t]he Statute of Frauds was designed to guard against the peril of perjury; to prevent the enforcement of unfounded fraudulent claims.. but 'The Statute of Frauds was not enacted to afford persons a means of evading just obligations; nor was it intended to supply a cloak of immunity to hedging litigants lacking integrity; nor was it adopted to enable defendants to interpose the Statute as a bar to a contract fairly, and admittedly, made [.]' " *Morris Cohon & Co. v. Russell,* 23 N.Y.2d N.Y.S.2d 947, 245 N.E.2d 712 (1969) (quoting 4 Williston, Contracts (3d ed.), §567A, pp.19–20).

### C – Larkin Admits The Emails Are Signed Writings, Memorializing Terms, and Subscribed to By the Parties

In addition, the admission in the Counterclaims are that Larkin misrepresented to the Court in them motion to dismiss that the AIP was "oral". The word "oral" was misrepresented over six times in their MTD. However the examples above, e.g ¶56-¶59, ¶33,¶60,¶63,¶74,¶79 show that the terms that the parties relied upon were contained in signed email writings. Larkin cannot pretend that by claiming the email came from Kumaran, that these weren't electronically signed emails, bearing the electronic signature of the parties, which are also sufficient to overcome the Statute of Frauds.

Courts have ruled that (a) "[a]n e-mail sent by a party, under which the sending party's name is typed, can constitute a writing and finding that "certain e-mail correspondence ... was sufficient to set forth an objective standard for determining the compensation to be paid to the plaintiff as a finder's

Page 19

fee"); *Kausal v. Educational Products Information Exchange Institute,* 105 A.D.3d 909, 911, 964 N.Y.S.2d 550 (2d.Dep't.2013); *See also Shapiro v. Dictaphone,* 66 A.D.2d 882, 884–85, 411 N.Y.S.2d 669 (2d.Dep't.1978) (finding that the statute of frauds writing requirement satisfied where, "on two occasions early in his dealings with Plaintiff, clearly indicated in writing that he expected to be paid for his services and defendant kept putting plaintiff off anytime the latter brought up the question of the amount of his fee"). Although defendant did not sign the agreement proffered by plaintiff setting forth the details of its commission, that fact is not fatal either under the statute of frauds or as to enforceability. *Newmark* id. An e-mail sent by a party, under which the sending party's name is typed, can constitute a writing for purposes of the statute of frauds") (*see* General Obligations Law § 5–701[b][4]; *Stevens v. Publicis S.A.,* 50 A.D.3d 253, 255–256, 854 N.Y.S.2d 690 [2008], *lv. dismissed* 10 N.Y.3d 930, 862 N.Y.S.2d 333, 892 N.E.2d 399 [2008] ). N.Y.Gen.Oblig.Law §5-701 (McKinney) states that there is sufficient evidence that a contract has been made if: (a) There is evidence of electronic communication (including, without limitation, the recording of a telephone call or the tangible written text produced by computer retrieval), admissible in evidence under the laws of this state, sufficient to indicate that in such communication a contract was made between the parties.

Hence on this count also, Larkin has admitted, that there were sufficient electronic emails, and signed writings, that he committed fraud on the Court that the agreement was "oral", and by identifying dozens of electronic emails from Kumaran, which match the emails from Larkin, this is sufficient also to overcome the statute of frauds under New York law.

An e-mail sent by a party, under which the sending party's name is typed, can constitute a writing for purposes of the statute of frauds") (*see* General Obligations Law § 5 701[b][4]; *Stevens v. Publicis S.A.,* 50 A.D.3d 253, 255–256, 854 N.Y.S.2d 690 [2008], *lv. dismissed* 10 N.Y.3d 930, 862 N.Y.S.2d 333, 892 N.E.2d 399 [2008] ). Therefore, the Statute of Frauds is not enforceable under § 5-701.3(a) if there is sufficient evidence of electronic communication admissible as evidence. Here, given the 962 pages of bate stamped evidence of signed email writings, Larkin has also produced in discovery and the AIP must be reinstated by Larkin's admissions of several signed email writings. For this reason alson, the admissions in Dkt 177 also require the Court respectfully reinstate the AIP.

### D - The AIP Is not Severable / The Court Can't Enforce "Half a Contract"

Moreover, the AIP claims must be reinstated, as Larkin attempts to pretend to this Court that he can only enforce "half the contract" – and terms only related to only certain monies he gave to NRCM (a non-party) for the purpose of membership interests in NAM. But the contract was a bilateral deal, that Kumaran also provided services for Northland, and expended hundreds of hours work for which she was not compensated, and also promised various additional salary and bonusses. FAC ¶141-¶142 spells out clearly those bilateral terms, including those referred to in the September 15, 2016 email whereby Kumaran also would 'resume services" for Northland. The Court also acknowledged these material terms in its Order ECF 124 were for Kumaran to provide services.

Larkin attempts to dissect the AIP, to pick out only certain provisions, and then omit the others. (See Counterclaim¶58, but compare FAC ¶141-¶142). While all those terms were now embodied in signed email writings on September 15, 2016, and subsequent communications. And any agreements between the parties regarding the hedge fund, Larkin has previously argued, were for two years, and thus void under the Statute of frauds (See Dkt 165). The Court also ruled that Plaintiff fraudulent inducement claims of the AIP were thus also barred by the Statute of Frauds. These same signed email writings thus cannot be severed to only enforce "half a contract". If Larkin has argued to the Court, his commitment to fund a G.P. were also barred under the SOF.

Larkin's attempt to sever the AIP to only encompass terms that he wants also requires reinstatement of the AIP agreement. Neither party intended for the agreement to be "severable". There was no provision in any of the AIP terms in any of the emails, that the parties may enforce only "part" of the contract, or that if the AIP was deemed invalid, that remaining terms would survive. A court "may sever the illegal aspect and enforce the legal one, so long as the 'illegal aspects are incidental to the legal aspects and are not the main objective of the agreement.' " *Lanza v. Carbone*, 13 N.Y.S.3d 472, 476 (2d Dep't 2015) (quoting *Donnell v. Stogel*, 560 N.Y.S.2d 200 (2d Dep't 1990)). The question of whether a contract is severable is "generally a question of intent, 'to be determined from the language employed by the parties, viewed in the light of the circumstances surrounding them at the

Page 21

time they contracted." *Id.*; *see also In re Balfour MacLaine Int'l Ltd.*, 85 F.3d 68, 81 (2d Cir. 1996). Under New York law, the presence of a severability clause is evidence that the parties intended that if one provision of a contract is deemed invalid, valid provisions of the contract should remain in full force. *See Samba Enters., LLC v. iMesh, Inc.*, 2009 WL 705537, at *5–6 (S.D.N.Y. Mar. 19, 2009), *aff'd sub nom.*, *Samba Enters., Ltd. v. iMesh, Inc.*, 390 F. App'x 55 (2d Cir. 2010) (summary order). *Spencer-Smith v. Ehrlich*, No. 23-CV-02652 (LJL), 2024 WL 709291, at *14 (S.D.N.Y. Feb. 21, 2024)

Moreover, the Court also already ruled that it could not disembody certain provisions of the contract (i.e. for separating the provision of the AIP that Kumaran provided services for Northland). Since the contract is not severable, the Court must include the entire contract as a whole. Previously AStar/Kumaran argued that the portion of the AIP that Kumaran was providing services for Northland

*See* Order ECF124 at 6-7

> Plaintiffs allege that, "in exchange for . . . the Missing Pieces," Larkin promised he would make "substantial financial contributions in his personal capacity" for Kumaran "to launch [a] hedge fund[,]" and Northland and Hedge would make certain "ongoing" payments to Plaintiffs. *Id.* ¶ 130. Specifically, the "material components" of the Agreement in Principle "included" that "Larkin would contribute . . . significant financial capital contribution[s]" for Kumaran "to start a hedge fund," named Nefertiti Asset Management, LLC, with "no ability to terminate his capital contribution[s] for two years." *Id.* ¶ 141; *see also id.* ¶¶ 142, 282. Larkin would also "become a principle and fiduciary" and "own more than 10% of the Delaware LLC." *Id.* ¶ 141. And "Larkin would sign NDA's [sic] directly with the new entity." *Id.* Moreover, "as part of the [same] deal," Larkin allegedly promised that Northland and Hedge would pay Plaintiffs "salary bonuses," license fees, royalties, and "profits sharing" on the same terms provided by certain Pre-Release Agreements, starting in April 2017. *Id.* ¶ 142; *see also id.* ¶¶ 152, 155, 281. "[I]n consideration of Larkin's substantial full non-terminable capital contribution[s] for two years to launch the hedge fund," Plaintiffs would "disclose further IP and trade secrets" to Larkin, as well as provide unspecified "services." *Id.* ¶ 142; *see id.* ¶¶ 150–52.

Clearly the Court also recognized that "as part of the same deal" … Larkin promised to pay Kumaran salary, bonuses and other profits. And the Court further opined, regarding a discussion on choice of law, that

> Plaintiffs allege that "material components" of the Agreement in Principle had nothing to do with Nefertiti. FAC ¶¶ 141, 142. Rather, much of the alleged oral contract concerned promises that Plaintiffs would disclose "IP" and provide "services" to Northland and Hedge "in exchange for" various kinds of payments. *Id.*

Accordingly, Larkin's attempt to sever this agreement is prohibited. The same emails that he speaks about, including but not limited to the ones on September 15, 2016 and September 26, 2016 contained specific signed writings on the "services" to Northland and hedge" and payments of salary and bonuses to Kumaran. IN the absence of a severability clause,

Finally Larkin cannot obtain the benefit of judicia estoppel, and file inconsistent arguments in the Court. He has clearly taken a position that the AIP is void under the Statute of Frauds. Defendant Larkin and his counsel also argued to this very Corut that the AIP could not be severed either. When it suited them, to try to get a dismissal of the entire contract. they argued to this Court the hedge fund portion also could not be severed.

The Court therefore must allow the AIP claims to be reinstated if the counterclaims proceed so as to avoid prejudice to one party – this time Plaintiffs who also relied on representations in the AIP, and the Court adopted Larkin's earlier position that the entire AIP, and his dealings with the hedge fund were void under the SOF. Hence, if any of the provision of the AIP, and related to monies exchanging hands pursuant to those terms, the **entire** AIP needs to be reinstated. Under the severability provisions, Larkin cannot enforce "half a contract". He has misconstrued to the Court that he simple paid monies to acquire membership interests in NAM. However, the AIP, is alleged to be bilateral, that the material terms of the AIP were that Kumaran also provided services, and was promised salary, bonuses and profit sharing. (including with obligations to Northland, AStar and Hedge). Therefore the AIP terms cannot be secered, and the given Defendants' admission of sufficient signed email writings, the contract is not void under the Statute of Frauds, and mist be reinstated.

Specifically, before this Court, Larkin seeks to try to get recovery of $29,100 he paid to Kumaran under the AIP. However in more unscrupulous conduct, omits to the Court, that the monies were paid as "salary" to Kumaran for hundreds of hours of services, ¶141-¶142. There is no provision for Larkin to claw-back salary, and in the exchange of goods, labor and services, was all integrated into the provisions of the AIP. Since the services provision of the AIP, was also a material term, as well as the email related to profit sharing, bonusses, including at some points emails related to $1.4 million in

Page 23

trading bonuses for removing tail risk, Larkin's allegations that the monies changing hands were purely to do with a hedge fund are also bad faith. Defendant cannot keep changing his story to obtain whatever benefit next suits him, after arguing the complete opposite in the motion to dismiss.

In their motion to dismiss filed on July 9, 2020 (Dkt. No. 65), Defendants not only argued to the Court, that the AIP was void under the "statute of frauds". (see  ECF65 at 11-12) in particular writing in their briefs that, "Under the Statute of Frauds, "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking . . . [b]y its terms is not to be performed within one year from the making thereof …." N.Y. G.O.L. § 5-701(a)(1)."

Defendants, through their counsel Westerman, went on to argue that

> "Here, Plaintiffs expressly allege the AIP obligated Larkin to contribute capital to form hedge funds with "no ability to terminate his capital contribution for **two years.**" Compl. ¶ 141, 142 (emphasis added). By definition, the AIP was incapable of being performed within one year. It is therefore subject to the Statute of Frauds. Plaintiffs admit that the "parties had not signed" the AIP.  As such, it is not "subscribed by the party to be charged."
>
> Thus, the AIP is "void" under the Statute of Frauds. *See, e.g., Marcus v. C.I.F. Inc.*, 26 A.D.2d 923, 924 (1st Dep't 1966) (holding that statute of frauds is an "absolute defense" to claim for breach of an oral agreement to extend credit for two years); *Kastner v. Gover*, 19 A.D.2d 480, 482 (1st Dep't 1963) (affirming dismissal under Statute of Frauds because the alleged "continuing obligation to make payments," "over the twenty-eight year term of the copyright," "makes this alleged agreement incapable of performance within one year"). Larkin's alleged obligation to contribute capital for a minimum of two years cannot be severed from the purported AIP to "save" it from the Statute of Frauds. "Under New York law, an oral agreement that is void under the Statute of Frauds may not be severed to save an otherwise enforceable agreement." *Thiam v. Am. Talent Agency, Inc.*, No. 11 Civ. 1465, 2012 WL 1034901, at *4 (S.D.N.Y. Mar. 27, 2012). Here, Plaintiffs allege the two-year requirement was among the "material provisions" of the purported AIP, and it is inextricably intertwined with the other alleged provisions. Compl. ¶¶ 141-42. As a matter of law, the two-year requirement cannot be severed to save Plaintiffs' claim for breach of the AIP. *Whitman Heffernan Rhein & Co., Inc. v. Griffin Co.*, 163 A.D.2d 86, 87 (1st Dep't 1990) (the alleged contract was subject to statute of frauds and not severable because the "extent to which these provisions are intertwined renders them inappropriate for division without doing violence to the terms of the contract")."

Hence, Defendant is also collaterally estopped from arguing different now, that the AIP cannot be severed. Since Larkins' commitments to fund a hedge fund were for two years, he also cannot sever

the portion where he agreed to pay salary, bonuses and proft-sharing. (See ¶141-¶142). Accordingly if the AIP, and Larkin's claims for instance that Kumaran "converted" his $29,100 which was agreed to be "salary" under the AIP, cannot be enforced without the entire and whole AIP contract being reinstated. Based on this, all Kumaran's claims under the AIP, including Larkin's failure to pay the remaining salary, bonuses, and other sharing, as well as the quasi-contract claims with the AIP must be reinstated. The capital contributions to the hedge fund cannot be severed from Kumaran's salary and service provided which, as the Court also acknowledged, were the material components of the AIP. And since Larkin has now admitted to the existence of several signed email writings, that he relied on for "representations" those representations were also bilateral – in that – Larkin also sent signed email writings, and that Kumaran relied upon, that the Court dismissed as barred under the Statute of Frauds. The AIP related claims, including ones that are quasi-contract, and rise and fall with it must be reinstated., including promissory estoppel, unjust enrichment. *See Piven v. Wolf Haldenstein* ("where Defendants dispute the existence of a valid, enforceable contract, Plaintiffs are permitted to proceed on both contractual and quasicontractual theories."). When the parties have a bona fide dispute as to the existence of an enforceable contract, plaintiff's unjust enrichment claim cannot be dismissed at this stage." Manhattan Motorcars, Inc. v. Automobile Lamborghini, S.p.A., 244.F.R.D. 204,219 (S.D.N.Y.2007).

## CONCLUSION

For the foregoing reasons, Defendant has conceded the existence of signed email writings sufficient to overcome the statute of frauds, and the existence of material terms, and representations in the AIP, that also form an exception to the Statute of Frauds. Defendants have themselves argued that the AIP cannot be severed. Therefore, if the counterclaims are to proceed, Plaintiff respectfully moves that the Court must reinstate the AIP, and all AIP related claims.


Respectfully submitted

Page 25

July 29, 2024

Respectfully submitted,

/Samantha S. Kumaran
Samantha S. Kumaran
Individual Pro-Se Plaintiff
samantha@timetricsrisk.com
212-431-5098