UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/10/2025
```

-----------------------------------------------------------------X
:
SAMANTHA SIVA KUMARAN and THE A                :
STAR GROUP, INC. d/b/a TIMETRICS,              :
:
               Plaintiffs,        :        19-CV-8345 (MKV) (RWL)
:
      - against -                        :
:
NORTHLAND ENERGY TRADING, LLC,                 :        **ORDER ON**
HEDGE SOLUTIONS, INC., RICHARD M.              :    **MOTION TO STRIKE AND**
LARKIN, DANIEL LOTHROP, and DOMENIC            :    **MOTION FOR SANCTIONS**
BRAMANTE,                                      :
:
            Defendants.         :
-----------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      This is an action for misappropriation of trade secrets, breach of contract, and fraudulent inducement. After the Second Circuit vacated in part the dismissal of the First Amended Complaint ("FAC"), Defendant Richard M. Larkin ("Larkin") filed counterclaims against Plaintiff Samantha Kumaran ("Plaintiff" or "Kumaran") for common law fraud, conversion, and violations of the Securities Act (the "Counterclaims"). In response, Kumaran has both moved to strike the Counterclaims and several allegations supporting them pursuant to Federal Rule of Civil Procedure 12(f) ("Rule 12(f)"), and for sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"). For the following reasons, (1) Kumaran's motion to strike is GRANTED in part, and DENIED in part; and (2) Kumaran's motion for sanctions is DENIED.

## FACTUAL BACKGROUND[1]

### A.     The Instant Action

Kumaran, the CEO of Plaintiff The A Star Group, Inc. ("A Star Group"), doing business as Timetrics, "develop[s] computer software used by commodities traders to increase profits and reduce hedging risks." (FAC ¶ 2.) Kumaran, A Star Group, and Timetrics are collectively referred to herein as "Plaintiffs."

Larkin is the CEO and managing member of Defendant Northland Energy Trading, LLC ("Northland"), "an over the counter options trading company," and President of Defendant Hedge Solutions, Inc. ("Hedge"), "a software company that also licenses risk management software products" and "prices options for hedging price risk to customers." (*Id.* ¶¶ 34, 54.) Larkin, Hedge, and Northland are collectively referred to herein as "Defendants."

In 2011, Plaintiffs entered into a series of licensing agreements with Northland and Hedge to license Plaintiffs' "proprietary hedging strategies, software and techniques," namely the "Timetrics Software," developed by Kumaran (the "Pre-Release Agreements"). (*Id.* ¶¶ 4, 5, 48, 68-69.) The Pre-Release Agreements prohibited Defendants from creating "Derivative Works" from Plaintiffs' software and strategies, and "promised that large profits sharing, and lucrative incentives and license fees would be made in exchange for the use and disclosure of Plaintiffs' [intellectual property ("IP")], software and strategies." (*Id.* ¶¶ 5, 71-72.)

---

[1] The facts are largely drawn from the FAC at Dkt. 26 and the Counterclaims at Dkt. 177.

In May 2015, Timetrics filed a lawsuit against Northland and Hedge "for non-payment of invoices." (*Id.* ¶¶ 12, 106, 111.) *See The A Star Group, Inc. v. Northland Energy Trading, LLC et al.*, No. 15-CV-4660, Dkts. 1, 17 (S.D.N.Y. 2015). In May 2016, Kumaran, Timetrics, Northland, and Hedge entered into a settlement agreement which resolved the 2015 lawsuit, released certain claims, and terminated the Pre-Release Agreements (the "Settlement Agreement"). (*See* Dkt. 52-2.) Larkin signed the Settlement Agreement on behalf of Northland and Hedge. (*Id.* at 7.) The Settlement Agreement contains a broad mutual release of claims, "whether known or unknown" at the time, that Kumaran and Timetrics "asserted or could have asserted" in the 2015 invoice suit against not only Northland and Hedge, but also "their employees, directors, officers [and] agents." (*Id.* at 3, ¶ 4.)

Four months after entering into the Settlement Agreement, Plaintiffs discovered that Defendants had breached both the Pre-Release Agreements and the Settlement Agreement by using "Plaintiffs' IP and Software" to "create a copycat product … called the 'OBT Book.'" (FAC ¶¶ 8, 9, 25, 120, 143-144.) Defendants allegedly created the OBT Book with the "intention" of "depriving Plaintiffs of their license fees, royalties and share of trading profits." (*Id.* ¶¶ 94-96.) Plaintiffs alleged that at the time the Settlement Agreement was negotiated, Larkin made certain misrepresentations omitting the existence of the OBT Book "in order to induce Plaintiffs to agree to and [sic] execute the Settlement [Agreement]." (*Id.* ¶¶ 118-19, 124.)

After the alleged breach of the Settlement Agreement, "Kumaran and Larkin etched out an Agreement in Principle during the months of August 2016 – September 2016" to "re-establish business relations with Kumaran." (*Id.* ¶¶ 130, 141.) Plaintiffs

3

allege that "Larkin, Northland and Hedge recognized [that] their Derivative Work OBT Book was still inferior to the Plaintiffs['] IP and original Software" and, for that reason, wanted "further proprietary information ... [in order] to obtain Plaintiff's unique updates and strategies ('Missing Pieces')." (*Id*. ¶ 129.) Kumaran agreed "to provide [Larkin] the Missing Pieces" (*id*. ¶ 130), despite knowing about the OBT Book. In exchange for the Missing Pieces, Larkin agreed to make "substantial financial contributions in his personal capacity" for two years for Kumaran "to start a hedge fund," named Nefertiti Asset Management, LLC ("NAM"). (*Id*. ¶¶ 130, 141, 142, 282.) As a part of this arrangement, Larkin would "become a principle and fiduciary," "own more than 10% of the Delaware LLC," and "would sign NDA's [sic] directly with the new entity." (*Id*. ¶ 141.) "[I]n consideration of Larkin's substantial full non-terminable capital contribution[s] for two years to launch the hedge fund," Plaintiffs would "disclose further IP and trade secrets" to Larkin. (*Id*. ¶ 142.)

The parties did not, however, enter into an express contract addressing those terms. (*Id*. ¶ 284 ("There was no express contract").) From September 2016 to March 2017, Plaintiffs disclosed unspecified "IP, Confidential Information and Trade Secrets" to Larkin under the terms of their Agreement in Principle. (*Id*. ¶¶ 21, 150, 162-63, 172-74.) Larkin, however, "never fulfilled his [personal] commitments of providing the capital" for Kumaran's new hedge fund. (*Id*. ¶ 22.) Instead, Larkin "used and profited" from Kumaran's disclosures. (*Id*.)

Kumaran seeks an injunction against Defendants' use of Kumaran's IP, recission of Section 4 of the Settlement Agreement, compensatory damages, attorney's fees, and pre- and post-judgment interest.

4

**B.      The Counterclaims**

Larkin asserts Counterclaims against Kumaran individually for common law fraud, conversion, and violations of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e.    (Defendants' Answer and Larkin's Counterclaims ("Answer" or "Counterclaims"), Dkt. 177, at 54-56.)

Specifically, Larkin alleges that in or around 2016, Kumaran misrepresented, among other things, that she was forming a "hedge fund" under the name "Nefertiti [Asset Management]" – i.e., NAM.  (FAC ¶ 10.)  According to Larkin, NAM was a sham, was never actually launched by Kumaran, and did not have any investors, clients, or assets under management.  (*Id.* ¶¶ 12-14.)  Further, Kumaran misrepresented her credentials, including that she "earned a first class honors MA and BA, summa cum laude from Trinity College, University of Cambridge, UK in Applied Math and Theoretical Physics," (*id.* ¶ 36) (internal quotation marks omitted), and that she "contracted for 6 years at Niagara Mohawk Energy Marketing becoming the Senior Risk Manager during the last 2 years" (*id.* ¶ 38) (internal quotation marks omitted).  Relying on Kumaran's misrepresentations concerning the NAM hedge fund and Kumaran's education and work history, Larkin made numerous payments to Kumaran, which she misappropriated for her personal use instead of Larkin's investment in NAM.  (*Id.* ¶¶ 14, 56, 62, 77, 78, 84, 101-02.)  Despite receiving payments from Larkin in 2016, Kumaran did not register NAM with the National Futures Association until four years later (*id.* ¶ 88), and never filed any registrations for NAM at the state level (*id.* ¶ 92).

Larkin alleges that instead of providing "workable software for her clients, Kumaran used her purported 'business' to reel in deep-pocketed clients … and then

used litigation has [sic] a means to extract money from them." (*Id.* ¶ 9; *see also id.* ¶ 18-22 (alleging Kumaran initiated litigation against a former client Manitoba Hydro after it would not purchase the Timetrics Software from her).)  As relief for his counterclaims against Kumaran, Larkin seeks the dismissal of Kumaran's claims with prejudice, compensatory and punitive damages, interest, attorney's fees and costs.

## PROCEDURAL HISTORY

Kumaran commenced the instant lawsuit on September 6, 2019.  (Dkt. 1.)  The operative complaint is the First Amended Complaint filed on December 26, 2019.  (Dkt. 26.)  On July 9, 2020, Defendants filed a motion to dismiss.  (Dkts. 63-65.)  The Court granted the motion on February 26, 2021.  (Dkt. 124.)  On December 13, 2023, the Second Circuit affirmed dismissal in part but found that Plaintiffs sufficiently alleged that they were fraudulently induced into the Settlement Agreement.  *See A Star Group, Inc. v. Northland Energy Trading, LLC*, No. 21-CV-797, 2023 WL 8613525 (2d Cir. Dec. 13, 2023).  The case was remanded for further proceedings.  *See id.*  On May 16, 2024, Defendants filed their Answer to the First Amended Complaint, and Larkin asserted his Counterclaims against Kumaran.  (Dkt. 177.)  On July 29, 2024, Kumaran filed separate motions to strike the Counterclaims and for sanctions (Dkts. 192, 193).[2]  Larkin filed a single brief responding to both motions on August 26, 2024.  (Dkt. 194.)  Kumaran filed

---

[2] On July 15, 2024, the parties filed a joint letter stipulating that a schedule for the motion to dismiss any Counterclaims should be deferred pending resolution of the instant motions.  (Dkt. 188.)

two separate reply briefs on September 10, 2024, at which time the motions were fully briefed.[3]  (Dkts. 195-96.)

## DISCUSSION

The Court first addresses the motion to strike and concludes that it should be granted in part and denied in part.  The Court then discusses the motion for Rule 11 sanctions and finds that it is premature.

## I.  MOTION TO STRIKE

Kumaran has not met her burden of establishing that Larkin's Counterclaims for fraud and conversion or the allegations supporting them should be stricken.  Kumaran has, however, met the burden of showing the Counterclaims under the Securities Act should be stricken because they are untimely.

## A.    Standards For A Motion to Strike Under Fed. R. Civ. P. 12(f)

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike "are generally disfavored," *Correction Officers Benevolent Association of Rockland County v. Kralik*, 226 F.R.D. 175, 177 (S.D.N.Y. 2005), and "infrequently granted." *Gierlinger v. Town of Brant*, No. 13-CV-0370, 2015 WL 3441125,

---

[3] The Court uses the following conventions to refer to the parties' primary briefs.  "Pl. Mot. To Strike" refers to Plaintiff Kumaran's Motion and Memorandum of Law to Strike Dkt. 177 and in the Alternative to Reinstate the AIP.  (Dkt. 193.)  "Pl. Mot. For Sanctions" refers to Plaintiff Kumaran's Motion and Memorandum of Law for Rule 11 Sanctions.    (Dkt. 192.)    "Def. Opp." refers to Defendant Richard M. Larkin's Memorandum of Law in Opposition to Samantha Kumaran's Motions to Strike and for Sanctions.  (Dkt. 194.)  "Pl. Reply Mot. For Sanctions" refers to Plaintiff Kumaran's Reply Memorandum Motion for Rule 11 Sanctions.  (Dkt. 195.)  "Pl. Reply Motion to Strike" refers to Plaintiff Kumaran's Reply Memorandum Motion to Strike and Motion to Reinstate AIP.  (Dkt. 196.)

at *1 (W.D.N.Y. May 28, 2015); *see also Illiano v. Mineola Union Free School District*, 585 F. Supp.2d 341, 357 (E.D.N.Y. 2008) ("Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so") (internal quotation marks and citation omitted).  Accordingly, "[t]he party moving to strike bears a heavy burden" to establish the basis for the motion.  *Atkinson v. Singh*, No. 19-CV-3779, 2022 WL 137634, at *17 (S.D.N.Y. Jan. 14, 2022) (internal quotation marks and citations omitted); *see also Schneidermesser v. NYU Grossman School of Medicine*, No. 21-CV-7179, 2024 WL 4054372, at *1 (S.D.N.Y. Sept. 5, 2024) (same).

"In deciding whether to [grant] a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).  "Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided.  And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone."  *Id*. "To prevail in such a motion, [the moving party] must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Dubai Equine Hospital v. Equine Imaging, LLC*, No. 18-CV-6925, 2019 WL 3811922, at *2 (S.D.N.Y. Aug. 14, 2019) (internal quotation marks omitted) (quoting *Roe v. City of New York*, 151 F. Supp.2d 495, 510 (S.D.N.Y. 2001)).  With respect to a motion to strike "scandalous" material, "a scandalous

allegation is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court." *Cabble v. Rollieson*, No. 04-CV-9413, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006).

**B.   Larkin's Counterclaims For Common Law Fraud And Conversion Should Not Be Stricken**

Kumaran's objections to Larkin's Counterclaims concern four categories of alleged subject matter:  (1) Kumaran's credentials; (2) Timetrics; (3) NAM; and (4) the Agreement in Principle.  The Court examines each category in turn.

**1.   Kumaran's Credentials**

Kumaran seeks to strike portions of Larkins' Counterclaims concerning her education and work history.  With respect to her education, Kumaran targets paragraphs 11, 36, and 37 of the Counterclaims asserting that Kumaran did not earn the degrees she claims.  (*See, e.g.*, Counterclaims ¶¶ 36 ("Kumaran [ ] falsely represented that she 'has earned a first class honors MA and BA, summa cum laude from Trinity College, University of Cambridge, UK in Applied Math and Theoretical Physics'"), 37 ("Upon information and belief, Kumaran did not actually earn any degrees from the University of Cambridge").)  Kumaran argues the allegations concerning her education were inserted to "defame and prejudice Kumaran," and allowing Larkin to pursue them "constitutes harassment."  (Pl. Mot. To Strike at 3.)

As for her work history, Kumaran focuses on allegations in paragraphs 4, 5, 16-22, 26-28, and 33-34 of the Counterclaims.  Those allegations assert that Kumaran falsely represented in her offering to Larkin that she was a "seasoned entrepreneur" with years of consulting experience, that Timetrics was a "sham," and that Kumaran would bait other companies into buying the Timetrics Software only to subsequently

bring litigation against the companies when they tried to cut ties with Kumaran. (Counterclaims ¶¶ 4-5, 16-22, 26-28, 33-34.)   Kumaran argues that the allegations about her prior business dealings were filed to "slander, defame and harass" Kumaran's business reputation and "pry into confidential business dealings."  (Pl. Mot. To Strike at 3.)

There is no basis to strike the allegations about Kumaran's education and past business dealings.  Both are relevant to Larkin's common law fraud claim – to prove Kumaran misrepresented her credentials to induce investors like Larkin to invest in Kumaran's hedge fund.  *See, e.g.*, *Terra Securities Asa Konkursbo v. Citigroup, Inc.*, 740 F. Supp.2d 441, 448 (S.D.N.Y. 2010) ("New York law requires that plaintiffs alleging common law fraud establish reasonable reliance on a material misrepresentation"), *aff'd*, 450 F. App'x 32 (2d Cir. 2011); *La Pecora Bianca Holdings, LLC v. Empowered Hospitality LLC*, No. 19-CV-9655, 2021 WL 1164267, at *6 (S.D.N.Y. March 25, 2021) (finding misrepresentations that the defendant made as owner of a consulting firm regarding her level of experience and competence may support a claim of fraud); *Intelligen Power Systems, LLC v. dVentus Technologies LLC*, No. 14-CV-7392, 2015 WL 3490256, at *9-10 (S.D.N.Y. June 2, 2015) (concluding misrepresentations regarding the engineering expertise of defendant's executive supported a claim for fraudulent inducement); *Dynamic-Hakim, LLC v. Maloney*, 169 A.D.3d 411, 411, 93 N.Y.S.3d 289 (1st Dep't 2019) (finding misrepresentation that "[defendants'] experience gave them the wherewithal to complete the project" stated a fraud claim).

Kumaran also has not shown that there is no admissible evidence to support Larkin's allegations about her education and past business dealings.  Instead, Kumaran

argues in conclusory fashion that "there is no evidentiary support" for all of the statements she seeks to strike in the Counterclaim (not just those about her credentials) and points to various documents on the docket as proof that "evidentiary support" does not exist.  (*See, e.g.*, Pl. Mot. To Strike at 5 (allegations concerning NAM "have no evidentiary support given the filings on the docket 20-CV-3871 ¶ 89").)  At best, the documents cited raise issues to be addressed in a motion to dismiss or issues of fact to be explored during discovery, and any shortcomings in the evidence can be addressed through summary judgment if warranted.  *See Sunshine Cellular v. Vanguard Cellular Systems, Inc.*, 810 F. Supp. 486, 499-500 (S.D.N.Y. 1992) ("If there is any doubt whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied") (citation omitted); *Payne v. Powers*, No. 09-CV-6325, 2010 WL 11712558, at *1 (W.D.N.Y. July 19, 2010) ("Any alleged deficiencies can be explored during discovery and, if [p]laintiff desires, through a motion for summary judgment"); *Oneida Indian Nation of New York v. New York*, 194 F. Supp.2d 104, 125 (N.D.N.Y. 2002) (declining to strike claim that raised factual issues).

Finally, while the allegations on their face suggest that Kumaran could face some prejudice from including them, she will have the opportunity to prove the facts alleged are false as the case proceeds.  Accordingly, Kumaran's motion to strike allegations in paragraphs 4-5, 11, 16-22, 26-28, 33-34, and 36-37 of the Counterclaims is denied.

## 2.    Timetrics

Kumaran seeks to strike allegations in Counterclaim paragraphs 5-9 and 23-25 regarding Timetrics' goods and services.  She argues that the allegations (1) are immaterial and scandalous; (2) concern claims that were released by the Settlement

Agreement; and (3) are improperly directed at Kumaran instead of the corporate entity behind Timetrics. Kumaran's arguments are not persuasive.

First, Kumaran argues the allegations that Timetrics is a sham should be stricken because they are "fabrication" and "redundant, immaterial, impertinent[,] scandalous, and were inserted to defame and slander." (Pl. Mot. To Strike at 3; *see, e.g.*, Counterclaims ¶ 7 ("Timetrics never had any functional 'software,' 'trade secrets,' or 'intellectual property.' Timetrics' purported 'products and services' ***are a fiction***, which [Kumaran] touted to defraud companies like Mr. Larkin's companies, Northland Energy Trading, LLC [ ] and Hedge Solutions, Inc.") (emphasis in original).) Aside from this blanket statement, Kumaran does not explain how statements regarding Timetrics' services are immaterial or inadmissible to proving Larkin's fraud claim. That Kumaran disagrees with the merits of the allegations and claims asserted is not a basis to strike them.

Kumaran also argues "[t]hese allegations must be struck, since these 1993-2010 allegations were released by the Settlement [Agreement] and solely related to the corporate plaintiff." (Pl. Mot. To Strike at 3.) Yet in the FAC, Kumaran alleges that the same releases are null and void because she was fraudulently induced into entering the Settlement Agreement. (*See* FAC at 65 (Thirteenth Cause of Action seeking recission of Provision 4 of the Settlement Agreement which discusses mutual release of the parties).) Again, the merits of the parties' claims – including arguments about the validity and scope of any release – may be a matter of dispositive motion practice but is not a basis to strike.

Finally, Kumaran seeks to strike the allegations because they should be directed at Timetrics, the corporate entity, not at her individually.  (Pl. Mot. To Strike at 3-4.) Larkin's allegations, however, address Kumaran's individual actions and statements.[4] (*See, e.g.*, Counterclaims ¶ 23.)  A claim for fraud may be brought against a corporate officer individually.  *See Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) ("officers and directors of a corporation may be held liable for fraud if they participate in it or have actual knowledge of it") (brackets omitted); *see also Coughlan v. Jachney*, 473 F. Supp.3d 166, 193 (E.D.N.Y. 2020) ("under New York law, 'corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally'") (quoting *Pludeman v. Northern Leasing Systems*, 10 N.Y.3d 486, 491, 860 N.Y.S. 422, 890 N.E.2d 184 (2008)).[5]  In any event, any such argument about the viability of Larkin's claims against Kumaran are more appropriately addressed on a motion to dismiss or summary judgment, not the instant motion to strike.

Accordingly, Kumaran's motion to strike paragraphs 5-9 and 23-25 regarding Timetrics' goods and services is denied.

---

[4] According to Kumaran's allegations, Timetrics is not a standalone corporation, but rather the d/b/a name of The A Star Group, Inc.  (*See* FAC at 1.)  Accordingly, for purposes of Kumaran's argument, the Court understands A Star Group to be the relevant corporate entity.

[5] In her separate Motion for Sanctions, Kumaran also seeks to strike the Counterclaims relating to Timetrics for failure to join Timetrics as a necessary party.  (Pl. Mot. For Sanctions, Ex. 1, at 14.)  For the reasons discussed below in regard to NAM, that argument provides no basis to strike.

### 3.    NAM

Kumaran argues paragraphs 42-57 and 89-94 of the Counterclaims concerning NAM should be stricken because (1) NAM was not joined as a necessary party; (2) the underlying documents upon which Larkin's claim relies are void under the Statute of Frauds; and (3) the claims are time-barred.   (Pl. Mot. To Strike at 5.)   Kumaran's arguments again fail.

First, Kumaran argues that NAM is a necessary party to Larkin's counterclaims concerning NAM.   (Pl. Mot. To Strike at 5.)   Under Federal Rule of Civil Procedure 19 ("Rule 19"), a court "must determine whether an absent party belongs in the suit." *Viacom International, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).   A party must be joined if, "in that person's absence, the court cannot accord complete relief among existing parties," or, "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect the interest; or ... leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."   Fed. R. Civ. P. 19(a)(1).   Kumaran's motion, however, is to strike pursuant to Rule 12(f), not to dismiss for failure to join a necessary party under Rule 19.   Any question about necessary parties should be addressed in a motion to dismiss or motion for joinder, not by a motion to strike allegations.    In any event, Larkin's Counterclaims concerning Kumaran's misrepresentations about NAM are directed to Kumaran's statements and actions

individually, not NAM.[6]  (*See* Counterclaims ¶¶ 42-57 (alleging that Kumaran made false representations regarding NAM).)  That does not make NAM a necessary party. *See Cohen*, 25 F.3d at 1173 (upholding fraud claim where individuals but not their corporate entity were named as defendants and stating "[s]ince the amended complaint alleged that the [individual defendants] themselves made misrepresentations, their positions as … officers and directors afforded no basis for dismissal").

Second, Kumaran argues that the Statute of Frauds and judicial estoppel bar Larkin from asserting NAM-related allegations, particularly those concerning communications specifying the terms of Larkin's capital contributions.  (*See* Pl. Mot. To Strike at 5-6; Pl. Mot. For Sanctions at 2-4.)  Kumaran's argument is premised on the District Court's earlier decision on Defendants' motion to dismiss Kumaran's claims to enforce the Agreement in Principle.  (*See* Dkt. 124 at 14-16 (dismissing Kumaran's claim for breach of Agreement in Principle as void under Statute of Frauds because Larkin's purported obligation under the agreement – to make capital contributions over two years – could not be performed within one year).)  By Kumaran's reasoning, Larkin is barred from relying on communications underlying the Agreement in Principle because the earlier decision dismissed Kumaran's claim based on the Agreement in Principle due to the Statute of Frauds.  (Pl. Mot. To Strike at 5-6; Pl. Mot. For Sanctions at 15.)

---

[6] Although the Counterclaims do not appear to allege liability based on piercing the corporate veil, Kumaran references the concept in her briefing.  (Pl. Reply Mot. For Sanctions at 10.)  In any event, under New York law, corporations are not automatically considered necessary parties to a fraud action seeking to impose liability on a corporation's officers and principals under a veil piercing theory.  *See Ebin v. Kangadis Family Management LLC*, 45 F. Supp.3d 395, 397-98 (S.D.N.Y. 2014) (finding it was not necessary to join corporation in fraud action against corporate officers).

Kumaran's argument is misguided.  The Statute of Frauds applies to contracts and provides that "[e]very agreement ... is void, unless it ... be in writing, and subscribed by the party to be charged therewith ... if such agreement ... [b]y its terms is not to be performed within one year from the making thereof."  N.Y. Gen. Oblig. Law § 5-701(a)(1).  Larkin's Counterclaims with respect to NAM do not assert breach of contract or seek to enforce a contract.  While they do implicate documents and communications that were relevant to the parties' arguments about enforceability of the Agreement in Principle, those documents and communications are not themselves barred by the Statute of Frauds and may still serve as support for Larkin's fraud claim.

Finally, Kumaran argues the claims related to NAM are time-barred because they date back to 2016 when Larkin made his last payment to Kumaran.[7]  (Pl. Mot. To Strike at 5.)  That argument overlooks that the Counterclaims are asserted in response to Kumaran's affirmative claims, the complaint for which was filed in 2019.  As Larkin correctly observes, "[a] counterclaim that is asserted in an answer ordinarily relates back to the date of the filing of the complaint that it counters."  *Park Avenue Consulting Group v. Newgold, Inc.*, No. 08-CV-1850, 2008 WL 4386766, at *1 (S.D.N.Y. Sept. 23, 2008).  In "New York, counterclaims based upon the same transaction mentioned in the complaint may be asserted, notwithstanding the fact that the statute of limitations had run between the times that the complaint and the answer were served."  *Diematic*

---

[7] Although statute of limitations arguments typically are fodder for motions to dismiss under Federal Rule of Civil Procedure 12(b), both parties have engaged on the issue, and the Court deems it most efficient to address the issue on the present motion.

*Manufacturing Corp. v. Packaging Industries, Inc.*, 412 F. Supp. 1367, 1374 (S.D.N.Y. 1976).

Here, Larkin asserts Counterclaims for fraud and conversion. (*See* Counterclaims at 54-55.)  Claims for fraud have a six-year statute of limitations. *See* NY CPLR 213(8) ("the time within which [an action for fraud] must be commenced shall be the greater of six years from the date the cause of action accrued").  Claims for conversion have a three-year statute of limitations. *See* NY CPLR 214(3) ("an action to recover a chattel or damages for the taking or detaining of a chattel" must be commenced "within three years").  Because Kumaran filed the action on September 6, 2019, within three years of Larkin's last payment to Kumaran on October 14, 2016, Larkin's claims for fraud and conversion are timely.

Larkin also asserts a claim for violations of the Securities Act. (Counterclaims at 55-56.)  Claims for unregistered securities under the Securities Act are subject to a three-year statute of repose.  15 U.S.C. § 77m ("In no event shall any such action be brought to enforce a liability created under section 11 or section 12(a)(1) more than three years after the security was bona fide offered to the public").  As a statute of repose, Section 77m is "not subject to equitable tolling" and cannot be "circumvented by application of the 'relation back' doctrine under Federal Rule [of Civil Procedure] 15(c)." *Francisco v. Abengoa, S.A.*, 624 F. Supp.3d 365, 388 (S.D.N.Y. 2022); *see also In re Lehman Bros. Securities and Erisa Litigation*, 800 F. Supp.2d 477, 483 (S.D.N.Y. 2011) ("[T]he Rule 15(c) relation back doctrine does not apply to statutes of repose").  Larkin alleges that Kumaran conducted additional offerings of the NAM securities from approximately October 26, 2016 to June 22, 2020.  (Counterclaims ¶¶

79-81.)  The Counterclaims were filed more than three years later on May 16, 2024.

Larkin's claims under the Securities Act therefore are barred as untimely.

Accordingly, Kumaran's motion to strike the Third Counterclaim for violations of

the Securities Act is granted.  However, Kumaran's motion to strike paragraphs 42-57

and 89-94, as they relate to the Counterclaims for fraud and conversion regarding NAM,

is denied.

### 4.    Agreement In Principle

Lastly, Kumaran seeks to strike the allegations in Counterclaim paragraphs 58-

88 concerning the Agreement in Principle as void under the Statute of Frauds.  (Pl. Mot.

To Strike at 5-6.)  As with her NAM-related argument, Kumaran argues that Larkin

should not be allowed to plead information based on the email and oral communications

between Larkin and Kumaran that were the foundation for the Agreement in Principle.

(*Id*.)  For the same reasons discussed above, Kumaran's motion to strike paragraphs

42-57 and 89-94 regarding the Agreement in Principle are denied because the Statute

of Frauds is inapplicable to Larkin's common law fraud claim.

In the alternative, Kumaran argues that should the Counterclaims concerning the

Agreement in Principle survive, her claims concerning the Agreement in Principle that

were dismissed should be reinstated.  (*Id.* at 7-24.)  That request, however, is not

appropriately considered on the instant motion.    A motion to strike is not the proper

vehicle to reinstate claims that have been dismissed by a previous motion.  Rather,

Kumaran would need to file a motion to amend her complaint pursuant to Federal Rule

of Civil Procedure 15.  The Court therefore does not address the merits of the request

other than to note that because Larkin does not seek to enforce the Agreement in

Principle or claim breach of contract, Kumaran's alternative request for reinstatement of

her dismissed claims appears to be without merit.  Accordingly, Kumaran's motion to reinstate her claims concerning the Agreement in Principle is denied.

## II.  MOTION FOR SANCTIONS

Kumaran seeks sanctions against Defendant Larkin and his attorneys Westerman Ball LLP, and Michael Kwon, Esq., for filing the Counterclaims.  The motion should be denied without prejudice as premature.

### A.    Standards For Sanctions Under Rule 11

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus ... streamline the administration and procedure of the federal courts."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 2454 (1990).  Rule 11 accomplishes this objective by authorizing courts to impose sanctions "when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous.*"  Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (citing Fed. R. Civ. P. 11(b)-(c)).  Rule 11 "is targeted at situations 'where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands.'"  *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (quoting *Associated Indemnity Corp. v. Fairchild Industries, Inc.*, 961 F.2d 32, 34 (2d Cir. 1992)).  "With respect to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'"  *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) (quoting *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 388 (2d Cir. 2003)).

Even where a court finds that Rule 11 has been violated, "the decision whether or not to impose sanctions is a matter for the court's discretion." *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004); *see also Ipcon Collections*, 698 F.3d at 63 ("Sanctions may be – but need not be – imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous"). In exercising that discretion, "a district court is obligated to exercise caution and restraint." *Kingvision Pay-Per-View Ltd. v. Ramierez*, No. 05-CV-2778, 2005 WL 1785113, at *4 (S.D.N.Y. July 28, 2005). Indeed, it is well settled that the imposition of sanctions is reserved for "extreme cases." *Sorenson v. Wolfson*, 170 F. Supp.3d 622, 626 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x. 33 (2d Cir. 2017); *see also Galin v. Hamada*, 283 F. Supp.3d 189, 201 (S.D.N.Y. 2017) ("Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances") (internal quotation marks and citation omitted), *aff'd*, 753 F. App'x 3 (2d Cir. 2018).

**B.    Kumaran's Motion Is Premature**

Kumaran argues that sanctions are warranted for four reasons. First, because Larkin's law firm made allegations against a *pro se* party concerning a corporate entity. Second, because the Counterclaims concerning the Agreement in Principle are futile and void under the Statute of Frauds. Third, because Kwon, Larkin's attorney, performed no pre-filing inquiry or investigation prior to filing the Counterclaims. And finally, because the Counterclaims include allegations that "pre-date" the Settlement Agreement and which were therefore released. It is far too early to make a sanctions determination based on those arguments.

The Advisory Committee Notes for Rule 11 explain that "Rule 11 motions ... should not be employed ... to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *see also Jawbone, LLC v. Donohue*, No. 01-CV-8066, 2002 WL 1424587, at *6 (S.D.N.Y. June 28, 2002) (citing *id.*). "Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss, a motion for a more definite statement, or a motion for summary judgment." *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp.2d 407, 416 (S.D.N.Y. 2003) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1336 (2d ed. Supp. 2003)).

Kumaran's motion for sanctions seeks to accomplish exactly what Rule 11 is meant not to do. Kumaran has not moved to dismiss the Counterclaims or for summary judgment. Resolving Kumaran's arguments for sanctions at this stage in the litigation would require the Court to make a dispositive determination on the merits of Larkin's counterclaims. *See Esposito v. Suffolk County Community College*, No. 16-CV-4833, 2019 WL 1044099, at *6 (E.D.N.Y. March 4, 2019) ("Essentially, the Defendants are asking the Court to award sanctions because they believe the merits of their defense. However, resolving the Defendants' arguments would require the Court to make a factual determination regarding a claim essential to the merits of the action, an issue for which a Rule 11 motion is an inappropriate vehicle"). The Court therefore should defer consideration of sanctions until the record has been more fully developed. *See Safe-Strap Co.*, 270 F. Supp. 2d at 416 ("Courts should, and often do, defer consideration of certain sanctions motions until the end of the litigation to gain a full sense of the case

and to avoid unnecessary delay of disposition of the case on the merits.  This is a sensible practice where as here the thrust of the sanctions motion is that institution of the case itself was improper") (brackets omitted).[8]

Accordingly, Kumaran's motion for sanctions is denied, although without prejudice to renew.  *See Kim v. Kini LLC*, No. 20-CV-6009, 2022 WL 3219290, at *5 (E.D.N.Y. June 13, 2022) (granting leave to renew motion for sanctions once motion is resolved on the merits), *R. & R. adopted*, 2022 WL 4596746 (E.D.N.Y. Sept. 30, 2022).

## CONCLUSION

For the foregoing reasons:

1.    Kumaran's motion to strike Larkin's Third Counterclaim for violation of the Securities Act is GRANTED.

2.    Kumaran's motion to strike the remaining Counterclaims and the allegations supporting them is DENIED.

3.    Kumaran's motion for sanctions is DENIED without prejudice.

To the extent not discussed herein, the Court has considered all of the parties' arguments and determined them to be either moot or without merit.

---

[8] Kumaran has requested the Court order Kwon to submit "a pre-filing inquiry affidavit behind the[] frivolous allegations" in the event the Court defers her Motion for Sanctions. (Pl. Reply Mot. For Sanctions at 11.)  "Rule 11 imposes a duty on every attorney to conduct a reasonable pre-filing inquiry into the evidentiary and factual support for the claim, and to certify that the legal arguments are supported by existing law, and therefore that they are not frivolous."  *Capital Bridge Co. v. IVL Technologies*, No. 04-CV-4002, 2007 WL 3168327, at *10 (S.D.N.Y. Oct. 26, 2007) (citing Rule 11(b)).  An attorney so certifies by signing the pleading and "presenting [it] to the court."  Fed. R. Civ. P. 11(b).  Kumaran's request for a "pre-filing inquiry affidavit" is putting the cart before the horse – there is no basis to require such an affidavit unless and until the Court finds the Counterclaims to be frivolous.  Accordingly, the request is denied.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:  January  10, 2024
        New York, New York