IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| SAMANTHA SIVA KUMARAN |
| ,                      et al |
| *Plaintiffs,* |
| |
| -against- |
| |
| NORTHLAND ENERGY TRADING, LLC |
| et al |
| *Defendants.* |

Case No:1:19:CV:08345-MKV-RWL


**PLAINTIFF KUMARAN'S COMBINED
OPPOSITION TO HE MOTION
TO WITHDRAW AND OPPOSITION
TO MOTION TO STAY**


### PLAINTIFF KUMARAN'S COMBINED OPPOSITION TO THE MOTION TO WITHDRAW AND OPPOSITION TO THE MOTION TO STAY[1]


February 5, 2025


Respectfully submitted,

/Samantha S. Kumaran
Samantha S. Kumaran
Individual Pro-Se Plaintiff
samantha@timetricsrisk.com
212-431-5098

---

[1] Because this is a combined opposition Plaintiff has included 25 pages and 2 pages to oppose both motions together.

# TABLE OF CONTENTS

A.  INTRODUCTION………………………………………………………………Pg.1

B.  BACKRGROUND……………………………………………………………..Pg.1

LEGAL STANDARD………………………………………………………...Pg.16

I – FEE DISPUTE ON A CONTIGENCY FEE
IS NOT GROUNDS FOR
WITHDRAWAL…………………………………………………………...……..Pg.18

    A – THERE ARE NO LEGAL FEES DUE………………………………………Pg.18

    B – NEW YORK PART 137 ALLOWS FOR MANDATORY
    RESOLUTION OF A FEE DISPUTE /
    MANDATORY MEDIATION PROVISION……………………………..……….Pg.20

II – AARON PIERCE HAS NOMINAL TIME
REQUIRED OF HIM IN THESE CASES………………………...……………………Pg.20

    B – COMPLETE FAMILIARITY WITH
    THE ISSUES, PARTIES, AND STRATEGY………………………………………..Pg.22

    C – PIERCE AND KWOK ARE A LARGE LAW FIRM…………..………………..Pg.23

III – NO OTHER GROUNDS FOR WITHDRAWAL ARE PRESENT

    A – NO LEGAL STRATEGY DISAGREEMENT,
    NO DIFFICLTY IN COOPERATION,
    NO IRRECONCILABLE DIFFERENCES………………………………………………Pg.24

B – NO DISAGREEMENT ON THE MERITS,
NO LACK OF COOPERATION,
NO DISAGREEMENT ON LEGAL STRATEGY…………………………………..Pg.24

C – NO PROBLEMS WITH COLLABORATION
 OR COMMUNICATION………………………………………………………………Pg.24

D – NO DISAGREEMENT ON THE MERITS,
NO LACK OF COOPERATION,
NO DISAGREEMENT ON LEGAL STRATEGY…………………………………Pg.24

E – NO CONFLICT OF INTEREST IN LEGAL STRATEGY……………………..Pg.25

F – COUNSEL IS REQUIRED TO MEDIATE

AND COMMUNICATE FIRST…………………………………………………..Pg.25

IV – 4-WEEK STAY FOR MR. PIERCE TO
RECOVER IS MORE APPROPRIATE………………………………………………………Pg.25

V – PREJUDICE TO THE CASES, NRCM AND ASTAR………………………….....Pg.26

VI – NO CHARGING LIEN………………………………………………………………Pg.26

CONCLUSION……………………………………………………………………………Pg.27

# TABLE OF AUTHORITIES

*Malarkey v. Texaco, Inc.*,
  81 Civ. 5224 (CSH), 1989 WL 88709, at *1 (S.D.N.Y. July 31, 1989)………………….Pg.16

*Rindner v. Cannon Mills, Inc.*,
  127 Misc. 2d 604, 605, 486 N.Y.S.2d 858 (Sup. Ct. Rockland Cty. 1985)………………Pg.16

*United States v. Vilar*,
  731 F.3d 255, 257 (2d Cir. 2013)……………………………………..……………………Pg.16

*Wilson v. Pasquale's DaMarino's, Inc.*,
  No. 10 CIV. 2709 (PGG), 2018 WL 4761574, at *8 (S.D.N.Y. 2018)……………..……Pg.16

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  657 B.R. 382, 387 (Bankr. S.D.N.Y. 2024)……………………………………………...Pg.16

*Malarkey*,
  1989 WL 88709, at *2……………………………………………………………………..Pg.16

*Rophaiel v. Alken Murray Corp.*,
  No. 94 Civ. 9064, 1996 WL 306457, at *2 (S.D.N.Y. June 7, 1996)……………………Pg.16

*Whiting v. Lacara*,
  187 F.3d 317, 320–21 (2d Cir. 1999)……………………………………………………Pg.17

*Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*,
  2014 WL 1087934, at *1 (S.D.N.Y. Mar. 19, 2014)……………………………………..Pg.17

*Stair v. Calhoun*,
  722 F. Supp. 2d 258, 264 (E.D.N.Y. 2010)……………………………………………..Pg.17

*Albert*,
  277 B.R. at 47……………………………………………………………………………Pg.17

*Mendez v. K&Y Peace Corp.*,
  2017 WL 11808872, at *1 (S.D.N.Y. Sept. 27, 2017)…………………………………..Pg.17

*Bruce Lee*,
  2014 WL 1087934, at *1………………………………………………………………….Pg.17

*S.E.C. v. Pentagon Cap. Mgmt. PLC*,
  2013 WL 5815374, at *4 (S.D.N.Y. Oct. 29, 2013)…………………………….……….Pg.17

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  657 B.R. 382, 387–88 (Bankr. S.D.N.Y. 2024)…………………………….……………Pg.17

*SEC v. Great American Technologies, Inc.,*
    2009 WL 4885153, at *5 (S.D.N.Y. Dec. 15, 2009)……………………………………Pg.17

*Foster v. City of New York,*
    2000 WL 145927, at *4 (S.D.N.Y. Feb. 7, 2000)………………………………………Pg.17

*Farmer v. Hyde Your Eyes Optical, Inc.,*
    60 F. Supp. 3d 441, 445 (S.D.N.Y. 2014)………………………………………………Pg.17

*Naguib v. Pub. Health Solutions,*
    2014 WL 2002824, at *1 (E.D.N.Y. May 15, 2014)……………………………………Pg.17

*WB Bridge Hotel LLC,*
    656 B.R. 733, 743 (Bankr. S.D.N.Y. Feb. 5, 2024)……………………………………..Pg.17


*Albert,*
    277 B.R. at 45 …………………………………………………………………………Pg.18

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
    657 B.R. 382, 388 (Bankr. S.D.N.Y. 2024)………………...……………………………Pg.18

*Albert,*
    277 B.R. 38, 44 (Bankr. S.D.N.Y. 2002)………………………………..…………………Pg.18

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
    657 B.R. 382, 389–90 (Bankr. S.D.N.Y. 2024)………………………………………..Pg.18

*Whiting,*
    187 F.3d at 320-21 ……………………………………………………………....…Pg.18

*Malarkey v. Texaco, Inc.,*
    1989 WL 88709, at *2 (S.D.N.Y. July 31, 1989)………………………………………Pg.18

*McGuire v. Wilson,*
    735 F.Supp. 83 (S.D.N.Y.1990)………………………………………………………...Pg.18

*Statue of Liberty–Ellis Island Found., Inc.,*
    110 F.R.D. 395 (S.D.N.Y.1986)……………………………………………….....Pg.18

*The Charles Weiner Corp. v. D. Jack Davis Corp.,*
    113 Misc.2d 263, 266, 448 N.Y.S.2d 998, 1000 (Civ.Ct.1982)……………………………Pg.19

*Meyers,*
    120 B.R. 751, 753 …………………………………………………………….....Pg.19

Bankr. S.D.N.Y. 1990

*Shaw v. Manufacturers Hanover Trust Co.,*
    *68 N.Y.2d 172, 499 N.E.2d 864, 507 N.Y.S.2d 610* (1986)……………………………Pg.19

*Jacobson v. Sassower,*
    *66 N.Y.2d 991, 489 N.E.2d 1283,* 499 N.Y.S.2d 381 (1985)…………………………..Pg.19

*Greenberg v. Bar Steel Construction Corp.,*
    22 N.Y.2d 210, 239 N.E.2d 343, 292 N.Y.S.2d 404 (1968)……………………………Pg.19

*B–T Productions, Inc.,*
    104 B.R. 596 (Bankr.W.D.N.Y.1989)……………………………………………………..Pg.19

*Farmer v. Hyde Your Eyes Optical, Inc.,*
    60 F. Supp. 3d 441, 445 (S.D.N.Y. 2014)………………………….………………Pg.24

*City Merch. Inc. v. Tian Tian Trading Inc.,*
    No. 1:19-CV-09649-MKV, 2021 WL 119075, at *2 (S.D.N.Y. 2021)……………..……..Pg.24

*Whiting,*
    187 F.3d at 322…………………………………………………………....………....Pg.24

*Marciano,*
    2016 WL 11703590, at *2………………...……………………….…………………Pg.24

*Naguib,*
    2014 WL 2002824, at *1……………………………………...……………...Pg.24

*Liang v. Lucky Plaza Rest.,*
    2013 WL 3757036, at *2 (S.D.N.Y. 2013)………………………….…………..Pg.24

*Munoz v. City of New York,*
    2008 WL 2843804, at *1 (S.D.N.Y. 2008)………………………….……...……..Pg.24

*City Merch. Inc.*
    2021 WL 119075, at *4 (S.D.N.Y. 2021)………………………….…………….Pg.24

*Naguib v. Pub. Health Sols.,*
    2014 WL 2002824, at *1 (E.D.N.Y. May 15, 2014)…………………….…………Pg.24

*Munoz v. City of New York,*
    2008 WL 2843804, at *1 (S.D.N.Y. 2008)………………………………...……………Pg.25

*Diarama Trading Co. v. J. Waiter Thompson U.S.A., Inc.,*
    2005 WL 1963945, at *2 (S.D.N.Y. 2005)………………………………………Pg.25

*Wilson v. Pasquale's DaMarino's, Inc.,*
    2018 WL 4761574, at *9 (S.D.N.Y. Sept. 2018)………………………………….Pg.25

*Healey v. Chelsea Resources, Ltd.,*
    947 F.2d 611, 623 (2d Cir.1991)…………………………………………………..Pg.25

<u>*Whiting*</u>
    187 F.3d 317, 322–23 (2d Cir. 1999)……………………………………………...Pg.25

*Calloway v. Marvel Entertainment Group,*
    854 F.2d 1452, 1471 (2d Cir.1988)………………………………………………Pg.25

*Wilson v. Pasquale's DaMarino's, Inc.,*
    2018 WL 4761574, at *10 (S.D.N.Y., 2018)………………....…………………Pg.26

*Brown v. Nat'l Survival Games, Inc.,*
    *No. 91-CV-221, 1994 WL 660533, at *3 (N.D.N.Y. Nov. 18, 1994)*……………………Pg.27

## INTRODUCTION

The motions to be relieved as counsel in this and several actions should be denied as the law firm of Pierce and Kwok agreed to take these cases mostly on a contingency fee basis. As the law firm negotiated a reduced scope of work, and was paid upfront, there are no further monies due, this attempt to withdraw is in reality for the purpose to get out of the contingency fee portion, in a manner that materially prejudices its clients, and was filed  the day after an adverse judgment was issued in case 20-CV-3873 due to "improper filings" by the firm. For the reasons stated herein, there is no good cause for withdrawal and the law firm has other attorneys handling this case, so to the extent Mr. Pierce has a temporary issue, he was not materially involved in the filings over the last several months. Mr. Weishoffer is the primary attorney on the case.

## BACKRGROUND

On January 21, 2025 Mr. Pierce, a partner at the law firm Pierce and Kwok filed a motion to withdraw from this action, and several other actions. He cited in his papers three reasons, what he believes are grounds for withdrawal (1) non-payment of fees (2) a family medical situation, which appears to be related to his aging-father having a hospitalization and (3) some medical surgery which temporarily requires him to take some medication. None of these are grounds to withdraw as the law firm of Pierce and Kwok are on a majority contingency fee for these cases and based on the scope of work that has been reduced, their fees have been paid in full. Plaintiffs oppose this motion as it is a trumped up to try to get out of a contingency fee arrangement which they announced in May 2024 is "too much work".

While I have sympathized with his father's illness, as my parents also have had several medical emergencies and life changing events this year, including several hospitalizations and surgeries that this Court knows about, issue (2) is not grounds to change counsel as we have a commercial contract with Peirce and Kwok. His parents' health is no basis for withdrawal and is an excuse to be relieved from a contingency fee case. Further people's family issues and parental issues should have no impact their law firm. Notably he is not shutting down his law firm or his practice, due to his faither's medical issues.

In addition, as explained infra as to (1) there is no non-payment of fees. Plaintiffs have paid this law firm upfront in full and as stated in the retainer "all remaining hours are on a contingency basis." As will also be explained below, after taking several months of payments and tens of thousands of dollars upfront as a fixed fee on a specified scope of work, which anticipated the law firm would provide hundreds of hours of document review, the primary basis of the retainer was that the firm's services

would include **all** document discovery, **all** depositions and summary judgment filings for at least four(4) Federal Court litigations. In May 2024 after taking full-payments from Clients, Mr. Pierce unilaterally told the client to terminate the retainers and stated he did not have time to read *any* the document for discovery in *any* of the cases, did not have time to do depositions, and demanded the Client retain co-counsel to do that part of the work. These terms were not part of the retainer and it was an anticipatory breach. Williston on Contracts, § 39:37 (4th ed. 2000) ("Where one party to a contract expressly or by implication repudiates the contract before the time for his or her performance has arrived and before a default justifying the repudiation has occurred, the other party is relieved from performance on his or her side") (footnote omitted); John D. Calamari & Joseph M. Perillo, The Law of Contracts § 12.8, at 485 (4th ed. 1998) ("The repudiation, however, relieves the party of any necessity to tender performance") (footnote omitted).*In re Food Mgmt. Grp., LLC*, 372 B.R. 171, 191 (Bankr. S.D.N.Y. 2007)

The cancellation of discovery and refusal to do depositions, and other material changes to required Plaintiffs to retain "co-counsel" to do all the heavy lifting in the cases, was a reduction of about 80% of the scope of work, and in some cases 90%. Based on this, any remaining amounts due under the contracts were zero. This was a material breach of the retainer, as the price negotiated was primarily related to the firm's commitments to handle multiple discoveries, thousands of documents in several cases, and depositions. For example and without limitation, in the Northland case 19-V-8345 there were already filed on the docket since December 2020,  7-8 depositions listed *prior* to the firm taking the case, and 1,000's of documents already produced in 2021. Therefore prior to taking the cases Mr. Pierce knew of the amount of work in the cases and never advised the clients of any problems with his time commitments.

When the Client advised again that eliminating the document review was not what the parties agreed to, that the firm agreed do "all additional hours on contingency", Mr. Pierce stated on or around May 14, 2024 when two in-person conferences had been scheduled, he advised the client he intended to use medical excuses and "personal issues" to tell the Courts he needed to be relieved from the cases. This was another breach of the retainer. The Clients advised him that there was no justification for that, and they were not aware of any medical issues or personal issues in May 2024, yet Mr. Pierce stated he would tell that to the Court in May 2024 to get himself off the case. Plaintiffs advised the law firm that if he embarrassed the clients at a District Court conference, and cost the parties (including Defendants) time

to fly into a conference from out of state, to blind-sight everyone with made up excuses of personal issues to get out of a contingency fee.

The law firm demanded in May 2024 that Plaintiffs modify the retainer and then hire "co-counsel" to take over majority of the parts of the retainer that they were refusing to do, such as reading all the documents and handling depositions. These terms were not contemplated by the retainer. The firm continued to send hourly billing statements and appeared to convert their compliance with the retainer to an hourly billing – which Plaintiffs did not agree to - while completely ignoring the contingency fee portion.  Plaintiffs and various stakeholders to the entities requested Mr. Pierce itemize his plan for depositions in the cases prior to sending any more checks, and also advised it would be inequitable to have two firms get up to speed on document discovery. For example, if another law firm were brought into the case, and they had to invest hundreds of hours reading documents and familiarizing themselves with the cases to handle depositions, it was unclear what role Mr. Pierce would play and it would also be inconsistent to have his firm do one deposition and have other firms handle all the rest. When asked to submit his proposal on how the work sharing on depositions would be done, it was the law firm that did not respond to communications or questions to resolve it. It was thus in May 2024, that Plaintiffs first notified that they wanted to invoke Part 137 of the New York Rules, as Mr. Pierce's decisions violated the fee agreement and were also not contributing his share to the workload.

To cooperate in good faith with the law firm's request to change the scope, at Clients own time and expense, Plaintiffs in good faith, did in fact do a search for co-counsel, and one such attorney who was interested in handling the cases as co-counsel or otherwise, spoke to Mr. Pierce in or around July 2024. I was not on the call as I was dealing with my own family's medical issues in the UK. Dring a follow up call with Attorney 2, my understanding was that Attorney 2 was unwilling to work with Pierce and Kwok because the proposed work-share proposed by Pierce and Kwok was unreasonable and untenable for any co-counsel to work with them, as it involved everyone else doing the heavy lifting. Plaintiffs also noted that the work-load share between Co-Plaintiffs and the law firm also became inequitable, and Plaintiffs were told to take time of work, and lose tens of thousands of dollars, to carry all the work on everything "for fear" that Mr. Pierce did not have time to read the documents.  To this date, despite being midway through discovery in the Northland case, Pierce and Kwok are still not equitably sharing the work load with required time to read documents.

3

After attorney 2 spoke to the law firm, in July 2024, Plaintiffs in good faith agreed to modify the retainer and based on a reduction of scope, and Plaintiff did agree to remove discovery in 3 of the 4 cases, there are no further moneys due to the firm at all. Since then in August 2024, Mr. Pierce agreed with Plaintiffs the law firm would continue on a contingency and (a) complete the Northland case until Summary Judgement and (b) finish all filings related to the motions to vacate the arbitration in cases 20-CV-3873, 22-CV-1653, 24-CV-641 and 20-CV-3668, including any appeals, related to these Arbitrations, and finished up 24-1935/24-1936, 22-893 and any other appeals related to the arbitration. The parties agreed that once the Arbitration was vacated and there was a consolidation of these cases into one District, and there were no more issues of Arbitration left, that would be an appropriate changing point for counsel in the ADMIS/NFA/Vision. It was Plaintiff understanding that the retainer had been resolved.  This is why even on the law firm's affidavit it shows that there were no further communications with the Clients about issues with the retainer after July 2024. (*See* Attorney.Affidavit ¶9 - showing a gap in communications).

As a result of the August 2024 resolution, Plaintiff delayed filing any NY Part 137 fee dispute. It was only suddenly in December 2024, after two potential judgments were issued by Judge Woods in both cases 20-CV-3668 (which has subsequently been reversed) and another by M.J. Aaron in case 20-CV-3873 which was adverse to his clients NRCM and specifically flagged potential errors  in the work of Mr. Pierce, that he wanted to resume discussions to withdraw, this time saying he had "personal issues" and mentioned that a family member was sick, which I presumed is his father who has had some hospitalization. While again I have sympathized with his father's illness, it is the clients' position that this has no bearing on the commercial terms of or contract, and Pierce and Kwok maintain their practice in full. At no time did the law firm or Mr. Pierce discuss anything about any medical surgeries, spinal injuries or anything impairing his own ability to practice law.[1]

Moreover, as can be seen in Section II.A the time involvement in these cases since September 2024 of Mr. Pierce has been de minimis. Majority of the work by the law firm, has been consistently handled by Mr. Markus Weishoffer, who has been the primary attorney handling all aspects of all cases. There has been almost no communications or input from Mr. Pierce at all. The time sheets show for instance that in November 2024, Mr. Pierce spent "zero seconds" of billable hours even reading anything of the clients' matters and in December 2024 he only spend 0.7 of billable hours. All the other work is

---

[1] The only communications we received relating to personal issues were related to his father being sick.

being handled by Mr. Markus Weishoffer and clients never even see communications from the partners and are unaware of any important work being done by Mr. Pierce at all.  It is thus the clients' position that Mr. Pierce has not been needed by the client and has received no substantive legal advise at all to help in the cases from Mr. Pierce in well over six months.

As can be seen in the time frame, on January 3, 2025 the *only* communication the clients received from Mr. Pierce was that he was "off-the-clock" because he was "getting married" today. Plaintiffs again knew nothing about his personal matters and of course congratulated him on this event of getting married. There was also no prior disclosure to the clients that the attorney was out of the office getting married – and certainly no indication he was incapacitated. There was also *never* any discussion or disclosure about supposed surgeries or other medical incidents that would result in any impediment to the cases. Nothing was disclosed. The clients were *only* aware his father was in the hospital in December and wished him well on that recovery. Plaintiffs were under the impression, based on the emails that Mr, Pierce was out on his honeymoon in January and since Mr. Weishoffer had been solely handling the cases, the clients did not bother Mr. Pierce further.

On January 14, 2025, Mr. Pierce telephonically attend a discovery conference in case 19-CV-8345. Again no discussion was had related to any potential medical issues and Mr. Pierce did not say much on the call. Neither did Mr. Pierce apprise the Court, with the candor required, to notify them of any supposed medical issues or unavailability while a scheduling order was being discussed and admitted. On January 14, 2025 in case 19-CV-8345 the Court did in fact issue a scheduling Order (*See* Dkt 209) which had been discussed in the conference, with no objections raised by Mr. Pierce.

On January 15, 2025 because of the demands of discovery increasing, and the seriousness of the Northland case, Plaintiffs contacted Mr. Pierce to discuss the roles going forward in discovery, did in fact that the entities were willing to complete further payments once he had committed to the deposition and discovery schedules, and politely and <u>respectfully requested a phone call</u> from Mr. Pierce so that they could discuss the upcoming deadlines. Likewise, on the same day, they emailed him about an agreement to in the ADMIS/NFA/Vision cases once the arbitration motions were completed and also wanted to discuss how contingency fees would be share with new counsel. They did in fact propose substantial contingency fee sharing to Pierce and Kwok for their work on the arbitration which would be residual, once that portion of the work is completed.  Plaintiffs did request a telephone call, as per the mandatory

provisions of the retainer that client calls would be returned promptly. The law firm also has contractual terms in the retainer that any disputes would be submitted to mandatory mediation.

On January 15 Mr. Pierce indicated he was not willing to engage in any telephone calls to discuss the impending deadlines, breached further obligations stated he would just move to withdraw. That was not what the parties had agreed to. Because the law firm refused to have even a telephone conversation to discuss the discovery and deposition schedule, or any of the work-sharing agreements, Client filed a fee-dispute on January 15, 2025. (That has been submitted under seal). This discussions of going to New York Part 137 was fully discussed in May 2024, but delayed because it was understood an agreement had been made for the case.

Only the next day on January 16, 2025 after the fee dispute was filed, Mr. Pierce for the first time, and with no prior notice to the Clients, stated he had medical surgeries and was "incapacitated". The clients responded that this was the first they had ever heard about it. Again, since Mr. Weishoffer is the primary attorney handling the work, it should not have any impact to the work being submitted. Plaintiffs filed undersea a copy of the fee disputes with the Court on January 16, 2025 in cases 19-CV-8345 and also 20-CV-3668/20-CV-3873 that alerted the Court that Clients had invoked their rights to a fee dispute related to the contingency fee portion and the inequitable work-share between the law firm and Co-Plaintiffs .

On January 17, 2025, the District Court in case 20-CV-3873 issued an adverse Judgment (which is disputed) against Mr. Pierce's client Nefertiti Risk Capital Management, LLC ("NRCM") not on the merits of the filings or arguments raised, but due to what the Court cites as "improper filings" a potential service of process error by counsel and what amounts to legal error of the law firm.

On January 21, 2025 one business day after this judgment, which would materially and negatively impact his client with a $228,000 judgment, which the Court has indicated are for his own mis-filings, Mr. Pierce moved to withdraw from the cases, essentially abandoning his clients. The only reasons provided were those he stated in the motions. For example, despite multiple deadlines being due to vacate and reconsider that Judgement, (and the critical stage of his role with NRCM), none of his Affidavits in those cases, apprised the Court (and were incorrect) in the upcoming significant and material deadlines that he and his clients faced, to both reconsider and appeal those judgments. In addition, his papers completely overlooked the seriousness that Appeals would be due on the judgments, as well as a reconsideration motion to preserve his clients (NRCM's) rights pursuant to local Rule 6.1 which was due

on January 31, 2025 - none of which were mentioned in the papers.  As a result of this judgement, NRCM did speak (informally) to a few other lawyers given Mr. Pierce's motion to withdraw and abandon his client, including the Court's language that it was the law firm that made an error (and there was no ruling on the merits). Prior to the January 31 deadline, NRCM emailed Mr. Peirce for any of the legal research he did prior to February 16, 2024 and also sent his law firm several questions to respond to Dkt 330 which was the adverse judgment to NRCM. Mr. Pierce's firm failed to respond to any communications or provide the legal research requested. At the advise of another law firm, Plaintiffs was told to notify him that if this judgment was not removed, any other law firm would want their hourly fees to rectify Mr. Pierce's potential errors and the cost (hourly billing of any replacement firm) – specifically related to the motions to vacate and rectify any judgements, the reconsideration and appeals, need to be paid for by Mr. Pierce. It was one other law firm that said to protect NRCM's right[2], and since there was adverse judgment potentially due to legal error, Mr. Pierce should at least contact his insurance carrier to make sure if they wanted to contribute to the reconsideration filings due on January 31, 2025.

On January 31, 2025 to evade that deadline, Mr. Pierce (without consulting with the clients) instead filed a motion to stay these filings, which has not (yet) been granted, and was not filed in time to comply with the Court rules. On January 31, 2025 Plaintiff Kumaran filed reconsideration motions on the disputed Judgment, Mr. Pierce uploaded a letter joining on behalf of NRCM.[3] Despite clear written instructions from the Client for the law firm to file his letters joining by the January 31, 2025 deadline, his own copies were filed late as he claims he had internet issues.[4] Plaintiffs also take note, that this is not the first time, a contingency fee firm (e.g. Randy Kleinman) in the cases 20-CV-3668 has tried to evade sanctions or adverse conduct, by hastily moving to withdraw, making up issues in their papers. In that case an ethics expert, Nicole Hyland, provided a report that argued Kleinman's conduct violated rules of professional conduct. (*See* Dkt. 339-1, Case 20-CV-3668).

---

[2] There was no threat of litigation, but simply complying with Plaintiffs was advised by another firm, to protect NRCM's rights, that the carrier should be notified in case there were costs and expenses to vacating any judgment and that NRCM was not able to have to pay another law firm to pay to rectify anything Mr. Pierce did. As shown in the affidavit, Mr. Pierce stated it would be better he handled it, and to which Plaintiffs agreed.

[3] The motion to vacate does not address the real concerns what caused the fee dispute are inequitable work-sharing between the firm and Co-Plaintiffs and for which refunds and credits are due from the law firm to the Co-Plaintiff. It should not be incumbent on Pro-Se Kumaran to take a full day of work, to handle the law firm's missed deadlines or rectfy any other errors caused by the law firm.

[4] To this date, Mr. Pierce has not responded to questions about the work he did in February 16, 2024 and research prior to filing the motions to vacate. As a client, NRCM believe it is entitled to those communications to protect its interests.

The Court scheduled responses to this motion to withdraw are February 5, 2025. The Part 137 Fee dispute is ongoing and resolved.[5] Among the many reasons for opposing this motion, an attorney and his law firm cannot abandon his client, on work he has committed to do on contingency, or for work that he already undertook and that may need to be remedied. The fees were paid in full to handle this portion of work, and for the last several months, nearly all the work from the firm's side is being handled by Mr. Markus Weishoffer. The law firm is up to speed on all the moving parts of these cases, all aspects of these cases, including the nuances of the opposing counsel, the core arguments of law and issues on the table, and clients also have spent substantial amounts of time bringing the law firm up to speed.

As the law firm concedes in Affidavit ¶5 - the working relationship between Plaintiffs and the law firm, has been very productive (up until this recent January 15 incident). The parties collaborate well, there has been no dischord whatsoever on legal strategy, or the arguments being raised. The law firm understands the nuances of the case, and the players involved, and there is no disagreement on the law. Moreover, there has been coordination and collaboration between the firm and Plaintiffs, and several deadlines up until this recent incidence of his father getting sick (which I am sorry to hear about) – with the parties advancing this case swiftly and expeditiously.

Plaintiffs and the law firm are also on the same page, and also hare concerns with the law firm, that in the case 19-CV-8345 are deliberately stalling discovery which on January 14, 2025 led to an Order admonishing the Defendants for ongoing use of boilerplate responses. This has attributed to over six months of delays to obtain discovery in the Northland case.  Simply because opposing counsel are delaying discovery, which adds time, cost and expense to Plaintiffs side and the attorneys, this should also not be grounds for a contingency firm to withdraw, as there can be no artificial timeline to when he is angst with the case taking too long. This is precisely the gamesmanship of opposing counsel (Mr. Kwon) to drive up costs to plaintiffs to thus make it cost prohibitive to enforce their rights. The delays in discovery in the Northland case and the former comments by counsel regarding obligations in the Northland case (hot having the time to do document review and depositions) are also not grounds to withdraw in all these cases. The Court must enforce their commitments under the retainer, that this firm has agreed to take "all additional hours on a contingency" and give then changes in scope to eliminate discovery in 3 out of 4 cases, and the inequitable work sharing that Co-Plaintiffs have undertaken, and

---

[5] The law firm has already discussed and was already aware that Client intended to file a NY Pary 137 as the viable way to resolve any fee disputes as early as May 2024, and the contract has a mandatory mediation provision as well.

the de minimis hours of Mr. Pierce (approximately 1-2 hours a month at most), these cases should not be a hardship on him. Clients have in fact argued that refunds[6] are due back om the law firm given the comparative sharing of work, between his firm and Co-Plaintiffs which was also exceeding the responsibilities in the engagement.

Plaintiffs have stated in affidavit that Mr. Markus Weishofer is the primary attorney who has handled majority of the work to date, and is most familiar with the case and to whom legal counsel is relied upon. (not Mr. Pierce). It would be extraordinarily prejudicial to the clients to lose the associate on this case. If Mr. Pierce needs a four-week leave of absence to recover from surgery, Plaintiffs would gladly have agreed to that – and would barely notice his absence - given the little amount of work he did. For instance the time sheets in November 2024 show he contributed "0" (zero) seconds on the cases – dispute dozens of filings and hundreds of pages of filings in the two Second Circuit court of Appeals 22-893 and 24-1935/1936 – all of which were handled exclusively by Mr. Wesihoffer., In December, Mr. Pierce only contributed a total of 0.7 hours on all four cases, which was for one meet and confer with opposing counsel in the Northland case . That means in two months, Mr. Pierce has spent less than 1 hour on four (4) Federal Court litigations and three (3) Second Circuit Appeals – and it would hard for the client to state he is not really involved in this cases. Further there would be no hardship, given the miniscule amount of work that is being handled. This amount of time, there are no emails from him to the client, questions are not responded to by him, supports that Mr. Pierce is not the primary real attorney on the cases and has not made any substantive communications on these filings. The emails showing Plaintiffs dealings in back-and-forth and also as supported by time-sheets it is Mr. Markus Weishoffer and *not* Mr. Pierce doing the work. The attorney the clients have developed substantial relationships with in reliance on the work is Mr. Weishoffer and this attorney does not have any ailments, personal issues, medical issues, and none have been disclosed in the moving papers. It is not uncommon for associates to handle cases. In the Northland case, the associate Mr. Dylan Cruthers is actively involved in the case, and since Mr. Weishoffer is the primary person involved in the deficiency notices, there is no reason why an associate cannot equitably advocate for the clients. The Clients have full consent for this.

Clients also respectfully alert the Court, that there was absolutely no forewarning to them about any medical issues of Mr. Pierce, let alone any medications. This only arose, after the judgment in Case 20-CV-3873 and also after the Fee dispute was filed to discuss and resolve the sharing of workload

---

[6] Those refunds are also being presented to the NY Part 137 committee.

between the Co-Plaintiffs. The first plaintiffs heard about any medications was on January 31, 2025 the day of a deadline in case 20-CV-3873 to try to get a same-day stay. I was never made aware of any incapacitation upcoming or ongoing or otherwise. I was only told Mr. Pierce was getting married on January 3, 2025 which lends to an opposite impression that he was away and out of the office instead enjoying a honeymoon. I of course congratulated him on these events, and out of respect did not even bother him further since Mr. Weishoffer was handling the case..

Moreover, the issue to withdraw due to spinal surgery I am told is also inconsistent with his code of obligations to have given the clients prior notice or found a back-up attorney to help during this time. Having spoken briefly to another attorney who had also looked at the case, who (with some irony) also had spinal surgery, he stated that spinal surgery is not an "emergency" or "unforeseen" event. These incidences are usually planned months and months in advance, with MRI's and prior treatments. Therefore, the law firm would have had to have known about this medical surgery months ago, probably in the Fall 2024 and yet took no action to notify the clients, and at no time advised of any potential upcoming impairments. Instead, he had fully agreed to take these cases to Summary Judgment on the Northland case, and also to fully complete vacatur of the Arbitrations in both Connecticut and New York and consolidation of these case and complete all the appeal related to the foregoing.

The second attorney who also had spinal surgery said that he was out of work for 1 week maximum, and was full back in the office within two weeks. I would also respectfully like the Court to take note, that nowhere in the papers did Mr. Pierce put a date of this supposed surgery (which Plaintiffs believe now to have been around January 8, 2024). Neither does the attorney state that he has shut down his law practice, terminated all his clients, and essentially been unable to practice law on other cases. The recovery time for surgery is at most 4 weeks, as has been corroborated from other law firms and from what I understand, Mr. Pierce is and has been fully back at work since February 2025, and is fully attending to all his other clients. In addition, Mr. Weishoffer is also fully at work, has no medical issues. Given the law firm has not terminated his law practice, and continues on all his other litigations and case load, and his law firm is fully staffed (*See* https://piercekwok.com/our-attorneys/ listing several other attorney who handle litigations. *See also* Section II.D infra), and given the client interface has been nominal by Mr. Pierce, it is the clients position that Mr. Pierce (individually) has not been a relevant part of these cases for over six months.

The second attorney I spoke to also stated that Mr. Pierce has professional responsibilities to his clients. If an attorney has to take four (4) weeks off work to get surgery with medications, he was required to notify the clients <u>months ago</u>, certainly weeks ago, so that other attorneys in his firm could carry the workload. He was required to provide dates to the clients, and <u>also have candor to the Courts months in advance</u>. None of that happened here. Failure to notify the Courts, especially with potential judgments is also a disregard of his obligations which should not prejudice the clients. Moreover it is the clients position that he did not foresee his surgery impeding these cases (which is why he didn't tell the courts or the clients) because he had already designated all the work to Mr. Weishoffer. Therefore, the excuses of a spinal surgery only arose after there was an adverse judgment. As stated infra, in May 2024, Mr. Pierce has said he would use medical issues and "personal issues" to ask the Court to left him off the case. At this time,  Mr. Pierce is fully back at work, handling his practice in full, has not stopped serving his other clients and maintains his practice in full, this late-notice of a retro-active surgery (which apparently happened in early January) was not being disclosed to the Courts in accordance with Professional Rules or with advance notice to the clients. Accordingly, withdrawal on this basis is not permitted -especially in light of the fact that Mr. Pierce's time is de minimis and <u>Mr. Weishoffer is the main attorney handling the cases</u>. (*See* Section II.A). Further there has been substantial investment of time by clients to bring this law firm and Mr, Weishofer up to speed on numerous complex aspects of the cases and the Commodities Exchange Act.

Plaintiffs respectfully disagree with his motion to stay, that there is no other lawyer capable of handling the case. Mr. Pierce has not been the key person the case, and Mr. Weishoffer has been the primary person on these cases and is fully up to speed on all aspects of these matters. This is supported not just by emails only showing communications on salient issues of law only with the associate (and no contribution from Mr. Pierce) as well as the time sheet records that show for example in November 2024 – zero ("0) billable hours and in December only 0.7 hours. The law firm has also several other litigation attorneys[7] listed con his website, who could provide "reviews" of any filings if that was what was needed, and it is the law firms' responsibility to ensure (with proper notice) of any temporary arrangements. It is, from the client's perspective, improper to blindsight the clients on the day of a judgment to claim he is "medically incapacitated." With respect, to the extent there was any surgery, it was completed in early

---

[7] For example without limitation, Mr. Reid is versed in intellectual property and commercial litigations.

January, and Mr. Pierce is back at work. It is also public knowledge that drugs like Percocet[8] and Valium[9], are never prescribed for more than a few days, or at most for four weeks, and Clients do not believe these are long term arrangements. There was no affidavit supplied regarding his dates of surgery.  It is our understanding the attorney is back in the office in full.

In addition another attorney has stated that no other firm would take over from Mr. Pierce regarding the motions to vacate the arbitration, and any pending judgments that Mr. Pierce was counsel of record for all arbitration-related motions in cases 22-CV-1653 and 20-CV-3873. As a member of the bar, Mr. Pierce is responsible for all costs and expenses, including finding the necessary replacements for any work he started that he is now subject to rectification. Accordingly this other attorney advised client NRCM, that if he was to withdraw, leaving clients picking up the legal costs and expenses from <u>any judgment</u> Plaintiffs would be seeking an Order from the Court, that Mr. Pierce pick up the tab in cases 20-CV-3873 and 22-CV-1653 for any legal fees related to rectifying his potentially improper filings, and potential mis-service, and the Appeals as this could materially prejudice NRCM. Knowing Mr. Pierce's firm are on contingency, it would not be possible (or practical) to find a contingency fee firm to replace Mr. Pierce on the arbitration related matters that he may have already misfiled – and for those reasons also in the NFA/ADMIS/Vision case no withdrawal should be permitted at this time. The Court might note that the clients and the law firm and Mr. Weishoffer, are in agreement about all issues of law related to the vacatur of this Arbitration, and this is a material factor in the clients' decision to work with the law firm on this aspect of the case. The law firm have reviewed many files and have also stated to the Court they firmly believe in the merits to vacate (See Attorney Affidavit ¶7). Accordingly, it would be extraordinarily prejudicial at this late stage to now try to be relieved and would absolutely prejudice NRCM who has relied on Pierce and Kwok and would never have engaged his firm to do this, without these contingency fee commitments on the Arbitration. Plaintiffs have paid the firm in full for the vacatur of the Arbitration, and since they are being relieved for ongoing pre-trial such as discovery, depositions and summary judgment no further fees are due. It was at the law-firms' behest (and not Plaintiffs) that the scope of work be reduced, and it was the law firm (and not Plaintiffs) that asked the Plaintiffs to terminate the retainer on these portions of the work. In addition, given the inequitable work sharing,

---

[8] Percocet and opioids are generally only prescribed for 5 days or less. The attorney has provided no showing of when this medication was prescribed or for how long, and if it is seriously impacting his law firm practice, he is still practicing law on all his other clients.

[9] Valium is also not usually prescribed for more than 4 weeks. Since Mr. Pierce's surgery was in early January, he would by this time no longer be safely on these mediations since February 5, 2025.

Plaintiffs have accounted for and credit several areas where we believe amounts are overpaid, and amounts would be due as refunds. Plaintiff Kumaran has been asked to intentionally forego work, miss billable hours, and revenue, because Mr. Pierce has not contributed to filings he was supposed to do.

Further similarly in the Northland case, Pierce and Kwok have been paid in full to take that case to Summary Judgment. There are some discussions going on related to work-load sharing, depositions, and given the review of the case, Plaintiffs have fully agreed to compensate the law firm equitably for their relative contribution. If co-counsel was to be brought on those terms would also need to be fairly allocated, but it has not been possible to determine that, due in large part to the inability of Mr. Pierce to have a telephone call about it – which is why Clients enforced the mediation provision. Plaintiffs January 15 emails were a "request for a phone call" and instead were met with hasty decisions to withdraw without communication. The case law below shows that Courts do not permit withdrawals when the lawyer has failed to provide any communication with the clients, and has not documented in his moving papers any attempts to resolve and communicate with the clients the fees or the contingency portions. The moving papers are also deficient as they do not disclose that Plaintiffs had agreed on substantial contingent arrangements and have instead been forced to take thousands of dollars of lost income and wages, to supplement Mr. Pierce's absence from the firm for months on end and he is not handling the cases – instead Mr. Weishofer is. Those relative contributions which are also outside of the engagement have not been fairly accounted for, which is why New York Part 137needs to resolve the fee sharing between Co-Plaintiffs and what is equitable.

Further, any emails protected by privilege, certainly do not show any legal strategy differences in any of the cases. There has been a unified approach to all the cases. Plaintiffs and the law firm also share the same frustration in 19-CV-8345 with Defendants opposing counsel Mr. Kwon who has been stalling document production. These are reasons that the Court should not allow withdrawal, as it is a deliberate tactic of Defendants to drive up costs to the Plaintiffs which also would prejudice the corporate entity. If anything, Plaintiffs are entitled to sanctions from Northland and opposing counsel for the 232 days delay to produce one single document. Litigation is very expensive and time consuming for small businesses, and they rely upon contingency fee counsel. The delays purposefully being caused by Northland and their counsel are *intended* to create inequity in these proceedings (*See* 19-CV-8345 Dkt. 209) and also should not support counsel's withdrawal – simply because a case is taking longer than expected. The Court might take notice that the motions to withdraw came on the heels also of the

discovery conference in 19-CV-8345 and ongoing delays in production by Northland and Mr. Larkin which was issued on January 14 which in turn do increase the costs for Plaintiffs. But since these cases are on a contingency basis, they do not give grounds for a law-firm to get off the case, because documents are taking longer than expected.

In short, allowing this withdrawal is not just premature, would disrupt these cases, but would also materially prejudice all the clients, who are relying on the law firm of Pierce and Kwok to uphold their contingency fee duties. In addition, given the mandatory mediation provisions, and clients' rights under Part 137, the law-firm's motions are an attempt to circumvent those rights, and these motions should be denied outright. Further none of the reasons provided or the motions he provided are supported by law. Under the law, the law firm has not provided satisfactory reasons to be withdraw. Client's engagement is with an entire law firm (not one attorney in a solo-practice), and there are other attorneys demonstrably handling this case, who are already up to speed, and therefore while this particular attorney needs some time to recuperate, Plaintiffs will gladly agree to his individual short leave of absence for up to thirty (30) days as medically necessary, as long as the associates can continue to file as has been done in the past. I of course wish Mr. Pierce a speedy recovery, but respectfully ask the Courts to take notice that he is back at work, fully handling all his cases and has not shut down his law firm. Mr. Pierce allowed Mr. Weishoffer to file almost seven Second Circuit motions, and briefs, without even one second of review. There was no emails with the partner on cases 22-893 and 24-1935 related to material issues of law, and only the associate is guiding the filings. Accordingly, no good cause has been given to why the associate should be removed either. It is the client's position that Mr. Pierce is not actually needed on these matters, and Mr. Weishoffer has consistently handled the case for now over six months without issue, and in many instances without even a review by the partner. Many of the filings are handled by the associate without any communication from Mr. Pierce. The Court might also take notice in case 19-CV-8345 the associate Dylan Cruthers is actively handling the case, and speaking at conferences, and signing motions. As I understand, the Courts welcome younger members of the Bar to appear in Court. As this is a small business litigation, that has been moving along with associated, the clients' position is that Mr. Weishoffer is the real attorney on the case and is invaluable and under no circumstance should he be relieved.

Finally the relationship and collaboration has to date been very positive, and the law firm admits in ¶5 that "this firm still believes is a good fight against malicious adversaries..". Hence there are no irreconcilable differences even remotely mentioned, let alone other conflicts of interests, and Plaintiffs

remain very willing to cooperate with the law firm to get these cases resolved on the merits. There are no other mitigating factors, and substantial time and effort has been expended to get this law firm up to speed. They do understand and believe in the issues of law being presented. Accordingly, it would be remarkably prejudicial, also given that these cases have lasted already nearly 5 years or more, to switch counsel – who want to get out of contingency fees. The law firm was aware of the prior counsel, (who had also agreed to take this case on full contingency fee – and then tried to get out of the case when potential errors of their own doing were flagged) – hence they still agreed to take on the cases.

Given this complex history, this law-firm were not impaired in their decisions to take on these cases, and Plaintiffs absolutely relied on their contingency fee representation. In addition, as the time sheets show, the work load on Mr. Pierce is de minimis, and has been <u>less than an hour a month</u>. Clients argue that the law firm has a very light role (comparative to other contingency cases) as they have been able to handle these litigation with <u>very little time</u> overhead, because of the work-load being handled by Co-Plaintiffs. Therefore the only party who is being unreasonable burdened with inequitable work-load is Co-Plaintiff Kumaran. It would be highly unlikely a partner could handle four (4) Federal Court litigations and 2-3 Appeals, only having to spend 1-2 hours a month on all cases. This also make his motion to withdraw in-equitable as he is not having to spend much time on the case, that cause him burden. Because of the disruption to these cases, with previous contingency fee counsel trying to get out of the case due to claiming medical issues, or in the case of Randy Kleinman, violating numerous professional codes of ethics to try to save himself from sanctions due to his own misfilings. Clients should not be prejudiced further. Thus Plaintiffs also seek an order that until Summary Judgment there should be no further withdrawals of counsel.[10] Plaintiffs continue to cooperate in full with the law firm and as the law firm concedes there are no conflicts, difference in legal strategy and there are no irreconcilable

---

[10] Plaintiffs have also expressed a concern in case 20-CV-3668 and 20-CV-3873 of the Judge previously improperly discharging contingency fee counsel, sometimes without even an opposition filed, in a manner that would prejudice NRCM or what is now described as to try to stack-the-deck against the clients. NRCM particularly needs contingency fee counsel, to enforce its rights, and the pattern of summarily discharging counsel has been flagged by prior counsel and other law firms, as explained in the filings to vacate judgment, that Judge Woods is relieving counsel improperly that other law firms have suggested this Judge needs to be recused, due to also now two erroneous judgements which have needed to be vacated. Each erroneous judgment (one on July 4, 2020 and another on August 9, 2024) were both vacated by the Magistrate which is highly unusual. NRCM specifically in cases 20-CV-3873 and 20-CV3668 given the complex history of the case, the need for NRCM to have contingency fee counsel and Mr. Pierce's agreements to vacate this arbitration and knowledge of all the arbitration issues since he wrote and his responsibilities on the vacatur motions he filed and served should not be permitted under any circumstances his withdrawal, as he was previously fully aware of the prior counsel's attempts to get out of contingency fee cases, and still his firm agreed to stay loyal to his clients to see this portion of the case through. Mr. Pierce expressly agreed to handle these vacatur motions for the Arbitration till conclusion. Plaintiffs have been willing to bring on additional counsel for discovery in cases 20-CV-3873 and 20-CV-3668.

differences (or other differences) that would interfere in their ability to continue to collaborate productively and bring these cases, as very much needed, to conclusion on the merits. (*See* FRCP 1). Plaintiffs have been waiting since 2019 and 2020 to resolve these cases, and the length of these cases also now far exceeds the three-year guideline under the Civil Justice Reform Act and does not agree to any further withdrawals and/or delays in resolving the cases on the merits.

## LEGAL STANDARD

Mr. Pierce's motion does not comply with Rule 1.4 of the Civil Rules of the United States District Court for the Southern Districts of New York, which provides that

> [a]n attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar.

Pierce and Kwok took this case <u>mostly</u> on a contingency and based on their commitments to put in hundreds of hours in discovery to four(4) Federal Court litigations <u>on a contingency basis</u>, Plaintiffs agreed to the retainer, which has a mandatory mediation provision which has not been fulfilled. They also agreed to devote the time and resources necessary to take all four cases to Summary Judgment and handle the Appeals. It is generally said of the attorney-client relationship that '[w]hen an attorney is retained to conduct a legal proceeding, he enters into an entire contract to conduct the proceeding to a conclusion and he may not abandon his relation without reasonable or justifiable cause.' " *Malarkey v. Texaco, Inc.*, 81 Civ. 5224 (CSH), 1989 WL 88709, at *1 (S.D.N.Y. July 31, 1989); *see also United States v. Vilar*, 731 F.3d 255, 257 (2d Cir. 2013) ("Full availability of legal counsel requires ... that lawyers who undertake representation complete the work involved." (quoting Lawyer's Code of Professional Responsibility, adopted by New York State Bar Association, EC 2-31)); *see also Wilson v. Pasquale's DaMarino's, Inc.*, No. 10 CIV. 2709 (PGG), 2018 WL 4761574, at *8 (S.D.N.Y. 2018). *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 657 B.R. 382, 387 (Bankr. S.D.N.Y. 2024)

Plaintiffs (and their undersigned representative of the corporate plaintiffs) oppose the request. In addressing motions to withdraw as counsel, district courts have typically considered whether "the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel."; *see also Malarkey,* 1989 WL 88709, at *2 (denying counsel's motion to withdraw due to disruption of the case); *Rophaiel v. Alken Murray Corp.,* No. 94 Civ. 9064, 1996 WL 306457, at *2 (S.D.N.Y. June 7, 1996) (denying motion to

withdraw and noting concern with litigation delay because it would be "too easy for a defendant to stall proceedings by inducing the withdrawal of its attorney by non-payment of fees"). *Whiting v. Lacara,* 187 F.3d 317, 320–21 (2d Cir. 1999)

"Whether to grant or deny a motion to withdraw as counsel 'falls to the sound discretion of the trial court.'" *Stair v. Calhoun,* 722 F. Supp. 2d 258, 264 (E.D.N.Y. 2010) (cf. *In re Albert,* 277 B.R. at 47). The Court "must consider (1) the reasons for withdrawal, and (2) the impact of the withdrawal on the timing of the proceeding." *Mendez v. K&Y Peace Corp.,* 2017 WL 11808872, at *1 (S.D.N.Y. Sept. 27, 2017); *Bruce Lee,* 2014 WL 1087934, at *1; *see also S.E.C. v. Pentagon Cap. Mgmt. PLC,* No. 08 CIV. 3324 RWS, 2013 WL 5815374, at *4 (S.D.N.Y. Oct. 29, 2013) ("[A] court may consider the 'protracted history of the litigation' when deciding whether or not to permit counsel to withdraw.") *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 657 B.R. 382, 387–88 (Bankr. S.D.N.Y. 2024). *SEC v. Great American Technologies, Inc.,* 2009 WL 4885153, at *5 (S.D.N.Y. Dec. 15, 2009)).

Plaintiffs have been in this case for well over nearly five or five and half years, since 2019 and 2020 and the protracted history should not allow for extended delays here to go past three years to get resolution on the merits. The history should include review that previously contingency fee counsel have tried to get out of cases with improper excuses – one concealing he was an alcoholic, another Mr. Kleinman made up a dispute and tried to withdraw the case to relieve himself from sanctions – despite being on a full contingency. Plaintiffs request the Court no longer allow these excuses, when the real reason is that his firm is trying to get out of the contingency fee portion they agreed to.  As shown below in Section III there are no other grounds for withdrawal. "[I]n the absence of a compelling justification, the Court will not relieve an attorney from his obligations." *Foster v. City of New York,* 2000 WL 145927, at *4 (S.D.N.Y. 2000). Courts have held that satisfactory reasons for withdrawal include "a client's lack of cooperation, including lack of communication with counsel, and the existence of irreconcilable conflict between attorney and client." *Farmer v. Hyde Your Eyes Optical, Inc.,* 60 F. Supp. 3d 441, 445 (S.D.N.Y. 2014) "An application for withdrawal must be supported by an affidavit and a showing of satisfactory reasons 'sufficient to constitute cause for withdrawal.'" *In re WB Bridge Hotel LLC,* No. 20-23288 (SHL), 656 B.R. 733, 743 (Bankr. S.D.N.Y. Feb. 5, 2024) (quoting *In re Albert,* 277 B.R. at 45) *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 657 B.R. 382, 388 (Bankr. S.D.N.Y. 2024). Since the motion papers do not disclose the contingency fee portion, and also do not disclose the agreements reached in August 2024, do not disclose that Mr. Weishoffer is the primary attorney on all cases, and do not disclose that Mr.

Pierce is only putting in 1 hour or so a month, and have not outlined the fees in dispute, there is insufficient grounds and evidence to relieve the firm,. *See In re Albert*, 277 B.R. 38, 44 (Bankr. S.D.N.Y. 2002) (denying motion to withdrawal for insufficient evidence and disputed fees). (quoting S.D.N.Y. Local Civ. R. 1.4). *Madoff Inv. Sec. LLC*, 657 B.R. 382, 389–90 (Bankr. S.D.N.Y. 2024)

      B. <u>Withdrawal of Counsel Will Disrupt the Proceedings and Materially Prejudice Plaintiff</u>

In addition to considering the reasons for withdrawal, courts also look at "whether the prosecution of the suit is [likely to be] disrupted by a withdrawal of counsel." <u>See</u> <u>Whiting</u>, 187 F.3d at 320-21 *Malarkey v. Texaco, Inc.,* 1989 WL 88709, at *2 (S.D.N.Y. 1989). As stated infra, the law firm is already fully up to speed on all these cases, Mr. Weishoffer is the real acting attorney who has handled 99% of the work, and given the pending judgment in case 20-CV-3873 it is Mr. Pierce's responsibility to stand behind the work he did. NRCM would be materially prejudiced to have to bring someone else in now to rectify this attorney's work – especially midway through a vacatur motion he agreed to take on contingency. In the Northland case, the fees have been paid in full. Unless Pierce and Kwok issues a refund of the deposits, Plaintiffs would also be prejudiced to start all over with a new firm, as the fixed fees are fully paid. Mr. Weishoffer has also spent significant time and is up to speed on these issues and it would disrupt the case in both cases. Plaintiffs did agree to relieve the firm once the arbitration awards were vacated.

**I – FEE DISPUTE ON A CONTINGENCY FEE IS NOT GROUNDS FOR WITHDRAWAL**

**A – THERE ARE NO LEGAL FEES DUE**

      Plaintiffs also dispute the withdrawal and withdrawal should also not be permitted because there has been "no deliberate disregard of fees". Counsel's motion also fails to disclose that majority and material components of the retainer include a contingency fee portion. The disciplinary rules *only* provide for permissive withdrawal where there has been a **<u>deliberate</u>** disregard of a fee agreement by a client. Numerous courts have permitted withdrawal of counsel only where clients <u>deliberately</u> disregard fee agreements. *McGuire v. Wilson,* 735 F.Supp. 83 (S.D.N.Y.1990); *Statue of Liberty–Ellis Island Found., Inc.,* 110 F.R.D. 395 (S.D.N.Y.1986) (law firm only entitled to be relieved from representation of client who had not cooperated or paid).  Here, there is no indication in the moving papers that any fee payment is deliberate. Here, Plaintiffs were paying in full and it was Pierce and Kwok that renegotiated the terms to eliminate discovery. There is no <u>deliberate</u> violation of the fee agreement alleged here; counsel's motion is also insufficient as it does not itemize the contingency fee portions of the case, nor the nature of the fee dispute. There is no indication from the moving papers that the lawyer was not paid, and that Plaintiff

undertook these agreements on contingency fee. That the lawyer "thinks" the retainer has not been paid without providing any evidence is not a deliberate violation, especially when material facts are in dispute that Plaintiffs paid in full and agreed to reduce 80% of the work and thus there is no further amount due. "Even where the retainer has been fully exhausted ... a court may *still* refuse to allow the attorney to withdraw." (emphasis in original). *The Charles Weiner Corp. v. D. Jack Davis Corp.,* 113 Misc.2d 263, 266, 448 N.Y.S.2d 998, 1000 (Civ.Ct.1982).*In re Meyers,* 120 B.R. 751, 753 (Bankr. S.D.N.Y. 1990)

Moreover, Courts have upheld agreements, in favor of clients. In this case, Pierce and Kwok agreed to take the cases on a contingency fee. A denial of the motion serves to effectuate the agreement between the parties. In New York, agreements between attorneys and clients are construed in a manner which is most favorable for the client. *Shaw v. Manufacturers Hanover Trust Co., 68 N.Y.2d 172, 499 N.E.2d 864, 507 N.Y.S.2d 610* (1986); [11] As the court of appeals reaffirmed in Shaw, although contracts are generally construed against the drafter, as a matter of public policy, courts give particular scrutiny to fee arrangements between attorneys and clients, "casting the burden on attorneys who have drafted the retainer agreements to show that the contracts are fair, reasonable, and fully known and understood by their clients." 499 N.E.2d at 866, 507 N.Y.S.2d at 612. Indeed, Mr. Pierce does not contend that the contingency fee agreement allowed it to withdraw in the event Mr. Pierce gets sick for a few weeks. Here the retainer is with the law firm of Pierce and Kwok, and the attorney is required to comply with New York Professional Rules of Conduct. This means that it is Mr. Pierce's responsibility to associate with co-counsel or use another attorney in the firm for the four (4) weeks period he needs to recover from surgery – not abandon the clients' cases in their entirety. In the absence of an express provision for the withdrawal of counsel, the construction of the agreement most favorable to the client is that representation was to continue until the conclusion of the case. *In re Meyers,* 120 B.R. 751, 753–54 (Bankr. S.D.N.Y. 1990). Further as outlined in section II.A and II.B, Mr. Pierce's time on these case is nominal and the majority of the work is being handled by Ms. Kumaran (Co-Plaintiff) and an associate Mr. Weishofer. Therefore any recovery from surgery would not impact the Clients' ability to proceed, as the table in II.A show that Mr. Pierce's involvement has been minimal. Since Pierce and Kwok agreed to a full contingency up to summary judgment, and in the ADMIS/Vision/NFA cases until full vacatur of the NFA Arbitration (and related  Appeals) and since the law firm are already up to speed on these various cases it would be

---

[11] *Jacobson v. Sassower, 66 N.Y.2d 991, 489 N.E.2d 1283,* 499 N.Y.S.2d 381 (1985); *Greenberg v. Bar Steel Construction Corp.,* 22 N.Y.2d 210, 239 N.E.2d 343, 292 N.Y.S.2d 404 (1968); *In re B–T Productions, Inc.,* 104 B.R. 596 (Bankr.W.D.N.Y.1989).

remarkable prejudicial to the cases, and to the clients to allow this withdrawal midway through critical juncture of the cases when the firm specifically agreed to take the cases through the motions to vacate and in the Northland case through summary judgement. Neither does the attorney speak of any financial hardship being caused, because the table in II.A show that his hours are de-minimis. In any event, the hardship is on Plaintiffs and clients who are carrying the bulk of the workload. *See In re Meyers*, 120 B.R. 751, 754 (Bankr. S.D.N.Y. 1990) (denying withdrawal of counsel and enforcing the retainer)

## B – NEW YORK PART 137 ALLOWS FOR MANDATORY RESOLUTION OF A FEE DISPUTE / MANDATORY MEDIATION PROVISION

The Clients also object to these hastily filed motions because the retainer has a mandatory mediation provision. Again, the law firm is required to abide by the terms of the retainer. Further the right of the clients is governed under New York law and the professional rules of conduct which allows the clients to select mandatory fee disputes pursuant to Part 137. Those terms are also in the retainer. The law firm is thus not able to withdraw or address any dispute with the Courts until the parties have gone through mediation and also completed Party 137 mediation and ruling. Contrary to any assertions by Pierce and Kwok, the parties discussed using Part 137 in May 2024, so it was not as a result of any motions to withdraw, but that the client had advised given the mediation provision and the law firms attempts to demand co-counsel be retained to handle large portions of his work, that any adjustment to the retainer should be handled by Part 137 if the parties could not reach a resolution. Given these are client rights, it is improper and inconsistent with the case law, that there was any "deliberate" disregard of fees. Clients believe they have overpaid, given the work-share contribution of Pro-Se Plaintiffs, and the firm's 80% reduction of the workload, and other equitable considerations. Certainly in August 2024 it was agreed that no further monies were due, and the law firm would finish up the current motions related to the Arbitration and any appeals, and also would continue and complete the Northland case up until Summary Judgment. Withdrawal is thus improper when the retainer and New York rules allow clients to resolve any fee dispute with NY Part 137 and mediation first and such has been filed.

## II – AARON PIERCE HAS NOMINAL TIME REQUIRED OF HIM IN THESE CASES

Moreover, withdrawal is improper as the medical ailments do not impact this case as the timesheets support that Mr, Weishoffer is the primary attorney and Mr. Pierce has disclosed he has put in nominal time and there is not really needed in the cases. Plaintiffs have filed in affidavit a record of the

recent hours of the partner related to four Federal Court litigation and three (3) Appeals. Over the period September – December the partner has only recorded time sheets showing 10 hours in total over four months, and seven separate cases.

| | TOTAL HOURS OF MR. PIERCE | | |
|---|---|---|---|
| September 2024 | 3.2 hours | Includes 2.7 hours to file a Reply brief in 22-893 | |
| October 2024 | 2.1 hours | Attended a meet and confer for 1 hour and flipped through discovery only in Northland case. | No work done at all in any of the other cases. |
| November 2024 | 0 | NO HOURS AT ALL on four federal court litigations and three appeals. | Allowed at least seven different Second Circuit Filings in cases 22-893 and 24-1935 to be filed without his review by Mr. Weishoffer. Did not review any discovery, or read any papers, or speak to clients. |
| December 2024 | 0.7 hours | (LESS THAN 1 HOUR) Attended a meet and confer in case 19-CV-8345 for 0.7 of an hour. Spent no time reviewing or preparing any documents. No work on any of the other cases despite judgment being issued against his clients. | No time at all spent on case 20-CV-2873, 20-CV-3668, 22-CV-1653, or any of the Appeal, No time at all spent on discovery in case 19-CV-8345. All other filings handled by Mr. Markus Weishoffer. Substantial motions to vacate judgments being handled by Ms. Kumaran and Mr. Weishoffer only. |
| January 3, 2025 | | Notified the clients was "off-the-clock" as he was "getting married today" | |

Since Mr. Pierce is contributing on average 1.5 hours a month to all these cases, the work is being handled <u>only</u> by Mr. Weishoffer who is the real attorney on the case. As can be demonstrated, Mr. Pierce has spent _nominal_ time on these cases since September 2024, and has barely spoken to the clients let alone provided any legal "consult". Therefore his medical issues should have no bearing on these cases, as he is not involved in the day-to-day and has certainly not spoken to the clients on any legal issues. In September 2024 he spent only 2.7 hours on handling a Reply brief in an Appeal case and claims to have "flipped through" the documents. In November 2024, despite multiple material filings in the Second

Circuit signed by his firm (including a motion to intervene, amotion to stay, and Intervenor's brief, an opposition to a motion to stay, a cross motion to stay, and reply briefs, amounting to hundreds of pages of filings) Mr. Pierce logged his time-sheet as "zero seconds". There was not even a review by the partner of these filings in several cases and no input. It was only Mr. Markus Weishoffer who has been handling the cases since around March 2024. Therefore, there is a limited role in the cases as Mr. Pierce as he has frequently only spent about 1-2 hours a month on all four litigations. He has also relied heavily on the work of Co-Plaintiffs, including Plaintiff Kumaran (pro-se). Therefore, there is no substantial burden hardship to him *individually* to either stay on the case in a light role, and Clients have been accustomed to collaborating only with Mr. Weishoffer. Therefore, his medical issues are not grounds for withdrawal, given the attorney Mr. Pierce has a very limited role. The clients only need Mr. Weishoffer on the case.

## B – COMPLETE FAMILIARITY WITH THE ISSUES, PARTIES, AND STRATEGY

There has been substantial investment of time by the Clients, to work closely with the firm and for Mr. Weishoffer to familiarize himself with the cases. Clients would be substantially prejudiced if Mr. Markus Weishoffer was relieved from this case. The motions to withdraw state nothing about the real attorney who has been handling the case, without any partner review, and also Mr. Weishoffer has had no medical injuries.

The associates have worked closely with Plaintiff who has made also a substantial investment of time, to bring Pierce and Kwok associates up to speed. They understand all the players in the litigation, they have interacted with opposing counsel, they understand the dynamics between the Court and the parties, and they specifically understand the nuances of the various personalities of opposing counsel. They are also familiar with all the postures of all cases, they understand the core arguments being raised, they know the case law, and familiarized themselves with current filings. Therefore specifically, Mr. Pierce is not needed on these cases, it is only the associate Mr. Markus Weishoffer who is the acting and real attorney. Plaintiffs have also spent significant time, trading and teaching the associates, on the various aspects of the law that are relevant to these issues, and over a year, invaluable trading and transfer of knowledge had taken place that Mr. Weishoffer is the person In fact Mr. Weishoffer is fully at work and Mr Pierce appears to have returned to work and they are continuing their "hourly fee" business. It is just the contingency fee cases they are trying to evade. Since Mr. Weishoffer is fully up to speed, there is no

good cause reason to relieve the entire law firm, when there are other personnel who have been handling this case without interruption  and without issue for months.

## C – PIERCE AND KWOK ARE A LARGE LAW FIRM

Moreover, the engagement for representation is with the entire law firm of Pierce and Kwok. This is a larger law firm, and the website lists several lawyers of counsel or available.  Plaintiffs respectfully disagree with the assertion by Mr. Pierce that there are *no*  attorney capable of helping him out while he has to take a few weeks of medical leave. E.g https://piercekwok.com/attorney/rakesh-joshi/ There are other partners too with litigation and intellectual property experience on the website itself. And given the time sheets to date, Markus Weishoffer is also fully capable and has the clients' endorsement to continue the cases, as he has been doing for nearly a year now.

## III – NO OTHER GROUNDS FOR WITHDRAWAL ARE PRESENT

In addition, there are <u>no other grounds</u> for withdrawal that are present. To the contrary, the motion to withdraw itself, as well as the papers submitted by Plaintiffs show that the collaboration between the law firm, the attorney assigned Mr. Markus Weishoffer, and to the extent Mr. Pierce reviews, has been positive. The moving papers themselves show under affidavit attorney himself has not stated any disagreement ¶5  Hence there are no other grounds that would warrant this removal, and once a law firm has agreed to a contingency fee, which is expressly stated in the contract, he cannot use excuses which would cause significant financial hardship and prejudice to the client.

## A – NO LEGAL STRATEGY DISAGREEMENT, NO DIFFICLTY IN COOPERATION, NO IRRECONCILABLE DIFFERENCES

For example and without limitation, the moving papers and Plaintiffs own papers don't indicate any lack of cooperation or difficulty to work together. Since the law firm does not once raise any lack of cooperation from the client, or lack of communication, and there is no conflict between the attorney and the client, these show that  As to the reasons for withdrawal, "[i]t is well-settled that a lawyer may seek to withdraw when the client renders it unreasonably difficult for the lawyer to carry out such employment effectively." *Farmer v. Hyde Your Eyes Optical, Inc.*, 60 F. Supp. 3d 441, 445 (S.D.N.Y. 2014) "Satisfactory reasons for withdrawal include 'a client's lack of cooperation, including lack of communication with counsel, and the existence of irreconcilable conflict between attorney and client.' " *Id.* [12]( *City Merch. Inc. v. Tian Tian Trading Inc.,* 2021 WL 119075, at *2 (S.D.N.Y. Jan. 13, 2021).  In fact Plaintiffs have asserted

---

[12] quoting *Naguib v. Pub. Health Sols.*, No. 12-CV-2561 (ENV)(LB), 2014 WL 2002824, at *1 (E.D.N.Y. May 15, 2014)).

the collaborative relationship between the law firm and the client has been productive, effective, quick and positive. Likewise, the moving papers of the law firm also support a positive working relationship (See e.g. Affidavit ¶7). Therefore these do not support any withdrawal and the motion should be denied. Here specifically with complex cases, that an associate has full command of the cases should be noted.

## B – NO DISAGREEMENT ON THE MERITS, NO LACK OF COOPERATION, NO DISAGREEMENT ON LEGAL STRATEGY

There is also no other grounds for withdrawal as the law firm and clients have no disagreement on the merits. Several courts have found that serious disagreements over litigation strategy and a breakdown in communication between attorney and client are grounds sufficient for withdrawal. *See Whiting*, 187 F.3d at 322 , *Marciano*, 2016 WL 11703590, at *2; *Naguib*, 2014 WL 2002824, at *1 (granting motion to withdraw where plaintiff "fail[ed] to cooperate in the litigation process"); [13] But here the opposite is true. Plaintiffs have gone beyond the pale, sometimes even doing substantive portions of work for the law firm itself. There is a role reversal here in cooperation. The law firm has not complained of any lack of cooperation.

## C – NO PROBLEMS WITH COLLABORATION OR COMMUNICATION

In addition, there is no problem with the collaboration and teamwork between Plaintiffs and the law firm. Neither does the law firm state (and neither do Clients state) that there is any lack of communication in getting the work done, and cooperation. In fact Clients have "over-assisted" the law firm. Courts in this District have held that satisfactory reasons for withdrawal include " 'a client's lack of cooperation, including lack of communication with counsel, and the existence of irreconcilable conflict between attorney and client.' " *Farmer v. Hyde Your Eyes Optical, Inc.,* 60 F. Supp. 3d 441, 445 (S.D.N.Y. 2014) ); *see also Munoz v. City of New York,* 2008 WL 2843804, at *1 (S.D.N.Y. 2008) ("The law firm has shown good cause for withdrawal based on the lack of communication with the plaintiff."). *Diarama Trading Co. v. J. Waiter Thompson U.S.A., Inc.,* 2005 WL 1963945, at *2 (S.D.N.Y. 2005). *Wilson v. Pasquale's DaMarino's, Inc.,* 2018 WL 4761574, at *9 (S.D.N.Y. Sept. 2018) Since there is no problem with collaboration and there is no indication of breakdown in communication, and none is indicated in the moving papers by either the client or the law firm, the motion should be denied. Plaintiffs state the collaboration has been and is strong, and the parties are able to work quickly to meet deadlines and handle

---

[13] *Liang v. Lucky Plaza Rest.*, 2013 WL 3757036, at *2 (S.D.N.Y. 2013) (granting motion to withdraw given the client's failure to cooperate in the prosecution of the case); *Munoz v. City of New York*, 2008 WL 2843804, at *1 (S.D.N.Y. 2008) (finding "good cause for withdrawal based on the lack of communication with the plaintiff" ). *City Merch. Inc.* 2021 WL 119075, at *4 (S.D.N.Y. 2021)

the cases. Further Mr. Weishoffer knows the cases, understands the issues of law and as stated infra already has a productive and efficient working rapport with the clients that should not be disturbed.

### D – NO CONFLICT OF INTEREST IN LEGAL STRATEGY

Likewise, there is no conflict of interest, and neither as their any disagreement on the arguments and claims being raised. Counsel states as so in his affidavit ¶5 the law firm - . Attorneys have a duty to the court *not to make "legal contentions … [un]warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law...." Fed.R.Civ.P. 11(b)(2). *Healey v. Chelsea Resources, Ltd.,* 947 F.2d 611, 623 (2d Cir.1991)[14] (*Whiting* 187 F.3d 317, 322–23). Since the attorney and the law firm are on the same page as the client with the claims this again supports no grounds for withdrawal.

### E – NO ISSUES OF ETHICS

Withdrawal should also not be granted here because there is no allegation by the law firm, that any violation of ethics. Withdrawal is only warranted for example, if codes of professional responsibility show "the client is bringing the legal action … merely for the purpose of harassing or maliciously injuring" the defendant. Model Code of Professional Responsibility ("Model Code") DR 2–110(B)(1); N.Y. Comp.Codes R. & Regs. tit. 22, § 1200.15(b)(1). Since counsel have stated in their Affidavit ¶5 – this firm still believes is a good fight against malicious adversaries - there are no other grounds for withdrawal as there is no indication the law firm would be forcing an attorney to violate ethical duties and possibly to be subject to sanctions.

### F – COUNSEL IS REQUIRED TO MEDIATE AND COMMUNICATE FIRST

Further the motion to withdraw should be denied, as the law firm is first required to mediate with Plaintiffs, to the extent that the work-load sharing needs to be changed in the engagement to account for the reflective contribution of hours, and at various points bring in co-counsel. Since Plaintiffs had stated they were amenable to that, and in fact did have potential co-counsel speak to the law firm, any abrupt motion to withdraw without participating in mediation and allowing Part 137 is premature. See Wilson v. *Pasquale's DaMarino's, Inc.,* 2018 WL 4761574, at *10 (S.D.N.Y., 2018) (denying motion to withdraw, as the declarations, do not demonstrate that the attorney-client relationship is irretrievably broken or that all Defendants are refusing to communicate with the Firm, because they do not provide sufficient details

---

[14] citing *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1471 (2d Cir.1988), *rev'd on other grounds,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989))

concerning the efforts the law firm has made to communicate with the clients it represents).  Further any withdrawal is premature to good faith attempts to mediate, and resolution of any New York Part 137 Fee Dispute which are client rights in the retainer. A law firm should not be able to circumvent the rights of the client to question various contributions on the bills and the contingency fee, and instead have the Court let him off the case, Plaintiffs have been very willing to try to speak and resolve the dispute and went of their way to even try to locate co-counsel who spoke to them. The impasse was in that suitable terms for the work-sharing could not be reached, especially if new counsel were to enter.

## IV – 4-WEEK STAY FOR MR. PIERCE TO RECOVER IS MORE APPROPRIATE

Further, Plaintiffs express a concern that Mr. Pierce is trying to invoke a "mandatory" withdrawal, by augmenting his medical issues, and is now using that as a last resort to try to get out of a contingency fee case. As seen in the affidavit, the attorney never even notified Plaintiffs (or the Courts) as would be required under his duties of candor with the Court of any supposed medical issues. It was only on January 16, 2025, the day after a fee dispute was initiated on January 15, 2025 that the attorney Mr. Pierce suddenly advised his clients he now had spinal surgery. He did not even advise anyone that he was on medication. It may also be noted that he appeared in full at a Court conference on January 14, 2025 in case 19-CV-8345 and also expressed no candor to the Cout and did not advise either the Court, Defendants or Plaintiffs of any supposedly dire medical conditions.

*Second*, as shown in the Affidavit the attorney instead advised the Plaintiffs on January 3, 2025 that he was "off-the-clock", because he was "getting married today". Given that the attorney instead led the clients to believe that he was enjoying a honeymoon, and "getting married today" – as late as January 3, 2025 – this conduct is not in keeping with an attorney who has exacerbated medical conditions, is incapacitated and there was no prior warning. These issues, to the extent they existed, should have been disclosed months ago, were raised *only* after the fee dispute was initiated. Plaintiffs agreed to relieve him from discovery and other pre-trial work in 3 of the 4 cases but not the Northland case. There were no further fees due. The clients thought the issue was put to bed. Moreover, Mr Weishoffer was the main person handling the cases. This stay should not delay Defendants' obligations to produce documents.

## V – PREJUDICE TO THE CASES, NRCM AND ASTAR

The Court should respectfully not allow Pierce and Kwok to withdraw as these cases are already five years old or more. 19-CV-8345 was commenced in September 2019 nearly five and half years ago, well over the Civil Justice Reform Act requiring cases over three years to be reported. 20-CV-3668, 20-

CV-3873 and 20-CV3871(now 22-CV-1653.CT) were also commenced in May 2020 which is also nearly five years old. The extraordinary delays to these cases, and also due to prior "medical ailments" of former counsel who also tried to get out of a contingency fee case should not continue to prejudice the clients. *see also Whiting*, 187 F.3d at 320 (noting that district courts "typically consider[ ] whether 'the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel" (*quoting Brown v. Nat'l Survival Games, Inc., No. 91-CV-221, 1994 WL 660533, at \*3 (N.D.N.Y. 1994))).*

## VI – NO CHARGING LIEN

Finally, Plaintiffs dispute any charging lien. First, the retainers do not include a charging lien and the parties did not agree to any such lien. Second, any issues of fees is still being resolved under Part 137, and Plaintiffs are due refunds or quantum merit for the work they have done and continue to do. Hence these amounts are currently in dispute. To the extent there is cause for any work not being performed, then no lien is permitted. There is no need for a charging lien as the law firm has to complete its duties. Since the law firm is on contingency fee they are required to complete the work.

## CONCLUSION

For the foregoing reasons the motions to withdraw should be denied. Mr. Weishoffer is the key attorney handling these cases. As shown above, there were insufficient grounds provided that do not meet the standards of law. The clients would be enormously prejudiced by this. Further as shown in Kumaran Declaration filed under seal ¶65 as late as January 29, 2025 the law firm does not oppose continuing to work on these cases.

Respectfully submitted,
Samantha S/ Kumaran
Individual Pro-Se Plaintiff
212-431-5098