UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SAMANTHA SIVA KUMARAN, THE A STAR
GROUP, INC. et al

                              Plaintiffs,

-against-

NORTHLAND ENERGY TRADING, LLC et al

                              Defendants.
----------------------------------------------------------X

Case No.: 1:19-CV-08345-MKV-RWL

**REPLY TO OPPOSITION TO MOTION TO WITHDRAW AS ATTORNEY OF RECORD**

_____

**REPLY TO PLAINTIFF SAMANTHA KUMARAN'S MEMORANDUM OF LAW IN OPPOSITION TO PIERCE & KWOK LLP'S MOTION TO WITHDRAW AS ATTORNEY OF RECORD**
_____

Aaron H. Pierce Esq.
Pierce & Kwok LLP
299 Broadway, Ste. 1405
New York, NY 10007
(212) 882-1752

1

## **TABLE OF CONTENTS**

**Preliminary Statement**..................................................................................................................4

**ARGUMENT**………………………………………………………………………………….5

**Conclusion** ................................................................................................................................10

## **TABLE OF AUTHORITIES**

**CASES**

*Blue Angel Films, Ltd. v. First Look Studios, Inc.*,
No. 08 CIV. 6469 DAB JCF, 2011 WL 672245 (S.D.N.Y. Feb. 17, 2011)

*Brown v. National Survival Games, Inc.,*
No. 91 CV 221, 1994 WL 660533

*Cower v. Albany Law School of Union University*,
No. 04 Civ. 643, 2005 WL 1606057 (S.D.N.Y. July 8, 2005)

*Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*,
No. 01 Civ. 2950, 2005 WL 1963945 (S.D.N.Y. Aug. 15, 2005)

*Freund v. Weinstein*,
No. 08 CV 1469, 2009 WL 750242 (E.D.N.Y. March 19, 2009)

*Hallmark Capital Corp. v. Red Rose Collection, Inc.*,
No. 96 Civ. 2839, 1997 WL 661146 (S.D.N.Y. Oct. 21, 1997)));

*Karimian v. Time Equities, Inc.*,
No. 10 Civ. 3773, 2011 WL 1900092 (S.D.N.Y. May 11, 2011)

*Melnick v. Press*,
No. 06 CV 6686, 2009 WL 2824586 (E.D.N .Y. Aug. 28, 2009);

*Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*,
464 F.Supp.2d 164, 166 (E.D.N.Y.2006)

**STATUTES**

New York Local Civil Rule 1.4

3

This Reply Memorandum (the "Reply") is respectfully submitted by Pierce & Kwok LLP, counsel for Plaintiff The A Star Group, Inc. ("A Star") in support of its Motion to Withdraw as Attorney of Record for A Star.

## PRELIMINARY STATEMENT

Ms. Kumaran's arguments in opposition to Pierce & Kwok LLP's Motion to Withdraw can be boiled down to one simple premise: that Pierce & Kwok LLP (the "Firm") "agreed to take these cases *mostly* on a contingency fee basis." (*see* Memo in Opp. pg. 1). Ms. Kumaran argues that since "the law firm negotiated a reduced scope of work, and was paid upfront, there are no further monies due, this attempt to withdraw is in reality for the purpose to get out of the contingency fee portion, in a manner that materially prejudices its clients…there is no good cause for withdrawal and the law firm has other attorneys handling this case…" (*Id.*). This is all *demonstrably false.* As shown herein, the retainer agreement (the "Agreement") agreed upon and signed by both parties at the onset of this representation clearly delineated specific guidelines and procedures for the payment of fees by Ms. Kumaran to the Firm which have not been followed. Furthermore, Ms. Kumaran seems confused as to the contingency portion of the Agreement, in that the Contingency Fee Payment (as described in the Agreement) was *in addition* to the monies owed by Ms. Kumaran to the Firm under the terms of the Agreement. Regardless of the contingency portion of the Agreement, Ms. Kumaran is over Forty-Seven Thousand Five Hundred Dollars ($42,500.00) (plus interest) in legal fee arrears. She stopped paying the monthly cash portion of her contract with the firm almost immediately, has not made any payments in over 8 months, and has effectively made it impossible for the Firm to staff the matters it was retained for. The cash portion of the retainer was essential and the Firm would have never agreed to, nor been able to afford, a full contingency-based attorney-client relationship. This total disregard for, and complete breach of, the cash payment portion of the retainer is further coupled with and compounded by: (1) the attorney of record, Aaron Pierce's, personal incapacitation due to recent major spinal surgery and recovery; (2) now newly tending

4

to an ailing father who is sick with late-stage pancreatic cancer; and (3) staffing issues which mean that the Firm cannot in any way manage nor afford (especially without the agreed upon cash portion of our legal fees) to continue multiple multi-district complex federal litigations and appeals without the attorney of record's oversight or active interest and, (4) Ms. Kumaran's now-repeated threats to sue the law firm.

## ARGUMENT

The retainer agreement (the "Agreement") between the Firm and Ms. Kumaran was executed on February 13, 2024 and is attached hereto as Exhibit A. Ms. Kumaran's main argument against withdrawal seems to be that the Firm "agreed to take these cases mostly on a contingency fee basis." (*see* Memo in Opp. pg. 1). In fact, as the Agreement shows, there was and is a significant cash portion to the Agreement as well. The Agreement states, in relevant part on pages two and three, that:

> For our services we propose an initial retainer fee of US $10,000.00, and a rate of $475.00/hour. $5,000.00 of which has already been paid, $2,500.00 to be paid on February 12th 2023 and $2,500 on February 19th 2023. Beyond the initial retainer payment, the firm will cap their monthly fees at $5000.00 starting payment on March 15th 2023 and continue to be paid on the 15th of each month moving forward. Should the firm work for more than thirteen (13) hours in any one month, the additional hours shall roll over to the following month but, any month's payment shall be capped at $5000.00 (the "Monthly Fee Cap) and shall continue up to and through the adjudication or settlement of the Pending Actions…The total cap for legal fee payments in this matter is $100,000.00 ("Legal Cap"). Trial and Trial preparation are not included in the scope of our Firm's representation. For clarity, any trial work on any of the matters included herein shall require a separate written and fully executed agreement.

5

This front-end capital was an absolute and necessary part of the deal. Kumaran has offered endless ideas and offers to replace her failure to pay the firm (including helping with its marketing and investment strategies) but refuses to pay the fees due. As of today, February 11, 2025, Ms. Kumaran has paid Twenty-Two Thousand Five Hundred Dollars ($22,500.00) out of an owed Seventy-Five Thousand Dollars ($65,000.00) i.e. an initial retainer fee of Ten Thousand Dollars ($10,000.00) plus Five Thousand Dollars per month from March 2024 to February 2025 (eleven months). On February 6, 2024, Ms. Kumaran paid Five Thousand Dollars ($5,000.00); on February 13, 2024, Ms. Kumaran paid Two Thousand Five Hundred Dollars ($2,500.00); on March 1, 2024, Ms. Kumaran paid Two Thousand Five Hundred Dollars ($2,500.00); on March 12, 2024, Ms. Kumaran paid Five Thousand Dollars ($5,000.00); on May 1, 2024, Ms. Kumaran paid Five Thousand Dollars ($5,000.00); and on May 30, 2024, Ms. Kumaran paid Two Thousand Five Hundred Dollars ($2,500.00). Furthermore, the Agreement states that "[s]hould any sums owed to me [the Firm] become past due by 90 days or more from your receipt of the final invoice, then you also agree to pay the New York Statutory Interest Rate of 9%, and all costs and fees associated with this collection. Additionally, you hereby agree that any objections to fees are waived if not received in writing within 30 days of receipt of the invoice." (Exhibit A, pg. 3). Therefore, the monies actually owed by Ms. Kumaran for the past 8.5 months of work totals Forty-Six Thousand Three Hundred and Twenty-Five Dollars ($46,325.00).

A law firm cannot be expected to work without the compensation it contracted to be employed for. The Firm has been tasked with an inordinate amount of work and has not been paid, (and Kumaran has been in complete breach of the Retainer) since her last payment in May 2024. As such, this continued and determined non-payment of owed legal fees constitutes grounds for withdrawal.

Withdrawal of counsel is governed by Local Civil Rule 1.4 which states that "An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the court granted by order.

Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar." Although there is no clear standard for what may be considered a "satisfactory reason" for allowing a withdrawal, "'[I]t is well-settled in the Eastern and Southern Districts of New York that non-payment of legal fees is a valid basis for granting a motion to withdraw pursuant to Local Civil Rule 1.4." *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, No. 08 CIV. 6469 DAB JCF, 2011 WL 672245, at *1 (S.D.N.Y. Feb. 17, 2011), quoting *Melnick v. Press*, No. 06 CV 6686, 2009 WL 2824586, at *3 (E.D.N.Y. Aug. 28, 2009); *Freund v. Weinstein*, No. 08 CV 1469, 2009 WL 750242, at *1 (E.D.N.Y. March 19, 2009) (granting motion to withdraw where "clients have failed to communicate with attorneys ... and have failed to pay legal fees"); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 464 F.Supp.2d 164, 166 (E.D.N.Y.2006) ( "Courts have long recognized that a client's continued refusal to pay legal fees constitutes a 'satisfactory reason' for withdrawal under Local Rule 1.4."); *Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950, 2005 WL 1963945, at *1 (S.D.N.Y. Aug. 15, 2005) ("'Satisfactory reasons' include failure to pay legal fees, a client's lack of cooperation— including lack of communication with counsel, and 'the existence of an irreconcilable conflict between attorney and client.'") (quoting *Hallmark Capital Corp. v. Red Rose Collection, Inc.*, No. 96 Civ. 2839, 1997 WL 661146, at *2 (S.D.N.Y. Oct. 21, 1997))); *Cower v. Albany Law School of Union University*, No. 04 Civ. 643, 2005 WL 1606057, at *5 (S.D.N.Y. July 8, 2005) ("It is well settled that nonpayment of fees is a legitimate ground for granting counsel's motion to withdraw.").

Furthermore, in cases such as these where discovery has not yet closed and trial is months away, the impact of withdrawal is typically not substantial enough to counsel against it. *See, e.g., Karimian v. Time Equities, Inc.*, No. 10 Civ. 3773, 2011 WL 1900092, at *3 (S.D.N.Y. May 11, 2011) (granting motion to withdraw where discovery not yet closed, trial several months away, and new attorney would have sufficient time to become familiar with case);

*Freund v. Weinstein*, No. 08 CV 1469, 2009 WL 750242, at *1 (E.D.N.Y. March 19, 2009) ("[W]ithdrawal at this juncture will not substantially disrupt this litigation since discovery is in the early stages."); *Brown v. National Survival Games, Inc.,* No. 91 CV 221, 1994 WL 660533, at *3 ("In the case at bar, although the parties have already commenced discovery, it is not complete and the case is not presently scheduled for trial. Thus, granting the instant motion will not likely cause undue delay.").

As previously stated herein, Ms. Kumaran frequently reiterates her contention that the Firm took these cases "mostly on a contingency basis." (Memo in Opp. pg. 16). This misunderstands the Agreement. The Agreement expressly states that "[a]ny hours over the Monthly Fee Cap shall be considered work on a contingency basis… In addition to the Monthly Fee Cap, Clients shall compensate the Firm a Contingency Fee Payment out of Net Recovery, which is only payable after the final payment and receipt of any award, settlement or judgement… The initial Retainer Payment and all paid Monthly Fee Caps shall be considered an Expense and recoupable by Client out of Net Recovery to the Corporate Plaintiffs as part of the Contingency Fee to be paid to the Firm." (Agreement, pg. 4). The fact that these cases have not yet come to settlement or trial does not remove Ms. Kumaran's obligation to pay the monies owed to the Firm by her. Regardless of any contingency portion of the Agreement, Ms. Kumaran still owes the Monthly Fee Caps from the eight and a half months during which she has paid **nothing**. Again, non-payment of legal fees owed has been found by numerous district courts to be a solid basis for the withdrawal as counsel. This case is no different. The cash portion of this Agreement is what allows the Firm to staff and handle the case. Payment for representation here was never meant to be purely contingency based. As Ms. Kumaran frequently states in her Opposition papers, these cases are four complex and multi-year federal litigations (and related appeals cases) which involve hundreds of hours reviewing thousands of pages of discovery, conducting numerous depositions, and handling related appeals work. It is impossible for a law firm of the size of Pierce & Kwok LLP, especially in light of Mr. Pierce's recent and ongoing

recovery from surgery and ailing father, to staff and adequately advocate for Ms. Kumaran's corporate entities, all while being paid nothing. Continuing as counsel is impossible.

Ms. Kumaran states in her Opposition that "in July 2024, Plaintiffs in good faith agreed to modify the retainer and based on a reduction of scope, and Plaintiff did agree to remove discovery in 3 of the 4 cases, there are no further moneys due to the firm at all." (Memo in Opp. pg. 4). This is, again, false. While Ms. Kumaran did inundate the inboxes of the attorneys at the Firm with suggestions on how to alleviate some of the financial strain she was feeling regarding the non-payment of legal fees, at no point did either side agree to anything, much less put it in writing and sign a modified retainer agreement.

Ms. Kumaran also falsely states that the "[m]ajority of the work by the law firm, has been consistently handled by Mr. Markus Wieshofer who has been the primary attorney handling all aspects of all cases" and "It is thus the clients' position that Mr. Pierce has not been needed by the client." (Memo in Opp. pgs. 4-5). As a Partner at Pierce & Kwok, as well as the attorney of record on this case, and all of Ms. Kumaran's federal cases, Mr. Pierce is the first and last person to review, edit, and approve all filings on all the dockets, even if he utilizes various associates to also check over such filings. It is absurd to argue that the attorney of record is somehow "not needed" simply because an associate of the firm has worked on various filings for this case. Mr. Wieshofer is not the "main attorney" in A Star's matters. Mr. Pierce is the attorney of record and has been since the day Pierce & Kwok LLP began its representation. Ms. Kumaran presupposes knowledge that she does not have. She has no actual knowledge of Pierce & Kwok's position, its staffing levels, or its continued ability to adequately represent The A Star Group, Inc., and the other Nefertiti entities. Pierce & Kwok LLP is a small firm and in fact, Pierce & Kwok is currently very understaffed and, coupled with Mr. Pierce's current virtual incapacitation due to recent major surgery and recovery, is not able to adequately represent and/or fulfil its professional responsibility to robustly advocate for Plaintiffs in this matter nor

9

any other matter. The Firm cannot work for free while Ms. Kumaran unilaterally and continually insists on breaching her Retainer Agreement with the firm.

The fact of the matter is that The A Star Group, Inc. and the other Nefertiti entities, represented by Ms. Kumaran, stopped paying their contracted-for legal fees many months ago. Extending the time that the Firm is forced to work for Ms. Kumaran and her entities is utterly untenable when (1) the Firm is not being compensated as per the retainer agreement; (2) the attorney of record is currently recovering from major spinal surgery and is on heavy medication; (3) the attorney of record is tending to an ailing father who is sick with late-stage pancreatic cancer; and (4) the Firm has a very limited staff that cannot continue multiple multi-district complex federal litigations and appeals without the attorney of record's oversight or active interest. *Furthermore, Ms. Kumaran has already yrepeatedly threatened a lawsuit against Pierce & Kwok LLP and has officially demanded that the firm notify its malpractice insurance carrier of a pending lawsuit, Therefore, continuing to work for her companies creates a conflict of interest.*

## **CONCLUSION**

For the reasons stated herein, the Motion to Withdraw as Attorney must be granted, together with any further relief this Court deems just and equitable.

Dated: New York, New York

       February 14, 2025

                                        */s/ Aaron H. Pierce/*

                                        Aaron H. Pierce

                                        Pierce & Kwok LLP
                                        299 Broadway, Suite 1405
                                        New York, NY 10007
                                        *Attorney for Plaintiff*
                                        *The A Star Group, Inc.*