UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMANTHA SIVA KUMARAN and THE A STAR GROUP, INC. d/b/a TIMETRICS,<br><br>Plaintiffs,<br><br>- against -<br><br>NORTHLAND ENERGY TRADING, LLC, HEDGE SOLUTIONS, INC., RICHARD M. LARKIN, DANIEL LOTHROP, and DOMENIC BRAMANTE,<br><br>Defendants. | 19-CV-8345 (MKV) (RWL)<br><br>**ORDER RE ESI PROTOCOL** |

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

The Court is in receipt of the parties' suggested corrections to the draft ESI protocol solicited by the Court. The Court has adopted the one change suggested by Defendants and many of those suggested by Plaintiffs.[1] The changes are reflected in redline form in the attached revised draft protocol.

The Court has not adopted certain suggestions from Plaintiffs that the Court has determined are unnecessary, redundant, already rejected, and/or seek to reargue rather than correct the draft protocol. Those issues shall not be argued any further. There are a handful of issues, however, for which the Court finds it necessary to convene another conference at which Ms. Kumaran, Ms. Akins, Mr. Kwon, and Mr. Generosa shall appear. The conference will be scheduled by separate order.

[1] Despite the Court's admonition to provide only corrections, not reargument, Plaintiffs submitted 30 pages of "comments" covering 23 issues that include extensive reargument. (Dkt. 499 Ex. 1.) The Court would be well within its discretion to reject all of Plaintiffs' requested modifications on that basis alone.

In preparation for the conference, Defendants shall consider (1) whether they have any objections to the changes reflected in the attached revised draft protocol, and (2) their position (regardless of whether the content reflects reargument rather than merely correction) with respect to, and the feasibility of implementing, the following suggestions by Plaintiffs that are not, at this time, reflected in the attached revised draft protocol:

1. Addition of the requirement to export and produce all document versions via Purview. (See Plaintiffs' Comments Issue 6 at 6-9.)

2. Clarification to the definition of File Path. (See Plaintiffs' Comments Issue 11 at 14-17.)

3. The options for addressing Source Device. (See Plaintiffs' Comments Issue 13 at 18-20.)

4. Addition of "servers" to the first sentence of Paragraph 9. (See Plaintiffs' Comments Issue 18 at 24-26.)

5. Provision of both a Processing Duplicate MD-5 hash and a Native MD-5 hash. (See Plaintiffs' Comments Issue 22 at 28-29.)

SO ORDERED.

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: September 21, 2026
New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
SAMANTHA SIVA KUMARAN and THE A STAR GROUP, INC. d/b/a TIMETRICS,

Plaintiffs,

-against-

NORTHLAND ENERGY TRADING, LLC, HEDGE SOLUTIONS, INC., RICHARD M. LARKIN, DANIEL LOTHROP and DOMENIC BRAMANTE,

Defendants.
-------------------------------------------X

Case No. 19-cv-8345 (MKV) (RWL)

**PROTOCOL FOR ELECTRONICALLY STORED INFORMATION**

The parties to this Action (collectively, the "Parties," and individually, a "Party"), *pro se* or by and through their undersigned counsel, as the case may be, shall comply with this Protocol for Electronically Stored Information ("Protocol") for any documents and electronically stored information that are produced after the date hereof.

1. <u>Parties Bound</u>. All Parties are bound by and subject to the terms of this Protocol from the date hereof.

2. <u>Definitions</u>. The following definitions shall apply solely for purposes of this Protocol.

a. "Action" means *Kumaran v. Northland Energy Trading, LLC*, Civil Action No. 19-cv-8345 (MKV) (RWL), Southern District of New York.

b. "Custodial Data Source" means any data source that is kept or maintained by any particular agreed Custodian or potential Custodian, as defined herein, which may contain potentially relevant Documents or ESI, as defined herein, including data sources used by any department, business unit, or division of a Responding Party, as defined herein, and shared systems that may contain potentially relevant information.

c. "Custodian" means the individual or originating source from which Documents or ESI, as defined herein, will be collected and reviewed.

d. "Document" shall have the meaning contemplated by Rule 26.3(c)(2) of the Local Rules of Civil Procedure of the United States District Court for the Southern District of New York ("Local Rules") and Federal Rule of Civil Procedure ("FRCP") 34(a)(1)(A). A reference to "Document(s)" shall include both ESI and Hard Copy Document(s), as defined herein. A draft or non-identical copy is a separate Document.~~1~~

e. "Electronically Stored Information" or "ESI" (being an abbreviation of Electronically Stored Information shall have the same meaning it has in FRCP 34(a)(1)(A).

f. "Hard Copy Document" means a Document maintained in physical form and collected from physical files (paper) and not from electronic sources.

g. "Non-Custodial Data Source" means any data source that is not kept or maintained in any particular agreed Custodian or potential Custodian but which may contain potentially relevant Documents or ESI, including data sources used by any department, business unit, or division of a Responding Party, and shared storage systems that may contain potentially relevant information.

h. "OCR" means the optical character recognition technology used to read Hard Copy Documents or electronic images of Documents and output such Documents to a searchable text format. The latter text is also referred to as the "OCR text" or simply "OCR."

i. "Party" or "Parties" means, individually or collectively, all Plaintiffs and Defendants, as well as any later added plaintiffs and defendants.

j. "Portable Document Format" or "PDF" refers to the ISO-standard file format (PDF) for storing paginated representations of ESI or Hard Copy Documents.

k. "Requesting Party" shall mean the Party requesting the search, review, and production of responsive ESI from any other Party in the Action pursuant to discovery requests served pursuant to the Federal Rules of Civil Procedure, any applicable Local Rules, and/or other applicable rules.

l. "Responding Party" shall mean the Party responsible for the search, review, and production of responsive ESI pursuant to discovery requests served on it in the Action by any Party.

m. "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or Hard Copy Documents. For filesd produced as TIFF images, each page of a Document shall be electronically saved as an image file.

3. Cooperation. The Parties shall conduct all discovery in a cooperative manner, including without limitation, by meeting and conferring in good faith on topics such as the identification of custodians of relevant ESI, potentially relevant data sources, search methodologies, and such other issues as may arise during the course of discovery.

4. Applicability. This Protocol shall apply to the production of ESI in this Action only.

5. Reservation of Rights. All Parties reserve all rights under applicable law for matters relating to the production of ESI. Furthermore, nothing in this Protocol shall be construed to affect in any way the rights of any Party to object to the admissibility of any materials into evidence at the trial of this Action.

6. Confidentiality. All ESI, including the procedure for clawback of any ESI, shall be governed by any confidentiality, protective, and/or clawback agreements and/or orders entered in this Action. Responsive documents in TIFF or searchable PDF format will be stamped with the appropriate confidentiality designation in accordance with such confidentiality, protective, and/or clawback orders. Each document produced in native format will have its confidentiality designation reflected on the TIFF or PDF image slip sheet and on a label securely affixed to the media on which the native file is delivered, in accordance with such confidentiality, protective, and/or clawback orders.

7. Search and Review Methodology. The Parties will comply with the Court's order(s) concerning search terms, custodians, date ranges, and data sources to identify potentially responsive documents.

a. The Parties will use reasonable diligence to search for and retrieve potentially discoverable ESI. Reasonable diligence includes the use of industry-standard tools and/or methods for identifying responsive ESI. Searches shall include both content as well as metadata fields File Name and File Path.

b. Once the Court establishes the search terms to be used by the parties, the Requesting Party does not waive its right to request, in good faith, that a search be enlarged to uncover additional responsive ESI, and the Responding Party does not waive its right to request that a search be narrowed because it believes, in good faith, that a review and/or production of ESI pursuant to the search would not be relevant to any party's claim or defense or is not proportional to the needs of the case, or any other objection or right available under the applicable law.

c. No Party can compel another Party to use technology-assisted review or to produce documents without human review over the Responding Party's objection. If a Responding Party elects to use technology-assisted review to identify potentially relevant documents or to cull

documents from review without manual review, it will disclose the use and methodology of technology assisted review to the Requesting Party. The Parties reserve the right to object to such use of technology-assisted review, but by allowing a Party the right to reserve their objection, no Party is agreeing, either explicitly or implicitly, that such objections are legitimate.

d. If the Parties conduct a meet and confer regarding a search or methodology but reach an impasse and are unable to resolve the dispute, the Requesting Party may seek the assistance of the Court.

8. Plaintiffs' Sources of ESI.

[To be determined after the parties meet and confer and, if necessary, resolved by the Court]

9. Defendants' Sources of ESI. Defendants shall search ESI from their Microsoft 365 tenancy (including email, calendars, messages, OneDrive, and SharePoint) and company-owned laptops and desktops. Defendant shall also search ESI from Richard Larkin's Gmail account and mobile phone. Email shall include all email accounts, aliases, domains, and mailboxes used for communications by or between the Parties, among the Defendants themselves, or with third parties related to the subject matter of this litigation. Defendants shall make a reasonably diligent inquiry to determine if either ~~have represented that neither~~ Defendant Bramante ~~n~~or Defendant Lothrop used their personal email accounts or mobile phones for anything related to work related to this case; to the extent they did, Defendants ~~become aware of information to the contrary, Defendants~~ shall search Bramante or Lothrop's respective personal account(s) and~~or~~ device(s). Notwithstanding the foregoing, Defendants shall not be required to collect ESI from sources that are duplicative of other sources collected, and Defendants shall use the most accessible version of any such ESI. For clarity, and without limitation, Defendants shall search for and produce responsive messages and texts between and among any two or more of Larkin, Bramante, and Lothrop, and not only texts between any of them and Plaintiffs.

10. De-duplication. With regard to records collected as paper documents, a Party may only de-duplicate within the production from an individual custodian and may not de-duplicate across custodians. Further, with regard to ESI, a Party may de-duplicate globally (across all

custodians) provided that the Responding Party identifies—in metadata provided pursuant to this Protocol—all custodians from which each such file was collected to the extent that information is available or ascertainable. De-duplication will be performed by using MD5 or other industry standard hash values (such as but not limited to SHA-1) at family level (a standalone~~loose~~ file not embedded within or attached to emails or other container files should not de-duplicate against an attachment).

11. Inaccessible Data. Absent an order from the Court upon a showing of good cause, a Party from whom ESI has been requested shall not be required to search for responsive ESI from sources that are not reasonably accessible without undue burden. If a Party identifies a data source that may contain responsive data that it will not search on the grounds that it is unduly burdensome or costly, the Party will identify the data source to the Requesting Party, unless the data source is listed in items A-G. The following types of data stores are presumed to be inaccessible and need not be collected, absent an order from the Court upon a showing of good cause or unless otherwise agreed upon by the parties:

(A) Deleted, slack, fragmented, or other data only accessible by forensics;

(B) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(C) On-line access data such as temporary internet files, history, cache, cookies, and the like;

(D) Back-up data that is substantially duplicative of data that are more accessible elsewhere;

(E) Server, system, or network logs;

(F) Data remaining from systems no longer in use that is unintelligible on the systems in use; and

(G) Electronic data (*e.g.*, email, calendars, contact data, notes, and text messages) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage), and provided that the Party searches the copy of the

electronic data.

Notwithstanding the foregoing, the parties must preserve the data identified in subparagraphs A through G to the extent it currently exists. Whether any of that data should be collected and produced will depend on sufficiency of production of other data. For clarity, and without limitation, inaccessible data does not include, and parties shall preserve, collect, and produce documents from Deleted Folders, Preservation Hold Libraries, and Recycle Bins (including Share Point Recycle Bin). The parties need not preserve data in categories A, B, or C going forward (i.e., that does not already exist as of this protocol).

Formatted: Indent: First line: 0.5", Right: 0.25", Space Before: 0 pt, Line spacing: Multiple 1.74 li

The parties shall also preserve all devices that have or had data from the relevant time periods to the extent they currently exist, even if the data from those devices is or was preserved elsewhere.

12. File Type Exclusions. To conduct collections in a focused and efficient manner, the Parties also agree to exclude the following file types from collection: Standard system file extensions including, but not limited to, BIN, CAB, CHK, CLASS, COD, COM, DLL DRV, EXE, INF, INI, JAVA, LIB, LOG, SYS and TMP and other file extensions and directories that likely do not contain user generated content such as files identified by hash value when compared to the National Software Reference Library reference data set (RDS Hash), a sub-project of the National Institute of Standards and Technology ("NIST"), of known traceable system and application files. This process is commonly referred to as "De-NISTing."

13. Email Threading. The Parties may use commercially available "email thread suppression" tools once documents have been collected for review and initial search terms run. Any such tool must produce as independent documents: (i) emails in a thread that include attachments, or (ii) emails that contain information in the "bcc" field that is not otherwise identified in the thread.

14. Privilege Logs.

a. The parties presumptively shall not use a categorical approach to privilege log designations unless there is good cause to do so for particular categories. If a party does employ

a category, the other party may request a more detailed listing of the particular category, in which case the parties shall meet and confer, and if unable to resolve the matter may seek assistance from the Court. ~~Documents redacted for privilege must be logged as such.~~

b. The following documents presumptively need not be included on any privilege log:

i. Communications after the commencement of the Action between a Party and his/its counsel, (together with counsel's respective associated attorneys, paralegals and other professional and non-professional personnel employed or retained by counsel's law firm).

ii. Work product created after commencement of the Action by counsel representing a Party in this lawsuit, or by an agent of such counsel.

iii. Notwithstanding the foregoing, the parties must log privileged communications and work product concerning the preservation, collection, and production of Documents.

c. Documents Redacted for Privilege: Redacted Documents need not be logged as long as ~~for emails, the~~ bibliographic information (*i.e.* to, from, cc, bcc, recipients, date and time) is not redacted, and as long as the portions redacted are identified with a "Redacted" emblem. After receipt of the production, the Requesting Party may request in good faith that the Responding Party create a privilege log for some, any or all redacted documents. Upon receipt of such a request, the Parties agree to meet and confer regarding the need for a log and, if one is agreed to, the format of such log. If the Parties cannot agree on the need for or format of a log of redacted documents, any Party may seek the assistance of the Court. Documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

15. Production Format for Paper Documents. Paper documents shall be scanned into single-page TIFF or searchable PDF format, with each page stamped with a unique Bates number. Care should be taken to appropriately unitize the documents in order to maintain the folder structure, if any, in which the files are kept and to maintain family relationships (*e.g.*, parent documents should be immediately followed by attachments, distinct documents should not be

merged into a single record, single documents should not be split into multiple records). The scanned documents should be provided with .dat and .opt load file(s) and document level text with a relative path file to the .txt file. In addition, the parties shall identify in an appropriate metadata field, the custodians from which the documents originate.

16. Production Format for ESI. The Parties will produce their respective ESI according to the following specifications:

a. In addition to producing documents in TIFF or searchable PDF format as otherwise set forth in this Protocol, the Responding Party shall produce a native format copy of all ESI. Each native file shall be named according to the beginning Bates number of the corresponding document, and the original file name of each native file shall be recorded in the "File Name" field of the .DAT load file. A "NativeLink" entry indicating the relative file path to each native file on the production media shall be included in the .DAT load file, along with any applicable confidentiality designation. Notwithstanding the foregoing, if a document contains a redaction, the native file shall not be produced. In the event that redaction to a Document can be justified, the original native file shall not be redacted. Instead, a duplicate of the original native shall be made and the redactions made to the copy of the native file. The metadata of the original must be preserved and produced. Where ESI is contained within a compressed container file (such as a .ZIP, .RAR, or similar archive), the container file itself shall not be produced (but its metadata shall be preserved); rather, the files contained within the container shall be extracted and produced in accordance with this Protocol. _Any use of Zip or other compression formats for production must preserve the original natives and metadata of the files contained in the compressed file. Producing a native file in addition to the TIFF or PDF image shall not relieve the Responding Party of any obligation to apply Bates numbering, confidentiality designations, or redactions to the corresponding image as required by this Protocol.

b. ESI that cannot be converted to TIFF or searchable PDF format (such as but not limited to video/audio) will be produced in native format along with a Bates labeled TIFF format slip sheet. Slip sheets will contain the text "File Provided in Native Format" and a corresponding Bates and designation, where applicable.

c. To the extent that certain ESI may not readily be converted to TIFF format or may not be optimally usable in TIFF format, and contains redactions, in such cases, the Responding party will make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data from redacted Native Files that are produced as TIFF image files and will be formatted so as to be readable (for example, column widths should be formatted so that numbers do not appear as "##ff###-#1/4"), and all single-page TIFF images shall include row and column headings.

d. All other ESI will be produced in TIFF or searchable PDF format. All TIFF formatted documents will be single-page, black and white, Group 4 TIFF at 300 X 300 dpi resolution or greater and 8 1/2 X 11 inch page size. The Requesting Party may request color images for a reasonable number of selected documents, and the Responding Party shall not unreasonably deny such requests. Color images should be delivered as packbit or JPGs. A Party shall produce documents in a different resolution or page size in order to accurately render its contents if requested to do so in writing by the Requesting Party. If the Parties cannot agree, any Party may seek the assistance of the Court. The Requesting Party reserves the right to identify specific file types/characteristics and request the native version of the document if the lack of color in an image affects the review process.

e. Each produced document shall have extracted text directly from the native file or OCR text file at the document level and not at the page level named. Each such text file shall be named after the beginning Bates number of the same document. Where a document does not contain text (whether in whole or in part) and was originally maintained containing~~in~~ image, nonsearchable format and converting to OCR text is not technologically feasible given the types of documents and utility of the OCR, the Responding Party will produce the document as it was kept in the ordinary course of business, with either partial OCR or without OCR, and will identify in the production cover letter the Bates numbers of the documents that have not had OCR applied or have only partially had OCR applied.

f. All native spreadsheets that are produced shall include all hidden rows, columns, and data.

g. Nothing herein permits any party to modify an original native document.

17. Parent-Child Relationships and Embedded Documents. Parent-child relationships (the association between emails and attachments) will be preserved. Email attachments will be consecutively produced with the parent email record. Embedded files are produced as independent document records. Embedded files should be assigned Bates numbers that directly follow the Bates numbers of the documents within which they are embedded. "Embedded files" shall be construed to mean files kept in the ordinary course of business and shall not include .PNG or .GIF files that appear in footers or signature blocks. For documents~~spreadsheets~~ that contain a link to other Office documents, the Requesting Party may identify to the Responding Party such documents for which the Requesting Party would like production of the linked document, in which case the Responding ~~Producing~~ Party will produce the linked document if technologically feasible to do so.

18. Files From Other Proceedings. For documents which already have been produced in another proceeding or government investigation, each Party may reproduce them in the same manner already produced in that proceeding, to avoid unnecessary burden and re-production. If a Party elects to produce files from other proceedings in this manner, that Party must still apply Bates Numbers using the convention set out in this protocol.

19. Electronic Bates Convention. Files will be named according to the Bates number of the corresponding *.tiff image. Bates numbering shall be a unique number assigned to each page and be numerically sequential within a given document. Format should be: PREFIX and numeric digits without spaces (*e.g.*, PRE0000001). Each Responding Party should use a single prefix for all its produced documents. Each image key and each image field value shall include leading zeros in the numeric portion. Where a rolling production is agreed to, the numbering convention shall be consistent throughout. No special characters (*e.g.*, *, @,%, &, #, etc.) shall be used in image file names (.TIFF), however, underscores or hyphens may be used. If suffixes are required, numeric suffixes should be used. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be

noted.

20. Load File Formats. ESI will be produced in standard Concordance or other industry standard load file formats (.DAT) and an image file that is in .OPT format.

21. Production Folders. The production should include separate folders for images, native files, text, and load files: a folder titled "IMAGES," another folder titled "NATIVES," another folder titled "TEXT," and another folder titled "DATA." The contents of these folders should be restricted to 1,000 files per subfolder.

22. Metadata to be Produced. For all ESI produced in this action, the Responding Party shall provide the metadata fields listed in the chart below for each Document from which it can be reasonably extracted, to the extent that such information is available and reasonably accessible at the time of collection and processing. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this Protocol shall require any Party to extract, capture, collect, recreate, manually populate, or produce such data. Documents that have been redacted will be produced as TIFF images, with OCR text that excludes the redacted portions, in a manner that preserves the metadata to the greatest extent possible. All date fields shall be provided in ~~UTC or GMC standard format~~ American format (MM/DD/YYYY). Although the mandatory metadata fields to be produced do not include version history, a Requesting Party may ask the Responding Party to provide the version history for individual targeted documents on a document-by-document basis, in which instance the Responding Party shall comply with any such request that is reasonable.

~~23.~~

Formatted: Font: 12 pt

| Field | Comment |
|---|---|
| Bates Beg | First bates number of email/doc |
| Bates End | Last bates number of email/doc |
| Bates Beg Attach | Beginning bates number for parent document (produced) |
| Bates End Attach | Ending bates number for last child document (produced) |

| | |
|---|---|
| AttachCount | Number of attachments of an email or loose electronic file |
| PageCount | Total number of images produced for a document |
| ~~MD5 Hash or SHA-1 or other industry standard~~ | ~~Hash value used to identify duplicates~~ |
| ~~Record Type~~ | ~~Indicates whether the document is: Email, E-doc or Attachment~~ |
| ~~Custodian~~ | ~~The custodian field identifies the source where the ESI was collected or the person who has responsibility or control over the ESI produced.~~ |
| MD5 Hash or SHA-1 or other industry standard | Hash value used to identify duplicates |
| Record Type | Indicates whether the document is: Email, E-doc or Attachment |
| Custodian | The custodian field identifies the source where the ESI was collected or the person who has responsibility or control over the ESI produced. |
| All Custodian | If document de-duplicated globally, all custodians associated with document |
| Email From | Sender of email message |
| Email To | Recipient of email message |
| Email CC | Carbon Copy Recipient of email message |
| Email BCC | Blind Carbon Copy Recipient of email message |
| Email Subject | Subject of the email |
| Email Message ID | Microsoft Outlook Message ID or similar value in other message systems |
| Conversation Index | ID field that denotes what emails and attachments are part of the same email thread (will only be produced if the Party uses email threading) |
| Date Sent | Date the email was sent (UTC or GMT) |
| Time Sent | Time the email was sent (UTC or GMT) |
| File Extension | The extension of the specific file |
| Author | Author of the original native file |
| Date-Time Created | Date and time the document was created (UTC or GMT) from native embedded metadata, not file system export date |

| | |
|---|---|
| Date-Time Last Modified | Date and time the document was last modified (UTC or GMT) from native embedded metadata, not file system export date |
| Size | Size of file (in bytes) |
| File Name | Original file name |
| File Path | Full path associated with the file from custodial device at time of collection (not path within the party's e-discovery platform or other staging medium) |
| All Paths | All file paths associated with the file (unless independently produced) |
| Designation | Confidentiality designation, otherwise left blank |
| Nativefile | Relative location of native when exported from processing system |
| Textfile | Location of text (extracted or OCR) when exported from processing system |

For any documents previously produced by Defendants that did not include correct .DAT load files, Defendants shall reproduce corrected .DAT load files to include the underlying metadata dates and UTC timestamps in compliance with this ESI Protocol.

Formatted: Justified, Right: 0", Space Before: 0 pt, Line spacing: Double, Tab stops: Not at 1.25"

Formatted: Font: (Default) Arial, 11 pt, Kern at 12 pt

~~24.~~23. Encryption. To maximize the security of information in transit, any media on which documents are produced may be encrypted by the Responding Party. In such cases, the Responding Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

~~25.~~24. Third Parties. From and after the date hereof, any Party that issues a third-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and request that the third party produce documents in accordance with the specifications set forth herein, or include these specifications directly in its subpoena. The Issuing Party is responsible for producing any documents obtained pursuant to a subpoena to all other parties. No Party shall be required to reformat or re-Bates stamp any documents or data produced by a third party in this litigation. In the event that a third party produces documents without Bates numbers, then the Party who sought discovery from the third party shall produce the production with a unique bates number. Nothing

in this Protocol is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

~~26.~~25. Amendment. Nothing herein shall preclude any Party from seeking to amend this Protocol in writing for good cause shown, provided, however, that no Party may seek relief from the Court concerning compliance with this Protocol until it has met and conferred in good faith with any Parties involved in the dispute.

Dated: New York, New York
________________, 2026

SO ORDERED:

__________________________